EUSTACE DE SAINT PHALLE, SBN 179100
RAINS LUCIA STERN ST. PHALLE & SILVER, PC
2300 Contra Costa Blvd., Suite 500
Pleasant Hill, CA 94523
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: PersonalInjuryGroup@RLSlawyers.com

ATTORNEYS FOR PLAINTIFF
KENNETH CHA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH CHA,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100,<br><br>        Defendants. | CASE NO. 3:24-cv-4700<br><br>**COMPLAINT FOR DAMAGES for:**<br><br>**1) Violation of Civil Rights (42 U.S.C. §1983) – Malicious Prosecution – Improper Investigation**<br><br>**2) Violation of Civil Rights (42 U.S.C. §1983) – Municipal Policy Resulting in Deprivation of Rights**<br><br>**3) Negligent Hiring, Supervision, and Training**<br><br>**Claim for Exemplary Damages**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff KENNETH CHA complains against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, as follows:

### PRELIMINARY STATEMENT

1.       This is a civil action for damages brought pursuant to the United States Constitution and 42 U.S.C. § 1983 resulting from deprivations, under color of law, of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and for tortious behavior under California state law. Plaintiff, San Francisco Police Department Officer Kenneth Cha, claims that the San Francisco

District Attorney's Office and other City employees violated his civil rights, by undertaking a frivolous criminal investigation into Ofc. Cha's conduct, and by maliciously prosecuting Cha in a criminal action, all without probable cause or adequate factual basis. This prosecution was conducted with personnel who were in a conflict of interest, and who were aware that Ofc. Cha did not commit any crime. This baseless prosecution was part of a pattern and practice by the District Attorney's Office in an effort to change policy in the SF Police Department relating to police policies and procedures on use of force.

2.      On January 6, 2017, Ofc. Cha, with his colleague Ofc. Colin Patino, attempted to enforce a restraining order against Sean Moore, a belligerent individual with a violent history who had been subject to multiple prior restraining orders. On this occasion, Moore screamed epithets, violently resisted arrest, threatened bodily harm to the officers, and assaulted the officers. During the subsequent altercation between the officers and Moore on a staircase, after Moore had broken Ofc. Patino's nose and was advancing on Cha, Ofc. Cha shot and injured Moore. This was a lawful exercise of Cha's right, both as a citizen and peace officer, in an encounter that threatened to result in great bodily injury or death to him and/or his partner. This was later substantiated by a subsequent investigation and determination.

3.      At a minimum, generally, a District Attorney must determine that there is probable cause to believe that all elements of a criminal offense have been met in order to file criminal charges based on evidence that would be admissible in court. San Francisco District Attorney policy dictates that such evidence should be of such convincing force that it would warrant conviction of the crime by a fact finder after hearing all the evidence available to the prosecutor at the time of charging and after hearing the most plausible reasonably foreseeable defense that could be raised. In other words, the evidence should be sufficient to prove the charges beyond a reasonable doubt, unanimously, to a jury.

4.      During the administration of District Attorney George Gascon, the District Attorneys' Office investigated Cha's shooting of Moore, and determined that there was not even probable cause to pursue a criminal case against Cha. The death of Sean Moore over three years after the incident did not change the legal analysis performed during Gascon's administration. However, after January 2020, incoming DA Chesa Boudin promulgated a policy at the District Attorney's office for the improper investigation and prosecution of officer-involved shooting cases, even where these cases lacked probable cause and were not likely to prevail at trial. As part of this policy, Boudin and the DA's office reversed the

prior DA's decision in the Cha case and undertook to investigate and prosecute Cha, despite inadequate proof and conflicting evidence that a crime had been committed.

5.     Under Boudin, the DA's Office instituted a bad-faith investigation into Cha's conduct, with the intent to prosecute Cha for the death of Sean Moore, whether the evidence supported this or not. The DA purposely hired personnel who were poorly qualified and did not adhere to traditional norms of prosecutorial ethics or assessment of evidence, in order to pursue the frivolous criminal investigation and prosecution of Ofc. Cha. Members of the DA's office presented evidence in a biased manner, and concealed exculpatory evidence. The District Attorney then arrested Cha and took the Cha case into criminal proceedings, despite the lack of credible evidence. Later, after Boudin left office and was no longer the DA, the criminal case was dismissed by the DA's office. The new DA Brooke Jenkins found that the former DA's office had not adhered to the norms of prosecutorial ethics, in that they had proceeded with the case despite inadequate proof that a crime was committed. Further, Jenkins found that the prior DA had proceeded with the investigation utilizing Moore's prior civil counsel, Lateef Gray, at the helm of the unit that investigated the matter, constituting a clear conflict of interest and an ethical breach.

6.     The District Attorney's Office's investigation and prosecution of Ofc. Cha violated his civil rights, and caused damage to Cha's reputation, emotional distress, and financial burdens. Ofc. Cha claims damages for these losses, as set forth below.

**JURISDICTION**

7.     Jurisdiction is vested in this Court under 28 U.S.C. § 1331 (cases arising under the Constitution and laws of the United States), 28 U.S.C. § 1343 (actions to recover damages under an Act of Congress providing for the protection of civil rights), and 42 U.S.C. § 1983 (actions to recover damages for the deprivation of any Constitutional right).

8.     The state law claims in this action are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

**VENUE**

9.     A substantial part of the events giving rise to this action occurred in the City and County of San Francisco, California. Venue lies in the Northern District of California, the judicial district in which

the claim arose pursuant to 28 U.S.C. §1391(a) and (b).

**DIVISIONAL ASSIGNMENT**

10.     A substantial part of the events giving rise to this action occurred in the City and County of San Francisco, California. Pursuant to Northern District of California Civil Local Rules, Rules 3-2(c) and 3-2(d), this case should be assigned to the San Francisco Division or the Oakland Division of this Court.

**PARTIES**

11.     At all times relevant to this Complaint, Plaintiff KENNETH CHA was a resident of the City and County of San Francisco, California. Plaintiff KENNETH CHA is and was a police officer employed by the San Francisco Police Department. Plaintiff KENNETH CHA currently resides in South Pasadena, California.

12.     Defendant THE CITY AND COUNTY OF SAN FRANCISCO is a public entity in the State of California, organized and existing under the laws of the State of California, with the capacity to sue and be sued.

13.     Defendant SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE ("SFDA") is a regional government agency located in the City of San Francisco, California and tasked with prosecuting criminal offenders for the Defendant CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA.

14.     Defendant CHESA BOUDIN is, and at all relevant times has been, a resident of the State of California. Defendant BOUDIN is being sued individually and in his official capacity as the former San Francisco District Attorney ("DA").  At all times relevant to this Complaint, Defendant BOUDIN was acting in the course and scope of his employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

15.     Defendant LATEEF GRAY is, and at all relevant times has been, a resident of the State of California. Defendant GRAY is being sued individually and in his official capacity as the former Managing Attorney for the Independent Investigation Bureau (IIB) of the San Francisco Assistant District Attorney's Office. At all times relevant to this Complaint, Defendant GRAY was acting in the course and scope of his employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

16.     Defendant DANA DRUSINSKY is, and at all relevant times has been, a resident of the State of California. Defendant DRUSINSKY is being sued individually and in her official capacity as San

Francisco Assistant District Attorney ("ADA"). At all times relevant to this Complaint, Defendant DRUSINSKY was acting in the course and scope of her employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

17.    Defendant STEPHANIE LACAMBRA is, and at all relevant times has been, a resident of the State of California. Defendant LACAMBRA is being sued individually and in her official capacity as San Francisco Assistant District Attorney ("ADA"). At all times relevant to this Complaint, Defendant LACAMBRA was acting in the course and scope of her employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

18.    Defendant REBECCA YOUNG is, and at all relevant times has been, a resident of the State of California. Defendant YOUNG is being sued individually and in her official capacity as San Francisco Assistant District Attorney ("ADA"). At all times relevant to this Complaint, Defendant YOUNG was acting in the course and scope of her employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

19.    Defendant ANDREW KOLTUNIAK is, and at all relevant times has been, a resident of the State of California. Defendant KOLTUNIAK is being sued individually and in his official capacity as an Investigator with the Independent Investigation Bureau (IIB) of the San Francisco Assistant District Attorney's Office. At all times relevant to this Complaint, Defendant KOLTUNIAK was acting in the course and scope of his employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO

20.    Plaintiff does not know the true names and capacities of defendants sued as DOES 1 through 100. Plaintiff will amend the complaint to show the true names of each such defendant when their identities have been ascertained. Each of the DOE defendants encouraged, participated in, and/or ratified and approved the conduct complained of herein.

21.    Plaintiffs are informed, believe, and therefore allege that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy and with the permission and consent of other co-Defendants.

///

1

<u>**EVENTS GIVING RISE TO THIS COMPLAINT**</u>

2

<u>**The Shooting Incident on January 6, 2017 Involving Ofc. Cha and Ofc. Patino**</u>

3        22.      The unwarranted and ultimately unsuccessful prosecution of Ofc. Kenneth Cha arose from

4   a January 6, 2017 encounter with Sean Moore. Ofc. Cha and his partner Ofc. Patino used appropriate and

5   reasonable tactics (in keeping with their training) to attempt to detain Mr. Moore. However, Moore's

6   violent conduct and verbal threats escalated into a physical attack against the uniformed officers. As a

7   result, Ofc. Cha was forced to fire his pistol at Mr. Moore in order to protect himself and Ofc. Patino.

8   Body-worn camera footage reveals that the officers made every reasonable effort to de-escalate the

9   situation by using verbal commands and lower-level force options including pepper spray and their batons.

10       **Neighbor Christopher Choy's Prior Restraining Order against Sean Moore**

11       23.      Sean Moore, deceased, was 43 years old at the time of the officer-involved shooting (OIS)

12  incident on January 6, 2017. Moore is estimated to have been six-feet-four inches tall and weighing 275

13  pounds. Pursuant to police reports and affidavits in temporary restraining orders, Moore has a history of

14  violent conduct, including aggressive speech, violent outbursts, and assaults on police officers, neighbors,

15  and innocent strangers. Moore had been subject to a series of restraining orders in the years prior to the

16  OIS incident.

17       24.      Christopher Choy lived next to Sean Moore at the apartment complex on Capitol Avenue

18  in the Oceanview neighborhood of San Francsico, California. Pursuant to affidavits by Choy in

19  applications for restraining orders, Moore had harassed Choy and his family for several years prior to the

20  incident. Choy had complained that Moore would make noise and shout, mostly at night. Moore had been

21  restrained previously because Moore had assaulted Choy's son in 2011. Moore was charged in that

22  incident, and was under a restraining order from 2011 to 2014. Choy reported that in 2014, when the

23  restraining order expired, Moore's nuisance behavior began again.

24       25.      In December 2016, Choy obtained a further temporary restraining order prohibiting Moore

25  from harassing him. The restraining order sought by Choy was to prevent Moore from disturbing the

26  family's peace as well to prevent further violence against him or his family. A court hearing on the matter

27  was scheduled for January 11, 2017.

28  ///

**Ofc. Cha's Encounter with Moore Prior to Moore's First Exit Through the Gate**

26.     During the very early morning of January 6, 2017, San Francisco Police Officers Kenneth Cha and Colin Patino responded to a call for service. Caller Christopher Choy had complained of a violation of a Restraining Order by the caller's neighbor, Sean Moore. Ofc. Patino met with Choy, while Cha went to the next-door neighbor's residence to inquire of that resident about the possible violation. Choy provided Patino with a copy of a judicially signed temporary Restraining Order which was set for hearing in five days (January 11, 2017) and named the next-door neighbor, Sean Moore, as the person to be restrained.

27.     Meanwhile, Ofc. Cha climbed a stairway to Moore's front gate and rang the doorbell. The stairway was walled on both sides and ended in a landing that extended to the front door. A floor-to-ceiling metal gate separated the landing area in front of the door from the rest of the landing and stairway. Moore, who Cha estimated was six feet four inches tall and weighed 275 pounds, opened the door and stepped partway onto the landing behind the gate.

28.     Moore made repeated hostile, belligerent and profane comments to Cha insisting he leave the premises. Videotapes show Moore berating, yelling at, arguing, and threatening the two officers. Moore also repeatedly demanded that the officers leave, to which officers respond that they are not going to do so until their investigation into the Restraining Order complaint was completed. Moore made repeated hostile, belligerent, and profane comments to both officers for several minutes before the officers were able to determine Moore's identity, which caused Moore to become even more irate.

29.     After about three minutes of talking to the officers and multiple demands that they leave his stairway, Moore said, "I'm gonna call and remove you," and he walked inside his home. The officers descended the stairs to the sidewalk while discussing the Restraining Order. In his interview, Patino said he believed by this point he had probable cause to arrest Moore for violating the restraining order.

30.     Moore stepped back onto the landing carrying what appeared to be a phone and stood behind the gate. He insulted the officers again. Cha said, "Why did you call me those slurs?" and ascended the stairs, followed by Patino. Moore said, "You're done," and asked for Patino's badge number, which Patino provided. While apparently dialing his phone, Moore continued to demand the officers get off his stairs and remained behind the gate. Patino attempted to read to Moore from the Restraining Order.

Moore responded more aggressively, banging his hand on the gate gestured in an aggressive way with his hands and arms while stating: "I'm through talking to you, bitch! Get off! Get off my stair!"

**Encounter After Moore's First Exit Through Gate**

31.     Moore then pulled open the gate, stepped through the gateway while remaining on the landing, and waving his right hand while telling the officers to get off his stairs. The officers both moved back slightly as Moore advanced and waved his right hand, and ordered they again leave. One of the officers said, "You wanna get sprayed?" and Moore said, "Fuck your spray," while continuing to wave his hand and insist they leave. Ofc. Cha then sprayed pepper spray in Moore's direction. Cha said in his interview it was difficult for him to retreat because the stairway was narrow and the pepper spray was deployed for safety while he retreated.

32.     Moore turned and stood sideways in the gateway with his left foot raised as if kicking. Ofc. Cha said in his interview that Moore then kicked him in the face. The officers partially descended the stairs. Moore bent over to pick up a piece of paper, closed the gate, entered his doorway, then reemerged, holding a paper in his right hand. These papers were the Restraining Order documents. The officers appeared to be on the sidewalk where Cha made a radio report of the incident.

33.     About a minute and a half after the pepper spraying, Moore could be seen inside the home through a window. (Cha said during his interview that he could hear Moore "yelling at the top of his lungs inside the house, pacing back and forth, banging on the wall, banging on the window.") Patino ordered him to return the Restraining Order papers and come outside because he was under arrest. Patino also said he would get Moore medical attention for the effects of the pepper spray. Moore closed the window. As the officers insisted he come out, Moore exited, tossed papers through the gate, and reentered his home.

**Final Altercation and Shooting of Sean Moore**

34.     After the officers continued to insist Moore come out or they would "kick the gate open," Moore again stepped onto the landing, complaining he could not see. Moore then suddenly opened the gate, stepped forward, squatted, clenched his fists, and then said: "Fuck you. [¶] . . . [¶] . . . Fuck you. . . . I'm a kick your ass, punk."

35.     Moore bent over to pick something up, which appeared to fall from his hand. He took a step down toward the papers on the stairs. Cha and Patino ordered Moore to get on the ground, but he

did not comply. He took a few steps down and reached to pick up something. The officers said in their interviews they thought this was a good opportunity to arrest Moore. Moore retreated up the stairs as the officers advanced toward him. Patino swung his night stick at Moore at least twice and reached for Moore, then fell backward down the stairs. Patino said during his interview that Moore had tried to block the baton and punched him in the face with a fist, breaking Patino's nose. This caused Patino to suddenly fall backwards on the stair, witnessed by Ofc. Cha.

36.   Cha, left to face Moore who was standing above him and had a height/weight advantage, had limited force options as the pepper spray and baton had failed to prevent Moore from attacking. Cha then drew his issued firearm and pointed it at Moore. The drawn firearm did not deter Mr. Moore at all. Mr. Moore raised his right leg and proceeded to kick down at Officer Cha. Officer Cha then fired his firearm as he fell backwards down the stairs. Cha struck Moore twice, in the abdomen and the leg.

37.   Officer Cha believed that if he did not use force, he would suffer serious bodily injury or even death at the hands of Mr. Moore. He explained in his interview with criminal investigators that when Mr. Moore punched Officer Patino in the face, Cha heard Patino drop and saw him "roll down the stairs." Ofc. Cha stated he knew immediately that Ofc. Patino had been significantly injured and could no longer assist in the encounter with Mr. Moore. At that point, pepper spray had done nothing to subdue Mr. Moore and the baton had zero effect. After Ofc. Patino was disabled, Ofc. Cha became the sole focus of Mr. Moore's attention and rage. Moore came toward him in a "violent manner." Ofc. Cha recounted, "I thought I was going to die. I thought this guy was just going to go to town on me." "I knew that Colin and I, [would face] …great bodily harm or we were going to die." When reporting the emergency situation to dispatch, Ofc. Cha stated, "I was getting overpowered; so I dispatched my weapon."

38.   After the incident, Sean Moore was treated for two gunshot wounds, a liver laceration, and traumatic injury to the area of the right colon.  Post abdominal surgery left Moore with a prominent scar that extended from the base of his rib cage to his groin.

39.   Ofc. Patino was transported to San Francisco General Hospital and treated for a broken nose. Ofc. Cha reported minor injuries consisting of scrapes and bruises with some pain.

40.   Moore was later incarcerated related to other charges. Over three years later, Moore died in San Quentin State Prison January 20, 2020. Pursuant to the medical reports, Sean Moore suffered

numerous medical conditions. Thus, the gunshot wound may or may not have been the proximate cause of Mr. Moore's cause of death.

41.    Because the cause of death was primarily attributed to acute intestinal obstructions and severe abdominal adhesions from the gunshot injury three plus years prior, the cause of death was listed as "homicide." Thus, with Mr. Moore's death in 2020, it was potentially possible to charge Ofc. Cha in Mr. Moore's death.

**San Francisco District Attorney's Office's Initial Investigation of Ofc. Cha and Ofc. Patino Under DA Gascon**

42.    Subsequent to the January 6, 2017 shooting incident, the District Attorney's Office under former DA George Gascon investigated the Sean Moore shooting incident and Cha and Patino's conduct. The Unit that investigated the incident, the Independent Investigations Bureau (IIB), investigates officer-involved-shootings, in-custody deaths and significant use of force incidents for the DA's Office. Under DA Gascon, after an investigation, the DA's Office found no cause for any criminal case against Cha or Patino.

43.    One factor in the IIB's initial finding is that Cha's use of deadly force against Moore was legally justified based on the evidence and testimony. A person is entitled to use force, even deadly force, if the force is used in self-defense or in defense of others where the assailant is imminently attempting to kill someone or inflict great bodily injury. (Penal Code section 197; CalCrim 505) It is the prosecution's burden to prove beyond a reasonable doubt that the deadly force was not used in lawful self-defense or defense of another. (CalCrim 505) The question is 1) whether a defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury; 2) the defendant reasonably believed that the use of deadly force necessary to defend against the danger; and 3) the defendant used no more than the force reasonably necessary to defend against the danger. (*People v. Humphrey* (1996) 13 Cal. 4th 1073, 1089.) Here, there was uncontradicted evidence that Officer Cha believed that if he did not use force, he would suffer serious bodily injury or even death at the hands of Mr. Moore. Officer Cha's belief that he or his partner would suffer imminent serious bodily injury or death if he did not use deadly force was reasonable under the circumstances. From the facts of the altercation with Moore, Officers Cha and Patino were plainly in imminent danger of great bodily injury or death, and

the prosecution could not prove beyond a reasonable doubt, as they would be required to, that this **was not** lawful self-defense or defense of another. Ofc. Cha had every right to defend himself and defend his partner.

44.     In 2019, a declination report detailing why there was no viable way to prosecute Officers Kenneth Cha or Colin Patino was finalized under the administration of DA Gascon by then Managing Attorney for the IIB Unit, Andrew Lah. This final version of the declination report was presented to former DA Gascon for final signature, but as former DA Gascon was preparing to leave office at that time, he elected to have the incoming DA finalize this holding. However, the declination was never formally signed or published.

**The SF District Attorneys' Office's Biased Investigation of Cha and Patino Under DA Boudin**

**SFDA Chesa Boudin's Office Promulgates a Biased Policy Against Police Officers in OIS Cases**

45.     On or about January 2020, defendant CHESA BOUDIN assumed office as San Francisco District Attorney, and took control of the San Francisco DA's Office. Once in office, DA Boudin introduced a policy of improper prosecutions of allegations of police misconduct. The San Francisco DA's Office policy under Boudin sought the frequent and improper prosecution of allegations of police officer misconduct, irrespective of the actual case facts and the existence or nonexistence of probable cause. Boudin's DA's Office administration expressed a vocal and public intent to pursue prosecution of police officers, for motives other than substantive justice in each case. This policy was intended to put pressure on the SF Police Department and the City, to coerce them into changing SFPD policies related to SFPD officers' use of force. The policy was also intended to improve the standing of defendants BOUDIN and the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE with certain political interests and communities. Cases against police officers were pursued in bad faith for the political reasons noted above, even if such cases had no merit, were unlikely to win at trial, and would infringe on the affected officer's rights. In fact, all San Francisco police officer use of force cases brought by the Boudin administration have since been dismissed or acquitted

46.     Initially, Boudin's DA's Office included then continuing Chief of Staff Cristine DeBerry and Managing Attorney Andrew Lah of the IIB Unit.

47.     Defendant DA Boudin's policy, encouraging the aggressive prosecution of SF police officers, ran into difficulty, as the experienced Assistant District Attorneys (ADAs) and DA Investigators resisted pursuing frivolous cases against police officers and objected to unsupported prosecutions. In order to avoid resistance to his policies, DA Boudin intentionally hired inexperienced ADAs and Investigators, and ignored, sidelined, or fired the more experienced ADAs and Investigators, with the explicit goal of pursuing more cases against police officers in bad faith.

**IIB Initial Memorandum to Boudin's Administration States that Charges Were Not Reasonable**

48.     On January 16, 2020, former ADA Aaron Zisser, who was assigned to the Moore case after DA Gascon's departure, prepared a memorandum regarding the Moore OIS. The memorandum references the legal analysis in what Zisser termed the "draft declination" and gave a legal analysis regarding self-defense, provocation, and issues around the use of deadly force. The memorandum opined that the criminal prosecution of Ofc. Cha was without legal authority or support. The memorandum concludes that charges were "not reasonable in this case," notwithstanding any ability to extend the time to file. ADA Zisser ultimately offered that any potentially chargeable offenses had mostly lapsed due to the delay because more than three years passed since the incident date.

49.     At some point, ADA Zisser was removed from the case and two former public defenders hired by DA Boudin, Stephanie Lacambra and Dana Drusinsky, were assigned to the Moore/Cha OIS case. Neither Drusinsky nor Lacambra possessed prior experience overseeing prosecutorial criminal investigations. Boudin hired Drusinsky and Lacambra because their personal bias against police officers was likely to be congruent with Boudin's policy of prosecution of police officer misconduct, with or without probable cause.

**ADA Lateef Gray's Involvement with Cha & Patino Prosecution, Despite Direct Conflicts of Interest**

50.     Sometime before January 21, 2020, DA Boudin offered Lateef Gray a job at the DA's Office. Gray was then elevated to Managing Attorney for the Independent Investigation Bureau (IIB). Gray, as supervising Managing Attorney of the IIB Unit, would oversee all IIB investigations, including that of the Sean Moore OIS. This assignment was highly inappropriate, as it involved a conflict of interest

in the Cha/Moore matter.

51.     Before working for the Boudin administration, Lateef Gray had worked at the John Burris law firm, a firm that specializes in prosecuting civil cases regarding police use of force. While working for the John Burris firm, Mr. Gray initiated a civil suit against the City and County of San Francisco and the SFPD on behalf of Sean Moore related to the shooting by Ofc. Cha.

52.     For a significant amount of time following his hiring to the DA's Office, Lateef Gray remained named counsel of record in the matter of *Sean Moore v. City and County of San Francisco,* in which Moore's family pursued civil claims against the City of San Francisco related to Moore's shooting. It appears that Gray would remain as counsel of record on the matter, appear on the matter, and file papers until March 23, 2020. Even after joining the DA's Office, the Sean Moore civil case was ongoing and identified Gray as an attorney of record.

53.     Ethical requirements regarding conflicts of interest would require Lateef Gray, who was involved in Moore's civil case, to be "walled off" from the Moore criminal investigation. Particularly, Gray should not manage a unit of investigators tasked with investigating the Cha/Moore criminal matter. However, no ethical wall existed to prevent Lateef Gray from being involved in the prosecution of an officer whose case directly applied to his client's civil claims. It appears that over one hundred days after being hired, and once Gray was promoted to Managing Attorney of the IIB Unit, Gray had virtually daily involvement on the case of his former client. As the IIB Managing Attorney, Gray remained a supervisor of the work of ADAs assigned to the Sean Moore matter. It is clear that Gray was never really "walled off" from the Moore/Cha OIS investigation. Documents purportedly show he was making strategic decisions in the Moore matter such as the assignment of various investigators to the case, issues involving expert witnesses and discussions of strategy. IIB Investigator Andrew Koltuniak, who wrote the arrest warrant on Officer Cha, was supervised by Gray.

54.     Further, throughout this time, Gray apparently still had an open financial interest in the Sean Moore civil lawsuit while he was supervising the same unit that would write arrest warrants for SFPD officers in OIS cases. In June of 2021, while Gray was still employed in Boudin's office as managing attorney of IIB, the SF Board of Supervisors awarded the Moore family $3.25 million. John Burris' firm (Gray's former firm) would have received a significant portion of that award. Potentially, Lateef Gray

could have received, or had a claim on, a portion of that award. Gray therefore had a financial interest in the Moore civil case, constituting a further conflict of interest for Gray's involvement in any OIS investigation related to Moore's death. The pecuniary interest for work done in the civil lawsuit by Moore against the SFPD, coupled with the clear interest surrounding prosecution of the Moore/Cha matter by the DA's office, means that Gray should have been walled off from the Moore/Cha investigation and prosecution.

55.     As part of the team prosecuting criminal conduct at the DA's office, Lateef Gray had a duty to pursue the Moore investigation in an unbiased manner, to make an objective assessment as to whether probable cause existed to support the charges. Gray had a duty not to institute or continue to prosecute a charge against the involved officers that the prosecutor knows is not supported by probable cause. However, in dereliction of this duty, Gray pursued a biased IIB investigation designed to lead to the arrest and prosecution of Ofc. Cha. As described herein, Gray's biased management of the investigation included removing competent investigators likely to resist the unfounded prosecution of Cha; hiring incompetent investigators who would cooperate with this prosecution; and, directing the investigators to bias the collection and interpretation of evidence so as to facilitate prosecution. The investigation was essentially reverse engineered to fit the facts to the DA office's predetermined decision to prosecute Cha.

**The Drafting of an Improper Search Warrant Against Cha and Patino**

56.     In June of 2020, the original IIB Investigator York Tsuruta was removed from the case by Lateef Gray, and IIB Investigator Magen Hayashi was assigned to the case. Tsuruta had prepared a transfer memorandum regarding the case, which reached the conclusion that prosecution of Cha was not supported by the evidence. However, on June 23, 2020, Hayashi's supervisor, Lt. Jeffrey Pailet, was instructed by Ms. Lacambra and Ms. Drusinsky to withhold the previously prepared transfer memorandum from Hayashi.

57.     ADA Dana Drusinsky then requested that IIB Investigator Megan Hayashi draft a search warrant and warrant affidavit for the personal and work cellular telephones of the involved officers, including Ofc. Kenneth Cha. On reviewing the Investigator's draft warrant, the ADAs assigned to the matter (defendants Drusinsky and Lacambra) asked for edits to eliminate exculpatory evidence (evidence tending to defeat criminal charges against Cha) from the warrant affidavits. The edited version deleted

important facts of the event at issue that would be exculpatory evidence required by law to be included in the affidavit. This evidence included the suspect's hostile behavior, including attacks on the involved officers prior to the shooting. In later draft revisions sent to the Investigator from these ADAs, the ADAs further altered the context of the incident, made statements that did not have factual support, and removed exculpatory information about how the incident occurred.

58.    Both Investigator Hayashi, and her supervisor Lt. Jeffrey Pailet, objected to the changes to search warrants that were requested by ADAs Drusinsky and Lacambra. However, these improper actions and directives by the ADAs continued and supervisor Lt. Pailet continued to object. On November 6, 2020, Pailet was subsequently fired by the DA's Office. Pailet later brought a civil wrongful termination suit against the DA's Office, the City and County of San Francisco, and the involved individuals alleging that he was wrongfully fired for being a whistleblower when he pointed out legal deficiencies in the draft warrants against Officers Cha and Patino.

59.    Following Pailet's firing, the ADAs pressured Investigator Hayashi to perform activities on investigations and prosecutions that she felt were improper. Testifying in another case, Hayashi stated that as to the improper Cha and Patino warrants: "I was threatened by attorneys three different times that if I didn't agree with their warrant they would report me to D.A. Boudin and that we were looking at termination possibilities."

60.    On November 30, 2020 Ms. Hayashi was removed from the Cha matter. She was forbidden from briefing the investigator who would replace her.

**The SFDA's Improper Arrest Warrant for Ofc. Cha**

61.    As noted above, DA Chesa Boudin and Lateef Gray purposely hired inexperienced and biased ADAs and investigators, and ignored, sidelined, or fired the more experienced ADAs and investigators, with the explicit goal of pursuing OIS cases against police officers, whether or not such cases were supported by the evidence.

62.    Andrew Koltuniak was hired by DA Chesa Boudin and Lateef Gray for the role of IIB Investigator. At the time of hire, Andrew Koltuniak was working in the public defender's office. He had no police experience before his hiring to the DA's Office, and in fact harbored a bias against police officers. Moreover, Koltuniak was not qualified to work in the IIB unit of the District Attorney's office, as

he lacked police experience and had no prior experience of prosecution of a criminal matter. Further, Mr. Koltuniak was not eligible to write arrest warrants, as required for the IIB Investigator position. To allow Koltuniak to fulfill the technical qualifications for the job, DA Chesa Boudin and Lateef Gray sent Koltuniak through an accelerated police academy, so that he would gain police status and have minimal qualifications to draft an arrest warrant. This would allow Koltuniak to act on Gray and Boudin's instructions in cases involving SFPD personnel for OIS investigations.

63.    DA Boudin and Lateef Gray then assigned the newly fledged Investigator Koltuniak to the IIB Unit, an extremely intensive unit in the DA's Office that previously had only highly experienced investigators assigned to it. Investigator Koltuniak was also specifically assigned to the investigation of Sean Moore's death and Ofc. Kenneth Cha. During his time with the IIB Unit, Investigator Koltuniak worked under IIB Managing Attorney, Lateef Gray, who was Sean Moore's former civil attorney on these same claims.

64.    It appears that Investigator Koltuniak wrote his first arrest warrant ever for the arrest of Ofc. Cha. On October 29, 2021, Investigator Koltuniak submitted a request for an arrest warrant for Ofc. Kenneth Cha to Judge Harold Kahn. This warrant was later granted that same day by the court.

65.    This arrest warrant for Ofc. Cha failed to include several salient exculpatory facts. For example, Moore died over three years after he was shot by Officer Cha, which was left out of the arrest warrant.  Per Penal Code section 194, if a person dies more than three years after an incident, the defendant has a rebuttable defense. Further, there were other causes of death besides his abdominal injury ostensibly caused by the 2017 shooting. Moore's death certificate states he died from "hypertensive cardiovascular disease; obesity; slight coronary atherosclerosis; diabetes mellitus; schizophrenia; and chronic substance abuse."  The warrant failed to list these other causes.

66.    Importantly, the arrest warrant also failed to adequately describe the violent encounters preceding Moore's shooting, relevant to the issue of Cha's right to self-defense. As noted, Moore was over six-feet-four inches tall and weighed over 275 pounds, with a history of violent conduct and a succession of restraining orders against him. Pursuant to the video evidence and testimony, during the altercation Moore had punched Cha's partner in the nose and broken it, and had kicked Cha. However, Investigator Koltuniak's arrest warrant significantly downplayed Moore's violent contribution by vaguely describing

Sean Moore as merely striking Cha. Without the complete scope of relevant information, including exculpatory evidence known the DA's Office, Judge Kahn signed the warrant allowing for Ofc. Cha's arrest.

67.    Koltuniak's lack of experience and competence for the task of drafting the arrest warrant, and the poor training and improper direction by his superiors at the SF District Attorney's office (particularly DA Boudin and Managing Attorney Gray), were significant factors in the improper investigation of Cha and the improper drafting of the Cha arrest warrant.

**Grand Jury Proceedings Against Ofc.'s Cha and Patino**

68.    In July 2021, an Investigative Grand Jury was empaneled and received evidence regarding the shooting of Sean Moore by Ofc. Kenneth Cha.  At those hearings, ADAs Drusinsky and Lacambra presented evidence to the Grand Jury about the events of January 6, 2017, which were summarily connected to Moore's death three plus years later. No expert witnesses or witnesses with medical training were called during this Grand Jury investigation.

69.    During the Grand Jury investigation, of which the transcript will confirm, many jurors indicated that they had significant questions about the issues surrounding Moore's death and its cause. For instance, one juror expressed confusion about the cause of Moore's death and attributing it to the events years prior. In reply, ADA Lacambra explained to the jury that the coroner had ruled Moore's death a homicide, but did not also include an explanation of any of the other medical issues faced by Moore at the time of his death that may have likely contributed heavily. Also, the jurors were presented with evidence of a later shooting by Ofc. Cha four months after the Moore OIS incident, despite Ofc. Cha not being disciplined for this later event and it having no relation to the Moore shooting. The jurors expressed confusion why they were presented with this later shooting event when Ofc. Cha was not disciplined for this.

70.    It also appears that ADAs Drusinsky and Lacambra never told the jurors during the Grand Jury Investigation that Sean Moore had a reputation for violent past behavior, and did not mention many times before the shooting when he was aggressive with the public and other police officers. The attorneys also did not tell the jurors, even after they asked, about any history between Moore and the neighbor who had previously gotten a restraining order against Moore and who had called the police to the scene before

the shooting.

71.    DA Boudin and the DA's office improperly trained ADAs Drusinsky and Lacambra regarding OIS cases.  Further, DA Boudin and the DA's office improperly directed and encouraged ADAs Drusinsky and Lacambra to pursue the Grand Jury proceeding against Kenneth Cha. DA Boudin and the DA's office either directed the ADAs improperly, or negligently supervised them, such that these ADAs made a biased, incomplete presentation to the Grand Jury which deceived the jury and deprived plaintiff Cha of his right to fair proceedings.

**Criminal Case against Ofc. Kenneth Cha; Dismissal by the New DA Brooke Jenkins**

72.    As noted, the shooting at issue occurred January 6, 2017. Over four years later, on October 29, 2021, DA Investigator Andrew Koltuniak submitted the arrest warrant for Ofc. Kenneth Cha to the Superior Court.

73.    On or about November 2, 2021, Ofc. Cha was arrested on charges of voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)). The DA's Office then instituted criminal proceedings against Ofc. Cha, with ADA Rebecca Young as lead prosecutor. Discovery was conducted by the defense, including materials produced by the DA's Office regarding the prior declination report, the Grand Jury proceedings, and the involvement of Lateef Gray.

74.    On July 8, 2022, DA Boudin was recalled and left office. On January 8, 2023, Brooke Jenkins assumed the role of San Francisco District Attorney. Following this, the attorneys prosecuting the Cha matter were removed from the case, and ADA Darby Williams was assigned to this case by DA Jenkins.

75.    On January 11, 2023, Kenneth Cha's attorney Scott Burrell sent a letter to DA Brooke Jenkins, outlining the deficiencies in the case against Ofc. Cha. Burrell noted the following problems with the case: 1) Cha had viable arguments for self-defense or defense of another; 2) Sean Moore had a long history of violent attacks; 3) there was weak evidence of causation of death, since the death occurred long after the event; 4) the DA's office showed multiple ethical failures and improper investigation, including the conflict of interest with Lateef Gray; pressure on investigators such as Megan Hayashi to produce biased and incomplete work; and, 5) the biased arrest warrant with inappropriate editorializing and missing

exculpatory information.

76.    On June 30, 2023, ADA Darby Williams filed a Motion to Dismiss Charges against Kenneth Cha. In this Motion, ADA Williams stated that the DA's Office was unable to show beyond a reasonable doubt that Ofc. Cha did not act in self-defense, since Moore was the apparent aggressor in this incident and had already caused physical harm. The Motion cited Penal Code §835a, "A threat of death or serious bodily injury is imminent when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person." As to the shooting of Sean Moore, the Motion stated, "A detailed fact-based analysis shows that both officers subjectively believed in the need to use force in self-defense and defense of others. The belief in the need to use deadly force to defend against Moore's assault became acute as Moore became more aggressive and struck Patino in Cha's presence which made Cha's belief objectively reasonable." The Motion noted that, just prior to the shooting, "Cha thought he might be Moore's next victim and given what he saw Moore do to Patino, that fear was objectively reasonable. It is also this moment that Cha is faced with the lack of less than lethal options to defend himself as the pepper spray did not work, the baton strikes by Patino were useless, and Moore who has all physical advantage continued to advance."

77.    Further, the Motion stated that there is a "colorable claim that this prosecution was brought for improper reasons. The evidence surrounding improper prosecution motives include the failure to create and maintain ethical walls and the inappropriate handling of proceedings." The Motion noted the conflict of interest presented by Lateef Gray's continuing involvement with the case: "The pecuniary interest for work done in the civil lawsuit by Moore against the SFPD, coupled with the clear interest surrounding prosecution of the Moore/Cha matter by the Federal Court, means that Gray should have been walled off of the Moore/Cha prosecution in a demonstrable way to avoid any appearance of impropriety." Finally, the Motion noted serious ethical lapses by the prior ADAs in their presentation to the Grand Jury, particularly the exclusion of exculpatory evidence of the decedent's violence: "Here, the propensity for violence by the decedent and most importantly acts of violence to the C.C. [Choy] family would be highly relevant in establishing that Cha's responses to Moore were reasonable and that it was Moore who was likely the aggressor, supporting Cha's claim of lawful self-defense or defense of his

partner." Based on the multiple problems with the case, the Motion argued that dismissal was required in the interests of justice.

78.    On July 18, 2023, the Court granted ADA Williams' Motion to Dismiss regarding all charges against Officer Cha.

79.    Subsequent to the prosecution of plaintiff Kenneth Cha, ADA Rebecca Young left the SF DA's office, and went to work as a criminal defense attorney. Rebecca Young now represents the family of Sean Moore.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

80.    On December 28, 2024, Plaintiff Kenneth Cha timely filed a claim against Defendants pursuant to Government Code section 910, regarding the matters set forth herein.

81.    On February 7, 2024, Defendant CITY AND COUNTY OF SAN FRANCISCO sent a letter to plaintiff's counsel, advising that Defendant believed there was "no indication of liability on the part of the City and County," and further advising that, "your claim is DENIED."

82.    Pursuant to Government Code section 945.6, Plaintiff hereby files the instant Complaint within six months of Defendant CITY AND COUNTY OF SAN FRANCISCO's denial of plaintiff's claims.

### FIRST CLAIM FOR RELIEF – VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) – MALICIOUS PROSECUTION – IMPROPER INVESTIGATION OF CRIME
### (AGAINST ALL DEFENDANTS)

83.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the facts in each paragraph were set forth in full in this Claim for Relief.

84.    On or about November 2, 2021, Defendants CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE charged Ofc. Cha with voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)) in the criminal courts in the Superior Court of California, City and County of San Francisco, case number 21010958. The prosecution of plaintiff Cha was conducted by defendant SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, based on the investigation, actions, and statements of the defendants, CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA;

1  LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, as described

2  herein.

3      85.      At all times relevant to this Complaint, while Defendants CHESA BOUDIN; DANA

4  DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW

5  KOLTUNIAK and DOES 1-100 were investigating plaintiff KENNETH CHA related to the Sean Moore

6  matter, these defendants were acting in the course and scope of their employment with Defendants CITY

7  AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S

8  OFFICE.

9      86.      In investigating plaintiff KENNETH CHA related to pursuing criminal charges against

10  plaintiff CHA, as aforesaid, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN

11  FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY;

12  STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and

13  DOES 1-100, and each of them, while acting under color of law, conspired together to violate the due

14  process rights of plaintiff KENNETH CHA under the Fourth and Fourteenth Amendments of the U.S.

15  Constitution, and plaintiff's other civil rights. Defendants and each of them conducted a malicious

16  investigation and prosecution of plaintiff, with the intent to charge him with a crime which he did not

17  commit and which the defendants should have recognized he did not commit.

18      87.      Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO

19  DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE

20  LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100,

21  and each of them, were actively involved in the improper investigation that caused plaintiff KENNETH

22  CHA to be arrested and prosecuted on criminal charges.

23      88.      Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA;

24  LATEEF GRAY; REBECCA YOUNG; and ANDREW KOLTUNIAK; and each of them, acted

25  improperly, and with malicious intent, with respect to conduct in their capacity as investigators of the Sean

26  Moore matter and/or any criminal allegations against plaintiff KENNETH CHA, prior to the

27  establishment of any probable cause for plaintiff's arrest and prosecution.

28      89.      On July 18, 2023, the criminal proceeding ended in plaintiff KENNETH CHA's favor,

when the Court granted ADA Williams' Motion to Dismiss regarding all charges against Officer Cha.

90. No reasonable person in the circumstances of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, would have believed that there were grounds for causing plaintiff KENNETH CHA to be arrested and prosecuted. Defendants lacked probable cause for the prosecution of criminal charges against plaintiff.

91. Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, acted maliciously in investigating the Sean Moore matter and/or any allegations against plaintiff KENNETH CHA. Defendants and each of them acted primarily for purposes other than to bring plaintiff KENNETH CHA to justice. Particularly, defendants and each of them acted with a political motive, intending to put pressure on the SF Police Department and the City, to coerce them into changing SFPD policies related to officers' use of force.  Further, defendants and each of them sought to publicly present an aggressive stance toward officer-involved shootings with regard to allegations of police misconduct.

92. Further, defendant LATEEF GRAY had a pecuniary financial interest in CHA's criminal prosecution. The decedent in the criminal action (Moore) was GRAY's former client, who had pursued a civil suit which GRAY would benefit from. Under these circumstances, it was a violation of professional ethics for GRAY to assume a position as the managing attorney of the IIB unit investigating the Moore shooting. Defendant LATEEF GRAY's pursuit of the investigation and prosecution of plaintiff CHA was in part motivated by his pecuniary financial interest, rather than the interest of justice.

93. The wrongful acts and omissions of the defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, related to the improper investigation of charges against plaintiff KENNETH CHA as aforesaid, were undertaken maliciously, and include, without limitation, the following:

A.    Intentionally causing the arrest of the plaintiff, when the defendants knew or should have known there were no grounds nor probable cause for his arrest;

B.    The failure of the defendants to take into account facts which they knew cleared the plaintiff of the charges;

C.    The intent of the defendants from the beginning of their investigation to charge the plaintiff with a crime, due to motives other than justice in this case;

D.    The failure of the defendants' investigative techniques and procedures;

E.    The retention of an attorney, Defendant LATEEF GRAY, to supervise the investigation, while this attorney had conflicts of interest due to his direct professional relationship with the former client on legal issues that are closely related to the legal issue in the present representation, making GRAY subject to disqualification;

F.    Preparation of groundless reports and affidavits in order to obtain an arrest warrant against the plaintiff;

G.    Providing deceptive and incomplete information regarding the plaintiff's alleged conduct in Grand Jury proceedings, without informing the Grand Jury regarding significant exculpatory evidence; and,

H.    The procurement of groundless charges against the plaintiff based upon incomplete, unsupported evidence which the defendants knew or should have known was false, distorted or fabricated.

94.    As a direct legal result of the improper investigation and malicious prosecution of plaintiff KENNETH CHA undertaken in bad faith by defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, resulting in the criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

A.    Loss of personal freedom;

B.    Payments necessary for bond and expenses of defense, including attorneys' fees;

C.    Pain and suffering, both physical and emotional; and

D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

95.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

96.    In improperly investigating plaintiff KENNETH CHA and causing the malicious prosecution of plaintiff KENNETH CHA, as aforesaid, defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, acted despicably, with conscious disregard of plaintiff's rights, and further subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights. Defendants' conduct as aforesaid constituted malice and oppression under California Civil Code section 3294(c), and justify the imposition of exemplary or punitive damages.

97.    With respect to Defendants' conduct described herein, Defendants CHESA BOUDIN and LATEEF GRAY exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office. Defendants CHESA BOUDIN and LATEEF GRAY had managing authority over the conduct of defendants DANA DRUSINSKY; STEPHANIE LACAMBRA; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100. Defendants CHESA BOUDIN and LATEEF GRAY directed, authorized, and/or ratified the conduct of DANA DRUSINSKY; STEPHANIE LACAMBRA; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, as aforesaid.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, as hereinafter set forth.

**SECOND CLAIM FOR RELIEF - VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) - MUNICIPAL POLICY RESULTING IN DEPRIVATION OF RIGHTS**
**(AGAINST DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; AND DOES 1-100)**

98.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint into

this Second Claim for Relief, as if set forth herein in full.

99.    In January 2020, defendant CHESA BOUDIN assumed office as San Francisco District Attorney, and took control of the San Francisco DA's Office. During his incumbency, Defendant BOUDIN promulgated a policy of causing the improper investigations and prosecutions of allegations of police misconduct, without probable cause and for reasons other than justice for each case.

100.    Prior to January 2021, defendant LATEEF GRAY assumed the position of Managing Attorney for the Independent Investigation Bureau (IIB). Defendant GRAY, as supervising Managing Attorney of the IIB Unit, would oversee all IIB investigations, including that of the Sean Moore OIS. During his incumbency, Defendant GRAY promulgated a policy of improper investigations and prosecutions of allegations of police misconduct, without probable cause and for reasons other than justice for each case.

101.    At all times relevant herein, Defendants CHESA BOUDIN; LATEEF GRAY; CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, and each of them, enacted policies, procedures, customs, and practices that were implemented at the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, related to the improper prosecution of alleged police officer misconduct. Under the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE's policy, defendants sought the frequent and improper prosecution of allegations of police officer misconduct, irrespective of the actual case facts and the existence or nonexistence of probable cause. Defendants' policy was intended to put pressure on the SF Police Department and the City, to coerce them into changing SFPD policies related to police officers' use of force. The policy was also intended to improve the standing of defendants BOUDIN and the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE with certain political interests and communities. Pursuant to defendants' improper policy, cases against police officers were pursued in bad faith for the political reasons noted above, even if such cases had no merit, were unlikely to win, and would infringe on the affected officer's rights. In fact, all San Francisco police officer use of force cases brought by the Boudin administration have since been dismissed or acquitted.

102.    The aforesaid policies, procedures, customs, and practices promulgated by Defendants CHESA BOUDIN and LATEEF GRAY at the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE

were highly likely to result in wrongful arrests, malicious prosecutions, and/or other deprivations of constitutional rights of the affected police officers, including plaintiff KENNETH CHA. In enacting, promulgating, enforcing, and/or condoning said policies and practices, Defendants and each of them acted with deliberate indifference to the rights of the affected police officers, including plaintiff KENNETH CHA, and deliberately failed to enact policies that were necessary to prevent such constitutional violations.

103.    As a direct legal result of the municipal policies and practices promulgated by Defendants CHESA BOUDIN; LATEEF GRAY; CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, as aforesaid, Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, conducted a bad faith investigation of plaintiff KENNETH CHA, which caused the malicious prosecution of plaintiff. Defendants and each of them lacked probable cause or sufficient evidence to pursue the criminal prosecution of plaintiff KENNETH CHA. In investigating and prosecuting plaintiff, defendants and each of them acted primarily for a purpose other than to bring plaintiff KENNETH CHA to justice. The facts regarding defendants' improper investigation and malicious prosecution of plaintiff KENNETH CHA are described more fully in the First Claim for Relief of this Complaint.

104.    At all times relevant to this Complaint, the conduct of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, in causing the improper investigation of plaintiff KENNETH CHA, and the malicious prosecution of plaintiff, was under the color of law. Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, acted in the course and scope of their employment with Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE.

105.    As a result of the customs, practices, and policies of Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, which

constituted municipal policy, as aforesaid, Plaintiff KENNETH CHA was subjected to a violation of his right to be free from improper investigation and malicious prosecution, under the Fourth and Fourteenth Amendments to the United States Constitution.

106.    As a result of the customs, practices, and policies of Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, and each of them, resulting in the improper investigation, arrest, and criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

        A.    Loss of personal freedom;

        B.    Payments necessary for bond and expenses of defense, including attorneys' fees;

        C.    Pain and suffering, both physical and emotional; and

        D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

107.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

108.    In causing the improper investigation and malicious prosecution of plaintiff KENNETH CHA as aforesaid, defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, acted despicably, with conscious disregard of plaintiff's rights, and further subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights. Defendants' conduct as aforesaid constituted malice and oppression under California Civil Code section 3294(c), and justify the imposition of exemplary or punitive damages.

109.    With respect to defendants' conduct described herein, Defendants CHESA BOUDIN and LATEEF GRAY exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office. Defendants CHESA BOUDIN and LATEEF GRAY had managing authority over the conduct of defendants DANA DRUSINSKY; STEPHANIE LACAMBRA; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100. Defendants CHESA BOUDIN and LATEEF GRAY directed, authorized, and/or ratified the conduct of DANA DRUSINSKY; STEPHANIE LACAMBRA;

REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, as aforesaid.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

### THIRD CLAIM FOR RELIEF – NEGLIGENT HIRING, SUPERVISION, AND TRAINING
#### (AGAINST DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; AND DOES 1-100)

110. Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint into this Third Claim for Relief, as if set forth herein in full.

111. Plaintiff makes the claims in this Fourth Claim for Relief asserting theories of negligence under California Civil Code sec. 1714 and California common law. The state law claims in this action are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

112. Public employees are liable for the consequences of their negligent acts, to the same extent as private citizens, unless excepted by specific statutory immunities. (Govt. Code §820) As a public entity, defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; and DOES 1-100, and each of them, will be held responsible for the tortious acts of its employees performed in the course and scope of their employment. (Govt. Code §815.2)

113. Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, hired defendant ANDREW KOLTUNIAK for the position of Investigator with the Independent Investigation Bureau (IIB) of the San Francisco Assistant District Attorney's Office. With respect to the hiring of KOLTUNIAK, defendants CHESA BOUDIN and LATEEF GRAY had the authority to make hiring or firing decisions, to implement training, and/or to supervise KOLTUNIAK.

114. Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, hired defendants DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG for the position of Assistant District Attorneys (ADAs) with the San Francisco Assistant District

Attorney's Office. With respect to the hiring of DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG, defendants CHESA BOUDIN and LATEEF GRAY had the authority to make hiring or firing decisions, to implement training, and/or to supervise DRUSINSKY and LACAMBRA.

115.    At the time Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, hired Defendants ANDREW KOLTUNIAK, DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG, these persons were unfit and incompetent for the positions for which they were hired. Particularly, ANDREW KOLTUNIAK, DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG were not properly trained in the investigation and prosecution of officer-involved shooting (OIS) cases and other cases involving police misconduct.

116.    Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, knew or should have known that ANDREW KOLTUNIAK; DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG were unfit and incompetent for the positions for which they were hired, and particularly, were not properly trained in the investigation and prosecution of officer-involved shooting (OIS) cases.

117.    Subsequent to hiring ANDREW KOLTUNIAK, DANA DRUSINSKY and STEPHANIE LACAMBRA, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100 improperly trained ANDREW KOLTUNIAK, DANA DRUSINSKY and STEPHANIE LACAMBRA. Particularly, Defendants did not properly train ANDREW KOLTUNIAK; DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG regarding the investigation and/or prosecution of officer-involved shooting (OIS) cases and the need to respect relevant law and the officer's rights. Rather, as stated more fully in the Second Claim for Relief herein, Defendants implemented improper policies regarding the prosecution of allegations of police misconduct, with motives other than substantial justice, and with disregard for the rights of the accused officers. Defendants trained ANDREW KOLTUNIAK; DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG pursuant to these improper policies.

118.     Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, knew or should have known that, because of defendants ANDREW KOLTUNIAK; DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG's unfitness for the positions for which they were hired, and because of inadequate and improper training and direction by defendants, KOLTUNIAK, DRUSINSKY, LACAMBRA, and YOUNG were likely to subject police officer suspects, including plaintiff KENNETH CHA, to improper and malicious investigations, causing violations of their rights to be free of unreasonable seizures and their rights to be free from malicious prosecution, under the Fourth and Fourteenth Amendments to the United States Constitution.

119.     While supervising defendants ANDREW KOLTUNIAK; DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and defendants' employees, negligently directed and encouraged KOLTUNIAK, DRUSINSKY, LACAMBRA, and YOUNG to pursue the improper investigation of plaintiff KENNETH CHA, with the intent to prosecute plaintiff despite the lack of substantial justification or probable cause. The improper and malicious investigation, arrest, and prosecution of plaintiff CHA violated his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, as more fully described in the First Claim for Relief herein.

120.     The negligence of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, in hiring, training, and/or supervising defendants ANDREW KOLTUNIAK, DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG was a substantial factor in causing the malicious investigation, arrest, and prosecution of plaintiff KENNETH CHA, without substantial justification or probable cause.

121.     As a result of the negligence of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, in hiring, training, and/or supervising defendants ANDREW KOLTUNIAK, DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG, resulting in the improper

and malicious investigation, arrest and criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

      A.     Loss of personal freedom;

      B.     Payments necessary for bond and expenses of defense, including attorneys' fees;

      C.     Pain and suffering, both physical and emotional; and

      D.     Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

122.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

WHEREFORE, plaintiff KENNETH CHA prays for relief Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

## PRAYER

WHEREFORE, with respect to each cause of action listed above, Plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, as follows:

1.    Compensatory and general damages in an amount according to proof;

2.    Statutory damages, treble damages, and penalties pursuant to California Civil Code §52(b);

3.    Plaintiffs' costs, expenses, and reasonable attorneys' fees pursuant to 42 USC §1988; California Civil Code §51.7, 52, and 52.1; and California Code of Civil Procedure §1021.5;

4.    All other damages, penalties, costs, interest, and attorney fees as allowed by 42 USC §§1983 and 1988, Cal. Code of Civ. Proc. §§377.20 *et seq.* and 377.60 *et seq.* and as otherwise may be allowed by California and/or federal law;

5.    Pre- and post-judgment interest as permitted by law; and

6.    Such other and further relief as this Court may deem appropriate.

Further, as against Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; and ANDREW KOLTUNIAK only, Plaintiffs pray for exemplary and punitive damages under 42 U.S.C. §1983 and California Civil Code section 3294, in an amount according to proof.

Dated: August 2, 2024                          Respectfully submitted,

                                               **RAINS LUCIA STERN
                                               ST. PHALLE & SILVER, PC**


                                               _/s/ Eustace de Saint Phalle_
                                               By: Eustace de Saint Phalle
                                               Attorneys for Plaintiff KENNETH CHA


### DEMAND FOR JURY TRIAL

As to the matters complained of herein against Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, Plaintiff KENNETH CHA demands a trial by jury.

Dated: August 2, 2024                          Respectfully submitted,

                                               **RAINS LUCIA STERN
                                               ST. PHALLE & SILVER, PC**


                                               _/s/ Eustace de Saint Phalle_
                                               By: Eustace de Saint Phalle
                                               Attorneys for Plaintiff KENNETH CHA