1   DAVID CHIU, SBN 189542
    City Attorney
2   YVONNE MERÉ, SBN 189542
    Chief Deputy City Attorney
3   JENNIFER CHOI, SBN 184058
    Chief Trial Deputy
4   KARUN A. TILAK, SBN 323939
    Deputy City Attorney
5   Fox Plaza
    1390 Market Street, 6th Fl.
6   San Francisco, California 94102-5408
    Telephone:    (415) 554-3308
7   Facsimile:     (415) 437-4644
    E-Mail:         Karun.Tilak@sfcityatty.org
8

9   *Attorneys for Defendants*
    CITY AND COUNTY OF SAN FRANCISCO,
10  SAN FRANCISCO DISTRICT ATTORNEY'S
    OFFICE, CHESA BOUDIN, DANA DRUSINSKY,
11  STEPHANIE LACAMBRA, LATEEF GRAY,
    REBECCA YOUNG, and ANDREW KOLTUNIAK
12

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16  KENNETH CHA,                          Case No. 24-CV-04700-PHK

17        Plaintiff,                      **DEFENDANTS' MOTION TO DISMISS
                                          AND MEMORANDUM OF POINTS AND
18        vs.                             AUTHORITIES IN SUPPORT IN SUPPORT
                                          OF MOTION TO DISMISS**
19  CITY AND COUNTY OF SAN
    FRANCISCO, SAN FRANCISCO DISTRICT     Judge:          Peter H. Kang
20  ATTORNEY'S OFFICE, CHESA BOUDIN,      Hearing Date:   April 10, 2025
    DANA DRUSINSKY, STEPHANIE             Place:          Courtroom F, 15th Fl.
21  LACAMBRA, LATEEF GRAY, REBECCA        Time:           1:00 p.m.
    YOUNG, ANDREW KOLTUNIAK, and
22  DOES 1-100,

23        Defendants.

24

25

26

27

28

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

NOTICE OF MOTION AND MOTION ...................................................................................... 1

ISSUES TO BE DECIDED ......................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 3

    I.    Cha Shoots Moore on January 6, 2017 ............................................................ 3

    II.    DA's Office Determination to Pursue Criminal Charges Against Cha .................. 4

LEGAL STANDARD .................................................................................................................. 7

ARGUMENT ............................................................................................................................... 7

    I.    Cha's Complaint Fails to State a Cause of Action Against the Individual
        Defendants for Malicious Prosecution ...................................................... 7

        A.    Cha's Claim Against Boudin, Gray, Drusinsky, Lacambra, and Young is
            Untimely ......................................................................................... 8

        B.    Absolute Prosecutorial Immunity Bars Cha's Malicious Prosecution
            Claim ............................................................................................ 10

        C.    The Individual Defendants Are Entitled to Qualified Immunity ............... 14

    II.    The Complaint Fails to State a *Monell* Claim Because the DA's Office, Boudin,
        and Gray Acted as State Officials in Investigating and Prosecuting Cha ............. 19

    III.    Cha's Negligent Hiring, Training, and Supervision Claim Must Also Be
        Dismissed ............................................................................................ 21

        A.    Defendants Are Immune Under Government Code Sections 820.2 and
            821.6 ........................................................................................... 21

        B.    Cha Fails to Allege a Plausible Claim for Negligent Hiring, Training,
            and Supervision ............................................................................ 23

    IV.    The Court Should Dismiss Without Leave to Amend ........................................ 24

CONCLUSION ........................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Akhtar v. Mesa*
    698 F.3d 1202 (9th Cir. 2012) ................................................................................................7

*Arrington v. City of New York*
    628 F. App'x 46 (2d Cir. 2015) ...........................................................................................18

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...............................................................................................................7

*Awabdy v. City of Adelanto*
    368 F.3d 1062 (9th Cir. 2004) ...............................................................................................9

*Ayala v. City of South San Francisco*
    No. C 06-02061 WHA, 2007 WL 2070236 (N.D. Cal. Jul. 13, 2007) ...................................21

*Bernard v. Cnty. of Suffolk*,
    356 F.3d 495 (2d Cir. 2004) ................................................................................................12

*Buckley v. Fitzsimmons*
    509 U.S. 259 (1993) .......................................................................................................11, 12

*Burns v. Reed*
    500 U.S. 478 (1991) ..............................................................................................................12

*C.A. v. William S. Hart Union High Sch. Dist.*
    189 Cal. App. 4th 1166 (2010) .............................................................................................24

*Caldwell v. Montoya*
    10 Cal. 4th 972 (1995) ....................................................................................................21, 22

*Cannon v. Polk Cnty. Dist. Atty*
    501 F. App'x 611 (9th Cir. 2012) .........................................................................................21

*Chaudhry v. Aragón*
    68 F.4th 1161 (9th Cir. 2023) ...............................................................................................17

*City of Canton v. Harris*
    489 U.S. 378 (1989) ..............................................................................................................10

*City of Los Angeles v. Heller*
    475 U.S. 796 (1986) ..............................................................................................................19

*Cline v. Brusett*
    661 F.2d 108 (9th Cir. 1981) ..................................................................................................8

*Connelly v. Bornstein*
    33 Cal. App. 5th 783 (2019) ...................................................................................................9

*Craft v. White*
    840 F. App'x 372 (10th Cir. 2021) ........................................................................18

*Daniels-Hall v. Nat'l Educ. Ass'n*
    629 F.3d 992 (9th Cir. 2010) .................................................................................7

*de Villers v. Cnty. of San Diego*
    156 Cal. App. 4th 238 (2007) ...............................................................................24

*Del Campo v. Kennedy*
    517 F.3d 1070 (9th Cir. 2008) .............................................................................20

*District of Columbia v. Wesby*
    583 U.S. 48 (2018) ...............................................................................15, 18, 19

*Emps. Ins. of Wausau v. Granite State Ins. Co.*
    330 F.3d 1214 (9th Cir. 2003) .............................................................................23

*Escamilla v. Vannucci*
    97 Cal. App. 5th 175 (2023) .......................................................................8, 9, 10

*Est. of Abdollahi v. Cnty. of Sacramento*
    405 F. Supp. 2d 1194 (E.D. Cal. 2005) ................................................................21

*Est. of Levee v. Los Angeles Cnty.*
    No. CV 10-01266-SJO (FMOx), 2010 WL 11549362 (C.D. Cal. Aug. 26, 2010) .................21

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011) ...............................................................................7

*Galen v. Cnty. of Los Angeles*
    477 F.3d 652 (9th Cir. 2007) ...............................................................................17

*Garcia v. Rosenberg*
    42 Cal. App. 5th 1050 (2019) .................................................................................9

*Gerstein v. Pugh*
    420 U.S. 103 (1975) .............................................................................................15

*Gobel v. Maricopa Cnty.*
    867 F.2d 1201 (9th Cir. 1989) .............................................................................10

*Golino v. City of New Haven*
    950 F.2d 864 (2d Cir. 1991) ................................................................................17

*Greenlaw v. Cnty. of Santa Clara*
    125 F. App'x 809 (9th Cir. 2005) .........................................................................21

*Hartman v. Moore*
    547 U.S. 250 (2006) .............................................................................................13

*Haynesworth v. Miller*
    820 F.2d 1245 (D.C. Cir. 1987) .................................................................13

*Holt v. Noble House Hotels & Resort, Ltd*
    370 F. Supp. 3d 1158 (S.D. Cal. 2019) ........................................................23

*Imbler v. Pachtman*
    424 U.S. 409 (1976) ................................................................10, 11, 12, 13

*Jackson v. Barnes*
    749 F.3d 755 (9th Cir. 2014) ...................................................................20

*Jones v. Blanas*
    393 F.3d 918 (9th Cir. 2004) .....................................................................8

*Kaley v. United States*
    571 U.S. 320 (2014) ...............................................................................15

*Kalina v. Fletcher*
    522 U.S. 118 (1997) ................................................................10, 11, 12, 13

*Kentucky v. Graham*
    473 U.S. 159 (1985) ..................................................................................8

*Kimm v. Brannan*
    779 F. App'x 439 (9th Cir. 2019) ...............................................................12

*Lee v. Hanley*
    61 Cal. 4th 1225 (2015) .............................................................................8

*Leon v. County of Riverside*
    14 Cal. 5th 910 (2023) .........................................................................22, 23

*Lim v. City & Cnty. of S.F.*
    No. C 09-5083-CRB, 2010 WL 1838834 (N.D. Cal. May 4, 2010) ........................8

*Loftin v. City of Prentiss*
    33 F.4th 774 (5th Cir. 2022) ....................................................................18

*Malley v. Briggs*
    475 U.S. 335 (1986) ................................................................................13

*McMillian v. Monroe Cnty., Ala.*
    520 U.S. 781 (1997) ................................................................................19

*Monell v. Department of Social Services*
    436 U.S. 658 (1978) .....................................................................1, 3, 7, 19, 20

*Moore v. City & Cnty. of San Francisco*
    No. 18-cv-00634-SI, 2020 WL 7260530 (N.D. Cal. Dec. 10, 2020) .......................4

*Nailing v. City of Los Angeles*
  No. 2:22-cv-07224-AB-JC, 2024 WL 3851635 (C.D. Cal. June 11, 2024) .............................19

*Navarro v. Block*
  250 F.3d 729 (9th Cir. 2001) ...................................................................................................7

*Nelson v. Santa Barbara Cnty. Sheriff's Off.*
  No. B308778, 2024 WL 160960 (Cal. Ct. App. Jan. 16, 2024) .................................................23

*Pallas v. Accornero*
  No. 3:19-cv-01171-LB, 2019 WL 2359215 (N.D. Cal. June 3, 2019) ...............................16, 19

*People v. Moore,*
  No. A151276, 2018 WL 2016792 (Cal. Ct. App. May 1, 2018) ...........................................4, 15

*People v. Rios*
  23 Cal. 4th 450 (2006) ............................................................................................................14

*Phillips v. TLC Plumbing, Inc.*
  172 Cal. App. 4th 1133 (2009) ................................................................................................23

*Pitts v. Cnty. of Kern*
  17 Cal. 4th 340 (1998) ............................................................................................................20

*Polanco v. Diaz*
  76 F.4th 918 (9th Cir. 2023) ...................................................................................................14

*Ramirez v. City of Buena Park*
  560 F.3d 1012 (9th Cir. 2009) .................................................................................................15

*Rankin v. Bd. of Regents of Univ. Sys. of Ga.,*
  732 F. App'x 779 (11th Cir. 2018) ..........................................................................................18

*Rehberg v. Paulk*
  611 F.3d 828 (11th Cir. 2010) .................................................................................................14

*Religious Tech. Ctr. v. Wollersheim*
  971 F.2d 364 (9th Cir. 1992) ...................................................................................................21

*Roberts v. McAfee, Inc.*
  660 F.3d 1156 (9th Cir. 2011) ...........................................................................................14, 16

*Roe v. City & Cnty. of San Francisco*
  109 F.3d 578 (9th Cir. 1997) .............................................................................................11, 13

*Sample v. City of Woodbury*
  836 F.3d 913 (8th Cir. 2016) ...................................................................................................13

*Sanders v. City and Cnty. of San Francisco*
  226 F. App'x 687 (9th Cir. 2007) ............................................................................................14

*Sheehan v. Colangelo*
   53 F. App'x 584 (2d Cir. 2002) ..................................................................................12

*Smith v. Prosser*
   No. 94-17213, 1995 WL 478349 (9th Cir. Aug. 10, 1995) ........................................12

*Soto v. State of California*
   56 Cal. App. 4th 196 (1997) ......................................................................................21

*Stockley v. Joyce*
   963 F.3d 809 (8th Cir. 2020) ....................................................................................11

*Sudderth v. City & Cnty. of San Francisco*
   No. 00-2337-MMC, 2001 WL 764929 (N.D. Cal. June 27, 2001)....................................16, 19

*Tennison v. City & Cnty. of San Francisco*
   No. C 04-0574 CW, 2006 WL 733470 (N.D. Cal. Mar. 22, 2006) ..........................................14

*United States v. Gourde*
   440 F.3d 1065 (9th Cir. 2006) ..................................................................................15

*Vafi v. McCloskey*
   193 Cal. App. 4th 874 (Cal. Ct. App. 2011) ..................................................................9

*Van de Kamp v. Goldstein*
   555 U.S. 335 (2009)..................................................................................................13

*Van Ort v. Est. of Stanewich*
   92 F.3d 831 (9th Cir. 1996) ......................................................................................24

*Weiner v. San Diego Cnty.*
   210 F.3d 1025 (9th Cir. 2000) ..............................................................................19, 20

*Whren v. United States*
   517 U.S. 806 (1996)..................................................................................................16

*Wyrzykowski v. Cnty. of Marin*
   No. 3:14-CV-03825-LB, 2015 WL 3613645 (N.D. Cal. June 9, 2015) ..................................19

*Yee v. Cheung*
   220 Cal. App. 4th 184 (2013) ......................................................................................9

*Yousefian v. City of Glendale*
   779 F.3d 1010 (9th Cir. 2015) ....................................................................14, 15, 16, 18

*Zelig v. County of Los Angeles*
   27 Cal. 4th 1112 (2002) ............................................................................................24

**Codes and Statutes**

<u>Federal Statutes</u>
42 U.S.C. § 1983 ................................................................................................... *passim*

<u>State Statutes</u>
California Government Code
    § 815.2(a) ...................................................................................................21
    § 815.2(b) ...................................................................................................21
    § 820.2 .......................................................................................................21
    § 821.6 .........................................................................................21, 22, 23
    § 12550 ......................................................................................................20
    § 25303 .................................................................................................20, 22
    § 26500 ......................................................................................................22

California Penal Code
    § 192(a) .....................................................................................................14

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 10, 2025 at 1:00 p.m., Defendants City and County of San Francisco ("City"), San Francisco District Attorney's Office ("DA's Office"), and Chesa Boudin, Lateef Gray, Rebecca Young, Dana Drusinsky, Stephanie Lacambra, and Andrew Koltuniak (together "Individual Defendants") will and hereby do move this Court, located in Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, for an order dismissing Plaintiff Kenneth Cha's ("Cha") Complaint ("Complaint") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that Cha's claims are beyond the statute of limitations, are barred by absolute prosecutorial immunity and/or qualified immunity, are barred by the Eleventh Amendment, and fail to allege facts stating a claim for relief on any cause of action.  The motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Request for Judicial Notice and Declaration of Karun Tilak filed herewith, the pleadings in this action, and such other matters as may be considered by the Court at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES TO BE DECIDED

1.    Whether Cha's malicious prosecution claim against Defendants Boudin, Gray, Drusinsky, Lacambra, and Young is barred by the statute of limitations under California Code of Civil Procedure section 340.6.

2.    Whether Cha's malicious prosecution claim against the Individual Defendants must be dismissed because they are entitled to absolute prosecutorial immunity.

3.    Whether Cha's malicious prosecution claim against the Individual Defendants must be dismissed under the doctrine of qualified immunity because Cha fails to allege a constitutional violation and/or any such violation was not clearly established.

4.    Whether Cha's complaint fails to state a cause of action under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) because Boudin and the DA's Office acted in their capacity as state officials, and the City is an improper defendant.

5.      Whether Cha's complaint fails to state a cause of action for negligent hiring, training, and supervision because the Defendants are entitled to immunity under the California Government Code, and Cha fails to plausibly allege the elements of negligent hiring, training, and supervision.

**INTRODUCTION**

On January 6, 2017, Plaintiff former San Francisco Police Department ("SFPD") officer Kenneth Cha shot Sean Moore ("Moore") on the front steps of his home.  Moore died three years later in state prison, and the coroner listed his cause of death as a homicide attributable to severe injuries he suffered as a result of being shot by Cha.  Defendant Chesa Boudin, the former District Attorney of San Francisco, and attorneys working for his office—including Defendants Drusinsky, Gray, Lacambra, and Young—exercising their role as state prosecutors, evaluated and ultimately brought criminal charges against Cha for voluntary manslaughter and assault with a semiautomatic firearm. Defendant Koltuniak, an investigator with the DA's Office, prepared an affidavit in support of an arrest warrant for Cha.

After DA Boudin was recalled, the new District Attorney, Brooke Jenkins, exercised her prosecutorial discretion not to pursue the charges against Cha, and they were dismissed.  Cha now complains that he was maliciously prosecuted in violation of his constitutional rights, his prosecution was part of a broader policy enacted by Boudin and the DA's Office to pursue biased prosecutions of police officers, and the DA's Office negligently hired and trained staff who lacked the appropriate experience to handle cases of police officer misconduct.  While Cha may disagree with the decision to pursue criminal charges against him, he cannot state a viable cause of action against any Defendant.

Cha's first cause of action for malicious prosecution fails on multiple grounds.  The claim is untimely against Defendants Boudin, Gray, Drusinsky, Lacambra, and Young because California law imposes a one-year statute of limitations for malicious prosecution claims against attorneys.  The claim also fails against all of the Individual Defendants because they are absolutely immune from suit for evaluating the evidence and deciding to file criminal charges against Cha.

Alternatively, the Individual Defendants are entitled to qualified immunity.  Cha fails to plausibly allege the elements of a constitutional violation because he cannot show a lack of probable cause where Cha undisputedly shot Moore during a quarrel and the coroner determined the death was

a homicide.  Indeed, many of Cha's allegations are verifiably false.  Judicially noticeable court documents, including the application for his arrest warrant and transcripts of the grand jury proceedings—both of which are referenced in his complaint—clearly show that exculpatory evidence was not withheld.  But even if Cha could allege a constitutional violation, he cannot show that the Individual Defendants violated clearly established law in declining to give dispositive weight to Cha's assertion of self-defense over other available evidence.

Cha's second cause of action under *Monell* also fails because Cha cannot allege any constitutional violation.  And it fails for the additional reason that prosecutors act as state officials when evaluating and initiating criminal proceedings.  The City is therefore an improper defendant, and Boudin, Gray, and the DA's Office are entitled to Eleventh Amendment immunity as state actors.

Cha's third cause of action, a state-law claim for negligent hiring, training, and supervision, is barred by the statutory immunities for discretionary acts and the initiation of official proceedings under Government Code sections 820.2 and 821.6, and, in any event, relies on threadbare allegations insufficient to support a plausible claim for relief.

These myriad deficiencies cannot be cured by amendment, and the Court should therefore dismiss Cha's complaint without leave to amend.

## FACTUAL BACKGROUND

### I.    Cha Shoots Moore on January 6, 2017

On January 6, 2017 Cha and his partner, SFPD Officer Colin Patino, were called to Moore's house in response to a complaint that Moore was violating a temporary restraining order obtained by his neighbor.  Compl. ¶ 26.  Cha climbed the stairway of Moore's house and rang the doorbell.  *Id.* ¶ 27.  A metal gate separated the landing area in front of the door from the rest of the landing and the stairway.  *Id.*

Over the course of several minutes, Moore angrily yelled at the officers from behind the metal gate and demanded that they leave, at one point threatening to call and report the officers and asking for Patino's badge number.  Compl. ¶¶ 28–30.[1]  Moore then opened and stepped through the metal

---

[1] A California Court of Appeal later determined that Cha and Patino were not lawfully performing their duties after they ignored Moore's repeated demands that they leave his stairway

gate and, while still on the landing, continued to demand that the officers leave. *Id.* ¶ 31. In response, Cha pepper sprayed Moore. *Id.* Moore raised his left foot, and Cha claimed in a subsequent interview that Moore kicked him. *Id.* ¶ 32. The officers retreated down the stairs, and Moore picked up the restraining order documents and went into the house. *Id.* Patino ordered Moore to return the restraining order papers and come out of the house because he was under arrest. *Id.* ¶ 33. Moore tossed the restraining order papers through the metal gate, and reentered the house. *Id.*

Nevertheless, the officer continued to insist that Moore come out and threatened to "kick the gate open." Compl. ¶ 34. Moore came out, complaining that he could not see. He squatted, clenched his fists, and threatened the officers. *Id.* As he bent to pick something up from the stairs, Cha and Patino ordered him to get on the ground. *Id.* ¶ 35. Moore instead retreated up the stairs. *Id.* The officers then advanced on him, and Patino struck him twice with a night stick. *Id.* Patino later claimed that Moore tried to block the baton and punched him in the face, resulting in Patino suffering a broken nose. *Id.* At this point, Cha drew his firearm. As Moore raised his leg, Cha shot him twice, in the abdomen and in the leg. *Id.* ¶ 36.

Moore was treated for serious injuries as a result of the shooting and was left with a permanent scar. Compl. ¶ 38. He died three years later, on January 20, 2020. *Id.* ¶ 40. While he suffered from numerous medical conditions, the coroner listed his death as a homicide because it was "primarily attributed to acute intestinal obstructions and severe abdominal adhesions from the gunshot injury." *Id.* ¶ 41.

## II.    DA's Office Determination to Pursue Criminal Charges Against Cha

Subsequent to the January 6, 2017 shooting—but prior to Moore's death—the DA's Office under former DA George Gascón investigated Cha's conduct. Compl. ¶ 42. In 2019, a report prepared by the Managing Attorney for the DA's Office Independent Investigations Bureau ("IIB"), the unit responsible for investigating officer-involved shootings, concluded that the prosecution would not be able to meet its burden at trial of showing beyond a reasonable doubt that Cha's use of deadly

---

because they no longer had a basis to remain on his property. *See People v. Moore*, No. A151276, 2018 WL 2016792, at *6–7 (Cal. Ct. App. May 1, 2018) (unpublished); *see also Moore v. City & Cnty. of San Francisco*, No. 18-cv-00634-SI, 2020 WL 7260530 at *6–7 (N.D. Cal. Dec. 10, 2020).

force was not in lawful self-defense.  *Id.* ¶¶ 43–44.  However, DA Gascón did not sign on the report, and it was never finalized, because he deferred to incoming DA Chesa Boudin to make a determination about whether to pursue charges.  *Id.* ¶ 44.  Another assistant district attorney prepared a memorandum on January 16, 2020 (again, prior to Moore's death) also recommending against prosecution.  *Id.* ¶ 48.

After entering office in January 2020, Boudin assigned Lacambra and Drusinsky to the Moore case.  Compl. ¶ 49.  He also appointed Lateef Gray to be Managing Attorney of the IIB.  *Id.* ¶ 50.  Boudin and Gray retained Koltuniak as an investigator in the IIB.  *Id.* ¶ 62.  Cha alleges that Lacambra, Drusinsky, and Koltuniak were inexperienced in handling criminal investigations and prosecutions and had a "personal bias against police officers."  *Id.* ¶¶ 49, 62.  Cha alleges that Gray's involvement as managing attorney of the IIB created a conflict of interest because, between January and March 2020, Gray remained counsel of record for Sean Moore and his family in their civil lawsuit against the City related to Moore's shooting.  *Id.* ¶¶ 50–52.  Cha also speculates that Gray "[p]otentially" had an interest in a financial settlement that the City's Board of Supervisors approved for Moore's family in June 2021.  *Id.* ¶ 54.

Cha alleges that, in June 2020, Drusinksy and Lacambra improperly withheld relevant information from a draft search warrant for his and Officer Patino's phones.  *Id.* ¶¶ 56–57.  However, he does not allege that the search warrant was ever finalized or executed.

In July 2021, a Grand Jury was empaneled to hear evidence presented by Drusinsky and Lacambra regarding Cha's shooting of Moore.  *Id.* ¶ 68.  Cha alleges that Drusinsky and Lacambra omitted exculpatory information, including failing to identify other medical issues Moore suffered from at the time of his death or providing grand jurors with information about prior instances of Moore's violent behavior.  Cha alleges that Drusinky and Lacambra made an incomplete and biased presentation to the Grand Jury because of inadequate training and improper direction from Boudin.  *Id.* ¶¶ 69–71.  Contrary to Cha's allegations, the unsealed grand jury transcripts on file with the Superior Court actually show that the grand jury heard from multiple officers regarding Moore's prior aggressive behavior.  *See, e.g.*, Decl. of Karun Tilak ("Tilak Decl.") Ex. B (Grand Jury Tr. Vol. I) at 17–18, 20–23; *id.* Ex. C (Grand Jury Tr. Vol. II) at 180–87; *id.* Ex. E (Grand Jury Tr. Vol. IV) at 418–

25.[2]  The grand jury also heard extensive testimony from Officer Patino regarding the entire January 6

incident, including the threat that the officers perceived from Moore given his size and position at the

top of the stairs.  *See* Tilak Decl. Ex. D (Grand Jury Tr. Vol. III) at 225–30, 236, 247, 249–51, 260–61;

272, 276, 279–81, 291–92, 307–09; *see generally id.* 211–328.  Cha does not allege that the Grand

Jury returned an indictment.  In fact, it appears that Cha was ultimately charged by felony complaint.

Tilak Decl. Ex. A at 001–002.[3]

In October 2021, Koltuniak drafted an arrest warrant for Cha's arrest.  Cha alleges that the

arrest warrant failed to include exculpatory information, including the fact that Moore died more than

three years after the shooting and exculpatory information relevant to Cha's self-defense claim.

Compl. ¶¶ 65–66.  Cha attributes these alleged deficiencies to Koltuniak's lack of experience and

competence, and his poor training and inappropriate direction by Boudin and Gray.  *Id.* ¶ 67.  The

arrest warrant application contradicts Cha's allegations.  *See* Tilak Decl. Ex. A.  In the affidavit

attached to the arrest warrant application, Koltuniak expressly disclosed the fact that Cha had a

rebuttable defense because Moore died more than three years after the incident.  *Id.* at 020.  Koltuniak

also attached the coroner's report.  *See id.* at 014.[4]  Koltuniak referenced Cha's self-defense

justification and explained why the bodyworn camera footage did not support Cha's account.  *Id.* at

019.  Koltuniak also attached Cha and Patino's Body Worn Camera footage and transcripts of the

footage that depicted the incident.  *See id.* 011–014, 020, 025–089.[5]  Further, Koltuniak attached Cha's

voluntary statement after the incident, in which Cha described his version of events and his fear of

being attacked by Moore.  *See id.* at 99–106, 109, 119; *see generally id.* at 090–122.  After being

---

[2] For the reasons stated in Defendants' concurrently filed Request for Judicial Notice, judicial notice of the exhibits to the Tilak Declaration is appropriate under Federal Rule of Evidence 201 without converting Defendants' motion to dismiss into a motion for summary judgment.

[3] The individual documents within Exhibit A are not consecutively paginated.  Defendants have added consecutive pagination to the bottom right corner of each page starting with the prefix Ex. A-xxx for ease of reference.  Page number references refer to these pages.

[4] Koltuniak also submitted the Marin County Medical Examiner/Coroner's Report as part of the arrest warrant packet.  Tilak Decl. Ex. A at 014.  That record remains sealed pursuant to an order from the Superior Court.  *Id.* at 003.

[5] The bodyworn camera footage was submitted on a USB drive and is not attached to the Tilak Declaration.

provided with the arrest warrant application, affidavit, and exhibits, a Superior Court Judge signed the arrest warrant.  Compl. ¶ 64.

On November, 2, 2021, Cha was arrested and criminal proceedings against him were commenced.  Young served as the lead prosecutor.  Compl. ¶ 73.  Defendant Boudin was recalled from office on July 8, 2022, and the new District Attorney, Brooke Jenkins, took office on January 8, 2023.  *Id.* ¶ 74.  After her appointment, a different prosecutor was assigned to the case and moved to dismiss the charges against Cha.  *Id.* ¶ 76.  The charges against Cha were dismissed on July 18, 2023. *Id.* ¶ 78.  Cha filed the present action on August 2, 2024.

## LEGAL STANDARD

A court accepts as true the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, this tenet is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Likewise, a court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations.  Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (cleaned up).  In addition to the complaint itself, the court may consider any exhibits attached to the complaint and any matters subject to judicial notice, and need not accept as true any of the complaint's allegations that are contradicted by them.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

### I.  Cha's Complaint Fails to State a Cause of Action Against the Individual Defendants for Malicious Prosecution

Cha's first cause of action alleges a malicious prosecution claim under 42 U.S.C. § 1983 against the Individual Defendants.  To the extent that these claims are asserted against the Individual Defendants acting in their personal capacities,[6] they must be dismissed for at least three reasons.  First,

---

[6] Cha's second cause of action, which alleges an unconstitutional policy or practice under *Monell*, also identifies Boudin and Gray.  Cha's complaint claims to sue the Individual Defendants in both their individual and official capacities.  Compl. ¶¶ 14–19.  However, his causes of action fail to specify which claims are asserted against these Defendants acting in their individual capacities as

with respect to Defendants Boudin, Gray, Drusinsky, Lacambra, and Young, the malicious prosecution cause of action is barred by the statute of limitations. Second, the Individual Defendants are protected by absolute prosecutorial immunity for claims related to their decision to prosecute Cha. Third, even if absolute immunity does not apply, Cha's claims are barred by qualified immunity because there was probable cause to arrest and charge Cha and, even if there was not, the lack of probable cause was not clearly established.

### A.    Cha's Claim Against Boudin, Gray, Drusinsky, Lacambra, and Young is Untimely

Cha's Section 1983 malicious prosecution cause of action accrued on July 18, 2023, when the underlying criminal charges against him were dismissed. *See Cline v. Brusett*, 661 F.2d 108, 110–11 (9th Cir. 1981) (malicious prosecution claim accrues when the "case has been terminated in favor of the accused"). While federal law specifies when a malicious prosecution cause of action accrues, it does not prescribe a statute of limitations period and courts instead look to state law to determine the limitations period. *See Lim v. City & Cnty. of S.F.*, No. C 09-5083-CRB, 2010 WL 1838834, at *6 (N.D. Cal. May 4, 2010) (citing *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004)). While California generally applies a two-year statute of limitations for malicious prosecution claims, malicious prosecution claims against *attorneys* are subject to a shorter one-year statute of limitations. Cha's claim was therefore untimely because it was filed on August 2, 2024, more than a year after it accrued.

Under California Code of Civil Procedure ("CCP") section 340.6, a claim against an attorney for a wrongful act or omission "arising in the performance of professional services" must be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, facts establishing the wrongful act or omission. The California Supreme Court has explained that CCP section 340.6 applies to any claim against an attorney that, if proved, would also establish that the attorney violated a professional obligation, such as "obligations embodied in the Rules of Professional Conduct." *Lee v. Hanley*, 61 Cal. 4th 1225, 1236–37 (2015); *accord Escamilla v. Vannucci*, 97 Cal. App. 5th 175, 187 (2023) ("The test *Lee* established . . . focuses on

---

opposed to their official capacities. To the extent that the first and second causes of action are asserted against the Individual Defendants in their official capacities, the claims are effectively alleged against the City and the DA's Office and are addressed in Part II below. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

whether the plaintiff's claim is based on facts that, if proved, would establish a violation of the
attorney's professional obligation. . . .").  The application of the one-year statute of limitation does not
depend on the plaintiff's relationship to the attorney, but rather on the cause of action asserted.
*Escamilla*, 97 Cal. App. 5th at 187.

California courts regularly apply section 340.6 to malicious prosecution claims against
attorneys.  *See Escamilla*, 97 Cal. App. 5th at 186–90; *Connelly v. Bornstein*, 33 Cal. App. 5th 783,
793–99 (2019); *Garcia v. Rosenberg*, 42 Cal. App. 5th 1050, 1059–60 (2019); *Yee v. Cheung*, 220 Cal.
App. 4th 184, 194 (2013); *Vafi v. McCloskey*, 193 Cal. App. 4th 874, 880 (Cal. Ct. App. 2011).  As
these courts have explained, the elements of a malicious prosecution claim necessarily touch on an
attorney's professional obligations.  *See Connelly*, 33 Cal. App. 5th at 794 (holding that an "attorney
who engages in malicious prosecution violates the obligation, embodied in the Rules of Professional
Conduct, to not 'bring or continue an action . . . without probable cause and for the purpose of
harassing or maliciously injuring any person.'" (quoting Cal. Rules Prof. Conduct 3.1(a)(1)); *see also*
*Escamilla*, 97 Cal. App. 5th at 187.

The one-year statute of limitations prescribed by CCP section 340.6 therefore applies to Cha's
malicious prosecution claims against Boudin, Gray, Young, Lacambra, and Drusinsky.  Each of these
defendants is alleged to be acting in the scope of their employment as attorneys and prosecutors with
the District Attorney's Office.  Compl. ¶¶ 14–18. To establish a malicious prosecution claim against
these defendants, Cha must show that they "prosecuted [him] with malice and without probable
cause." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  As *Connelly* and *Escamilla*
explain, these elements—if proved—would implicate Boudin, Gray, Young, Lacambra, and
Drusinsky's professional obligations under Rule of Professional Conduct 3.1(a)(1) not to pursue an
action "without probable cause and for the purpose of harassing or maliciously injuring any person."
Cal. R. Prof. Conduct 3.1(a)(1).  Moreover, because the allegations relate to these Defendants' roles as
public prosecutors in evaluating and bringing criminal charges, Cha's allegations also implicate Rule
of Professional Conduct 3.8, which requires that a prosecutor in a criminal case "not institute or
continue to prosecute a charge that the prosecutor knows[] is not supported by probable cause." *Id.*
3.8(a).

Because Cha's malicious prosecution claim, "if proved, would establish a violation of the attorney's professional obligation," *Escamilla*, 97 Cal. App. 5th at 187, the one-year statute of limitations in CCP section 340.6 applies, and Cha's malicious prosecution claim against Boudin, Gray, Drusinsky, Lacambra, and Young is time-barred.

### B.    Absolute Prosecutorial Immunity Bars Cha's Malicious Prosecution Claim

Cha's malicious prosecution claim fundamentally faults the Individual Defendants for their roles in evaluating the evidence and initiating criminal proceedings against him, allegedly based on bias and conflict of interest.  But the Individual Defendants are absolutely immune from Cha's attempts to second-guess their prosecutorial decisions.  The Supreme Court has made clear that a prosecutor is not amenable to suit under Section 1983 for actions taken to initiate and prosecute criminal offenses.  *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976).  This immunity is vital because a prosecutor "is duty bound to exercise his best judgment . . . in deciding which suits to bring and in conducting them in court," and "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."  *Id.* at 424–25.  While this absolute immunity does not extend to purely investigative tasks undertaken by a prosecutor, it broadly covers a variety of actions taken by prosecutors that are "intimately associated with the judicial phase of the criminal process."  *Id.* at 430.  The determination of whether absolute immunity applies turns on "the nature of the function performed, not the identity of the actor who performed it."  *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (cleaned up).  Thus, investigators employed by a prosecutor in connection with a criminal prosecution are also "entitled to the same degree of immunity as prosecutors."  *Gobel v. Maricopa Cnty.*, 867 F.2d 1201, 1203 n.5 (9th Cir. 1989), *abrogated on other grounds by City of Canton v. Harris*, 489 U.S. 378 (1989).

Here, the core of Cha's claim is that the Individual Defendants decided to file criminal charges and prosecute Cha without probable cause because they ignored or suppressed evidence allegedly showing that Cha engaged in lawful self-defense.  *See* Compl. ¶¶ 73, 93(B), (H); *see also id.* ¶¶ 34–37, 43.  But this is precisely the kind of conduct protected by absolute immunity.  The Supreme Court has made clear that a prosecutor's conduct "in initiating a prosecution" undoubtedly implicates the

prosecutor's role as an advocate and judicial officer and is protected by absolute immunity. *See Imbler*, 424 U.S. at 431. For instance, in *Imbler*, the Supreme Court found that the prosecutor was entitled to immunity even though the petitioner alleged that the prosecution suppressed exculpatory evidence and initiated criminal proceedings despite being aware of a lie detector test that cleared the petitioner of the offense. *Id.* at 416, 424–31; *see also Kalina*, 552 U.S. at 130 (prosecutor's "determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court" were all protected by absolute immunity); *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (noting that the "a prosecutor would be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict. . . ."). Courts of Appeal have likewise found that a prosecutor's evaluation of the evidence is entitled to immunity. *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997) ("[A] prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity . . . ."); *Stockley v. Joyce*, 963 F.3d 809, 818 (8th Cir. 2020) (decision that there was sufficient evidence to end investigation in one day and file charges "clearly falls within the prosecutorial function of initiating judicial proceedings").

Here, Young is only alleged to have been involved as the lead prosecutor on the case, and her role as an advocate for the People of the State of California is perforce protected by absolute immunity. Compl. ¶ 73. Likewise, because Cha also seeks to hold the other Individual Defendants for their allegedly biased and politically motivated determination that there was probable cause to file criminal charges against Cha, they too are absolutely immune from suit.

Cha complains about various other aspects of the Individual Defendants' conduct leading up to the prosecution. While he attempts to characterize these acts as "investigative," they all fall within the ambit of absolute prosecutorial immunity.

- **Grand Jury Proceedings**: Cha claims that the Individual Defendants—specifically Drusinsky and Lacambra—withheld exculpatory information from the grand jury. Compl. ¶¶ 68–71, 93(G). These allegations are contradicted by the grand jury transcript and need not be credited. *See* Tilak Decl. Exs. B–E; *see also* Background Part II, *supra*; Argument Part I.C.1, *infra*. But in any event, absolute prosecutorial immunity extends to a prosecutor's conduct before a grand jury. *Burns v.*

*Reed*, 500 U.S. 478, 490 (1991); *see also id.* at 490 n.6 (noting "widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries" and collecting cases).[7]  This includes the decision to withhold exculpatory information from a grand jury.  *See Kimm v. Brannan*, 779 F. App'x 439, 442 (9th Cir. 2019) (absolute immunity where prosecutor was alleged to have "presented false or misleading testimony to the grand jury, and did not present the grand jury with exculpatory information"); *Smith v. Prosser*, No. 94-17213, 1995 WL 478349, at *2 (9th Cir. Aug. 10, 1995) (unpublished) (withholding of exculpatory affidavit from grand jury covered by absolute immunity); *see also Imbler*, 424 U.S. at 431–32 n.34 (explaining that "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503–04 (2d Cir. 2004) (prosecutors absolutely immune from claim that they initiated prosecutions for political reasons, and presented false evidence and withheld exculpatory evidence from grand juries).

- **Arrest Warrant**:  Cha alleges that exculpatory information was excluded from the arrest warrant application.  Compl. ¶¶ 64–67, 93(A), (F).  These allegations, too, are contradicted by the arrest warrant application and need not be credited.  *See* Tilak Decl. Ex. A; *see also* Background Part II, *supra*; Argument Part I.C.1, *infra*.  But even if they were accepted as true, the "selection of the particular facts to include" in an affidavit in support of an arrest warrant is protected by prosecutorial immunity.  *Kalina*, 522 U.S. at 130 (holding that prosecutor had absolute immunity for selection of what facts to include in application for arrest warrant, but that the immunity did not extend to vouching for truth of the allegations); *Sheehan v. Colangelo*, 53 F. App'x 584, 585–86 (2d Cir. 2002) (prosecutor immune from liability stemming from his instruction to investigator to omit exculpatory information from arrest warrant application).  Thus, with respect to the arrest warrant, because Cha seeks to hold Defendants Boudin, Gray, Drusinsky, Lacambra, and Young liable for withholding

---

[7] In *Buckley*, the Supreme Court found that absolute immunity did not apply to the prosecutor's fabrication of evidence and the subsequent presentation of that fabricated evidence to a grand jury. 509 U.S. at 274–75.  Here, however, Cha does not allege that the evidence presented to the grand jury was fabricated by the prosecutors, only that exculpatory evidence was not presented.  *Buckley* is therefore distinguishable.

exculpatory information, they are protected by absolute immunity.  As discussed *infra*, Koltuniak—the investigator who signed the affidavit—is entitled to qualified immunity. [8]

- **Personal Bias/Conflict of Interest**: Cha further asserts that the Individual Defendants' prosecutorial decisions were based on personal bias and a conflict of interest.  Compl. ¶¶ 49, 50–55, 91, 92, 93(C), (E).  But absolute immunity applies even if a prosecutor is alleged to have acted with malice or other improper motive.  *Imbler*, 421 U.S. at 427 (acknowledging that absolute immunity would bar an action against a prosecutor whose actions are "malicious or dishonest"); *see also Roe*, 109 F.3d at 584 (absolute immunity applies even if prosecutor's judgment is "harsh, unfair or clouded by personal animus"); *Sample v. City of Woodbury*, 836 F.3d 913, 916–17 (8th Cir. 2016) (prosecutor entitled to absolute immunity despite alleged conflict of interest from filing criminal charges against plaintiff while representing victim of plaintiff's actions in civil proceedings).

- **Improper Supervision, Training, and Prosecutorial Policies:** To the extent that Cha seeks to hold Boudin and Gray individually liable under Section 1983 for improperly supervising or training the specific prosecutors assigned to the Cha case or enacting a "policy of improper prosecutions of allegations of police misconduct," that too is protected by absolute immunity.  Compl. ¶¶ 45, 62, 97; *see, e.g.*, *Van de Kamp v. Goldstein*, 555 U.S. 335, 340 (2009) (absolute immunity applies to allegations that district attorney and chief deputy failed to enact policy or train or supervise staff regarding sharing of information about jailhouse informants); *Haynesworth v. Miller*, 820 F.2d 1245, 1268–69 (D.C. Cir. 1987) (absolute immunity applied to prosecutor's "formulation of general policies on prosecution" because there was "no meaningful distinction between a decision on prosecution in a single instance and decisions on prosecution formulated as policies for general application"), *abrogated on other grounds*, *Hartman v. Moore*, 547 U.S. 250 (2006).

---

[8] In *Malley v. Briggs*, 475 U.S. 335 (1986), the Supreme Court held that a police officer who signs an affidavit in support of an arrest warrant is only entitled to qualified immunity.  In *Kalina*, the Court likewise held that an attorney who signs an affidavit is not entitled to absolute immunity with respect to claims regarding the truth of statements made therein.  522 U.S. at 130.  Here, Koltuniak is alleged to have signed the affidavit and under *Malley* and *Kalina*, Defendants seek qualified immunity for his actions.  *See* Argument Part I.C, *infra*.

C. **The Individual Defendants Are Entitled to Qualified Immunity**

Even if the Individual Defendants are not entitled to absolute prosecutorial immunity, their actions are protected by qualified immunity. Qualified immunity applies if Cha fails to plead sufficient facts to allege that the Defendants "(1) violated a constitutional right that (2) was clearly established at the time of the violation." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (citation omitted). Cha's claim fails at both steps of the inquiry.

1. **Cha Fails to Plausibly Allege a Constitutional Violation**

Cha's complaint alleges that he was improperly investigated, arrested, and prosecuted without probable cause because he acted in reasonable self-defense. To establish a constitutional violation arising out of his arrest and prosecution, Cha must necessarily show that there was no probable cause. [9] *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims."). The determination of probable cause is an objective one, focused on whether "it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011) (citation omitted). Probable cause is a question of law, *id.*, and the Court need not accept as true Cha's bald allegation that it was lacking.

Here, Cha was charged with voluntary manslaughter, "the unlawful killing of a human being without malice" "upon a sudden quarrel or heat of passion" or in imperfect self-defense. Cal. Penal Code § 192(a); *People v. Rios*, 23 Cal. 4th 450, 460 (2006). He was also charged with assault with a semi-automatic firearm. Based only on the allegations in Cha's complaint, it is undisputed that Cha

---

[9] As an initial matter, the mere commencement of an investigation into Cha's conduct does not violate a constitutional right. "The initiation of a criminal investigation in and of itself does not implicate a federal constitutional right. The Constitution does not require evidence of wrongdoing or reasonable suspicion of wrongdoing by a suspect before the government can begin investigating that suspect." *Rehberg v. Paulk*, 611 F.3d 828, 850 n.24 (11th Cir. 2010); *Sanders v. City and Cnty. of San Francisco*, 226 F. App'x 687, 689 (9th Cir. 2007) (Charles Breyer, J.) ("Appellants point to no case law that supports the proposition that probable cause must exist before an investigation can commence. That is not surprising, given that the impetus behind criminal investigations is to develop probable cause."); *Tennison v. City & Cnty. of San Francisco*, No. C 04-0574 CW, 2006 WL 733470, at *24 (N.D. Cal. Mar. 22, 2006) ("There is no constitutional right to have witnesses interviewed in a particular manner or to have the investigation carried on in a particular way").

shot Moore with a semiautomatic firearm in the course of a quarrel. Compl. ¶¶ 34–37. Moore was gravely injured as a result of the shooting. *Id.* ¶ 38. And after his death three years later, the coroner's report listed Moore's cause of death as a homicide attributable to injuries suffered from the shooting. *Id.* ¶¶ 40–41. It is also undisputed that, at the time of the investigation and charges at issue here, a Court of Appeal had determined that Cha and Patino were not lawfully present at Moore's home when the altercation occurred. *See People v. Moore*, 2018 WL 2016792, at *6–7. Cha does not allege that the Individual Defendants falsified any of this evidence or that these facts would be insufficient in and of themselves to create probable cause. Rather, Cha's claim rests on his argument that any probable cause was vitiated because he engaged in lawful self defense and the prosecution would not be able to carry its burden at trial to prove beyond a reasonable doubt that Cha did not engage in lawful self-defense. Compl. ¶¶ 37, 43.

Cha elides the distinction between the prosecution's high burden at trial—proof beyond a reasonable doubt—and the probable cause standard for malicious prosecution, which is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause only requires a "fair probability" and not certainty or even a preponderance of the evidence. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (*en banc*) (citation omitted). Crucially, probable cause "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Courts have routinely found that an assertion of self-defense does not negate probable cause. *See, e.g.*, *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts"); *id.* at 68 ("[I]nnocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect."); *Yousefian*, 779 F.3d at 1014 ("mere existence of some evidence that could suggest self-defense does not negate probable cause"); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (citation omitted) ("[T]he test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior."); *Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215, at *4–5 (N.D. Cal. June 3, 2019) (Beeler,

M.J.) (rejecting argument that assertion of self-defense negated probable cause, and collecting authorities from within the Ninth Circuit).  Critically, the Ninth Circuit has made clear that "probable cause can well exist (and often does)" even if an assertion of self-defense ultimately defeats the prosecution's ability to persuade a jury of guilt beyond a reasonable doubt.  *See Yousefian*, 779 F.3d at 1014.

Thus, even if the Court were to accept Cha's assertion that he had a viable self-defense claim and the prosecution would not be able to establish its case beyond a reasonable doubt, that would not negate the existence of probable cause based on Cha's admissions that he, in fact, shot Moore during a quarrel and the coroner's listing of Moore's death as a homicide.  *See Pallas*, 2019 WL 2359215, at *4 (finding, on a motion to dismiss, that probable cause existed notwithstanding assertion of self-defense where plaintiff admitted that he had struck victim albeit on the belief that he was about to be attacked); *Sudderth v. City & Cnty. of San Francisco*, No. 00-2337-MMC, 2001 WL 764929, at *5 (N.D. Cal. June 27, 2001) (probable cause existed where plaintiff admitted she hit victim, although she claimed it was in self defense).[10]  While Cha makes various assertions about the Individual Defendants' bias, these allegations are irrelevant because probable cause is an objective test and does not focus on subjective intent.  *Roberts*, 660 F.3d at 1164; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis").

In a vain effort to manufacture a constitutional harm, Cha misrepresents the application for an arrest warrant.  Rather than supporting Cha's case, the arrest warrant in fact fatally undermines his ability to allege that Defendants' alleged conduct caused a constitutional violation.  Far from withholding material exculpatory evidence (as Cha alleges), the arrest warrant application and affidavit informed the judge that Cha was entitled to a rebuttable defense because Moore had died more than three years previously and attached a wealth of information relevant to Cha's self-defense claim, including the coroner's report, body-worn camera footage and transcripts thereof, and Cha's voluntary statement explaining his justification for shooting Moore.  Tilak Decl. Ex. A at 011–014,

---

[10] The Court need not accept as true Cha's conclusions of law that his actions were objectively reasonable or that the prosecution could not prove beyond a reasonable doubt that he was not acting in lawful self-defense.

020, 025–122.  It is undisputed that a judge then signed the warrant for Cha's arrest.  Compl. ¶ 64.  The

Superior Court judge's issuance of the warrant after being apprised of all of this information breaks

the causal chain between any alleged misconduct and Cha's arrest.  *See Galen v. Cnty. of Los Angeles*,

477 F.3d 652, 663 (9th Cir. 2007) (in Section 1983 cases, "a judicial officer's exercise of independent

judgment in the course of his official duties is a superseding cause that breaks the chain of causation

linking law enforcement personnel to the officer's decision"); *see also Golino v. City of New Haven*,

950 F.2d 864, 870 (2d Cir. 1991) ("Normally, the issuance of a warrant . . . which depends on a

finding of probable cause, creates a presumption that it was objectively reasonable for the officers to

believe there was probable cause").

Cha also claims that Drusinsky and Lacambra withheld exculpatory information from a grand

jury.  As with the arrest warrant, Cha's allegations are belied by the grand jury transcript itself, which

demonstrates that the grand jury was informed of previous incidents of Moore's violent behavior and

heard extensively from Officer Patino.  Tilak Decl. Ex. B at 17–18, 20–23; *id.* Ex. C at 180–87; *id.* Ex.

D at 225–30, 236, 247, 249–51, 260–61, 272, 276, 279–81, 291–92, 307–09; *id.* Ex. E at 418–25.  In

any event, Cha does not allege that the grand jury was ever asked to return an indictment.  Indeed, it

appears he was charged by felony complaint.  Tilak Decl. Ex. A at 001.  Thus, Cha fails to plausibly

allege that any withholding of information from the grand jury bears a causal relationship with the

constitutional harms he alleges—his arrest and prosecution without probable cause.  *See Chaudhry v.*

*Aragón*, 68 F.4th 1161, 1169–70 (9th Cir. 2023) (a plaintiff asserting a § 1983 claim must

"demonstrate that the defendant's conduct was the actionable cause of the claimed injury" because

without "caus[ation], there is no section 1983 liability") (cleaned up).  Likewise, while Cha makes

various allegations about improprieties with respect to the drafting of a search warrant, he never

alleges that the search warrant was ever executed or that he was subject to an improper search or

seizure of property as a result of the search warrant.

### 2.    The Individual Defendants Did Not Violate Clearly Established Law

Even if Cha could plausibly allege that the Individual Defendants lacked probable cause, he

cannot show that the Individual Defendants violated a "clearly established" right.  A clearly

established right is one that is "sufficiently clear that every reasonable official would understand that

what he is doing" is unlawful—i.e., the constitutionality of the official's conduct must be "beyond debate." *Wesby*, 583 U.S. at 63 (cleaned up). A clearly established right must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (cleaned up). The right must be defined with "a high degree of specificity," particularly in the context of a Fourth Amendment claim such as Cha's, because "officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered." *Id.* at 63–64 (cleaned up). As such, the Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* at 64 (cleaned up). While an exactly identical case is not required, "a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." *Id.*

Cha cannot satisfy this demanding standard. He cannot point to caselaw that would have put it beyond dispute that the Individual Defendants had to credit Cha's account of being in imminent danger in order to find no probable cause, despite the undisputed fact that Cha shot Moore and Moore's death was ruled to be a homicide. In fact, courts have generally declined to impose liability in similar circumstances where officials are required to balance undisputed evidence that a plaintiff attacked a victim with some evidence that the attack was in self-defense. *See, e.g.*, *Yousefian*, 779 F.3d at 1014–15 (probable cause existed even where officer ignored plaintiff's statements that he acted in self-defense); *Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022) (officers entitled to qualified immunity for arresting plaintiff even though plaintiff asserted that he attacked victim after the victim brandished a weapon); *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021) (qualified immunity even where officer "could conceivably regard" plaintiff's action as self defense and video evidence showed that victim provoked the plaintiff); *Rankin v. Bd. of Regents of Univ. Sys. of Ga.*, 732 F. App'x 779, 781 (11th Cir. 2018) (qualified immunity applies if even if there was evidence plaintiff was not the initial aggressor); *Arrington v. City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015) (citation omitted) (even where plaintiff's allegations of self-defense were plausible, "officers of reasonable competence could disagree on whether the probable cause test was met," and qualified immunity was therefore appropriate); *see also Nailing v. City of Los Angeles*, No. 2:22-cv-07224-AB-

1    JC, 2024 WL 3851635, at *8–9 (C.D. Cal. June 11, 2024); *Pallas*, 2019 WL 2359215, at *6–7;

2    *Sudderth*, 2001 WL 764929, at *5–6.

3         In light of this wealth of authority, Cha cannot establish that it was "beyond dispute" that the

4    Individual Defendants lacked probable cause to prosecute Cha and that they were "plainly

5    incompetent" or "knowingly violat[ing] the law" by prosecuting him. *Wesby*, 583 U.S. at 63 (citation

6    omitted). The Individual Defendants are therefore entitled to qualified immunity.

7    **II.    The Complaint Fails to State a *Monell* Claim Because the DA's Office, Boudin, and Gray
          Acted as State Officials in Investigating and Prosecuting Cha**

8         Cha's second cause of action attempts to hold the City, the DA's Office, and Boudin and Gray

9    in their official capacities[11] liable under *Monell*.[12] To impose municipal liability under § 1983 for a

10   violation of constitutional rights, a plaintiff must show: "(1) that the plaintiff possessed a constitutional

11   right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy

12   amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the

13   moving force behind the constitutional violation." *Wyrzykowski v. Cnty. of Marin*, No. 3:14-CV-

14   03825-LB, 2015 WL 3613645, at *8 (N.D. Cal. June 9, 2015). Cha's *Monell* cause of action fails

15   because, as discussed above, there was no constitutional violation. *See* Argument, Part I.C.1; *City of*

16   *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). But the cause of action fails for an additional reason.

17   A government entity may be liable under Section 1983 for constitutional torts committed by a local

18   official pursuant to a municipal policy or practice only "if the official . . . was the policymaker for the

19   local governing body for the purposes of the particular act." *Weiner v. San Diego Cnty.*, 210 F.3d

20   1025, 1028 (9th Cir. 2000) (citing *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997)). Here,

21   Cha's claim against the City fails because he cannot establish that the DA's Office or Boudin or Gray

22   acted as policymakers for the City. Rather, under binding authority from the Ninth Circuit and

23

24   _____

         [11] To the extent the allegations in the second cause of action are alleged against Boudin and
     Gray in their individual capacities, they fail for the reasons stated in Argument Part I, *supra*.

25       [12] Cha's first cause of action for malicious prosecution under Section 1983 is also asserted

26   against the City and the DA's Office. However, a government entity can only be held liable based on
     execution of a government policy or custom under *Monell*, and not under a *respondeat superior*

27   theory. Thus, to the extent Cha's first cause of action attempts to assert a theory of liability against the
     City and DA's Office other than *Monell*, it must be dismissed. *See Monell*, 436 U.S. at 692
     (concluding that in enacting Section 1983, Congress "did not intend municipalities to be held liable

28   unless action pursuant to official municipal policy of some nature caused a constitutional tort").

persuasive authority from the California Supreme Court, prosecutors act as *state officials* in evaluating and bringing prosecutorial actions and enacting prosecutorial training and policies.  As such, the City is not a proper defendant for purposes of Cha's *Monell* claims, and the DA's Office and Boudin and Gray (to the extent sued in their official capacities) are entitled to Eleventh Amendment immunity.

The office of District Attorney is an elected position created by state law to investigate and prosecute criminal offenses, subject to supervision by the California Attorney General.  Cal. Gov't Code § 12550.  Indeed, California law expressly excludes the investigative and prosecutorial functions of district attorneys from supervision by the County Board of Supervisors.  Cal. Gov't Code § 25303.  In *Weiner*, the Ninth Circuit examined California constitutional and statutory law and determined that a district attorney "acts as a state official when deciding whether to prosecute an individual."  210 F.3d at 1030.  The California Supreme Court has likewise held that a district attorney acts as a state official "when preparing to prosecute and when prosecuting criminal violations of state law."  *Pitts v. Cnty. of Kern*, 17 Cal. 4th 340, 362 (1998).  The Court went on to hold that the district attorney also acts as a state official when establishing prosecutorial policies and trainings.  *Id.* at 362–64.  In contrast to administrative functions like "hiring or firing an employee, workplace safety conditions, procuring office equipment"—which are unrelated to prosecuting criminal violations—the Court concluded that "[n]o meaningful analytical distinction" could be drawn between a district attorney prosecuting a case and "training and developing policy regarding criminal prosecutions."  *Id.* at 362–63.

The allegations in Cha's complaint fall squarely within the district attorney's authority as a state official.  Cha attempts to hold the City liable for the actions of Boudin, Gray, and their staff in evaluating and prosecuting the criminal case against Cha and for Boudin.  He likewise challenges the DA's Office's enactment of an alleged "policy of improper prosecutions of allegations of police misconduct."  Compl. ¶ 45.  Under *Weiner* and *Pitts*, the City is an improper defendant and cannot be liable for these actions because Boudin and his office acted as state officials and were not acting as City officials.  And because the DA's Office (and Boudin and Gray to the extent sued in their official capacities) acted as state officials, they are entitled to Eleventh Amendment immunity from Cha's Section 1983 claims for damages.  *See Jackson v. Barnes*, 749 F.3d 755, 766–67 (9th Cir. 2014); *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008); *see also Cannon v. Polk Cnty. Dist. Atty*, 501

F. App'x 611, 613 (9th Cir. 2012); *Greenlaw v. Cnty. of Santa Clara*, 125 F. App'x 809, 810 (9th Cir. 2005).

### III.    Cha's Negligent Hiring, Training, and Supervision Claim Must Also Be Dismissed

Finally, Cha alleges a state-law claim for negligent hiring, supervision, and training against the City, the DA's Office, Boudin, and Gray.  As an initial matter, because Cha's federal law claims fail as a matter of law and must be dismissed, the Court should decline to exercise supplemental jurisdiction over his sole state-law claim.  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992).  But even if the Court were to exercise supplemental jurisdiction, Cha's claim fails because the Defendants are entitled to statutory immunity and Cha has failed to plausibly allege Defendants engaged in negligent hiring, training, or supervision.

#### A.    Defendants Are Immune Under Government Code Sections 820.2 and 821.6

Under the Government Claims Act, public entities may be liable for injuries proximately caused by an employee in the course of employment, but are immune from liability where a public employee is immune.  Cal. Gov't Code §§ 815.2(a), (b).  The Act provides various immunities for public employees, two of which—Government Code sections 820.2 and 821.6—apply here to bar Cha's negligent hiring, training, and supervision claim against Boudin and Gray (and therefore against the City and DA's Office).

##### 1.    Government Code Section 820.2

Government Code section 820.2 immunizes a public employee from being held liable for discretionary acts—i.e., "where the act or omission was the result of the exercise of the discretion vested in him"—"whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  California courts have applied the discretionary acts immunity to decisions regarding employment and training. *See Caldwell v. Montoya*, 10 Cal. 4th 972, 982 (1995); *Ayala v. City of South San Francisco*, No. C 06-02061 WHA, 2007 WL 2070236, at *13 (N.D. Cal. Jul. 13, 2007); *Estate of Levee v. Los Angeles Cnty.*, No. CV 10-01266-SJO (FMOx), 2010 WL 11549362, at *3 (C.D. Cal. Aug. 26, 2010); *Est. of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1214 (E.D. Cal. 2005); *see also Soto v. State of California*, 56 Cal. App. 4th 196, 200–01 (1997) (training programs are discretionary).

Discretionary act immunity is particularly appropriate here because Cha's negligence claim is inextricable from his allegations regarding the DA's exercise of policy and prosecutorial decision-making. Specifically, Cha claims that Koltuniak, Drusinsky, Lacambra, and Young were negligently hired and trained as part of Boudin's implementation of "improper policies regarding the prosecution of allegations of police misconduct." Compl. ¶ 117. Likewise, he claims that these employees were negligently supervised because they were "directed and encouraged . . . to pursue the improper investigation of [Cha], with the intent to prosecute plaintiff despite the lack of substantial justification or probable cause." *Id.* ¶ 119; *see also id.* ¶ 47 (alleging that hiring practices were part of Boudin's alleged policy of improperly prosecuting police misconduct). Decision-making about prosecutorial priorities and decisions to investigate and prosecute specific cases are the very kinds of decisions "committed to coordinate branches of government" for which discretionary act immunity is intended. *Caldwell*, 10 Cal. 4th at 981 (cleaned up); *see also* Gov. Code § 26500 (vesting in the district attorney the "discretion [to] initiate and conduct on behalf of the people all prosecutions for public offenses"); *id.* § 25303 (referring to the "independent and constitutionally and statutorily designated investigative and prosecutorial functions of the . . . district attorney of a county").

## 2. Government Code Section 821.6

Government Code section 821.6 immunizes public employees from liability "for injury caused by . . . instituting or prosecuting any judicial or administrative proceeding" in the course of employment, even if those actions are taken "maliciously and without probable cause." The California Supreme Court recently clarified the scope of immunity under section 821.6 in *Leon v. County of Riverside*, 14 Cal. 5th 910 (2023), explaining that it applies to more than just malicious prosecution claims. Rather, section 821.6 "provide[s] immunity against liability for claims of injury based on tortious or wrongful prosecution" regardless of whether the claim is labeled as "malicious prosecution." *Id.* at 922. In fact, the Court expressly confirmed that Section 821.6 applies to prosecutions that result from negligence by public employees. *See id.* at 926 ("Section 821.6 does expand the scope of immunity to include any claim of injury caused by wrongful prosecution, even if the prosecution is merely negligent and not malicious."). California Courts of Appeal have applied *Leon* to preclude claims of negligent supervision, training, and hiring resulting in a prosecution. *See*

*Nelson v. Santa Barbara Cnty. Sheriff's Off.*, No. B308778, 2024 WL 160960, at *5 (Cal. Ct. App. Jan. 16, 2024) (holding that, under *Leon*, claim that district attorney and sheriff engaged in negligent investigation and prosecution, including negligently "screening, hiring, training, testing, monitoring, [and] supervising," was barred by section 821.6).[13]  Thus, where, as here, Cha's alleged injury stems from the institution of criminal proceedings against him, *see* Compl. ¶¶ 120–21, and he alleges that the prosecution was brought about by the negligence of Boudin and Gray, section 821.6 precludes liability.

### B.    Cha Fails to Allege a Plausible Claim for Negligent Hiring, Training, and Supervision.

Even if immunity did not apply, Cha's claim must be dismissed.  As an initial matter, for the reasons stated in Argument Part I.C.1, Cha fails to state a plausible injury—i.e., that he was in fact prosecuted without probable cause.  But even if he has adequately alleged injury, Cha fails to plausibly allege that Koltuniak, Drusinsky, Lacambra, and Young were "incompetent or unfit" or that Boudin and Gray "knew or should have known that hiring the employee created a particular risk or hazard [of prosecution without probable cause] and that particular harm materializes."  *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (2009) (citation omitted).  With respect to Young, there are no allegations that she was incompetent or unfit for her role as lead prosecutor or that she was biased.  With respect to Lacambra, Drusinsky, and Koltuniak, the allegations are entirely conclusory.  For example, Cha simply claims that they lacked experience, without any allegations as to what experience was required or why their alleged lack of experience created a "particular" risk that of allegedly improper investigations or prosecutions specifically of police officers like Cha.  Compl. ¶¶ 49, 62.  In fact, Cha acknowledges that Koltuniak participated in a police academy so that he met the technical qualifications for the job.  *Id.* ¶ 62.  His allegations of bias are equally conclusory, apparently premised solely on the fact that each of these individuals previously worked at the public defender's office.  *Id.* ¶¶ 49, 62.  These implausible, conclusory allegations are inadequate to sustain Cha's negligence-based cause of action.

---

[13] Unpublished California Court of Appeal decisions are persuasive authority for federal district courts.  *See Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1165 (S.D. Cal. 2019); *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

Finally, to the extent that Defendants seeks to hold the City and DA's Office directly liable for negligent hiring, training and supervision, California law makes clear that there is no statutory basis for a negligent hiring, training, and supervision claim against a public entity. *See, e.g.*, Compl. ¶¶ 113–21 (each alleging that the City and the DA's Office are responsible for hiring, training, and supervising Koltuniak, Drusinsky, Lacambra, and Young); *Zelig v. County of Los Angeles* 27 Cal. 4th 1112, 1127–28 (2002) (public entities are not liable except as provided by statute); *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 255–56 (2007) (finding no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices); *see also C.A. v. William S. Hart Union High Sch. Dist.*, 189 Cal. App. 4th 1166, 1173–74 (2010); *accord Van Ort v. Est. of Stanewich*, 92 F.3d 831, 840–41 (9th Cir. 1996).

## IV.    The Court Should Dismiss Without Leave to Amend

Cha cannot cure the myriad fatal deficiencies in his complaint, including because (1) his malicious prosecution claim is untimely (Argument Part I.A), (2) Individual Defendants are immune from his various causes of action (Argument Parts I.B, I.C, III.A), (3) probable cause existed based on Cha's own allegations (Part I.C.1), (4) the DA acted as a state official entitled to Eleventh Amendment immunity and the City is therefore not a proper defendant (Part II), and (5) Cha's allegations regarding the arrest warrant and grand jury are belied by judicially noticeable court records (Tilak Decl. Exs. A–E).  As such, dismissal without leave to amend is appropriate.

## CONCLUSION

For the reasons stated above, the Court should dismiss Cha's complaint without leave to amend.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

Dated:  January 31, 2025

                    DAVID CHIU
                    City Attorney
                    YVONNE MERÉ
                    Chief Deputy City Attorney
                    JENNIFER CHOI
                    Chief Trial Deputy
                    KARUN A. TILAK
                    Deputy City Attorneys


            By:_____
                    KARUN A. TILAK

                    *Attorneys for Defendants*
                    CITY AND COUNTY OF SAN FRANCISCO,
                    SAN FRANCISCO DISTRICT ATTORNEY'S
                    OFFICE, CHESA BOUDIN, DANA DRUSINSKY,
                    STEPHANIE LACAMBRA, LATEEF GRAY,
                    REBECCA YOUNG, AND ANDREW KOLTUNIAK

1

## **CERTIFICATE OF SERVICE**

2          I, CHRISTINE HOANG, hereby certify that I electronically filed the following

3   document with the Clerk of the Court for the United States District Court for the Northern District of

4   California by using the appellate CM/ECFsystem on January 31, 2025.

5

6     ▪  **DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF POINTS AND**

7              **AUTHORITIES IN SUPPORT IN SUPPORT OF MOTION TO DISMISS**

8        ▪  **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

9

10         I certify that all participants in the case are registered CM/ECF users and that service will be

11   accomplished by the appellate CM/ECF system.

12         Executed this 31st day of January, 2025 in San Francisco, California.

13

14              ___/S/ CHRISTINE HOANG_____
                CHRISTINE HOANG

15

16

17

18

19

20

21

22

23

24

25

26

27

28