EUSTACE DE SAINT PHALLE, SBN 179100
RAINS LUCIA STERN ST. PHALLE & SILVER, PC
2300 Contra Costa Blvd., Suite 500
Pleasant Hill, CA 94523
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: PersonalInjuryGroup@RLSlawyers.com

ATTORNEYS FOR PLAINTIFF
KENNETH CHA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH CHA,<br><br>            Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100,<br><br>            Defendants. | CASE NO. 24-CV-04700-PHK<br><br>**PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>Judge: Peter H. Kang<br>Hearing Date: April 10, 2025<br>Place: Courtroom F, 15th Fl.<br>Time: 1:00 p.m. |

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY OF RESPONSE ................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

      A.      Underlying Facts of Sean Moore's Shooting and Eventual Death ...................... 3

      B.      Investigation of the Moore Shooting ........................................................ 4

      C.      Defendants Convene an "Investigative" Grand Jury ............................................ 6

      D.      Improper Arrest Warrant and Arrest of Ofc. Cha ................................................ 7

      E.      Case Dismissed by New District Attorney Jenkins and ADA Darby Williams ... 7

      F.      Expert Opinion by Retired Deputy District Attorney Douglas Pipes ................. 8

III.    STANDARD OF REVIEW ON MOTION TO DISMISS ................................... 9

IV.     OBJECTIONS TO EVIDENCE ....................................................................... 10

V.      ARGUMENT ................................................................................................... 11

      A.      The Prosecutors Were Acting Not as Attorneys, but as Investigators, And Are Sued Here for Their Improper Investigatory Conduct Not Protected by Absolute Immunity ................................................................................................ 11

            1.      Defendants' Investigatory Conduct Is Not Protected by Absolute Immunity ................................................................................. 11

            2.      Defendant Koltuniak Is Not a Prosecutor, and is Not Protected by Absolute Immunity for his Malicious Conduct in Investigating Ofc. Cha ........................................................................................... 13

            3.      The Complaint Sues the Attorney Defendants for their Improper Investigative Conduct, Including Participation in the Investigative Grand Jury, For Which No Immunity Applies ....................................... 13

      B.      The Individual Defendants Are Not Entitled to Qualified Immunity ................. 15

            1.      Defendants Cannot Assert Qualified Immunity for their Conduct at the "Investigative Grand Jury," Where They Did Not Have Probable Cause ............................................................................................. 15

            2.      Qualified Immunity Based on "Probable Cause" Is Insufficient Where There is Evidence of a Malicious Intent to Prosecute ............................... 15

            3.      Defendants' Conduct Violated Clearly Established Law ....................... 16

**C.**    **Defendants Are Not Entitled to Immunity for Negligent Hiring, Training, & Supervision (Third Claim for Relief)** .......................................... 17

**D.**    **Plaintiffs' Case Is Not Barred by the Statute of Limitations (CCP §340.6)** ........ 19

    **1.**    **There is No Argument the Claims are Timely Related to The City & County of San Francisco, San Francisco District Attorney's Office and Investigator Andrew Koltoniak** .................................................. 19

    **2.**    **C.C.P. section 340.6 Is Not the Controlling Statute of Limitations for the Claims Against Individual Defendants Boudin, Gray, Drusinsky, Lacamabra and Young** .................................................. 19

        **i.**    **Cha's Claims Do Not Arise From Attorneys' Professional Obligations During The Providing of Professional Services, Thus C.C.P. section 340.6 Does Not Control** ....................... 20

        **ii.**    **Even If C.C.P. Section 340.6 Applies, Two Year Statute of Limitations Controls** .................................................. 21

**E.**    **Leave To Amend Should Be Granted** .................................................. 22

    **1.**    **Additional Facts Available for Amended Complaint** ................... 23

    **2.**    **Claim for Wrongful Arrest** .................................................. 24

**VI.**    **CONCLUSION** .................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Aisenberg v. Hillsborough County Sheriff's Office,* 325 F.Supp.2d 1366 (M.D.Fla. 2004)..................................................14

*Alexander v. Verizon Wireless Services, L.L.C.,* 875 F.3d 243 (5th Cir. 2017) ................................................10

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2012) ........................................................................................16

*Awabdy v. City of Adelanto,* 368 F.3d 1062 (9th Cir. 2004)...........................................................13, 16

*Ayala v. City of S. San Francisco* (N.D.Cal. July 13, 2007, No. C 06-02061 WHA) 2007 U.S.Dist.LEXIS 54051 .............18

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) ...............................................................................passim

*Burns v. Reed,* 1991) 500 U.S. 478 (1991) .............................................................................11, 12

*Caldwell v. Montoya,* 10 Cal.4th 972 (1995) .....................................................................................18

*Colonies Partners LP v. Cnty. of San Bernardino* (C.D.Cal. July 28, 2020, No. EDCV 18-420 JGB (SHKx)) 2020
   U.S.Dist.LEXIS 160672 ...........................................................................................3, 12, 23

*Cruz v. TD Bank, N.A.,* 742 F.3d 520 (2d Cir. 2013).........................................................................23

*District of Columbia v. Wesby,* 583 U.S. 48 (2018) ...........................................................................17

*Estate of Abdollahi v. County of Sacramento,* 405 F.Supp.2d 1194 (E.D.Cal. 2005).....................................18

*Fenico v. City of Philadelphia,* 70 F.4th 151 (3d Cir. 2023) .................................................................10

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247 (3d Cir. 2007).....................................23

*Fogle v. Sokol,* 957 F.3d 148 (3d Cir. 2020)....................................................................................passim

*Garmon v. Cty. of Los Angeles,* 828 F.3d 837 (9th Cir. 2016) ...............................................................11

*Gavitt v. Born,* 835 F.3d 623 (6th Cir. 2016)....................................................................................10

*Genzler v. Longanbach,* 384 F.3d 1092 (9th Cir. 2004) .......................................................................12

*Gibson v. United States,* 781 F.2d 1334 (9th Cir. 1986)........................................................................9

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246 (9th Cir. 1997) ..................................................................9

*Gunn v. Cont'l Cas. Co.,* 968 F.3d 802 (7th Cir. 2020)........................................................................9

*Halebian v. Berv,* 644 F.3d 122 (2d Cir. 2011) .................................................................................9

*Hamilton v. Brown,* 630 F.3d 889 (9th Cir. 2011) .............................................................................9

*Hand v. Gary,* 838 F.2d 1420 (5th Cir. 1988)....................................................................................15

*Harding v. Galceran,* 889 F.2d 906 (9th Cir. 1989) ...........................................................................24

*Harris v. Roderick,* 126 F.3d 1189 (9th Cir. 1997)...................................................................... 2, 16

*Henagan v. City of Lafayette* (W.D.La. Sep. 27, 2022, No. 6:21-CV-03946) 2022 U.S.Dist.LEXIS 175607 ...................... 17

*Imbler v. Pachtman,* 424 U.S. 409 (1976) ...................................................................................... 11

*Jackson v. Barnes,* 749 F.3d 755 (9th Cir. 2014) ............................................................................ 19

*Johnson v. State of California,* 69 Cal.2d 782 (1968)..................................................................... 18

*Kalina v. Fletcher,* 522 U.S. 118 (1997) ........................................................................................ 12

*King v. City of Sacramento,* No. 2:20-cv-01326-KJM-DB, 2022 U.S. Dist. LEXIS 1631 (E.D. Cal. Jan. 3, 2022) ........... 21

*King v. Rubenstein,* 825 F.3d 206 (4th Cir. 2016) ........................................................................... 10

*Lackner v. LaCroix,* 25 Cal. 3d 747 (1979) ................................................................................. 2, 21

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ................................................................ 11

*Lee v. Hanley,* 61 Cal.4th 1225 (2015) .......................................................................................... 20

*Leon v. County of Riverside,* 14 Cal.5th 910 (2023)...................................................................... 19

*Lopez v. Southern Cal. Rapid Transit Dist.,* 40 Cal.3d 780 (1985) ............................................... 18

*Malik v. City & Cty. of San Francisco* (N.D.Cal. June 28, 2018, No. 17-cv-06954-DMR) 2018 U.S.Dist.LEXIS 109473 .. 24

*McCray v. Lee,* 963 F.3d 110 (2d Cir. 2020)..................................................................................... 9

*Owens v. Okure,* 488 U.S. 235 (1989) ........................................................................................... 19

*Pierson v. Ray,* 386 U.S. 547 (1967) .............................................................................................. 13

*Quintilliani v. Mannerino,* 62 Cal.App.4th 54 (1998) .................................................................... 20

*Rieves v. Town of Smyrna,* 959 F. 3d 676 (6 Cir. 2020) ................................................................. 12

*Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1137 (N.D.Cal. 2000) ................... passim

*Shenefield v. Kovtun,* 106 Cal.App.5th 925 (2024) ........................................................................ 20

*Thacker v. City of Columbus,* 328 F.3d 244 (6th Cir. 2003)..................................................... 15, 23

*Thompson v. Clark,* 596 U.S. 36, 44, 142 S. Ct. 1332 (2022)................................................... 21, 22

*United States v. Brugnara,* No. CR 14-0306 WHA, 2015 U.S. Dist. (N.D. Cal. Oct. 9, 2015)........... 6

*Wearry v. Foster,* 33 F.4th 260 (5th Cir. 2022) ...................................................................... 2, 13, 15

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir. 1987)..................................................... 9

*Yousefian v. City of Glendale,* 779 F.3d 1010 (9th Cir. 2015)................................................... 15, 16

*Zamani v. Carnes,* 491 F.3d 990 (9th Cir. 2007) ............................................................................. 9

**STATUTES**

Cal Code Civ Proc §335.1 ................................................................................................................... 19, 24

Cal Code Civ Proc §340.6 ....................................................................................................... 2, 19, 21, 22

Cal Govt Code §820.2 ................................................................................................................ 2, 18, 23

Cal Govt Code §821.6 ......................................................................................................................... 18

Cal Govt Code §911.2 ......................................................................................................................... 19

Cal Govt Code §945.6 ......................................................................................................................... 19

USCS Fed Rules Civ Proc R 8 ................................................................................................................ 9

USCS Fed Rules Civ Proc R 12 .............................................................................................................. 9

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

# I.    SUMMARY OF RESPONSE

Plaintiff Kenneth Cha's Complaint alleges that the San Francisco District Attorney, several Assistant District Attorneys, and an investigator deprived him of his rights under the Fourth Amendment to be free of unlawful seizures. The Complaint alleges that the District Attorney's office promulgated an improper, politically motivated policy relating to the prosecution of police officers, wherein allegations of police misconduct were pursued aggressively, without regard to probable cause, cognizable defenses, or the likelihood of success at trial. In furtherance of this improper policy, the defendants conducted a bad-faith investigation into a shooting incident involving Ofc. Cha, where Cha had defended himself against a suspect who was violently attacking him and his partner. The suspect survived, but died several years later. Employees within the DA's office filed a whistleblower complaint identifying that the investigation against Cha included illegal conduct relating to a search warrant, and conflicts of interest related to a biased investigation. These employees stopped an improper arrest warrant from being issued.

In an effort to cover up their improper investigation, Defendants held a sham "investigative" Grand Jury proceeding regarding this shooting, where defendants skirted jury questions, omitted exculpatory evidence, and downplayed the problem with medical causation. Defendants later arrested and charged Ofc. Cha, based on the same improper warrant language the whistleblower complaint identified. Eventually, a subsequent District Attorney did an internal investigation to evaluate the case, and noted the improper investigation and prosecution and the lack of probable cause. On its own motion, the new District Attorney dismissed the case.

Defendants' Motion to Dismiss attempts to add extrinsic information, and argue that the gravamen of the Complaint is malicious prosecution and false arrest, when in fact the Complaint alleges defendants "were actively involved in the **improper investigation** that caused plaintiff KENNETH CHA to be arrested and prosecuted on criminal charges." (Complaint ¶87) A prosecutor's "investigative conduct" is not protected by prosecutorial immunity. (*Imbler v. Pachtman,* 424 U.S. 409, 420 (1976); see, *Fogle v. Sokol,* 957 F.3d 148, 160 (3d Cir. 2020).) Further, conduct prior to the establishment of probable cause is not protected. (*Ibid.*) Here, the defendants misrepresent the conduct of the DA's office with respect to the "investigative Grand Jury," where the evidence indicates this had

no investigatory or prosecutorial purpose, and is not protected by absolute immunity. (*Buckley v. Fitzsimmons,* 509 U.S. 259, 275 (1993).) Further, defendant Koltuniak is not an attorney, and in his capacity as an investigator, he is not protected by absolute prosecutorial immunity. (*Wearry v. Foster,* 33 F.4th 260, 273 (5th Cir. 2022).)

The subsequent DA who investigated the defendants and their prosecution found that there was an improper investigation and that no probable cause existed. As a result, the presence of absolute immunity and qualified immunity are subject, at minimum, to triable issues of fact that the jury must assess. Further, any assumption of probable cause, *e.g.* from the issuance of the arrest warrant, is negated by evidence that the warrant was "'tainted by the malicious actions of the government officials [involved]'." (*Harris v. Roderick,* 126 F.3d 1189, 1198 (9th Cir. 1997)) Finally, defendants' conduct, while novel in their extreme anti-police policies, was well known to violate clearly established law regarding full and truthful presentations before the Court.

Defendants' Motion asserts that the Third Cause of Action, a state law claim for negligent hiring, supervision, and training, is barred by discretionary acts immunity under Govt. Code §820.2. However, this requires evaluation of whether the defendants' specific acts are subject to this immunity, or are merely operational decisions. Such evaluations are not properly made on a Motion to Dismiss. (*Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1138 (N.D.Cal. 2000).) As a result, this issue is subject to discovery and a jury determination of the triable issues of fact.

Defendants also argue that plaintiff's entire claim is barred by the statute of limitations for claims against attorneys (C.C.P. §340.6). This statute would not apply to the defendants' investigatory conduct. Further, section 340.6 holds that, where "plaintiff is required to establish the plaintiff's factual innocence for an underlying criminal charge as an element of the plaintiff's claim," the statute is "two years after the plaintiff achieves postconviction exoneration." (*Id.*) On a malicious prosecution claim, plaintiff is required to show case termination that "reflect[s] on his innocence of the alleged wrongful conduct." (*Lackner v. LaCroix,* 25 Cal.3d 747, 751 (1979).) Therefore, the governing statute of limitations would be two years from the date the case was dismissed, that is, in July 2025.

This Motion to Dismiss requires many factual determinations. "[A]n immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would

apply on summary judgment.' [citation]" (*Fogle v. Sokol,* 957 F.3d 148, 160-161 (3d Cir. 2020); see,

e.g. *Colonies Partners LP v. Cnty. of San Bernardino* (C.D.Cal. July 28, 2020, No. EDCV 18-420 JGB

(SHKx)) 2020 U.S.Dist.LEXIS 160672, at 49-53 [determination of investigatory versus prosecutorial

conduct decided on summary judgment]) Because the issues here are all disputed, these issues cannot

be decided on a Motion to Dismiss, and can only be addressed on a summary judgment motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Underlying Facts of Sean Moore's Shooting and Eventual Death

As discussed in the Complaint, on January 6, 2017, Officer Kenneth Cha shot Sean Moore

during an attempted arrest. Moore, estimated to have been six-feet-four inches tall and weighing 275

pounds, had a history of violent conduct and restraining orders against him. (Complaint ¶23)

During the very early morning of January 6, 2017, San Francisco Police Officers Kenneth Cha

and Colin Patino responded to a call for service. Caller Christopher Choy had complained of a

violation of a Restraining Order by the caller's neighbor, Sean Moore. (¶26) When Cha approached

Moore on the narrow stairway, Moore made repeated hostile, belligerent and profane comments to Cha

insisting he leave the premises. (¶28) The officers interacted with Moore over several minutes, with

Cha retreating to his home. Patino said he believed by this point he had probable cause to arrest Moore

for violating the restraining order. (¶28) After Moore reemerged and approached aggressively waiving

his arms, Cha sprayed pepper spray in Moore's direction. (¶31) Moore then kicked Cha in the face and

retreated into his home. (¶31) Moore then came back out, adopted an aggressive stance, and said "I'm a

kick your ass, punk." (¶34)

Moore reached down to pick something up and Patino advanced with his night stick, attempting

an arrest. Patino said during his interview that Moore had tried to block the baton and punched him in

the face with a fist, breaking Patino's nose. This caused Patino to suddenly fall backwards on the stair.

(¶35) Cha, left to face Moore who was standing above him with a height/weight advantage, had limited

force options as the pepper spray and baton had failed to prevent Moore from attacking. Cha then drew

his firearm and pointed it at Moore. The drawn firearm did not deter Mr. Moore at all. Mr. Moore

raised his right leg and proceeded to kick down at Officer Cha. Officer Cha then fired his firearm as he

fell backwards down the stairs. Cha struck Moore twice, in the abdomen and the leg. (¶36) Ofc. Cha

1    later recounted, "I thought I was going to die. I thought this guy was just going to go to town on me."

2    "I knew that Colin and I, [would face] …great bodily harm or we were going to die."  (¶37)

3         Moore was treated for two gunshot wounds, a liver laceration, and traumatic injury to the area

4    of the right colon; he had abdominal surgery for his injuries (¶38) Over three years later, Moore died in

5    San Quentin State Prison January 20, 2020. Pursuant to the medical reports, Sean Moore suffered

6    numerous medical conditions. Thus, the gunshot wound may or may not have been the proximate

7    cause of Mr. Moore's cause of death. (¶40) Because the cause of death was primarily attributed to

8    acute intestinal obstructions and severe abdominal adhesions from the gunshot injury three plus years

9    prior, the cause of death was listed as "homicide." (¶41)

10   **B.    Investigation of the Moore Shooting**

11        The San Francisco District Attorney's Office under former DA George Gascon, through its

12   Independent Investigations Bureau (IIB), investigated the Sean Moore shooting incident and Cha and

13   Patino's conduct. This investigation concluded that there was a lack of probable cause that a crime had

14   been committed and advising that no charges should be filed. (¶42) The main factor in the IIB's initial

15   finding is that Cha's use of deadly force against Moore was legally justified based on the evidence and

16   testimony indicating Officer Cha's reasonable belief that if he did not use force, he would suffer

17   serious bodily injury or even death at the hands of Mr. Moore. (¶43) In 2019, a declination report

18   finalized under the administration of DA Gascon. The declination was never formally signed or

19   published as it was left for the incoming DA, Chesa Boudin. (¶44) On January 20, 2020, Moore died

20   while in custody. The coroner ruled that the injuries from the 2017 shooting was a cause of death,

21   along with other contributory co-morbidities. (St. Phalle Dec. ¶25)

22        Once in office, DA Boudin introduced a policy of improper prosecutions of allegations of

23   police misconduct. The San Francisco DA's Office policy under Boudin sought the frequent and

24   improper prosecution of allegations of police officer misconduct, irrespective of the actual case facts

25   and the existence or nonexistence of probable cause. Boudin's DA's Office administration expressed a

26   vocal and public intent to pursue prosecution of police officers, for a myriad of motives other than

27   substantive justice in each case. The primary goal for this policy were twofold - to put pressure on the

28   SF Police Department and the City, in order to coerce them into changing SFPD policies related to

SFPD officers' use of force. The policy was also intended to improve the standing of defendants Boudin and the SF District Attorney's Office with certain political interests and communities. (Complaint at ¶45; St. Phalle Dec. ¶27) DA Boudin intentionally hired inexperienced ADAs and Investigators, and ignored, sidelined, or fired the more experienced ADAs and Investigators, with the explicit goal of pursuing more cases against police officers in bad faith. (Complaint ¶47)

On January 16, 2020, former ADA Aaron Zisser, who was assigned to the Moore case after DA Gascon's departure, prepared a memorandum regarding the Moore OIS. The memorandum opined that the criminal prosecution of Ofc. Cha was without legal authority or support, and concludes that charges were "not reasonable in this case." (Complaint ¶48) Boudin did not follow Zisser's recommendations. Instead, he dismissed Zisser and assigned two inexperienced prosecutors, Stephanie Lacambra and Dana Drusinsky (former defense attorneys with a bias against police officers), to the case. (Complaint ¶49)

In January 2020, DA Boudin offered Lateef Gray a job at the DA's Office. Gray was then elevated to Managing Attorney for the Independent Investigation Bureau (IIB) with oversight of the Sean Moore OIS investigation. This involved a serious conflict of interest. In his previous employment, Mr. Gray initiated a civil suit against the City and County of San Francisco and the SFPD on behalf of Sean Moore related to the shooting by Ofc. Cha. (Complaint ¶51) Even after joining the DA's Office, the Sean Moore civil case was ongoing and identified Gray as an attorney of record. (¶52) Despite the conflict, Gray was never really "walled off" from the Moore/Cha OIS investigation. Documents show Gray was making strategic decisions in the Moore matter such as the assignment of various investigators to the case, issues involving expert witnesses and discussions of strategy. (¶53)

In June of 2020, the IIB Investigator Magen Hayashi was assigned to the case. Drusinsky then requested that IIB Investigator Megan Hayashi draft a search warrant and warrant affidavit for the personal and work cellular telephones of Ofc. Cha and Patino. The ADAs "improperly influence the drafting of the search warrant and affidavit," asked for edits to eliminate exculpatory evidence from the warrant affidavits. (St. Phalle Dec ¶39) This evidence included the suspect's hostile behavior, including attacks on the involved officers prior to the shooting. In later draft revisions the ADAs further altered the context of the incident, made statements that did not have factual support, and

removed exculpatory information about how the incident occurred. (Complaint ¶58; St. Phalle Dec. ¶¶37-44) Both Hayashi and Hayashi's supervisor, Jeffrey Pailet, complained that the revisions were improper and objected. In response, defendants reprimanded and fired Pailet. Pailet later filed a civil suit stating that he had been fired as a whistleblower for pointing out illegal conduct. (Complaint ¶59) Pailet also filed a whistleblower complaint regarding these issues. (St. Phalle Dec. ¶54)

In approximately October 2020, Andrew Koltuniak was hired by the SF DA's Office and assigned to the IIB unit. Throughout his career, Andrew Koltuniak has been admonished repeatedly for unethical behavior, included presenting arrest warrant affidavits that misrepresent the facts, exclude exculpatory evidence and other deceptions to the court. His prior conduct has been criticized in a published Court opinion, *United States v. Brugnara*, No. CR 14-0306 WHA, 2015 U.S. Dist. (N.D. Cal. Oct. 9, 2015) (St. Phalle Dec. ¶46-50) Koltuniak did not have the necessary training to issue warrants; in June 2021, he went through POST training and was sworn in as a peace officer, making him able to issue warrants. (Complaint, ¶62; St. Phalle Dec., ¶58)

## C.    Defendants Convene an "Investigative" Grand Jury

From July 20, 2021 to July 27, 2021, an "Investigative Grand Jury" was empaneled and received evidence regarding the Moore shooting and Off. Cha by ADAs Lacambra, Drusinsky and Bringardner. Ex. 11, Grand Jury, Vol. 1, p. 4-5. The timeline and evidence indicates this was done in an effort to clean their hands from their actions involving Investigator Hayashi and Lt. Pailet, smooth the path for Koltuniak, and was part of the coverup to obscure what occurred during the improper investigation previously. (St. Phalle Dec. ¶68) Based on a review of the limited Grand Jury transcripts currently available, it is abundantly clear that the jurors had significant confusion and sought clarity on important issues in the Moore shooting and investigation against Plaintiff Cha.

As noted, Sean Moore had multiple restraining orders against him for aggressive and violent conduct. Nevertheless, the ADAs elected to call three police officers who had prior interactions with Moore, focusing the investigation on questions concerning Moore's lack of violent interaction with these officers and his mental illness. (St. Phalle Dec. ¶¶60-65) Further, despite the potential alternative causes for Moore's death, the ADAs called no medical witnesses (St. Phalle Dec. ¶¶60), and did not address the juror's confusion about the three year gap between the shooting and Moore's death.

**D.      Improper Arrest Warrant and Arrest of Ofc. Cha**

On October 29, 2021, Koltuniak submitted the arrest warrant application for Off. Cha. (Def Ex. A, Arrest Warrant) This warrant was later granted that same day by the court. (St. Phalle Dec. ¶70) The arrest warrant failed to include several salient exculpatory facts. For example, Moore died over three years after he was shot by Officer Cha, which was left out of the arrest warrant.  Further, there were other causes of death besides his abdominal injury ostensibly caused by the 2017 shooting. Moore's death certificate states he died from "hypertensive cardiovascular disease; obesity; slight coronary atherosclerosis; diabetes mellitus; schizophrenia; and chronic substance abuse."  The warrant failed to list these other causes. (Complaint, ¶65) The arrest warrant also failed to adequately describe the violent encounters preceding Moore's shooting, relevant to the issue of Cha's right to self-defense. (¶66) During the altercation Moore had punched Cha's partner in the nose and broken it, and had kicked Cha. However, Investigator Koltuniak's arrest warrant significantly downplayed Moore's violent contribution by vaguely describing Sean Moore as merely striking Cha. (¶66) The judge signed the warrant based on the incomplete information provided. (¶66)

The affidavit supporting the arrest warrant and attested to by Investigator Koltuniak is almost word for word the exact draft affidavit ADA Lacambra and ADA Drusinsky had heavily edited and pressured Investigator Hayashi to sign in support of the search warrants for Off. Cha and Off. Patino's cellular devices. (St Phalle Dec. ¶74) Almost identical language appears in the summary paragraph of the arrest warrant (St Phalle Dec. ¶77), the Body Worn Camera Footage review (¶78), and other instances (¶79).

**E.      Case Dismissed by New District Attorney Jenkins and ADA Darby Williams**

On August 19, 2022, newly appointed Managing Attorney of IIB ADA Darby Williams send email correspondence to IIB Unit regarding her concerns with activities inside the IIB, including "[t]he lack of oversight and submission of the Unit's members to the political whims of former leaders also deeply corrupted the Unit and contributed to the Unit's gross misuse and abuse of resources." Managing Attorney ADA Williams listed various examples, including: "Multiple grand juries impaneled on cases in which prior declinations were issued under prior District Attorney Gascon. Grand juries impaneled to "test the water" on cases in which an internal determination re the quantum

of proof could have been easily made and reached." (St. Phalle Dec. ¶100; see, Ex. 16, Email from Williams to IIB Unit, August 19, 2022.)

Although she had previously been serving as interim District Attorney following Boudin's recall, on January 8, 2023, Brooke Jenkins assumed the role of San Francisco District Attorney. Following this, the attorneys prosecuting the Cha matter were removed from the case, and ADA Darby Williams was assigned to this case. On June 30, 2023, ADA Darby Williams filed a Motion to Dismiss Charges against Kenneth Cha. In this Motion, ADA Williams stated that the DA's Office was unable to show beyond a reasonable doubt that Ofc. Cha did not act in self-defense, since Moore was the apparent aggressor in this incident and had already caused physical harm. (Complaint ¶76) The colorable claim that this prosecution was brought for improper reasons. The evidence surrounding improper prosecution motives include the failure to create and maintain ethical walls and the inappropriate handling of proceedings." Finally, the Motion noted serious ethical lapses by the prior ADAs in their presentation to the Grand Jury, particularly the exclusion of exculpatory evidence of the decedent's violence. (Complaint ¶77)

The timeline of events demonstrates that the issue of probable cause was disputed from beginning of this case. The defendant attorneys sought to circumvent the obvious problems with Cha's prosecution by using an improper grand jury, and an arrest warrant obtained by the deliberate omission of relevant facts. In all this conduct, the defendants intended to mislead the judges and the courts into creating a viable criminal case where there was none.

## F.    Expert Opinion by Retired Deputy District Attorney Douglas Pipes

Deputy District Attorney Douglas Pipes (retired) was retained as an expert in the Pailet matter to review the search warrant work product and investigative activities of the SF DA's office personnel during the Moore shooting investigation. On July 14, 2022, Pipes drafted a Declaration regarding these issues. (St. Phalle Dec. ¶92)

With regard to the ADAs' conduct in the Moore shooting investigation that were also at issue in the Pailet matter, Pipes opines that this conduct was conducted during the investigatory phase of the ADAs' work. "The actions of drafting search warrant affidavits . . . were clearly an investigative tool of the District Attorney to assist the office in making a decision whether to file criminal charges against

the officers." (Ex. 15, Pipes Dec., p. 33:20-22; St. Phalle Dec. ¶ 98) Consistent with the conclusions of Darby William's memo and Motion to Dismiss, Mr. Pipes also noted concerning ethical and illegal activity occurring within the DA's Office during the Moore investigation (St. Phalle Dec. ¶ 98)

### III.    STANDARD OF REVIEW ON MOTION TO DISMISS

"The purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.' " (*Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011).) A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." (*Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007) (citation and internal quotation marks omitted).) In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations. (*Hamilton v. Brown*, 630 F.3d 889, 892-93 (9th Cir. 2011).) The moving party bears the burden of showing that no adequate claim for relief has been presented. (*Gunn v. Cont'l Cas. Co*., 968 F.3d 802, 806 (7th Cir. 2020).)

In resolving a Rule 12(b)(6) motion, the court primarily considers only the allegations set forth in the complaint or other claim. (*See, e.g., McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020) (inconsistent allegations in prior complaint not be considered) "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.' " (*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)).

For a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. (*See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987).) Motions to dismiss generally are viewed with disfavor under this liberal standard and are rarely granted. (See *Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997).) It is understood that civil rights complainants are likely to lack full access to information about their claim; therefore, "civil rights complaints are to be liberally construed," and need only comply with F.R.Civ.P. 8(a). (*Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992)) In a civil rights complaint, "[P]laintiff is not expected to plead his evidence or specific factual details not ascertainable in advance of discovery." (*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986).)

## IV.    OBJECTIONS TO EVIDENCE

Plaintiff objects to the evidence cited in defendants' Request for Judicial Notice, and attached to the Declaration of Karun Tilak, to wit:

- Tilak Dec. Ex. #A:  Felony Complaint and Arrest Warrant with Exhibits, in *People v. Cha*, S.F. Superior Court No. CRI-21010958 (filed Nov. 4, 2021)

- Tilak Dec. Exs. #B – E: Unsealed excerpts of the grand jury proceedings on file with the Superior Court in *People v. Cha.*

Plaintiffs object that the above-described evidence is included solely in order to induce the Court to determine issues of fact on this Motion to Dismiss. A Rule 12(b)(6) motion generally cannot be used to "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' " (*King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023).) "Typically, at the 12(b)(6) stage, the court is confined to the complaint." (*Alexander v. Verizon Wireless Services, L.L.C.,* 875 F.3d 243, 247 n.4 (5th Cir. 2017).) Presentation of extraneous facts converts the motion to dismiss into a motion for summary judgment. (*Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).)

Here, Defendants cite extrinsic evidence solely to contest the factual averments of the Complaint. Exhibit A, the arrest warrant, is offered to dispute contentions in the Complaint that exculpatory information was excluded from the arrest warrant application. (See Motion to Dismiss at 5:19-6:6; 11:24-27) Exhibits B-E, excerpts of the Grand Jury proceedings, are offered to dispute contentions in the Complaint that prosecutors withheld exculpatory information from the grand jury. (See Ex. 1, Motion to Dismiss at 6:7-7:2; 12:13-16) Defendants' citation to extrinsic facts invites this Court to "resolve contests surrounding the facts, [and] the merits of a claim." (*King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)) These citations are unfair in that they force plaintiff to defend the case on the merits, without having the benefit of the summary judgment procedure.

Further, Plaintiff contests defendants' characterization of the inclusion of exculpatory evidence in the Grand Jury proceedings and in the arrest warrant. While the Grand Jury proceedings included some exculpatory facts, many exculpatory facts were excluded. (See Ex. 1, Motion to Dismiss, p. 12)

Extrinsic evidence is disfavored on a Motion to Dismiss. In *Lee*, the Court of Appeals for the

Ninth Circuit found that the trial court exceeded its discretion when it "took judicial notice of *disputed* facts stated in public records." (*Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001) [emphasis in original].) Here, as noted above, plaintiff disputes that defendants included all relevant exculpatory facts. The Court should exercise its discretion to decline to consider the defendants' submission of documentary evidence for judicial notice (Exs. A-E of the Tilak Dec.).

## V.    ARGUMENT

**A.    The Prosecutors Were Acting Not as Attorneys, but as Investigators, And Are Sued Here for Their Improper Investigatory Conduct Not Protected by Absolute Immunity**

Throughout Defendants' Motion to Dismiss, defendants mischaracterize their own conduct as entirely prosecutorial. This is misleading. The Complaint alleges conduct that should be characterized as investigative and not subject to absolute immunity. At the outset, defendants' conduct cannot be credited as in good faith, since they acted with the intent to pursue prosecutions of police whether or not good cause was present. Further, the attorney defendants convened an "investigative" Grand Jury; this conduct cannot be considered "prosecutorial" or subject to absolute immunity. Finally, non-attorney investigator Koltuniak cannot make any claim to absolute prosecutorial immunity.

### 1.    Defendants' Investigatory Conduct Is Not Protected by Absolute Immunity

Absolute immunity is designed to protect the judicial process by according immunity to prosecutors while enacting their duties as prosecutors. (*Imbler v. Pachtman,* 424 U.S. 409, 423 (1976).) Absolute immunity "is an extreme remedy, and it is justified only where 'any lesser degree of immunity could impair the judicial process itself.'" (*Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016) (citation omitted).) A prosecutor enjoys absolute immunity from section 1983 suits only when they act within the scope of their prosecutorial duties. When a prosecutor acts as an investigator, absolute immunity is not available. (*Imbler v. Pachtman,* 424 U.S. 409, 420 (1976).) Absolute immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." (*Burns v. Reed,* 1991) 500 U.S. 478, 486 (1991).)

"Under the 'function test,' a prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only [qualified immunity]." (*Imbler,*

*supra*, 424 U.S. 409, 430) In deciding whether absolute immunity is available, Courts will examine the nature of the function performed, not the identity of the actor who performed it. (*Kalina v. Fletcher,* 522 U.S. 118, 127 (1997) [declining to extend absolute immunity where a prosecutor makes a false statement of fact in an affidavit supporting an arrest warrant].)

In 1983 claims of malicious prosecution and/or false arrest, the public official's assertion of absolute immunity requires the existence of probable cause. Absolute immunity cannot apply before probable cause exists. (*Buckley v. Fitzsimmons,* 509 U.S. 259, 274 (1993); accord, *Colonies Partners LP v. Cnty. of San Bernardino* (C.D.Cal. July 28, 2020, No. EDCV 18-420 JGB (SHKx)) 2020 U.S.Dist.LEXIS 160672, at *47-49.) Probable cause is necessary, but not sufficient, for prosecutorial immunity. "Even after that determination, . . . a prosecutor may engage in "police investigative work" that is entitled to only qualified immunity." (*Buckley, supra*, 509 U.S. 259, 274, fn. 5])

Courts have consistently refused to apply absolute immunity to a prosecutor's investigative conduct. In *Fogle v. Sokol,* 957 F.3d 148 (3d Cir. 2020), the plaintiff alleged, *inter alia*, that the DA's violated his due process rights by fabricating inculpatory evidence and by withholding exculpatory evidence. In ruling on immunity claims, the Court held that the DA's were not entitled to absolute immunity for their alleged conduct in procuring a particular witness' statements, another witness' confession, or jailhouse informant statements, because these actions were investigative rather than prosecutorial. (*Fogle, supra,* 957 F.3d 148, 160; *see also, Genzler v. Longanbach,* 384 F.3d 1092, 1098–1104 (9th Cir. 2004) [deputy district attorney and investigator were only entitled to qualified immunity in meeting with and interviewing witness because it was investigative function]; *Rieves v. Town of Smyrna*, 959 F. 3d 676 (6 Cir. 2020).)

The prosecutor bears the burden of showing that immunity is justified for each act and function in question. (*Burns v. Reed,* 500 U.S. 478, 486 (1991) [state prosecutor was entitled to only qualified immunity for giving legal advice to the police in the investigative phase of a criminal case]) '[T]he onus is on the prosecutor to demonstrate 'that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action.' [citation]. 'And that burden is uniquely heavy.' [citation]. Indeed, '[a]sserting a[n] . . . immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment.'

[citation]" (*Fogle v. Sokol,* 957 F.3d 148, 160-161 (3d Cir. 2020).)

Here, plaintiff sues the individual defendants for their malicious, bad-faith investigation into the Sean Moore shooting incident. These defendants' investigatory conduct is not subject to absolute immunity. Defendants have not met their "heavy burden" – "more challenging . . . than would apply on summary judgment" – to prove that all of their alleged conduct must be considered absolutely immune as a matter of law. (*Fogle, supra,* 957 F.3d 148, 160-161)

> **2.** **Defendant Koltuniak Is Not a Prosecutor, and is Not Protected by Absolute Immunity for his Malicious Conduct in Investigating Ofc. Cha**

Police officers, complainants, and/or investigators may be sued for malicious prosecution. (*Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066–1070 (9th Cir. 2004)] Absolute prosecutorial immunity can never apply to such actors. "The common law has never granted police officers an absolute and unqualified immunity[.]" (*Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Wearry v. Foster,* 33 F.4th 260, 273 (5th Cir. 2022).)

Here, defendant Andrew Koltuniak was hired as an IIB investigator, and functioned in that capacity after receiving some minimal police training. (Complaint, ¶¶19, 62) As to the Cha case, Koltuniak collected information in order to draft a search warrant. (Complaint, ¶¶63-65) Koltuniak is not an attorney, and in his capacity as an investigator, he is not protected by absolute prosecutorial immunity. (*Wearry, supra,* 33 F.4th 260, 273.)

> **3.** **The Complaint Sues the Attorney Defendants for their Improper Investigative Conduct, Including Participation in the Investigative Grand Jury, For Which No Immunity Applies**

Defendants have asserted that their conduct before the Grand Jury is automatically protected by absolute immunity. As to the individual attorney defendants, the Complaint identifies the defendants' bad-faith motivations (Complaint at ¶¶4, 45, 91) as well as conduct that should be considered "investigatory" for purposes of considering absolute immunity, including the investigative Grand Jury.

Defendants' case citations do not apply to "investigative" Grand Juries, where the prosecutor's conduct is generally considered investigatory rather than prosecutorial. In *Buckley v. Fitzimmons*, the prosecutor received no absolute immunity for conduct associated with an "investigative" grand jury (*Buckley v. Fitzsimmons*, supra, 509 U.S. 259, 275)

Here, the evidence shows that the Grand Jury was not "prosecutorial." One of the attorneys for the San Francisco DA's office, Brian Bringardener, declared that the DA's office was presenting the case for "investigation" (Def. Ex. B, Grand Jury Vol. I., at p. 4:16-19), and that instead of seeking an indictment, the DA's office had "chosen to use the grand jury to conduct an investigation" (Def Ex. Grand Jury Vol. I., at p. 5:4-13). The Motion to Dismiss admits that the Grand Jury did not return an indictment, again indicating that the purpose of the Grand Jury was investigative. (In fact, the entire Grand Jury was improper. Penal Code §917 prohibits a Grand Jury inquiry "into an offense that involves a shooting or use of excessive force by a peace officer described . . . that led to the death of a person being detained or arrested by the peace officer.")

Thus, the entire Grand Jury process constituted "investigative" conduct by the participating ADAs, defendants Drusinsky and Lacambra. In the opinion of the US Supreme Court, defendants' participation in an **investigative** Grand Jury is not subject to absolute immunity. (*Buckley v. Fitzsimmons*, supra, 509 U.S. 259, 275; *see also, Aisenberg v. Hillsborough County Sheriff's Office*, 325 F.Supp.2d 1366, 1377 (M.D.Fla. 2004) [citing *Buckley*])

Defendants have attempted to distinguish *Buckley*, noting that in *Buckley*, "absolute immunity did not apply to the prosecutor's fabrication of evidence . . . . Here, however, Cha . . . [alleges] only that exculpatory evidence was not presented." (Motion at p. 12, fn. 7) However, the *Buckley* Court focused on the fact that the Grand Jury was convened to investigate facts, rather than to return an indictment. "And when it [the special grand jury] finally was convened, its **immediate purpose was to conduct a more thorough investigation of the crime -- not to return an indictment**." (*Buckley v. Fitzsimmons*, supra, 509 U.S. 259, 275, emphasis added)

It is not availing that the only conduct alleged here is the exclusion, rather than the fabrication, of evidence. Plaintiff alleges an improper ideological and political motivation driving the prosecutors' activities against Mr. Cha. (Complaint at ¶91) Such motivations constitute bad faith, and will defeat any presumption of absolute immunity. "[W]hen plaintiff raises a prima facie case of malicious prosecution, the burden shifts to defendant to show that his actions were not the product of improper motivation. . . . In all of these cases indictments were obtained, but **the finding of probable cause remained tainted by the malicious actions of the government officials**. (*Hand v. Gary,* 838 F.2d

1420, 1426, (5th Cir. 1988) (emphasis added).)

Defendant is also incorrect in insisting that all of the defendants' conduct associated with the arrest warrant is subject to absolute immunity. As noted, investigator Koltuniak is not an attorney and is not protected by any absolute privilege. (*Wearry, supra,* 33 F.4th 260, 273.) Further, even if we deem that probable cause existed after the Grand Jury proceedings, absolute immunity would not extend to any investigative work by any of the defendants. (*Buckley, supra*, 509 U.S. 259, 274, fn. 5])

## B.    The Individual Defendants Are Not Entitled to Qualified Immunity

In the alternative to absolute immunity, Defendants have asserted they are protected by qualified immunity, which protects state and local officials, including law enforcement officers, from individual liability unless the official violated a clearly established constitutional right. Defendants argue that, since they had "probable cause" to arrest and prosecute Cha, plaintiff fails to allege a constitutional violation, and thus qualified immunity applies. (Motion at pp.14-16) Plaintiff contests that defendants had probable cause at every phase of their conduct, and that probable cause is completely dispositive where there is significant evidence of defendants' improper motivations and malice.

### 1.    Defendants Cannot Assert Qualified Immunity for their Conduct at the "Investigative Grand Jury," Where They Did Not Have Probable Cause

Defendants argue that, since they had probable cause to arrest and prosecute Cha, plaintiff fails to allege a constitutional violation, and thus qualified immunity applies. (Motion at 14:8-16, citing, *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015).) However, defendants' own conduct disputes the existence of probable cause. "The existence of probable cause is a jury question, unless there is only one reasonable determination possible." (*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).) Here, the defendants convened Grand Jury proceedings to investigate whether there was probable cause to prosecute Cha. At that time, at least, defendants did not have probable cause, as they were seeking this from the Grand Jury.

### 2.    Qualified Immunity Based on "Probable Cause" Is Insufficient Where There is Evidence of a Malicious Intent to Prosecute

Defendants argue that, to show a constitutional violation arising from his arrest and

prosecution, Cha must necessarily show that the defendant had no probable cause for the arrest or prosecution. Without this demonstration, qualified immunity will apply to the official's conduct. (Motion at 14:9-12, citing, *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015).)

A finding of "probable cause" is not always sufficient to establish qualified immunity in section 1983 cases. "Among the ways that a plaintiff can rebut a prima facie finding of probable cause is by showing that the criminal prosecution was **induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith**. . . . [Plaintiff could maintain] his § 1983 malicious prosecution claim if he is able to prove the allegations in his complaint that the criminal proceedings were initiated on the basis of the defendants' intentional and knowingly false accusations and other malicious conduct." (*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).) For purposes of applying qualified immunity, a probable cause determination "that is 'tainted by the malicious actions of the government officials [involved]' does not preclude a claim against the officials involved." (*Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997)

Here, plaintiff's Complaint has alleged defendants' improper motives behind Cha's prosecution, demonstrating the prosecution was "tainted by malicious actions." (Complaint at ¶¶4, 45, 91) The defendants excluded exculpatory evidence from the Grand Jury, and from the arrest warrant application. The prosecutor's biased, incomplete presentation of evidence was highly likely to have caused any determination of "probable cause," making any such finding unreliable.

### 3.    Defendants' Conduct Violated Clearly Established Law

To defeat an official's qualified immunity in section 1983 cases, Plaintiff must show that the official's conduct constitutes a violation of "clearly established law," where, "a 'reasonable official would have understood that what he is doing violates that right.'" (*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2012) (internal citation omitted).) Here, any reasonable official would have understood that the criminal prosecution of Kenneth Cha, without probable cause and with malicious intent, violated his rights. A reasonable official would not persecute a police officer without probable cause, for avowedly political reasons solely in order to make a political statement or affect City policy.

Defendants argue that plaintiff must, "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." (*District of Columbia v. Wesby*, 583

U.S. 48, 61 at 64 (2018).) However, in unique cases, this requirement is not present. "'Officials can still be on notice that their conduct violates clearly established law even in novel factual circumstances.' . . . . "in an obvious case, . . the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances." (*Henagan v. City of Lafayette* (W.D.La. Sep. 27, 2022, No. 6:21-CV-03946) 2022 U.S.Dist.LEXIS 175607, at *12.)

Here, there are unique circumstances: The San Francisco DA's office adopted a policy to prosecute "police officer misconduct, irrespective of the actual case facts and the existence or nonexistence of probable cause. . .  [in order] to put pressure on the SF Police Department and the City, to coerce them into changing SFPD policies related to SFPD officers' use of force." (Complaint at ¶45) Cha's prosecution was the direct implementation of this policy. (Complaint at ¶91) It should be obvious to any public official that this highly egregious conduct violates Cha's constitutional rights. Under these unusual circumstances, it is not necessary to find case precedent showing a similar situation. (*Henagan, supra,* 2022 U.S.Dist.LEXIS 175607, at *12.)

## C.    Defendants Are Not Entitled to Immunity for Negligent Hiring, Training, & Supervision (Third Claim for Relief)

Plaintiff's Third Claim for Relief asserts that defendants Chesa Boudin and Lateef Gray were negligent in hiring, training, and supervising their subordinates (ADA's Drusinsky; Lacambra; and Young, and investigator Koltuniak,), who lacked training or experience in the investigation and prosecution of officer-involved shooting cases. "A supervisory law enforcement official is liable in his or her individual capacity "if he [or she] set in motion a series of acts by others, . . . which he [or she] knew or reasonably should have known, would cause others to inflict the constitutional injury." (*Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1137 (N.D.Cal. 2000).)

Defendants argue that these claims are "conclusory." To the contrary, the Complaint alleges that defendants Koltuniak, Drusinsky, and Lacambra lacked experience with the investigation of officer-involved shooting cases, and were improperly trained to pursue these cases without regard for probable cause. (Complaint ¶¶113-117)

Defendants' Motion argues that these defendants are immune from suit for negligent employment and training because their conduct is subject to **discretionary acts immunity** under Govt.

Code §820.2. However, this immunity does not apply to mere operational decisions. Courts distinguish between protected planning or policy decisions, and the operational decisions where the employee is merely implementing policy. (*Lopez v. Southern Cal. Rapid Transit Dist*., 40 Cal.3d 780, 793 (1985).) "[T]here is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." (*Johnson v. State of California,* 69 Cal.2d 782, 796 (1968).)

Government defendants have the burden of proving that the actions of government employees fall within scope of a statutory immunity. (*Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1138 (N.D.Cal. 2000).) In adjudicating immunity under section 820.2, courts are required to make a determination that particular conduct is characterized as either a "planning" decision or an "operational" decision. However, at the pleading stage in a civil rights action, it is inappropriate for the courts to undertake this inquiry. "Plaintiffs' allegations in the present case are broad enough to encompass conduct not within the scope of the cited immunity provisions, the Court cannot resolve at the pleading stage the issue of whether any or all of the immunities bar Plaintiffs' claims." (*Rodriguez supra,* 89 F.Supp.2d 1131, 1138.) This is partly because of the lower standard for pleading in civil rights cases. (Id. at 1136-1137)

Defendants cite cases where discretionary acts immunity applied to defendants' employment and training. (Motion at 21:19-27) However, Defendants' case citations do not involve a Motion to Dismiss on a Federal section 1983 civil rights claim, and are not apposite to the Cha case.  (*See, e.g., Caldwell v. Montoya,* 10 Cal.4th 972, 981 (1995) [employment discrimination under CA law]; (*Ayala v. City of S. San Francisco* (N.D.Cal. July 13, 2007, No. C 06-02061 WHA) 2007 U.S.Dist.LEXIS 54051 [summary judgement on civil rights claim]; (*Estate of Abdollahi v. County of Sacramento,* 405 F.Supp.2d 1194 (E.D.Cal. 2005) [summary judgement on civil rights claim]) These cases are inapposite here at the pleading stage, where there is insufficient evidence to distinguish the planning and operational aspects of the defendants' conduct. (*Rodriguez supra,* 89 F.Supp.2d 1131, 1138.)

Defendants also claim immunity for the **initiation of official proceedings** under California Government Code section 821.6. Defendants argue that the negligent hiring and training in the Third Claim for Relief constitutes "instituting or prosecuting any judicial or administrative proceeding" and is subject to immunity. However, the primary case cited in support, *Leon v. County of Riverside,* 14

Cal.5th 910 (2023), was decided on summary judgment. (*Leon, supra*, 14 Cal.5th 910 at 916) It is not appropriate to determine, on a Motion to Dismiss, that all of the conduct described in the Third Cause of Action will be subject to immunity under section 821.6.

**D.     Plaintiffs' Case Is Not Barred by the Statute of Limitations (CCP §340.6)**

      **1.     There is No Argument the Claims are Timely Related to The City & County of San Francisco, San Francisco District Attorney's Office and Investigator Andrew Koltoniak**

Defense asserts in their 12(b)(6) motion that certain claims are time barred, specifically those claims against the individual attorney defendants due to the statute of limitations regarding claims against attorneys established in C.C.P. section 340.6. (Def. Motion, p. 8) Federal courts look to state law for the controlling statute of limitations and tolling for malicious prosecution claims and Section 1983 claims. (*Owens v. Okure*, 488 U.S. 235, 239-250 (1989) As the defense implicitly concedes in their own motion, the general statute of limitations applicable to malicious prosecution claims and Section 1983 is CCP section 335.1, along with the notice of claim requirements and filing deadlines of Gov't Code section 911.2 and 945.6. (Def. Motion, p. 8; C.C.P. section 335.1; *Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014).) The date the underlying criminal matter against Cha was formally dismissed by the Court was July 18, 2023, the date that his claims began to accrue. Plaintiffs timely filed a Govt. Claim, received a rejection letter, and timely filed a Complaint within 6 months of the rejection. (Govt. Code §945.6; see, Complaint at ¶¶80-82) Thus, there is no debate that the claims are timely against the City and County of San Francisco, the San Francisco District Attorney's Office and Investigator Andrew Koltuniak.

      **2.     C.C.P. section 340.6 Is Not the Controlling Statute of Limitations for the Claims Against Individual Defendants Boudin, Gray, Drusinsky, Lacambra and Young**

Defendants cite C.C.P. section 340.6 as an applicable statute of limitations barring plaintiffs' claims Section 340.6 places a one year statute of limitations on actions against attorneys for conduct "arising in the performance of professional services." (C.C.P. §340.6) This statute does not apply to the claims at issue in this matter for multiple reasons that will be explored below.

/ / /

/ / /

1

2

 i.   **Cha's Claims Do Not Arise From Attorneys' Professional Obligations During The Providing of Professional Services, Thus C.C.P. section 340.6 Does Not Control**

3

4

5

6

As is clear on the face of section 340.6, this section applies when an action is brought against an attorney regarding wrongful acts or omissions arising in the performance of professional services. Contrary to Defendants' assertions, Cha's claims do not arise from an attorney's performance of professional services and section 340.6 does not apply.

7

8

9

10

11

12

13

14

15

In *Lee v. Hanley*, the Supreme Court case held that the statute of limitations applies when the merits of the claim necessarily depend on the proof that an attorney has violated "a professional obligation in the course of providing professional services." *Lee v. Hanley*, 61 Cal.4th 1225, 1236-1237 (2015).) What constitutes a professional obligation is defined as "the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct." *Lee v. Hanley*, 61 Cal.4th 1225, 1237 (2015) Professional services are those services "performed by an attorney which can be judged against the skill prudence and diligence commonly possessed by other attorneys." *Lee v. Hanley*, 61 Cal.4th 1225, 1236-1237 (2015) (quoting *Quintilliani v. Mannerino*, 62 Cal.App.4th 54, 64 (1998).)

16

17

18

19

20

21

22

23

24

25

26

The Defense position that "C.C.P. section 340.6 applies to any claim against an attorney that, if proved, would also establish that the attorney violated a professional obligation" presents an oversimplified and overbroad application of Section 340.6. (Def. Motion, p. 8) It is not enough that the act at issue occurs due to an attorney client relationship and/or legal practice. Per the explanation provided by the Court in *Lee v. Hanley*, section 340.6(a) does not necessarily apply just due to legal representation being the impetus to bring the parties together. (*Lee v. Hanley*, 61 Cal.4th 1225, 1238 (2015) Further, merely because the acts or omissions may violate the Rules of Professional Conduct, this does not necessarily render the action a professional service per C.C.P. section 340.6, since these obligations may occur in other contexts. *Lee v. Hanley*, 61 Cal.4th 1225, 1238 (2015) Only wrongful acts or omissions that depend on the proof of the **violation of an attorney's professional obligation**, rather than the violation of a general nature, will trigger the application of CCP section 340.6.

27

28

Courts have determined various attorney conduct not to be a "professional service" implicating C.C.P. section 340.6, although performed by an attorney and connected to legal practice.  See, e.g., *Lee*

*supra,* 61 Cal.4th 1225, 1240 [C.C.P. section 340.6 did not apply to the conversion action of prepaid but unearned attorney's fees]; *Shenefield v. Kovtun,* 106 Cal.App.5th 925, 930-932 (2024) C.C.P. section 340.6 did not apply where the attorney actively harassed the opposing party and violated a restraining order])

In this case, Plaintiff Cha's claims against the individual attorney defendants do not arise from their violation of an attorney's professional obligation in the performance of professional services. As detailed above, plaintiff make claims for defendants' **investigative conduct,** including their conduct in conducting the investigative Grand Jury. This conduct is not covered by absolute immunity and does not trigger the statute of limitations in section 340.6.

### ii.    Even If C.C.P. Section 340.6 Applies, The Two Year Statute of Limitations Controls

In the alternative, even if Cha's claims against the individual attorney defendants are deemed to depend on proof of a violation of their professional obligations and C.C.P. section 340.6 is applicable, the 1 year statute of limitations is not controlling. Per C.C.P. section 340.6:

> If the plaintiff is **required to establish the plaintiff's factual innocence** for an underlying criminal charge as an element of the plaintiff's claim, the action shall be commenced within two years after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case.

(C.C.P. section 340.6(a), emphasis added)

Here, Plaintiff Cha's Section 1983/malicious prosecution claims concern an underlying criminal charge in which the plaintiff is required as an element of these claims "to show a favorable termination of the underlying criminal case against him." (*Thompson v. Clark*, 596 U.S. 36, 44, 142 S. Ct. 1332, 1338 (2022).) The tort of malicious prosecution arising out of a former criminal proceeding requires a favorable termination on behalf of the plaintiff. Favorable termination is recognized when there is a termination on the merits and "**such termination must further reflect on his innocence of the alleged wrongful conduct**." (*Lackner v. LaCroix*, 25 Cal. 3d 747, 751 (1979), emphasis added) A dismissal of charges has been recognized as a favorable termination reflecting the innocence of the misconduct. (*See King v. City of Sacramento*, No. 2:20-cv-01326-KJM-DB, 2022 U.S. Dist. LEXIS 1631, at *11-13 (E.D. Cal. Jan. 3, 2022)

Plaintiff Cha's underlying criminal matter was terminated in his favor, on the merits and reflecting his innocence for any crime. (Ex. 1, Motion to Dismiss) In the Cha matter, the underlying criminal prosecution was dismissed at the request of Assistant District Attorney Darby Williams, who filed a motion supporting this request. (Ex. 1, Motion to Dismiss) Within this motion, ADA Williams stated:

> [T]he People cannot show beyond a reasonable that Defendant did not lawfully exercise the right of personal self-defense and the right to defend another…The only thing that changed was the hiring of personnel that did not adhere to traditional norms of prosecutorial ethics. Given the inadequate proof that a crime was committed and the substantial ethics failures, the interests of justice demand the dismissal of the case." (Ex. 1, Motion to Dismiss, p. 1-2)

Thus, Plaintiff Cha's underlying criminal matter was terminated in his favor, on the merits and reflecting his innocence for any crime.

C.C.P. section 340.6 holds that the claim begins to accrue for the purposes of the two year statute of limitation after the plaintiff "achieves postconviction exoneration in the form of a final judicial disposition of the criminal case." C.C.P. 340.6(a). In the Cha matter, his matter did not proceed to conviction and instead was dismissed at the prosecutor's request. "A dismissal satisfied the favorable termination requirement because it marked 'an end to further proceedings against the defendant' on the charges." *Thompson v. Clark*, 596 U.S. 36, 45, 142 S. Ct. 1332, 1339 (2022) "For that reason, a plaintiff could maintain a malicious prosecution claim when, for example, the prosecutor abandoned the criminal case." *Thompson, supra,* 596 U.S. 36 at 45 (2022)

As Cha's matter has been dismissed by the court on July 18, 2023, the matter began to accrue on this date.  As this matter will be governed by the two year statute of limitations if C.C.P. section 340.6 applies to the claims against Boudin, Gray, Drusinsky, Lacambra and Young, Plaintiff's Complaint filed August 2, 2024 fits squarely within this timeframe.

**E.    Leave To Amend Should Be Granted**

For the reasons stated above, Plaintiff believes that the Complaint properly and timely states claims for relief against these defendants for malicious prosecution, and negligent training and supervision. At minimum, defendants have not met their "heavy burden" – "more challenging . . . than would apply on summary judgment" – to prove that all of their alleged conduct must be considered

absolutely immune as a matter of law. (*Fogle, supra,* 957 F.3d 148, 160-161) As to probable cause, "The existence of probable cause is a jury question, unless there is only one reasonable determination possible." (*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)

If the Court deems that any of plaintiff's claims are pled deficiently, plaintiff requests the opportunity to cure the defect by amendment. (Fed. R. Civ. P. 12(b)(6), 12(f)) Unless the claim is frivolous, amendment would be futile, or the claimant has been given multiple opportunities to amend, in response to a Rule 12(b)(6) dismissal the court should allow the claimant at least one opportunity to restate the claim by amendment. (*Cruz v. TD Bank, N.A*., 742 F.3d 520, 523 (2d Cir. 2013) see *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 252–253 (3d Cir. 2007) (in civil rights case, court must offer amendment when granting motion to dismiss for failure to state a claim unless amendment would be futile).

In this Motion to Dismiss, defendants have asserted a number of issues that are usually resolved in the fact-based arena of summary judgment, rather than by solely relying on the averments in the Complaint. Here, there is, at minimum, a dispute regarding whether any alleged evidence of probable cause was sufficient to charge Mr. Cha, and if so, at what point the evidence would permit defendants to charge Mr. Cha acting as prosecutors cloaked in immunity. This is an issue for summary judgment. See, *Colonies Partners LP v. Cnty. of San Bernardino* (C.D.Cal. July 28, 2020, No. EDCV 18-420 JGB (SHKx)) 2020 U.S.Dist.LEXIS 160672, at 49-53 [on summary judgment motion on immunity issues, the court determined what conduct constituted investigatory versus prosecutorial conduct]) Further, much of defendants' arguments on qualified immunity depends upon a finding of probable cause for arrest, which is typically a factual issue to be determined by a jury. (*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)) The need for post-pleading analysis also applies to other determinations regarding immunity, such as discretionary acts immunity under Govt. Code §820.2. (*Rodriguez supra,* 89 F.Supp.2d 1131, 1138.) In general, the conduct at issue should be evaluated, not on the pleadings, but in the more intensive fact-finding process of a summary judgment motion.

## 1. Additional Facts Available for Amended Complaint

In the event the Court requires further facts to support allegations regarding the defendants' assertions on this Motion to Dismiss, plaintiff is prepared to amend the Complaint to add facts on

issues such as: the defendant's promulgation of a political policy of aggressive police prosecution; the motives, qualifications, and intent of the individual defendants; defendants' intent and conduct during the Grand Jury proceedings; the existence of probable cause; whether conduct was investigative or prosecutorial; and other pertinent issues. (See, Declaration of Andrew Ganz)

### 2.    Claim for Wrongful Arrest

If the Court requests that plaintiff amend the Complaint, particularly on any issue related to the Statute of Limitations, plaintiff seeks leave to present an additional Claim for Relief for Wrongful Arrest. Plaintiff will assert a violation of Cha's right under the Fourth Amendment of the US Constitution to be free from unlawful search and seizure. (In plaintiff's Government Claim, Plaintiff gave notice to defendants of the potential wrongful arrest claim.) Generally, plaintiff will allege that on November 2, 2021, defendants caused Cha to be arrested and charged him with manslaughter and assault. At that time, Defendants should have recognized Officer Cha did not commit this crime. In so doing, they violated the due process and other civil rights of Ofc. Cha.

The statute of limitations for wrongful arrest is two years, pursuant to California Code of Civil Procedure 335.1 However, this is tolled by California Government Code section 945.3 which states:

> No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.

The tolling provision in the second paragraph of section 945.3 applies to section 1983 claims brought in federal court. (*Malik v. City & Cty. of San Francisco* (N.D.Cal. June 28, 2018, No. 17-cv-06954-DMR) 2018 U.S.Dist.LEXIS 109473, at *14-15.), citing, *Harding v. Galceran*, 889 F.2d 906, 908 (9th Cir. 1989).) Here, because of this tolling provision, plaintiff was unable to bring a civil claim against these defendants during the pendency of the criminal case. Thus, the two-year statute began to run on the wrongful arrest claim when the case was dismissed on July 18, 2023, and amendment to include this claim will be timely until July, 18 2025.

/ / /

## VI.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety. If the Court deems that there are any deficiencies in the Complaint, plaintiff requests leave to amend the Complaint to cure any defects.

Dated: February 14, 2025

Respectfully submitted,

**RAINS LUCIA STERN**
**ST. PHALLE & SILVER, PC**

/s/ *Eustace de Saint Phalle*
By: Eustace de Saint Phalle
Attorneys for Plaintiff KENNETH CHA

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS