**EXHIBIT 3**

EUSTACE DE SAINT PHALLE, SBN 179100
JOSEPH R. LUCIA, SBN 278318
OLIVIA K. LEARY, SBN 329145
RAINS LUCIA STERN ST. PHALLE & SILVER, PC
2300 Contra Costa Blvd., Suite 500
Pleasant Hill, CA 94523
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: PersonalInjuryGroup@RLSlawyers.com

ATTORNEYS FOR PLAINTIFF
JEFFREY PAILET

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| IN RE JEFFREY PAILET;<br><br>  Complainant, | CASE NO.<br><br>**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**<br><br>**Whistleblower Complaint**<br>  Filed:  March 10, 2021<br>**Ethics Complaint re Cindy Elias, et al.**<br>  Filed: April 5, 2022<br>**Ethics Complaint re Chesa Boudin, et al.**<br>  Filed: April 21, 2022 |

I, Jeffrey Pailet, declare as following:

1. I am submitting this declaration, in addition to my prior declarations, as a response to the ethics commission's request for any documents that may further support my claims. I am also submitting this declaration because I still have not been contacted by anyone related to my ethics complaints. I am concerned that these issues are being ignored again, particularly with the recent recall of Chesa Boudin as District Attorney.

2. I was hired by the San Francisco District Attorney's Office in May 2017 as an investigator in the Independent Investigations Bureau and was elevated to Lieutenant Investigator in June 2017.

1
**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

3. The Independent Investigations Bureau (IIB) is a unit within the San Francisco District Attorney's Office assigned to investigate police use-of-force incidents, including officer involved shootings.

4. Prior to my hiring, I was employed for over three decades with the Los Angeles Police Department. Many of my assignments while with the Los Angeles Police Department involved the investigation of police officer misconduct and use-of-force incidents.

5. For instance, during my employment with the Los Angeles Police Department (LAPD), I worked at Internal Affairs where I investigated allegations of both administrative and criminal misconduct by law enforcement officers. I also worked on the task force for the largest law enforcement corruption investigation in LAPD history, commonly known as the "Rampart Investigation."

6. My employment at LAPD provided me with a wide breadth of knowledge pertaining to law enforcement misconduct and corruption. Due to these experiences, I am extremely motivated to uncover and halt law enforcement misconduct when it occurs and am unable to ignore or tolerate this improper activity when I recognize it. This would include what I believed to be the illegal and unethical conduct in the San Francisco District Attorney's Office, which is what I believe I witnessed.

7. Specifically, in 2020, I witnessed actions by San Francisco Assistant District Attorneys that I believed would constitute a violation of the law, prosecutorial misconduct and unethical activities within the Independent Investigations Bureau (IIB). Initially, I attempted to report these issues internally in an effort to halt this activity at issue.

8. The underlying matter related to my concerns the officer-involved-shooting investigation of Sean Moore. Specifically, on January 6, 2017, Sean Moore was shot by San Francisco Police Department Officer Kenneth Cha while responding to a disturbance call. Mr. Moore initially survived his wounds but was incarcerated for an unrelated matter. Mr. Moore died in January 2020 and the medical examiner concluded that Mr. Moore's death was related to the gunshot wounds he sustained in 2017.

9. Chesa Boudin was elected to replace George Gascon as District Attorney in November 2019 and took office on January 8, 2020.

10. Prior to Mr. Boudin's tenure as District Attorney, the previous District Attorney (DA), George Gascon, had previously determined his office would not be pursuing criminal charges against

2

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

Officer Cha related to the shooting of Sean Moore.

11. However when DA Boudin assumed his office, he requested that the decision be revoked. I am aware that ADA Aaron Zisser concluded the officers should not be prosecuted, citing the lack of evidence the officers acted improperly and due to Sean Moore's aggressive actions during this event. I believe that likely as a response to ADA Zisser's presentation, shortly thereafter DA Boudin removed ADA Zisser from the Sean Moore OIS investigation and transferred Zisser from the IIB unit to Misdemeanors.

12. DA Boudin replaced ADA Zisser on this matter with newly hired ADA Dana Drusinsky, from the Public Defender's Office, and ADA Michael Hartmann, from the IIB Unit. Initially, the originally assigned DA investigator, York Tsuruta, remained on this case. ADA Michael Hartmann was subsequently also transferred out of IIB to Writs and was replaced by ADA Stephanie Lacambra.

13. Lateef Gray joined the San Francisco District Attorney's Office in February 2020 and was promoted to IIB Managing Attorney on June 5, 2020.

14. Prior to Lateef Gray's position with the San Francisco District Attorney's Office, Lateef Gray worked as a civil attorney at the Law Offices of John Burris.

15. Many of the cases regularly handled by the Law Offices of John Burris involve police misconduct and officer-involved shootings that are also investigated by the IIB unit. While employed at the Law Offices of John Burris, Mr. Gray represented the family of Sean Moore, who brought a civil wrongful death action against the San Francisco Police Department, its involved officers and City & County of San Francisco.

16. When Lateef Gray joined the San Francisco District Attorney's Office in 2020, the wrongful death civil action was still ongoing, and a criminal investigation was occurring within the San Francisco District Attorney's Office. Since Lateef Gray had a financial interest in this matter and had worked on this matter during his previous employment, he was deemed to have a conflict of interest by the San Francisco District Attorney's Office and was not to control the investigation and personnel decisions related to the investigation and prosecution of the matter.

16. Within the San Francisco District Attorney's Office, this conflict of interest required that Lateef Gray be excluded from all information and decision making regarding the IIB investigation of the

3

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

officer involved shooting of Sean Moore. However, it is my belief that Lateef Gray continued to improperly receive information related to this matter and participate in personnel decisions.

17. I am personally in possession of emails indicating that as Managing Attorney, Lateef Gray was improperly involved in the personnel and historical strategy overview discussions related to the Sean Moore matter. (Exhibit 1) I also believe more records showing Managing Attorney Lateef Gray's involvement in this matter may exist within the SFDA's Office records. I would cite to this problematic conflict of interest in an email to the office on November 2, 2020, which will be discussed later in this document.

18. In June 2020, Managing Attorney Lateef Gray requested I assign a new DA investigator to the Sean Moore investigation. (Exhibit 2) The former investigator, Investigator York Tsuruta, prepared a memorandum to facilitate transfer of the case to a new investigator, detailing the investigation and related events thus far. (Exhibit 3)

19. Per Gray's direction, on June 23, 2020, I moved forward with assigning DA Investigator Magen Hayashi to this matter. That same day, I received an email from ADAs Drusinsky and Lacambra that instructed me to refrain from providing Investigator Tsuruta's transfer memorandum to Investigator Hayashi. This was extremely unusual, and later reveal to be an ominous request from my tenure at the office. (Exhibit 4)

20. It was my belief at this point in the Sean Moore case, that the matter was in an additional scrutiny investigatory phase and that Investigator Hayashi would be tasked with investigating these facts in an effort to assess whether a violation of law occurred and if prosecution would be appropriate.

21. On September 29, 2020, ADA Drusinsky requested that Investigator Hayashi compose a search warrant and warrant affidavit, to be attested to by Investigator Hayashi, directed to the search of the department and personal electronic communication devices of the involved officers, SFPD Officers Kenneth Cha and Collin Patino. It was the intent that Investigator Hayashi was to serve as a fact witness related to the seizure of evidence as sought in the proposed search warrant.

22. On October 1, 2020, Investigator Hayashi emailed ADAs Lacambra and Drusinsky an initial rough draft of the requested search warrant. Her first draft included questions to the ADAs that related to the lack of sufficient probable cause for the proposed scope of the search warrants. (Exhibit 5)

4

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

23. Investigator Hayashi later informed me that in response to her initial draft of the search warrant, ADAs Lacambra and Drusinsky ignored her queries regarding the perceived lack of probable cause and merely directed her to provide a narrative of the incident involving Sean Moore. They also told her to assert very specific language in the search warrant, stating that she should write "in my training and experience, officers will often communicate about the facts and circumstances of their actions via both their police department issues cell phones and devices as well as their personal phones." They assured her that this language would provide sufficient probable cause to support the search (Exhibit 6).

24. In response to this direction, Investigator Hayashi submitted a second draft to ADAs Drusinsky and Lacambra on October 14, 2020. This draft included the detailed narrative of the events leading up to and including the OIS. Investigator Hayashi included what she believed were all the pertinent details regarding the officers' and Sean Moore's actions during the incident. Specifically, she included information about Mr. Moore's aggressive behavior towards the officers and exculpatory information related to the lack of evidence that the officers had used their electronic devices to discuss the incident. Based on our training and duties as DA Investigators serving as affiants for search warrant affidavits, this information was required to ensure any reviewing court was provided accurate information for its assessment and fulfilled the requirements of providing known potentially exculpatory evidence. (Exhibit 7)

25. ADAs Lacambra and Drusinsky provided Investigator Hayashi with a third draft. I later reviewed this draft and noted that this draft was heavily edited. The edits performed by the ADAs misrepresented the events of the incident and eliminated facts that could support the officers' acted with proper use of force. In addition to this clear and purposeful manipulation of the facts at issue in the warrant, ADAs Lacambra and Drusinsky repeatedly deleted exculpatory information regarding the lack of evidence that the officers had ever used their electronic devices to discuss the incident. This was done in direct contradiction of the legal requirements and existing SFDA IIB policy to include relevant exculpatory information in search warrants and warrant affidavits and with the instruction that Investigator Hayashi was required to sign the warrant under penalty of perjury. (Exhibit 8)

26. Investigator Hayashi contacted me and shared her concerns regarding the search warrant. I reviewed the drafts and noted ADAs Drusinsky and Lacambra had indeed made significant changes to Investigator Hayashi's work. After a close review, I believed their edits would create an invalid and illegal

search warrant for multiple reasons and their actions contradicted SFDA policy, SFDA investigator duties and training as well as applicable legal edicts.

27. Due to Investigator Hayashi's role as intended affiant to this search warrant, I knew Investigator Hayashi could be called to testify and be cross-examined as to the assertions contained in the search warrant and affidavit. Therefore, to properly and ethically serve as the affiant, I believed it was necessary for Investigator Hayashi herself to agree with the assertions contained in the warrant.

28. After my review I believed based on my experience and training there were five main issues with the search warrant and warrant affidavits with ADAs Drusinsky and Lacambra's edits and directions: (1) Probable cause to support the search of the officers' personal electronic communication devices was not adequately supported by the existing facts; (2) The facts were misrepresented; (3) The existing facts were stale; (4) The scope of the warrant was overbroad based on the facts and; (5) The ADAs had purposely deleted relevant exculpatory information related to the circumstances.

29. I believed submitting these search warrants and warrant affidavits as currently drafted would constitute a violation of the law, prosecutorial misconduct and would be unethical.

30. Initially, I attempted to report these issues internally to halt this activity at issue.

31. On October 21, 2020, a meeting was called between Investigator Hayashi and ADAs Drusinsky and Lacambra to discuss the search warrants. Hayashi invited me to take part in this meeting so that I could weigh in on the legitimacy and legality of the search warrants and provide any additional explanation to ADAs Drusinsky and Lacambra. I hoped that at this meeting, I would be able to explain to ADAs Drusinsky and Lacambra the issues with the search warrants as they directed and they would understand and agree to comply with the law, their prosecutorial duties and ethics.

32. During this meeting, I explained the SFDA investigators' roles and responsibilities and the need to provide exculpatory information in search warrants, among other issues. I also detailed my concerns regarding the lack of probable cause to perform the search of Officers Cha and Patino's personal electronic communication devices.

33. In response to my comments, ADAs Drusinsky and Lacambra appeared to disregard my concerns and appeared to be angered by my presence at the meeting. They warned me that should I continue to bring up these concerns regarding the search warrants at issue, they would inform DA Boudin

6

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

that Investigator Hayashi and myself were unable to fulfill the ADAs' assignments. After this ominous warning, I assured the ADAs we would continue working to properly draft the search warrant within the parameters of California law.

34. After this meeting, on or about October 21, 2020, I learned I had been restricted from accessing the Sean Moore case file. This was highly unusual, and to my knowledge, was the only IIB Unit case file I did not have access to during my entire tenure at the SFDA office.

35. Soon after, I requested to regain access to the case file. ADAs Drusinsky and Lacambra declined to grant my request. I believe this was to reprimand me for attempting to explain to them office procedure and due to my insistence that the affidavit be lawfully drafted.

36. On October 23, 2020 and October 28, 2020, Investigator Hayashi again emailed me updated drafts of the search warrant. In each of these drafts, I again noted ADAs Drusinsky and Lacambra altered the statements concerning the incident, manipulated the context of the facts, added unsupported statements and removed exculpatory information. (Exhibits 9 & 10)

37. I was concerned, after reviewing these subsequent drafts and noting ADAs Drusinsky and Lacambra's continued edits to the search warrant affidavits in direct contradiction of my commentary, that these ADAs were attempting to present a deceiving search warrant to the court and have it carried out. Based on these concerns, I made further attempts to halt what I believed to be improper and unethical activity.

38. On November 2, 2020, I emailed ADAs Drusinsky and Lacambra a detailed analysis, further presenting my concerns with the appropriateness of their edits and the potentially unsupported search. (Exhibit 11). It was my belief that this email would be forwarded up the SFDA management chain.

39. On November 4, 2020, Investigator Hayashi, ADAs Drusinsky and Lacambra and I attended a meeting related to the search warrants at issue. Prior to this meeting, ADAs Drusinsky and Lacambra requested Investigator Hayashi not invite me to this meeting, however Investigator Hayashi requested my presence. Anticipating the meeting with ADAs Drusinsky and Lacambra may result in further issues, I sent an email to Managing Attorney of the IIB Unit, Lateef Gray. Because this concern dealt with personnel matters related to the assignment of staff and attorneys within the DA's Office, and Lateef Gray was my immediate supervisor, I asked him who I should consult with regarding issues or

7

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

concerns with ADAs Drusinsky and Lacambra. I never received a response to this query. (Exhibit 11)

40. While I believed it to be problematic for Lateef Gray to be involved in personnel matters concerning the Sean Moore case for ethical reasons due to his conflict-of-interest, I had been instructed that I was required to run all personnel issues by him since he was in charge of IIB assignments and seemed to be privy to information concerning the case.

41. I believed when I submitted the emails on November 2, 2020, and November 4, 2020, discussed above, I was making protected whistleblower complaints within the San Francisco District Attorney's Office. It was my intent these reports would result in the activities at issue coming to a halt. It was also my understanding from the culture of the organization that these emails would be seen by the other ADAs and DA Boudin.

42. During this November 4, 2020, meeting with ADAs Drusinsky and Lacambra, I again presented my concerns with their many edits, of which I said would render the search warrant overbroad, stale, fail to include the required exculpatory information, present the facts out of context, misstate the facts and fail to establish probable cause. When I presented these issues to ADA Drusinsky and Lacambra, they dismissed these as problematic and were not receptive to my comments. ADA Drusinsky appeared visibly upset and she again threatened to report me to DA Chesa Boudin. From our discussion, I was under the belief DA Boudin had already been informed of the situation.

43. I believed this warning was intended as a threat to force me to comply with the ADAs' instructions, actions and goals or face negative consequences.

44. On November 6, 2020, I was verbally informed I was to be terminated from the San Francisco District Attorney's Office. I had not received a formal written termination. I believe that I was to be terminated due to my continued objection and reporting of the improper and unethical activities by the ADA's related to the search warrant and affidavits, as discussed above, in addition to the conflict-of-interest issues involving Lateef Gray.

45. In response, I emailed DA Chesa Boudin and Chief of Staff David Campos detailing my concerns about retaliation and regarding the issues of the legality of the search warrant and my belief that ADAs Drusinksy and Lacambra's were attempting to purposely violate the law and ignore prosecutorial ethics. I hoped this email would warn DA Boudin of what was transpiring, and that this correspondence

8

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

would provide adequate notice to law enforcement of a perceived violation of law occurring within the SFDA's Office. I was not contacted related to this email and never informed of an investigation. Again, I believed I was filling a protected whistleblower complaint. (Exhibit 13)

46. Following my termination, I appealed my termination via my rights under Government Code section 3304(b). An appeal hearing was conducted by Simin Shamji, SFDA Chief of Programs and Initiatives, on March 12, 2021. During this hearing, my counsel again presented the details of my whistleblowing activity and the details of my belief that ADAs Lacambra and Drusinsky were engaged in illegal and unethical actions. (Exhibit 14) I was later notified on April 23, 2021, that Simin Shamji and DA Boudin denied my appeal and elected to continue my termination. I was also informed no internal investigation would be conducted concerning my whistleblower complaint of what I believed to be improper efforts to file an illegal search warrant by ADAs in the SFDA's Office. (Exhibit 15)

47. On March 10, 2021, I submitted a written whistleblower complaint to the San Francisco Office of the Controller Whistleblower Program and requested an investigation be conducted. While I was initially contacted by an investigator, I was later informed the Office of the Controller would not be conducting the formal investigation and an outside agency would be contacting me. I was never contacted by anyone conducting a formal investigation. (Exhibit 16)

48. I submitted an initial Government Tort Claim related to these matters on April 30, 2021, to the City and County of San Francisco. At this time, I believed if I reported this conduct to another agency in San Francisco, due to the seriousness of my allegations, a proper investigation would occur. However, again, I was never contacted or interviewed in response to this claim. The claim was summarily denied on May 5, 2021, with little to no explanation from the City Attorney's Office beyond an "investigation of your claim…has revealed no indication of liability on the part of the City and County." (Exhibit 17)

49. As this was likely the first time the City Attorney was notified of my complicated claims, I initially believed the City Attorney merely denied this claim due to a lack of understanding on the issues presented and an insufficient investigation was performed by the SFDA's Office. Therefore, following this denial, I provided the City Attorney with a response again explaining what had occurred, the damages I incurred and a request for an in-depth investigation of these matters by the City Attorney and the SFDA's Office. This was submitted to the City and County of San Francisco City Attorney's Office on October 8,

2021.

50. On October 29, 2021, I finally received a substantive reply from the City Attorney's Office concerning their position on my claims. In this response, the City Attorney's Office explained in detail how the SFDA's Office had advised them that my claims were unsupported by evidence and that I was terminated due to work performance issues. (Exhibit 18)

51. Prior to my termination, I had never received any warning that my team had any work performance issues, and contrary to this assertion, my team was considered highly capable and had been praised in office correspondence and documents. Therefore, this response finally demonstrated what I believe to be the true intent of the SFDA's Office: the SFDA's Office and DA Boudin did not intend to perform a proper investigation of my claims, were seemingly working to stop the discovery of the unethical and potentially illegal activities occurring within the Office and acting to stymie discovery of the unlawful retaliation they had taken against me following my attempts to act as a whistleblower regarding these issues.

52. Therefore, on November 2, 2021, I filed a civil complaint against the City and County of San Francisco, the San Francisco District Attorney's Office, the District Attorney Chesa Boudin, Chief of Staff David Campos, Assistant District Attorney Stephanie Lacambra and Assistant District Attorney Dana Drusinsky that again detailed my claims and again requested an investigation be performed.

53. Following this, I learned similar conduct occurred on a separate matter after my termination. DA Investigator Magen Hayashi testified on January 27, 2022 during the Terrance Stangel trial that she was pressured to remove exculpatory information from an arrest warrant by the managing ADAs and to serve as the affiant under the threat of termination. (Exhibit 19) I believe this is very similar conduct to what I personally experienced and witnessed within the SFDA's Office and implies that there is a larger practice of prosecutorial misconduct and intimidation beyond my matter and that this may be ongoing within the SFDA's Office.

54. On February 4, 2022, District Attorney Chesa Boudin stated in a press conference in reference to Magen Hayashi's January 27, 2022 testimony, that he was "not aware of one iota of evidence, not an email, not a documented conversation, nothing that occurred during my tenure that could possibly suggest that is ever acceptable, under any circumstances, to be less than 100% truthful and candid in

affidavits filed under penalty of perjury."

55. It is my opinion that when DA Chesa Boudin made those statements, he was aware of other allegations of dishonest and deceptive statements in affidavits as this is the central subject at issue in my whistleblower complaints. I have reported these issues to DA Boudin himself, as well as others in management positions and high up in his administration many times prior to his commentary. Thus, I believe that DA Boudin must know of other claims regarding misconduct directed to the content of affidavits issued by the SFDA's Office because I told him of those issues.

56. Therefore, on March 17, 2022, I filed an amended complaint that further clarified the causes of action and addressed these subsequent realizations. (Filed under Seal) In this amended complaint, I named the same defendants as were identified in the initial complaint, as well as Simin Shamji, the Chief of Programs and Initiatives who oversaw my appeal hearing and was mentioned in the original April 30, 2021 Government Tort Claim.

57. On April 5, 2022, I filed an ethics complaint concerning the conflict-of-interest of IIB Managing Attorney Lateef Gray and his spouse, Cindy Elias, the Vice President of the San Francisco Police Commission. I shared in this complaint that I have repeatedly requested an investigation be performed by the SFDA's Office, however it appears that no formal investigation has been conducted and no individual from the SFDA's Office or the City and County of San Francisco has interviewed me concerning my serious claims. I addressed my concerns that an investigation was not conducted due to the conflict-of-interest for IIB Managing Attorney Lateef Gray, who I believed was improperly privy to information in the Sean Moore matter. (Exhibit 20)

58. Within this ethics complaint, I addressed Ms. Elias' recent public statements, made on February 9, 2022, regarding my employment with the San Francisco District Attorney's Office and my wrongful termination, including her describing me as a "disgruntled employee." As I stated in this ethics complaint, I am not a "disgruntled employee", but a whistleblower who attempted to correct and warn of improper conduct occurring within the SFDA's Office. Further, as Managing Attorney of IIB Lateef Gray was to be excluded from the Sean Moore matter due to his conflict-of-interest, he and his wife should have been similarly excluded from the details of my case as both matters are unavoidably intertwined.

59. On April 21, 2022, I submitted a further ethics complaint regarding District Attorney

11
**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

Chesa Boudin related to his press conference on February 4, 2022, in which he stated that he was unaware of any evidence suggesting a lack of candor or truthfulness in SFDA's Office affidavits. As stated in my complaint, I know that this is false as I personally emailed DA Boudin about similar conduct that I witnessed within the SFDA's Office. I shared my concerns that based on my repeated warnings to DA Boudin and his administration and their failure to conduct a robust investigation, I now believed that DA Boudin himself was attempting to cover-up this improper conduct. (Exhibit 21)

60. On April 29, 2022, I also submitted an additional Government Tort Claim concerning the events that occurred following my initial Government Tort Claim submitted on April 30, 2021, as detailed above. (Exhibit 22) This additional Government Tort Claim was also summarily denied by the City Attorney's Office on May 11, 2022. (Exhibit 23)

61. Additionally, I believe that there is further circumstantial evidence that employees of the San Francisco District Attorney's Office, including DA Boudin, are attempting to conceal misconduct and confuse any formal investigation into my claims. I believe there is a cover-up to hide Lateef Gray's involvement in personnel issues during the investigation phase of the Sean Moore matter and to hide the problematic investigation efforts by the ADAs related to the improper search warrants.

62. Under the San Francisco Administrative Code section 67.2907, commonly referred to as the Sunshine Ordinance, government employees' communications, including those sent and received by the San Francisco District Attorney's Office, shall be maintained and preserved.

63. While I was employed at the San Francisco District Attorney's Office, there were rumors that employees, specifically ADAs and the DA, were using Whatsapp and other communication devices that would allow for deletion of their messages and prevent a record of their discussions. Since my termination I have conducted some additional investigation and have obtained information that seems to corroborate that attorneys within the San Francisco District Attorney's Office are regularly communicating with applications designed to destroy messages automatically after they are sent and received, including the Signal application. If this is true, I believe that this conduct is contrary to the requirements for preservation of communications within the City and County of San Francisco as required by the Sunshine Ordinance. (Exhibit 24, See Minutes from Sunshine Ordinance Taskforce Hearing on May 5, 2021.)

64. As detailed above, I have repeatedly attempted to warn of what I believe to be misconduct

occurring within the SFDA's Office and have requested a proper investigation be performed at numerous turns. However, based on the lack of investigation to my many reports and the retaliation I experienced for these reports, it is my opinion that there is a sustained and supported pattern and practice of prosecutorial misconduct and likely illegal activities occurring within the SFDA's Office.

65. Further, it is my opinion that Former District Attorney Chesa Boudin, Former Chief of Staff David Campos and Managing Attorney Lateef Gray do not wish for a robust investigation into my reports to occur and, contrary to recent statements, they have taken steps to conceal the improper activities occurring within the San Francisco District Attorney's Office.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed this 18 day of JULY, 2022 in LOS ANGELES, California.

By: Jeffrey Pailet

# PROOF OF SERVICE

I am employed in the City of Pleasant Hill, State of California. I am over 18 years of age and not a party to this action. My business address is Rains Lucia Stern St. Phalle & Silver, PC, 2300 Contra Costa Blvd., Suite 500, Pleasant Hill, California 94523.

On the date below I served a true copy of the following document(s):

**COMPLAINANT JEFFREY PAILET'S DECLARATION RE ETHICS COMPLAINTS & WHISTLEBLOWER COMPLAINT**

on the interested parties to said action by the following means:

☐ **(BY MAIL)** By placing a true copy of the above, enclosed in a sealed envelope with appropriate postage, for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **(BY OVERNIGHT DELIVERY)** By placing a true copy of the above, enclosed in a sealed envelope with delivery charges to be billed to Rains Lucia Stern St. Phalle & Silver, P.C., for delivery by an overnight delivery service to the address(es) shown below.

☐ **(BY FACSIMILE TRANSMISSION)** By transmitting a true copy of the above by facsimile transmission from facsimile number (925) 609-1690 to the attorney(s) or party(ies) shown below.

☐ **(BY MESSENGER)** By placing a true copy of the above in a sealed envelope and by giving said envelope to an employee of First Legal for guaranteed, same-day delivery to the address(es) shown below.

☐ **(BY HAND DELIVERY)** By personal delivery of a true copy of the above to the attorneys or parties shown below

☒ **(BY E-MAIL or ELECTRONIC TRANSMISSION)** Based on California Rules of Court, Emergency Rules Related to COVID-19, Emergency Rule 12, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable period of time, after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Eamonn Wilson
Senior Investigator/Legal Analyst
San Francisco Ethics Commission
25 Van Ness Ave., Suite 220
San Francisco, CA 94102
EAMONN.WILSON@SFGOV.ORG

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

DATED: July 19, 2022

*Emily O. Burke* (signature)
Emily O. Burke

---

1
SERVICE LIST