**EXHIBIT 7**

```
 1                  SUPERIOR COURT OF CALIFORNIA
 2                    COUNTY OF SAN FRANCISCO
 3      BEFORE THE HONORABLE TERESA M. CAFFESE, JUDGE PRESIDING
 4                          DEPARTMENT 27
 5                            ---oOo---
 6  PEOPLE OF THE STATE OF CALIFORNIA )
                                      )
 7           PLAINTIFF,                )
                                      )
 8      vs.                            )      Court No.
                                      )
 9                                     )      402 HEARING
    TERRANCE STANGEL,                 )
10                                    )
                                      )      Pages 1 - 116
11           DEFENDANT.                )
    _____)
12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                 Thursday, January 27, 2022
```

Reported By: ADRIANA P. ROBLES, CSR #14212

```
 1  A P P E A R A N C E S:

 2      For the People:

 3          CHESA BOUDIN, DISTRICT ATTORNEY
            City and County of San Francisco
 4          350 Rhode Island Street – 400N
            San Francisco, California 94103
 5          BY:  HANS MOORE, Assistant District Attorney
                 LATEEF GRAY, Assistant District Attorney
 6               REBECCA YOUNG, Assistant District Attorney

 7      For the Defendant:

 8          RAINS LUCIA STERN ST.PHALLE & SILVER, PC
            220 Montgomery Street, Floor 15
 9          San Francisco, California 94104
            BY:  NICOLE PIFARI, Attorney at Law
10
        For witness MAGEN HAYASHI:
11
            CHRISTOPHER J. SHEA, Attorney at Law
12          255 Kansas Street, Suite 340
            San Francisco, CA 94103
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

**GOVERNMENT CODE § 69954(d) RESTRICTS COPYING TRANSCRIPT**

```
                          SESSIONS

                                                    PAGE

JANUARY 27, 2022
    MORNING SESSION                                   8
    AFTERNOON SESSION                                80
```

INDEX OF DEFENDANT'S WITNESSES
PAGE 1 of 1
--o0o--

| FOR THE DEFENDANT: | PAGE: | VOL: |
|---|---|---|
| BRENDAN O'CONNOR | | |
|     Direct Examination by Ms. Pifari | 13 | 1 |
|     Cross-Examination by Mr. Moore | 34 | 1 |
|     Redirect Examination by Ms. Pifari | 57 | 1 |
| MAGEN HAYASHI | | |
|     Direct Examination by Ms. Pifari | 62 | 1 |

```
                    INDEX OF PEOPLE'S EXHIBITS
                           PAGE 1 of 1
                            --oOo--


FOR THE PEOPLE:                                  ID:    EVD:   VOL:

  E    People's response to Defendant's motion    39            1
```

INDEX OF DEFENDANT'S EXHIBITS
PAGE 1 of 1
--o0o--

| FOR THE DEFENDANT: | | ID: | EVD: | VOL: |
|---|---|---|---|---|
| F | Attached exhibits to Defendant's motion: O'Connor's chronological, MOU, and email between O'Connor and Hayashi | 23 | 61 | 1 |
| G | Inspector Hayashi's chronological | 69 | | 1 |
| I | 01/14/2020 Email to D.A.I Hayashi from Lieutenant O'Connor | 30 | | 1 |

```
                    INDEX OF COURT'S EXHIBITS
                           PAGE 1 of 1
                            --o0o--


    1    Rough draft of warrant                    110           1
```

1  witness if she was instructed to remove exculpatory
2  information.
3        **THE COURT:**  That's -- remove exculpatory information
4  from what?
5        **MS. PIFARI:**  From the sworn affidavit, from the
6  affidavit she signed under penalty of perjury.  I think you
7  should ask me --
8        **THE COURT:**  Even if she was, how does that affect
9  Officer Stangel's evidence?
10       **MS. PIFARI:**  Because it supports what I've been
11 trying to tell the Court which is that the D.A.'s office
12 here obstructed the criminal investigation into Spiers and
13 they did so to strengthen their case against --
14       **THE COURT:**  Okay.  Go ahead, finish.  Finish.  I'm
15 sorry.
16       **MS. PIFARI:**  They did so despite the fact that they
17 had specific and articulable information that Spiers was
18 guilty of a felony, and by doing so they have permanently
19 altered the legal landscape of this case.
20       **THE COURT:**  No, because I'm not going to let them --
21 I'm not going to allow either side to argue whether or not
22 the case was charged because that's irrelevant.  What's
23 relevant is what this officer did or did not do when he
24 heard Mr. Spiers apparently committing domestic violence on
25 somebody.
26       The fact that they weren't charged -- they didn't
27 charge Mr. Spiers doesn't mean Mr. Spiers is innocent, it
28 means they probably believe they can't prove their case

```
 1  against him, but it doesn't mean that he's innocent.  It's
 2  irrelevant.  It's irrelevant.
 3         MS. PIFARI:  This is a malicious prosecution.
 4         THE COURT:  What evidence do I have of that that
 5  it's a malicious prosecution?
 6         MS. PIFARI:  Maybe you should let me ask the witness
 7  if she was instructed to remove exculpatory information.
 8         THE COURT:  Let me ask you then why are you bringing
 9  the motion now?  I have the case for trial.
10         MS. PIFARI:  Because I just learned about all of
11  this in the last 10 to 12 days.  I found one thing in a
12  chron that led me to another thing to another thing to
13  realize this is totally crooked.
14         THE COURT:  For whatever reason, I'm not going to
15  comment or opine why you have an MOU that you don't follow
16  or do follow it.  I'm not here to decide that.  I'm not
17  going to -- that's not my role.
18         What I understand is you got information in January
19  of this year, after you were sent out for trial, that the
20  D.A.'s office investigator received a second -- obtained a
21  second interview of Ms. Emerson that corroborated her
22  statement that she had made to Sergeant O'Connor and to
23  this initial determination in October of 2019; correct?
24         MS. PIFARI:  Correct.
25         THE COURT:  That she for whatever reason did not
26  tell Sergeant O'Connor that she was going to conduct this
27  in-person interview on December 3rd of --
28         MS. PIFARI:  If I may interrupt, it wasn't for
```

```
 1   whatever reason, it was because she was instructed not to.
 2        THE COURT:  Even if that's true, if that's true,
 3   it's not my role.  How does this change your defense?
 4   Given the fact that I'm not allowing either side to
 5   introduce the fact that Mr. Spiers was charged with
 6   domestic violence?  How does that change Officer Stangel's
 7   defense?
 8        MS. PIFARI:  It's not just about his defense, it's
 9   that this is the conduct that shocks the conscience.  This
10   is methods too close to the -- this is the stuff that cases
11   talk about that dismissal is a proper remedy for
12   sufficiently outrageous governmental misconduct.  I suspect
13   there's a little bit more behind this witness that would
14   really push this over the edge.
15        THE COURT:  What you're saying, I don't know, but
16   what you're offering or suggesting is that the D.A.'s
17   office instructed this witness to withhold exculpatory
18   information.
19        MS. PIFARI:  Yes.
20        THE COURT:  Okay.  Well, then I guess we have
21   another motion -- well, that is your motion.
22        Mr. Moore, would you like to respond?  She has a
23   point there.  Is a defendant not entitled to put on
24   evidence on whether or not your office intentionally
25   withheld exculpatory information?
26        MR. MOORE:  She's -- there's no evidence of that.
27        THE COURT:  I guess that's what she's trying to --
28        MS. PIFARI:  That's what she's here to find out.
```

1  **THE COURT:** I can only hear one person and you know
2  what? Ms. Robles is taking me down.
3  Go ahead, Mr. Moore. I know it's frustrating for
4  everybody.
5  **MS. PIFARI:** We're here to find out, your Honor, if
6  there is evidence of that. I think we should be entitled
7  to ask her. If the Court says that doesn't count, it's not
8  coming in, then we know.
9  **MR. MOORE:** I think the simple basis for the
10 suspicion that exculpatory information was omitted is a
11 second interview that confirms the first interview. It
12 doesn't alter the initial statements, it doesn't leave an
13 additional thread of another witness possibly staying out
14 there that may have been pursued by the D.A. or
15 Sergeant O'Connor, all you have is a second identical
16 interview that wasn't turned over because of some internal
17 disagreement over what flow of information was proffered.
18 That doesn't give rise to Trombetta, it's certainly
19 not Brady. There's no evidence here whatsoever that has
20 been -- that has even risen to the level of suspicion that
21 there's potentially exculpatory information being hidden.
22 **THE COURT:** Okay.
23 **MS. PIFARI:** We have an offer of proof from the
24 witness's own attorney that she was told to exclude
25 information from that warrant. I really think the Court
26 should allow me to see if there's anything there.
27 **THE COURT:** Ask your question.
28 ///

```
 1          BY MS. PIFARI
 2     Q.     Were you instructed to remove exculpatory
 3   information from the warrant?
 4     A.     Yes.
 5     Q.     Who instructed you to remove exculpatory information
 6   from the arrest warrant?
 7     A.     A.D.A. Moore.
 8     Q.     Can you -- this A.D.A. Moore next to me?
 9     A.     Yes.
10     Q.     What information did he instruct you to remove from
11   the arrest warrant?
12     A.     On the first draft of the warrant that I wrote, I
13   had a page and a half, so a significant amount of
14   information, from the 911 callers.  There were multiple
15   iterations of the warrant after that first one, and in one
16   of them A.D.A. Moore wrote a comment on the side saying to
17   remove it, that it was not relevant information to the
18   case.
19     Q.     Did you feel pressured to sign that?
20          THE COURT:  First of all, the question was somewhat
21   calling for a legal conclusion.  I mean, it's not
22   exculpatory.  I guess the question is what were you asked
23   to remove; right?
24          MS. PIFARI:  Okay.
25          THE COURT:  I'm not here to decide a motion to
26   traverse.
27          MS. PIFARI:  This is beyond a motion to traverse.
28   This is misconduct from the D.A.'s office.  They're now
```

```
 1   removing things from the affidavit.
 2           THE COURT:  What information were you asked to
 3   remove?
 4           THE WITNESS:  It was an extensive summary from my
 5   interview of Ms. Emerson and Lieutenant O'Connor's
 6   interview for Ms. Emerson and Ms. McCreary, the 911 -- the
 7   two women that reported the DV.  It was a summary of their
 8   statements.  One of the iterations I was told by
 9   A.D.A. Moore to remove the section, that it was not
10   relevant to our case, the D.A.'s case.
11           THE COURT:  Okay.
12           BY MS. PIFARI
13   Q.      Were you pressured to sign that affidavit?
14   A.      Yes.
15   Q.      By who?
16   A.      It was a general understanding and my experience in
17   this office if you don't sign these things, you'll be
18   fired.
19   Q.      How were you pressured and what exactly was said to
20   you?
21   A.      I had a previous almost to the day that I was asked
22   to write this warrant, there had been another case I was
23   working on where I was threatened by attorneys three
24   different times that if I didn't agree with their warrant
25   they would report me to D.A. Boudin and that we were
26   looking at termination possibilities.  My lieutenant
27   assisted me with this because it was such a severe problem,
28   and he was fired.
```

```
1   State of California              )
                                     )
2   City and County of San Francisco )

3

4

5        I, Adriana P. Robles, Certified Court Reporter for the
6   Superior Court of the State of California, City and County of
7   San Francisco, do hereby certify:
8        That I was present at the time of the above proceedings;
9        That I took down in machine shorthand notes all proceedings
10  had and testimony given;
11       That I thereafter transcribed said shorthand notes with the
12  aid of a computer;
13       That the above and foregoing is a full, true, and correct
14  transcription of said shorthand notes, and a full, true and
15  correct transcript of all proceedings had and testimony taken;
16       That I am not a party to the action or related to a party
17  or counsel;
18       That I have no financial or other interest in the outcome
19  of the action.
20
21
22  Dated:  January 30, 2022
23
24                  _____
25                      ADRIANA P. ROBLES, CSR NO. 14212
26
27
28
```