**EXHIBIT 13**

CHESA BOUDIN (SBN 284577)
District Attorney
City and County of San Francisco
REBECCA YOUNG (SBN 121179)
Assistant District Attorney
350 Rhode Island Street
North Building, Suite 400N
San Francisco, California 94103
Desk: (628) 652-4361
Email: rebecca.young@sfgov.org

*Attorneys for the People*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff, <br><br> vs. <br><br> KENNETH CHA, <br><br> Defendant. | SCN:  2101 0958 <br><br> **PEOPLE'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY** <br><br> Date:  May 26, 2022 <br> Time:  9:00 a.m. <br> Dept:  20 |

To: Scott Burrell, Attorney for Defendant, Kenneth Cha, and to the Honorable Loretta Giorgi, Judge of the Superior Court:

    The People of the State of California, ("The People") oppose the Defense Motion to Compel Discovery on the following grounds:

  1. Defendant seeks "core work product" that is absolutely protected by Code of Civil Procedure, § 2018.030, subd. (a); Government Code section 6255, and People v. Zamudio (2008) 43 Cal.4th 327, 355.

  2. The requested draft "search warrant affidavit and related documents" is a request for a search warrant *never sought to be issued* and is not *Brady* material.

1

3. The requested draft "declination report" is a request for an internal document that was never publicly issued or reviewed outside of the Independent Investigations Bureau ("IIB") and is not *Brady* material.

4. The requested "documents relating to the involvement of Lateef Gray in this matter" is a figment of Defendant Cha's imagination as such documents do not exist.

This Opposition is made on the further grounds that Defendant Cha's Motion to Compel lacks any persuasive argument or compelling legal authority for piercing the work-product doctrine and is a fishing expedition for anything that might help former Lt. Jeffrey Pailet in his wrongful termination lawsuit against the San Francisco District Attorney's Office.[1]

This Opposition is based upon the attached memorandum of points and authorities, supporting Declaration and Exhibits, and any evidence or argument to be presented at the hearing.

**Statement Of Relevant Facts**

Defendant Kenneth Cha is a police officer with the City and County of San Francisco who is charged with voluntary manslaughter and other offenses in the death of Sean Moore.

**A. The Initial Police Complaint**

On January 6, 2017, at 4:00 AM, Officers Cha and Patino went to Sean Moore's residence at 415 Capitol Avenue to investigate a neighbor's complaint that Moore had violated a recently imposed temporary restraining order (TRO) by banging on a common wall between their homes. When Cha and Patino confronted Moore at his front door (as Moore stood outside the front door but behind the locked gate) Moore acknowledged his identity, acknowledged the TRO and denied violating it. Moore explained to Cha and Patino that he had taken out his garbage. Moore repeatedly asked the officers to leave. Cha and Patino refused

---

[1] This truth becomes all the more evident upon reading Defendant Cha's Motion to Compel, pages 5-11. Nearly the entire statement of "pertinent facts" quotes from Pailet's Complaint for monetary damages. In addition, Pailet's lawsuit is Exhibit A to Defendant's Motion to Compel.

to leave. Instead, they continued to question Moore about violating the TRO and to ask Moore what his problem was. As the mentally ill Sean Moore became increasingly agitated, he cursed at the officers, and persisted in ordering them off his property. Cha and Patino escalated the situation by refusing to leave, and did not call for back-up or speak to a sergeant for guidance. At one point, defendant Cha said to Moore, "C'mon, let's go!" as if taunting Moore to fight them. Over the course of eight minutes, the confrontation on Sean Moore's curtilage worsened: Patino clubbed Moore with his baton when Moore stepped out from behind the gate to pick up something he had dropped, Cha pepper-sprayed Moore (and accidentally, his partner, Patino,) Moore kicked at Patino as he came back up the stairs with his baton raised. The debacle ended when Cha shot the unarmed Sean Moore twice in the torso.

Sean Moore was charged with numerous felonies against Officers Cha and Patino. But all the felony charges were thrown out, first by the Honorable Jeffrey Ross on 995 review,[2] and last by the First District Court of Appeal on the prosecution's appeal from the 995 grant.[3]

Sean Moore survived his gunshot wounds for three years. In January 2020, Moore succumbed to the continuing build-up of scar tissue in his gut. The Marin County Coroner determined that the cause of death was "Acute Intestinal Obstruction" due to "Sever Abdominal Adhesions" and "Sequelae of Remote Gunshot Wound to Abdomen." The Manner of Death was Homicide.[4] It was the Marin County Coroner's Report that reopened IIB's investigation into defendant Cha's shooting. The cause and manner of death findings were pivotal in the determination to re-examine the totality of the circumstances behind Officer Kenneth Cha's use of deadly force. Contrary to defendant Cha's beliefs, it had

---

[2] **Exhibit 1**: Transcript of 995 hearing before Judge Jeffrey Ross, April 25, 2017. This is not a clean copy, but it is all that is in the file. There are many highlights made the attorney on the criminal case and I apologize for that.
[3] **Exhibit 2**: People v. Sean Moore, A151276, COA 1st Dist Div. 5, 5/1/2018.
[4] **Exhibit 3**: Marin County Coroner's Report, Page 1-2, Sean Wendell Moore (redacted of personal health information and protected information.)

nothing to do with Lateef Gray's hiring, unissued search warrant affidavits or the prior draft of a declination report.

**B. Facts Regarding Discovery Compliance:**

On April 4 and April 6, ADA Rebecca Young met with Defense Attorney Scott Burrell for 1.5 hours, and 45 minutes, respectively, as he poured over two criminal case files for Sean Moore and paper-clipped and tabbed documents he wanted that he did not have. These documents were discovered to Attorney Burrell shortly thereafter.

**C. Defendant Cha's Discovery Requests**

The Defense makes the following specific requests:

a. "The Search Warrant And Affidavit Documents And "Related Documents" Identified In Pailet Lawsuit, including drafts, edits, documents authored by Pailet regarding exculpatory evidence, documents relating to the removal of exculpatory evidence from SW affidavits & AW affidavits, documents relating to the removal of Pailet and Hayashi from Cha case;

b. Documents "relating to Lateef Gray involvement."

c. IIB initial declination to prosecute.

The defendant's statement of pertinent facts lends the impression that the defendant has interviewed both Jeffrey Pailet and Magen Hayashi. If that is not the case, then all of Defendant's statement of pertinent facts are drawn from hearsay allegations in a civil lawsuit seeking monetary damages against the City and County of San Francisco.

The defense includes as Exhibit B one page of Magen Hayashi's testimony during an *in limine* motion hearing in the Terrance Stangel jury trial, wherein Hayashi testified that she was pressured to sign a draft search warrant affidavit. Defense Exhibit B misleads the court because the defense has omitted Hayashi's earlier testimony during that same hearing where she stated she signed the arrest warrant willingly.[5] The defense also does not reveal that the judge in that hearing

---

[5] **Exhibit 4:** Transcript of Magen Hayashi testimony, January 27, 2022, Dept. 27, Honorable Teresa Caffese presiding, pp. 88-89.

4

ruled that the Defense claims of withheld discovery and Due Process violations were without merit. The court's ruling on the defense motion in that case is attached in full.[6]

At best, the Defense claims in its Statement of Pertinent Facts reveals a dispute between DAI Hayashi and the assigned ADA as to whether there was sufficient probable cause to issue a search warrant and what to include in the search warrant draft.[7] That search warrant was never presented to a judge for signature, it remains an unsigned draft. Whatever the dispute was did not affect the actual *arrest warrant* written a year later (after the Marin County Coroner's Report) by a different DAI. The Cha arrest warrant on page 12 and 13 contains all the exculpatory information that is known to the District Attorney's Office. The Defense effort to portray the aforementioned disagreement in 2020, between another DAI and another ADA, as the smoking gun of a giant conspiracy to railroad Officer Cha is a patently obvious smokescreen designed to delay bringing this case to preliminary hearing.

---

[6] **Exhibit 5**: Transcript of Motion to Dismiss, P. v. Stangel, February 7, 2022, Dept. 27, Honorable Teresa Caffese.

[7] This information may be relevant in the Pailet lawsuit, but it has no relevance here.

5

## Points And Authorities

### I. The Items Sought by the Defense are Core Work-Product

A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances and are an absolute privilege.[8] *In criminal cases*, the work product doctrine is limited to "'core' work product, that is, any writing reflecting 'an attorney's impressions, conclusions, opinions, or legal research or theories.'"[9] Under the "core" work-product privilege, "[a] writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstance."[10]

This core work product protects the notes of prosecutors.[11] The core privilege *also reaches* the impressions, conclusions, opinions, or legal research of the "attorney's agents and consultants."[12] Thus, a District Attorney Investigator's (DAI) writings, opinions, *and discussions* with the attorney regarding drafts they have written fall square within the definition of "core work-product." *The doctrine does not contain an exception for when there is a dispute between the attorney and her investigator over whether the burden of proof has been met for a particular action.* For example, if an ADA concludes sufficient probable cause exists to obtain a search warrant and her DAI disagrees and wants to put in the affidavit that she does not believe probable cause exists, this disagreement does not dissolve the work-product doctrine and suddenly make the drafts open to discovery, or their emails or the substance of their conversations. All hell would break loose in the

---

[8] *CCP* § 2018.030(a); Penal Code §1054.6.
[9] *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 382, fn. 19; see also *People v. Zamudio* (2008) 43 Cal.4th 327, 355.
[10] Code Civ. Proc., § 2018.030, subd. (a); see also *Popelka, Allard, McCowan & Jones v. Superior Court* (1980) 107 Cal.App.3d 496, 500, superseded by statute on other grounds, *Sturm v. Superior Court* (1985) 164 Cal. App.3d 579 [core work product "absolutely privileged from discovery."]
[11] *People v. Boehm* (1969) 270 Cal.App.2d 13, 21.
[12] *People v. Collie* (1981) 30 Cal.3d 43, 59, superseded by statute as stated in *People v. Champion* (1995) 9 Cal.4th 879, 913 ; *Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 911; *Uber Technologies, Inc. v. Google LLC*, (2018) 27 Cal.App.5th 953, 969.

6

discovery world if this were the rule. The absurd reach of the defense request is even more stark when we realize that the defense is seeking "*Drafts and edits.*" Whatever the dispute between Hayashi/Pailet and the ADA was, it did not affect the drafting of the arrest warrant affidavit, which was written nearly a year later by a completely different DAI.

While the work-product doctrine "cannot be invoked by the prosecution to preclude discovery by the defense of material evidence, or to lessen the state's obligation to reveal material evidence even in the absence of a request"[13] "*Brady* does not require a prosecutor to disclose to the defense most 'opinion work product,' that is, material encompassing only an attorney's mental impressions or legal theories."[14]

Here, the Defense's seeks *drafts* of a prior attorney's work on the case because there was a dispute between that attorney and the DA investigator as to whether certain information should be included in the search warrant affidavit. The Defense also seeks a draft, unpublished declination report that was written **before** Sean Moore's death and the consequent Coroner's findings regarding cause and manner of death. Neither of these documents fall outside the work-product doctrine and the Defense has given no relevant legal authority or compelling argument as to why the work-product privilege fails here.

### A. Defendant's request for unissued draft search warrant affidavits and "related documents" and communications between the DAI and ADA are core work-product and do not contain Brady information.

Protecting work product "[p]reserve[s] the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases" and "prevent[s] attorneys from taking undue

---

[13] *Collie, supra,* 30 Cal.3d at 59, fn. 12, superseded by statute as stated in *People v. Champion* (1995) 9 Cal.4th 879, 913, citing *Brady v. Maryland* (1963) 373 U.S. 83, 87.
[14] *Morris v. Ylst* (9th Cir. 2006) 447 F.3d 735, 742 citing *Williamson v. Moore* (11th Cir. 2000) 221 F.3d 1177, 1182.)

7

advantage of their adversary's industry and efforts."[15] The privilege " 'survives the termination of the litigation or matter in which the work product is prepared.' "[16]

The purpose of *Brady* is to preserve fairness of criminal trials.[17] Fairness does not, however, include an obligation by the prosecutor to reveal his "strategies, legal theories, or impressions of the evidence."[18] "'[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose *evidence* favorable to the accused, that, if suppressed, would deprive the defendant of a fair trial.'"[19] "Thus, in general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady unless* they contain underlying exculpatory facts." (*Ibid.*, italics in original.)

The affidavits, drafts and written communications and emails about drafted warrants, reflect impressions, conclusions, and opinions regarding whether Defendant had potential liability in the shooting of Mr. Moore. The drafted documents and emails about drafted warrants were part of a process where the office shared impressions and opinions on whether the facts could support probable cause to search. The Office analyzed the facts compared to the relevant policies and controlling legal theories. Further, the warrants were drafts, so that the office would have the opportunity to ask questions for clarification or elaboration.

Moreover, an attorney's role in drafting a declaration for a witness is covered by the absolute work product doctrine as are substantive case communications with investigators.[20]

Any search warrant documents, affidavits, drafts and communications, and emails about drafted warrants identified by Lt. Pailet in his lawsuit, if they exist, are not discoverable as they are considered absolutely privileged. Those documents were neither completed nor served and were not used to discover

---

[15] *People v. Smith* (2007) 40 Cal. 4th 483, 515, quoting Civ. Proc. Code § 2018.020.
[16] *Curtis v. Superior Court* (2021) 62 Cal. App. 5th 453, 468 (citation omitted.)
[17] *Morris, supra,* 447 F.3d at p. 742, citing *Brady, supra,* 373 U.S. at p. 87.)
[18] *Ibid.*
[19] *Ibid.*, quoting *United States v. Bagley* (1985) 473 U.S. 667, 675, italics in *Morris*.
[20] *Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1274-1275.

material information. The warrant documents, affidavits, drafts and communications about drafted warrants were mere preparation for potential upcoming litigation, and the possibility of the San Francisco District Attorney's Office pressing charges on Defendant. They remain unissued documents and do not contain any facts unknown to the defense.

The Defense insinuates that warrant documents, affidavits, drafts and communications about drafted warrants are somehow related to the People's decision to prosecute Defendant. However, the decision to prosecute was based on the Marin County Coroner's autopsy report, dated, January 20, 2020,[21] body-worn camera footage, and the First District Court of Appeal opinion[22] finding that defendant, Officer Kenneth Cha, and his partner, Officer Colin Patino, were not lawfully in the performance of their duties and were not in a place they had a lawful right to be when Cha shot and gravely wounded Sean Moore.

### B. An Unpublished Draft Declination Report Written Prior to Sean Moore's Death is Core Work-Product and Does Not Contain any New Facts or Information.

There are two kinds of statutory work product. "Core" work product, which reflects an attorney's impressions, conclusions, opinions, or legal research or theories is absolutely protected from disclosure.[23] An attorney's "opinions and impressions" are not "favorable evidence" under *Brady*.[24]

The work product rule in California creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions, or legal theories.[25]

The unpublished draft declination report contains no facts that have not already been disclosed to the defense.[26] The way this report is written is done in a

---

[21] See, Exhibit 3.
[22] See, Exhibit 2.
[23] Code Civ. Proc., § 2018.030, subd. (a).
[24] Morris v. Ylst, 447 F.3d 735, 742 (9th Cir. 2006.)
[25] *Wellpoint Health Networks, Inc.* 59Cal App. 4th at 120
[26] The draft of this report was written a year before Sean Moore died.

9

manner to reflect or support the ADA's impressions, opinions and strategies. What this report does contain are the conclusions, legal analysis, opinions, and thought meanderings of the ADA who investigated the case from 2017 to 2019. This prior ADA's review of the evidence, conclusions and opinion are ***irrelevant*** to a jury or other fact-finder and are not evidence and are not *Brady*. An attorney's opinion of the evidence is core work product and should be absolutely protected.

## II. The Defense Seeks Documents "relating to Lateef Gray's involvement" in this case, but none exist.

No such documents exist. If the Defense wishes to reveal their communications with Jeffrey Paillet, Magen Hayashi and their counsel which state otherwise, the People would appreciate being enlightened. There is nothing known to the People to disclose under this category.

## III. The Deliberative Process Doctrine.

Government Code section 6255 exempts from disclosure documents that are protected by the deliberative process privilege. (*Wilson v. Superior Court* (1996) 51 Cal. App.4th 1136, 1142; *Times Mirror Co., v. Superior Court* (1991) 53 Cal.3d 1325.) Subdivision (a) of section 6255 provides: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (Gov. Code, § 6255, subd. (a).) The deliberative process privilege protects materials reflecting deliberative or decision-making processes. (*Wilson, supra*, 51 Cal. App.4th at p. 1142.)

The key question is "'whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" (*Wilson, supra*, 51 Cal. App.4th at p. 1142, quoting *Times Mirror, supra*, 53 Cal. 3d at p. 1342.) Although the deliberative process privilege is designed to protect materials reflecting deliberative or policymaking processes, and not "purely factual, investigative matters," it has been held to protect factual information that "compromises the deliberative process," including "predecisional" documents, that is, documents that are prepared to assist an agency decision

maker in making a decision. (*Wilson, supra*, 51 Cal.App.4th at p. 1142.) The court employs a balancing test to determine whether the public interest in nondisclosure clearly outweighs the public interest in disclosure. (*Wilson, supra*, 51 Cal.App.4th at p. 1144; *Times Mirror, supra*, 53 Cal.3d at p. 1344.)

## **CONCLUSION**

The Defense seeks documents that have nothing to do with the final arrest warrant in this case, which was based on the Marin County Coroner's Report and the unpublished decision by the First District Court of Appeal.

Even so, the Defense has not presented pertinent legal authority supporting the Motion to Compel. The Defense's own Statement of Pertinent Facts demonstrates unequivocally that it seeks core work product and that it is relying on allegations in a civil lawsuit about a search warrant that was never signed or presented to a judge for signature.

The People respectfully request the Court deny Defendant's Motion to Compel Discovery.

Respectfully Submitted,

Dated: May 20, 2022

Rebecca Susan Fengyi Young
Assistant District Attorney

CHESA BOUDIN
District Attorney
City and County of San Francisco

## **DECLARATION OF COUNSEL**

I, Rebecca Susan Young declare as follows:

1. I am an attorney licensed to practice law in the State of California, and I am the assigned Assistant District Attorney in this case. I was assigned to the Cha Case in December 2021. I have reviewed the documents and files and read the Grand Jury investigation transcript, which I obtained and disclosed to defense attorney Scott Burrell in January 2022.

2. Attached as **Exhibit 1** to this Motion and Declaration is a true and correct copy of the transcript of argument on the 995 Motion in the matter of People v. Sean Moore, heard before Honorable Jeffrey Ross, judge presiding on April 25, 2017, in Dept. 23.

3. Attached as **Exhibit 2** to this Motion and Declaration is a true and correct copy of the opinion in the First District Court of Appeal, Division 5, rendered on May 1, 2018. This opinion sets forth in detail why Officers Cha and Patino were not in the lawful performance of their duties when standing in the curtilage of his home Officer Kenneth Cha shot him twice in the abdomen.

4. Attached as **Exhibit 3** is a heavily redacted copy of the first two pages of the Marin County Coroner's report showing the cause and manner of death for Sean Wendell Moore. Sean Moore died on January 20, 2020, three years after he was shot by Officer Cha. The Coroner reported the cause of death as acute abdominal obstruction due to gunshot wounds. The manner of death was homicide.

5. Attached as **Exhibit 4** to this Motion and Declaration is a true and correct copy of two pages of the transcript of Magen Hayashi's testimony on January 27, 2022, in Department 27 before the Honorable Teresa Caffese, judge presiding.

6. Attached as **Exhibit 5** to this Motion and Declaration is a true and correct copy of the full transcript of Judge Caffese's ruling in the hearing where Ms. Hayashi testified during the in *limine* motion on Officer Terrance Stangel's Motion to Dismiss for Discovery and Due Process violations. That motion was denied by Judge Caffese.

7. I do not see a single document reflecting that Lateef Gray had any role in this case, including the assignment of the case to me, which was done by Chief Attorney, Kate Chatfield. I have never discussed the Cha matter with Mr. Gray and he has never asked me about it.

8. I have read the arrest warrant affidavit in this case signed by DAI Andrew Koltuniak on October 29, 2021 and issued by Judge Harold Kahn on the same date. There are no references anywhere in the affidavit to any search warrants by IIB.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed this 20th day of May, 2022, in San Francisco, CA.

*Rebecca S.F. Young*
Rebecca Susan Fengyi Young

# DECLARATION OF SERVICE

ACTION NO. **2101 0958**:

I, the undersigned, declare that:

I am over eighteen years of age. I am an employee of the City and County of San Francisco. My business address is 350 Rhode Island St., Suite 400N, San Francisco, CA 94103.

On May 20, 2022, I served the attached MOTION AND EXHIBITS to defense counsel:

|  | **Private Counsel** |
|---|---|
|  | SCOTT BURRELL  scott@lawburrell.com |

- ☐ By hand delivery to the Public Defender's Office.
- ☐ By hand delivery to the Public Defender assigned to this case.
- ☐ By placing a copy of said motion in the Public Defender Discovery Box at the front desk of the District Attorney's Office at 850 Bryant St, Suite 322, San Francisco, California.
- ☐ By placing a copy of said motion at the front desk of the District Attorney's Office at 850 Bryant St, Suite 322, San Francisco, California to be picked up by Private Counsel.
- x  Emailed this motion to attorney for the defendant.
- ☐ I also called /spoke to the above attorney for the defendant on _____.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2022 in San Francisco, CA

_____
DECLARANT

14