EUSTACE DE SAINT PHALLE, SBN 179100
OLIVIA K. LEARY, SBN 329145
RAINS LUCIA STERN ST. PHALLE & SILVER, PC
2300 Contra Costa Blvd., Suite 500
Pleasant Hill, CA 94523
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: PersonalInjuryGroup@RLSlawyers.com

ATTORNEYS FOR PLAINTIFF
KENNETH CHA

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH CHA,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100,<br><br>        Defendants. | CASE NO. 3:24-cv-4700 PHK<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**First Claim for Relief – Violation of Civil Rights (42 U.S.C. §1983) - Malicious Prosecution – Administrative Policies Causing Deprivation of Rights**<br><br>    **Count 1 – Improper Procedures for Re-Evaluation of OIS Cases**<br><br>    **Count 2 – Improper Policies for Hiring, Firing, and Training Employees**<br><br>    **Count 3 – Improper Policies and Procedures for Assessing and Managing Attorneys' Conflicts of Interest**<br><br>    **Count 4 – Improper Policies and Procedures for Ensuring Investigators Are Independent Affiants on Warrant Declarations**<br><br>**Second Claim for Relief - Violation of Civil Rights (42 U.S.C. §1983) - Malicious Prosecution – Biased Investigation Causing Deprivation of Rights**<br><br>    **Count 1 – Improper and Biased Drafting of Search Warrant Materials**<br><br>    **Count 2 – Improper and Biased Conduct at Investigative Grand Jury** |

**Count 3 – Improper and Biased Removal of SFDA Personnel to Manipulate Determination of Probable Cause**

**Third Claim for Relief - Violation of Civil Rights (42 U.S.C. §1983) – Malicious Prosecution – Improper Conduct in Seeking Arrest Warrant**

**Fourth Claim for Relief - Violation of Civil Rights (42 U.S.C. §1983) - Municipal Policy Resulting in Deprivation of Rights (Monell)**

**Fifth Claim for Relief - Violation of Civil Rights (42 U.S.C. §1983) – Supervisor Liability**

**Count 1 – Supervisory Liability of Chesa Boudin**

**Count 2 – Supervisory Liability of Lateef Gray**

**Sixth Claim for Relief - Violation of Civil Rights (42 U.S.C. §1983) – Conspiracy to Violate Civil Rights**

**Count 1 – Conspiracy to Pursue Biased Investigation**

**Count 2 – Conspiracy to Present Biased Information to Obtain Arrest Warrant**

**Seventh Claim for Relief - Negligent Hiring, Supervision, and Training**

**Claim for Exemplary Damages**

**DEMAND FOR JURY TRIAL**

Plaintiff KENNETH CHA complains against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100, as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil action for damages brought pursuant to the United States Constitution and 42 U.S.C. § 1983 resulting from deprivations, under color of law, of Plaintiff's rights under the Fourth

and Fourteenth Amendments to the United States Constitution and for tortious behavior under California state law. Plaintiff, San Francisco Police Department Officer Kenneth Cha, claims that the San Francisco District Attorney's Office and other City employees violated his civil rights, by undertaking a frivolous criminal investigation into Ofc. Cha's conduct, and by maliciously prosecuting Cha in a criminal action, all without probable cause or adequate factual basis. This prosecution was conducted with personnel who were in a conflict of interest, and who were aware that Ofc. Cha did not commit any crime. This baseless prosecution was part of a pattern and practice by the District Attorney's Office in an effort to change policy in the SF Police Department relating to police policies and procedures on use of force.

2.      On January 6, 2017, Ofc. Cha, with his colleague Ofc. Colin Patino, attempted to enforce a restraining order against Sean Moore, a belligerent individual with a violent history who had been subject to multiple prior restraining orders. On this occasion, Moore screamed epithets, violently resisted arrest, threatened bodily harm to the officers, and assaulted the officers. During the subsequent altercation between the officers and Moore on a staircase, after Moore had broken Ofc. Patino's nose and was advancing on Cha, Ofc. Cha shot and injured Moore. This was a lawful exercise of Cha's right, both as a citizen and peace officer, in an encounter that threatened to result in great bodily injury or death to him and/or his partner. This was later substantiated by a subsequent investigation and determination.

3.      At a minimum, generally, a District Attorney must determine that there is probable cause to believe that all elements of a criminal offense have been met in order to file criminal charges based on evidence that would be admissible in court. San Francisco District Attorney policy dictates that such evidence should be of such convincing force that it would warrant conviction of the crime by a fact finder after hearing all the evidence available to the prosecutor at the time of charging and after hearing the most plausible reasonably foreseeable defense that could be raised. In other words, the evidence should be sufficient to prove the charges beyond a reasonable doubt, unanimously, to a jury.

4.      During the administration of District Attorney George Gascon, the District Attorneys' Office investigated Cha's shooting of Moore, and determined that there was not even probable cause to pursue a criminal case against Cha. The death of Sean Moore over three years after the incident did not

change the legal analysis performed during Gascon's administration. However, after January 2020, incoming DA Chesa Boudin promulgated a policy at the District Attorney's office for the improper investigation and prosecution of officer-involved shooting cases, even where these cases lacked probable cause and were not likely to prevail at trial. As part of this policy, Boudin and the DA's office reversed the prior DA's decision in the Cha case and undertook to investigate and prosecute Cha, despite inadequate proof and conflicting evidence that a crime had been committed.

5.      Under Boudin, the DA's Office instituted a bad-faith investigation into Cha's conduct, with the intent to prosecute Cha for the death of Sean Moore, whether the evidence supported this or not. The DA purposely hired personnel who were poorly qualified and did not adhere to traditional norms of prosecutorial ethics or assessment of evidence, in order to pursue the frivolous criminal investigation and prosecution of Ofc. Cha. Members of the DA's office presented evidence in a biased manner, and concealed exculpatory evidence. The District Attorney then arrested Cha and took the Cha case into criminal proceedings, despite the lack of credible evidence. Later, after Boudin left office and was no longer the DA, the criminal case was dismissed by the DA's office. The new DA Brooke Jenkins found that the former DA's office had not adhered to the norms of prosecutorial ethics, in that they had proceeded with the case despite inadequate proof that a crime was committed. Further, Jenkins found that the prior DA had proceeded with the investigation utilizing Moore's prior civil counsel, Lateef Gray, at the helm of the unit that investigated the matter, constituting a clear conflict of interest and an ethical breach.

6.      The District Attorney's Office's investigation and prosecution of Ofc. Cha violated his civil rights, and caused damage to Cha's reputation, emotional distress, and financial burdens. Ofc. Cha claims damages for these losses, as set forth below.

## JURISDICTION

7.      Jurisdiction is vested in this Court under 28 U.S.C. § 1331 (cases arising under the Constitution and laws of the United States), 28 U.S.C. § 1343 (actions to recover damages under an Act of Congress providing for the protection of civil rights), and 42 U.S.C. § 1983 (actions to recover damages for the deprivation of any Constitutional right).

8.      The state law claims in this action are so related to claims in the action within original

jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

<strong><u>VENUE</u></strong>

9.      A substantial part of the events giving rise to this action occurred in the City and County of San Francisco, California. Venue lies in the Northern District of California, the judicial district in which the claim arose pursuant to 28 U.S.C. §1391(a) and (b).

<strong><u>DIVISIONAL ASSIGNMENT</u></strong>

10.     A substantial part of the events giving rise to this action occurred in the City and County of San Francisco, California. Pursuant to Northern District of California Civil Local Rules, Rules 3-2(c) and 3-2(d), this case should be assigned to the San Francisco Division or the Oakland Division of this Court.

<strong><u>PARTIES</u></strong>

11.     At all times relevant to this Complaint, Plaintiff KENNETH CHA was a resident of the City and County of San Francisco, California. Plaintiff KENNETH CHA is and was a police officer employed by the San Francisco Police Department. Plaintiff KENNETH CHA currently resides in South Pasadena, California.

12.     Defendant THE CITY AND COUNTY OF SAN FRANCISCO is a public entity in the State of California, organized and existing under the laws of the State of California, with the capacity to sue and be sued.

13.     Defendant SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE ("SFDA") is a regional government agency located in the City of San Francisco, California and tasked with prosecuting criminal offenders for the Defendant CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA.

14.     Defendant CHESA BOUDIN is, and at all relevant times has been, a resident of the State of California. Defendant BOUDIN is being sued individually and in his official capacity as the former San Francisco District Attorney ("DA").  At all times relevant to this Complaint, Defendant BOUDIN was acting in the course and scope of his employment with Defendant THE CITY AND

5

COUNTY OF SAN FRANCISCO.

15.    Defendant LATEEF GRAY is, and at all relevant times has been, a resident of the State of California. Defendant GRAY is being sued individually and in his official capacity as the former Managing Attorney for the Independent Investigation Bureau (IIB) of the San Francisco Assistant District Attorney's Office. At all times relevant to this Complaint, Defendant GRAY was acting in the course and scope of his employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

16.    Defendant DANA DRUSINSKY is, and at all relevant times has been, a resident of the State of California. Defendant DRUSINSKY is being sued individually and in her official capacity as San Francisco Assistant District Attorney ("ADA").  At all times relevant to this Complaint, Defendant DRUSINSKY was acting in the course and scope of her employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

17.    Defendant STEPHANIE LACAMBRA is, and at all relevant times has been, a resident of the State of California.  Defendant LACAMBRA is being sued individually and in her official capacity as San Francisco Assistant District Attorney ("ADA"). At all times relevant to this Complaint, Defendant LACAMBRA was acting in the course and scope of her employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO.

18.    Defendant ANDREW KOLTUNIAK is, and at all relevant times has been, a resident of the State of California. Defendant KOLTUNIAK is being sued individually and in his official capacity as an Investigator with the Independent Investigation Bureau (IIB) of the San Francisco Assistant District Attorney's Office. At all times relevant to this Complaint, Defendant KOLTUNIAK was acting in the course and scope of his employment with Defendant THE CITY AND COUNTY OF SAN FRANCISCO

19.    Plaintiff does not know the true names and capacities of defendants sued as DOES 1 through 100. Plaintiff will amend the complaint to show the true names of each such defendant when their identities have been ascertained. Each of the DOE defendants encouraged, participated in, and/or ratified and approved the conduct complained of herein.

20.    Plaintiffs are informed, believe, and therefore allege that, at all times herein mentioned,

each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy and with the permission and consent of other co-Defendants.

### EVENTS GIVING RISE TO THIS COMPLAINT

### The Shooting Incident on January 6, 2017 Involving Ofc. Cha and Ofc. Patino

21.     The unlawful investigation and prosecution of Ofc. Kenneth Cha arose from a January 6, 2017 encounter with Sean Moore. Ofc. Cha and his partner Ofc. Patino used appropriate and reasonable tactics (in keeping with their training) to attempt to detain Mr. Moore. However, Moore's violent conduct and verbal threats escalated into a physical attack against the uniformed Officers. As a result, Ofc. Cha was forced to fire his pistol at Mr. Moore in order to protect himself and Ofc. Patino. Body-worn camera footage reveals that the Officers made every reasonable effort to de-escalate the situation by using verbal commands and lower-level force options including pepper spray and their batons.

### Neighbor Christopher Choy's Prior Restraining Order against Sean Moore

22.     Sean Moore, now deceased, was 43 years old at the time of the officer involved shooting (OIS) incident on January 6, 2017. At the time, Moore was estimated to have been six-feet-four inches tall and weighing 275 pounds. Pursuant to police reports and affidavits in temporary restraining orders, Moore had a history of violent conduct, including aggressive speech, violent outbursts, and assaults on police officers, neighbors, and innocent strangers. Moore had been subject to a series of restraining orders in the years prior to the OIS incident and had been frequently reported to police.

23.     For years prior to the incident, Christopher Choy lived next to Sean Moore at the apartment complex on Capitol Avenue in the Oceanview neighborhood of San Francsico, California. Pursuant to affidavits by Choy in applications for restraining orders against Moore, Moore had harassed Choy and his family for several years prior to the incident. Choy had complained that Moore would make noise and shout, mostly at night through their shared wall and Moore had been restrained previously because Moore had assaulted Choy's son in 2011. Moore was charged in that incident, and was under a restraining order due to this from 2011 to 2014. Choy reported that in 2014, when the

restraining order expired, Moore's nuisance behavior began again.

24.     In December 2016, based on continued harassing and threatening actions by Moore, Choy obtained a further temporary restraining order for himself and his family and sought the approval of a formal restraining order to prevent Moore from disturbing the family's peace and to stop Moore from engaging in further violence against them. A court hearing on the matter was scheduled for January 11, 2017.

**Officer Cha & Officer Patino's Encounter with Moore Prior to Moore's First Exit Through the Gate**

25.     During the very early morning of January 6, 2017, San Francisco Police Officers Kenneth Cha and Colin Patino responded to a call for service. Caller Christopher Choy had complained of a violation of the temporary restraining order. As they arrived on scene, Ofc. Patino met with Choy, while Ofc. Cha went to Moore's residence to inquire about the possible violation. Choy provided Patino with a copy of the signed temporary restraining order which was set for hearing in five days (January 11, 2017) and named his next-door neighbor, Sean Moore, as the person to be restrained.

26.     Meanwhile, Ofc. Cha climbed a stairway to Moore's front gate and rang the doorbell. The stairway was walled on both sides and ended in a landing that extended to the front door. A floor-to-ceiling metal gate separated the landing area in front of the door from the rest of the landing and stairway. Moore, who Cha estimated was six feet four inches tall and weighed 275 pounds, opened the door and stepped partway onto the landing behind the gate.

27.     As Moore and Cha encountered each other, Moore made repeated hostile, belligerent and profane comments to Cha insisting he leave the premises. Footage shows Moore berating, yelling at, arguing, and threatening the two officers. Moore repeatedly demanded that the officers leave, and yelled within close proximity. When Ofc. Cha advised that he had received a call, Moore responded again yelling from a few feet away: "I didn't call you…I don't give a fuck who called you!" Cha can also be heard telling Moore to stop spitting at him during this altercation, which Moore denied, again screaming at him. Moore then told Ofc. Cha "say your shit and get the fuck on, bitch."

28.     In response, one of the officers asked Moore to confirm his identity, which he did. Then, the officers began to confirm that Moore knew of the existence of the restraining order. As they

did so, Moore then screamed at him "do you know that you're a fucking liar nigga?" and "I don't give a fuck 'bout that shit I just put my fucking garbage out, get the fuck off my stair," while aggressively pointing at the officers through the gate. He continued to say: "yeah, you're getting off my stair." In response, one of the officers calmly asked "or else what?" and Moore stated "Or I'll remove your ass." One officer then asked "are you threatening us?" and Moore responded "I ain't threatening shit, get the fuck off my stair." The officers calmly told him that he had threatened them, and to relax. Moore again stated in a raised voice: "get off my stair, and I'm done talking to you, I'm through talking to you bitch, get off my stair, get the fuck off my stair, fuck your order, get off my stair, fuck your court, I didn't call you."

29.    As is clear from the body cam footage, Moore made repeated hostile, belligerent, and profane comments to both officers for several minutes even before the officers were able to determine Moore's identity, and Moore continued to become even more irate.  After about three minutes of talking to the officers and Moore's multiple demands that they leave his stairway, Moore said, "I'm gonna call and remove you," and he walked inside his home. Following this, the officers descended the stairs to the sidewalk to discuss the terms of the restraining order at a safe distance. In his interview, Ofc. Patino said he believed by this point he had probable cause to arrest Moore for violating the restraining order based on the observed behavior of Moore, the terms of the restraining order and the information provided by the neighbor.

30.    As this was going on, Moore stepped back onto the landing carrying what appeared to be a phone and stood behind the gate. He insulted the officers again, calling them various homophobic and racial slurs. Cha said, "Why did you call me those slurs?" and ascended the stairs, followed by Patino. Moore yelled down to the officers "Get the fuck from round here. And I ain't gonna tell you no more, bitch." Moore said, "Get gotta tell you, get your faggot ass from round here punk." Ofc. Patino said he would not be leaving yet, and Moore asked for Patino's badge number, which Patino provided. While apparently dialing his phone, Moore continued to demand the officers get off his stairs and remained behind the gate. Patino attempted to read to Moore from the restraining order. Moore responded more aggressively, banging his hand on the gate gestured in an aggressive way with his hands and arms while stating: "I'm through talking to you, bitch! Get off! Get off my stair!"

### Encounter After Moore's First Exit Through Gate

31.     About 5 minutes into the body cam footage of the interaction, Moore then pulled open the gate quickly, advancing at a fast speed through the gateway and waving his right hand as he yelled at the officers: "You're gonna-you're on my stair. Get the fuck off my stair." The officers both moved back slightly as Moore advanced.

32.     As Moore walked closer to the officers, Ofc. Cha said, "Hey, do you want to get sprayed?", as Moore continued to advance, an officer told Moore "you come any closer you're gonna get pepper sprayed!" In response, Moore said, "Fuck your spray," while continuing to wave his hand and insist they leave, leaning above the officers. Ofc. Cha then sprayed pepper spray in Moore's direction. Cha said in his interview it was difficult for him to retreat down the stairs as this was occurring because the stairway was narrow and the pepper spray was deployed for safety while he retreated.

33.     Moore turned when the pepper spray was deployed, and then stood sideways in the gateway. He appeared to hold onto the frame of the gate for leverage and proceeded to raise his left foot high into the air, then moved his leg downwards in a fast motion towards the officers. Ofc. Cha said in his interview that Moore then kicked him in the face at this point. The officers then partially descended the stairs, inadvertently dropping the paper copy of the restraining order. Moore bent over to pick up the restraining order, closed the gate, and one officer said "hey! Give me the paper back" to which Moore stated repeatedly "Fuck you" and reentered his door. Moore reemerged within a few seconds, quickly exiting the door, opening the gate and descending the stairs at a fast pace, holding the paper in his right hand. The officers descended to what appears to be the sidewalk, where Ofc. Cha told Moore "What's up? Come on!" Moore then said again "Get off my stair, fuck you." and Cha responded "Come here!" Moore then reentered his home. Cha made a radio report of the incident, advising that the subject they were trying to make contact with, Moore, had made aggressive movements towards them, and they deployed pepper spray against him, however he continued to confront them. He asked for assistance as Ofc. Patino had been exposed to the pepper spray due to the tight stairwell.

34.     About a minute and a half after the pepper spraying, Moore could be seen inside the

home through a window. (Cha said during his interview that he could hear Moore "yelling at the top of his lungs inside the house, pacing back and forth, banging on the wall, banging on the window.") Ofc. Patino yelled to Moore "Hey, sir, you need to give those papers back, all right?" and Moore yelled back "Fine. Are you gonna go?" Patino responded "No, you need to give those papers back now, that is an order. I am ordering you to come outside, all right? And give yourself up because you are under arrest." At this point, Ofc. Patino has stated in interviews later that he believed at this point he had probable cause to arrest Moore. Moore responded "I can't see, I need some medical attention." Patino called back "Neither can I, all right." Both officers asked Moore to come out of the house, to which Moore yelled: "you're gonna leave from here! Fuck your papers!" and repeated to yell inside his home.

35.     Moore then opened the door and tossed the restraining order papers through the gate and onto the top of the stairs as the officers demanded he come out. He returned to his door, and one of the officers warned they would kick the gate open, to which Moore said "Fuck you." After a pause, Moore said "I can't see officers." Ofc. Cha said "well, then come out so I can get some medical help for you." Moore yelled "let's get this resolved" and Ofc. Cha again responded "come on out so I can get the ambulance for you." As Moore and Cha discussed medical treatment with Moore behind the gate, Patino walked up the stairs to retrieve the restraining order papers. As he bent down to pick up the papers, Moore very quickly opened the gate, yelling, and rushed towards him. The officers again descended the stairs as Moore clenched his fists, banged his fists together and screamed very loudly "Fuck you! Fuck you! Fuck you! . . . . I'm a kick your ass, punk." Moore then remained on the landing, leaning towards the officers.

36.     As this occurred and Moore was posturing aggressively, Patino pulled out a baton.

**Final Altercation and Shooting of Sean Moore**

37.     As something appeared to fall from Moore's hand, momentarily taking his attention, he took a step down toward the papers on the stairs, again yelling "fuck your papers." Cha and Patino ordered Moore to get on the ground, but he did not comply responding "I ain't getting on shit." Moore took a few more steps down and reached to pick up the object that had fallen, descending about halfway down the stairway and closer to the officers' position.

38.     The officers said in their interviews they thought this was a good opportunity to arrest

Moore. Moore retreated up the stairs as the officers advanced toward Moore – as the officers continued to tell Moore to get on the ground. Patino swung his baton at Moore at least twice and reached for Moore. Patino said during his interview that Moore punched him in the face with a fist, breaking Patino's nose. This caused Patino to suddenly fall backwards on the stair, witnessed by Ofc. Cha who shouted in a shocked tone.

39.     Ofc. Cha, left to face Moore who was standing above him and who had a significant height/weight advantage, had limited force options as the pepper spray and baton had failed to prevent Moore from attacking. Cha drew his issued firearm and pointed it at Moore. The drawn firearm did not deter Mr. Moore at all. Mr. Moore moved towards Ofc. Cha, and raised his right leg and proceeded to kick down at Ofc. Cha. As he did so, Ofc. Cha then fired his firearm as he fell backwards down the stairs. Cha struck Moore twice, in the abdomen and the leg.

40.     Ofc. Cha believed that if he did not use force, he would suffer serious bodily injury or even death at the hands of Mr. Moore. He explained in his interview with criminal investigators that when Mr. Moore punched Ofc. Patino in the face, Cha heard Patino drop and saw him "roll down the stairs." Ofc. Cha stated he knew immediately that Ofc. Patino had been significantly injured and could no longer assist in the encounter with Mr. Moore. At that point, pepper spray had done nothing to subdue Mr. Moore and the baton had zero effect, and Moore was still responding aggressively both verbally and physically during this interaction. After Ofc. Patino was disabled, Ofc. Cha became the sole focus of Mr. Moore's attention and rage. Moore came toward him in a "violent manner." Ofc. Cha recounted, "I thought I was going to die. I thought this guy was just going to go to town on me." "I knew that Colin and I, [would face] …great bodily harm or we were going to die." When reporting the emergency situation to dispatch, Ofc. Cha stated, "I was getting overpowered; so I dispatched my weapon."

41.     After the incident, Sean Moore survived the initial shooting and was treated for two gunshot wounds, a liver laceration, and traumatic injury to the area of the right colon.

42.     Ofc. Patino was transported to San Francisco General Hospital and treated for a broken nose. Ofc. Cha reported minor injuries consisting of scrapes and bruises with some pain.

43.     Moore was later incarcerated related to other charges, which included felony assault on

two minors with a hate crime enhancement and making death threats. Over three years later, Moore died in San Quentin State Prison January 20, 2020. Pursuant to the Coroner's report, at the time of his death, Sean Moore suffered numerous medical conditions that contributed to his death, including injuries tied to the gunshot. Thus, the gunshot wound was not the sole proximate cause of Mr. Moore's cause of death.

44.    Because the Coroner determined that Moore's cause of death was primarily attributed to acute intestinal obstructions and severe abdominal adhesions from the gunshot three plus years prior, the cause of death was listed as "homicide."[1] Thus, with Mr. Moore's death in 2020, it was potentially possible to charge Ofc. Cha in Mr. Moore's death with manslaughter.

**San Francisco District Attorney's Office's Initial Investigation of Ofc. Cha and Ofc. Patino Under DA Gascon**

45.    Subsequent to the January 6, 2017 shooting incident, the District Attorney's Office under former DA George Gascon investigated the Sean Moore OIS and Cha and Patino's conduct. The Unit that investigated the incident, the Independent Investigations Bureau (IIB), was created to investigate complex law enforcement matters, including Officer-Involved-Shootings (OIS), in-custody deaths and significant use of force incidents on behalf of the SFDA's Office.

46.    In order to conduct an investigation into these matters, the SFDA's Office had internal policies and procedures in place to ensure that investigations, and subsequent prosecutions, were conducted properly and lawfully.

47.    Specifically at issue in this matter, these administrative policies and procedures that were enforced under the Gascon administration related to:

   a.    The hiring of unbiased personnel – in making staffing decisions, SFDA's Office would assess applicants for prospective employment with SFDA for biases and exclude them from hiring if identified. This would include mission driven potential hirers who may seek to use the SFDA's Office to achieve their own goals.

   b.    Ensuring SFDA's Office personnel would conduct their duties in unbiased and fashion – SFDA's Office's policies and procedures related to hiring to identify and confirm that employees would objectively apply the law without

---

[1] The term "Homicide" as a manner of death merely means "death at the hands of another" and does not have any evidentiary weight regarding any criminal culpability pursuant to Cal. Gov't Code section 27502.2.

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

bias, prejudice, or for personal gain.

c. Identification of conflict of interests prior to hiring – identifying applicants who may have potential ethical or other conflict of interests with SFDA's Office cases and not hiring such persons.

d. Exclusion of personnel with conflicts of interest on certain matters – when conflicts of interest were identified on certain matters, the person shall be excluded by an "ethical wall" from the matter, including directing actions, making determinations, and even receiving information. Such ethical walls shall be publicized to all involved personnel and maintained to ensure that those who have a conflict are properly screened and if any lapse occurs, it is quickly corrected.

e. Ensuring the training and experience of personnel – SFDA's Office personnel shall be properly trained to confirm that investigations are performed pursuant to applicable laws and ethical requirements of prosecutors, and sufficient probable cause exists to bring charges instituting prosecutions.

f. Ensuring the independence of SFDA Investigators – SFDA investigators are sworn peace officers with independent requirements to follow the law and only proceed with investigations and prosecutions if probable cause exists. The SFDA's Office has policies and procedures to ensure that investigators do so, including when tasked with drafting warrants and serving as affiants in support under penalty of perjury. The investigators must be able to remain neutral and act independently to perform these duties, and the SFDA's Office instituted policies to ensure that investigators did not experience coercion or undue pressure from other colleagues in the performance of their duties.

g. Review of cases for probable cause – Policies in place to ensure investigations are conducted in an unbiased and complete manner, including the impartial review of evidence to determine whether or not probable cause exists to proceed with prosecution.

h. Reopening of investigations – when cases have been deemed to be closed due to a lack of probable cause, the SFDA's Office should not later proceed with re-opening the investigation unless they have received new evidence that would justify revising the declination and asserting the existence of probable cause.

i. The empaneling of Grand Juries – utilizing Grand Juries appropriately, including not doing so for improper purposes, educating the Grand Jury on their role, responsibilities and powers, and presenting an unbiased and complete overview of the evidence for the jurors' consideration.

48.    Under DA Gascon, and in compliance with policies and procedures, a comprehensive investigation was conducted following the Sean Moore OIS. Following the investigation, the SFDA's Office found no cause for any criminal case against Cha or Patino and determined that there was no probable cause for charges and Cha's actions constituted a legitimate use of force for self-defense as

the time of the OIS.

49.     One factor in the IIB's initial finding is that Ofc. Cha's use of deadly force against Moore was legally justified based on the evidence and testimony. A person is entitled to use force, even deadly force, if the force is used in self-defense or in defense of others where the assailant is imminently attempting to kill someone or inflict great bodily injury. (Penal Code section 197; CalCrim 505) It is the prosecution's burden to prove beyond a reasonable doubt that the deadly force was not used in lawful self-defense or defense of another. (CalCrim 505) The question is 1) whether a defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury; 2) the defendant reasonably believed that the use of deadly force necessary to defend against the danger; and 3) the defendant used no more than the force reasonably necessary to defend against the danger.

50.     Here, there was uncontradicted evidence that Ofc. Cha believed that if he did not use force, he would suffer serious bodily injury or even death at the hands of Mr. Moore. Ofc. Cha's belief that he or his partner would suffer imminent serious bodily injury or death if he did not use deadly force was reasonable under the circumstances. From the facts of the altercation with Moore, Officers Cha and Patino were plainly in imminent danger of great bodily injury or death, and there was no sufficient probable cause that this was not lawful self-defense or defense of another. Ofc. Cha had every right to defend himself and defend his partner.

51.     Over two years after the OIS in 2019, a declination report was finalized. (See Exhibit 1, a true and correct copy of the December 2019 Declination Report) This report detailed the evidence, concluded there was no viable way to prosecute Officers Kenneth Cha or Colin Patino, and that the facts supported a finding of self-defense by Ofc. Cha during the shooting of Moore. Specifically, the declination report identified a prosecutor's standard of review as "a prosecutor must be satisfied the evidence shows beyond a reasonable doubt that no legal justification existed for the person's actions." (*Id*. at p. 12.) The report reviewed the evidence at issue in the OIS and determined that "it cannot be shown Officer Cha acted unreasonably or was not genuinely in fear of suffering great bodily injury when he fired his weapon." (*Id*. at p. 13.) Therefore, charges would not be supported against Ofc. Cha. (*Id*. at p. 15.) The declination report was finalized under the administration of DA Gascon by then

Managing Attorney for the IIB Unit, Andrew Lah. This final version of the declination report was presented to former DA Gascon for final signature in December 2019, but as DA Gascon was preparing to leave office at that time, he failed to sign the letter.  As a result of the letter not being signed, the incoming DA CHESA BOUDIN chose not to finalize the letter and chose to re-open the investigation.

**The SF District Attorneys' Office's Biased Investigation of Cha and Patino Under DA Boudin**

**SFDA Chesa Boudin's Office Promulgates a Biased Administrative Policy Against Police Officers in OIS Cases without Proper Safeguards Against Improper Prosecutions**

52.     On or about January 2020, defendant CHESA BOUDIN assumed office as San Francisco's District Attorney, and took control of the San Francisco DA's Office. DA Boudin quickly installed his own team, including Chief of Staff David Campos, and hiring a number of public defendants and other attorneys with no prosecutorial experience to serve as Assistant District Attorneys (ADAs). Once in office, DA Boudin and his supervisory staff introduced a policy of improper prosecutions of allegations of police misconduct. Specifically, Boudin instituted an administrative policy to re-evaluate SFPD OIS cases and directed the ADAs to seek to find a path to bring prosecutions in cases where there had been a prior decision that charges were not appropriate. The reopening of previously completed investigation included the OIS cases involving Ofc. Cha, as well as SFPD Ofc. Samoyoa, among others.

53.     Under Boudin, the San Francisco DA's Office policy sought the frequent and improper prosecution of allegations of police officer misconduct, irrespective of the actual case facts and the existence or nonexistence of probable cause. Boudin's SFDA's Office administration expressed a vocal and public intent to pursue prosecution of police officers, for motives other than substantive justice in each case.

54.     In order to achieve these ends, Boudin purposely failed to institute the internal policies and procedures that were previously in place under prior administration, including rules to ensure personnel within the SFDA's Office were not biased nor had conflicts of interest, rules requiring that if conflicts existed on a specific matter that personnel be properly walled off, that investigation should be performed in an unbiased manner considering all available evidence, that investigations and charges

should be supported by probable cause and instituting procedures for when an investigation should be reopened, that grand juries be empaneled for a supported purpose and conducted properly, and that warrants were properly submitted to the reviewing judge, including with sufficient probable cause and supported by independent investigator affidavits.

55.    Further, Boudin, Campos, and later, Gray, failed to institute policies and procedures to ensure that attorneys did not engage in mission-driven investigations, and that investigators were not inappropriately influenced or coerced by their supervising ADAs, resulting in intimidation, threats of compliance, terminations and reassignments during the Moore OIS investigation and other matters.

56.    In instituting this administrative policy to re-open completed investigations and, by any means necessary, bring charges in use of force cases regardless of whether probable cause existed, no internal rules or guidelines were instituted to ensure that the re-opening of an investigation found new evidence to justify a prosecution. Nor did the SFDA's Office institute any policy to assess evidence when there was an act of self-defense, as such a defense would negate probable cause. Instead, investigations were encouraged to cultivate any new evidence that could support the filing of charges, regardless of whether there was sufficient probable cause under the circumstances, or had any probability of success at trial. Although charges were filed in many of these police use of force matters, including Cha, the evidence did not support these charges and all of these cases brought by Boudin's administration against police officers have since been dismissed or failed at trial.

57.    This policy to prosecute SFPD Officers in use of force cases was intended to put pressure on the SF Police Department and the City, with the goal to coerce them into changing SFPD rules related to officers' use of force. The policy was also intended to improve the standing of defendants Boudin, and later, Gray, Drusinsky, Lacambra and Koltuniak and the SFDA's Office with certain political interests and communities. These cases were not brought with any reasonable belief that charges would be supported by the evidence and applicable law, as prior investigations and determinations by the SFDA's Office had concluded. Cases against police officers were pursued in bad faith for the political reasons noted above, even if such cases had no merit, were not supported by probable cause, were unlikely to win at trial, and would infringe on the affected officer's rights.

**Boudin's Institution of Administrative Policies to Improperly Permit the Unsupported Investigation and Prosecution of Police Officer OIS Cases**

58.     Prior to the Boudin Administration, the SFDA's Office's IIB Unit had internal policies concerning the criteria required to investigate cases for potential charges, including officer use of force cases and when investigations could be reopened. However, under Boudin, incoming personnel were not trained on these policies and these internal policies were not enforced.

59.     In OIS matters where declination reports were drafted previously, the report represents a clear finding that the SFDA's Office has already made an assessment of the evidence in the case and deemed that the case lacked probable cause and/or would not be successfully prosecuted at trial. Therefore, to proceed with re-opening such cases, an assessment is required of whether any new evidence exists and supports a change in status such that investigation and prosecution would be justified. To ensure this occurs, the SFDA's Office is required to have internal policies and procedures that were established, enforced, and followed to confirm that adequate probable cause exists to permit further investigation and prosecution.

60.     Due to the failure to institute proper procedures and guidelines for the assessment of OIS incidents, the SFDA's Office failed to ensure that OIS prosecutions did not violate the rights of suspects, were not instituted for improper purposes and that charges were supported based on the available evidence.

**Boudin's Improper and Intentional Hiring and Firing of SFDA's Office Personnel to Conduct Unsupported Investigations and Prosecutions of Police Officers**

61.     Defendant DA Boudin's policy, encouraging and promoting the aggressive prosecution of police officers regardless of probable cause, ran into difficulty initially. Many of the experienced Assistant District Attorneys (ADAs) and DA Investigators, particularly those that had been with the office prior to the Boudin administration, resisted pursuing frivolous investigations against police officers in which charges had already been determined to be unsupported and objected to the prosecution of these cases on the grounds of a lack of probable cause. Therefore, in order to avoid resistance to his policies, DA Boudin intentionally hired certain personnel who would support his biased goals and hired inexperienced ADAs and Investigators, Boudin, Campos and later, Gray, also ignored, sidelined, or fired the more experienced ADAs and Investigators who resisted the investigation and prosecution of OIS cases without probable cause. These actions were performed with

the explicit goal of pursuing more cases against police officers in bad faith.

62.    Such personnel determinations, made by Boudin, and later by Chief of Staff David Campos and Gray, the Managing Attorney of IIB, included the hiring of biased personnel and the firing and/or reassignment of SFDA's Office employees who objected to support these nefarious goals. Particularly as occurred in the Sean Moore OIS investigation, whenever an ADA or investigator shared concerns over a lack of probable cause to proceed with the investigation, Boudin, Campos, and Gray would pressure them to get in line, allow ADAs to coerce these employees, or fire/reassign them, such as occurred in the Cha matter, with the initial Managing Attorney of the IIB Unit, Andrew Lah; ADA Aaron Zisser; Investigator York Tsuruta; Investigator Megan Hayashi; and Supervising Lt. Investigator Jeffrey Pailet. When personnel were fired or reassigned, Boudin, Campos, and later Gray, hired specifically selected personnel who were known to hold a bias against police Officers and would proceed with the investigation even with a lack of probable cause. These personnel included defendants Gray, Lacambra, Drusinsky, and Koltuniak.

63.    These hiring and firing decisions were made to stack the SFDA's Office, and specifically the IIB Unit, with those who would promulgate the plan to conduct investigations in officer use of force cases, regardless of probable cause. Further, Boudin, Campos, and later Managing Attorney of IIB Gray, failed to institute any policy that would identify or mitigate the bias of potential hirers against those very people they would be assigned to investigate in the IIB Unit – police officers. To achieve these ends, Boudin, Campos, Gray, and later Drusinsky, Lacambra and Koluntiak, agreed and took action to perform illegal and unsupported investigations, including submitting improper warrants without probable cause, in an effort to obtain further evidence by any means possible. This agreement and efforts to achieve it was communicated and continued through in person meetings, telephone calls, emails, and via electronic messaging applications, including Signal and the like between Boudin, Campos, Gray, Drusinsky, Lacambra, and Koltuniak. All of this was done to achieve these illegal investigations, contrary to law or prior SFDA internal policy, and to engage in unsupported investigations and prosecutions, without probable cause.

**IIB ADA Zisser's Initial Memorandum for Boudin's Administration Finds Again that Charges Were Not Reasonable**

64.     On January 16, 2020, former ADA Aaron Zisser, who was hired and assigned to the Moore case by Boudin and Campos, was asked to reopen the Sean Moore OIS investigation and prepared a memorandum. The memorandum references what Zisser termed the "draft declination" and gave a legal analysis regarding self-defense, provocation, and issues around the use of deadly force. The memorandum opined that the criminal prosecution of Ofc. Cha was without legal authority or support, concluding that charges were "not reasonable in this case." ADA Zisser ultimately offered that any potentially chargeable offenses had mostly lapsed due to the delay because more than three years passed since the incident date.

65.     At some point, DA Boudin and Campos removed ADA Zisser from the case and they, along with Gray, assigned Stephanie Lacambra and Dana Drusinsky to the Sean Moore OIS case. Neither Drusinsky nor Lacambra possessed prior experience overseeing prosecutorial criminal investigations. Boudin hired Drusinsky and Lacambra because their personal bias against police officers was likely to be congruent with Boudin's policy of prosecution of police Ofc. misconduct, with or without probable cause.

### Failure to Assess & Properly Remediate Conflicts of Interest Within the SFDA's Office Investigations

66.     In making new hiring decisions, the SFDA's Office, including Boudin, Campos, and Gray, were required to properly identify conflict of interests involving SFDA personnel and any active SFDA cases and to wall off any employees from cases where a conflict potentially existed. This assessment would require all cases in which there may be a conflict to be identified for each employee and an internal administrative policy to apply which excluded those with a potential conflict from access, information and involvement on these matters.

67.     However, Boudin, Campos and Gray, failed to institute a sufficient policy related to identifying and protecting against conflicts of interest, such that employees were able to learn information, influence and even direct action on cases in which conflicts of interests existed, including on the Sean Moore OIS and specifically with regard to Managing Attorney of IIB. Lateef Gray.

### ADA Lateef Gray's Involvement with Cha & Patino Prosecution, Despite Direct Conflicts

**of Interest**

68.     Sometime before January 21, 2020, DA Boudin offered attorney Lateef Gray a job at the SFDA's Office. Gray was then elevated to Managing Attorney for the Independent Investigation Bureau (IIB). Gray, as supervising Managing Attorney of the IIB Unit, would oversee all IIB investigations, including that of the Sean Moore OIS. This assignment was highly inappropriate, as it involved a serious conflict of interest for Gray in the Cha/Moore matter.

69.     Before working for the Boudin administration, Lateef Gray had worked at the John Burris law firm, a firm that specializes in prosecuting civil cases regarding police use of force. While working for the John Burris firm, Mr. Gray initiated a civil suit against the City and County of San Francisco and the SFPD on behalf of Sean Moore related to the shooting by Ofc. Cha.

70.     For a significant amount of time following his hiring to the DA's Office, Lateef Gray remained named counsel of record in the matter of Sean Moore v. City and County of San Francisco, in which Moore's family pursued civil claims against the City of San Francisco related to Moore's shooting. It appears that Gray would remain as counsel of record on the matter, appear on the matter, and file papers until March 23, 2020. Even after joining the DA's Office, the Sean Moore civil case was ongoing and identified Gray as an attorney of record.

71.     Ethical requirements regarding conflicts of interest would require Lateef Gray, who was involved in Moore's civil case, to be "walled off" from the Moore criminal investigation. Particularly, Gray should not manage a unit of ADAs and investigators tasked with investigating the Cha/Moore criminal matter. However, although a conflict of interest between Lateef Gray and the Sean Moore OIS investigation was well known in the Unit, no actual ethical wall was enforced to prevent Lateef Gray from being involved in the prosecution of an officer whose case directly applied to his client's civil claims. It appears that over one hundred days after being hired, and even after Gray was promoted to Managing Attorney of the IIB Unit, Gray had virtually daily involvement on the case of his former client. As the IIB Managing Attorney, Gray remained a supervisor of the work of ADAs and investigators assigned to the Sean Moore OIS matter. It is clear that Gray was never really "walled off" from the Moore/Cha OIS investigation. Documents purportedly show he was making strategic decisions in the Moore matter, such as the assignment of various investigators to the case, issues

involving expert witnesses and discussions of strategy. Later hired IIB Investigator Andrew Koltuniak, who wrote the arrest warrant on Ofc. Cha, was hired, assigned and supervised by Gray.

72.     Further, throughout this time, Gray apparently still had an open financial interest in the Sean Moore civil lawsuit while he was supervising the same unit that would write arrest warrants for SFPD Officers in OIS cases. In June of 2021, while Gray was still employed in Boudin's office as managing attorney of IIB, the SF Board of Supervisors awarded the Moore family $3.25 million.

73.     Gray therefore had a bias against Cha and an interest in helping his prior lawfirm due to his prior representation of Sean Moore, and later, Sean Moore's family. John Burris' firm (Gray's former firm) would have received a significant portion of that award. Potentially, Lateef Gray could have received, or had a claim on, a portion of that award. Gray therefore potentially a direct financial interest in the Moore civil case, along with his prior firm, constituting a further conflict of interest for Gray's involvement in any OIS investigation related to Moore's death. The pecuniary interest for work done in the civil lawsuit by Moore and his prior firm against the SFPD, coupled with the clear interest surrounding the investigation and prosecution of the Moore/Cha matter by the SFDA's Office, means that Gray should have been walled off from the Moore/Cha investigation and prosecution. Gray's involvement with the Sean Moore OIS investigation of Ofc. Cha and subsequent prosecution, despite Gray's obvious and serious conflicts of interest, was the result of Boudin, Campos, and the SFDA's Office's failure to institute proper policies for the walling off of attorneys from cases where they had a conflict of interest.

74.     Further, as part of the investigatory team prosecuting criminal conduct at the SFDA's Office, Lateef Gray had a duty to ensure that the Moore OIS investigation was pursued in an unbiased manner, which would clearly require his exclusion from the investigation based on his clear conflict of interest due to his civil representation of Moore and the Moore family. In addition to being walled off, as Managing Attorney of IIB, Gray was required to institute policies, including through clear guidelines and training for personnel, to confirm that the assigned personnel were making an objective assessment as to whether probable cause existed to support the charges. Gray had a duty not to institute or continue to investigate or prosecute a charge against the involved officers that is not supported by probable cause. However, in dereliction of this duty, Gray pursued a biased IIB investigation designed

to lead to the arrest and prosecution of Ofc. Cha. As described herein, Gray's biased management of the investigation included removing competent investigators likely to resist the unfounded prosecution of Cha; hiring incompetent investigators who would cooperate with this investigation and prosecution; and directing the ADAs and investigators to conduct a biased collection and interpretation of evidence so as to facilitate prosecution. The investigation was essentially reverse engineered to fit the facts to the DA office's predetermined decision to prosecute Ofc. Cha.

**The Drafting of an Improper Search Warrant Against Cha and Patino**

75.     As management personnel, Boudin, Campos and Gray were required to establish policies, procedures, and training to ensure that proper activities occurred on SFDA's Office investigations, including the drafting of search warrants, arrest warrants and supporting affidavits. However, contrary to these duties, Boudin, Campos, and Gray failed to create any internal policies and procedures to confirm that these items were properly issued, with sufficient probable cause, and to ensure that ADAs did not seek to influence or coerce investigators to draft warrants without probable cause and/or serve as affiants to unsupported warrants without probable cause.

76.     Further, pursuant to applicable law, all warrants must be presented with a supporting affidavit to the reviewing judicial officer. The affidavit must be signed under penalty of perjury and attest to the truth of the matter submitted. The submission of false statements within the affidavit would expose the office, and the investigator individually, to criminal and civil liability.

77.     Within the SFDA's Office, the assigned case investigator serves as the affiant for warrants. Thus, investigators must be properly trained on the requirements to serve as an affiant and the standards for all warrants submitted for SFDA's Office cases, including how and when investigators should be assigned to compose warrants, the involvement of ADAs in the drafting of warrants, the independent review by investigators of the evidence to allow them to properly serve as sworn affiants, and protect investigators against undue influence or coercion for warrants they do not believe had sufficient probable cause. Further, in order to avoid such coercion or pressure to occur, SFDA's Office should have procedures for an investigator to safely complain that they are being improperly pressured to agree to a warrant that is not supported by probable cause, or is improper in some other way, and to receive protection and appropriate response from management. However, these

procedures to protect investigators apparently did not exist and/or were not enforced under the Boudin administration for the Cha matter, or in other matters.

78.    Specifically, in June of 2020, the original IIB Investigator York Tsuruta was removed from the case by Managing Attorney Lateef Gray, and IIB Investigator Magen Hayashi was assigned to the case. Tsuruta had prepared a transfer memorandum regarding the case, which reached the conclusion that prosecution of Cha was not supported by the evidence. However, on June 23, 2020, Hayashi's supervisor, Lt. Investigator Jeffrey Pailet, was instructed by ADA Lacambra and ADA Drusinsky to withhold the previously prepared transfer memorandum from Hayashi.

79.    The withholding of the transfer memorandum prepared by Investigator York Tsuruta to brief the incoming investigator was done intentionally by the ADAs in an effort to restrict information provided to Investigator Hayashi, including that the prior investigation had failed to identify probable cause, and to improperly influence Hayashi's review of the facts and composition of warrants and supportive affidavits. All of this was done to assist in the goal to generate any further evidence, even without probable cause against Ofc. Cha.

80.    In the fall of 2020, ADA Dana Drusinsky requested that IIB Investigator Megan Hayashi draft a search warrant and warrant affidavit for the cellular telephones of the involved officers, including Ofc. Kenneth Cha. On reviewing the Investigator's draft warrant, ADAs Drusinsky and Lacambra asked for edits to eliminate exculpatory evidence (evidence tending to defeat criminal charges against Cha) from the warrant affidavits. The edited version deleted important facts of the event at issue that would be exculpatory evidence required by law to be included in the affidavit. This evidence included the suspect's hostile behavior, including attacks on the involved Officers prior to the shooting. In later draft revisions sent to Investigator Hayashi from these ADAs, the ADAs further altered the context of the incident, made statements that did not have factual support, and removed exculpatory information about how the incident occurred.

81.    Both Investigator Hayashi, and her supervisor Lt. Jeffrey Pailet, objected to the changes to search warrants that were requested by ADAs Drusinsky and Lacambra. However, these improper actions and directives by the ADAs continued and supervisor Lt. Pailet continued to object. On November 6, 2020, Pailet was subsequently fired by the SFDA's Office at the direction of Boudin. On

that same day, Pailet reported these improper activities to Boudin and Campos, and requested that action be taken to stop it. However, it appears that neither took action as these activities continued. Soon thereafter, Pailet appealed his termination and later filed several whistleblower complaints and government tort claims. It is believed that defendants were aware, and engaged in communications, regarding Pailet's allegations, and altered their strategy at this point for the unsupported investigation and prosecution of Ofc. Cha. Pailet later brought a civil wrongful termination suit against the SFDA's Office, the City and County of San Francisco, and the involved individuals alleging that he was wrongfully terminated as a protected whistleblower when he pointed out legal deficiencies in the draft search warrants against Officers Cha and Patino.

82.    Following Pailet's firing, and although the search warrants appear to have been abandoned due to the pressures from Pailet's complaints, the ADAs continued to try to coerce Investigator Hayashi to perform activities on investigations and prosecutions that she felt were improper or be fired from her position. Later testifying in another case, Hayashi stated with regard to the improper Cha and Patino search warrants: "I was threatened by attorneys three different times that if I didn't agree with their warrant, they would report me to D.A. Boudin and that we were looking at termination possibilities." There is a transcript that exists detailing this testimony and Hayashi later executed a sworn declaration providing further information on these improper activities. Therefore, it is clear that Hayashi experienced extreme pressure, on at least two cases, to make edits to the affidavit and serve as a sworn affiant on warrants that were not reflective of her independent understanding of the totality of facts that she believed were necessary for a probable cause determination.

83.    On November 30, 2020, due to her continued objections and refusal to acquiesce to the unlawful demands contrary to her training and duties as an investigative officer, Ms. Hayashi was removed from the Sean Moore OIS matter. She was forbidden from briefing the investigator who would replace her, just as the prior investigator, York Tsuruta, had been forbidden from briefing Hayashi.

**Investigative Grand Jury Proceedings Against Ofc. Cha**

84.    Due to Pailet's reporting following his termination of the improper activities that were

occurring, defendants sought to use another method to coverup the illicit acts and find probable cause to support charges against Cha – a Grand Jury. In July 2021, an Investigative Grand Jury was empaneled and received evidence regarding the shooting of Sean Moore by Ofc. Kenneth Cha, including presentations by ADAs Lacambra and Drusinsky, and done with the approval and supervision of DA Boudin, Managing Attorney Gray and Chief of Staff Campos. The purpose of the Grand Jury as investigative was made clear, as shown in the transcripts of the statements by the presenting ADAs who introduce the goal of the Grand Jury to the jurors: "[f]or this case, we have chosen to use the grand jury to conduct an investigation." It is believed that this Grand Jury was conducted in order to create further evidence against Ofc. Cha and to create distance between the events that resulted in the reassignment of Hayashi and the termination of Pailet. At the Grand Jury hearings, ADAs Drusinsky and Lacambra presented evidence to the Grand Jury about the events of January 6, 2017, which were summarily connected to Moore's death three plus years later. No expert witnesses or witnesses with medical training were called during this Grand Jury investigation to provide insight into Moore's cause of death and other health conditions, although jurors had questions regarding these issues. It is clear from the transcripts, contrary to prior internal policies regarding how to conduct Grand Juries, that this Grand Jury was largely ineffective even though the evidence was presented in a biased manner and with cherry-picked evidence.

85.    Based on the available transcripts, it appears that the jurors were not educated as to the role of an investigative Grand Jury by the presenting attorneys, including being informed about the Grand Jury's power to conduct their own investigation, conduct queries into areas yet unexplored, and to subpoena witnesses and evidence. The investigation that defendants conducted during the Grand Jury was biased against Ofc. Cha and was limited in scope, failing to develop all the exculpatory evidence and instead focusing on developing evidence against Cha. DA Boudin, Managing Attorney Gray, Campos and the SFDA's Office improperly directed and encouraged ADAs Drusinsky and Lacambra to pursue the Grand Jury investigation against Ofc. Kenneth Cha. The ADAs were improperly directed, and/or negligently supervised, such that they made a biased, incomplete presentation to the Grand Jury, deceiving the jury and depriving Ofc. Cha of his right to fair proceedings.

86.     During the Grand Jury investigation, many jurors indicated that they had significant questions about the issues surrounding Moore's death and its cause. For instance, one juror expressed confusion about the cause of Moore's death and attributing it to the events years prior. In reply, ADA Lacambra explained to the jury that the coroner had ruled Moore's death a homicide, but did not also include an explanation of any of the other medical issues faced by Moore at the time of his death that may have likely contributed heavily. Lacambra further informed the Investigative Grand Jury that Moore's actual cause of death was not within the scope of the investigation, even after jurors asked about this. Lacambra responded: "So that's not within the purview of the investigation that we have currently. Right now, for this case we were just investigating the reasonableness of the conduct. I mean, you're not going to get any more information about that issue because it's note within the scope of this investigation." (Grand Jury Transcript, Vol. II, p. 172) Also, the jurors were presented with evidence of a later shooting by Ofc. Cha four months after the Moore OIS incident, despite Ofc. Cha not being disciplined for this later event and it having no relation to the Moore shooting. The jurors expressed confusion why they were presented with this later shooting event when Ofc. Cha was not disciplined for this.

87.     It also appears that ADAs Drusinsky and Lacambra did not detail for the jurors during the Grand Jury Investigation the extent of Sean Moore's violent past behavior, and did not mention many times before the shooting when he was aggressive with the public and other police officers.

88.     The attorneys also did not tell the jurors, even after they asked, about any detailed history between Moore and the neighbor who had previously gotten a restraining order against Moore and who had called the police to the scene before the shooting. The attorneys stopped the Grand Jury from learning of Moore's history, instead stating that the focus of the Grand Jury was merely on the reasonableness of Cha's actions and foreclosing any real exploration into Moore's propensity for violence. When those Grand Jury witnesses touched on Sean Moore's violent actions, angry behavior or violation of the restraining order, ADAs Lacambra and Drusinsky both responded with leading questions that suggested Moore's actions were all due to a mental illness that responding officers should have identified upon arrival.

89.     During the grand jury, of the 7 total witnesses called, 3 police officers who had prior

interactions with Moore testified. The ADAs purposely focused their questions on Moore's lack of violent interaction with these officers and mental illness. The transcript shows that the officers were introduced by ADA Lacambra to the Grand Jury as follows: "we have seven witnesses…Eric Tindall, No. 2030, witness to the aftermath of the shooting…Wallace Kresley, No. 1826, partner of Wasserman and officer with prior conduct with Moore that did not result in violence…David Wasserman, No. 4360, officer with prior conduct with Moore that did not result in violence." (Grand Jury Transcript, Vol I, p. 5-6.)

90.    Officer Tindall was called first and ADA Drusinsky asked about an interaction between himself and Moore a "few years prior" to the shooting. (Grand Jury Transcript, Vol I, p. 18-17, 20-23.) Officer Tindall provided testimony that the call was concerning Moore's yelling, and that when the officers arrived on scene he was "cussing and belligerent". Off. Tindall was not asked and did not provide testimony regarding any physical violence on the part of Moore.

91.    Following Off. Tindall's testimony, Off. Kresley and Off. Wasserman were called and examined by both ADAs Drusinsky and Lacambra. The officers relayed their prior experience with Moore, during an incident that occurred on January 8, 2015. On examination by ADA Lacambra, Off. Kresley testified that the officers were called to the scene following a report that one person had punched the other, however he was not asked to clarify who punched who (Moore was the alleged aggressor):

> **A.** Yes. The report we were getting from dispatch is that someone had punched -- the neighbors had gotten into a physical altercation. Someone had punched someone else.
> **Q.** So you were responding to investigate what had been reported to you as a physical altercation?
> **A.** Yes.
> **Q.** But even with that severity of crime being alleged, you still were able to create time and distance in your interaction with Mr. Moore?
> **A.** Yes. Yes. When we're arrived on-scene, there was no physical altercation happening while we were there.
> (Grand Jury Transcript, Vol II, p. 187)

92.    Off. Kresley relayed to the grand jury that during this incident Moore was yelling, being uncooperative and wanted to officers to leave. He confirmed that their response was to "give him space" and was asked a series of pointed questions regarding whether he identified any indications

from Moore's behavior that he was suffering a mental disability, which he affirmed.

93.     Off. Wasserman also provided testimony regarding this same interaction in January 2015, although the fact that he was testifying about the same interaction was not explicitly identified for the jury suggesting that Moore had encountered officers during another event in which use of force was not required. During Off. Wasserman's testimony, both ADAs Lacambra and Drusinsky asked questions focused on the signs he may have observed that to indicate a mental illness.

94.     Off. Wasserman also testified that while the complainant, Moore's neighbor, told the officers Moore had punched him, Moore told them that his neighbor had assaulted him. Again, Off. Wasserman was not asked to clarify who he believed was the aggressor in this situation, and confirmed that neither party wanted to seek criminal charges against the other. Further, when jurors asked about or witnesses brought up prior violent interactions between Moore, his neighbors, law enforcement and other civilians, the attorneys quickly brushed past these areas and did not allow a complete exploration to occur.

95.     Although the Investigative Grand Jury was purposely and improperly impaneled to develop further evidence against Ofc. Cha to support charges, it was clear from the record that such evidence was not generated or accepted by the jurors. Therefore, because of the lack of support for a Grand Jury indictment of Ofc. Cha and the lack of any new evidence to change the SFDA's Office's prior determination of no probable cause, a new path to prosecution was required.

**The SFDA's Improper Arrest Warrant for Ofc. Cha**

96.     As the Investigative Grand Jury failed to develop additional evidence to indict Ofc. Cha, Defendants Boudin, Gray, Lacambra and Drusinsky were required to proceed with a new plan to bring charges against Ofc. Cha – deciding to submit an application for arrest to the Court. Defendants' intention was to proceed with the submission of an arrest warrant, despite the lack of probable cause, through a biased presentation to a judge in an attempt to obtain a warrant and to insulate themselves from the improper activities throughout the unsupported prosecution. Although Defendants must have been aware that success in prosecution was highly unlikely, they were driven to proceed with seeking the arrest of Cha in an effort to put pressure on the SFPD to change use of force policies and get publicity.

97.     As the three previously assigned investigators to this matter, Tsuruta, Hayashi, and Pailet, had strongly objected to the existence of probable cause for investigation and charges against Ofc. Cha and refused to serve as affiants for such a warrant, Defendants Boudin, Gray, Lacambra and Drusinsky knew they would need to find another investigator who would support their designs, without objection.

98.     As noted above, DA Chesa Boudin, Chief of Staff Campos, and Managing Attorney Lateef Gray purposely hired inexperienced and biased ADAs and investigators, and ignored, sidelined, or fired the more experienced ADAs and investigators, with the explicit goal of pursuing OIS cases against police officers, whether or not such cases were supported by the evidence. Therefore, at some point in the summer of 2021, Andrew Koltuniak was hired by DA Chesa Boudin and Lateef Gray for the role of IIB Investigator. At the time of hire, Andrew Koltuniak was working in the Public Defender's Office. He had no police experience before his hiring to the DA's Office, and in fact harbored a clear bias against police officers. For the vast majority of his career, he had largely been employed by the SF Public Defender's Office as a private investigator from 2004-2012, and 2018 to 2020. At the time of his hiring, Koltuniak was not qualified to work in the IIB Unit of the SFDA's Office, as he lacked law enforcement experience and had no prior experience prosecuting criminal matters. Further, Mr. Koltuniak was not eligible to write arrest warrants, a central duty required for an IIB Investigator.

99.     Further, Koltuniak had a clear pattern of unethical behavior throughout his career, for which he has been formally and publicly admonished. Specifically, in 2015, Koltuniak served as investigator on behalf of a defendant. The jury found the defendant guilty, which was then appealed. One of the grounds for his appeal was the discovery, apparently determined after the verdict, that a juror had not revealed a prior criminal history. This timing was supported by a declaration by Investigator Koltuniak, in which Koltuniak suggestively indicated that he had uncovered this information only after the verdict. In reality, it was discovered that Koltuniak had uncovered this criminal history prior to the verdict, and had likely intentionally withheld it from the court to preserve this ground for a potential future appeal should the jury find against the defendant. The court wrote in a published opinion, naming Koltuniak, of these misrepresentations and admonished Koltuniak and the

defense for misleading the court.[1]

100.    Despite this clear record of making false and misleading statements to the court, or perhaps because of it, Koltuniak was specially selected by DA Boudin, Chief of Staff Campos, and Managing Attorney Gray to become a DA Investigator.[2] This was done although he was unsworn at the time of hiring, would need to take a long POST-training course, and lacked any prior law enforcement experience.

101.    To allow Koltuniak to fulfill the technical qualifications for the job, Boudin and Lateef Gray sent Koltuniak through an accelerated police academy, so that he would gain police status and have minimal qualifications to draft an arrest warrant. This would allow Koltuniak to act on Gray and Boudin's instructions in cases involving SFPD personnel for OIS investigations.

102.    DA Boudin and Lateef Gray then assigned the newly fledged Investigator Koltuniak to the IIB Unit, an extremely intensive unit in the SFDA's Office that previously had only highly experienced investigators assigned to it. Investigator Koltuniak was also specifically assigned to the investigation of the Sean Moore OIS and Ofc. Kenneth Cha. During his time with the IIB Unit, internal correspondence demonstrates that Investigator Koltuniak worked directly under IIB Managing Attorney, Lateef Gray, who was required to be walled off from the matter due to his prior representation of Sean Moore.

103.    It appears that Investigator Koltuniak wrote his first arrest warrant ever for the arrest of Ofc. Cha. On October 29, 2021, Investigator Koltuniak submitted a request for an arrest warrant for Ofc. Kenneth Cha to Judge Harold Kahn. This warrant was later granted that same day by the court.

104.    This affidavit to support the arrest of Ofc. Cha failed to include several salient

---

[1] *United States v. Brugnara*, No. CR 14-0306 WHA, 2015 U.S. Dist. (N.D. Cal. Oct. 9, 2015)
[2] Koltuniak's ethical lapses appear to have continued in his short career as a DA Investigator. Following the Boudin recall, Koltuniak was hired by the Alameda DA's Office in the same role. Koltuniak served as DA Investigator in another prosecution against an officer, *People v. Tran*, and submitted an affidavit in support of an arrest warrant. On the record, the Judge stated that there was a prima facie showing that Koltuniak had misrepresented information and statements within his arrest warrant affidavit. (*People v. Tran*, Court Proceedings, October 13, 2023) The *People v. Tran* case continues to be litigated, however based on the clear pattern of behavior by Koltuniak on other matters, additional misrepresentations and falsehoods by Koltuniak are anticipated to be revealed through evidence and *testimony*.

exculpatory facts. For example, there were other causes of death besides Moore's abdominal injury ostensibly caused by the 2017 shooting. Moore's death certificate states he died from a combination of "hypertensive cardiovascular disease; obesity; slight coronary atherosclerosis; diabetes mellitus; schizophrenia; and chronic substance abuse." The affidavit failed to list these other contributory causes of death.

105.    The arrest warrant also failed to accurately describe the violent encounters preceding the shooting of Moore, directly relevant to the issue of Ofc. Cha's right to self-defense under Penal Code 197 section subs. (1) and rebuttable defense of Penal Code section 194. As noted, Moore was over six-feet-four inches tall and weighed over 275 pounds, with a history of violent conduct and a succession of restraining orders against him. Pursuant to the video evidence and testimony, during the altercation Moore had punched Cha's partner in the nose and broken it, and had kicked out at Cha. However, Investigator Koltuniak's arrest warrant significantly downplayed Moore's violent contribution by making it seem that Cha was unreasonably aggressive towards Moore, who was merely defending himself.

106.    The affidavit also made reference to prior court decisions regarding the events of the Sean Moore OIS and suggested to the reviewing judicial officer that the officers were not in lawful performance of their duties when the shooting occurred. In 2018, the charges against Moore concerning the events that transpired prior to the OIS were reviewed by the San Francisco Superior Court and affirmed by the Appellate Court in an unpublished opinion. *(People v. Moore*, No. A151276, 2018 Cal. App. Unpub. LEXIS 2966, at *20-21 (May 1, 2018))

107.    The Appellate Court explicitly identified their review as limited and focused on the question of the prosecution of Moore on counts requiring proof that the targeted peace officer was engaged in the lawful performance of their duties at the time of the alleged criminal conduct. The Appellate Court found that the officers had been unlawfully trespassing on Moore's curtilage following the exchange regarding the restraining order, due to Moore's compliance with identifying himself, acknowledgement of the restraining order and his demands they leave. However, the Court acknowledged that Moore did not challenge the officers' probable cause to arrest Moore for aggravated assault after he struck Ofc. Patino. Further, the Court held that Moore was not immunized from

criminal liability in this incident:

> We first agree with the People—and Moore readily acknowledges—the officers' alleged constitutional violations do not immunize Moore from criminal liability for all subsequent conduct, including his alleged acts of physical violence. If Patino was not engaged in the performance of his law enforcement duties when Moore allegedly punched him, Moore was not immune from prosecution for battery (§ 243, subds. (a), (d)); he simply cannot be convicted of battery of a peace officer engaged in the performance of his duties (§ 243, subds. (b), (c)). *(People v. Moore*, No. A151276, 2018 Cal. App. Unpub. LEXIS 2966, at *20-21 (May 1, 2018))

The court continued: "Moore does not challenge the officers' probable cause to arrest him for the aggravated assault. As he correctly notes, the issue before us is not the lawfulness of his arrest, and his guilt or innocence does not depend on the peace officer status of the victims." (*Id*. at *21)

108.    The discussion regarding Moore's own liability and appropriateness for criminal charges was not included in the arrest warrant affidavit. Instead Koltuniak drafted the affidavit to frame the court's opinions more broadly than the scope of their review and to misrepresent that the courts had found all of the officers' actions to be unlawful and unsupported. Only a close reading of the enclosed court opinion, attached as the last exhibit, would have revealed these inaccuracies to the reviewing judicial officer.

109.    Further, in Koltuniak's affidavit, he makes a number of statements containing multiple falsehoods including:

> j.    Koltuniak's Summary for Review of the Body Cam Footage: "Moore demanded the officers get off his stairs and denied any harassment of Choy. Moore explains that he had taken out the garbage and swept his staircase." (See Exhibit 2, a true and correct copy of the Arrest Warrant Affidavit, pg. 5) Clearly, this summary of interactions between the officers and Moore severely downplays the violent actions and verbal altercations by Moore to the officers. It is apparent from the body cam footage that Moore was extremely dismissive of the restraining order, did not quickly assert that he had not violated the order and was highly upset and aggressive.

> k.    Koltuniak's Summary for Review of the Body Cam Footage: "Moore stated he could not see and exited his home again to stand behind the security gate and stated: 'Let's get this resolved,' and 'I can't see, I need some medical attention.'" (Exhibit 2, Arrest Warrant Affidavit, pg. 6) This inaccurately quotes more, as these statements occurred at separate times during the interaction. Further, although these statements by Moore may appear reasonable in writing, Koltuniak leaves out that throughout these statements

Moore continues to scream and cursing at the officers, quickly rush Ofc. Patino when he tried to grab the restraining order papers Moore had thrown onto the stairs, and that the officers offered Moore medical attention multiple times in response.

l.  Koltuniak's Summary for Review of the Body Cam Footage: "Patino began to ascend the stairs a third time to retrieve the papers but stopped when Moore opened his security gate. Moore remained at the top of the stairs and stated: "C'mon, I'm gonna kick your ass punk, you're leaving here." (Exhibit 2, Arrest Warrant Affidavit pg. 6) This is not true based on the body cam footage. As Patino ascended the stairs to collect the papers thrown through the gate by Moore, Moore very quickly darted out his door and threw open his gate, standing just outside of it and motioning like he was about to rush down the stairs to Ofc. Patino. Throughout this time, Moore is screaming that he will "kick [Ofc. Patino's] ass, punk" and repeatedly yelling "Fuck you, fuck you, fuck you" while crouching over and clenching his fists. The officers make noises of surprise ("Hey", "whoah", etc.) while Ofc. Patino descends back down the stairs, unable to reclaim the papers.

m.  Koltuniak's Summary for Review of the Body Cam Footage: "Cha then drew his handgun, pointed it at Moore, and advanced up the stairs towards Moore. Moore reacted to Cha's advance by kicking towards Cha." (Exhibit 2, Arrest Warrant Affidavit pg. 6) This does not accurately depict the sequence of events. As Patino was punched by Moore, Patino was located in front of Cha due to the narrow stairway. As Patino fell down the stairs after being struck by Moore, he fell into Cha. As Cha looked towards Moore, Moore charges towards Cha. Cha then ascends the last few stairs with his weapon drawn. As Moore reaches Cha, kicking out at him, Cha fires his weapon.

n.  Koltuniak chose to include screen shots from the body cam footage in his affidavit. (Exhibit 2, Arrest Warrant Affidavit pg. 8-9) Tellingly, each of the stills and the accompanying descriptions misrepresents that Moore was in a defensive or surrendering position, including stills that suggest Moore is holding his hand up in front of his face. These carefully selected stills misrepresent the actual circumstances captured on the footage in an effort to mislead the reviewing judicial officer.

o.  "Cha's BWC does not depict throwing his hands or feet towards Cha." (Exhibit 2, Arrest Warrant Affidavit pg. 15) This is untrue, and on multiple occasions it is observable in the body cam footage that Moore is raising his fists, kicking, and rushing the officers. In the seconds prior to the shooting, Moore, Patino and Cha are in close quarters together on the stairwell, with Patino in front of Cha. Cha then observes Moore punch Patino in the face, causing him to fall past Cha down the stairs. As this occurs, Moore then rushes towards Cha, raising his foot ostensibly to kick him and disobeying his orders to get on the ground. Cha then shoots Moore.

p.  "As Cha and Patino ascended the stairs the third time, Moore did not take a

fighting stance in response to Cha and Patino's advance and attack." (Exhibit 2, Arrest Warrant Affidavit pg. 15) This is also inaccurate based on a review of the footage. Prior to this, Moore had already kicked out at Patino and the officers believed they had probable cause to arrest Moore, per their later interviews. As the officers continued to tell more to get on the ground, Moore proceeded down the stairs towards the officers. In response, Patino moved towards Moore, at such time Moore is blocked from the camera by Patino's body. Moore moved back up the stairs, moving his arms towards Patino during the brief frames where Patino is not obscuring the camera's line of sight. Moore then was hit twice with the baton, swiping his hands towards Patino. As Patino is raising his arm to hit Moore with the baton, Moore punches him.

q. "Cha drew his weapon, advanced toward Moore, and began firing at Moore in less than 1.5 seconds (45 frames) after Moore attempted to defend himself by kicking away at Cha." (Exhibit 2, Arrest Warrant Affidavit pg. 16) This fails to accurately represent the actions that had occurred directly prior to Cha discharging his weapon. The footage shows Moore punching Patino, then 2 seconds later, Patino falls down the stairs. 1 second following, Moore charges towards Cha, lifting his left leg up in a kicking position, and Cha ascends towards Moore with his weapon drawn until it appears Moore pushes or kicks him, causing him to begin to fall back. One second after that, Cha fires on Moore while he is falling down the stairs. Throughout this time, the officers are instructing Moore to get on the ground.

r. "Because Cha's use of deadly force was excessive given that Moore was unarmed in his own home defending himself against excessive force by the trespassing officers, there is probable cause to arrest Cha for manslaughter." (Exhibit 2, Arrest Warrant Affidavit pg. 16) This conclusion is presented in the affidavit as the culmination of (1) findings by the appellate court that the officers were acting unlawfully throughout this encounter – an inaccurate summary of the scope of the review and holding and (2) the distorted summary of the body cam footage and statements by officers.

s. When addressing Penal Code section 194 – the presumption that the killing is not a criminal act if it occurred more than three years before the death, Koltuniak states that the presumption is rebutted due to the cause of death determination: "The [Marin County Coroner's report] determined that Moore's death was a homicide caused by an acute intestinal obstruction resulting from abdominal adhesions from remote gun-shot wounds to his abdomen sustained on January 6, 2017." (Exhibit #, Arrest Warrant Affidavit pg. 16) However, this fails to provide the reviewing judicial officer with the full findings of the coroner's report, including that multiple co-morbidities contributed to Moore's death. Again, although it appears that the coroner's report was attached as an exhibit in an effort to protect later against these inaccuracies, a reviewing judicial officer would reasonably rely on the sworn statement of the investigator within the affidavit.

t.   Koltuniak attests, above his signature under penalty of perjury, "I have disclosed to the court and the Office of the District Attorney, City and County of San Francisco, all material known to me which may be exculpatory, and said information is contained in this Affidavit of Support of Request for Arrest Warrant." As is clear, not all exculpatory information available to Koltuniak was provided to the reviewing judicial officer.[1] This would include the clear facts of the incident, specifically Moore's actions, an accurate recitation of the Appellate Court's holding, Moore's history of violence, both against the complainant Choy and the public at large, the complete circumstances of Moore's death, and repeated prior findings by the DA's Office that no probable cause existed to support charges against Ofc. Cha in this case.

110.    Additionally, at many points, the affidavit attested to by Investigator Koltuniak is almost word for word identical to the drafted search warrant affidavit ADAs Lacambra and Drusinsky heavily edited and pressured Investigator Hayashi to sign. A side-by-side review of these documents is necessary to appreciate the full breadth of similarities, but Plaintiff has highlighted a few examples below. It is clear that much of the affidavit Koltuniak presented to the court was not composed from his own independent conclusions but pre-drafted by ADAs Drusinsky and Lacambra.

111.    The summary paragraph of the arrest warrant appears to be pulled almost exactly from the search warrant draft. This was almost completely rewritten by Lacambra on the search warrant:

"On January 6th, 2017, at approximately 03:51 AM, San Francisco Police Department (SFPD) Officers Kenneth Cha (Star #1206) and Colin Patino (Star #1310), responded to [redacted] San Francisco, California, to investigate a report by [redacted] that his next door neighbor, Sean Moore, had violated a temporary restraining order." (Arrest Warrant Affidavit, p. 4.)

"On January 6, 2017, at approximately 03:51 AM, San Francisco Police Department (SFPD) Officers Kenneth Cha Star No. 1206 and Colin Patino Star No. 1310, responded to 515 Capitol Avenue, in San Francisco, California, to investigate a report by Christopher Choy that his neighbor, Sean Moore, had violated a temporary protective order." (Search Warrant Draft Affidavit, p. 9)

112.    The summary Investigator Koltuniak states is based on his own review of the Body Worn Camera Footage is also almost exact to the statement edited by the ADAs in the search warrant draft:

---

[1] It is important to note that the arrest warrant made available to Plaintiff contains redactions concerning some of the listed exculpatory evidence. (Exhibit 2, Arrest Warrant Affidavit, pg. 13)

> "Upon arrival, Cha rang the doorbell and Moore opened his front door, but remained behind the metal security gate. Moore repeatedly told the officers that he did not want to speak to them and wanted them to leave. Moore demanded the officers get off his stairs and denied any harassment of [redacted]. Moore explained that he had taken out his garbage and swept his staircase. Moore went inside his home, Patino called him back to the front door and began reading the elements of the temporary restraining order to Moore who yelled, 'I heard you', and continued to demand that both officers vacate the staircase. When both officers refused to leave, Moore retrieved a mobile phone and told the officers he was going to call and have them removed." (Arrest Warrant Affidavit, p. 5)

The related paragraph in the search warrant draft, heavily edited by Lacambra:

> "Upon arrival, Officers rang the doorbell and Moore exited his residence but remained behind the gated security door. Moore repeatedly told the officers he did not want to speak to them and wanted them to leave, and they refused to comply. Moore demanded the officers get off his stairs and denied any harassment toward Choy. Moore explained that he had taken his garbage out and swept his staircase and again ordered the officers to leave. Both Cha and Patino refused to leave despite the repeated orders from Moore to vacate his property. Moore attempted to end the encounter by going inside his home, but Patino called him back to the front door and began reading the elements of the temporary protective order to Moore who yelled over him and demanded both officers vacate the staircase. When both officers still refused to leave, Moore took out his cell phone and told the officers he was going to call to have them removed. (Search Warrant Draft Affidavit, p. 10)

113.   The examples continue, and a side-by-side review of the affidavits to each warrant is recommended:

> "Moore picked up the fallen papers and retreated into his home. Patino demanded Moore return the papers. In response, Moore came out to the stairs from behind his gate with the papers in hand. Cha said: 'Fuck you,' and 'Mother-fucker. What's up? C'mon.' Moore responded by retreating into his home." (Arrest Warrant Affidavit, p. 6)

The related paragraph in the search warrant draft, again, heavily edited by Lacambra:

> "Moore picked up the fallen restraining order papers and reentered his residence. Patino demanded Moore return the papers. Moore re-emerged from behind his gate with the papers in hand. Cha exchanged insults with Moore and encouraged Moore to fight by jeering: 'What's up?! C'mon!' Moore responded by retreating back into his home." (Search Warrant Draft Affidavit, p. 11)

114.   Therefore, the items included and excluded from the affidavit were designed to fool the reviewing judge and misrepresent the actual circumstances of the Sean Moore OIS, who would understandably rely on the honesty and integrity of the investigator making assertions in support of the

warrant under penalty of perjury.

115.     Apparently, in an effort to insulate themselves from these many misrepresentations and deficiencies in the warrant affidavit, Koltuniak attached as exhibits copies of the restraining order against Moore, body worn camera footage and transcripts from Cha and Patino, Cha's statement following the incident, the Coroner's Report, and Court orders regarding the criminal charges against Moore and Moore's civil matter. However, as the affidavit was signed under penalty of perjury by an investigator purporting to be independent, it seems very likely that the reviewing judicial officer did not have the ability to review the entire footage and other exhibits and instead the truthfulness, completeness and accuracy of Koltuniak's misleading, incomplete and at times false, affidavit. It appears that the warrant was executed the very same day it was submitted to the reviewing judicial officer, Judge Harold Kahn. Therefore, without the complete scope of relevant information, including exculpatory evidence known the SFDA's Office and lack of probable cause, Judge Kahn signed the warrant allowing for Ofc. Cha's arrest the same day it was submitted.

116.     Koltuniak's lack of experience and competence for the task of drafting the arrest warrant, and the poor training and improper direction by his superiors at the SFDA's Office (particularly DA Boudin and Managing Attorney Gray), were significant factors in the improper investigation of Cha and the improper drafting and approval of the arrest warrant absent probable cause.

117.     Although defendants Cha, Gray, Lacambra, Drusinsky, and Koltuniak had reopened the closed investigation, uncovered no additional evidence relating to the circumstances of the underlying OIS, found nothing to change the initial determinations regarding a lack of probable cause and the existence of self-defense, and knew that charges would be unreasonable in this matter, they continued to submit the arrest warrant. Because of Koltuniak's omissions and misrepresentations within the arrest warrant affidavit, as clearly taken from language previously generated by ADAs Lacambra and Drusinsky, an improper arrest warrant for Ofc. Cha was issued, without actual probable cause and as part of their conspiracy to trick the judge provide approval.

**Criminal Case against Ofc. Kenneth Cha – Attempts to Conceal Lack of Probable Cause,**

**Conspiracy and Conflict of Interest**

118.    As noted, the shooting at issue occurred January 6, 2017. Over four years later, on October 29, 2021, DA Investigator Andrew Koltuniak submitted the arrest warrant for Ofc. Kenneth Cha to the Superior Court.

119.    On or about November 2, 2021, Ofc. Cha was arrested on charges of voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)). The DA's Office then instituted criminal proceedings against Ofc. Cha, with ADA Rebecca Young as lead prosecutor. Discovery was conducted by the defense, including materials produced by the DA's Office regarding the prior declination report, the Grand Jury proceedings, and the involvement of Lateef Gray.

120.    Ofc. Cha's criminal defense attorney, Scott Burrell, sought to compel documents regarding the involvement of Managing Attorney Lateef Gray on the Cha investigation as well as the drafted search warrants prepared by Hayahshi. This was highly contested by the SFDA's Office, who fought extensively to stop discovery of these documents. This effort to cover up the improper influence of Lateef Gray in the Cha matter included the filing of an Opposition to the Motion to Compel that contained a declaration signed by ADA Rebecca Young, one of the prosecutors on the Cha case.

121.    Within this declaration, and contrary to the emails the SFDA's Office was later ordered to produce which showed almost daily involvement by Gray in the Cha case, Young declared under penalty of perjury with respect to Lateef Gray's involvement in the underlying case, that "no such documents exist."[1] This statement was proven as a direct falsehood once the motion to compel was granted.

**New Managing Attorney of IIB Darby Williams Review of IIB Unit and Cha Matter & Moves to**

---

[1] Following the recall of Chesa Boudin, Rebecca Young left the SFDA's Office and went back to work as a criminal defense attorney. Based on the last information available to Plaintiff, Rebecca Young then became attorney of record for the family of Sean Moore.

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

**Dismiss Charges**

122.    On July 8, 2022, DA Boudin was recalled and left office. On January 8, 2023, Brooke Jenkins assumed the role of San Francisco District Attorney. Following this, the attorneys prosecuting the Cha matter were removed from the case, and ADA Darby Williams was assigned to Managing Attorney of IIB by DA Jenkins.

123.    On August 19, 2022, Managing Attorney of IIB ADA Darby Williams sent email correspondence to IIB Unit regarding her concerns with activities inside the IIB Unit. (See Exhibit 3, a true and correct copy of the Darby Williams Email) This email called out specific issues with the IIB Unit under Boudin and Gray, including: "[t]he lack of oversight and submission of the Unit's members to the political whims of former leaders also deeply corrupted the Unit and contributed to the Unit's gross misuse and abuse of resources." (*Id*. at p. 1) Managing Attorney ADA Williams listed various examples, including:

   a.    "Multiple attorneys were employed in this Unit who were unqualified to work in it, unaware or uneducated as to what the role of IIB-ADA required, or simply uncommitted to the role of being an ethically based prosecutor." (*Id*.)

   b.    "Multiple grand juries impaneled on cases in which prior declinations were issued under prior District Attorney Gascon." (*Id*.)

   c.    "Grand juries impaneled to 'test the water' on cases in which an internal determination re the quantum of proof could have been easily made and reached." (*Id*.)

   d.    "An attitude of 'choose your own adventure' as cases were investigated not because the facts warranted those investigations, but because of 'mission-like' perspectives that were left completely unchecked." (*Id*.)

   e.    "Baseless reopening of cases previously fully investigated and in which declination statements were already authored." (*Id*. at p. 2)

124.    On January 11, 2023, Kenneth Cha's criminal defense attorney Scott Burrell sent a letter to DA Brooke Jenkins, outlining the deficiencies in the case against Ofc. Cha. Burrell noted the following problems with the case: 1) Cha had viable arguments for self-defense or defense of another; 2) Sean Moore had a long history of violent attacks; 3) there was weak evidence of causation of death, since the death occurred long after the event; 4) the DA's office showed multiple ethical failures and improper investigation, including the conflict of interest with Lateef Gray; pressure on investigators

such as Megan Hayashi to produce biased and incomplete work; and, 5) the biased arrest warrant with inappropriate editorializing and missing exculpatory information. In light of all these deficiencies and lack of support for prosecution of Cha, Burrell asked that DA Jenkins dismiss the charges.

### Motion to Dismiss Charges Against Ofc. Kenneth Cha

125.    On June 30, 2023, the Managing Attorney Darby Williams filed a Motion to Dismiss criminal charges against Ofc. Cha. In this motion, Managing Attorney Williams discussed the need for dismissal "in the interest of justice". (See Ex. 4, a true and correct copy of the Motion to Dismiss) On July 18, 2023, the court granted the Motion to Dismiss, dismissing all criminal charges against Kenneth Cha.

126.    In the Motion, Managing Attorney Williams stated that the SFDA's Office was unable to show beyond a reasonable doubt that Ofc. Cha did not act in self-defense, since Moore was the apparent aggressor in this incident and had already caused physical harm. The Motion cited Penal Code §835(a), "A threat of death or serious bodily injury is imminent when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person." (Exhibit 4, Motion to Dismiss, p. 25)

127.    The Motion stated, "[a] detailed fact-based analysis shows that both officers subjectively believed in the need to use force in self-defense and defense of others. The belief in the need to use deadly force to defend against Moore's assault became acute as Moore became more aggressive and struck Patino in Cha's presence which made Cha's belief objectively reasonable." (*Id.*, at p. 25) The Motion noted that, just prior to the shooting, "Cha thought he might be Moore's next victim and given what he saw Moore do to Patino, that fear was objectively reasonable. It is also this moment that Cha is faced with the lack of less than lethal options to defend himself as the pepper spray did not work, the baton strikes by Patino were useless, and Moore who has all physical advantage continued to advance." (*Id.*, at p. 26)

128.    With regard to the lack of probable cause to support charges against Cha, Managing Attorney Williams wrote that there is a "colorable claim that this prosecution was brought for improper reasons. The evidence surrounding improper prosecution motives include the failure to create and

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

maintain ethical walls and the inappropriate handling of proceedings." (*Id.*, at p. 27) The Motion noted the conflict of interest presented by Lateef Gray's continuing involvement with the case: "The pecuniary interest for work done in the civil lawsuit by Moore against the SFPD, coupled with the clear interest surrounding prosecution of the Moore/Cha matter by the Federal Court, means that Gray should have been walled off of the Moore/Cha prosecution in a demonstrable way to avoid any appearance of impropriety." (*Id.* at p. 31) However, contrary to this "[t]he emails reviewed by this writer were only produced to the defense in redacted form after a motion to compel which the Boudin administration aggressively opposed…show virtually daily involvement by Gray, as manager of IIB unit since June 30, 2020 and overseer as the IIB Managing Attorney of ADAs Drusinsky and Lacambra." (*Id.* at p. 30) Darby wrote that these emails show "he made pivotal decisions in the Moore matter such as hiring and payment to expert witnesses, discussions around strategy, and the removal of the DA investigator who had investigated the Moore case from the beginning." (*Id.*)

129.    The Motion also noted serious ethical lapses by the ADAs Lacambra and Drusinsky in their presentation to the Grand Jury, particularly the exclusion of exculpatory evidence of the decedent's violence: "[w]hen a district attorney is aware of evidence reasonably tending to negate guilt, the district attorney is obligated to inform the grand jury of its nature and existence." (*Id.* at p. 32) "Here, the propensity for violence by the decedent and most importantly acts of violence to the C.C. [Choy] family would be highly relevant in establishing that Cha's responses to Moore were reasonable and that it was Moore who was likely the aggressor, supporting Cha's claim of lawful self-defense or defense of his partner."  (*Id.* at p. 34) The Motion continued that the "failure to present this exculpatory evidence, or to tell the jurors that they had the power to investigate this concern so as to evaluate Moore's violent character was a significant omission." (*Id.*) The Motion summarized the outcome of the Grand Jury as such "Ultimately, and most importantly, this 'investigative grand jury' did not uncover any new evidence to change the legal analysis through multiple attorneys that this case was not prosecutable." (*Id.*)

130.    Based on the many serious problems with the case, the Motion then concluded dismissal was required in the interests of justice. (*Id.* at p. 35) On July 18, 2023, the Court granted Managing Attorney Williams' Motion to Dismiss regarding all charges against Ofc. Cha.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

131.    On December 28, 2024, Plaintiff Kenneth Cha timely filed a claim against Defendants pursuant to Government Code section 910, regarding the matters set forth herein.

132.    On February 7, 2024, Defendant CITY AND COUNTY OF SAN FRANCISCO sent a letter to plaintiff's counsel, advising that Defendant believed there was "no indication of liability on the part of the City and County," and further advising that, "your claim is DENIED."

133.    Pursuant to Government Code section 945.6, Plaintiff hereby files the instant Complaint within six months of Defendant CITY AND COUNTY OF SAN FRANCISCO's denial of plaintiff's claims.

**FIRST CLAIM FOR RELIEF – VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) – MALICIOUS PROSECUTION – ADMINISTRATIVE POLICIES CAUSING DEPRIVATION OF RIGHTS (_GOLDSTEIN V. CITY OF LONG BEACH_ (9TH CIR. 2013) 715 F.3D 750, 751)**

**(AGAINST DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; AND LATEEF GRAY)**

134.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the facts in each paragraph were set forth in full in this Claim for Relief.

**ALLEGATIONS COMMON TO ALL COUNTS:**

135.    On or about November 2, 2021, Defendants CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE charged Plaintiff KENNETH CHA with voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)) in the criminal courts in the Superior Court of California, City and County of San Francisco, case number 21010958. The prosecution of plaintiff Cha was conducted by defendant SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, based on the investigation, actions, and statements of the defendants, CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, as described herein.

136.    At all times relevant to this Complaint, while Defendants CHESA BOUDIN; LATEEF

GRAY; and DOES 1-100 were creating and promulgating SFDA policies affecting the investigation of officer-involved shooting (OIS) cases, including the case of plaintiff KENNETH CHA related to the Sean Moore matter, these defendants were acting in the course and scope of their employment with Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE.

137.    In investigating plaintiff KENNETH CHA related to pursuing criminal charges against plaintiff CHA, as aforesaid, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, while acting under color of law, conspired together to violate the due process rights of plaintiff KENNETH CHA under the Fourth and Fourteenth Amendments of the U.S. Constitution, and plaintiff's other civil rights. Defendants and each of them created deficient administrative policies at the SFDA, with the intent to facilitate and conduct a malicious investigation and prosecution of plaintiff, and with the intent to charge him with a crime which he did not commit and which the defendants should have recognized he did not commit. Defendants and each of them were aware that plaintiff CHA had a complete defense to any charge of manslaughter under the doctrine of self-defense (Cal. Pen. Code §197 subs. (1)), in that during the subject incident, the decedent Sean Moore had attacked plaintiff and his partner, and threatened great bodily injury to them. Therefore, under the totality of the circumstances, probable cause never existed to pursue manslaughter charges against plaintiff. Despite the lack of probable cause, defendants and each of them pursued a biased investigation with the intent to eventually prosecute plaintiff for manslaughter, whether or not probable cause existed.

138.    Defendants CHESA BOUDIN; LATEEF GRAY; and each of them, acted improperly, and with malicious intent, with respect to conduct in their capacity as creators of improper administrative policies, procedures, and related conduct for the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE ("SFDA"), causing bias against plaintiff CHA in the investigation of the Sean Moore matter.

139.    On July 18, 2023, the criminal proceeding ended in plaintiff KENNETH CHA's favor,

when the Court granted ADA Williams' Motion to Dismiss regarding all charges against Officer Cha.

140.    No reasonable person in the circumstances of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, would have believed that there were grounds for causing plaintiff KENNETH CHA to be arrested and prosecuted. Defendants lacked probable cause for the prosecution of criminal charges against plaintiff, based on the totality of the circumstances including facts demonstrating plaintiff's right of self-defense.

141.    Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, acted maliciously in establishing policies and procedures for investigating the Sean Moore matter and/or any allegations against plaintiff KENNETH CHA. Defendants and each of them acted primarily for purposes other than to bring plaintiff KENNETH CHA to justice. Particularly, in establishing policies and procedures for investigating and prosecuting the CHA case and other officer-involved shooting (OIS) cases, defendants and each of them acted with a political motive, intending to put pressure on the SF Police Department, to coerce them into changing SFPD policies related to officers' use of force. Further, in order to appease certain political constituencies, defendants and each of them sought to publicly present an aggressive stance toward OIS cases with regard to allegations of police misconduct.

142.    Further, defendant LATEEF GRAY, the managing attorney of the IIB unit at the SFDA's office, had a conflict of interest related to CHA's criminal prosecution. The decedent in the criminal action (Moore) was GRAY's former client, who had pursued a civil suit which GRAY would benefit from. Because of GRAY's prior alignment with the decedent in the CHA case, GRAY had a conflict of interest with the investigation and prosecution of plaintiff CHA. Under these circumstances, it was a violation of professional ethics for GRAY to assume a position as the managing attorney of the IIB unit investigating the Moore shooting. Defendant LATEEF GRAY's pursuit of the investigation and prosecution of plaintiff CHA was in part motivated by his pecuniary financial interest and personal bias for his former client, rather than the interest of justice.

143.    The wrongful acts and omissions of the Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; and/or LATEEF GRAY, related to the creation and implementation of improper administrative policies and procedures for the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE ("SFDA"), causing improper bias in defendants' investigation of the Sean Moore matter and a deprivation of plaintiff's rights, were undertaken maliciously, and are set forth in Counts 1 through 4 below.

144.    The creation and implementation of improper administrative policies and procedures by defendants CHESA BOUDIN; LATEEF GRAY; and each of them, permitted, facilitated, and caused the improper and biased investigation and prosecution of plaintiff KENNETH CHA conducted by the SFDA office, and violated plaintiff's civil rights under the Fourth Amendment to the United States Constitution, to be free from unlawful seizures and from wrongful arrest and prosecution without probable cause.

145.    As a direct legal result of the improper administrative policies and procedures of the SFDA, as described in Counts 1-4 below, that caused, facilitated, and permitted the improper investigation and malicious prosecution of plaintiff KENNETH CHA undertaken in bad faith by defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, resulting in the criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

A.    Loss of personal freedom;

B.    Payments necessary for bond and expenses of defense, including attorneys' fees;

C.    Pain and suffering, both physical and emotional; and

D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

146.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys'

herein.

147.    With respect to the conduct described in this First Claim for Relief, related to the improper investigation and prosecution of plaintiff CHA, Plaintiff sues defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and each of them, in their official capacities.  In doing the acts and/or omissions alleged herein, these defendants, and each of them, were acting as agents of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office. Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County of San Francisco and the San Francisco District Attorney's office.

148.    Plaintiff sues defendant CHESA BOUDIN in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

149.    Plaintiff sues defendant LATEEF GRAY in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

150.    Plaintiff sues defendant DANA DRUSINSKY in her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

151.    Plaintiff sues defendant STEPHANIE LACAMBRA her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights,

all of which caused a deprivation of plaintiff's rights under color of law.

152.    By creating and implementing improper administrative policies and procedures that deliberately permitted, facilitated, and caused the improper and biased investigation and prosecution of plaintiff KENNETH CHA conducted by the SFDA office, causing the malicious prosecution of plaintiff KENNETH CHA, as aforesaid, defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and DOES 1-100, acted despicably, with conscious disregard of plaintiff's rights, and further subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights. Defendants' conduct as aforesaid constituted malice and oppression under California Civil Code section 3294(c), and justify the imposition of exemplary or punitive damages.

### FIRST CLAIM FOR RELIEF – COUNT 1: IMPROPER PROCEDURES FOR RE-EVALUATION OF OIS CASES (AGAINST DEFENDANT BOUDIN)

153.    Plaintiff incorporates the preceding paragraphs of this Complaint into this First Count as if the facts in each paragraph were set forth in full in this Claim for Relief.

154.    On or about January 2020, Defendant CHESA BOUDIN assumed the office of District Attorney for the City and County of San Francisco.  With respect to the policies of the SFDA office described herein, Defendants CHESA BOUDIN exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office. The SFDA policies and procedures described in this Count were established by decisions by defendant BOUDIN.

155.    As described above, on entering office as the DA, defendant CHESA BOUDIN  sought to re-open several OIS cases, including cases involving plaintiff CHA, Ofc. Terrence Stangel, and Ofc. Christopher Samayoa, that had been declined or recommended for declination.

156.    When cases have been deemed to be declined by the SFDA's office because of lack of probable cause, the prosecutor at the SFDA should not proceed with a prosecution of the suspect unless they have received some new evidence that would justify changing a no probable cause determination to a probable cause determination. Reasonable District Attorney office procedures

would impose internal rules or guidelines to ensure that the re-opening of an investigation found new evidence to justify a prosecution. Further, reasonable District Attorney office procedures would require the assessment of evidence when there was an act of self-defense related to the events, as a defense that would negate probable cause.

157.    Defendants CHESA BOUDIN did not establish or enforce proper administrative policies or procedures for the SFDA's office to decide whether to re-open officer-involved shooting (OIS) cases that had been declined, or recommended for declination, by the SFDA's office. Defendants did not establish proper and effective procedures to assess whether there was any new evidence that would support a change in status from the prior declination, or any procedures for assessing the new evidence against the previous determination of no probable cause.

158.    At the time that defendant CHESA BOUDIN assumed office, the case regarding the OIS shooting of Sean Moore by plaintiff Kenneth Cha (the "Cha matter") had been declined by the SFDA's assessment under prior DA George Gascon, and and also by the prior investigator Andrew Lah. The prior SFDA assessment was rationally based on 1) evidence of Cha's need for self-defense in the face of attacks that could reasonably cause great bodily harm; and 2) lack of clear evidence to support causation of death, since the shooting incident was over three years prior to the decedent's death, and there were other potential medical causes of death.

159.    As a result of the inadequate policies at the SFDA's office related to re-assessment of OIS cases, defendant BOUDIN directed his subordinates at the SFDA office to re-open the CHA matter for further investigation and prosecution, despite no new evidence justifying any investigation or prosecution. As to the Cha matter, neither BOUDIN nor his subordinates adopted any policies or procedures to assess whether there was any new evidence that would support a change in status from the prior declination, or any procedures for assessing the new evidence against the previous determination of no probable cause to prosecute.

160.    The SFDA's re-opening of the Cha matter, despite the SFDA office's prior determination of no probable cause, set in motion the biased investigation of plaintiff CHA that caused his arrest and prosecution without probable cause, in violation of his rights.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; and DOES 1-100, and each of them, as hereinafter set forth.

### FIRST CLAIM FOR RELIEF – COUNT 2:  IMPROPER POLICIES FOR HIRING AND FIRING EMPLOYEES (AGAINST DEFENDANTS BOUDIN AND GRAY)

161.    Plaintiff incorporates the preceding paragraphs of this Complaint into this Second Count as if the facts in each paragraph were set forth in full in this Claim for Relief.

162.    On or about January 2020, Defendant CHESA BOUDIN assumed the office of District Attorney for the City and County of San Francisco.  With respect to the policies of the SFDA office described herein, relating to the hiring or firing of SFDA personnel and the selection of personnel for assignments, Defendants CHESA BOUDIN exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office.

163.    On or about January 21, 2020, DA Boudin offered LATEEF GRAY the position of Managing Attorney for the Independent Investigation Bureau (IIB). Plaintiff is informed and believes that, with respect to the policies of the SFDA office described herein, relating to the hiring or firing of SFDA personnel and the selection of personnel for assignments to the IIB unit, Defendants LATEEF GRAY exercised substantial independent authority and judgment in decision-making, such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office.

164.    The SFDA policies and procedures described in this Count were established by decisions by defendants BOUDIN and GRAY, who acted together related to these policies.

165.    In making staffing decisions at the SFDA related to the hiring, retention, and firing of SFDA personnel, and their assignment to different positions and cases, the SFDA was required to assess applicants for prospective employment with SFDA for biases and prejudice. The SFDA should seek to hire employees who would objectively apply the law without bias or prejudice toward any categories of persons, and should exclude prospective employees with a clear bias against any social group from employment at the SFDA. The SFDA should adopt policies and procedures related to hiring staff, to identify and confirm that employees would objectively apply the law without bias,

1    prejudice, or for personal gain.

2    166.    However, during the tenure of defendant BOUDIN, Defendants did not ensure that the

3    SFDA hired employees who would objectively apply the law without bias or prejudice toward any

4    categories of persons. Defendants failed to institute any procedures at SFDA to determine the potential

5    bias or prejudice of prospective employees.

6    167.    As a result of the deficient SFDA policies regarding hiring individuals with apparent

7    biases, the SFDA (as directed by defendants BOUDIN) hired LATEEF GRAY, who was biased and

8    prejudiced against police officers, and had a tendency and/or willingness to prosecute police officers

9    whether or not probable cause existed. Further, LATEEF GRAY had a conflict of interest with the Cha

10    matter as he had represented the Moore family, as discussed in the Third Count below.

11    168.    Subsequently, the SFDA (as directed by defendants BOUDIN and GRAY) hired

12    personnel, such as DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK,

13    who were biased and prejudiced against police officers, and had a tendency and/or willingness to

14    prosecute police officers whether or not probable cause existed. Further, defendant ANDREW

15    KOLTUNIAK had a history of ethical lapses in his prior employment.

16    169.    In GRAY's position as Managing Attorney for the IIB, GRAY was able to manipulate

17    the IIB personnel and remove anybody that came to a conclusion that there was no probable cause.

18    Gray was able to remove personnel from the Cha matter until he found staff that would agree to their

19    conspiracy to assert probable cause existed, so they could bring charges against CHA.

20    170.    As a result of the deficient SFDA policies regarding hiring individuals with apparent

21    biases, certain individuals hired under the BOUDIN administration (including LATEEF GRAY;

22    DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK) conducted a

23    biased investigation and prosecution of plaintiff CHA without probable cause under the circumstances,

24    causing an injury to Plaintiff's rights.

25    WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND

26    COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA

27    BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

28    **FIRST CLAIM FOR RELIEF – COUNT 3:  IMPROPER POLICIES FOR ATTORNEYS WITH ETHICAL**

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## CONFLICTS (AGAINST DEFENDANTS BOUDIN AND GRAY)

171.    Plaintiff incorporates the preceding paragraphs of this Complaint into this Third Count as if the facts in each paragraph were set forth in full in this Claim for Relief.

172.    On or about January 2020, Defendant CHESA BOUDIN assumed the office of District Attorney for the City and County of San Francisco.  With respect to the policies of the SFDA office described herein, relating to the hiring or firing of SFDA personnel, Defendants CHESA BOUDIN exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office.

173.    On or about January 21, 2020, DA Boudin offered LATEEF GRAY the position of Managing Attorney for the Independent Investigation Bureau (IIB). Plaintiff is informed and believes that, with respect to the policies of the SFDA office described herein, relating to the identification of attorney conflicts of interest and the maintenance of ethical walls to mitigate conflicts, Defendants LATEEF GRAY exercised substantial independent authority and judgment in decision-making, such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office. The SFDA policies and procedures described in this Count were established in part by decisions by defendant GRAY, who acted together with BOUDIN related to these policies.

174.    The SFDA policies and procedures described in this Count were established by decisions by defendants BOUDIN and GRAY, who acted together related to these policies.

175.    As a law office, the SFDA had an ethical responsibility to determine whether prospective SFDA attorneys or other employees had any ethical conflicts with current cases, such as prior or current representation of an opposing party. (Cal. State Bar Rules of Prof. Conduct, Rule 1.7, Conflict of Interest – Current Clients) The SFDA was required to adopt policies to exclude from hiring attorneys who had conflicts of interest on certain matters where the SFDA represented a conflicted party or interest. Where conflicts of interest were identified on certain matters as to SFDA attorneys, the SFDA must create an "ethical wall" to exclude the conflicted attorney from the matter. The "ethical wall" requires a set of office rules and procedures to allow the conflicted attorney to work on other matters without interacting with the conflicted matter, including directing actions, making

determinations, and receiving information about the conflicted matter.

176. However, under BOUDIN's administration, the SFDA office did not properly assess whether prospective employees had any ethical conflicts with current cases. Defendants did not establish effective procedures or protocols to determine whether conflicts existed with prospective employees.

177. Defendant LATEEF GRAY had a direct conflict with the Sean Moore investigation, as GRAY was involved with the representation of Moore's family in the same incident. However, as a result of the SFDA's deficient policies regarding ethical screening, defendant BOUDIN hired LATEEF GRAY and assigned him as the Managing Attorney of the IIB Unit. In that position, GRAY managed a unit that was investigating the Sean Moore shooting, despite Gray's involvement with the Sean Moore civil case. The SFDA's hiring of GRAY created a direct conflict of interest with the CHA/Moore matter.

178. Further, Defendants the SFDA; BOUDIN; and GRAY did not establish proper procedures to ensure that all SFDA employees with potential conflicts of interest with certain cases were prevented from having contact or influence on the investigation or prosecution of the conflicted cases (an "ethical wall"). Defendants did not set up procedures to make sure that the "ethical walls" would be monitored and maintained while the conflict existed, to ensure that employees remained separated from conflicted cases. GRAY had an independent duty as an attorney, and as the Managing Attorney of the IIB unit, to ensure effective ethical walls were in place regarding his own conflicted cases, including the Cha matter.

179. As a result of the inadequate SFDA policies and procedures related to conflict screening and necessary ethical walls, defendant LATEEF GRAY was not screened off from the CHA matter. GRAY was involved with the CHA matter; was communicating with SFDA personnel regarding the CHA matter; and was in fact directing the conduct of SFDA employees DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK, related to the Cha matter.

180. The lack of proper procedures at the SFDA office to maintain an ethical wall around

conflicted attorneys enabled defendant GRAY, who was biased against CHA and other officers in OIS cases, to exert a biased influence and direction on the SFDA's handling of the Cha matter, causing the biased investigation and prosecution of CHA, in derogation of CHA's Fourth Amendment rights.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

### FIRST CLAIM FOR RELIEF – COUNT 4:  IMPROPER POLICIES AND PROCEDURES FOR ENSURING INVESTIGATORS CAN ACT AS INDEPENDENT AFFIANTS ON WARRANT DECLARATIONS (AGAINST DEFENDANTS BOUDIN, GRAY, LACAMBRA, AND DRUSINSKY)

181.    Plaintiff incorporates the preceding paragraphs of this Complaint into this Fourth Count as if the facts in each paragraph were set forth in full in this Claim for Relief.

182.    On or about January 2020, Defendant CHESA BOUDIN assumed the office of District Attorney for the City and County of San Francisco.  With respect to the policies of the SFDA office described herein, relating to the hiring or firing of SFDA personnel, Defendants CHESA BOUDIN exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office. The SFDA policies and procedures described in this Count were established by decisions by defendant BOUDIN.

183.    SFDA investigators are sometimes tasked with drafting declarations for search warrants and/or arrest warrants. In drafting and signing such declarations, the investigators became affiants, who must declare under penalty of perjury that the facts in the declarations were true and complete to their knowledge. With respect to the contents of affidavits, the have independent requirements to follow the law and to describe all facts relating to the assessment of probable cause, including exculpatory facts. They must attest to the truth of the affidavits and must have a belief in the contents, as well as in the completeness and legal compliance of the contents.

184.    The SFDA should have had policies and procedures in place to ensure the independence of its investigators as affiants on warrant applications. However, Defendants did not establish proper policies and procedures for ensuring the independence of investigators in drafting warrant affidavits.

Defendants did not establish any policies or procedures to prevent attorneys at the SFDA office from applying inappropriate coercion, threats, or other pressure on SFDA investigators who were tasked with drafting warrant declarations. Defendants did not establish effective means for investigators to report instances of inappropriate coercion regarding warrant declarations.

185.    As a result of the lack of proper policies at the SFDA to ensure the independence of investigators, IIB Investigator Megan Hayashi was subject to coercion from defendants DANA DRUSINSKY and STEPHANIE LACAMBRA, regarding the contents of a Declaration supporting a search warrant. Defendants demanded edits and alterations to the investigator's text, that were not in accord with the investigator's complete and truthful understanding of the events described in the Declaration, and did not provide full information for a determination of probable cause under the circumstances.

186.    As a result of the lack of proper policies at the SFDA to ensure the independence of investigators, Hayashi, through the edits by defendants DANA DRUSINSKY and STEPHANIE LACAMBRA, drafted a search warrant application for plaintiff CHA that failed to include necessary exculpatory information and was biased against CHA. This led to the improper investigation and prosecution of CHA, in that the text of this draft search was later substantially reproduced for an arrest warrant against CHA that also lacked required exculpatory information. The drafting of this search warrant set in motion a chain of events leading to the arrest of plaintiff CHA in derogation of his Fourth Amendment rights.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

### SECOND CLAIM FOR RELIEF – VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) – MALICIOUS PROSECUTION – IMPROPER INVESTIGATION OF CRIME
### (AGAINST ALL DEFENDANTS)

187.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the facts in each

paragraph were set forth in full in this Claim for Relief.

188.    On or about November 2, 2021, Defendants CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE charged Ofc. Cha with voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)) in the criminal courts in the Superior Court of California, City and County of San Francisco, case number 21010958. The prosecution of plaintiff Cha was conducted by defendant SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, based on the investigation, actions, and statements of the defendants, CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, as described herein.

189.    At all times relevant to this Complaint, while Defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK and DOES 1-100 were investigating plaintiff KENNETH CHA related to the Sean Moore matter, these defendants were acting in the course and scope of their employment with Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE.

190.    In investigating plaintiff KENNETH CHA related to pursuing criminal charges against plaintiff CHA, as aforesaid, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, while acting under color of law, conspired together to violate the due process rights of plaintiff KENNETH CHA under the Fourth and Fourteenth Amendments of the U.S. Constitution, and plaintiff's other civil rights. Defendants and each of them conducted a malicious investigation and prosecution of plaintiff, with the intent to charge him with a crime which he did not commit and which the defendants should have recognized he did not commit. Defendants and each of them were aware that plaintiff CHA had a complete defense to any charge of manslaughter under the doctrine of self-defense (Cal. Pen. Code §197 subs. (1)), in that the decedent Sean Moore had attacked plaintiff and his partner, and threatened great bodily injury to them. Therefore, under the totality of the circumstances, probable

cause never existed to pursue manslaughter charges against plaintiff. Despite the lack of probable cause, defendants and each of them pursued a biased investigation with the intent to eventually prosecute plaintiff for manslaughter, whether or not probable cause existed.

191.     Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, were actively involved in the improper investigation that caused plaintiff KENNETH CHA to be arrested and prosecuted on criminal charges.

192.     Defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK; and each of them, acted improperly, and with malicious intent, with respect to conduct as investigators of the CHA matter and/or any criminal allegations against plaintiff KENNETH CHA, without and/or prior to the establishment of any probable cause for plaintiff's arrest and prosecution.

193.     On July 18, 2023, the criminal proceeding ended in plaintiff KENNETH CHA's favor, when the Court granted ADA Williams' Motion to Dismiss regarding all charges against Officer Cha.

194.     No reasonable person in the circumstances of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, would have believed that there were grounds for causing plaintiff KENNETH CHA to be arrested and prosecuted. Defendants lacked probable cause for the prosecution of criminal charges against plaintiff, based on the totality of the circumstances including facts demonstrating plaintiff's right of self-defense.

195.     Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, acted maliciously in investigating the Sean Moore matter and/or any allegations against plaintiff KENNETH CHA.

Defendants and each of them acted primarily for purposes other than to bring plaintiff KENNETH CHA to justice. Particularly, in prosecuting the CHA case and other officer-involved shooting (OIS) cases, defendants and each of them acted with a political motive, intending to put pressure on the SF Police Department, to coerce them into changing SFPD policies related to officers' use of force. Further, in order to appease certain political constituencies, defendants and each of them sought to publicly present an aggressive stance toward OIS cases with regard to allegations of police misconduct.

196.   Further, defendant LATEEF GRAY, the managing attorney of the IIB unit at the SFDA's office, had a conflict of interest related to CHA's criminal prosecution. The decedent in the criminal action (Moore) was GRAY's former client, who had pursued a civil suit which GRAY would benefit from. Because of GRAY's prior alignment with the decedent in the CHA case, GRAY had a conflict of interest with the investigation and prosecution of plaintiff CHA. Under these circumstances, it was a violation of professional ethics for GRAY to assume a position as the managing attorney of the IIB unit investigating the Moore shooting. Defendant LATEEF GRAY's pursuit of the investigation and prosecution of plaintiff CHA was in part motivated by his personal bias for his former clients (the Moore family), and his interest in his former law office pursuing the civil case, rather than the interest of justice toward CHA.

197.   The wrongful acts and omissions of the defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, related to the improper investigation of charges against plaintiff KENNETH CHA as aforesaid, were undertaken maliciously, and include the conduct listed in Counts 1 and 2 of this Claim for Relief, set forth below.

198.   The improper and biased investigation and prosecution of plaintiff KENNETH CHA conducted by defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, violated plaintiff's civil rights under the Fourth Amendment to the United States Constitution, to be free from

unlawful seizures and from wrongful arrest and prosecution without probable cause.

199.    As a direct legal result of the biased investigation and prosecution by defendants, as described in Counts 1-3 below, as part of the malicious prosecution of plaintiff KENNETH CHA undertaken in bad faith by defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, resulting in the criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

A.  Loss of personal freedom;

B.  Payments necessary for bond and expenses of defense, including attorneys' fees;

C.  Pain and suffering, both physical and emotional; and

D.  Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

200.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

201.    With respect to the conduct described in this Second Claim for Relief, related to the improper investigation and prosecution of plaintiff CHA, Plaintiff sues defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK, and each of them, in their official capacities.  In doing the acts and/or omissions alleged herein, these defendants, and each of them, were acting as agents of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office. Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County of San Francisco and the San Francisco District Attorney's office.

202.    Plaintiff sues defendant CHESA BOUDIN in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's

constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

203.    Plaintiff sues defendant LATEEF GRAY in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

204.    Plaintiff sues defendant DANA DRUSINSKY in her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

205.    Plaintiff sues defendant STEPHANIE LACAMBRA her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

206.    Plaintiff sues defendant ANDREW KOLTUNIAK in his individual capacity, for his personal involvement in the conduct alleged herein; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

207.    By conducting the improper and biased investigation and prosecution of plaintiff KENNETH CHA conducted by the SFDA office, causing the malicious prosecution of plaintiff KENNETH CHA, as aforesaid, defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and DOES 1-100, acted despicably, with conscious disregard of plaintiff's rights, and further subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights. Defendants' conduct as aforesaid constituted malice and oppression under California Civil Code section 3294(c), and justify the imposition of exemplary or punitive

1   damages.

2   ## SECOND CLAIM FOR RELIEF

3   ## COUNT 1: IMPROPER INVESTIGATION BY DRAFTING BIASED SEARCH WARRANT

4   ### (AGAINST DEFENDANTS BOUDIN, GRAY, LACAMBRA, AND DRUSINKSY)

5   208.   Plaintiff incorporates the preceding paragraphs of this Complaint into this First Count of

6   this Second Claim for Relief as if the facts in each paragraph were set forth in full in this Claim for

7   Relief.

8   209.   Plaintiff is informed and believes that, with respect to the investigation of the Cha

9   matter, including the conduct related to the search warrant discussed in this Count, defendant

10   BOUDIN, as the District Attorney, and defendant GRAY, as Managing Attorney of the IIB, directed,

11   supervised, approved of, and ratified the conduct of defendants LACAMBRA and DRUSINSKY.

12   210.   When the SFDA office or other investigating agency seeks the issuance of a search

13   warrant to authorize law enforcement to search and seize property or evidence, the warrant application

14   is required to be truthful and complete. The declarations supporting the application for the search

15   warrant must include relevant facts, including all relevant exculpatory facts (evidence tending to defeat

16   criminal charges against the suspect). The requirement for complete and truthful representations in

17   search warrant applications is designed in part to protect the suspect's Fourth Amendment rights

18   against unlawful searches and seizures, as well as the suspect's privacy rights.

19   211.   In the fall of 2020, as part of the biased investigation into the Cha matter, ADA DANA

20   DRUSINSKY requested that IIB Investigator Megan Hayashi draft a search warrant and warrant

21   affidavit for the personal and work cellular telephones of the involved Officers, including Ofc.

22   KENNETH CHA. On reviewing the Investigator's draft warrant, ADAs DRUSINSKY and

23   LACAMBRA asked for edits to eliminate exculpatory evidence from the warrant affidavits. The edited

24   version deleted important facts of the event at issue that would be exculpatory evidence required by

25   law to be included in the affidavit. This evidence included the suspect's hostile behavior, including

26   attacks on the involved Officers prior to the shooting. In later draft revisions sent to Investigator

27   Hayashi from DRUSINSKY and LACAMBRA, the ADAs further altered the context of the incident,

28   made statements that did not have factual support, and removed exculpatory information about how the

1  incident occurred.

2       212.    The changes requested by DRUSINSKY and LACAMBRA to the search warrant drafts

3  were inappropriate, and contrary to the legal requirements to include all relevant exculpatory

4  information. In requesting the edits, DRUSINSKY and LACAMBRA intended to make a biased

5  presentation of facts to support the issuance of a search warrant. DRUSINSKY and LACAMBRA

6  were aware that, if the full scope of exculpatory facts was presented to the Judge, the Judge was much

7  less likely to grant any search warrant. By failing to include the necessary exculpatory facts,

8  DRUSINSKY and LACAMBRA intended to make a biased presentation that would tend to deprive

9  plaintiff CHA of his Fourth Amendment rights against unlawful searches and seizures.

10       213.    The altered draft affidavit (reflecting edits by defendants DANA DRUSINSKY and

11  STEPHANIE LACAMBRA) became the basis for the later arrest warrant for plaintiff CHA, which

12  also omitted exculpatory evidence. The drafted search warrant affidavit that LACAMBRA AND

13  DRUSINSKY heavily edited and pressured Investigator Hayashi to sign, is almost word for word

14  identical to the affidavit supporting the arrest warrant for plaintiff CHA, later attested to by

15  Investigator KOLTUNIAK and presented to Judge Kahn on October 29, 2021. As described in the

16  Third Claim for Relief, below, the arrest warrant excluded significant exculpatory information and

17  included false and misleading statements. Due to the incorrect, incomplete, and biased information in

18  the arrest warrant, Judge Kahn granted the arrest warrant, and plaintiff CHA was arrested due to this

19  warrant.

20       214.    The drafting of the improper search warrant, as part of defendants' biased investigation

21  into the Cha matter, was a significant cause of the improper language in the arrest warrant against

22  CHA issued on October 29, 2021, which caused plaintiff CHA to suffer a deprivation of his Fourth

23  Amendment rights.

24       WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND

25  COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA

26  BOUDIN; LATEEF GRAY; DANA DRUSINSKY and STEPHANIE LACAMBRA and DOES 1-100,

27  and each of them, as hereinafter set forth.

28                      **S**ECOND **C**LAIM FOR **R**ELIEF

**COUNT 2: IMPROPER INVESTIGATION – BIASED PRESENTATION AT INVESTIGATIVE GRAND JURY HEARING**

**(AGAINST DEFENDANTS BOUDIN, GRAY, LACAMBRA, AND DRUSINKSY)**

215.    Plaintiff incorporates the preceding paragraphs of this Complaint into this Second Count of this Second Claim for Relief as if the facts in each paragraph were set forth in full in this Claim for Relief.

216.    Plaintiff is informed and believes that, with respect to the investigation of the Cha matter, including the conduct related to the Investigative Grand Jury discussed in this Count, defendant BOUDIN, as the District Attorney, and defendant GRAY, as Managing Attorney of the IIB, directed, supervised, approved of, and ratified the conduct of defendants LACAMBRA and DRUSINSKY.

217.    In July 2021, Defendants DANA DRUSINSKY and STEPHANIE LACAMBRA caused an investigative Grand Jury to be empaneled, in order to receive evidence and investigate the shooting of Sean Moore by plaintiff CHA. The transcripts of the proceedings demonstrate that the goal was to investigate the case rather than to bring an indictment. The ADAs described the purpose of the Grand Jury as follow: "[f]or this case, we have chosen to use the grand jury to conduct an investigation."

218.    Defendant ADAs LACAMBRA and DRUSINSKY, as well as ADA Bringardner, made a biased presentation of evidence to the Grand Jury. The presentation was limited in scope, failing to develop all the exculpatory evidence and instead focusing on developing evidence against Cha. Among other things, Defendants' presentation failed to include:

•       Any medical testimony linking Moore's death to the shooting over three years prior;

•       Significant instances of Sean Moore's violent past behavior, including many times before the shooting when he was aggressive with the public and other police officers; and,

•       The extensive history between Moore and the neighbor who had previously gotten a restraining order against Moore and who had called the police to the scene.

219.    The Investigative Grand Jury proceedings did not yield new evidence of probable cause to arrest CHA based on the totality of the circumstances. The Grand Jury did not indict Cha, or make findings of probable cause for the arrest of Ofc. Cha.

220.    The Investigative Grand Jury proceedings were a significant factor in the biased investigation of plaintiff CHA which led to the improper arrest warrant against CHA, causing a deprivation of CHA's Fourth Amendment rights.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY and STEPHANIE LACAMBRA and DOES 1-100, and each of them, as hereinafter set forth.

### SECOND CLAIM FOR RELIEF

### COUNT 3: IMPROPER AND BIASED REMOVAL OF SFDA PERSONNEL TO MANIPULATE THE DETERMINATION OF PROBABLE CAUSE

### (AGAINST DEFENDANTS BOUDIN AND GRAY)

221.    Plaintiff incorporates the preceding paragraphs of this Complaint into this Third Count of this Second Claim for Relief as if the facts in each paragraph were set forth in full in this Claim for Relief.

222.    On or about January 2020, Defendant CHESA BOUDIN assumed the office of District Attorney for the City and County of San Francisco.  With respect to the policies of the SFDA office described herein, relating to the hiring or firing of SFDA personnel and the selection of personnel for assignments, Defendants CHESA BOUDIN exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office.

223.    On or about January 21, 2020, DA Boudin offered LATEEF GRAY the position of Managing Attorney for the Independent Investigation Bureau (IIB). Plaintiff is informed and believes that, with respect to the policies of the SFDA office described herein, relating to the hiring or firing of SFDA personnel and the selection of personnel for assignments to the IIB unit, Defendants LATEEF GRAY exercised substantial independent authority and judgment in decision-making, such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office.

224.    The conduct of the SFDA described in this Count, relating to the hiring or firing of

SFDA personnel and the selection of personnel for assignments related to the CHA investigation, were established by decisions by defendants BOUDIN and GRAY, who acted together related to these policies.

225.    As described elsewhere in this First Amended Complaint, during the tenure of defendant BOUDIN, Defendants did not ensure that the SFDA hired employees who would objectively apply the law without bias or prejudice toward any categories of persons. Defendants failed to institute any procedures at SFDA to determine the potential bias or prejudice of prospective employees.

226.    During BOUDIN's tenure as DA, defendants BOUDIN and GRAY sought to remove SFDA personnel whose objective assessment led them to believe there was no probable cause to investigate or prosecute CHA. In GRAY's position as Managing Attorney for the IIB, GRAY was able to manipulate the IIB personnel and remove any personnel that came to a conclusion that there was no probable cause. Whenever an ADA or investigator shared concerns over a lack of probable cause to proceed with the investigation, BOUDIN, and GRAY would pressure them to get in line, allow ADAS to coerce these employees, or fire/reassign them, such as occurred with the Managing Attorney of the IIB Unit, Andrew Lah; ADA Aaron Zisser; Investigator York Tsuruta; Investigator Megan Hayashi; and Supervising Lt. Investigator Jeffrey Pailet.

227.    When objective and competent SFDA personnel were fired or reassigned, BOUDIN, and later GRAY, hired specifically selected personnel who were known to hold a bias against police officers. These personnel included defendants LATEEF GRAY, STEPHANIE LACAMBRA, DANA DRUSINSKY, and ANDREW KOLTUNIAK. These personnel would proceed with the investigation into CHA, even though probable cause was lacking.

228.    Thus, Defendant GRAY was able to remove personnel from the Cha matter, replacing them with biased personnel until he found staff that would agree to their conspiracy to investigate and charge CHA, despite the lack of probable cause under the circumstances.

229.    As a result of defendants BOUDIN and GRAY staffing the SFDA office with biased personnel who were willing to prosecute CHA without probable cause under the circumstances, the

SFDA conducted a biased investigation and prosecution of plaintiff CHA without probable cause, causing an injury to Plaintiff's rights.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

### THIRD CLAIM FOR RELIEF – VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) – MALICIOUS PROSECUTION – IMPROPER CONDUCT IN SEEKING ARREST WARRANT

### (AGAINST DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; STEPHANIE LACAMBRA; DANA DRUSINSKY; AND ANDREW KOLTUNIAK)

230.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the facts in each paragraph were set forth in full in this Claim for Relief.

231.    At all times relevant to this Complaint, while Defendants CHESA BOUDIN; LATEEF GRAY; and DOES 1-100 were creating and promulgating SFDA policies affecting the investigation of officer-involved shooting (OIS) cases, including the case of plaintiff KENNETH CHA related to the Sean Moore matter, these defendants were acting in the course and scope of their employment with Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE.

232.    In seeking to prosecute plaintiff KENNETH CHA and in pursuing criminal charges against plaintiff CHA, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; STEPHANIE LACAMBRA; DANA DRUSINSKY; and DOES 1-100, and each of them, while acting under color of law, conspired together to violate the due process rights of plaintiff KENNETH CHA under the Fourth and Fourteenth Amendments of the U.S. Constitution, and plaintiff's other civil rights. Defendants and each of them used improper and deceptive means to obtain a warrant for CHA's arrest, with the intent to charge him with a crime which he did not commit and which the defendants should have recognized he did not commit. Defendants and each of them were aware that plaintiff CHA had a complete defense to any charge of manslaughter under the doctrine of self-defense (Cal. Pen. Code §197 subs. (1)), in that during the subject incident, the decedent Sean Moore had attacked plaintiff and his partner,

and threatened great bodily injury to them. Therefore, under the totality of the circumstances, probable cause never existed to pursue manslaughter charges against plaintiff. Despite the lack of probable cause, defendants and each of them pursued an arrest warrant against CHA in order to prosecute plaintiff for manslaughter, whether or not probable cause existed.

233.    On July 18, 2023, the criminal proceeding ended in plaintiff KENNETH CHA's favor, when the Court granted ADA Williams' Motion to Dismiss regarding all charges against Officer Cha.

234.    No reasonable person in the circumstances of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; STEPHANIE LACAMBRA; DANA DRUSINSKY; ANDREW KOLTUNIAK; and DOES 1-100, would have believed that there were grounds for causing plaintiff KENNETH CHA to be arrested and prosecuted. Defendants lacked probable cause for the prosecution of criminal charges against plaintiff, based on the totality of the circumstances including facts demonstrating plaintiff's right of self-defense.

235.    Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100, acted maliciously in seeking an arrest warrant for plaintiff KENNETH CHA. Defendants and each of them acted primarily for purposes other than to bring plaintiff KENNETH CHA to justice. Particularly, in seeking a warrant for CHA's arrest, defendants and each of them acted with a political motive, intending to put pressure on the SF Police Department, to coerce them into changing SFPD policies related to officers' use of force.  Further, in order to appease certain political constituencies, defendants and each of them sought to publicly present an aggressive stance toward OIS cases with regard to allegations of police misconduct.

236.    The wrongful acts and omissions of the defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; STEPHANIE LACAMBRA; DANA DRUSINSKY; ANDREW KOLTUNIAK; and DOES 1-100, related to the improper issuance of an arrest warrant making criminal charges against plaintiff KENNETH CHA without probable cause, as aforesaid, were undertaken maliciously.

237.    Plaintiff is informed and believes that, with respect to the investigation of the Cha

matter, including the conduct related to the arrest warrant discussed in this Claim for Relief, defendant BOUDIN, as the District Attorney, and defendant GRAY, as Managing Attorney of the IIB, directed, supervised, approved of, and ratified the conduct of defendants LACAMBRA, DRUSINSKY, and KOLTUNIAK.

238. Plaintiff is informed and believes that, with respect to the investigation of the Cha matter, including the conduct related to the arrest warrant discussed in this Claim for Relief, defendants LACAMBRA and DRUSINSKY directed, supervised, approved of, and ratified the conduct of defendant KOLTUNIAK, and directly assisted KOLTUNIAK with drafting the arrest warrant.

239. As the Investigative Grand Jury in July 2021 failed to develop additional evidence to indict Ofc. Cha, Defendants BOUDIN, GRAY, LACAMBRA and DRUSINSKY decided to submit an application for Cha's arrest to the Court. Defendants' intention was to proceed with the submission of an arrest warrant, despite the lack of probable cause, through a biased presentation to a judge in an attempt to obtain a warrant. Since a fair and objective view of the evidence would have shown no probable cause due to exculpatory evidence that CHA was reasonably defending himself, defendants sought to create a deceptive and fraudulent arrest warrant in order to deceive the judicial officer into believing there was probable cause for arresting CHA.

240. Sometime before October 29, 2021, Defendant, IIB Investigator ANDREW KOLTUNIAK, drafted and signed an arrest warrant for Ofc. CHA related to the Sean Moore matter. The arrest warrant lacked probable cause under the circumstances because of unopposed evidence that, in using force against decedent Sean Moore, CHA was responding to an attack by Moore and faced the threat of great bodily injury from him, establishing a defense under Cal. Penal Code §197 subs. (1).

241. Plaintiff is informed and believes and thereon alleges that the text of the arrest warrant was largely drawn from a prior draft of a search warrant for CHA and his partner's cell phones. The drafted search warrant affidavit, that LACAMBRA AND DRUSINSKY had heavily edited and pressured Investigator Hayashi to sign, is almost word for word identical to the affidavit supporting the arrest warrant for plaintiff CHA, later attested to by Investigator KOLTUNIAK and presented to Judge Kahn on October 29, 2021.

242.    The arrest warrant Declaration drafted and presented by KOLTUNIAK was incomplete and biased in several respects. Warrant applications are required to include all relevant exculpatory information. However, the warrant application failed to adequately describe the violent encounters preceding Moore's shooting, relevant to the issue of Cha's right to self-defense. Particularly, the arrest warrant failed to accurately describe the violent encounters preceding the shooting of Moore, directly relevant to the issue of Ofc. Cha's right to self-defense under Penal Code 197 section subs. (1). The warrant application failed to state that during the altercation Moore had punched Cha's partner in the nose and broken it, and had kicked Cha.

243.    The warrant application also failed to note that, because Moore died over three years after he was shot by Officer Cha, this created a rebuttable defense under Penal Code section 194. The warrant also failed list other contributory causes of death, including "hypertensive cardiovascular disease; obesity; slight coronary atherosclerosis; diabetes mellitus; schizophrenia; and chronic substance abuse."

244.    The warrant application deceptively cited the opinion of the the Superior Court in *People v. Moore,* No. A151276, 2018 Cal. App. Unpub. LEXIS 2966, at *20-21 (May 1, 2018), which was the assault case against Moore for the same event. The warrant application in the Cah emphasized the prior Court's finding that the officers had had been unlawfully trespassing on Moore's curtilage prior to the incident. However, the Court also noted that this issue was irrelevant to Moore's criminal liability for his alleged acts of physical violence, and that the officers had probable cause to arrest Moore for the aggravated assault.

245.    KOLTUNIAK's affidavit makes a number of statements containing multiple falsehoods and deceptive statements. Particularly, the affidavit repeatedly mischaracterized the parties' conduct in the altercation by downplaying Moore's aggressive conduct (which included cursing, screaming, kicking, and advancing down the stairs), and instead characterizing Moore as reacting to aggressive moves by CHA and Patino. These characterizations are contradicted by the body cam footage. Additionally, the warrant application used selective and deceptive screenshots from the body cam footage. Overall, the warrant presentation was designed to trick the Judge into issuing the warrant, despite the significant exculpatory evidence of self-defense.

246.    On October 29, 2021, defendant KOLTUNIAK presented the defective arrest warrant application to Judge Harold Kahn. Although the warrant application packet tried to remedy or insulate itself against some of these deficiencies by including exhibits, like the officers' body cam footage, their interviews, and the coroner's report, the narrative attested to by Koltuniak presented such a one-sided recitation of the events in question and evidence that the reviewing judicial officer would not understand the full totality of the circumstances with this review. Further, it appears that the judicial officer received the application and signed in approval within the same day, October 29, 2021. It is unlikely that the Judge would have sufficient time to full watch, listen, and read all the exhibits submitted along with the warrant application. Therefore, the warrant application was biased, incomplete, and defective, and did not provide the proper basis for granting an arrest warrant against plaintiff CHA.

247.    On October 29, 2021, defendant KOLTUNIAK presented the defective arrest warrant application to Judge Harold Kahn. Based on the biased and incomplete recitation of facts in the arrest warrant application, Judge Kahn issued a warrant for the arrest of plaintiff Cha.

248.    On or about November 2, 2021, as a result of the defective arrest warrant drafted and presented by defendant KOLTUNIAK, Ofc. Cha was arrested on charges of voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)). The SFDA's Office then instituted criminal proceedings against Ofc. Cha.

249.    Defendants STEPHANIE LACAMBRA; DANA DRUSINSKY; ANDREW KOLTUNIAK; and DOES 1-100; and each of them, caused the improper and biased investigation and prosecution of plaintiff KENNETH CHA conducted by the SFDA office, and violated plaintiff's civil rights under the Fourth Amendment to the United States Constitution, to be free from unlawful seizures and from wrongful arrest and prosecution without probable cause.

250.    As a direct legal result of the improper administrative policies and procedures of the SFDA, as described in Counts 1-4 below, that caused, facilitated, and permitted the improper investigation and malicious prosecution of plaintiff KENNETH CHA undertaken in bad faith by defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE

LACAMBRA; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, resulting in the criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

      A.    Loss of personal freedom;

      B.    Payments necessary for bond and expenses of defense, including attorneys' fees;

      C.    Pain and suffering, both physical and emotional; and

      D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

251.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

252.    With respect to the conduct described in this Third Claim for Relief, related to the improper arrest and prosecution of plaintiff CHA, Plaintiff sues defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK, and each of them, in their official capacities.  In doing the acts and/or omissions alleged herein, these defendants, and each of them, were acting as agents of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office. Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County of San Francisco and the San Francisco District Attorney's office.

253.    Plaintiff sues defendant CHESA BOUDIN in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

254.    Plaintiff sues defendant LATEEF GRAY in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights,

all of which caused a deprivation of plaintiff's rights under color of law.

255.    Plaintiff sues defendant DANA DRUSINSKY in her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

256.    Plaintiff sues defendant STEPHANIE LACAMBRA her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

257.    Plaintiff sues defendant ANDREW KOLTUNIAK in her individual capacity, for her personal involvement in the conduct alleged herein; for her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law

258.    By creating and implementing improper administrative policies and procedures that deliberately permitted, facilitated, and caused the improper and biased investigation and prosecution of plaintiff KENNETH CHA conducted by the SFDA office, causing the malicious prosecution of plaintiff KENNETH CHA, as aforesaid, defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and DOES 1-100, acted despicably, with conscious disregard of plaintiff's rights, and further subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights. Defendants' conduct as aforesaid constituted malice and oppression under California Civil Code section 3294(c), and justify the imposition of exemplary or punitive damages.

**FOURTH CLAIM FOR RELIEF - VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) - MUNICIPAL POLICY**

### RESULTING IN DEPRIVATION OF RIGHTS
**(AGAINST DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; AND DOES 1-100)**

259.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint into this Second Claim for Relief, as if set forth herein in full.

260.    Plaintiff KENNETH CHA was subjected to a violation of his right to be free of unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution, as a result of the customs, practices, and policies of defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's OFFICE.

261.    In January 2020, defendant CHESA BOUDIN assumed office as San Francisco District Attorney, and took control of the San Francisco DA's Office. During his incumbency, Defendant BOUDIN promulgated a policy of causing the improper investigations and prosecutions of allegations of police misconduct, without probable cause and for reasons other than justice for each case.

262.    On or about January 2021, defendant LATEEF GRAY assumed the position of Managing Attorney for the Independent Investigation Bureau (IIB). Defendant GRAY, as supervising Managing Attorney of the IIB Unit, would oversee all IIB investigations, including that of the Sean Moore OIS case involving plaintiff CHA. During his incumbency, Defendant GRAY promulgated a policy of improper investigations and prosecutions of allegations of police misconduct, without probable cause and for reasons other than justice for each case.

263.    With respect to the municipal policies described herein, Defendants CHESA BOUDIN and LATEEF GRAY exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the San Francisco District Attorney's office. The policies described in this Second Cause of Action were established by decisions by defendants BOUDIN and GRAY.

264.    At all times relevant herein, Defendants CHESA BOUDIN; LATEEF GRAY; CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, and each of them, enacted policies, procedures, customs, and practices that were implemented at the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, related to the improper

prosecution of alleged police officer misconduct. Under the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE's policy, defendants sought the frequent and improper prosecution of allegations of police officer misconduct, irrespective of the actual case facts and the existence or nonexistence of probable cause. Defendants' policy was intended to put pressure on the SF Police Department and the City, to coerce them into changing SFPD policies related to police officers' use of force. The policy was also intended to improve the standing of defendants BOUDIN and the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE with certain political interests and communities. Pursuant to defendants' improper policy, cases against police officers were pursued in bad faith for the political reasons noted above, even if such cases had no merit, were unlikely to win, and would infringe on the affected officer's rights. In fact, all San Francisco police officer use of force cases brought by the Boudin administration have since been either dismissed, or the officer was acquitted.

265.    The aforesaid policies, procedures, customs, and practices promulgated by Defendants CHESA BOUDIN and LATEEF GRAY at the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE were highly likely to result in wrongful arrests, malicious prosecutions, and/or other deprivations of constitutional rights of the affected police officers, including plaintiff KENNETH CHA. In enacting, promulgating, enforcing, and/or condoning said policies and practices, Defendants and each of them acted with deliberate indifference to the rights of the affected police officers, including plaintiff KENNETH CHA, and deliberately failed to enact policies that were necessary to prevent such constitutional violations.

266.    The wrongful acts and omissions of the Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY, and each of them, related to the creation and implementation of improper administrative policies and procedures for the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE ("SFDA") affecting the investigation of OIS cases including the CHA matter, were undertaken maliciously. These wrongful acts and omissions, described more fully in the First Cause of Action - Administrative Policies Causing Deprivation of Rights, are summarized below:

A.    Defendants did not establish proper administrative policies or procedures for the SFDA's office to decide whether to re-open officer-involved shooting (OIS) cases that had been

declined, or recommended for declination, by the SFDA's office. Defendants sought to re-open several OIS cases, including cases involving plaintiff CHA, Ofc. Terrence Stangel, and Ofc. Christopher Samayoa, that had been declined or recommended for declination.  When cases have been deemed to be declined because of lack of probable cause, the SFDA should not proceed with a prosecution unless they have received some new evidence that would justify changing a no probable cause determination to a probable cause determination. However, Defendants did not establish proper and effective procedures for the SFDA office to assess whether there was any new evidence that would support a change in status from the prior declination, or any procedures for assessing the new evidence against the previous determination of no probable cause. As a result, although the CHA matter had been declined by the SFDA's assessment under prior DA George Gascon and also by the prior investigator Andrew Lah, defendants re-opened the CHA matter for further investigation and prosecution, despite no new evidence justifying any investigation or prosecution.

B.      In making staffing decisions for the SFDA, Defendants did not ensure that the SFDA hired employees who would objectively apply the law without bias or prejudice toward any categories of persons. Defendants failed to institute any procedures at SFDA to determine the potential bias or prejudice of prospective employees. As a result, the SFDA hired personnel, such as LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK, who were biased and prejudiced against police officers, and had a tendency and/or willingness to prosecute officers whether or not probable cause existed. Further, defendants BOUDIN and LATEEF GRAY fired or re-assigned certain personnel at the SFDA office who were likely to resist the prosecution of OIS cases without probable cause, such as Managing Attorney for the IIB Unit, Andrew Lah; ADA Aaron Zisser; Investigator York Tsuruta; Investigator Megan Hayashi; and Supervising Investigator Jeffrey Pailet. (Plaintiffs are informed and believe that Defendants DANA DRUSINSKY and STEPHANIE LACAMBRA had some influence over personnel decisions at SFDA relating to fired or re-assigned the above-mentioned personnel.) Particularly with the CHA matter, whenever an attorney or investigator found that there was no probable cause to prosecute CHA, BOUDIN and/or GRAY would fire that individual or take them off the CHA case.

C.      Defendants did not establish effective protocols and procedures to determine whether

prospective SFDA employees had any ethical conflicts with current cases, such as prior or current representation of an opposing party. (Cal. State Bar Rules of Prof. Conduct, Rule 1.7, Conflict of Interest – Current Clients) Due to the lack of proper conflicts checks, defendant BOUDIN hired LATEEF GRAY and assigned him as the Managing Attorney of the IIB Unit. GRAY then managed a unit that was investigating the Sean Moore shooting, despite GRAY's involvement with the concurrent Sean Moore civil case regarding the same incident. The hiring of GRAY created a direct conflict of interest with the CHA/Moore matter.

D.     Defendants did not establish proper procedures to ensure that all SFDA employees with potential conflicts of interest with certain cases were prevented from having contact with or influence on the investigation or prosecution of the conflicted cases (an "ethical wall"). Defendants did not set up procedures to make sure that the "ethical walls" would be monitored and maintained while the conflict existed, to ensure that employees remained separated from conflicted cases. As a result, defendant LATEEF GRAY was not screened off from the CHA matter. GRAY was involved with the CHA matter, was communicating with SFDA personnel regarding the CHA matter, and in fact directed the conduct of SFDA personnel regarding the CHA matter. The lack of proper procedures at the SFDA office to maintain an ethical wall around conflicted attorneys enabled GRAY, who was biased against CHA and other officers in OIS cases, to exert a biased influence on the investigation and prosecution of CHA.

E.     Defendants did not establish proper policies and procedures for ensuring the independence of SFDA investigators who were tasked with drafting declarations for search warrants and/or arrest warrants. In drafting and signing such declarations, the investigators became affiants who declared under penalty of perjury that the facts in the declarations were true and complete to their knowledge. They must attest to the truth of the affidavits and must have a belief in the contents. However, defendants did not establish any policies or procedures to prevent attorneys at the SFDA office from applying inappropriate coercion, threats, or other pressure on SFDA investigators who were tasked with drafting warrant declarations. As a result of the lack of proper policies preventing such improper coercion, IIB Investigator Megan Hayashi was subject to coercion from defendants DANA DRUSINSKY and STEPHANIE LACAMBRA, regarding the contents of a Declaration

supporting a search warrant. Defendants demanded edits and alterations to the investigator's text, that were not in accord with the investigator's complete and truthful understanding of the events described in the Declaration, and did not provide all required information for a determination of probable cause under the circumstances. The modified text of the search warrant application, created through the improper influence of defendants DANA DRUSINSKY and STEPHANIE LACAMBRA, was later repurposed to become the text of the arrest warrant application submitted on October 29, 2021, which led to plaintiff CHA's arrest.

267.   The customs, practices, and policies of defendants CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, described in this Second Cause of Action amounted to deliberate indifference to the rights of police officers involved in OIS cases, such as plaintiff KENNETH CHA, who was prosecuted for manslaughter even though the evidence showed plaintiff CHA had a complete defense to any charge of manslaughter under the doctrine of self-defense. (Cal. Pen. Code §197 subs. (1))

268.   As a direct legal result of the municipal policies and practices promulgated by Defendants CHESA BOUDIN; LATEEF GRAY; CITY AND COUNTY OF SAN FRANCISCO and SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, as aforesaid, the SFDA's office conducted a bad faith investigation of plaintiff KENNETH CHA, which caused the malicious prosecution of plaintiff. Defendants and each of them lacked probable cause or sufficient evidence to pursue the criminal prosecution of plaintiff KENNETH CHA. In investigating and prosecuting plaintiff, defendants and each of them acted primarily for a purpose other than to bring plaintiff KENNETH CHA to justice. The facts regarding defendants' improper investigation and malicious prosecution of plaintiff KENNETH CHA are described more fully in the First Claim for Relief of this Complaint.

269.   At all times relevant to this Complaint, the conduct of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY;  ANDREW KOLTUNIAK; and DOES 1-100, and each of them, in causing the improper investigation of plaintiff KENNETH CHA, and the malicious prosecution of plaintiff, was under the color of law. Defendants

CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, acted in the course and scope of their employment with Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE.

270.    As a result of the customs, practices, and policies of Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, which constituted municipal policy, as aforesaid, Plaintiff KENNETH CHA was subjected to a violation of his right to be free from improper investigation and malicious prosecution, under the Fourth and Fourteenth Amendments to the United States Constitution.

271.    As a result of the customs, practices, and policies of Defendants CITY AND COUNTY OF SAN FRANCISCO and/or SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, and DOES 1-100, and each of them, resulting in the improper investigation, arrest, and criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

A.    Loss of personal freedom;

B.    Payments necessary for bond and expenses of defense, including attorneys' fees;

C.    Pain and suffering, both physical and emotional; and

D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

272.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

273.    With respect to the conduct described in this Second Cause of Action, related to the improper investigation and prosecution of plaintiff CHA, Plaintiff sues defendants CHESA BOUDIN and LATEEF GRAY; and each of them, in their official capacities.  In doing the acts and/or omissions alleged herein, these defendants, and each of them, were acting as agents of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office. Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County

of San Francisco and the San Francisco District Attorney's office.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; and DOES 1-100, and each of them, as hereinafter set forth.

FIFTH CLAIM FOR RELIEF - VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) – SUPERVISOR LIABILITY

### FIFTH CLAIM FOR RELIEF

**Conspiracy to Violate Civil Rights (42 U.S.C. §§ 1983, 1988) – Supervisory Liability (*Villarreal v. Cty. of Monterey* (N.D.Cal. 2017) 254 F. Supp. 3d 1168, 1181-1182.)**

**By Plaintiff KENNETH CHA Against Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and DOES 1-100,**

274.    Plaintiff incorporates all allegations previously set forth in this First Amended Complaint as if set forth in full in this Fifth Claim for Relief.

**Allegations Common to All Counts**

275.    This cause of action arises under 42 U.S.C. §§ 1983 and 1988, wherein Plaintiff KENNETH CHA seeks to redress a deprivation under color of law of a right, privilege or immunity secured to them by the Fourth Amendment to the United States Constitution.

276.    In investigating plaintiff KENNETH CHA and in pursuing criminal charges against plaintiff CHA, as aforesaid, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and DOES 1-100, and each of them, while acting under color of law, conspired together to violate the due process rights of plaintiff KENNETH CHA under the Fourth and Fourteenth Amendments of the U.S. Constitution, and plaintiff's other civil rights. Defendants and each of them conducted a malicious investigation and prosecution of plaintiff, with the

intent to charge him with a crime which he did not commit and which the defendants should have recognized he did not commit. Defendants and each of them were aware that plaintiff CHA had a complete defense to any charge of manslaughter under the doctrine of self-defense (Cal. Pen. Code §197 subs. (1)), in that the decedent Sean Moore had attacked plaintiff and his partner, and threatened great bodily injury to them. Therefore, under the totality of the circumstances, probable cause never existed to pursue manslaughter charges against plaintiff. Despite the lack of probable cause, defendants and each of them pursued a biased investigation with the intent to eventually prosecute plaintiff for manslaughter, whether or not probable cause existed.

276.    As alleged in this Fifth Cause of Action in Counts 1 to 3, and elsewhere in this First Amended Complaint, defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; and STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK, engaged in a series of acts and omissions that tended to deprive plaintiff of his Fourth Amendment rights to be free from unlawful seizures, false arrest, and malicious prosecution.

277.    With respect to the conduct described in this Fifth Cause of Action, defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; and STEPHANIE LACAMBRA, at various points acted in supervisory roles, where these defendants supervised and directed the work of their subordinates at the SFDA. As to the conduct of subordinates described herein, defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; and STEPHANIE LACAMBRA were at various points personally involved in the constitutional deprivations by their subordinates. Alternatively, there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations by the subordinates. Further, as described herein, the conduct or CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; and STEPHANIE LACAMBRA, in supervising their subordinates, included culpable action or inaction in the training, supervision, or control of his subordinates. Further, as described herein, CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; and STEPHANIE LACAMBRA, acquiesced in the constitutional deprivation to plaintiff CHA's Fourth Amendment rights, and further, these defendants showed a reckless or callous indifference to the rights of plaintiff CHA.

278.    The conduct of defendants CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA, in supervising their subordinates while their subordinates conducted an improper and biased investigation and prosecution of plaintiff KENNETH CHA, violated plaintiff's civil rights under the Fourth Amendment to the United States Constitution, to be free from unlawful seizures and from wrongful arrest and prosecution without probable cause.

279.    As a direct legal result of the improper supervision by CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA, of their respective subordinates, causing the biased investigation and prosecution by defendants, as described in Counts 1-3 below, resulting in the criminal prosecution of plaintiff KENNETH CHA, plaintiff has been damaged by reason thereof in at least the following respects:

A.    Loss of personal freedom;

B.    Payments necessary for bond and expenses of defense, including attorneys' fees;

C.    Pain and suffering, both physical and emotional; and

D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

280.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

### FIRST COUNT – SUPERVISORY CONDUCT OF **CHESA BOUDIN**

281.    Plaintiff incorporates all allegations previously set forth in this First Amended Complaint as if set forth in full in this First Count of the Fifth Claim for Relief.

282.    On or about January 2020, Defendant CHESA BOUDIN assumed the office of District Attorney for the City and County of San Francisco.  At all times relevant herein, BOUDIN acted as the District Attorney for the City and County of San Francisco, and managed the San Francisco District Attorney's office ("SFDA"). BOUDIN was superior to, and had the authority to direct, all other employees of the SFDA, including defendants LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA; and ANDREW KOLTUNIAK.

283.    Defendant BOUDIN was motivated to pursue criminal charges against plaintiff CHA, whether or not such charges were supported by probable cause. In prosecuting the CHA case and other officer-involved shooting (OIS) cases, and in directing and encouraging his subordinates to do so, BOUDIN had a political motive, intending to put pressure on the SF Police Department, to coerce them into changing SFPD policies related to officers' use of force.  Further, in order to appease certain political constituencies, BOUDIN sought to publicly present an aggressive stance toward OIS cases with regard to allegations of police misconduct. With respect to these motivations, BOUDIN was a driving force animating the policies of the SFDA and the prosecution of CHA, and was responsible for encouraging his employees at the SFDA to ignore the need for fair, objective, and unbiased investigations and prosecutions.

284.    As set forth in the First Cause of Action, as part of his management of the SFDA office and the other individual defendants herein, defendant BOUDIN promulgated administrative policies that permitted and encouraged constitutional deprivations, and particularly threatened the Fourth Amendment rights of police officers in OIS cases. BOUDIN implement a set of policies so deficient that the policies themselves constituted a repudiation of constitutional rights and were the moving force of the constitutional violation, as follows.

•    Improper Procedures for Re-Evaluation of OIS Cases without any re-assessment for the existence of probable cause;

•    Improper Policies for Hiring, Firing, and Training Employees, including the hiring and promotion of biased individuals;

•    Improper Policies and Procedures for Assessing and Managing Attorneys' Conflicts of Interest, including the hiring of Lateef Gray and his assignement as Manageing Attorney of the IIB despite manifest conflicts of interest; and,

•    Improper Policies and Procedures for Ensuring Investigators Are Independent Affiants on Warrant Declarations, including the failure to implement any policy to prevent the coercion of investigators when they give sworn affidavits on warrant declarations.

285.     BOUDIN gave directions to defendant LATEEF GRAY in GRAY's role as Managing Attorney of the IIB. Plaintiff is informed and believes and thereon alleges as follows: In supervising GRAY, BOUDIN directed GRAY to re-open the case against plaintiff CHA related to the death of Sean Moore. BOUDIN consulted with GRAY at all phases of the investigation and prosecution of the CHA matter, and approved GRAY's conduct and management of the CHA investigation and prosecution.

286.     Plaintiff is informed and believes and thereon alleges that BOUDIN directed, ratified, or approved the attempts by SFDA personnel, including DANA DRUSINSKY and STEPHANIE LACAMBRA, to draft a search warrant against plaintiff CHA, despite the lack of probable cause under the circumstances. Further, BOUDIN directed, ratified, or approved the attempts by DANA DRUSINSKY and STEPHANIE LACAMBRA to edit the search warrant draft in a deceptive manner in order to exclude necessary exculpatory information, as described in the Second Claim for Relief.

287.     Plaintiff is informed and believes and thereon alleges that BOUDIN directed, ratified, and/or approved the use of the Investigative Grand Jury by DANA DRUSINSKY and STEPHANIE LACAMBRA; and further, that BOUDIN directed, ratified, and/or approved DRUSINSKY and LACAMBRA's biased presentation of evidence at the Grand Jury, which excluded certain exculpatory information and emphasized CHA's culpability in a biased manner.

288.     With respect to the conduct described in this Second Claim for Relief, related to CHESA BOUDIN's improper supervision of his subordinates, causing the improper investigation and prosecution of plaintiff CHA, Plaintiff sues defendant CHESA BOUDIN in his official capacity.  In doing the acts and/or omissions alleged herein, defendant BOUDIN was acting as an agent of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office. Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County of San Francisco and the San Francisco District Attorney's office.

289.     Plaintiff also sues defendant CHESA BOUDIN in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's

constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

290.    The conduct of CHESA BOUDIN, in his role in supervising subordinates related to their conduct in investigating and prosecuting CHA in a biased manner without probable cause, caused CHA's arrest and prosecution without probable cause, in violation of his rights.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; and DOES 1-100, and each of them, as hereinafter set forth.

## SECOND COUNT – SUPERVISORY CONDUCT OF LATEEF GRAY

291.    Plaintiff incorporates all allegations previously set forth in this First Amended Complaint as if set forth in full in this Second Count of the Fifth Claim for Relief.

292.    Defendant LATEEF GRAY, the managing attorney of the IIB unit at the SFDA's office, was superior to, and had the authority to direct, employees of the IIB unit, including defendant ADAs DANA DRUSINSKY and STEPHANIE LACAMBRA; and IIB investigator ANDREW KOLTUNIAK.

293.    LATEEF GRAY had a conflict of interest related to CHA's criminal prosecution. The decedent in the criminal action (Moore) was GRAY's former client, who had pursued a civil suit which GRAY would benefit from. Because of GRAY's prior alignment with the decedent in the CHA case, GRAY had a conflict of interest with the investigation and prosecution of plaintiff CHA. Under these circumstances, it was a violation of professional ethics for GRAY to assume a position as the managing attorney of the IIB unit investigating the Moore shooting. Defendant LATEEF GRAY's pursuit of the investigation and prosecution of plaintiff CHA was in part motivated by his personal bias for his former clients (the Moore family), and his interest in his former law office pursuing the civil case, rather than the interest of justice toward plaintiff CHA.

294.    Plaintiff is informed and believes and thereon alleges that LATEEF GRAY directed, ratified, and/or approved the attempts by SFDA personnel, including DANA DRUSINSKY and

STEPHANIE LACAMBRA, to draft a search warrant against plaintiff CHA, despite the lack of probable cause under the circumstances. Further, GRAY directed, ratified, or approved the attempts by DANA DRUSINSKY and STEPHANIE LACAMBRA to edit the search warrant draft in a deceptive manner in order to exclude necessary exculpatory information, as described in the Second Claim for Relief herein.

295.    Plaintiff is informed and believes and thereon alleges that GRAY directed, ratified, and/or approved the use of the Investigative Grand Jury by DANA DRUSINSKY and STEPHANIE LACAMBRA; and further, that GRAY directed, ratified, and/or approved DRUSINSKY and LACAMBRA's biased presentation of evidence at the Grand Jury, which excluded certain exculpatory information and emphasized CHA's culpability in a biased manner, as described in the Second Claim for Relief herein.

296.    With respect to the conduct described in this Fifth Claim for Relief, related to LATEEF GRAY'S improper supervision of his subordinates, causing the improper investigation and prosecution of plaintiff CHA, Plaintiff sues defendant LATEEF GRAY in his official capacity.  In doing the acts and/or omissions alleged herein, LATEEF GRAY was acting as an agent of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office. Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County of San Francisco and the San Francisco District Attorney's office.

297.    Plaintiff sues defendant LATEEF GRAY in his individual capacity, for his personal involvement in the conduct alleged herein; for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

SIXTH CLAIM FOR RELIEF - VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) – CONSPIRACY TO VIOLATE CIVIL RIGHTS

**By Plaintiff KENNETH CHA Against Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100,**

298.    Plaintiff incorporates all allegations previously set forth in this First Amended Complaint as if set forth in full in this Fourth Claim for Relief.

**ALLEGATIONS COMMON TO ALL COUNTS**

299.    This cause of action arises under 42 U.S.C. §§ 1983 and 1988, wherein Plaintiff KENNETH CHA seeks to redress a deprivation under color of law of a right, privilege or immunity secured to them by the Fourth Amendment to the United States Constitution.

300.    laintiff alleges that Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, acted, in conspiracy with, and with the agreement, permission, ratification, and approval of, each other to violate plaintiff KENNETH CHA's civil rights afforded under the United States Constitution. Particularly, with respect to the defendants' investigation into the Sean Moore shooting, and with respect to defendants' presentation to obtain an arrest warrant for plaintiff CHA, defendants agreed with each other to deprive plaintiff of his rights under the Fourth Amendment to be free from unreasonable searches and seizures and from malicious prosecution without probable cause. Defendants and each of them performed overt acts in furtherance of this conspiracy, as set forth in Counts 1 and 2, below.

301.    With respect to the aforementioned conspiracy to violate CHA's civil rights, Plaintiff sues defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK, and each of them, in their official capacities.  In pursuing this conspiracy, these defendants, and each of them, were acting as agents of Defendants CITY AND COUNTY OF SAN FRANCISCO and the SAN FRANCISCO DISTRICT ATTORNEY's office.

Defendants' conduct was performed pursuant to the policy or custom of Defendants City and County of San Francisco and the San Francisco District Attorney's office.

302.    Plaintiff sues defendant CHESA BOUDIN in his individual capacity, for his participation in the aforementioned conspiracy, including his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

303.    Plaintiff sues defendant LATEEF GRAY in his individual capacity, for his participation in the aforementioned conspiracy, including his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

304.    Plaintiff sues defendant DANA DRUSINSKY in her individual capacity, for her participation in the aforementioned conspiracy, including her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

305.    Plaintiff sues defendant STEPHANIE LACAMBRA her individual capacity, for her participation in the aforementioned conspiracy, including her own culpable action or inaction in the training, supervision, or control of her subordinates; for her acquiescence in the deprivation of CHA's constitutional rights; and/or for conduct that showed a reckless or callous indifference to CHA's rights, all of which caused a deprivation of plaintiff's rights under color of law.

306.    Plaintiff sues defendant ANDREW KOLTUNIAK in his individual capacity, for his participation in the aforementioned conspiracy, all of which caused a deprivation of plaintiff's rights under color of law.

### SIXTH CLAIM FOR RELIEF – COUNT 1: CONSPIRACY TO PURSUE BIASED INVESTIGATION

307.     Upon assuming office as District Attorney for the San Francisco District Attorneys' Office ("SFDA"), Defendant CHESA BOUDIN formulated a plan to prosecute officer involved shooting (OIS) cases. BOUDIN decided to re-evaluate OIS cases where there had been a decision not to prosecute and potentially prosecute these cases. These cases included the Sean Moore shooting described elsewhere in this Complaint; the Terrence Stangel case; and the Christopher Samoyoa case. BOUDIN intended to investigate and criminally prosecute these cases without regard to whether actual probable cause existed under the totality of the circumstances, including the suspect's legitimate right to self-defense.

308.     In furtherance of his intentions, defendant BOUDIN fired or re-assigned certain personnel at the SFDA office who were reluctant to enter into the conspiracy, such as Managing Attorney for the IIB Unit, Andrew Lah; ADA Aaron Zisser; Investigator Megan Hayashi; and Supervising Investigator Jeffrey Pailet. BOUDIN then staffed the SFDA with new personnel, including defendants GRAY, LACAMBRA, and DRUSINSKY, and investigator KOLTUNIAK, who held a bias or animus against police officers. BOUDIN entered into a conspiracy with GRAY, LACAMBRA, DRUSINSKY, and KOLTUNIAK, to pursue a biased investigations into the Sean Moore matter; the Stangel matter; and the Samoyoa matter, in order to prosecute criminal cases against the involved officers, including plaintiff CHA, despite the lack of probable cause under the totality of the circumstances.

309.     Initially, in furtherance of this conspiracy, Defendants BOUDIN, GRAY, LACAMBRA, DRUSINSKY, and KOLTUNIAK sought to investigate the Sean Moore shooting in a biased manner, in order to assemble facts amounting to probable cause, and/or to convince a judge or tribunal of the existence of probable cause.

310.     In order to acquire evidence related to the Sean Moore matter, defendants and each of them conspired to draft search warrants for the cell phones of plaintiff CHA and his partner Ofc. Patino. The search warrant drafts, originally created by investigator Megan Hayashi, were subject to interference by defendants, ADAs LACAMBRA and DRUSINSKY, who demanded changes to the drafts that removed exculpatory evidence and that included biased descriptions. LACAMBRA and

DRUSINSKY's attempts to create biased search warrant applications were made pursuant to an agreement with other defendants including BOUDIN and GRAY. The language of these applications was later re-purposed to include

311.    In a further attempt to discover facts to create the impression of probable cause, Defendants, requested and assembled an investigative Grand Jury to inquire regarding the death of Sean Moore and whether any charges should be brought against plaintiff CHA.

312.    The conduct of defendants in furtherance of the conspiracy, as described above, violated plaintiff KENNETH CHA's civil rights under the Fourth Amendment to the United States Constitution, to be free from unlawful seizures and from wrongful arrest and prosecution without probable cause. In furthering this conspiracy, the defendants had a purposeful intent to deprive CHA of the privileges and immunities of the Fourth Amendment.

WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

### Sixth Claim for Relief – Count 2: Conspiracy to Obtain Arrest Warrant

313.    Following the unsuccessful attempts to push through improper and unsupported search warrants for the cellular devices of the officers and the failure of the investigative Grand Jury to support probable cause for the prosecution of CHA, Defendants BOUDIN, GRAY, LACAMBRA and DRUSINSKY together further conspired to assign specially selected investigator ANDREW KOLTUNIAK to the Sean Moore OIS Matter. Further, as it became clear that KOLTUNIAK would support the improper and unethical behavior by the defendants in the Sean Moore matter, the Defendants decided to bring KOLTUNIAK into their conspiracy to bring charges against CHA without probable cause.

314.    To achieve this further conspiracy, KOLTUNIAK was assigned to serve as affiant and submit a sworn affidavit to the reviewing judicial officer that he knew to misrepresent material facts of the underlying OIS, and in furtherance of the agreement between the defendants to bring unsupported charges against Cha and in violation of applicable law.

315. ADAs LACAMBRA and DRUSINSKY, at the direction and supervision of BOUDIN and GRAY, provided KOLTUNIAK with the language they had already drafted in the affidavit that was intended to be used to support the search warrants, which KOLTUNIAK was directed to copy into his sworn affidavit to the court. This language again misrepresented the circumstances of the OIS to the court and was included in an effort to have the court approve the arrest warrant without recognizing the actual absence of actual probable cause. The affidavit also assured the court that all material exculpatory evidence known to the SFDA's Office had been included, which was clearly false.

316. In an effort to avoid any culpability if his misrepresentations and falsehoods in the affidavit later came to light, KOLTUNIAK purposely included as exhibits pertinent documents and footage with the plan to point to these exhibits if there were any future claims that the affidavit itself was lacking or improper. However, KOLTUNIAK, LACAMBRA, DRUSINSKY, BOUDIN and GRAY conspired to present the affidavit in such a way that the reviewing judge was likely to rely solely on the affidavit, a reasonable assumption as the affidavit provided a sworn statement made under penalty of perjury by an investigator with an ethical and legal duty for independence and candor.

317. Following the submission of the arrest warrant and affidavit to the reviewing judicial officer, Judge Harold Kahn, it appears that this plan came to fruition. Based on the date of the execution of the warrant by KOLTUNIAK and the date the Judge approved it, the arrest warrant was granted that very the same day. Therefore, BOUDIN, GRAY, KOLTUNIAK, LACAMBRA, DRUSINSKY's agreement to pursue charges against CHA absent actual probable cause led to a deprivation of plaintiff's rights under the Fourth Amendment to be free from unreasonable searches and seizures and from malicious prosecution without probable cause. It is clear that Defendants and each of them performed overt acts in furtherance of this conspiracy.

318.    WHEREFORE, plaintiff KENNETH CHA prays for relief against defendants CITY AND CO318.    UNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

**SEVENTH CLAIM FOR RELIEF – NEGLIGENT HIRING, SUPERVISION, AND TRAINING**
**(AGAINST DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; AND DOES 1-100)**

319.     Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint into this Third Claim for Relief, as if set forth herein in full.

320.     Plaintiff makes the claims in this Fourth Claim for Relief asserting theories of negligence under California Civil Code sec. 1714 and California common law. The state law claims in this action are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367.

321.     Public employees are liable for the consequences of their negligent acts, to the same extent as private citizens, unless excepted by specific statutory immunities. (Govt. Code §820) As a public entity, defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; and DOES 1-100, and each of them, will be held responsible for the tortious acts of its employees performed in the course and scope of their employment. (Govt. Code §815.2)

322.     Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, hired defendant ANDREW KOLTUNIAK for the position of Investigator with the Independent Investigation Bureau (IIB) of the San Francisco Assistant District Attorney's Office. With respect to the hiring of KOLTUNIAK, defendants CHESA BOUDIN and LATEEF GRAY had the authority to make hiring or firing decisions, to implement training, and/or to supervise KOLTUNIAK.

323.     Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, hired defendants DANA DRUSINSKY STEPHANIE LACAMBRA; for the position of Assistant District Attorneys (ADAs) with the San Francisco Assistant District Attorney's Office. With respect to the hiring of DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG, defendants CHESA BOUDIN and LATEEF GRAY had the authority to make hiring or firing decisions, to implement training, and/or to supervise DRUSINSKY and LACAMBRA.

324.     At the time Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES

1-100, and each of them, hired Defendants ANDREW KOLTUNIAK, DANA DRUSINSKY;

STEPHANIE LACAMBRA; and REBECCA YOUNG, these persons were unfit and incompetent for

the positions for which they were hired. Particularly, ANDREW KOLTUNIAK, DANA

DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG were not properly trained in the

investigation and prosecution of officer-involved shooting (OIS) cases and other cases involving police

misconduct.

325.    Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO

DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and

each of them, knew or should have known that ANDREW KOLTUNIAK; DANA DRUSINSKY;

STEPHANIE LACAMBRA; and REBECCA YOUNG were unfit and incompetent for the positions

for which they were hired, and particularly, were not properly trained in the investigation and

prosecution of officer-involved shooting (OIS) cases.

326.    Subsequent to hiring ANDREW KOLTUNIAK, DANA DRUSINSKY and

STEPHANIE LACAMBRA, Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN

FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES

1-100 improperly trained ANDREW KOLTUNIAK, DANA DRUSINSKY and STEPHANIE

LACAMBRA. Particularly, Defendants did not properly train ANDREW KOLTUNIAK; DANA

DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG regarding the investigation

and/or prosecution of officer-involved shooting (OIS) cases and the need to respect relevant law and

the officer's rights. Rather, as stated more fully in the Second Claim for Relief herein, Defendants

implemented improper policies regarding the prosecution of allegations of police misconduct, with

motives other than substantial justice, and with disregard for the rights of the accused officers.

Defendants trained ANDREW KOLTUNIAK; DANA DRUSINSKY; STEPHANIE LACAMBRA;

and REBECCA YOUNG pursuant to these improper policies.

327.    Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO

DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, knew or

should have known that, because of defendants ANDREW KOLTUNIAK; DANA DRUSINSKY;

STEPHANIE LACAMBRA; and REBECCA YOUNG's unfitness for the positions for which they

were hired, and because of inadequate and improper training and direction by defendants,
KOLTUNIAK, DRUSINSKY, LACAMBRA, and YOUNG were likely to subject police officer
suspects, including plaintiff KENNETH CHA, to improper and malicious investigations, causing
violations of their rights to be free of unreasonable seizures and their rights to be free from malicious
prosecution, under the Fourth and Fourteenth Amendments to the United States Constitution.

328.     While supervising defendants ANDREW KOLTUNIAK; DANA DRUSINSKY;
STEPHANIE LACAMBRA; and REBECCA YOUNG, Defendants CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF
GRAY; and DOES 1-100, and defendants' employees, negligently directed and encouraged
KOLTUNIAK, DRUSINSKY, LACAMBRA, and YOUNG to pursue the improper investigation of
plaintiff KENNETH CHA, with the intent to prosecute plaintiff despite the lack of substantial
justification or probable cause. The improper and malicious investigation, arrest, and prosecution of
plaintiff CHA violated his rights under the Fourth and Fourteenth Amendments of the U.S.
Constitution, as more fully described in the First Claim for Relief herein.

329.     The negligence of Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES
1-100, in hiring, training, and/or supervising defendants ANDREW KOLTUNIAK, DANA
DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG was a substantial factor in
causing the malicious investigation, arrest, and prosecution of plaintiff KENNETH CHA, without
substantial justification or probable cause.

330.     As a result of the negligence of Defendants CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF
GRAY; and DOES 1-100, in hiring, training, and/or supervising defendants ANDREW KOLTUNIAK,
DANA DRUSINSKY; STEPHANIE LACAMBRA; and REBECCA YOUNG, resulting in the
improper and malicious investigation, arrest and criminal prosecution of plaintiff KENNETH CHA,
plaintiff has been damaged by reason thereof in at least the following respects:

A.     Loss of personal freedom;

B.     Payments necessary for bond and expenses of defense, including attorneys' fees;

C.    Pain and suffering, both physical and emotional; and

D.    Loss of reputation in the community of the City and County of San Francisco, California, and in the State of California generally.

331.    The plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter, and is entitled to recover a reasonable attorneys' fee for the services of his attorneys' herein.

WHEREFORE, plaintiff KENNETH CHA prays for relief Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; LATEEF GRAY; and DOES 1-100, and each of them, as hereinafter set forth.

## **PRAYER**

WHEREFORE, with respect to each cause of action listed above, Plaintiff KENNETH CHA prays for relief against defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, as follows:

1.    Compensatory and general damages in an amount according to proof;

2.    Statutory damages, treble damages, and penalties pursuant to California Civil Code §52(b);

3.    Plaintiffs' costs, expenses, and reasonable attorneys' fees pursuant to 42 USC §1988; California Civil Code §51.7, 52, and 52.1; and California Code of Civil Procedure §1021.5;

4.    All other damages, penalties, costs, interest, and attorney fees as allowed by 42 USC §§1983 and 1988, Cal. Code of Civ. Proc. §§377.20 *et seq.* and 377.60 *et seq.* and as otherwise may be allowed by California and/or federal law;

5.    Pre- and post-judgment interest as permitted by law; and

6.    Such other and further relief as this Court may deem appropriate.

Further, as against Defendants CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; and ANDREW KOLTUNIAK only, Plaintiffs pray for exemplary

and punitive damages under 42 U.S.C. §1983 and California Civil Code section 3294, in an amount according to proof.

Dated: May 23, 2025                                Respectfully submitted,

                                                   RAINS LUCIA STERN
                                                   ST. PHALLE & SILVER, PC


                                                   /s/ *Eustace de Saint Phalle*
                                                   By: Eustace de Saint Phalle
                                                   Attorneys for Plaintiff KENNETH CHA


### DEMAND FOR JURY TRIAL

As to the matters complained of herein against Defendants CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; ANDREW KOLTUNIAK; and DOES 1-100, and each of them, Plaintiff KENNETH CHA demands a trial by jury.

Dated: May 23, 2025                                Respectfully submitted,

                                                   RAINS LUCIA STERN
                                                   ST. PHALLE & SILVER, PC


                                                   /s/ *Eustace de Saint Phalle*
                                                   By: Eustace de Saint Phalle
                                                   Attorneys for Plaintiff KENNETH CHA