# EXHIBIT 2

602

CHESA BOUDIN, SB# 284577
District Attorney
San Francisco District Attorney's Office
350 Rhode Island, Suite 400N
San Francisco, CA   94103
Telephone:  (628) 652-4000

ATTORNEYS FOR THE PEOPLE

**F I L E D**
Superior Court of California
County of San Francisco

NOV 0 4 2021

CLERK OF THE COURT
BY: _____
Deputy Clerk

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA<br>Plaintiff,<br><br>v.<br><br>KENNETH CHA<br>Defendant. | **FELONY COMPLAINT<br>ARREST WARRANT**<br><br>CASE NUMBER:<br>2101095 8<br>11/4/21 at 1:30 pm |

The Undersigned, being sworn says, on information and belief, that: M09

### COUNT: I

The said defendant, KENNETH CHA, did in the City and County of San Francisco, State of California, on or about the **6th day of January, 2017 through the 20th day of January, 2020**, commit the crime of VOLUNTARY MANSLAUGHTER, to wit: Violating Section **192(a)** of the Penal Code, a Felony, in that the said defendant did willfully, unlawfully, and without malice kill SEAN WENDELL MOORE, a human being, upon a sudden quarrel and heat of passion.

**ALLEGATION OF USE OF FIREARM PURSUANT TO PENAL CODE SECTION 12022.5(a)**
It is further alleged that in the commission and attempted commission of the above felony offense, the said defendant, KENNETH CHA, personally used a firearm, to wit: .40 CALIBER PISTOL, within the meaning of Penal Code section 12022.5(a).

### COUNT: II

The said defendant, KENNETH CHA, did in the City and County of San Francisco, State of California, on or about the **6th day of January, 2017**, commit the crime of ASSAULT WITH A SEMIAUTOMATIC FIREARM, to wit: Violating Section **245(b)** of the Penal Code, a Felony, in that the said defendant did willfully, unlawfully and personally commit an assault upon SEAN WENDELL MOORE, with a semi-automatic firearm, to wit: .40 CALIBER PISTOL.

THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE. ATTEST. CERTIFIED

DEC 0 5 2024

CLERK OF THE COURT
Superior Court of California, County of San Francisco
BY: _____
DEPUTY CLERK

1

DA W# 51983 T

## ALLEGATION PURSUANT TO PENAL CODE SECTION 12022.5(d)

It is further alleged that in the commission and attempted commission of the above felony offense, the said defendant, KENNETH CHA, personally used a firearm, to wit: .40 CALIBER PISTOL, within the meaning of Penal Code section 12022.5(d).

## ALLEGATION OF GREAT BODILY INJURY PURSUANT TO PENAL CODE SECTION 12022.7(a)

It is further alleged that in the commission and attempted commission of the above felony offense, the said defendant, KENNETH CHA, personally inflicts great bodily injury, within the meaning of Penal Code Section 12022.7(a).

Pursuant to Penal Code sections 1054 through 1054.7, the People request that, within fifteen (15) days, the defendant and/or his/her attorney disclose: (A) the names and addresses of persons, other than the defendant, he/she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements, of those persons including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial; (B) Any real evidence which the defendant intends to offer in evidence at the trial. This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

### MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2(a)(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2(a)(2).

**AFFIDAVIT ATTACHED HERETO AND INCORPORATED HEREIN SETS FORTH THE UNDERLYING FACTS ESTABLISHING PROBABLE CAUSE FOR THE ARREST OF THE DEFENDANT NAMED IN THIS COMPLAINT.**



I state, declare, verify and certify under the penalty of perjury that the foregoing is true and correct. Executed in San Francisco, California on November 1, 2021.

cf/DAW-170014484                    INSPECTOR ANDREW KOLTUNIAK, STAR #113

# FILED

San Francisco County Superior Court

**NOV 01 2021**

CLERK OF THE COURT

BY: _____
Deputy Clerk

1  CHESA BOUDIN (SBN 284577)
2  District Attorney
   Stephanie Lacambra (SBN 232517)
3  Dana Drusinsky (SBN 294063)
   Assistant District Attorneys
4  350 Rhode Island Street
   North Building, Suite 400N
5  San Francisco, California 94103
6  Telephone:  628-652-4231
   Facsimile: 628-652-4001
7
8  Attorneys for the People
9
10          SUPERIOR COURT OF THE STATE OF CALIFORNIA
11             CITY AND COUNTY OF SAN FRANCISCO
12
13  IN RE: ARREST WARRANT OF            Warrant No:
14  KENNETH CHA                         [PROPOSED] SEALING ORDER
15
16
17        IT IS HEREBY ORDERED that the ARREST WARRANT AFFIDAVIT be sealed
18  on page 13, items 7-9 and that EXHIBIT 5 are SEALED until further order of the Court.
19  This Application and the supporting documents are also SEALED until further order of the
20  Court.
21
22
23  Date: 10|29|2021
24                                      Hon. _____ Harold Kahn
25
26
27
28

6

SF Superior Court Register No. *DAW# 51983 F*

# WARRANT OF ARREST

**In the Superior Court of California**
**City and County of San Francisco**

8 2 1 0 2 7   2021 -1. 25

The People of the State of California to any Peace Officer of this State!

Complaint upon oath having this day been laid before me that the offense of **Felony**, to wit:

Violating Section **192(a) of the Penal Code, a Felony; 245(b) of the Penal Code, a Felony** has been committed and accusing **KENNETH CHA** thereof, you are therefore commanded forthwith to arrest the above named defendant and bring same before the Superior Court in the City and County of San Francisco, California, at the Hall of Justice, 850 Bryant Street, San Francisco, California.

The defendant is to be admitted to bail in the sum of $ *$0.00* *"ZERO BAIL"*
*Own Recognizance on and by compliance w/ 12. Acm and 1 weapon and when needed for employment*

This warrant may be served day or night.

Witness my hand and the seal of said court on _____ *10/29* , 20*21*.

_____
**Judge of the Superior Court, City and County of San Francisco**

| RETURN THIS WARRANT TO CLERK OF THE SUPERIOR COURT ROOM ___ HALL OF JUSTICE |
| --- |



## SUPERIOR COURT CITY AND COUNTY OF SAN FRANCISCO

## REQUEST TO ISSUE ARREST WARRANT

### THE PEOPLE OF CALIFORNIA

vs.

### KENNETH CHA

## APPLICABLE STATUTES/LAW

**Penal Code §192(a)** – Manslaughter is the unlawful killing of a human being without malice. Subsection: (a) Voluntary – Upon a sudden quarrel or heat of passion or imperfect self-defense.[1]

**Penal Code § 245(b)** – Assault with a deadly weapon likely to cause great bodily injury is the willful, unlawful, and personal commission of an assault with a semi-automatic firearm.

**Penal Code § 196** – Homicide is justifiable when committed by public officers and those acting by their command in their aid and assistance, in either of the following circumstances:
  (1) in obedience to any judgement of a competent court;
  (2) necessarily committed in overcoming actual resistance to the exception of some legal process, or in the discharge of any other legal duty, or
  (3) when necessarily committed in retaking felons who have been rescued or have escaped and are fleeing from justice or resisting such arrest.[2]



---

[1] *People v. Flannel* (1979) 25 Cal. 3d 668, 674 [160 Cal. Rptr. 84, 603 P. 2d 1].
[2] Penal Code § 196 (as it existed in 2017). *See also* CALCRIM 507.

1

# AFFIDAVIT IN SUPPORT OF REQUEST TO ISSUE ARREST WARRANT

## AFFIANT'S BACKGROUND

I, Inspector Andrew Koltuniak, Star #113, your affiant, have been employed as an investigator with the City and County of San Francisco District Attorney's Office (SFDA) since October of 2020.

I am currently assigned to the Independent Investigations Bureau, where I investigate police officer involved shootings, police use of force, and in-custody deaths. As a District Attorney Inspector, I am a designated Peace Officer and have peace officer authority as articulated in sections 830 and 830.1 of the California Penal Code. The cases I have investigated since joining the SFDA include several officer involved shootings, possible excessive uses of force, and post-conviction reviews of homicides. I have also investigated allegations of public corruption.

I began my career as an investigator in 1997, when I became an assistant to a Private Investigator in San Francisco, California. In 2004 I was hired by the San Francisco Public Defender's Office and worked in their Investigation Unit. In 2007 I became a licensed Private Investigator, #25582, and have remained licensed to the present date with no disciplinary actions or complaints. During my tenure with the San Francisco Public Defender, I worked in several positions, including: the Domestic Violence Unit, the General Felony Unit, the General Misdemeanor Unit, and the Homicide Unit. My responsibilities included locating and interviewing witnesses, preparing investigative reports, and testifying in court.

In 2012, I went into private practice where I investigated more than 100 cases involving organized crime, distribution and sales of narcotics, human trafficking, and homicide. I have investigated criminal cases filed in state and federal courts nationwide. During my time in private practice, I had been retained to work with prosecutors and law enforcement. In 2018, I returned to the San Francisco Public Defender as an investigator in the Pre-Trial Release Unit and worked there until my departure in 2020.

My law enforcement career began in 2021, when I graduated from a twenty-two-week POST-certified basic police officer training academy at the Napa Valley Criminal Justice Training Center in Napa, California. I was sworn in as a peace officer in June of 2021.

Over the 17 years I have worked as an investigator, I have investigated over 100 homicides and more than 500 felony crimes, ranging from narcotics trafficking, assault, rape, human trafficking, child molestation, fraud, larceny, and robbery. My investigations have contributed to the exoneration of over 20 defendants facing potential life sentences.

Further, I have experience working in an undercover capacity, conducting surveillance, reverse sting operations, and identifying witnesses and suspects. I have interviewed more than 1000 suspected felons, and developed informants who have provided reliable information and testimony.

A partial list of the investigative and law enforcement training I have received includes:

- Interviewing Child Witnesses
  Chris Gauger, San Francisco Public Defender     8 hours      September 2004
- National Defense Investigator Annual Conference
  National Defense Investigator Association     32 hours      April 2006
- Introduction to Brain Imaging, PET, and CAT Scans
  Dr. Daniel Amen     4 hours      January 2008
- Capital Case Defense Seminar
  California Public Defender's Association     16 hours      February 2008
- Forensic Blood Spatter Training
  Louis Akin     8 hours      March 2008
- The Science of Gun Shot Wounds
  Dr. Judy Melenek, SF Medical Examiner     4 hours      March 2008
- Understanding the Static 99 / Sex Offender Re-Offense Assessment
  Dr. Charles Flinton     4 hours      April 2008
- Assault Weapons in California
  Chuck Michel, Chief Attorney for NRA     4 hours      May 2008
- DNA Analysis Basics
  Bicka Barlow, San Francisco Public Defender     4 hours      June 2008
- Forensic Investigation of Homicide
  National Defense investigator Association     32 hours      November 2008
- Eyewitness Identification Training
  Kathy Pezdek     4 hours      March 2009
- Juror Psychology and Opening Statements
  Christopher Ritter, Focal Point     4 hours      May 2010
- EMT/Paramedic Certification Course
  Skyline College     192 hours      Spring 2015
- Implicit Bias Workshop
  Dante King     24 hours      September 2019
- Basic Police Academy
  Napa Valley Criminal Justice Training Center     896 hours      Spring 2021
- District Attorney Investigator Transition Course
  South Bay Regional Training Center     40 hours      August 2021

3

## INTRODUCTION

I was assigned to review the facts of this case to determine whether there was probable cause to believe that any crimes were committed when San Francisco Police Officer Kenneth Cha shot Sean Moore twice in the abdomen on January 6, 2017. I familiarized myself with the facts of the case by reviewing the associated police-related documents, body worn camera recordings, and other evidence obtained during the investigation. The information below is given solely for the purpose of providing the Court with evidence to determine whether probable cause exists for the issuance of an Arrest Warrant; it does not represent all of the evidence the SFDA or I possess about the facts of the case. I am aware that there are compelled statements taken by SFPD internal affairs that are not available to me for review.

## STATEMENT OF PROBABLE CAUSE

### SUMMARY

An unarmed man, Sean Moore, was shot twice in the abdomen on the threshold of his home by Defendant Officer Kenneth Cha on January 6, 2017, during an investigation of a neighbor's noise complaint. Sean Moore died from the gunshot wounds three years later, on January 20, 2020.

### STATEMENT OF FACTS

On January 6th, 2017, at approximately 03:51 AM, San Francisco Police Department (SFPD) Officers Kenneth Cha (Star #1206) and Colin Patino (Star #1310), responded to 521 Capitol Avenue, San Francisco, California, to investigate a report by Christopher Choy that his next door neighbor, Sean Moore, had violated a temporary restraining order.

This temporary restraining order prohibited Moore from noise harassment toward the Choy residence (521 Capitol Avenue). Choy reported to SFPD dispatch that Moore hit their adjoining wall, disturbing his family.

515 Capitol Avenue and 521 Capitol Avenue are east facing, mid-century style single family homes located in a residential area of San Francisco. The two homes are joined together with no set back between the respective property lines. Both addresses are similar structures consisting of a street level garage with living quarters above that is accessed by its own separate concrete staircase that leads from the sidewalk to the upper front door landing area. The front stairs of 515 Capitol Avenue are abutted by the southern exterior wall of 521 Capitol Avenue. The entrance to the Moore residence was located on the second floor at the top of a 47-inch wide, concrete staircase. The front door was located behind a locked metal security gate at the top of the staircase.

<u>Body Worn Camera Footage</u>

Based on review of the Body Worn Camera ("BWC") footage from Patino and Cha:

Officers Cha and Patino responded and arrived at the neighboring residences of Choy and Moore at approximately 04:20 AM. Initially, Cha contacted Moore at 515 Capitol Avenue and Patino contacted Choy at 521 Capitol Avenue.

Patino's BWC footage showed him talking with Choy for approximately 9 seconds before he went next door to join Cha in contacting Moore.  Choy gave Officer Patino a copy of the restraining order and proof of service. Choy did not ask Patino to facilitate a citizen's arrest of Moore.

Upon arrival, Cha rang the doorbell and Moore opened his front door, but remained behind the metal security gate. Moore repeatedly told the officers that he did not want to speak to them and wanted them to leave. Moore demanded the officers get off his stairs and denied any harassment of Choy. Moore explained that he had taken out his garbage and swept his staircase. Moore went inside his home, Patino called him back to the front door and began reading the elements of the temporary restraining order to Moore who yelled, "I heard you", and continued to demand that both officers vacate the staircase. When both officers refused to leave, Moore retrieved a mobile phone and told the officers he was going to call and have them removed.

Moore entered his home and Cha and Patino descended the stairs to the sidewalk. At the bottom of the stairs, Cha and Patino reviewed the court order while continuing to shine their flashlights into Moore's home through the windows and doors.

Moore walked out his front door but remained on the top landing behind the security gate and again demanded the officers leave. Patino and Cha walked back up Moore's staircase a second time. Moore asked Patino for his star number while holding his phone in his right hand. Moore repeated his demand that the officers leave his home and said, "It's a goddamn court date on the eleventh. Get your fucking ass off my stair."

When the officers refused to leave, Moore opened the security gate and stood at the top of the staircase with his right arm extended and waving his right, open hand in a horizontal motion from left to right while telling the officers to leave. Moore's left hand held a phone against his waist. Cha did not leave Moore's property. Instead, Cha said to Moore, "You want to get sprayed?" and "You're gonna get sprayed."

Moore remained in his position at the top of the staircase and continued telling the officers to get off his stairs. Cha ignored Moore's demands to leave and sprayed him in the face with

pepper spray. As Moore tried to retreat behind his security gate, Cha and Patino advanced upon Moore. Patino grabbed Moore before he could retreat further into his home. Moore stated, "Get the fuck off my stairs," and kicked out once with his left foot. Pepper spray appeared to enter Patino's eyes, causing him to drop the restraining order papers and retreat down the stairs. Officer Cha followed.

Moore picked up the fallen papers and retreated into his home. Patino demanded Moore return the papers. In response, Moore came out to the stairs from behind his gate with the papers in hand. Cha said: "Fuck you," and "Mother-fucker. What's up? C'mon." Moore responded by retreating into his home.

Cha notified SFPD dispatch that he needed an ambulance for pepper spray exposure sustained by Patino and Moore. Patino ordered Moore to exit his home, return the papers and advised Moore that he was under arrest. Moore came out of his house and dropped the papers down the stairs from behind the security gate. Moore then went inside his home.

From the sidewalk at the bottom of Moore's staircase, Cha and Patino told Moore he was under arrest and he would receive medical treatment if he exited his home and surrendered. The officers did not advise Moore of what they were attempting to arrest him for. Cha threatened to kick in the gate if Moore did not exit voluntarily. Moore stated he could not see and exited his home again to stand behind the security gate and stated: "Let's get this resolved," and "I can't see, I need some medical attention."

Patino began to ascend the stairs a third time to retrieve the papers but stopped when Moore opened his security gate. Moore remained at the top of the stairs and stated: "C'mon, I'm gonna kick your ass punk, you're leaving here."

Moore dropped what appeared to be a plastic piece of his phone and took four steps down the stairs to retrieve it. Cha and Patino ran up the stairs a third time with their batons raised over their heads while ordering Moore to "Get on the ground."

Moore retreated by walking backwards up four steps toward his security gate, as Patino advanced and struck Moore with his metal baton, striking him at least twice on his legs and torso. Moore responded by striking Patino, who then fell down the stairs.

Cha then drew his handgun, pointed it at Moore, and advanced up the stairs towards Moore. Moore reacted to Cha's advance by kicking towards Cha. Cha shot Moore twice in the abdomen. Cha stopped shooting when he reached the sidewalk and stood at the bottom of the stairs for approximately 3 seconds. Approximately eight minutes elapsed from the time that officers Cha and Patino arrived on scene to the time that Officer Cha shot Moore.

6

Cha notified SFPD dispatch that shots had been fired, both officers and Moore had sustained injuries, and Moore had retreated into his residence.

### Response by SFPD

Numerous SFPD officers and Hostage Negotiations Team officers responded.  SFPD Tactical and Specialist units made entry and took Moore into custody without incident at approximately 05:45 AM. Moore was arrested and brought to San Francisco General Hospital. Both bullets fired by Cha entered Moore's abdomen. These wounds lacerated Moore's liver and pierced his right colon, scarring his internal organs and resulting in severe abdominal adhesions. Officer Cha was transported to SFGH with complaints of pain in his right calf and the front of his face and was discharged the same day.  Officer Patino was transported to SFGH for treatment of pepper spray exposure, abrasions to his left knee and a broken nose and discharged the same day.

### Coroner's Report

Sean Moore died on January 20, 2020. The cause of death was determined to be a homicide based on the findings of the Marin County Coroner's Office, which concluded that Moore died from the bullet wounds inflicted by Cha on January 6, 2017. Moore died from Acute Intestinal Obstruction as a result of severe abdominal adhesions from remote gunshot wounds to his abdomen sustained on January 6, 2017.

### DEFENDANT

At the time of the incident, Kenneth Cha was a police officer employed by and on duty for the San Francisco Police Department as defined in sections 830 and 830.1 of the California Penal Code. According to the California Department of Motor Vehicles, his date of birth is 08/07/1975 and his driver license number is A8437095.

### EXHIBITS

The following exhibits are attached to this affidavit and incorporated herein for the court's consideration:

1. Temporary Restraining Order dated 12-20-16 attached as Exhibit 1
2. Kenneth Cha's Body Worn Camera (BWC) video attached as Exhibit 2. On January 6th, 2017, Cha engaged his Body Worn Camera for approximately forty minutes and recorded the events that occurred.

    a. Transcript of Kenneth Cha's BWC footage

7



b.  Still image taken from Exhibit 2 at 12:21:44 depicting:
    Moore gesturing with his hand approximately 4 seconds
    before Cha pepper sprayed Moore and Patino.



c.  Still image taken from Exhibit 2 at 12:24:46 depicting:
    Patino approaching with his baton raised in strike position
    while Moore stood at the top of his stairs approximately 3
    seconds before Patino began striking Moore with his
    baton.



d.  Still image taken from Exhibit 2 at 12:24:52 depicting: Cha advancing up the stairs with his firearm pointed as Moore stood with both feet on the ground at the top landing of the stairs.



e.  Still image taken from Exhibit 2 at 12:24:53 depicting: The muzzle flash from the first shot fired by Cha less than 1 second (17 frames) after the previous image 2d

9



f.  Still image taken from Exhibit 2 at 12:24:53 depicting: The muzzle flash from the second shot fired by Cha as he descends the stairs less than 0.5 second (12 frames) after previous image 2e.

3.  Colin Patino's Body Worn Camera (BWC) footage
    a.  Transcript of Colin Patino's BWC footage
4.  Kenneth Cha's voluntary, videotaped statement to Homicide Investigators on 01-07-17
    a.  Transcript of Kenneth Cha's voluntary, videotaped statement to Homicide Investigators on 01-07-17
5.  Marin County Coroner's Autopsy Report & Determination in the Death of Sean Moore (Exhibit 5 filed under seal due to protected HIPAA information)
6.  *People v. Moore*, First Appellate District decision affirming Superior Court's dismissal of Moore's criminal case. App. Ct. No A151276 (San Francisco City and County Super. Ct. No. SCN 227235) (Cal. Ct. App. May 1, 2018)
7.  United States District Court, Northern District of California order re cross-motions for summary judgement in *Sean Moore v. City and County of San Francisco et al.*



## OTHER EVIDENCE

### Dispatch and Radio Traffic Transcripts

According to dispatch recordings prepared by the San Francisco Department of Emergency Management, at approximately 03:51 hours on January 6th, 2017, SFPD Non-Emergency Dispatch received a call reporting a violation of a Temporary Restraining Order at 521 Capitol Avenue, San Francisco, California. The caller, Christopher Choy, identified the suspect as Sean Moore and provided a description and address for Moore. At the time, Moore lived at 515 Capitol Avenue. Choy stated that Moore was hitting the exterior wall of Choy's home, causing noise and disturbance in violation of the restraining order.

Transcripts of the radio traffic for this incident indicate SFPD officer's Cha and Patino responded to 521 Capitol at approximately 04:20 hours and contacted Sean Moore. At approximately 04:22 hours, Cha contacted dispatch to request medical response for treatment of Patino and Moore's exposure to pepper spray. At approximately 04:24 hours, Cha notified dispatch of Moore's description. At approximately 04:25 hours, Cha notified dispatch that shots had been fired.

### Defendant's and Witnesses' Statements

On January 7th, 2017, Cha gave a voluntary statement to Sergeant Kyra Delaney (Star #520) and Sergeant Gary Watts (Star #1594) of the San Francisco Police Department's Homicide Unit. York Tsuruta of the San Francisco District Attorney's Office was also present. The interview was audio and video recorded. Cha's attorney, Scott Burrell was present during the interview. I viewed the interview recording and transcript. A flash drive with a full copy of Cha's statement is attached to this affidavit and incorporated herein as Exhibit 2a.

After giving his initial statement, Cha provided his badge number (# 1206), length of time in his current assignment (3-4 months) and shift hours (21:00 – 07:00). Cha and his attorney asked to view the video evidence in the case, his own body worn camera footage, before proceeding with the rest of the interview, citing SFPD policy. Sergeants Delaney and Watts allowed Cha and his lawyer to view the video evidence off the record. When the interview resumed, Cha acknowledged having watched his body worn camera footage and agreed to provide further details of the incident.



## Evidence Collected from the Scene by SFPD

The SFPD Crime Scene Investigations Unit Scene Report for case # 170 014 484, prepared by Officer Shanahan (Star #1818) stated, among other findings:

- Two .40 Cal S&W casing cartridges, item #2 located on the sidewalk in front of 515 Capitol Avenue and item #8 located on the third step of the front exterior staircase.
- Clothing items, a hammer, and bloodstains from inside 515 Capitol Avenue.
- A bloodstain on the eleventh step of the front exterior staircase of 515 Capitol Avenue labeled item #9.
- A bloodstain on the first step of the front exterior staircase of 515 Capitol Avenue labeled item #7.
- Four blood stains in the street on the 500 block of Capitol Avenue labeled A, B, C, and D.
- A metal collapsible baton in the extended position located on the sidewalk in front of 515 Capitol Avenue labeled item #1.
- A metal collapsible baton in the extended position located in the driveway in front of the garage door of 515 Capitol Avenue labeled item #4.

## The Medical Examiner's Report

Sean Moore died on January 20th, 2020, while he was in the custody of the California Department of Corrections and Rehabilitation (CDCR). A flash drive with a full copy of the Coroner's Report is attached to this affidavit and incorporated herein as Exhibit 5. According to the Marin County Coroner's Office autopsy report # CR20-017, Chief Forensic Pathologist Dr. Joseph Cohen performed an autopsy on Moore on January 23, 2020. Dr. Cohen concluded Moore's manner of death was homicide. Moore died from Acute Intestinal Obstruction as a result of severe abdominal adhesions from remote gunshot wounds to the abdomen.

## Potentially Exculpatory Information

I am informed and believe the following potentially exculpatory evidence exists:

1. Sgt. Bodisco's opinion that Officer Cha has more use of force incidents than the average officer because he was a "pro-active" officer who is more likely to engage in incidents.
2. Sgt. Bodisco had to investigate Officer Cha's use of force as part of the Early Intervention System, which is a program designed to identify and address officers who engage in more use of force incidents than the average officer. At the end of the limited investigation, Sgt. Bodisco did not find enough sustained complaints to support a pattern of excessive use of force.

3.  Upon arrival at the scene, Sgt. Anderson observed that Cha appeared shaken and needed help with holstering his weapon.
4.  Officer Patino now believes he attempted to arrest Moore not for violation of the TRO, but for violation of Penal Code section 69. The conduct warranting that arrest, according to Officer Patino, was Moore telling the officers "You're getting off my stairs", opening the security gate and appearing aggressive to Patino.
5.  Officer Cha has complimentary reports in his personnel file.
6.  Moore was criminally charged with Penal Codes 243(C), 245(A), 422, 69(A), 148(A), 166(A) as a result of Cha's shooting on January 6, 2017. However, all the charges were dismissed after the Superior Court granted Moore's 995 motion and the Appellate Court affirmed the Superior Court's decision.



10. Sean Moore died 3 years and 14 days after Cha shot him.

13

## PRIOR COURT DECISIONS

### Officers Cha and Patino were not in lawful performance of their duties when they ascended Moore's staircase the second and third time.

Previous courts determined that Cha and Patino were not lawfully performing their duties as police officers when they used force against Moore by deploying pepper spray, their batons, and drawing a firearm and shooting Moore. By the time Cha and Patino first descended Moore's staircase, the courts reasoned the officers had obtained Moore's name, confirmed he was the restrained party in the order, and confirmed he had been served, but had not personally witnessed any violation of the restraining order or obtained authority to make a citizen's arrest. In the criminal prosecution of Moore for battery on Patino and Cha, the First Appellate District Court affirmed on appeal the Superior Court's finding that Cha and Patino were not acting lawfully when they ascended the staircase a second and third time.[3]

The court reasoned that even if the officers initially had the right to be on the stairway to investigate an alleged violation of the restraining order, the investigation was completed by the time they first descended the stairs as Moore had identified himself, acknowledged the restraining order, and said he had not violated it because he had simply taken out his garbage and swept his stairs.[4] The officers did not ask Choy to authorize a citizen's arrest. Even if the officers had lawfully reascended the stairs, they had no right to refuse Moore's demands that they leave, order Moore out of his home, or use pepper spray or other force against him. The court disagreed that Moore's comment, "You're done," was a criminal threat in the circumstances, or that Moore criminally assaulted the officers just prior to Cha's deployment of pepper spray.[5]

When Cha and Patino ascended Moore's staircase for the second time, Moore was not obligated to submit to further questioning within his home, and the officers could not arrest Moore for a misdemeanor violation of a restraining order not committed in their presence.[6] Moore's offensive language did not justify the officers continued presence in the curtilage of Moore's home or Moore's detention.[7] Cha and Patino were therefore criminally trespassing on Moore's property when they ascended his stairway a second time. Because Cha and Patino were trespassing, Moore not only had the right to use reasonable force to defend against Cha

---

[3] People v. Moore, App. Ct. No. A151276 (San Francisco City and County Super. Ct. No. SCN 22735) (Cal. Ct. App. May 1, 2018) 2018 Cal. App. Unpub. LEXIS 2966, *1, 2018 WL 2016792 at p.8 (unpublished decision affirming Superior Court's finding of insufficient evidence that the officers were lawfully performing their duties when Moore committed alleged crimes and set aside eight counts.)

[4] *Id.* at 8 ("Even if the officers initially had the right to be on the stairway to investigate an alleged violation of the restraining order, the investigation was completed by the time they first descended the stairs as Moore had identified himself, acknowledged the restraining order, and said he had not violated it because he had simply taken out his garbage.").

[5] *Id.*

[6] *Id.* at 13.

[7] *Id.*

and Patino's unreasonable force, but he also had a right to use reasonable force to eject the trespassers.[8]

It should be noted that in *Sean Moore v. City of San Francisco et al.*, the United States District Court of Northern California agreed and cited the Court of Appeal's opinion above when it granted the plaintiff's motion for summary adjudication.[9] The court found that as a matter of law, the defendant officers were not in legal performance of their duties when they re-entered Moore's stairway after descending the first time.[10]

<u>Officer Cha's explanation for shooting Moore is inconsistent<br>with the BWC footage of the event</u>

--" *I just see this guy just so enraged coming at me in a violent matter, throwing his hands and-and-and his feet towards me. And, uh, I just remember retreating down the stairs. I'm about to fall down, and I had nothing else to do but I was in fear for my, uh, for my life. [It was a knee-jerk], you know, [unintelligible]. I don't even know [what happened to call them]. And so I -- so I shot him.*"

Cha's BWC does not depict Moore throwing his hands or feet towards Cha. Cha was not retreating down the stairs, he was advancing up them with his handgun drawn and pointed at Moore.

As Cha and Patino ascended the stairs the third time, Moore did not take a fighting stance in response to Cha and Patino's advance and attack. Police officers are trained to look for behavioral indicators that a person is preparing to fight, which include: assuming a bladed stance fighting position and raising their fists and shoulders. Moore did not exhibit any of these traits prior to Cha and Patino's physical attack. To the contrary, Moore attempted to retreat into his home by walking backwards up four steps toward his security gate. As Moore retreated, Patino advanced up the stairs a third time and struck Moore with his metal baton, striking him at least twice on his legs and torso. Moore defended himself by striking Patino, who then fell down the stairs.

Police Officer Standards and Training courses at the Police Academy instruct that it takes approximately ¾ of a second to perceive a threat and ¾ of a second to physically react to a threat. I reviewed Officer Cha's BWC frame by frame and pulled out still images that are attached and referenced below as Exhibits 2b-2f. Thirty still images equal one second so the timing can be determined as each still image representing .033 seconds.

---

[8] *See* CALCRIM 3475.
[9] Case No. 18-cv-00634-SI (N.D. Cal. Dec. 10, 2020).
[10] *Id.* at 9.

Exhibit 2d depicts Cha advancing up the stairs with his firearm pointed at Moore, who is standing with both feet on the ground at the top landing of the stairs with a timestamp of 12:24:52. Less than 1 second (19 frames) later, Cha fires his first shot as depicted in 2e with a timestamp of 12:24:53. Cha fired his second shot into Moore's abdomen less than 0.5 second (12 frames) later as depicted in 2f with a timestamp of 12:24:53. Cha drew his weapon, advanced toward Moore, and began firing at Moore in less than 1.5 seconds (45 frames) after Moore attempted to defend himself by kicking away at Cha.

<u>CONCLUSION</u>

Because Cha's use of deadly force was excessive given that Moore was unarmed in his own home defending himself against excessive force by the trespassing officers, there is probable cause to arrest Cha for manslaughter.

<u>Presumption that killing is not criminal is rebutted by the evidence</u>

Penal Code § 194 states that if a death occurs beyond the time of three years and a day, there shall be a rebuttable presumption that the killing was not criminal. Here, the death occurred on January 20, 2020, more than three years and a day from the January 6, 2017 incident. However, the presumption in Penal Code § 194 is rebutted in this case by the Marin County Coroner's Office's report. The report determined that Moore's death was a homicide caused by an acute intestinal obstruction resulting from abdominal adhesions from remote gun-shot wounds to his abdomen sustained on January 6, 2017.

<u>**Findings**</u>

Based on the above-described investigation, and on my training and experience, it is my opinion there is probable cause to believe KENNETH CHA committed the following felonies:

<u>**COUNT 1**</u>

The said defendant, KENNETH CHA, did in the City and County of San Francisco, State of California, on or about the 6th day of 2017, through and including the 20th day of January, 2020, commit the crime of VOLUNTARY MANSLAUGHTER, to wit: Violating Section **192(a)** of the Penal Code, a Felony, in that the said defendant did willfully, unlawfully and without malice kill SEAN WENDELL MOORE, a human being, upon a sudden quarrel and heat of passion.

16

**ALLEGATION OF USE OF A FIREARM PURSUANT TO PENAL CODE SECTION 12022.5(a)**

It is further alleged that in the commission and attempted commission of the above felony offense, the said defendant, KENNETH CHA, personally used a firearm, to wit: .40 CALIBER PISTOL, within the meaning of Penal Code section 12022.5(a)


## COUNT 2

The said defendant, KENNETH CHA, did in the City and County of San Francisco, State of California, on or about the 6th day of January, 2017, commit the crime of ASSAULT WITH A SEMIAUTOMATIC FIREARM to wit: Violating Section **245(b)** of the Penal Code, a Felony, in that said defendant did willfully, unlawfully, and personally commit an assault on SEAN WENDELL MOORE, with a semi-automatic firearm, to wit: .40 CALIBER PISTOL.


**ALLEGATION OF USE OF FIREARM PURSUANT TO PENAL CODE SECTION 12022.5(d)**

It is further alleged that in the commission and attempted commission of the above felony offense, the said defendant, KENNETH CHA, personally used a firearm, to wit: .40 CALIBER PISTOL, within the meaning of Penal Code section 12022.5(d).

**ALLEGATION OF PERSONAL INFLICTION OF GREAT BODILY INJURY PURSUANT TO PENAL CODE SECTION 12022.7(a)**

It is further alleged that in the commission and attempted commission of the above felony offense, the said defendant, KENNETH CHA, personally inflicts great bodily injury, within the meaning of Penal Code section 12022.7(a).



I have disclosed to the Court and the Office of the District Attorney, City and County of San Francisco, all material information known to me which may be exculpatory, and said information is contained in this Affidavit of Support of Request for Arrest Warrant. I state, verify and certify under penalty of perjury that the foregoing is true and correct under the laws of the State of California.

Wherefore, I pray that a warrant of arrest be issued for the person of Kenneth Cha, date of birth, 08/07/1975, California Driver's License Card number A8437095.

Executed in San Francisco California on October 29th, 2021.

Inspector Andrew Koltuniak, Star #113
San Francisco District Attorney
City and County of San Francisco

*Subscribed and sworn before me*

*On this 29th day of October 2021, in the City and County of San Francisco*

Print Name: _____ Harold Kahn _____ Dept. 505 _____
*Judge of the Superior Court of the*
*City and County of San Francisco*

18