DAVID CHIU, SBN 189542
City Attorney
YVONNE MERÉ, SBN 189542
Chief Deputy City Attorney
JENNIFER CHOI, SBN 184058
Chief Trial Deputy
KARUN A. TILAK, SBN 323939
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Fl.
San Francisco, California 94102-5408
Telephone:    (415) 554-3308
Facsimile:     (415) 437-4644
E-Mail:        Karun.Tilak@sfcityatty.org

ERIN BERNSTEIN, SBN 231539
TAYLOR JASZEWSKI, SBN 345094
PRIANKA MISRA, SBN 348165
BRADLEY BERNSTEIN SANDS LLP
1212 Broadway, Suite 1100
Oakland, CA 94612
Telephone:    (510) 380-5801
E-Mail:        ebernstein@bradleybernstein.com

*Attorneys for Defendants*
CITY AND COUNTY OF SAN FRANCISCO,
SAN FRANCISCO DISTRICT ATTORNEY'S
OFFICE, CHESA BOUDIN, DANA DRUSINSKY,
STEPHANIE LACAMBRA, LATEEF GRAY,
REBECCA YOUNG, and ANDREW KOLTUNIAK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH CHA,<br><br>              Plaintiff,<br><br>       vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, CHESA BOUDIN, DANA DRUSINSKY, STEPHANIE LACAMBRA, LATEEF GRAY, and ANDREW KOLTUNIAK, and DOES 1-100,<br><br>              Defendants. | Case No. 24-CV-04700-PHK<br><br>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:              Peter H. Kang<br>Hearing Date:    August 28, 2025<br>Place:              Courtroom F, 15th Fl.<br>Time:               1:30 p.m.<br><br>Trial Date:        Feb. 8, 2027 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 28, 2025 at 1:30 p.m., Defendants City and County of San Francisco ("City"), San Francisco District Attorney's Office ("SFDA") (together with the City, the "entity defendants"), and Chesa Boudin, Lateef Gray, Dana Drusinsky, Stephanie Lacambra, and Andrew Koltuniak (together "individual defendants") will and hereby do move this Court, located in Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, for an order dismissing Plaintiff Kenneth Cha's ("Cha") First Amended Complaint ("FAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Cha's claims fail because 1) the harms he alleges arise from an arrest warrant supported by probable cause; 2) the entity defendants are immune from liability under *Monell*; 3) the individual defendants are immune from liability under prosecutorial and state law immunities; 4) the individual defendants have qualified immunity from liability for Plaintiff's claims against them.

The motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Request for Judicial Notice and Declaration of Karun Tilak filed herewith, the pleadings in this action, and such other matters as may be considered by the Court at the hearing.

# TABLE OF CONTENTS

ISSUES TO BE DECIDED ...........................................................................................10

INTRODUCTION .....................................................................................................10

FACTUAL BACKGROUND........................................................................................11

    I.      Cha Shoots Sean Moore on January 6, 2017.............................................11

    II.     DA's Office Determination to Pursue Criminal Charges Against Cha.............12

LEGAL STANDARD .................................................................................................15

ARGUMENT............................................................................................................15

    I.      Cha's Complaint Must Be Dismissed Because Probable Cause Existed for the Prosecution .......................................................................................15

          A.    Cha Cannot Rebut the Presumption of Probable Cause Created by a Neutral Magistrate Judge's Decision to Issue an Arrest Warrant .........17

          B.    Even Without the Magistrate Judge's Arrest Warrant, Probable Cause Existed for the Prosecution...................................................................20

    II.     The Court Should Dismiss All Claims for Relief Alleged Against the City and SFDA ............................................................................................22

          A.    No *Monell* Liability for Prosecutorial Functions.......................................23

          B.    Fourth Claim for Relief – Cha's *Monell* Claim is Based on Allegations Related to the DA's State Prosecutorial Functions and Therefore Should be Dismissed ....................................................................25

          C.    The Entity Defendants Should Be Dismissed as to Cha's Other Claims ...............................................................................................26

               1.  First, Second, and Third Claims for Relief Malicious Prosecution ...................................................................26

               2.  Fifth Claim for Relief - Supervisor Liability................................27

               3.  Sixth Claim for Relief – Conspiracy to Violate Civil Rights .............29

               4.  Seventh Claim for Relief – Negligent Hiring, Supervision, and Training. .................................................................................29

    III.    The Court Should Dismiss All Clams Against the Individual Defendants Because They are Based on Acts Subject to Prosecutorial Immunity...............30

          A.    First, Second, and Third Claims – Malicious Prosecution .....................31

           B.    Fifth and Seventh Claims for Relief – Supervisor Liability (1983); Negligent Hiring, Supervision, and Training (State Law)....................32

          C.    Sixth Claim for Relief - Conspiracy to Violate Civil Rights.................33

    IV.    Cha's Claims Against the Individual Defendants Must Be Dismissed Under the Doctrine of Qualified Immunity ........................................................34

CONCLUSION ........................................................................................................36

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Akhtar v. Mesa*
    698 F.3d 1202 (9th Cir. 2012)...............................................................15

*Arrington v. City of New York*
    628 F. App'x 46 (2d Cir. 2015) .............................................................35

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).............................................................................15

*Ashelman v. Pope*
    793 F.2d 1072 (9th Cir. 1986) ..............................................................34

*Boyd v. Cnty. of Riverside*
    No. EDCV 13-1282-JVS DTB, 2013 WL 4479657 (C.D. Cal. Aug. 20, 2013)...................34

*Briley v. California*
    564 F.2d 849 (9th Cir. 1977) ................................................................31

*Broam v. Bogan*
    320 F.3d 1023 (9th Cir. 2003) ..............................................................31

*Burns v. Reed*
    500 U.S. 478 (1991).............................................................................30

*Chaudhry v. Aragón*
    68 F.4th 1161 (9th Cir. 2023)...............................................................16

*City of Los Angeles v. Heller*
    475 U.S. 796 (1986).............................................................................16

*Cooley v. City of Walnut Creek*
    No. 18-CV-00719-YGR, 2018 WL 6330020 (N.D. Cal. Dec. 4, 2018) ................................23

*Craft v. White*
    840 F. App'x 372 (10th Cir. 2021) .........................................................35

*Daniels-Hall v. Nat'l Educ. Ass'n*
    629 F.3d 992 (9th Cir. 2010).................................................................15

*Deane v. Plumas Cnty.*
    74 F. App'x 715 (9th Cir. 2003) ............................................................19

*Del Campo v. Kennedy*
    517 F.3d 1070 (9th Cir. 2008) ................................................................................24

*District of Columbia v. Wesby*
    583 U.S. 48 (2018) ................................................................................... *passim*

*Dougherty v. City of Covina*
    654 F.3d 892 (9th Cir. 2011) ................................................................................23

*Ellins v. City of Sierra Madre*
    710 F.3d 1049 (9th Cir. 2013) ..............................................................................24

*Erazo Machado v. Boyd*
    No. 4:24-cv-03525-KAW, 2025 WL 1359064 (N.D. Cal. May 9, 2025) ..............18

*Estate of Levee v. Cnty. of Los Angeles*
    No. CV10-01266 SJO (FMOx), 2010 WL 11549362 (C.D. Cal. Aug. 26, 2010) ................33

*Ewing v. City of Stockton*
    588 F.3d 1218 (9th Cir. 2009) ........................................................................18, 19

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011) ..............................................................................15

*Flores v. Cnty. of Los Angeles*
    758 F.3d 1154 (9th Cir. 2014) ..............................................................................29

*Galen v. Cnty. of Los Angeles*
    477 F.3d 652, 663 (9th Cir. 2007) ........................................................................17

*Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) ................................................................21

*Goldstein v. City of Long Beach*
    715 F.3d 750 (9th Cir. 2013) ..........................................................................24, 27

*Golino v. City of New Haven*
    950 F.2d 864 (2d Cir. 1991) .................................................................................18

*Greene v. City of New York*
    742 F. App'x 532 (2d Cir. 2018) ..........................................................................29

*Haynesworth v. Miller*
    820 F.2d 1245 (D.C. Cir. 1987) ...........................................................................32

*Horton by Horton v. City of Santa Maria*
    915 F.3d 592 (9th Cir. 2019) ..................................................................23

*Imbler v. Pachtman*
    424 U.S. 409 (1976)...................................................................... *passim*

*Kaley v. United States*
    571 U.S. 320 (2014)..................................................................21

*Kalina v. Fletcher*
    522 U.S. 118 (1997).................................................................24, 31

*Kentucky v. Graham*
    473 U.S. 159 (1985).................................................................26

*Lacey v. Maricopa Cnty.*
    693 F.3d 896 (9th Cir. 2012) ........................................... *passim*

*Larson v. Bradshaw*
    No. CV 23-126-M-DLC-KLD, 2024 WL 4682717 (D. Mont. Sept. 30, 2024)...................31

*Lawlor v. Connelly*
    471 F. App'x 64 (2d Cir. 2012) ..................................................31

*Lee v. Harris*
    127 F.4th 666 (7th Cir. 2025)..................................................18

*Loftin v. City of Prentiss*
    33 F.4th 774 (5th Cir. 2022)..................................................35

*Lombardi v. City of El Cajon*
    117 F.3d 1117 (9th Cir. 1997)..................................................19

*Martin v. Cnty. of San Diego*
    No. 03-CV-1788-IEG (WMC), 2004 WL 7334370 (S.D. Cal. May 12, 2004)...................30

*McLennon v. City of New York*
    171 F. Supp. 3d 69, 99 (E.D.N.Y. 2016) ..................................................29

*Mitchell v. Forsyth*
    472 U.S. 511 (1985)..................................................30

*Monell v. Department of Social Services*
    436 U.S. 658 (1978)..................................................10, 23

*Moore v. City & Cnty. of San Francisco*
No. 18-cv-00634-SI, 2020 WL 7260530  (N.D. Cal. Dec. 10, 2020) ....................................11

*Morgan v. Cnty. of Los Angeles Dist. Attorney's Off.*
No. 2:23-CV-10474-MRA-MAR, 2025 WL 1260451 (C.D. Cal. Mar. 6, 2025) ............24, 28

*Nailing v. City of Los Angeles*
No. 2:22-cv-07224-AB-JC, 2024 WL 3851635 (C.D. Cal. June 11, 2024)...........................35

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ..................................................................................................15

*Pallas v. Accornero*
No. 3:19-cv-01171-LB, 2019 WL 2359215 (N.D. Cal. June 3, 2019) .......................21, 22, 35

*People v. Moore*
No. A151276, 2018 WL 2016792 (Cal. Ct. App. May 1, 2018)....................................11, 20

*People v. Rios*
23 Cal. 4th 450 (2006) ...........................................................................................................20

*Perez v. City of Fresno*
98 F.4th 919 (9th Cir. 2024)...................................................................................................28

*Perkins v. Delgadillo*
No. 2:23-CV-02563-FLA (DTB), 2024 WL 4452937 (C.D. Cal. Sept. 6, 2024) ............31, 34

*Phillips v. TLC Plumbing, Inc.*
172 Cal.App.4th 1133 (2009) .................................................................................................16

*Pitts v. Cnty. of Kern*
17 Cal.4th 340, 70 Cal.Rptr.2d 823 (1998)......................................................................24, 25

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*
130 F.3d 432 (9th Cir. 1997)..................................................................................................23

*Polanco v. Diaz*
76 F.4th 918, 925 (9th Cir. 2023)...........................................................................................34

*Pownall v. Krasner*
675 F. Supp.3d 517 (E.D. Pa. 2023).......................................................................................36

*Ramirez v. City of Buena Park*
560 F.3d 1012 (9th Cir. 2009) ................................................................................................21

*Rankin v. Bd. of Regents of Univ. Sys. of Ga.*
    732 F. App'x 779 (11th Cir. 2018) ...................................................................35

*Rehberg v. Paulk*
    611 F.3d 828 (11th Cir. 2010) .........................................................................17

*Riese v. Cnty. of Del Norte*
    No. 12-CV-03723-WHO, 2013 WL 5568707 (N.D. Cal. Oct. 9, 2013) .................25

*Roberts v. McAfee, Inc.*
    660 F.3d 1156 (9th Cir. 2011) ...................................................................17, 22

*Robicheaux v. Cnty. of Orange*
    750 F. Supp. 3d 1161 (C.D. Cal. 2024).................................................... *passim*

*Roe v. City & Cnty. of San Francisco*
    109 F.3d 578 (9th Cir. 1997) ...........................................................................31

*Sample v. City of Woodbury*
    836 F.3d 913 (8th Cir. 2016) ...........................................................................31

*Sanders v. City and Cnty. of San Francisco*
    226 F. App'x 687 (9th Cir. 2007) .....................................................................17

*Sanders v. City of Fresno*
    No. CIVA 05-0469 AWISMS, 2006 WL 1883394 (E.D. Cal. July 7, 2006) .........30

*Smith v. Almada*
    640 F.3d 931 (9th Cir. 2011) .....................................................................18, 19

*Smith v. Gribetz*
    958 F. Supp. 145, 154 (S.D.N.Y. 1997) ...........................................................31

*Sudderth v. City & Cnty. of San Francisco*
    No. 00-2337-MMC, 2001 WL 764929 (N.D. Cal. June 27, 2001) ....................22

*Tennison v. City & Cnty. of San Francisco*
    No. C 04-0574 CW, 2006 WL 733470 (N.D. Cal. Mar. 22, 2006) ....................17

*United States v. Gourde*
    440 F.3d 1065 (9th Cir. 2006) .........................................................................21

*United States v. Wilson*
    156 F.3d 1245, 1998 WL 482786 (10th Cir. 1998) ...........................................19

*United States v. Young*
    No. 21-cr-6025-FPG-MJP, 2021 WL 5772532 (W.D.N.Y. Aug. 20, 2021) .........................20

*Van de Kamp v. Goldstein*
    555 U.S. 335 (2009)................................................................................ *passim*

*Weiner v. San Diego Cnty.*
    210 F.3d 1025 (9th Cir. 2000) .........................................................................23, 24

*Whren v. United States*
    517 U.S. 806 (1996)..........................................................................................22

*Yousefian v. City of Glendale*
    779 F.3d 1010 (9th Cir. 2015) ........................................................................ *passim*

**<u>Statutes</u>**

Cal. Government Code § 815.................................................................................. 29

Cal. Penal Code § 192(a)....................................................................................20

**<u>Other Authorities</u>**

Marisa Lagos, *San Francisco District Attorney George Gascón Resigns*
    KQED News (Oct. 3, 2019)..............................................................................13

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES TO BE DECIDED**

3

4

1.  Whether Cha's complaint fails to state a cause of action because all his alleged harms arose from an arrest warrant supported by probable cause.

5

6

7

2.  Whether Cha's complaint fails to state a cause of action under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the individual defendants and the SFDA's Office acted in their capacity as state officials, and the City is an improper defendant.

8

9

3.  Whether Cha's claims against the individual defendants must be dismissed because they are entitled to absolute prosecutorial immunity.

10

11

12

4.  Whether Cha's claims against the individual defendants must be dismissed under the doctrine of qualified immunity because Cha fails to allege a constitutional violation and/or any such violation was not clearly established.

13

**INTRODUCTION**

14

15

16

17

18

19

20

21

22

23

24

   On January 6, 2017, Plaintiff former San Francisco Police Department ("SFPD") officer Kenneth Cha shot Sean Moore ("Moore") during an altercation on the front steps of Moore's home.  Moore died three years later in state prison, and the coroner listed his cause of death as a homicide attributable to severe injuries he suffered as a result of being shot by Cha. Defendant Chesa Boudin, the former District Attorney of San Francisco, and attorneys working for his office—including defendants Drusinsky, Gray, and Lacambra—exercising their role as state prosecutors, evaluated and ultimately brought criminal charges against Cha for voluntary manslaughter and assault with a semiautomatic firearm.  Defendant Koltuniak, an investigator with the DA's Office, prepared an affidavit in support of an arrest warrant for Cha.  After DA Boudin was recalled, the new District Attorney, Brooke Jenkins, exercised her prosecutorial discretion to dismiss the charges against Cha.

25

26

27

28

   Cha filed this lawsuit claiming that he was maliciously prosecuted in violation of his constitutional rights.  Cha alleges that his prosecution was part of a broader policy enacted by Boudin and the DA's Office to pursue biased prosecutions of police officers, and that the DA's Office negligently hired and trained staff who lacked the appropriate experience to

handle cases of police officer misconduct.  Defendants moved to dismiss on the grounds of absolute immunity, qualified immunity, and state-law immunities.  The Court expressed various concerns about the allegations in the Complaint, and Cha's counsel requested leave to amend the complaint.

Cha's First Amended Complaint ("FAC")—considerably longer, but no more meritorious—fails on multiple grounds.  Cha has already had the opportunity to amend his complaint once, and none of the deficiencies can be cured by further amendment.  The Court should therefore dismiss Cha's complaint without leave to amend.

## FACTUAL BACKGROUND

### I.    Cha Shoots Sean Moore on January 6, 2017

On January 6, 2017, Cha and his partner, SFPD Officer Colin Patino, were called to Moore's house in response to a complaint that Moore was violating a temporary restraining order obtained by his neighbor.  Dkt. 34, FAC ¶ 25.  Cha climbed the stairway of Moore's house and rang the doorbell.  *Id.* ¶ 26.  A metal gate separated the landing area in front of the door from the rest of the landing and the stairway.  *Id.*

Over the course of several minutes, Moore angrily yelled at the officers from behind the metal gate and demanded that they leave, at one point threatening to call and report the officers and asking for Patino's badge number.  FAC ¶¶ 27–30.[1]  Moore then opened and stepped through the metal gate and, while still on the landing, continued to demand that the officers leave.  *Id.* ¶ 31.  In response, Cha pepper sprayed Moore.  *Id.* ¶ 32.  Moore raised his left foot, and Cha claimed in a subsequent interview that Moore kicked him.  *Id.* ¶ 33.  The officers retreated down the stairs, and Moore picked up the restraining order documents and

---

[1] A California Court of Appeal later determined that Cha and Patino were not lawfully performing their duties after they ignored Moore's repeated demands that they leave his stairway because they no longer had a basis to remain on his property.  *See People v. Moore*, No. A151276, 2018 WL 2016792, at *6–7 (Cal. Ct. App. May 1, 2018) (unpublished); *see also Moore v. City & Cnty. of San Francisco*, No. 18-cv-00634-SI, 2020 WL 7260530 at *6–7 (N.D. Cal. Dec. 10, 2020).

went into the house.  *Id.*  Patino ordered Moore to return the restraining order papers and come out of the house because he was under arrest.  *Id.* ¶ 34.  Moore tossed the restraining order papers through the metal gate and reentered his house.  *Id.* ¶ 35.

But the officer continued to insist that Moore come out and threatened to "kick the gate open."  FAC ¶ 35.  Moore came out, complaining that he could not see.  *Id.*  While Patino was walking up the stairs to retrieve the papers, Moore, opened the gate, yelling at the officers and clenching his fists.  *Id.*  The officers retreated down the stairs and Patino pulled out his baton.  *Id.* ¶¶ 35–36.  Moore then dropped something from his hand.  *Id.* ¶ 37.  As he bent to pick something up from the stairs, Cha and Patino ordered him to get on the ground. *Id.*  Moore instead retreated up the stairs.  *Id.* ¶ 38.  The officers then advanced on him, and Patino struck him twice with his baton.  *Id.*  Patino later claimed that Moore punched him in the face, resulting in Patino suffering a broken nose.  *Id.*  At this point, Cha drew his firearm. As Moore raised his leg, Cha shot him twice, in the abdomen and in the leg.  *Id.* ¶ 39.  In his voluntary statement after the shooting, Cha stated that he thought he was going to die and that he faced great bodily harm or death as Moore came towards him.  *Id.* ¶ 40.

Moore was treated for serious injuries resulting from the shooting, including two gunshot wounds, a liver laceration, and traumatic injury to the right colon. FAC ¶ 41.  He died three years later, on January 20, 2020.  *Id.* ¶ 43.  While he suffered from numerous medical conditions, the coroner listed his death as a homicide because it was "primarily attributed to acute intestinal obstructions and severe abdominal adhesions from the gunshot injury."  *Id.* ¶ 44.

## II.    DA's Office Determination to Pursue Criminal Charges Against Cha

After the January 6, 2017 shooting—but prior to Moore's death—the DA's Office under former DA George Gascón investigated Cha's conduct, pursuant to policies in effect at the time. FAC ¶¶ 45–47.  A draft report declining to file charges against Moore was prepared sometime in December 2019.  *Id.* ¶ 51.[2]  The draft report concluded that the DA's Office

---

[2] Cha asserts that the declination report was finalized but not signed by DA Gascon. But that assertion is false based on judicially noticeable facts.  First, DA Gascón left office in

would be unable to prove beyond a reasonably doubt that Cha was guilty of criminal conduct.  FAC, Ex. 1 at 3.  Another assistant district attorney prepared a memorandum on January 16, 2020 (again, prior to Moore's death) also recommending against prosecution. FAC ¶ 64.

In January 2020, Defendant Boudin took office as the District Attorney.  Cha alleges that Boudin and his supervisor staff "introduced a policy of improper prosecutions of allegations of police misconduct" and directed that staff "re-evaluate SFPD OIS cases and directed ADAs to seek to find a path to bring prosecutions" in these cases.  FAC ¶ 52; *see also id.* at 56–57.  Cha alleges that pursuant to this policy, the DA's Office "re-opened" the investigation into Cha.  *Id.* ¶ 52.  As noted above, Moore also died in January 2020. *Id.* ¶ 43.

Cha alleges that Boudin and his administration re-assigned or fired investigators and assistant district attorneys who resisted re-evaluating officer-involved shooting cases, FAC ¶¶ 61–62, and replaced them with staff, including Defendants Gray, Lacambra, Drusinsky, and Koltuniak, who aligned with Boudin's prosecutorial goals and who allegedly had a bias against police officers. *See id.* ¶¶ 62–63.  Cha alleges the DA's Office did not have policies for screening off employees with a conflict of interest, and that Gray's alleged involvement in the evaluation of the Cha case created an alleged conflict of interest because, between January and March 2020, Gray remained counsel of record for Sean Moore and his family in their civil lawsuit against the City related to Moore's shooting.  *Id.* ¶¶ 68–75.

---

October 2019. *See* Marisa Lagos, *San Francisco District Attorney George Gascón Resigns*, KQED News (Oct. 3, 2019), https://www.kqed.org/news/11778096/san-francisco-district-attorney-george-gascon-resigns (stating that Gascon's resignation was effective October 18, 2019). Second, on November 7, 2019, Judge Illston issued an order requiring the District Attorney's Office to make a decision on whether to charge Kenneth Cha.  ECF No. 62, *Moore v. City & Cnty. of San Francisco*, No. 18-cv-00634 (N.D. Cal. Nov. 7, 2019).  On December 18, 2019—prior to Defendant Boudin's tenure as DA—the DA's Office under interim DA Suzy Loftus filed a response notifying the Court that it had not yet made a final decision and requesting additional time.  ECF No. 63.  Finally, the declination report appears to be a draft, with a placeholder date of "December X, 2019." FAC, Ex. 1 at 1.

Cha alleges various improprieties in connection with the decision to file criminal charges against him.  First, he alleges that Drusinsky and Lacambra pressured an investigator to remove exculpatory evidence from a search warrant application.  FAC ¶ 80.  But he acknowledges that the "search warrants appear to have been abandoned" and were never executed.  *Id.* ¶ 82.  Second, he alleges that Drusinsky and Lacambra, with approval from Boudin and Gray, empaneled an investigative grand jury to subpoena witnesses and testimony.  *Id.* ¶ 84.  The grand jury was not asked to decide whether Cha should be indicted on any crime.  *Id.*  Cha alleges that Drusinsky and Lacambra failed to present exculpatory evidence to the grand jury, and did not appropriately respond to grand juror questions.  *Id.* ¶¶ 86–88.  While Cha acknowledges that several officers were asked about prior interactions where Moore was aggressive or violent, he claims that Lacambra and Drusinsky "responded with leading questions that suggested Moore's actions were all due to a mental illness."  *Id.* ¶¶ 87–92.  Finally, Cha alleges that Koltuniak, acting under the supervision of Boudin and Gray, submitted an arrest warrant application for Cha's arrest that failed to include exculpatory facts and misstated certain facts.  *Id.* ¶¶ 104–109.  Cha alleges that Koltuniak lacked the appropriate qualifications or experience to draft the arrest warrant application.  *Id.* ¶¶ 98, 116.  The arrest warrant application attached, *inter alia*, Cha and Patino's body-worn camera footage and transcripts thereof, Cha's voluntary statement after the shooting and a transcript thereof, the autopsy report for Sean Moore, and two court decisions regarding the shooting.  Declaration of Karun Tilak ("Tilak Decl."), Ex. A at 011–014, 020, 025–122.   San Francisco Superior Court Judge Harold Kahn signed the arrest warrant for Cha's arrest.  FAC ¶ 115.

On November, 2, 2021, Cha was arrested and criminal proceedings were commenced.  *Id.* ¶ 119.  Defendant Boudin was recalled from office on July 8, 2022, and the new District Attorney, Brooke Jenkins, took office on January 8, 2023.  *Id.* ¶ 122.  After her appointment, a different prosecutor was assigned to the case and moved to dismiss the charges against Cha.  *Id.* ¶ 123.  The charges against Cha were dismissed on July 18, 2023.  *Id.* ¶ 130.

## LEGAL STANDARD

A court accepts as true the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  However, this tenet is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Likewise, a court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations.  Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (cleaned up).  In addition to the complaint itself, the court may consider any exhibits attached to the complaint and any matters subject to judicial notice and need not accept as true any of the complaint's allegations that are contradicted by them.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

Plaintiff has added length and detail to his First Amended Complaint, but the pleading still lacks any meritorious claims for relief.  All the harms Cha alleges in the FAC emanate from his purportedly unlawful arrest and prosecution.  But because that arrest and prosecution were supported by probable cause—both by inference after being signed by a magistrate judge and by independent review of the submitted materials—Cha cannot state a claim for *any* cause of action.  Further, even were Cha able to tie his alleged harms to other actions not arising from issuance of the arrest warrant, sovereign and prosecutorial immunity bar his claims against individual defendants and public entity defendants alike.

## I.    Cha's Complaint Must Be Dismissed Because Probable Cause Existed for the Prosecution

Because Cha's claims are all based on a purported lack of probable cause supporting his arrest warrant, his complaint fails.  The FAC alleges that Cha was improperly investigated, arrested, and prosecuted without probable cause because he acted in reasonable self-defense in killing Moore.  But to establish that constitutional violations arise out of his arrest and prosecution, Cha must necessarily show that there was no probable

cause. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims.").  Just as in his initial complaint, Cha's FAC fails to do so.

More particularly, though the FAC now focuses on various "policies" that led to the investigation, arrest warrant, and subsequent prosecution of Cha, the core allegation of the FAC is that the SFDA should not have taken those actions because no reasonable person would have believed that probable cause existed to arrest and prosecute him:

> No reasonable person in the circumstances of Defendants …would have believed that there were grounds for causing plaintiff KENNETH CHA to be arrested and prosecuted. Defendants lacked probable cause for the prosecution of criminal charges against plaintiff, based on the totality of the circumstances including facts demonstrating plaintiff's right of self-defense. FAC ¶ 140.

All the harms alleged in the FAC flow from the SFDA investigating and seeking a warrant against Cha.  FAC ¶¶ 145, 199, 250, 271, 296, 317, 300.  Thus, if probable cause existed to proceed against Cha, all of his claims for relief fail because he cannot show harm arising from his arrest, including his prosecution.  *See Chaudhry v. Aragón*, 68 F.4th 1161, 1170 (9th Cir. 2023) (a plaintiff alleging a § 1983 claim must "show they were deprived of a right, privilege, or immunity secured by the Constitution and laws" and that defendants' conduct was the cause of the harm); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (constitutional harm required for *Monell* claim); *Phillips v. TLC Plumbing, Inc.*, 172 Cal.App.4th 1133, 1139 (2009) (negligent hiring and training requires showing of causation and harm).[3]

---

[3] The requirement of causal nexus also precludes relief based on Plaintiff's allegations regarding the search warrant, *e.g.*, FAC ¶¶ 75–83, 208–214, and the grand jury, *e.g.*, FAC ¶¶ 84–95, 215–220.  The mere commencement of an investigation does not violate a constitutional right, so there is no constitutional harm from the prosecutors' decision to draft a search warrant or empanel a grand jury. *Rehberg v. Paulk*, 611 F.3d 828, 850 n.24 (11th Cir. 2010); *Sanders v. City and Cnty. of San Francisco*, 226 F. App'x 687, 689 (9th Cir. 2007) (unpublished) ("Appellants point to no case law that supports the proposition that probable cause must exist before an investigation can commence. That is not surprising, given that the impetus behind criminal investigations is to develop probable cause."); *Tennison v. City & Cnty. of San Francisco*, No. C 04-0574 CW, 2006 WL 733470, at *24 (N.D. Cal. Mar. 22, 2006)

### A. Cha Cannot Rebut the Presumption of Probable Cause Created by a Neutral Magistrate Judge's Decision to Issue an Arrest Warrant

The determination of probable cause is an objective one, focused on whether "it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011) (citation omitted). Probable cause is a question of law, *id.*, and the Court need not accept as true Cha's bald allegations that defendants lacked probable cause.

Even were defendants not immune from constitutional claims related to their presentation of the arrest warrant—which they are (as discussed below)—the issuance of that warrant by a neutral Superior Court judge breaks the causal chain of any harm alleged to arise from the presentation of an allegedly deficient request for a warrant. As the Ninth Circuit has explained, "a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007). This is because the issuance of an arrest warrant "which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see also Lee v. Harris*, 127 F.4th 666, 672 (7th Cir. 2025); *Erazo Machado v. Boyd*, No. 4:24-cv-03525-KAW, 2025 WL 1359064, at *7 (N.D. Cal. May 9, 2025).

Cha attempts to identify omissions or misstatements in the arrest warrant application that he claims vitiates the magistrate's probable cause determinations. FAC ¶¶ 242-246. But

---

("There is no constitutional right to have witnesses interviewed in a particular manner or to have the investigation carried on in a particular way"). Cha does not dispute that a search warrant application was never presented to a magistrate judge or issued, so he cannot show a constitutional harm based on the mere *drafting* of a search warrant. Likewise, Cha admits that the grand jury was never asked to consider an indictment against Plaintiff, FAC ¶ 217, and therefore cannot establish constitutional harm based on an alleged failure to present exculpatory evidence to a grand jury that was never asked to decide whether he should be charged. To the extent he claims that the failure to elicit certain testimony affected the lack of probable cause for his prosecution, that argument fails under the immunity doctrines discussed below and because probable cause in fact existed for his prosecution.

Cha cannot overcome the presumption of validity that attaches to the magistrate's determination of probable cause. To show that the arrest warrant was procured by "judicial deception," Cha must show that the officer "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause"—i.e., that "the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (citations and quotation marks omitted).

While Cha quibbles with the arrest warrant affidavit, it is undisputed that the warrant application attached copious supporting documentation, including the body-worn camera footage, Cha's voluntary statement, the coroner's report, and judicial opinions summarizing the relevant events. So whatever Cha claims that the magistrate *should* have looked at was *in fact* before the magistrate judge when he made his probable cause determination. For example, while Cha alleges that the arrest warrant application did not describe Moore's violent outbursts, that information was fully documented on the body-worn camera footage. Tilak Decl., Ex. A at 011–014, 020, 025–122. Similarly, while Cha claims that the application did not portray the threat that Cha faced given Moore's size and actions, Cha's voluntary statement and a transcript thereof was attached. *Id.* at 011–014, 020, 025–122. And while Cha claims that the arrest warrant application did not fully describe the coroner's report's findings, the coroner's report itself was attached to the application. *Id.* at 011–014, 020, 025–122.

It is well-established that the government "need not include all of the information in its possession" to obtain a warrant, *Ewing v. City of Stockton*, 588 F.3d 1218, 1226 (9th Cir. 2009) (citation and quotation marks omitted), and a warrant is only deficient if the alleged misstatements or omissions are "material"—i.e., if the magistrate "would not have issued the warrant with false information redacted, or omitted information restored," *Almada*, 640 F.3d at 937 (citation and quotation marks omitted). Here, Cha cannot show that there are any misstatements or omissions that are material to the probable cause determination. For example, Cha claims that the arrest warrant application mischaracterizes the decision in

*People v. Moore*.  But the application not only accurately describes the holding and includes specific citations to the case—it actually attached *the case itself*.  Cha also claims that the affidavit downplays Moore's violent actions and verbal altercations; the affidavit, however not only includes specific aggressive statements and actions (e.g., Moore's aggressive and profane statements to officers to "get your fucking ass off my stairs," "Get the fuck off my stairs," and his threat to "kick your ass punk, you're leaving here" and his kicking and punching movements), but also attached the full body-worn camera footage of the incident.  Tilak Decl., Ex. A at 011–014, 020, 025–122.

In other words, even if the Court were to exclude the purportedly inaccurate statements, the magistrate's determination of probable cause was still supported because the magistrate had the body-worn camera footage, the court's opinion, Cha's voluntary statement, the coroner's report, and other documentation.  *See, e.g., Almada*, 640 F.3d at 938 (even after excluding information alleged to be falsified, warrant still contained other facts sufficient to establish probable cause); *Ewing*, 588 F.3d at 1224–26 (warrant application had sufficient other facts to support probable cause even after two misrepresentations were omitted); *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997) (warrant applicant's failure to mention that informants were biased was not material where other information in application supported reliability of informants' statements).  Indeed, courts have routinely looked to attachments to warrant applications in determining that the information provided sufficiently supports a magistrate's finding of probable cause.  *See, e.g., Deane v. Plumas Cnty.*, 74 F. App'x 715, 716 (9th Cir. 2003) (unpublished) (rejecting judicial deception claim where exculpatory administrative decision was attached to probable cause affidavit); *United States v. Wilson*, 156 F.3d 1245, 1998 WL 482786, at *3 (10th Cir. 1998) (unpublished) (even where warrant application omitted fact that someone else owned the property to be searched, that omission was not material where county records noting ownership were attached to the warrant application); *United States v. Young*, No. 21-cr-6025-FPG-MJP, 2021 WL 5772532, at *4–5 (W.D.N.Y. Aug. 20, 2021) (relying on information in report attached to warrant application to find that there was probable cause for search).

The FAC cannot—and does not—allege facts sufficient to support a conclusion that the warrant would not have issued absent purported omissions or false statements. Accordingly, Cha's claims for relief must be dismissed, as each relies on the alleged lack of probable cause for arrest (and prosecution).

### B. Even Without the Magistrate Judge's Arrest Warrant, Probable Cause Existed for the Prosecution

Even if the Court were to consider Cha's allegations and the judicially noticeable documents afresh, probable cause existed to prosecute Cha. The determination of probable cause is an objective one, focused on whether "it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime." *Roberts*, 660 F.3d at 1164 (citation omitted).

Here, Cha was charged with voluntary manslaughter, "the unlawful killing of a human being without malice" "upon a sudden quarrel or heat of passion" or in imperfect self-defense. Cal. Penal Code § 192(a); *see People v. Rios*, 23 Cal. 4th 450, 460 (2006). He was also charged with assault with a semi-automatic firearm. Based only on the allegations in Cha's complaint, it is undisputed that Cha shot Moore with a semi-automatic firearm during a quarrel. FAC ¶ 2, 40-41. Moore was gravely injured by the shooting. *Id*. And after his death three years later, the coroner's report listed Moore's cause of death as a homicide attributable to injuries suffered from the shooting. *Id*. ¶ 44. It is also undisputed that, at the time of the investigation and charges at issue here, a Court of Appeal had determined that Cha and Patino were not lawfully present at Moore's home when the altercation occurred. *See Moore*, 2018 WL 2016792, at *6–7.

Cha does not allege that the individual defendants falsified any evidence or that these facts would be insufficient in and of themselves to create probable cause. Rather, Cha's claim rests on his argument that any probable cause was vitiated because he engaged in lawful self-defense and the prosecution would not be able to carry its burden at trial to prove beyond a reasonable doubt that Cha did not engage in lawful self-defense. *See, e.g.*, FAC ¶ 137. Indeed, the draft December 2019 memo that Cha cites concludes only that the DA's

Office could not establish *beyond a reasonable doubt* that "Officer Cha acted unreasonably or was not genuinely in fear of suffering great bodily injury when he fired his weapon." *Id.* ¶ 151.

Cha elides the distinction between the prosecution's high burden at trial—proof beyond a reasonable doubt—and the probable cause standard for malicious prosecution, which is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause only requires a "fair probability" – not certainty or even a preponderance of the evidence. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (*en banc*) (citation omitted). Crucially, probable cause "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975).

Courts have routinely found that an assertion of self-defense does not negate probable cause—particularly where it would involve resolution of conflicting interpretations of split-second decisions. *See, e.g.*, *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts"); *id.* at 68 ("[I]nnocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect."); *Yousefian*, 779 F.3d at 1014 ("The mere existence of some evidence that could suggest self-defense does not negate probable cause."); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (citation omitted) ("[T]he test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior."); *Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215, at *4–5 (N.D. Cal. June 3, 2019) (rejecting argument that assertion of self-defense negated probable cause, and collecting authorities from within the Ninth Circuit). Critically, the Ninth Circuit has made clear that "probable cause can well exist (and often does)" even if an assertion of self-defense ultimately defeats the prosecution's ability to persuade a jury of guilt beyond a reasonable doubt. *See Yousefian*, 779 F.3d at 1014.

Thus, even if the Court were to accept Cha's assertion that he had a viable self-defense claim and the prosecution would not be able to establish its case beyond a reasonable doubt, that point would not negate the existence of probable cause based on Cha's admissions that he, in fact, shot Moore during a quarrel and the coroner's listing of Moore's death as a homicide. *See Pallas*, 2019 WL 2359215, at *4-6 (finding, on a motion to dismiss, that probable cause existed notwithstanding assertion of self-defense where plaintiff admitted that he had struck victim albeit on the belief that he was about to be attacked); *Sudderth v. City & Cnty. of San Francisco*, No. 00-2337-MMC, 2001 WL 764929, at *5 (N.D. Cal. June 27, 2001) (probable cause existed where plaintiff admitted she hit victim, although she claimed it was in self-defense).[4]  While Cha makes various assertions about the individual defendants' bias, these allegations are irrelevant because probable cause is an objective test and does not focus on subjective intent.  *Roberts*, 660 F.3d at 1164; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").   Probable cause existed to issue the arrest warrant—whether we credit the magistrate's evaluation or re-evaluate the warrant application afresh—and because all of Cha's alleged harms flow from a purportedly deficient probable cause determination, all of his claims for relief should be dismissed.

## II.    The Court Should Dismiss All Claims for Relief Alleged Against the City and SFDA

A government entity can only be held liable based on execution of a government policy or custom under *Monell*; it cannot be held liable under a respondeat superior theory. See *Monell*, 436 U.S. at 692 (concluding that in enacting Section 1983, Congress "did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort").  A *Monell* claim is an action under Section 1983 against a government entity where a policy, practice or custom has caused an alleged

---

[4] The Court need not accept as true Cha's conclusions of law that his actions were objectively reasonable or that the prosecution could not prove beyond a reasonable doubt that he was not acting in lawful self-defense.

violation of constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

"In order to establish liability for governmental entities under *Monell*, a plaintiff must prove

'(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that

the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

constitutional violation.'" *Id.* (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d

432, 438 (9th Cir. 1997)). "In particular, municipalities may be liable under § 1983 for

constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3)

a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker."

*Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Although the FAC only explicitly alleges one claim for relief under *Monell* theories of

municipal liability, the City and SFDA are named defendants for all seven of the FAC's

claims. Thus, to state a claim against the government entities, Plaintiff must meet the *Monell*

standard for entity liability for each claim. He fails to do so for any of his claims for relief

against the entity defendants.

### A.    No *Monell* Liability for Prosecutorial Functions

Plaintiffs cannot state claims against localities under *Monell* for actions taken when

district attorney's offices decide whether to prosecute, prepare to prosecute, and are in the

midst of prosecuting crimes—because when executing those functions, the office acts on

behalf of the *state*, not the locality. *See, e.g.*, *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th

Cir. 2000) ("California district attorney is a state officer when deciding whether to prosecute

an individual."); *Robicheaux v. Cnty. of Orange*, 750 F. Supp. 3d 1161, 1167 (C.D. Cal. 2024); *see

also Cooley v. City of Walnut Creek*, No. 18-CV-00719-YGR, 2018 WL 6330020, at *9 (N.D. Cal.

Dec. 4, 2018).[5] This is because state officials, and those acting as state officials, possess

---

[5] When evaluating whether an action is a state function (and therefore cannot support *Monell*
claims against the locality), federal courts look to state law. *Ellins v. City of Sierra Madre*, 710
F.3d 1049, 1066 (9th Cir. 2013). Out-of-state cases regarding which prosecutorial functions
are state functions as opposed to local functions are therefore of limited use. The California
Supreme Court addressed the distinctions between prosecutorial (state) functions and

Eleventh Amendment immunity. *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008) (California district attorneys "act as state officials, and so possess Eleventh Amendment immunity, when acting in [their] prosecutorial capacity"). Thus, it is well-established that "a prosecutor's preparation and filing of charging documents and pursuit of criminal prosecution, even if malicious and without probable cause, are protected by absolute prosecutorial immunity." *Morgan v. Cnty. of Los Angeles Dist. Attorney's Off.*, No. 2:23-CV-10474-MRA-MAR, 2025 WL 1260451, at *4 (C.D. Cal. Mar. 6, 2025) (citing *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976)); *Kalina v. Fletcher*, 522 U.S. 118, 128-129 (1997); *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

District attorneys in California act on behalf of the state in regard not only to the trial of a case, but also prosecutorial training and policy, as well as charging and staffing decisions. *Goldstein v. City of Long Beach*, 715 F.3d 750, 762 (9th Cir. 2013) (distinguishing purely "administrative procedures" and administrative systems within a DA's office from prosecutorial training, policy, and acts); *Weiner*, 210 F.3d at 1031; *Gordon v. Perris Police Station*, No. EDCV18315RGKAGR, 2019 WL 3021465, at *8 (C.D. Cal. June 14, 2019), *report and recommendation adopted*, No. EDCV18315RGKAGR, 2019 WL 3017764 (C.D. Cal. July 10, 2019) (allegation that DA filed "baseless criminal charges" cannot be a basis for *Monell* claim).

Indeed, as the California Supreme Court notes, because even the investigative functions of the district attorney are supervised directly by the California Attorney General—not the County—actions in the "investigative and prosecutorial function of the district attorney of a county" are *state* and not local functions. *Pitts*, 17 Cal.4th at 361; *see also Riese v. Cnty. of Del Norte*, No. 12-CV-03723-WHO, 2013 WL 5568707, at *3 (N.D. Cal. Oct. 9, 2013) ("District Attorneys act as state officers, and not county officers, in their investigation and prosecution of criminal cases"). Likewise, California law establishes that a district attorney acts on behalf of the state when training personnel for and when developing policy

---

administrative (local) functions in *Pitts v. Cnty. of Kern*, 17 Cal.4th 340, 70 Cal.Rptr.2d 823 (1998).

regarding the preparation for prosecution and prosecution of criminal violations of state law. *Pitts*, 17 Cal.4th 340 at 366.

**B.     Fourth Claim for Relief – Cha's *Monell* Claim is Based on Allegations Related to the DA's State Prosecutorial Functions and Therefore Should be Dismissed**

The entirety of the FAC's *Monell* claim should be dismissed, as it alleges conduct within the parameters of the case law above establishing City and District Attorney sovereign immunity from § 1983 liability for actions related to: decisions to prosecute, preparation of prosecution, training and policymaking related to prosecutions, charging decisions, and staffing decisions. Here, the FAC's *Monell* cause of action is based on:

- "a policy of causing the improper investigations and prosecutions of allegations of police misconduct without probable cause" FAC ¶ 261-262.

- seeking "the frequent and improper prosecution of allegations of police officer misconduct" FAC ¶ 264.

- failure to establish policies/procedures to guide "whether to re-open" officer involved shooting cases for further investigation and prosecution FAC ¶ 266(A).

- failure to establish policies/procedures to guide hiring and staffing decisions on OIS cases FAC ¶ 266(B), (C).

- failure to establish policies/procedures to guide when to ethically screen individuals off OIS cases where DA employees might "influence…the investigation and prosecution"[6] FAC ¶ 266(D).

- failure to establish policies/procedures for insuring SFDA investigator independence in crafting search and arrest warrants FAC ¶ 266(E)).

None of the above allegations falls outside of *Wiener*'s articulation of prosecutorial functions that confer sovereign immunity. Rather, each is intimately related to core prosecutorial functions such as investigation in preparation for prosecution, charging decisions, staffing decisions, training and policymaking related to prosecutions, and prosecutorial support for warrants.

---

[6] Courts have rejected *Monell* liability for failure to screen District Attorneys off cases with potential conflicts as "squarely within *Wiener*" because conduct "during investigation" is a state prosecutorial function. *Riese*, 2013 WL 5568707, at *3 (N.D. Cal. Oct. 9, 2013).

**C.    The Entity Defendants Should Be Dismissed as to Cha's Other Claims**

In addition to the cause of action brought specifically under *Monell*, Cha names both the City and the SFDA as defendants in each of the FAC's other claims.[7]  Under the same reasoning as above, each of these causes of action fails to state a claim and should be dismissed as to the municipal defendants.

**1.    First, Second, and Third Claims for Relief – Malicious Prosecution (§ 1983)**

Both the City and the SFDA are immune from suit for malicious prosecution.  As discussed above, the decision to prosecute and to maintain that prosecution are core functions in which the District Attorney acts as a *state*, not local, official.  Courts have repeatedly held that malicious prosecution actions against District Attorneys brought under 1983 are not actions for which a locality may be held liable, but rather where the actor is executing a state function. *Robicheaux*, 750 F. Supp. 3d at 1167).

Here, the malicious prosecution claims arise from actions taken while "investigating plaintiff KENNETH CHA related to pursuing criminal charges against plaintiff," FAC ¶ 137, and "[i]n seeking to prosecute plaintiff KENNETH CHA and in pursuing criminal charges against plaintiff CHA."  FAC ¶ 232.  The alleged unlawful conduct underlying these claims for relief against the government entities is that "despite the lack of probable cause, defendants and each of them pursued a biased investigation with the intent to eventually prosecute plaintiff for manslaughter, whether or not probable cause existed." *Id.* ¶ 137.  This is squarely within the prosecutorial function discussed above, for which the government entities may not be held liable under *Monell*.  Likewise, the government entities may not be held liable for "improper investigation of crime," or "improper and biased investigation and prosecution," *id.* ¶ 55, as alleged in the FAC's Second Claim for Relief, as both investigation and prosecution are state functions, as discussed above.

---

[7] Cha also alleges claims against the individual defendants in their "official capacity." FAC ¶¶ 14–18.  But claims against municipal employees are effectively claims against the municipality, *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), and must be dismissed for the same reasons discussed in Part I.B and C.

Plaintiff attempts to skirt longstanding caselaw by alleging that the malicious prosecution liability is based on "administrative" policies (or lack of policies) related to investigation, preparation of prosecution, or prosecution put such actions outside of the scope of sovereign immunity.  FAC ¶ 152. But the Ninth Circuit has made clear that it looks at the actions (and related policies) not as labeled in the pleadings but as they function under state law.  *Goldstein v. City of Long Beach*, 715 F.3d at 760 (distinguishing administrative policies and training "related to the *general operation* of the district attorney's office" such as maintaining a central file for jailhouse informants from "prosecutorial training and policy") (emphasis added).

Nor should this Court construe allegations that District Attorney Boudin acted for political or personal motivations as placing Cha's prosecution within County responsibilities as opposed to the State's.  In *Robicheaux*, the court held Orange County and its District Attorney's Office immune from federal malicious prosecution liability arising from the investigation and prosecution of a case, because the District Attorney acts on behalf of the state—even where the elected DA is alleged to have proceeded with a particular prosecution due to political or campaign reasons. 750 F. Supp. 3d at 1170.[8]  So too here, despite the FAC's allegations, the investigation and later actions taken toward prosecuting Cha are on behalf of the state.  The entity defendants should accordingly be dismissed from claims 1-3 of the FAC.

### 2.     Fifth Claim for Relief - Supervisor Liability

The FAC names both government entities as defendants in the "supervisor liability" claim, alleging that Plaintiff has been harmed:

> [a]s a direct legal result of the improper supervision by CHESA BOUDIN; LATEEF GRAY; DANA DRUSINSKY; STEPHANIE LACAMBRA, of their respective subordinates, causing the biased

---

[8] In *Robicheaux*, the court took notice of the existence of a magistrate-issued arrest warrant to conclude that there was at least an implication of probable cause for the warrant, whatever the motivations of the prosecutor in seeking the warrant. *Id.* at 1170, n. 2.  The court then examined the post-warrant actions, finding them subject to immunity and dismissing the malicious prosecution claims against the County. *Id.*

investigation and prosecution by defendants … resulting in the criminal prosecution of plaintiff KENNETH CHA.  FAC ¶ 279).

These allegations are insufficient to support *Monell* liability on behalf of the City or the SFDA for two reasons: 1) they are within core prosecutorial functions of the District Attorney and are therefore subject to sovereign immunity; and 2) Plaintiff fails to allege facts sufficient to support the claim that other violations occurred before the conduct at issue took place sufficient to put the SFDA on notice of alleged deficiencies.

First, as discussed at length above, the functions of investigating and prosecuting a crime are core prosecutorial function on behalf of the state that cannot lead to municipal liability by the City or SFDA.  Here, the gravamen of the supervisor liability claim is that various members of the SFDA failed to appropriately supervise subordinates in their actions to investigate, prepare, charge, and eventually prosecute the case against Cha.  As such, neither the City nor the SFDA can be held liable for those actions, as these are state functions subject to sovereign immunity.

 Second, the FAC fails to allege a sufficient pattern of violations that provided notice to the City that supervision was deficient to arise to the level of deliberate indifference.  Mere negligence in training or supervision does not give rise to a *Monell* claim.  *Dougherty*, 654 F.3d at 900.  Rather, even were the entity defendants not immune from liability, the supervision claim fails unless policymakers are on "actual or constructive notice that a particular omission in their training program causes [its] employees to violate citizens' constitutional rights," and the policymakers "choose to retain that program." *Morgan v. Cnty. of Los Angeles Dist. Attorney's Off.* at *8 (C.D. Cal. Mar. 6, 2025); see also *Perez v. City of Fresno*, 98 F.4th 919, 931 (9th Cir. 2024) (explaining that deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action").

Unlike in *Villarreal v. Cnty. of Monterey*, 254 F. Supp. 3d 1168, 1184 (N.D. Cal. 2017), cited in the FAC as the legal basis for the supervisor liability claim, Plaintiff does not (and cannot) allege any preceding constitutional violations related to supervision sufficient to have put municipal defendants on notice.  In *Villarreal*, a case regarding jail medical care, the

court allowed the plaintiff to proceed against the county on supervisory liability theory based on the complaint's allegations of nearly a decade of supervisory issues. *Id.* Here, no such prior notice of violations exists.

Nor can Plaintiff rely on contemporaneous or subsequent violations to support its claim. *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring pattern of misconduct prior to complaint to proceed with failure to train/supervise claim); *see also Greene v. City of New York*, 742 F. App'x 532 (2d Cir. 2018) (summary order) ("A plaintiff cannot point to 'contemporaneous or subsequent' violations to 'establish a pattern of violations that provided notice to the city that it needed to conform its training *or supervising* program to constitutional dictates." (alterations omitted) (emphasis added)); *see also McLennon v. City of New York*, 171 F. Supp. 3d 69, 99 (E.D.N.Y. 2016) (finding that the plaintiff did not plead a municipal liability claim based on a failure to supervise theory because the underlying constitutional violation preceded the court decisions cited in the complaint).

### 3. Sixth Claim for Relief – Conspiracy to Violate Civil Rights

Although the conspiracy claim does not include the government entities in its heading, FAC at p. 86, it does include municipal defendants in the relief requested for the "counts" subsumed within the claim. FAC at p. 89-90. Because the causes of action themselves do not appear to be alleged against the City or SFDA, we assume the requests for relief against them to be inadvertent, and request the Court dismiss the conspiracy claim as to the entity defendants.

### 4. Seventh Claim for Relief – Negligent Hiring, Supervision, and Training.

California Government Code section 815 limits the liability of public entities to statutory claims. The FAC, however, does not cite a particular statutory basis on which the City or SFDA may be held liable for negligent hiring, training or supervision. Courts have repeatedly rejected such claims that are untethered to specific statutes. *See, e.g., Martin v. Cnty. of San Diego*, No. 03-CV-1788-IEG (WMC), 2004 WL 7334370, at *6 (S.D. Cal. May 12, 2004) ("[A] public entity may not be held directly or vicariously liable for negligent hiring,

training, supervision or discipline."); *Sanders v. City of Fresno*, No. CIVA 05-0469 AWISMS, 2006 WL 1883394, at *11 (E.D. Cal. July 7, 2006) (dismissing claims for claims for negligent training, discipline, retention).  This Court should do the same and decline to subject the entity defendants to liability under state law without a statutory basis for doing so.

### III.    The Court Should Dismiss All Clams Against the Individual Defendants Because They Are Based on Acts Subject to Prosecutorial Immunity.

As explained by the Ninth Circuit in *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012), prosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts:

> The Supreme Court has held that this rule [prosecutorial immunity] follows for the same reason that prosecutors were given immunity at common law—without it, resentful defendants would bring retaliatory lawsuits against their prosecutors, and because a prosecutor "inevitably makes many decisions that could engender colorable claims of constitutional deprivation[, d]efending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 425–26, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (internal quotation marks omitted). Without the promise of immunity from suit, a prosecutor would be distracted from his duties and timid in pursuing prosecutions rather than exercising the independent judgment and discretion that his office requires. *See id*. Moreover, "the judicial process is available as a check on prosecutorial actions," and it reduces the need for private suits for damages to keep prosecutors in line. *Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); see *Mitchell v. Forsyth*, 472 U.S. 511, 522–23, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("[T]he judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damages actions to prevent unjust results.").

Accordingly, prosecutors are absolutely immune from liability for the consequences of their advocacy, however inept or malicious, because that advocacy is filtered through a neutral and detached judicial body.  *Lacey*, 693 F.3d at 913.  Accordingly, prosecutorial immunity "extends to the failure to investigate prior to filing charges, the process of plea bargaining, the suppression of material evidence at trial, and the preparation and filing of an arrest warrant." *Larson v. Bradshaw*, No. CV 23-126-M-DLC-KLD, 2024 WL 4682717, at *3 (D. Mont. Sept. 30, 2024), *report and recommendation adopted*, No. CV 23-126-M-KLD-DLC, 2024 WL 4527710 (D. Mont. Oct. 18, 2024) (citing *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003));

*see also Briley v. California*, 564 F.2d 849, 856 (9th Cir. 1977); *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citing *Imbler*, 424 U.S. at 430); *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

Even where a plaintiff alleges that actions prior to a criminal trial are "investigative" in nature, each of the above listed functions is subject to prosecutorial immunity because they are prosecutorial in nature. *Perkins v. Delgadillo*, No. 2:23-CV-02563-FLA (DTB), 2024 WL 4452937, at *14 (C.D. Cal. Sept. 6, 2024), *report and recommendation adopted*, No. 2:23-CV-02563-FLA (DTB), 2024 WL 4250000 (C.D. Cal. Sept. 20, 2024) (prosecutor immune from claims arising from her "signing and executing a felony complaint and a warrant, withholding exculpatory evidence and providing the court misleading information"). In fact, as in his initial complaint, the conduct that Plaintiff complains of is protected by absolute immunity, including: 1) the exclusion of exculpatory evidence from an arrest warrant, *Kalina*, 522 U.S. at 130; *Sheehan v. Colangelo*, 53 F. App'x 584, 585–86 (2d Cir. 2002); 2) improper bias or political motive in pursuing charges against Plaintiff, *Imbler*, 421 U.S. at 427; *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997); *Sample v. City of Woodbury*, 836 F.3d 913, 916–17 (8th Cir. 2016); 3) withholding information from the investigative grand jury, *Lawlor v. Connelly*, 471 F. App'x 64, 65 (2d Cir. 2012); *Smith v. Gribetz*, 958 F. Supp. 145, 154 (S.D.N.Y. 1997); *Aisenberg v. Hillsborough Cnty. Sheriff's Office*, 325 F. Supp. 2d 1366, 1377–78 (M.D. Fla. 2004); and 4) improper supervision and training of prosecutors, *Van de Kamp*, 555 U.S. at 340; *Haynesworth v. Miller*, 820 F.2d 1245, 1268–69 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006).

## A.    First, Second, and Third Claims – Malicious Prosecution

Courts have repeatedly held that individual prosecutors are wholly immune from civil rights actions against them based on malicious prosecution. *Robicheaux*, 750 F. Supp. 3d at 1170 (district attorney and staff immune from malicious prosecution claim alleging "caus[ing] a criminal proceeding to be brought against Plaintiffs, caus[ing] Plaintiffs to be arrested and prosecuted, [and] caus[ing] the continuation of the prosecution of Plaintiffs"). Plaintiff's first three claims for relief center are titled "malicious prosecution" and each

recites facts attempting to undermine the judicially issued arrest warrant, the prosecutorial decision to charge Cha, and the maintenance of that suit.

*Robicheaux* is instructive here, as the claims against individual prosecutors there was similarly based on allegations that "no reasonable prosecutor would have believed that there were grounds for causing Plaintiffs to be arrested and prosecuted," and that the maintenance of that prosecution in light of the lack of probable cause constituted malicious prosecution in violation of 1983.  *Robicheaux,* 750 F. Supp. 3d at 1171.  But as that court noted in applying absolute prosecutorial immunity to bar the claims against the individual prosecutors, even were the prosecutor proceeding in bad faith, there (as here) the issuance of an arrest warrant by a magistrate judge indicates that probable cause did, indeed, exist.  *Id.*  And, in any event, as described above prosecutors also have immunity for actions taken in seeking an arrest warrant against an individual. *See supra* Section I.A.

### B.    Fifth and Seventh Claims for Relief – Supervisor Liability (§ 1983); Negligent Hiring, Supervision, and Training (State Law)

In these claims, Cha alleges that individual defendants violated his civil rights by staffing particular individuals on OIS-related prosecutions (including Cha's) and removing others who may have disagreed with the office's strategy or decision-making on such cases. Cha also alleges that individual defendants violated his civil rights by negligently hiring, supervising, and training others on OIS-related prosecutions.

But decisions related to appointments and removals in a particular matter are generally shielded from suit by absolute immunity. *Lacey,* 693 F.3d at 931.  Although an office's broader hiring and supervision practices may escape the scope of absolute immunity, Cha's allegations here are so specific to his case (and a small selection of other purported cases) that *Lacey* should apply to immunize individual defendants from suit based on hiring, supervision, and training as to Cha's prosecution.

Likewise, under state law, courts have applied discretionary acts immunity to state-law negligent hiring and training claims brought alongside § 1983 claims that allege civil rights violations. *See Estate of Levee v. Cnty. of Los Angeles,* No. CV10-01266 SJO (FMOx), 2010

WL 11549362, at *2 (C.D. Cal. Aug. 26, 2010) (extending § 820.2 immunity to "improper or negligent training and supervision" because they implicated Sheriff's policy discretion, despite alleged constitutional harms); see also *Ayala v. City of S. San Francisc*o, No. C 06-02061 WHA, 2007 WL 2070236, at *3 (N.D. Cal. July 13, 2007); *Estate of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1214 (E.D. Cal. 2005).  Similarly, a California appellate court recently applied official proceedings immunity to uphold a pleadings-stage dismissal where the plaintiff had claimed that the district attorney's office acted negligently in "screening, hiring, training," and supervising deputy district attorneys leading to an improper and meritless investigation and prosecution against her.  *Nelson v. Santa Barbara County Sheriff's Office*, No. B308778, 2024 WL 160960, at *5 (Cal. Ct. App. Jan. 16, 2024).  The *Nelson* court held that the plaintiff's claims related to the negligent hiring, training, and supervising of deputy prosecutors were barred by Section 821.6 because such acts were connected to the initiation or prosecution of an official proceeding. *Id.* at *6.  Consistent with state and federal caselaw, Cha's fifth and seventh claims of relief against the individual defendants must be dismissed.

### C.    Sixth Claim for Relief -  Conspiracy to Violate Civil Rights

Cha alleges that all individual defendants conspired to violate Cha's civil rights "with respect to the defendants' investigation into the Sean Moore shooting, and with respect to defendants' presentation to obtain an arrest warrant." FAC ¶ 300. Again, actions related to prosecutorial investigations and presentations to obtain a warrant fall within the scope of prosecutorial immunity and cannot form the basis of a § 1983 claim. *See supra* Section III.

Nor is a plaintiff's allegation that a prosecutor was engaged in a conspiracy to violate his civil rights sufficient to remove the prosecutor's entitlement to prosecutorial immunity. *See Perkins*, 2024 WL 4452937, at *8; see also *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986); *Boyd v. Cnty. of Riverside*, No. EDCV 13-1282-JVS DTB, 2013 WL 4479657, at *4 (C.D. Cal. Aug. 20, 2013) (applying prosecutorial immunity to dismiss complaint that defendants conspired to keep exculpatory evidence from plaintiff during the preliminary hearing and that they have conspired to continue to prosecute plaintiff although he has been sentenced).

### IV.    Cha's Claims Against the Individual Defendants Must Be Dismissed Under the Doctrine of Qualified Immunity

Even if the Individual Defendants are not entitled to absolute prosecutorial immunity (they are), and even if the arrest warrant lacked probable cause (it didn't), their actions are nonetheless protected by qualified immunity. Qualified immunity applies if Cha fails to plead sufficient facts to allege that the Defendants "(1) violated a constitutional right that (2) was clearly established at the time of the violation." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (citation omitted). Cha's claim fails at both steps of the inquiry. As discussed at length above, Cha fails to establish that defendants violated his constitutional right because he cannot show that the Individual Defendants lacked probable cause for his arrest and prosecution. *See supra* Section I.B.  But even had he properly alleged constitutional violations, he fails to show that such rights were clearly established at the time they occurred.

A clearly established right is one that is "sufficiently clear that every reasonable official would understand that what he is doing" is unlawful—i.e., the constitutionality of the official's conduct must be "beyond debate." *Wesby*, 583 U.S. at 63 (cleaned up).  A clearly established right must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (cleaned up).  The right must be defined with "a high degree of specificity," particularly in the context of a Fourth Amendment claim such as Cha's, because "officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered." *Id.* at 63–64 (cleaned up).  As such, the Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* at 64 (cleaned up). While an identical case is not required, "a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause." *Id.*

Cha cannot satisfy this demanding standard.  Cha's complaint alleges that individual defendants wrongly investigated him, sought a warrant without probable cause, and proceeded with a prosecution against him based on a political desire to prioritize prosecution of officers involved in shooting deaths. But as to each of his claims for relief, he

cannot point to case law that puts it beyond dispute that such prosecutorial acts violate the constitution.

For example, regarding Cha's allegations that defendants were required to credit his self-defense justification, Courts have generally declined to impose liability in similar circumstances.  See, e.g., *Yousefian*, 779 F.3d at 1014–15 (probable cause existed even where officer ignored plaintiff's statements that he acted in self-defense); *Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022) (officers entitled to qualified immunity for arresting plaintiff even though plaintiff asserted that he attacked victim after the victim brandished a weapon); *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021) (qualified immunity even where officer "could conceivably regard" plaintiff's action as self-defense and video evidence showed that victim provoked the plaintiff); *Rankin v. Bd. of Regents of Univ. Sys. of Ga.*, 732 F. App'x 779, 781 (11th Cir. 2018) (qualified immunity applies if even if there was evidence plaintiff was not the initial aggressor); *Arrington v. City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015) (citation omitted) (even where plaintiff's allegations of self-defense were plausible, "officers of reasonable competence could disagree on whether the probable cause test was met," and qualified immunity was therefore appropriate); see also *Nailing v. City of Los Angeles*, No. 2:22-cv-07224-AB-JC, 2024 WL 3851635, at *8–9 (C.D. Cal. June 11, 2024); *Pallas*, 2019 WL 2359215, at *6–7; *Sudderth*, 2001 WL 764929, at *5–6.  Considering this wealth of authority, Cha cannot establish that it was "beyond dispute" that the Individual Defendants lacked probable cause to prosecute Cha and that they were "plainly incompetent" or "knowingly violat[ing] the law" by prosecuting him.  *Wesby*, 583 U.S. at 63 (citation omitted).  The individual defendants are therefore entitled to qualified immunity.

Likewise, Cha cannot demonstrate clearly established law creating a constitutional right to have a criminal investigation and prosecution free of a purported political or personal motivation, or that a district attorney may not prioritize certain types of investigations and prosecutions over others.  Again, there is clear case law establishing the opposite. In *Robicheaux*, the court granted the motion to dismiss 1983 claims based on allegations that the District Attorney and his subordinates "sought out a high profile

salacious criminal prosecution with which to garner media attention and boost his reelection prospects," despite a "total lack of probable cause." *Robicheaux*, 750 F. Supp. 3d at 1165-70 (dismissing claims against district attorney for investigation and prosecution allegedly based on utility to re-election campaign).  In *Pownall v. Krasner*, the court similarly dismissed a civil rights action brought by a former Philadelphia police officer against the District Attorney, a prosecutor in his office, and the City of Philadelphia, where the former officer alleged a series of improprieties in his prosecution on criminal charges after he fatally shot a fleeing suspect while on duty.  675 F. Supp. 3d 517 (E.D. Pa. 2023), *aff'd*, No. 23-2049, 2024 WL 4164621 (3d Cir. Sept. 12, 2024).  There, the court rejected the plaintiff's allegations that the prosecution proceeded despite a purported lack of probable cause because it was "motivated by [District Attorney] Krasner's political agenda and campaign promises."  *Id*. at 521. In doing so, it found that allegations of "having a policy and procedure to target peace officers as a function of furthering its own political agenda" was "distinctly prosecutorial conduct" subject to immunity. *Id*. at 529.

Given the above authority weighing against the core allegations made by Cha against the individual defendants—that they lacked probable cause, ignored a self-defense theory, and were motivated by political or other bias—this Court should grant defendants' motion to dismiss based on qualified immunity.

## CONCLUSION

For the reasons stated above, the Court should dismiss Cha's First Amended Complaint in its entirety without leave to amend.

Dated: June 30, 2025                    Respectfully submitted,

                                        DAVID CHIU
                                        City Attorney
                                        YVONNE MERÉ
                                        Chief Deputy City Attorney
                                        JENNIFER CHOI
                                        Chief Trial Deputy
                                        KARUN A. TILAK
                                        Deputy City Attorney

                                        ERIN BERNSTEIN
                                        TAYLOR JASZEWSKI
                                        PRIANKA MISRA


                                   By:  ___*/s/ Erin Bernstein*_____
                                        ERIN BERNSTEIN

                                        *Attorneys for Defendants*
                                        CITY AND COUNTY OF SAN FRANCISCO,
                                        SAN FRANCISCO DISTRICT ATTORNEY'S
                                        OFFICE, CHESA BOUDIN, DANA DRUSINSKY,
                                        STEPHANIE LACAMBRA, LATEEF GRAY,
                                        REBECCA YOUNG, and ANDREW KOLTUNIAK