1  EUSTACE DE SAINT PHALLE, SBN 179100
2  OLIVIA K. LEARY, SBN 329145
   RAINS LUCIA STERN ST. PHALLE & SILVER, PC
3  2300 Contra Costa Blvd., Suite 500
   Pleasant Hill, CA 94523
4  Tel: (925) 609-1699
   Fax: (925) 609-1690
5  E-mail: PersonalInjuryGroup@RLSlawyers.com

6  ATTORNEYS FOR PLAINTIFF
7  KENNETH CHA

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  KENNETH CHA,                          CASE NO. 3:24-cv-4700-PHK

12              Plaintiff,                **PLAINTIFF KENNETH CHA'S RESPONSE
                                          TO DEFENDANTS' MOTION TO DISMISS
13      vs.                               FIRST AMENDED COMPLAINT**

14  CITY AND COUNTY OF SAN FRANCISCO;
    SAN FRANCISCO DISTRICT ATTORNEY'S     Judge: Peter H. Kang
15  OFFICE; CHESA BOUDIN; DANA            Hearing Date: September 9, 2025
    DRUSINSKY; STEPHANIE LACAMBRA;        Place: Courtroom F, 15th Fl.
16  LATEEF GRAY; REBECCA YOUNG;           Time: 1:30 p.m.
    ANDREW KOLTUNIAK; and DOES 1-100,
17
18              Defendants.
19

20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      SUMMARY OF OPPOSITION ......................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................... 1

        A.      Ofc. Kenneth Cha Responded to Sean Moore's Violence By Firing His
                Weapon .............................................................................................. 1

        B.      Under Boudin, the SFDA Office Established Improper Policies and
                Procedures ......................................................................................... 2

        C.      The SFDA Office Conducted a Biased Investigation of Ofc. Cha ....................... 4

        D.      Defendants' Arrest Warrant Affidavit Included Falsehoods and Misleading
                Statements, But Omitted Relevant Exculpatory Facts ........................................... 5

        E.      Cha Case Dismissed by New District Attorney Jenkins and ADA Darby
                Williams ............................................................................................. 7

III.    PROCEDURAL BACKGROUND ..................................................................... 8

IV.     STANDARD OF REVIEW ON MOTION TO DISMISS ........................................... 9

V.      ARGUMENT ............................................................................................ 10

        A.      There Was No Probable Cause to Arrest and Prosecute Cha ............................. 10

                1.      Exculpatory Facts Eliminate Probable Cause ............................................ 10

                2.      Defendants' Charges Inherently Involve the Refutation of Claims of
                        Self-Defense ................................................................................ 12

                3.      Defendants Were Aware of Clear, Objective Evidence that Cha Acted
                        in Self-Defense ............................................................................. 13

                4.      Defendant's Cases Do Not Involve Clear, Objective Evidence of Self-
                        Defense ..................................................................................... 13

                5.      The Arrest Warrant Was Obtained Through Falsehoods and
                        Deception ................................................................................... 14

                6.      A Reasonable "Corrected Affidavit" Would Demonstrate Self-Defense . 16

                7.      Defendants' False Statements Are Not Cured by Attaching
                        Contradictory Materials ..................................................................... 16

        B.      The Individual Defendants Cannot Claim Qualified Immunity ........................... 18

                1.      Since Probable Cause Was Not Present, Qualified Immunity Is Not
                        Available ................................................................................... 18

2.    Probable Cause Analysis Cannot Ignore Objective Evidence .................. 18

3.    Qualified Immunity Should Not Be Evaluated on a Motion to Dismiss .. 20

C.    The City and The SFDA Are Properly Sued Under *Monell* ................................ 20

1.    Sovereign Immunity Does Not Apply To A Prosecutor's
Administrative Conduct ................................................................................ 20

2.    The FAC Alleges Administrative Conduct Not Subject to Sovereign
Immunity .................................................................................................... 21

3.    Defendants' Cases Do Not Address the Issues Raised in Plaintiff's
*Monell* Claims ........................................................................................... 22

4.    The City and SFDA Are Properly Sued for Supervisory Liability .......... 23

i.    Supervisory Liability ...................................................... 23

ii.    The SFDA's Policies Were Obviously Likely To Result in a
Violation of Rights ........................................................ 25

D.    Prosecutorial Immunity .......................................................................... 26

1.    Only Prosecutorial Conduct Is Protected By Absolute Immunity .......... 26

2.    The FAC Alleges Conduct That Is Not Protected By Absolute
Immunity .................................................................................................... 26

3.    The Conduct Described in the FAC Is Not "Prosecutorial" .................... 27

4.    The Claims Regarding Conspiracy Are Valid ............................................. 29

E.    California Law Immunities ........................................................................ 29

VI.    CONCLUSION ............................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*Arrington v. City of New York*, 628 F. App'x 46 (2d Cir. 2015)............................................................19

*Ayala v. City of S. San Francisco*, 2007 U.S.Dist.LEXIS 54051 (N.D.Cal. July 13, 2007, No. C 06-02061 WHA)..................................................................30

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003)............................................................10, 26, 27

*Buckey v. County of Los Angeles*, 968 F.2d 791 (9th Cir. 1992).............................................................9

*Burns v. Reed*, 500 U.S. 478 (1991)............................................................26

*Caldwell v. Montoya*, 10 Cal.4th 972 (1995)............................................................30

*Cardinal v. Buchnoff*, 2010 U.S.Dist.LEXIS 86523 (S.D.Cal. Aug. 23, 2010, No. 06CV0072-MMA(BLM)..................................................................20

*Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98 (D.Conn. 2019) ............................................................15

*City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ............................................................23

*Colonies Partners LP v. Cnty. of San Bernardino*, No. EDCV 18-420 JGB (SHKx)) 2020 U.S.Dist.LEXIS 160672 (C.D.Cal. July 28, 2020)............................................................9, 27

*County of L.A. v. Superior Court*, 78 Cal.App.4th 212 (2000) ............................................................29

*Craft v. White*, 840 F. App'x 372  (10th Cir. 2021)............................................................19

*Deane v. Plumas County*, 74 F. App'x 715 (9th Cir. 2003)............................................................17, 20

*Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008)............................................................22, 28

*DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990)............................................................15

*District of Columbia v. Wesby*, 583 U.S. 48 (2018)............................................................10, 14

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011)............................................................23

*Estate of Abdollahi v. County of Sacramento*, 405 F.Supp.2d 1194 (E.D.Cal. 2005)............................................................30

*Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir. 1999)............................................................10

*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009) ............................................................20

*Flores v. Cnty. of Los Angeles*, 758 F.3d 1154 (9th Cir. 2014)............................................................25

*Fogle v. Sokol*, 957 F.3d 148 (3d Cir. 2020) ............................................................9, 20, 26

*Franks v. Delaware*, 438 U.S. 154 (1978) ............................................................15, 17

*Genzler v. Longanbach*, 384 F.3d 1092 (9th Cir. 2004)................................................................26, 28

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ........................................................................9

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ................................................................9

*Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013), ........................................................21

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ..............................................15, 17, 20

*Grisom v. Logan*, 334 F.Supp. 273 (C.D.Cal. 1971) ............................................................................29

*Gunn v. Cont'l Cas. Co.*, 968 F.3d 802 (7th Cir. 2020) ........................................................................9

*Halebian v. Berv*, 644 F.3d 122 (2d Cir. 2011) ....................................................................................9

*Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988) ....................................................................................29

*Harper v. City of L.A.*, 533 F.3d 1010 (9th Cir. 2008) ........................................................................10

*Horton by Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019) ......................................21, 23

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ..........................................................................................26

*Jackson v. Town of Bloomfield*, 2015 U.S.Dist.LEXIS 33331 (D.Conn. Mar. 18, 2015, No. 3:12-cv-00924 (MPS) ........................................................................................................................................15

*Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003)................................................................................11

*Johnson v. State of California*, 69 Cal.2d 782 (1968) ........................................................................30

*Kalina v. Fletcher*, 522 U.S. 118 (1997)............................................................................................23

*Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999) ..................................................................................11

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ................................................................24

*Lee v. Harris*, 127 F.4th 666 (7th Cir. 2025)......................................................................................20

*Leon v. County of Riverside*, 14 Cal.5th 910 (2023) ..........................................................................30

*Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997) ........................................................15, 16

*Loftin v. City of Prentiss*, 33 F.4th 774 (5th Cir. 2022)......................................................................19

*Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997) ............................................................20

*Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780 (1985)....................................................30

*McColley v. County of Rensselaer*, 2012 U.S.Dist.LEXIS 62905 (N.D.N.Y. May 4, 2012, No. 1:08-CV-01141 (LEK/DRH) ............................................................................................................................15

*Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017) ..................................................................................20

*Morgan v. Cnty. of Los Angeles Dist. Attorney's Off.*, 2025 U.S.Dist.LEXIS 40872 (C.D.Cal. Mar. 6, 2025, No. 2:23-cv-10474-MRA-MAR) ................................................................. 25

*Nailing v. City of Los Angeles*, No. 2:22-cv-07224-AB-JC, 2024 WL 3851635 (C.D. Cal. June 11, 2024) ........................................................................................................................... 19

*Nelson v. Rains*, 2006 U.S.Dist.LEXIS 36549 (D.Kan. June 5, 2006, No. 06-2072-JWL) .................... 29

*Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999) .................................................................. 10

*Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215 (N.D. Cal. June 3, 2019) ........... 14, 19

*People v. Banks*, 67 Cal.App.3d 379 (1976) ............................................................................ 12

*People v. Cruz-Partida*, 79 Cal. App. 5th 197 (2022) ............................................................... 13

*People v. Lynch*, 101 Cal. 229 (1894) ..................................................................................... 12

*Pines v. Bailey*, 563 F. App'x 814 (2d Cir. 2014) ..................................................................... 16

*Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023) .................................................................... 9, 18

*Pratt v. Snohomish County*, 1994 U.S. App. LEXIS 730 (9th Cir. Jan. 14, 1994, No. 93-35658) .......... 15

*Puckett v. Cnty. of Sacramento*, 2024 U.S.Dist.LEXIS 56662 (E.D.Cal. 2024, No. 2:22-cv-0350 KJM DB) ......................................................................................................................... 21

*Ramirez v. City of Buena Park*, 560 F.3d 1012 (9th Cir. 2009) ................................................... 14

*Ramirez v. County of Los Angeles*, 397 F.Supp.2d 1208 (C.D.Cal. 2005) ................................. 15, 19

*Reyes v. Greer*, 686 F. Supp. 3d 524 (W.D.Tex. 2023) .......................................................... 11, 13, 18

*Riese v. Cnty. of Del Norte*, No. 12-CV-03723-WHO, 2013 WL 5568707 (N.D. Cal. Oct. 9, 2013) .... 24

*Rieves v. Town of Smyrna*, 959 F.3d 678 (6th Cir. 2020) .......................................................... 27

*Robicheaux v. Cnty. of Orange*, 750 F. Supp. 3d 1161 (C.D.Cal. 2024) ................................... 22, 28

*Rodriguez v. California Highway Patrol*, 89 F.Supp.2d 1131 (N.D.Cal. 2000) ............................ 29, 30

*Rodriguez v. Cty. of L.A.*, 891 F.3d 776 (9th Cir. 2018) ........................................................... 24

*Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011) ...................................................................... 20

*Smith v. Gribetz*, 958 F. Supp.145 (S.D.N.Y. 1997) ................................................................. 27

*Sudderth v. City & Cnty. of San Francisco*, No. 00-2337-MMC, 2001 WL 764929, 2001 U.S.Dist.LEXIS 9467 (N.D. Cal. June 27, 2001) ............................................................. 14, 19

*Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003) .................................................... 9, 20

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FIRST AMD. COMPLAINT

*Thomas v. City of Galveston, 800 F.Supp.2d 826 (S.D.Tex. 2011)* ................................... 11, 13

*United States v. Leon, 468 U.S. 897 (1984)* .................................................................... 15

*United States v. Stanert, 762 F.2d 775 (9th Cir. 1985)* .................................................... 16

*United States v. Wilson, 156 F.3d 1245, 1998 WL 482786  (10th Cir. 1998)* ....................... 17

*United States v. Young, No. 21-cr-6025-FPG-MJP, 2021 WL 5772532 (W.D.N.Y. Aug. 20, 2021)*...... 17

*Van de Kamp v. Goldstein, 555 U.S. 335 (2009)* ......................................................... 23, 24

*Villarreal v. Cnty. of Monterey, 254 F. Supp. 3d 1168 (N.D. Cal. 2017)*............................ 23

*Weiner v. San Diego Cnty., 210 F.3d 1025 (9th Cir. 2000)* .............................................. 22

*Williams v. Sirmons, 307 Fed. App'x 354 (11th Cir. 2009)* .............................................. 10

*Wool v. Tandem Computers, Inc., 818 F.2d 1433 (9th Cir. 1987)* ....................................... 9

*Yousefian v. City of Glendale, 779 F.3d 1010 (9th Cir. 2015)* ................................ 10, 14, 19, 20

**Statutes**

Cal Govt Code §820.2...................................................................................................... 30

Cal Govt Code §821.6............................................................................................... 29, 30

Cal Pen Code §194........................................................................................................... 5

Cal Pen Code §197.................................................................................................. 5, 12, 13

Cal Pen Code §240................................................................................................... 12, 13

Cal Pen Code §245...............................................................................................7, 12, 13

**Other Authorities**

CalCrim 505........................................................................................................... 12, 13

CalCrim 570................................................................................................................... 12

CalCrim 571...................................................................................................... 10, 12, 13

CalCrim 572................................................................................................................... 12

https://sfdistrictattorney.org/wp-content/uploads/2023/05/05.09.23-SFDA-Charging-Policy.pdf .......... 8

# I.    SUMMARY OF OPPOSITION

To grant immunity to prosecutors against civil penalties where they intentionally mislead a grand jury and a judge in order to manufacture homicide charges against a completely innocent person is to sanction and incentivize the most outrageous government conduct.

The concept of immunity, for prosecutors and peace officers, is about setting proper incentives for the benefit of society.  If there is no immunity, no one would ever do the job.  Well-meaning people could make a mistake or a bad decision and suffer substantial consequences for it.  We need prosecutors and we need the police, and so we must make not make the prospect of a big mistake a deal breaker for those who want to engage in these respective professions.

Immunity is not intended to protect those who violate people's rights by providing misleading information to judges, both as to the facts and the law, in a case where they are seeking homicide charges.  This is an extraordinary instance of the abuse of the power of the office of the district attorney.  Former District Attorney Chesa Boudin and the other named defendants in this matter stepped outside of their roles as prosecutors to carefully orchestrate and manufacture charges against Kenneth Cha when they knew there was not probable cause. They intentionally provided misleading, inaccurate and incomplete information to a grand jury and a judge in order to charge a homicide in a case that had been previously deemed ethically barred from prosecution.

Defendants' Motion does not dispute that the arrest warrant affidavit was inaccurate and mis-stated the evidence, deliberately attempting to deceive the judge. It does not deny that Moore assaulted the officers, nor does it deny Cha acted in self-defense. It does not dispute that defendants hired Lateef Gray and allowed him to manage the Cha case despite a glaring conflict of interest.

Defendants' conduct shocks the conscience and demands further scrutiny. There is little question that discovery will bring to light more shocking conduct in this case. In this extraordinary case of an extraordinary abuse of power, the Plaintiff must be able to proceed.

# II.    FACTUAL BACKGROUND

## A.    Ofc. Kenneth Cha Responded to Sean Moore's Violence By Firing His Weapon

On January 6, 2017, Officer Kenneth Cha shot Sean Moore during an attempted arrest. Moore, estimated to have been six-feet-four inches tall and weighing about 275 pounds, had a history of

violent conduct and restraining orders against him. (First Amended Complaint ["FAC"], ¶23) Earlier that morning, Ofc. Cha and his partner Colin Patino were there to investigate the neighbor's complaint that Moore had violated a temporary restraining order. After several hostile interactions, when Moore approached aggressively waving his arms, Cha sprayed pepper spray in Moore's direction. (¶31) Moore then kicked Cha in the face and retreated into his home. (¶31-32) Moore then came back out, adopted an aggressive stance, and said "I'm a kick your ass, punk." (¶35)

Moore reached down to pick something up and Ofc, Patino advanced with his night stick, attempting an arrest. Moore had tried to block the baton and punched Patino in the face with a fist, breaking Patino's nose. This caused Patino to suddenly fall backwards on the stair. (¶38) With his partner down, Cha faced Moore who was standing above him with a height/weight advantage. Cha then drew his firearm and pointed it at Moore. Mr. Moore launched forward and kicked down at Officer Cha, who then fired his firearm as he fell backwards down the stairs. Video footage shows while Cha was initially catching himself due to Patino contacting him as he fell down the stairway. As Moore launched forward with his body and kicked out with his foot, Cha ascended a few stairs and fired his weapon. Cha struck Moore twice, in the abdomen and the leg. (¶36) Ofc. Cha later recounted, "I thought I was going to die.... I knew that Colin and I, [would face] …great bodily harm or we were going to die." (¶40)

Moore was treated for two gunshot wounds, a liver laceration, and traumatic injury to the area of the right colon; he had abdominal surgery for his injuries (¶41) Over three years later, Moore died in San Quentin State Prison January 20, 2020. Pursuant to the medical reports, Sean Moore suffered numerous medical conditions. Thus, the gunshot wound may or may not have been the proximate cause of Mr. Moore's cause of death. (¶43) Because the cause of death was primarily attributed to acute intestinal obstructions and severe abdominal adhesions from the gunshot injury three plus years prior, the cause of death was listed as "homicide." (¶44) ("Homicide" is a neutral term used by coroners that does not denote criminal intent; see St. Phalle Dec. Ex. 5 re Death Classification)

**B.    Under Boudin, the SFDA Office Established Improper Policies and Procedures**

Under prior DA George Gascon, SFDA's Office had internal policies and procedures in place to ensure that investigations and prosecutions, were conducted properly, including: ensuring personnel functioned in an unbiased manner; proper identification and handling of conflicts of interest; ensuring

the training and experience of personnel; ensuring the independence of SFDA Investigators; ensuring reasonable cause for re-opening closed OIS cases; and, utilizing Grand Juries appropriately, by presenting an unbiased and complete overview of the evidence. (¶¶46-47) Under Gascon, the SFDA investigated the Moore incident, finding that Officer Cha had a reasonable belief that if he did not use force, he would suffer serious bodily injury or even death at the hands of Mr. Moore. The SFDA concluded that there was a lack of probable cause that the officers had committed a crime. (¶¶48-51)

On assuming office as District Attorney in January 2020, Chesa Boudin and other officials at SFDA's office sought the improper prosecution of allegations of police officer misconduct, irrespective of the actual case facts and the existence or nonexistence of probable cause. To effect this, Chesa Boudin created improper policies and procedures for the SFDA office. These were office-wide policies that affected multiple cases, and particularly officer-involved shooting (OIS) cases.

Chesa Boudin instituted an administrative policy to re-evaluate SFPD OIS cases, and directed the ADAs to work to bring prosecutions in cases where there had been a prior decision to decline to prosecute, such as the Cha, Samoyoa, and Stangel cases. (FAC ¶52) Under Boudin, the SFDA failed to have any internal policies and procedures to confirm that adequate probable cause existed, based on new evidence, to permit further investigation and prosecution of these previously evaluated and declined cases. (¶58-60; see, 1st Claim for Relief, 1st Count)

In order to change the handling of OIS cases at the SFDA office, Boudin intentionally hired personnel who would support his goals. Under Boudin, the SFDA specifically selected personnel who were known to hold a bias against police officers and would attempt to prosecute OIS cases, even without probable cause. Boudin hired Lateef Gray, who had represented Sean Moore's family, along with inexperienced ADAs such as Drusinksy and Lacambra, former criminal defense attorneys with a bias against police officers. Boudin reassigned or fired the more experienced ADAs and investigators who resisted the investigation and prosecution of OIS cases without probable cause. (¶61-63; See, 1st Claim, 2nd Count) Further, the SFDA hired Andrew Koltuniak, who had no police experience before his hiring to the DA's Office, and in fact harbored a clear bias against police officers. Koltuniak had a clear pattern of unethical behavior throughout his career.  In a case where Koltuniak concealed his knowledge of a juror's criminal behavior, the court admonished Koltuniak and the defense for

misleading the court in a published opinion. The SFDA hired Koltuniak despite his inexperience, bias, and known history of unethical conduct. (¶¶98-100)

Pursuant to State Bar rules, the SFDA had the responsibility to identify their attorneys' conflicts of interest. However, under Boudin, the SFDA did not establish proper procedures to detect conflicts. In fact, DA Boudin hired attorney Lateef Gray and elevated him to Managing Attorney for the Independent Investigation Bureau (IIB) with oversight of various OIS investigations, despite a serious conflict of interest. In his previous employment, Mr. Gray had initiated a civil suit against the City and County of San Francisco and the SFPD on behalf of Sean Moore related to the shooting by Ofc. Cha. (¶51) (In fact, Gray Gray was still appearing in court as Sean Moore's attorney of record, six months after assuming the role of Managing Attorney of IIB. [St. Phalle Dec. ¶¶23-25 & Ex. 3]) Even after joining the DA's Office, the Sean Moore civil case was ongoing and identified Gray as an attorney of record. (¶52, 67; see, 1st Claim, 3rd Count) Despite the conflict with the Moore/Cha OIS investigation, Gray was never "walled off" from this case. In fact, documents show Gray was making strategic decisions in the Moore matter such as the assignment of various investigators to the case, issues involving expert witnesses and discussions of strategy. (¶71)

The SFDA did not establish proper policies and procedures for ensuring the independence of SFDA investigators who were tasked with drafting declarations for search warrants and/or arrest warrants. SFDA investigators are sworn peace officers with independent requirements to follow the law and only proceed with investigations and prosecutions if probable cause exists. Under Boudin the SFDA did not protect its investigators, and instead subjected them to coercion and undue pressure in the performance of their duties. (¶82; see, 1st Claim for Relief, 4th Count)

## C. The SFDA Office Conducted a Biased Investigation of Ofc. Cha

In June of 2020, IIB Investigator Magen Hayashi was assigned to the Cha matter. ADA Drusinsky requested that Hayashi draft a search warrant and warrant affidavit for the personal and work cellular telephones of Ofc. Cha and Patino. Drusinsky asked for edits to Hayashi's draft warrant affidavits to eliminate exculpatory evidence, including Moore's violence against the officers prior to the shooting. (¶80) Both Hayashi and Hayashi's supervisor, Jeffrey Pailet, complained that the revisions were improper and objected. In response, defendants reprimanded and fired Pailet. Pailet

later filed a civil suit stating that he had been fired as a whistleblower for pointing out illegal conduct. (¶81) Defendants eventually dropped their attempt to get a search warrant, but the language of this warrant was recycled almost verbatim into their arrest warrant affidavit against Cha. (¶110); see St. Phalle Dec. Ex. 1, Comparison Chart of unserved Search Warrant to the Arrest Warrant Affidavit)

In July 2021, defendants convened an Investigative Grand Jury to receive evidence regarding the shooting of Sean Moore. The presenting ADAs introduced the goal of the Grand Jury to the jurors: "For this case, we have chosen to use the grand jury to conduct an investigation." (¶84) The investigation that defendants conducted during the Grand Jury was biased against Ofc. Cha and was limited in scope, failing to develop all the exculpatory evidence and instead focusing on developing evidence against Cha. The ADAs did not detail for the jurors the extent of Sean Moore's violent past behavior, and did not mention the multiple instances when Moore was aggressive with the public and other police officers. The ADAs foreclosed any real exploration into Moore's violence. (¶¶87-88)

**D.    Defendants' Arrest Warrant Affidavit Included Falsehoods and Misleading Statements, But Omitted Relevant Exculpatory Facts**

Under the direction of Lateef Gray and ADAs Drusinsky and Lacambra, IIB investigator Koltuniak drafted an application for an arrest warrant for Cha on charges of voluntary manslaughter and assault with a firearm. On October 29, 2021, Koltuniak submitted a request for an arrest warrant for Ofc. Kenneth Cha to Judge Harold Kahn. (FAC, Ex. 2) The content of the affidavit was nearly identical to the earlier search warrant. (¶110)

The arrest warrant affidavit failed to accurately describe the violent encounters preceding the shooting of Moore, directly relevant to the issue of Ofc. Cha's right to self-defense under Penal Code 197 section subs. (1) and rebuttable defense of Penal Code section 194. In charging a suspect with assault and/or homicide, the issue of self-defense is always a necessary component of the probable cause analysis. Here, Moore had a history of violent conduct and a succession of restraining orders against him. Pursuant to the video evidence and testimony, just before the shooting, Moore had punched Cha's partner in the nose and broken it, and had launched toward Cha kicking toward him. However, Koltuniak's arrest warrant affidavit significantly downplayed Moore's violent contribution and argued that Cha was unreasonably aggressive towards Moore. The warrant affidavit made several

factual misstatements as well as omissions of important information (see the FAC at ¶¶104-109):

**Factual Inaccuracies in the Description of the Event:** "Cha's BWC does not depict Moore throwing his hands or feet towards Cha. Cha was not retreating down the stairs, he was advancing up them with his handgun drawn and pointed at Moore." (Affidavit, p. 15) **This is false**. The body cam footage of Officer Cha shows that, after Moore punched Officer Patino, breaking his nose and causing him to fall down the stairs, Moore them moved forward towards Cha, kicking at him.

**Misleading Selection and Descriptions of Body Cam Stills**

- Exhibit 2c shows Moore stood sideways in the gateway. Koltuniak writes, "Patino approaching with his baton raised in a strike position while Moore stood on the top of his stairs approximately 3 seconds before Patino began striking Moore with his baton." During this period, the video shows Moore was being physically and verbally aggressive to the officers, kicking out at them and rushing them on the stairs. The description purposely suggests that Moore was not acting aggressively and was merely standing on his landing when Patino hit him with the baton.

- Exhibit 2d shows Officer Cha with his gun drawn, described as, "Cha advancing up the stairs with his firearm pointed as Moore stood with both feet on the ground at the top of the landing of the stairs." This is misleading. Moore did not have both feet on the ground during this event. Instead, he had launched forward and kicked out at Off. Cha, and was not retreating or standing firmly on this landing when Cha fired his weapon. Further, this description omits preceding events, where Patino encountered Moore, and swung his baton at Moore, who punched him in the face, causing him to fall down the stairs. As Officer Cha witnessed Patino fall past him, the footage shows Moore launch forward towards Cha, while Cha ascends a few stairs. Moore kicked out at Cha, and Cha fired twice.

**Misleading Omissions Regarding Prior Court Decisions:** Koltuniak mischaracterizes prior court rulings in the criminal case against Moore. Koltuniak omitted in his summary that the courts were asked to hear argument on limited topics - specifically, with regard to the Appellate Court, whether Moore could be prosecuted on counts 1, 2 and 4-9, that required proof a peace officer was lawfully engaged in the performance of their duties when the criminal conduct by the defendant offended. The court's focus was on the charges against Moore related to his assault on peace officers, not whether the shooting of Moore was lawful or whether Cha was acting in self-defense. Koltuniak wrote: "Because Cha and Patino were trespassing, Moore not only had the right to use reasonable force to defend against Cha and Patino's unreasonable force, but he also had a right to use reasonable force to eject the trespassers." (Affidavit, p. 14-15) This legal conclusion is not present in the Court's ruling. The court's focus was on the charges against Moore related to his assault on peace officers. The affidavit also omitted the Court's statement that Moore could be held criminally liable: "The officers' alleged constitutional violations do not immunize Moore from criminal liability for all subsequent conduct, including his alleged acts of physical violence. . . . Moore was not immune from prosecution for battery…." (*People v. Moore* (2018) Cal. App. Unpub. LEXIS 2966 *1, p. 14) Koluntiak states that the U.S. District Court affirmed the Appellate Court's ruling. In fact, the District Court was asked to rule on a totally separate issue: the sufficiency of Moore's civil

claims regarding the shooting. The District Court explained in the scope of their review that the factual disputes regarding the reasonableness of the officers' actions and use of force are the function of a jury, "because questions of reasonableness are not well-suited to precise legal determination…the jury should be allowed to assess whether the force used by the officers was excessive." (*Sean Moore v. City of San Francisco et al.,* No. 18-cv-00634-SI, 2020 U.S. Dist. LEXIS 232585, at *13-14 (N.D. Cal. Dec. 10, 2020), p. 6

**Misleading Omissions in the Statement of Probable Cause:** Koltuniak writes: "An unarmed man, Sean Moore, was shot twice in the abdomen on the threshold of his home by Defendant Officer Kenneth Cha on January 6, 2017, during an investigation of a neighbor's noise complaint. Sean Moore died from the gunshot wounds three years later, on January 20, 2020." (Affidavit, p. 4) This is misleading as it omits material facts: Moore's violent actions and aggressiveness with the officers; Moore's prior violent conduct leading to the TRO; and other causes of Moore's death.

**Omission of Legal Issue of Self-Defense:** Koltuniak purposely fails to list self-defense as an applicable statute/law when this is clearly relevant to the underlying incident.

**Omissions in Exculpatory Information List -** Koltuniak states "Moore was criminally charged with Penal Code 243(C), 245(A), 422, 69(A), 148(A), 166(A) as a result of Cha's shooting on January 6, 2017. However, all the charges were dismissed after the Superior Court granted Moore's 995 motion and the Appellate Court affirmed the Superior Court's decision." (Affidavit, p. 13, No. 6) This omits that Moore was also charged with section 243(d) – felony battery with serious bodily injury against Patino, and this charge was not dismissed following the 995 motion. Further, Koltuniak omitted that, in August 2017, Moore was charged with assault and threat-based felony crimes due to another matter and pled guilty. Finally, the list includes no reference to evidence and testimony supporting Cha's claim of self-defense.

The pattern of falsehoods, omissions, and misleading statements shows defendants' intent to deceive the magistrate into issuing an arrest warrant, despite the obvious exculpatory facts showing self-defense. Koltuniak attached as exhibits certain evidence, including copies of the restraining order against Moore, body worn camera footage and transcripts from Cha and Patino, and other items. However, since the affidavit contradicted the facts in the attached evidence, these attachments were unlikely to effectively provide the reviewing magistrate with a full picture of the events.

Judge Kahn signed the warrant allowing for Ofc. Cha's arrest the same day it was submitted. If the affidavit were drafted in good faith, with no falsehoods and including all the relevant exculpatory facts, the affidavit would have demonstrated Cha acted in self-defense and precluded a finding of probable cause. (See St. Phalle Dec., Ex. 2, Corrected Affidavit)

**E.    Cha Case Dismissed by New District Attorney Jenkins and ADA Darby Williams**

On or about November 2, 2021, Ofc. Cha was arrested on charges of voluntary manslaughter (Penal Code section 192) and assault with a semiautomatic firearm (Penal Code section 245(a)(2)). On July 8, 2022, DA Boudin was recalled and left office.

On January 8, 2023, Brooke Jenkins assumed the role of San Francisco District Attorney. Under the SFDA office's charging guidelines, the prosecuting attorney should not charge a suspect unless they have evidence beyond a reasonable doubt and must conclude that they can prove that **the defendant was not acting in lawful self-defense**. (See Ex. 3, SFDA Charging Policy)

On June 30, 2023, Managing Attorney Darby Williams filed a Motion to Dismiss criminal charges against Ofc. Cha. (FAC, Ex. 4) This Motion argued: "A detailed fact-based analysis shows that both officers subjectively believed in the need to use force in self-defense and defense of others. The belief in the need to use deadly force to defend against Moore's assault became acute as Moore became more aggressive and struck Patino in Cha's presence which made Cha's belief objectively reasonable." (Id., at p. 25) "The evidence surrounding improper prosecution motives include the failure to create and maintain ethical walls and the inappropriate handling of proceedings." (Id., at p. 27) "The emails reviewed by this writer …show virtually daily involvement by Gray, as manager of IIB unit since June 30, 2020 and overseer as the IIB Managing Attorney of ADAs Drusinsky and Lacambra." (Id., at p. 30) "Here, the propensity for violence by the decedent and most importantly acts of violence to the C.C. [Choy] family would be highly relevant in establishing that Cha's responses to Moore were reasonable and that it was Moore who was likely the aggressor, supporting Cha's claim of lawful self-defense or defense of his partner."  (Id., at p. 34)

### III.    PROCEDURAL BACKGROUND

Plaintiff Filed the original Complaint on August 8, 2024. Defendants filed their initial Motion to Dismiss on Jan 31, 2025. Plaintiffs opposed the Motion to Dismiss.

The Motion to Dismiss was heard on April 10, 2025. From the bench, the Court directed plaintiffs to file an amended Complaint. The Court directed plaintiffs to use the First Amended Complaint to clarify 1) the legal claims for the different types of conduct (prosecutorial, investigative, and administrative); 2) the specific conduct by each individual defendant; and 3) whether each defendant is sued individually or in their official capacity as to each claim. (See St. Phalle Dec. ¶¶7-14)

# IV.    STANDARD OF REVIEW ON MOTION TO DISMISS

"The purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.' " (*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) The moving party bears the burden of showing that no adequate claim for relief has been presented. (*Gunn v. Cont'l Cas. Co*., 968 F.3d 802, 806 (7th Cir. 2020)) For a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. (*See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987). Motions to dismiss generally are viewed with disfavor under this liberal standard. (*See, Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997).) It is understood that civil rights complainants are likely to lack full access to information about their claim; therefore, "civil rights complaints are to be liberally construed," and need only comply with F.R.Civ.P. 8(a). (*Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992)) In a civil rights complaint, "[P]laintiff is not expected to plead his evidence or specific factual details not ascertainable in advance of discovery." (*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986))

A Motion to Dismiss is not favored for the resolution of immunity issues. "[A]n immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment.' [citation]'" (*Fogle v. Sokol,* 957 F.3d 148, 160-161 (3d Cir. 2020); *see, Colonies Partners LP v. Cnty. of San Bernardino*, No. EDCV 18-420 JGB (SHKx)) 2020 U.S.Dist.LEXIS 160672, at 49-53 (C.D.Cal. July 28, 2020) Qualified immunity depends on a finding of probable cause, which is usually a jury issue. "The existence of probable cause is a jury question, unless there is only one reasonable determination possible." (*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). At the motion to dismiss stage, "'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies. [citation]" *Polanco v. Diaz,* 76 F.4th 918, 925 (9th Cir. 2023)) Here, because the factual issues bearing on immunities are all disputed, these issues should not be decided on a Motion to Dismiss.

# V.    ARGUMENT

## A.    There Was No Probable Cause to Arrest and Prosecute Cha

### 1. Exculpatory Facts Eliminate Probable Cause

Plaintiff Kenneth Cha has a viable claim that defendants violated his Fourth Amendment rights, because there was woefully insufficient probable cause to believe he did not act in self-defense or defense of another, and the defendants knew it.

The Fourth Amendment to the Constitution protects American citizens from "unreasonable searches and seizures," and warrants issued "without probable cause." To determine probable cause, the officer must consider the "totality of the circumstances" (*District of Columbia v. Wes*by, 583 U.S. 48, 56-57 (2018)) The officer attorney's analysis of probable cause must include all relevant factors, including self-defense. "Certainly, an officer may not ignore exculpatory evidence that would "negate a finding of probable cause." (*Yousefian v. City of Glendale*, 779 F.3d 1010, 1014-1015 (9th Cir. 2015), *citing, Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)) Courts emphasize that the officer's <u>knowledge of exculpatory facts</u> is critical. "Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." (*Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir. 1999)) Where the officer is aware of clear evidence of an exculpatory defense, the officer lacks probable cause for the arrest or search. (*Dietrich, ibid*; *Williams v. Sirmons*, 307 Fed. App'x 354, 359 (11th Cir. 2009); *Merritt v. Arizona* (D.Ariz. 2019) 425 F. Supp. 3d 1201, 1214-1215; *Painter v. Robertson,* 185 F.3d 557, 571 (6th Cir. 1999))

The police department and/or district attorney cannot rush an entire class of cases into prosecution, without considering probable cause as to each case. (*Harper v. City of L.A.*, 533 F.3d 1010 (9th Cir. 2008) [in prosecution of police officer in the LA Rampart scandal, the DA's policy of readying cases for the filing of charges as quickly as possible led to arrests without probable cause])

As to self-defense in homicide or assault cases, if there is no probable cause to believe a person did not act in self-defense, a citizen may not have his person seized nor may a warrant issue. Clear evidence of self-defense will negate probable cause for arrest. In *Thomas v. City of Galveston,* 800 F.Supp.2d 826 (S.D.Tex. 2011), plaintiff Thomas threatened to fire on two persons he believed were thieves, but were in fact police officers. The officers then arrested Thomas for making a "terroristic threat." The Court held that the officers lacked probable cause for arrest, since Thomas was entitled to threaten force to defend his home. (*Thomas,* 800 F.Supp.2d 826, at 829)

Where video evidence is available that demonstrates self-defense, the officer is not free to ignore this. In *Reyes v. Greer,* 686 F. Supp. 3d 524 (W.D.Tex. 2023), there was video evidence showing plaintiff acted in self-defense in response to an assault. Nevertheless, the officer who arrived on the scene arrested plaintiff. The Court held that the clear evidence of self-defense, available to the officer, negated the arresting officer's finding of probable cause, and eliminated the officer's claim for qualified immunity. (*Reyes*, 686 F. Supp. 3d 524, 538-539; *see also, Jocks v. Tavernier,* 316 F.3d 128, 135-136 (2d Cir. 2003) [arresting officer was not entitled to ignore obvious exculpatory evidence that the plaintiff had acted in self-defense]) "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." (*Kuehl v. Burtis,* 173 F.3d 646, at 650 (8th Cir. 1999))

Defendants argue that facts that Cha shot Moore, and Moore died, is sufficient for an officer to find probable cause for voluntary manslaughter. This ignores case law holding that arresting officers cannot ignore obvious exculpatory evidence. In the *Thomas* case, the police officer defendants claimed that Thomas had threatened to shoot them, thus fulfilling the elements of "terroristic threats." The District Court rejected this argument: "The Fourth Amendment does not permit police officers to arrest individuals whom they know have done nothing wrong, based solely on the formalistic distinction between 'elements of a crime' and 'affirmative defenses.'" (*Thomas*, 800 F.Supp.2d 826, 836.)

*Thomas* demonstrates the absurdity of defendants' position. Based on the defendants' analysis, any act of self-defense can lead to charges against the victim. For example: A person is sleeping at home with their family and an armed intruder starts breaking down their door. The victim grabs their firearm as the intruder makes his way to their child's bedroom.  As the intruder lunges toward the child, the victim shoots and kills the intruder. By defendants' logic in the Motion to Dismiss, there is probable cause to arrest and charge the victim. Defendants choose to ignore that they have the burden to prove the absence of self-defense, and that a failure for the evidence to establish probable cause for each and every element is both an ethical and Constitutional bar to prosecution.

### 2.  Defendants' Charges Inherently Involve the Refutation of Claims of Self-Defense

Defendants' assertion that manslaughter and assault can be considered in a vacuum, without taking evidence of self-defense into account, is contrary to the law regarding the criminal charges of

voluntary manslaughter and/or assault with a firearm.

Ofc. Cha was charged with voluntary manslaughter (Cal. Penal Code § 192(a)), and assault with a deadly weapon (firearm) (Penal Code section 245(a)(2)). Cha claimed he acted in self-defense against the violent threat posed by Sean Moore. A person is entitled to use force if the force is used in self-defense or in defense of others where the assailant is imminently attempting to kill someone or inflict great bodily injury. (Penal Code §197; CalCrim 505) It is the prosecution's burden to prove beyond a reasonable doubt that the deadly force was not used in lawful self-defense. (CalCrim 505)

At any trial of a defendant charged with voluntary manslaughter, the jury instructions incorporate the available defenses to manslaughter. (CalCrim 570, 571, 572). If self-defense is part of the fact pattern, self-defense must be considered as part of the analysis of the crime. (CalCrim 571) The prosecution has the burden to prove beyond a reasonable doubt, both the elements of the crime of manslaughter, and the lack of justification such as self-defense. "[W]e conclude that the prosecution must prove beyond a reasonable doubt the absence of justification, herein self-defense, when the issue is properly presented in a homicide case." (*People v. Banks,* 67 Cal.App.3d 379, 384 (1976))

Cha was also charged with assault with a firearm under Penal Code § 245(a)(2).) Assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Penal Code §240) If an attack is done is self-defense, the attack is lawful, and does not meet the definition of assault. (*People v. Lynch,* 101 Cal. 229, 231 (1894).)

A defendant charged with manslaughter or assault need not prove self-defense beyond a reasonable doubt. The burden (at charging through trial) is on the prosecution. The evidence relating to self-defense need only be of sufficient weight to create a reasonable doubt. (*See*, *People v. Cruz-Partida,* 79 Cal. App. 5th 197, 212 (2022))

Thus, based on Penal Code §§192, 197, 240, and 245, CalCrim 505 and 571, any competent officer or prosecutor would be aware that, whenever contemplating an arrest on charges of voluntary manslaughter and/or assault with a deadly weapon, where the prospect of a potential self-defense claim is apparent, it is essential to analyze any facts supporting self-defense as an element of probable cause.

### 3. Defendants Were Aware of Clear, Objective Evidence that Cha Acted in Self-Defense

The standard for determining probable cause "does not require an officer to affirmatively

investigate potential defenses, but it prohibits him from ignoring knowledge that he already possesses relating to defenses." (*Thomas,* 800 F.Supp.2d 826, 836.) Here, unlike in any of the defense cases, the arresting officials had years to investigate, and had videographic evidence of the entire encounter. This evidence shows the violent physical threat posed by Moore in the moments prior to the shooting, establishing Cha's reasonable belief in both imminent physical harm. Where the exculpatory evidence is clear, such evidence cannot be ignored in good faith. (*Reyes v. Greer*, supra, 686 F. Supp. 3d 524 at 538-39 [no probable cause where video demonstrated self-defense])

Defendants characterize the facts known to the SFDA as: Cha "shot Moore during a quarrel and the coroner's listing of Moore's death as a homicide." (Motion at 22:4-5) Clearly the SFDA knew more than these bare facts – particularly, the video shows Moore not submitting in response to lesser uses of force (pepper spray and batons); punching Cha's partner (breaking his nose); and advancing on Cha and kicking out just prior to the shooting. These facts establish Cha acted in self-defense to a threat of great bodily injury. More egregiously, the warrant affidavit misrepresented the facts: it described Cha as advancing on Moore, when in fact Moore had attacked Patino and was kicking towards Cha from an advantageous position prior to Cha discharging his weapon. This falsehood was designed to convince the magistrate that no self-defense claim was possible.

Defendants seek to improperly assert "a formalistic distinction between 'elements of a crime' and 'affirmative defenses.'" (*Thomas,* 800 F.Supp.2d 826, 836) Such a formalistic distinction is contrary to the law, which requires that the suspect's potential claim of self-defense must be evaluated.

### 4.   Defendant's Cases Do Not Involve Clear, Objective Evidence of Self-Defense

Defendants have cited cases where a suspect's claim of self-defense was not sufficient to negate a finding of probable cause. However, Defendants' cases involve "on the spot" decisions by police officers evaluating uncorroborated self-defense claims and/or contradictory testimony by the suspect and the victim, with no solid evidence of the suspect's self-defense claim. In these cases, courts found the officer had probable cause because the limited evidence immediately available to the officer did not provide a clear exculpatory self-defense.

In *Yousefian v. City of Glendale*, 779 F.3d 1010 (9th Cir. 2015), the officer arrived to find an elderly and infirm man bleeding profusely from a head wound admittedly inflicted by a younger man

without significant injuries. Witness accounts were conflicting. The Court held there was probable cause for the arrest, because the officer was entitled to find the other witnesses' version of the incident to be more credible than Yousefian's. (*Yousefian,* 779 F.3d 1010 at 1014) In *Yousefian,* the arresting officer did not have a videotape of the altercation. Here in Cha, the SFDA's office had videotapes of the event, and testimony from both the involved officers, that demonstrated Cha acted in self-defense.

Defendants' case citations involve the court's affirmation of a probable cause decision by an officer based on limited information after a cursory investigation, frequently involving the officer's judgments about witness veracity. (*District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) [witness veracity]; *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) [person sleeping in car]; *Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215, at *4–5 (N.D. Cal. June 3, 2019) [conflicting witness testimony]; *Sudderth v. City & Cnty. of San Francisco*, No. 00-2337-MMC, 2001 WL 764929, 2001 U.S.Dist.LEXIS 9467, at *5 (N.D. Cal. June 27, 2001) [conflicting witness testimony]) None of the cases cited by defendants involve an officer (or attorney) who was able to investigate for a three-year period, and had the opportunity to review a videotape and other evidence that provided clear evidence of self-defense, yet proceeded with an arrest warrant anyway.

### 5. The Arrest Warrant Was Obtained Through Falsehoods and Deception

In order to challenge the presumption of probable cause from the issuance of an arrest warrant, the plaintiff must show that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit; and that the false statement was "necessary to the finding of probable cause." (*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)) Omissions will count as "false statements" where the affiant makes material omissions that are intended to enhance the contents of the affidavit as support for a conclusion. (*Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991))

Where an officer knows, or has reason to know, that he has materially misled a magistrate, as where a material omission is intended to support a conclusion of probable cause, then there is no probable cause, and the shield of qualified immunity is lost. (*Golino*, supra, 950 F.2d 864, 870-871) An officer can "have no reasonable grounds for believing that [a] warrant was properly issued" "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false . . . ." (*United States v. Leon*, 468 U.S. 897 at 923 (1984))

Numerous Federal courts have found that judicial deception in the warrant application defeated the presumption of probable cause. (*See, Ramirez v. County of Los Angeles,* 397 F.Supp.2d 1208, 1221-1222 (C.D.Cal. 2005); *Liston v. County of Riverside*, 120 F.3d 965, 973-974 (9th Cir. 1997); *Pratt v. Snohomish County,* 1994 U.S. App. LEXIS 730, at *5-7 (9th Cir. Jan. 14, 1994, No. 93-35658); *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 105 (D.Conn. 2019) [*McColley v. County of Rensselaer,* 2012 U.S.Dist.LEXIS 62905 (N.D.N.Y. May 4, 2012, No. 1:08-CV-01141 (LEK/DRH)); *Jackson v. Town of Bloomfield,* 2015 U.S.Dist.LEXIS 33331, at *30-32 (D.Conn. Mar. 18, 2015, No. 3:12-cv-00924 (MPS)); *DeLoach v. Bevers,* 922 F.2d 618 (10th Cir. 1990))

Here, the warrant affidavit had multiple false statements and omissions designed to mislead the reviewing judge, the most significant have been summarized here:

- Koltuniak's assertion in the affidavit that "Cha's BWC does not depict Moore throwing his hands or feet towards Cha. Cha was not retreating down the stairs, he was advancing up them with his handgun drawn and pointed at Moore." (Affidavit, p. 15) The footage clearly shows Moore punching Officer Patino, breaking his nose and causing him to fall down the stairs, then launching forward towards Cha, kicking at him, and Cha shooting Moore.
- Koltuniak's choice of body camera footage stills embedded in the affidavit is extremely selected and misrepresents the actual critical events leading up to the shooting. Koltuniak's choice of stills and the descriptions provided underneath were used to suggest to the magistrate that Moore stood on his stoop for the entire interaction, only responded defensively to the officers, and that Cha was the aggressor. This is patently false and is clearly seen when viewing the entirety of the footage.
- Koltuniak provides a summary of the prior court decisions, making inaccurate statements about the courts' holdings and improperly expanding the scope of the courts' review to issues the courts were not analyzing. Investigator Koltuniak selectively cited in order to mislead the Judge on these prior findings.

These omissions were material to the determination of self-defense, and therefore to probable cause for arrest for manslaughter. Koltuniak made this misleading presentation with the hope that the reviewing judge would not have time to review the attached exhibits and would rely on the representations of the investigator. Koltuniak intended to mislead the magistrate.

### 6. A Reasonable "Corrected Affidavit" Would Demonstrate Self-Defense

"To determine whether errors in an affidavit were necessary to the probable cause finding, we rely upon the corrected affidavit doctrine, under which errors in the affidavit are not material if, after crossing out any allegedly false information and supplying any omitted facts, the corrected affidavit

would have supported a finding of probable cause." (*Pines v. Bailey*, 563 F. App'x 814, 817 (2d Cir. 2014) "We must determine, therefore, whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed." (*United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985); *Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, 973-974)

Here, Plaintiff has submitted a proposed Corrected Affidavit, with the false and misleading statements removed, and the omitted information included. (See Corrected Warrant Affidavit, Ex. 2 to St. Phalle Dec.) This Corrected Warrant Affidavit removes falsehoods (particularly, that Cha was advancing on Moore, when in fact Moore moved towards him and began to kick and Cha was falling backwards on the stairs), and includes descriptions of the exculpatory evidence demonstrating Cha's reasonable claim for self-defense. Under these circumstances, there was no probable cause for the issuance of a warrant for Cha's arrest for manslaughter or assault.

### 7. Defendants' False Statements Are Not Cured by Attaching Contradictory Materials

Defendants argue that the arrest warrant attached documents which provide additional information to supplement the statements in the affidavit, and that therefore there was sufficient information to apprise the magistrate of anything missing from the affidavit. (Motion at 18:8-11) However, the attachments to the warrant affidavit cannot cure all of the false and misleading statements in the affidavit. A pattern of false statements and material omissions in the affidavit shows the improper intent to deceive the magistrate. (*Franks v. Delaware* (1978) 438 U.S. 154, 155-156) "Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause [citations], the shield of qualified immunity is lost . . . ." (*Golino v. New Haven,* 950 F.2d 864, 870-871 (2d Cir. 1991))

Here, the affiant deliberately chose an improper, incomplete legal analysis and made false and misleading statements in the affidavit. It appears the affidavit was intended mislead the judge and provide a voluminous information that could not be evaluated by the judge. It is not reasonable to allow the affiant to make false and misleading statements in the affidavit under penalty of perjury, and then expect the reviewing magistrate to sift through the attached documentation and evaluate all the

affiant's statements for coherence with the attachments.

The cases cited by defendants do not involve direct falsehoods by the affiant, facts in the attachments contradicting statements by the affiant, or evidence of a direct attempt to deceive the magistrate. In *Deane v. Plumas County*, 74 F. App'x 715, 716 (9th Cir. 2003), a welfare fraud case, plaintiff was arrested for welfare fraud by a magistrate, despite a prior ALJ ruling that she had good cause for not reporting some of the challenged income. The Court held there was judicial deception in the warrant affidavit because (1) the ALJ ruling was attached to the affidavit before the magistrate, and (2) even with the "forgiven" income attested in the ALJ ruling, plaintiff was in violation of the law. In Deane there was no evidence that the affiant had a deliberate intent to deceive, and no contradiction between the warrant affidavit and the attached ALJ ruling.

In Defendant's cases, there is no claim or evidence that the affidavit was a deliberate deception, and there is no contradiction between statements in the warrant affidavit and the attached materials. (*United States v. Wilson*, 156 F.3d 1245, 1998 WL 482786, at *3 (10th Cir. 1998) [no judicial deception in drug search warrant affidavit, based on aerial views of marijuana plants; missing identity of property owner was provided by the attached document; *United States v. Young*, No. 21-cr-6025-FPG-MJP, 2021 WL 5772532, at *4–5 (W.D.N.Y. Aug. 20, 2021) [in child pornography case, warrant showed probable cause for a search, where the warrant attached a report showing defendant engaged in sexually explicit conversations with a minor])

Here, the affiant deliberately made many false and misleading statements in the warrant affidavit. One of the most egregious: the affidavit falsely states that Cha advanced on Moore, when in fact Moore (who had just punched Cha's partner and caused great bodily harm) was advancing on Cha from above, kicking down on him. The FAC alleges the affiant's anti-police bias and prior deceptive conduct with judges; the biases and deceptive conduct of his superiors, including the termination of the whistleblower Pailet related to the deception in the original search warrant; defendants' knowledge that probable cause was lacking here, and the intent to deceive the judge. The false/misleading statements and the missing information were material to the judge's determination; a corrected affidavit would demonstrate self-defense and would not support probable cause. These facts distinguish the Cha matter from cases where the attachments are deemed to cure defects in the affidavit.

**B.      The Individual Defendants Cannot Claim Qualified Immunity**

**1.    Since Probable Cause Was Not Present, Qualified Immunity Is Not Available**

Qualified immunity applies if plaintiff fails to plead sufficient facts to allege that the Defendants "(1) violated a constitutional right that (2) was clearly established at the time of the violation." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (citation omitted). Here, probable cause was lacking in this matter for the following reasons: 1) Statutes and case law hold that, for the charges of voluntary manslaughter, and assault with a deadly weapon, the prosecution must negate self-defense. 2) The evidence clearly shows Cha acted in self-defense in response to Moore's violent conduct. 3) The evidence included a videotape of the event that clearly demonstrated self-defense (unlike in the cases cited by defendants). 4) The evidence was available to defendants when they were deciding on whether to arrest and prosecute Cha (unlike in the cases cited by defendants).

**2.    Probable Cause Analysis Cannot Ignore Objective Evidence**

Multiple cases in both the Ninth Circuit and in other Federal jurisdictions hold that officials are not free to ignore exculpatory evidence. Particularly, where a videotape of the event confirms the suspect's self-defense claim, there is no probable cause. (*Reyes,* 686 F. Supp. 3d 524, 538-539)

Where case law creates a doctrine regarding liability, this gives notice to officials that qualified immunity is unavailable. (*Polanco v. Diaz* (9th Cir. 2023) 76 F.4th 918, 931 [ cases on the state-created danger doctrine put prison officials on notice that they may be liable]; *see also, Golino, supra*, 950 F.2d 864, 870 (2d Cir. 1991) [no qualified immunity for officers who withheld critical evidence from the judge regarding the mismatch between appearance of defendant and eyewitness accounts]; *Ramirez v. County of Los Angeles* (C.D.Cal. 2005) 397 F.Supp.2d 1208, 1221)

Here, the attorney defendants, who had years to review the evidence and evaluate the case, had no excuse not to understand that Cha acted in self-defense and no probable cause existed. As attorneys, they should be held to be aware of the relevant case law. The law is clear that, where the arresting officer has notice of obvious exculpatory evidence – particularly, a videotape showing the victim posed a threat of great bodily harm – the officer cannot ignore this evidence and make an arrest.  If the officer does so, that officer is not protected by qualified immunity.

Defendants have cited cases that purportedly allow defendants to ignore the significant

evidence that Cha acted in self-defense, and find probable cause for arrest anyway. These cases have important differences from the facts in the Cha matter. The cases involve officers assessing in a matter of hours, not district attorneys with years of time and ability to assess witness statements.  Defendant's cited cases involve an officer making a decision on conflicting witness testimony, without the benefit of any videotape of the event. (*See, e.g., Yousefian*, 779 F.3d at 1014–15 [officer arrived at scene where elderly man was bleeding and witnesses had conflicting accounts of the altercation]; *Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022), [officer assessed conflicting testimony]; *Arrington v. City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015) [plaintiff charged in shooting incident, with the absence of witnesses to corroborate self-defense]; *Nailing v. City of Los Angeles*, No. 2:22-cv-07224-AB-JC, 2024 WL 3851635, at *8–9 (C.D. Cal. June 11, 2024) [victim and attacker each claimed the other attacked first]; *Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215, at *4–5 (N.D. Cal. June 3, 2019) [plaintiff stated he head-butted the victim after the victim appeared to be about to attack; officer had probable cause because self-defense was not clear from the plaintiff's own testimony]; *Sudderth v. City & Cnty. of San Francisco*, No. 00-2337-MMC, 2001 WL 764929, 2001 U.S.Dist.LEXIS 9467, at *5 (N.D. Cal. June 27, 2001) [after two physical altercations between landlord and tenant, landlord was arrest for battery, despite protesting she acted in self-defense]

Defendant cites only one case where an officer had video evidence of the altercation: *Craft v. White*, 840 F. App'x 372, 378 (10th Cir. 2021). In Craft, Mrs. Stone pushed a Bible near Mr. Craft's face, and Mr. Craft responded by pushing Mrs. Stone, causing injury. The Court held there was probable cause to arrest Mr. Craft. However, in Craft, the alleged "immediate danger" was a woman waving a Bible. While there was a video of the event, the video does not definitively show whether Mr. Craft responded reasonably to an immediate danger. Here in Cha, the video shows 275-lb. Moore failing to be subdued by batons and pepper spray; punching Ofc. Patino in the face and breaking his nose; and advancing on Cha and kicking out moments before the shooting.

### 3. Qualified Immunity Should Not Be Evaluated on a Motion to Dismiss

The determination of whether the arresting officer properly evaluated probable cause, and whether qualified immunity should apply, is a factual question appropriate for summary judgment. "The existence of probable cause is a jury question, unless there is only one reasonable determination

possible." (*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). "[I]t is the jury who is must determine whether probable cause exists." (*Cardinal v. Buchnoff*, 2010 U.S.Dist.LEXIS 86523, at *8-9 (S.D.Cal. Aug. 23, 2010, No. 06CV0072-MMA(BLM)); *Morales v. Fry,* 873 F.3d 817, 822 (9th Cir. 2017)) "The upshot is that qualified immunity was conceived as a summary judgment vehicle . . . ." (*Morales* 873 F.3d 817, 823.) "[A]n immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment.' [citation]" (*Fogle v. Sokol* (3d Cir. 2020) 957 F.3d 148, 160-161

Qualified immunity cases are largely decided on summary judgment after discovery and a full factual presentation to the court. Most of defendant's cases were decided on summary judgment. (See, e.g., *Yousefian, supra,* 779 F.3d 1010; *Golino, supra,* 950 F.2d 864, 870; *Lee v. Harris,* 127 F.4th 666 (7th Cir. 2025); *Smith v. Almada,* 640 F.3d 931, 937 (9th Cir. 2011); *Ewing v. City of Stockton,* 588 F.3d 1218, 1226 (9th Cir. 2009); *Lombardi v. City of El Cajon,* 117 F.3d 1117, 1126 (9th Cir. 1997); *Deane, supra,* 74 F. App'x 715)

Plaintiff requests that, if the Court has concerns that qualified immunity may apply to some aspects of defendants' conduct, the Court should reserve this issue for summary judgment.

## C.    The City and The SFDA Are Properly Sued Under *Monell*

### 1.    Sovereign Immunity Does Not Apply To A Prosecutor's Administrative Conduct

Plaintiffs have made a proper Monell claim against the City of San Francisco and the District Attorney's office. Entities are liable when their policies are a moving force that causes constitutional violations. "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." (*Horton by Horton v. City of Santa Maria,* 915 F.3d 592, 602–03 (9th Cir. 2019).)

Defendants have cited sovereign immunity as attorneys at the District Attorney's office, acting on behalf of the State of California. However, sovereign immunity does not apply to a DA office's conduct that does not involve prosecutorial strategy, such as improper administrative procedures. In *Goldstein v. City of Long Beach,* 715 F.3d 750, 761-762 (9th Cir. 2013), the Ninth Circuit held that a district attorney acts as a local official, not protected by 11th Amd. immunity, when establishing policy

and training related to the use of jailhouse informants, as this does not involve prosecutorial strategy, but rather administrative oversight. "The conduct at issue here does not involve prosecutorial strategy, but rather administrative oversight of systems used to help prosecutors comply with their constitutional duties." (*Goldstein*, 715 F.3d 750, 762; *see*, *Puckett v. Cnty. of Sacramento*, 2024 U.S.Dist.LEXIS 56662 (E.D.Cal. 2024, No. 2:22-cv-0350 KJM DB) [held, that the District Attorney did not have 11th Amd. immunity for administrative failures, such as the failure to discipline prosecutors who committed Brady violations, and the failure to have an index or tracking system to monitor Brady violations])

### 2. The FAC Alleges Administrative Conduct Not Subject to Sovereign Immunity

Here, as described herein, the FAC makes detailed allegations regarding the SFDA's improper administration leading to violations of plaintiff's rights, in five categories. (FAC, Fourth Claim for Relief - Municipal Policy Resulting in Deprivation of Rights, at ¶266A-E) These categories relate to general operations of the SFDA office – "administrative oversight of systems used to help prosecutors comply with their constitutional duties." (*Goldstein, supra* at 762) The conduct is not specifically prosecutorial; particularly, the conduct is not directly tied to the Cha prosecution, but affected the entire SFDA office and several cases other than the Cha case.

As to training: While attorneys can be expected to have training in the law and have basic competency, all people are subject to bias and prejudice whether trained or not. SFDA had a duty to weed out employees with severe biases such as anti-police bias (and particularly, a duty to avoid hiring biased employees). Further, SFDA had a duty to screen attorneys for conflicts of interest.

The conduct discussed in the FAC's Fourth Cause of Action, failure to properly create administrative systems, fits within the ambit of administrative conduct held not subject to sovereign immunity per the *Goldstein* and *Puckett* cases.

### 3. Defendants' Cases Do Not Address the Issues Raised in Plaintiff's *Monell* Claims

Defendants cite several cases holding that various conduct is prosecutorial rather than administrative. However, these cases are distinguishable, mostly because they involve case-specific conduct rather than the office-wide conduct alleged in the Fourth Claim for Relief. This cause of action does not allege that specific conduct directly prosecuted Cha, but rather this conduct laid the groundwork for improper prosecutions of cases at the DA's office, including Cha's case.

In *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000), a murder case, the Prosecutors relied on blood evidence from a crude blood test and obtained plaintiff's conviction.  At the second trial, Weiner alleged that the prosecution concealed exculpatory evidence, that suggested none of the blood was the victim's. The Court granted sovereign immunity to the prosecutors, finding their conduct was prosecutorial. *Weiner* is not on point with Cha. The FAC alleges a pattern of conduct at the SFDA's office, including office administrative procedures, that affected multiple cases, not just the Cha case.

In *Robicheaux v. Cnty. of Orange,* 750 F. Supp. 3d 1161, 1167 (C.D.Cal. 2024), the plaintiff was a politician who contended the DA conducted a malicious prosecution for political reasons. The Court disallowed the Monell claim, holding that the final decision to initiate the criminal prosecution of Plaintiffs and [direction of] the other Defendants constituted prosecutorial action on behalf of the State of California. Unlike in Cha, the plaintiff in Robicheaux did not allege several categories of administrative conduct affecting multiple cases other than Cha

In *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008), the Court held that state sovereign immunity did not apply to a private company that was running the State's bad check diversion program, because 11th Amd immunity should not apply to private entities. (Id at 1080-1081.) *Del Campo* did not rule that any particular conduct by a prosecutor constituted "prosecutorial" or "administrative" conduct; therefore, defendant's citations to Del Campo are dicta.

In *Kalina v. Fletcher*, 522 U.S. 118, 128-129 (1997) the US Supreme Court declined to extend absolute immunity where a prosecutor acts as an affiant and makes a false statement of fact in an affidavit supporting an arrest warrant. In dicta the Court stated that with respect to a warrant, "drafting the certification" and "selection of the particular facts to include in the certification" was the "work of an advocate" and is protected under prosecutorial immunity. (*Kalina, supra*, 522 U.S. 118, 130-131) The Kalina case did not decide any issue related to the categories of administrative conduct plaintiff alleges in the Fourth Claim for Relief.

In *Van de Kamp v. Goldstein,* 555 U.S. 335 (2009), the plaintiff claimed that the District Attorney's Office should have established a system that would have permitted prosecutors to access information pertaining to the benefits provided to jailhouse informants and other impeachment

information. The Supreme Court held that since this "concern[ed] how and when to make

impeachment information available at a trial," and such functions "are thereby directly connected with

the prosecutor's basic trial advocacy duties." (*Van de Kamp* at 716) Unlike in Cha, *Van de Kamp* was

concerned with administrative conduct happening <u>during a trial</u>.

### 4. The City and SFDA Are Properly Sued for Supervisory Liability

#### i. Supervisory Liability

Supervisory liability for entities in 1983 cases is supported by Federal case law.

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official

policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a

decision or act by a final policymaker." (*Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–

03 (9th Cir. 2019).) "Failure to train may amount to a policy of "deliberate indifference," if the need to

train was obvious and the failure to do so made a violation of constitutional rights likely. (*City of

Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Similarly, a failure to

supervise that is "sufficiently inadequate" may amount to "deliberate indifference." (*Dougherty v. City

of Covina,* 654 F.3d 892, 900 (9th Cir. 2011))

Supervisory liability also applies to individual defendants. (*Villarreal v. Cnty. of Monterey*, 254

F. Supp. 3d 1168, 1184 (N.D. Cal. 2017) "A supervisor may be liable for 'setting in motion a series of

acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor]

knew or reasonably should have known would cause others to inflict a constitutional injury.' [citation]

Thus, a supervisor may 'be liable in his individual capacity for his own culpable action or inaction in

the training, supervision, or control of his subordinates; for his acquiescence in the constitutional

deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

[citation]" (*Rodriguez v. Cty. of L.A.,* 891 F.3d 776, 798 (9th Cir. 2018))

In the FAC, plaintiff alleges several categories of administrative conduct, including negligent

hiring practices. Negligent hiring of staff is administrative conduct that is not subject to sovereign

immunity. As stated by the Supreme Court in the *Van de Kamp* case, workplace hiring is an

administrative issue.  "A prosecutor's error in a specific criminal trial constitutes an essential element

of the plaintiff's claim. The obligations here are thus unlike administrative duties concerning, e.g.,

**workplace hiring**." (*Van de Kamp v. Goldstein* (2009) 555 U.S. 335, 336 [129 S.Ct. 855, 857, 172 L.Ed.2d 706, 710], emphasis added) "Decisions related to general conditions of employment— including decisions to hire, promote, transfer, and terminate—and which do not affect the prosecutor's role in any particular matter are generally not sufficiently related to the initiation and conduct of a prosecution in a court of law or their role as an advocate of the state to qualify for absolute immunity." *Lacey v. Maricopa County,* 693 F.3d 896, 930-931 (9th Cir. 2012))

Here the FAC alleges problems with the SFDA's hiring and promotion of individual defendants Lateef Gray, Dana Drusinsky; Stephanie Lacambra; Lateef Gray; Rebecca Young; Andrew Koltuniak. The FAC claims these employees were biased against police officers. Further, as to Gray, the SFDA failed to screen for conflicts or to implement any ethical wall around Gray, permitting him to work on cases where he had very recent adverse representation. The hiring of these individuals affected multiple cases at the office, particularly OIS cases such as Cha, Stangel and Samoyoa.

Under Lacey and related cases, the FAC makes valid claims for negligent hiring practices across the SFDA office, which were likely to cause constitutional violations (improper prosecutions).

Defendants also claim that any failure to screen District Attorneys off cases is immune, citing *Riese v. Cnty. of Del Norte*, No. 12-CV-03723-WHO, 2013 WL 5568707, at *3 (N.D. Cal. Oct. 9, 2013) In the *Riese* case, the conflicted prosecutor was directly assigned to the particular case at issue. Here in the Cha case, the conflicted prosecutor (Gray) was assigned as the head of the IIB department, which handled several OIS cases including Cha. This was an office-wide issue constituting administrative conduct, per the Lacey case.

### ii.    The SFDA's Policies Were Obviously Likely To Result in a Violation of Rights

Defendants argue that SFDA lacked notice of its employee's bad conduct, because no other violations occurred before the conduct at issue took place, sufficient to put the SFDA on notice of alleged deficiencies. However, supervisory liability will still apply where the entity's policies or mismanagement is obviously likely to cause violations of constitutional rights – The policy itself is so bad that it gives the entity notice, without prior incidents

Liability for municipalities may be imposed for improper training and supervision, even in the absence of prior incidents, where, "the unconstitutional consequences of failing to train [are] so

patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." (*Morgan v. Cnty. of Los Angeles Dist. Attorney's Off*., 2025 U.S.Dist.LEXIS 40872, at *23-24 (C.D.Cal. Mar. 6, 2025, No. 2:23-cv-10474-MRA-MAR))

Here, the FAC alleges that the entities had improper policies and procedures that were done both negligently and maliciously, with the consequence that the constitutional rights of suspects (particularly in OIS cases) would be harmed. Biased attorneys, with an animus toward a class of suspects (e.g., police officers), are highly likely to prosecute those suspects without good cause, causing constitutional injury. Conflicted attorneys, who have an interest adverse to a certain suspect, are highly likely to prosecute those suspects without good cause, causing constitutional injury. Conflicts of interest is a well-understood issue, and representation despite conflicts is a violation of State Bar rules. Here, given Lateef Gray's representation of Moore, his supervision of the Cha matter was clearly improper, and this was obviously likely to cause a deprivation of Cha's rights

Defendants cite *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) In Flores, regarding negligent supervision of an employee that committed sexual assault, the Court held that neither the sheriff nor the county was faced with a pattern of constitutional violations by untrained employees. This is distinct from Cha, as 1) the FAC shows a pattern of conduct affecting multiple OIS cases, and, 2) no pattern is necessary where the policy is blatantly improper and likely to cause constitutional harm. As the Flores Court notes: "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." (Id at 1159)

**D.    Prosecutorial Immunity**

**1.    Only Prosecutorial Conduct Is Protected By Absolute Immunity**

In deciding whether absolute immunity applies, Courts will examine the nature of the function performed, not the identity of the actor who performed it (the "function test"). (*Imbler v. Pachtman,* 424 U.S. 409, 423 (1976)) Absolute immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." (*Burns v. Reed,* 500 U.S. 478, 486 (1991) [prosecutors not entitled to absolute immunity for giving advice to police]) When a prosecutor acts in another role, such as an investigator or administrator, absolute immunity is

not available. (*Imbler*, 424 U.S. 409, 420) "However, even after the initiation of criminal proceedings, a prosecutor may receive only qualified immunity when acting in a capacity that is exclusively investigatory or administrative." (*Broam v. Bogan* (9th Cir. 2003) 320 F.3d 1023, 1031; see, *Fogle v. Sokol* (3d Cir. 2020) 957 F.3d 148 [prosecutor's conduct in procuring a particular witness' statements or jailhouse informant statements were investigative rather than prosecutorial]; *Genzler v. Longanbach,* 384 F.3d 1092, 1098–1104 (9th Cir. 2004) [deputy district attorney and investigator's interviewing witness was an investigative function])

As stated by the US Supreme Court: "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. [citations]. . . . We have been "quite sparing" in our recognition of absolute immunity [citation] and have refused to extend it any "further than its justification would warrant.' [citation]" (Burns v. Reed (1991) 500 U.S. 478, 486-487 [111 S.Ct. 1934, 1939, 114 L.Ed.2d 547, 558-559].) Demonstrating absolute immunity requires a close reading of the facts and is rarely granted on a motion to dismiss. "Indeed, '[a]sserting a[n] . . . immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment.' [citation]" (*Fogle v. Sokol,* 957 F.3d 148, 160-161 (3d Cir. 2020).)

### 2.  The FAC Alleges Conduct That Is Not Protected By Absolute Immunity

Prosecutorial conduct that is "administrative" is not subject to absolute immunity. (Broam v. Bogan (9th Cir. 2003) 320 F.3d 1023, 1031.) Here the FAC alleges several categories of administrative conduct: Defendants did not establish proper administrative policies or procedures for the SFDA's office to decide whether to re-open officer-involved shooting (OIS) cases; Defendants did not ensure that the SFDA hired employees who would objectively apply the law without bias or prejudice; Defendants did not establish proper procedures to detect and deal with employees' potential conflicts of interest; Defendants did not ensure the independence of SFDA investigators.

Further, absolute immunity does not protect "the investigative functions normally performed by a detective or police officer." (*Rieves v. Town of Smyrna,* 959 F.3d 678, 691 (6th Cir. 2020) [prosecutors were not absolutely immune for directing a Sheriff's office investigation and raid of stores selling cannabinoid]) Conduct during "Investigative grand juries" are not absolutely immune.

(*Colonies Partners LP v. Cnty. of San Bernardino*, (C.D.Cal. July 28, 2020, No. EDCV 18-420 JGB (SHKx)) 2020 U.S.Dist.LEXIS 160672, at *47-49 [defendants had not met their burden on summary judgment to show that all their conduct was "prosecutorial" such that absolute immunity applied])

Here, the defendants made a very calculated and explicit decision to proceed with an "investigative" grand jury in this matter in order to avoid the self-defense "problem" that they knew would bar prosecution.  The grand jurors were immediately skeptical of this issue, as any rational person who has full and accurate facts before them on this case is, and the defendants did not want them tasked with making a finding of probable cause.  The route the defendants conspired to take was to proceed with this investigative process with the grand jury, and then to bank on the likelihood that a judge would trust the seemingly thorough arrest warrant affidavit, not review all of the attachments (in reality, most judges do not) and just sign off.  Their plan worked, and it violated Officer Cha's Constitutional rights

Defendants argue that a prosecutor's conduct during grand juries is protected by absolute immunity, citing, *Smith v. Gribetz,*, 958 F. Supp. 145, 154 (S.D.N.Y. 1997) However, *Smith* also notes, "Courts have recognized that a prosecutor's activities during the grand jury process may involve an investigatory component. [citations]" (*Smith*, 958 F. Supp. 145, 154

### 3. The Conduct Described in the FAC Is Not "Prosecutorial"

Defendants have attempted to characterize all the conduct in the FAC as "prosecutorial" and therefore subject to absolute immunity. This is inaccurate; plaintiff has set forth allegations regarding non-prosecutorial conduct, both administrative and investigatory, that is not absolutely immune under the case law. Defendant's characterizations do not encompass all the conduct described in the FAC.

Defendants cite *Robicheaux v. Cnty. of Orange* (C.D.Cal. 2024) 750 F. Supp. 3d 1161, 1167 – In Robicheaux, the conduct complained of was entirely prosecutorial: "Plaintiffs' allegations refer to Defendants' "caus[ing] a criminal proceeding to be brought against Plaintiffs, caus[ing] Plaintiffs to be arrested and prosecuted, [and] caus[ing] the continuation of the prosecution of Plaintiffs." (Compl. ¶ 21). The nature of these functions is entirely prosecutorial." (*Robicheaux v. Cnty. of Orange,* 750 F. Supp. 3d 1161, 1170 (C.D.Cal. 2024)) The plaintiffs in Robicheaux made no claims related to administrative or investigatory conduct. Defendant also cites *Del Campo v. Kennedy* (9th Cir. 2008)

517 F.3d 1070, 1073-1074, where the Court held that state sovereign immunity did not apply to private entities. The Del Campo case has no relevance to the Cha case.

Defendant asserts that a prosecutor's investigative conduct is immune. This directly contradicts case law holding that when an attorney gathers evidence prior to the determination of probable cause, in the manner of a police officer, only qualified immunity applies. In *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (cited by defendants), the appellate court affirmed denial of summary judgment for defendants on the issue of investigative conduct. The prosecutor was accused of encouraging witnesses to lie and creating false reasons for seeking recusal of his counsel. The Court affirmed the trial court's denial of summary judgment to the prosecutors, since there were material issues of fact as to the prosecutors' roles during different acts and phases of the judicial process, which would implicate investigative conduct not protected by immunity. "The question is whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." (*Genzl*er, 410 F.3d 630, 638.)

Defendants assert that a prosecutor's motives are always irrelevant and do not eliminate a prosecutor's absolute immunity. However, a prosecutor's improper motives are relevant to the finding of malicious prosecution. "[W]hen plaintiff raises a prima facie case of malicious prosecution, the burden shifts to defendant to show that his actions were not the product of improper motivation." (*Hand v. Gary,* 838 F.2d 1420, 1425 (5th Cir. 1988)) The grand jury's finding of probable cause to indict does not bar an action for malicious prosecution in those cases where the "malicious motive of the law enforcement officials [results in the] withold[ing of] relevant information from the independent intermediary." (*Hand*, 838 F.2d at 1428)

### 4. The Claims Regarding Conspiracy Are Valid

Plaintiff's Sixth Claim for Relief alleges defendants engaged in a conspiracy to deprive plaintiff of his rights. This includes defendants' conspiracy to pursue a biased investigation against Cha, and their conspiracy to present biased information to obtain arrest warrant. "A conspiracy under 42 U.S.C. § 1985 requires a purposeful intent to deprive someone of the privileges and immunities of the law." (*Grisom v. Logan,* 334 F.Supp. 273, 278 (C.D.Cal. 1971); *see, Nelson v. Rains,* 2006

U.S.Dist.LEXIS 36549, at *8 (D.Kan. June 5, 2006, No. 06-2072-JWL) [proper to allege conspiracy where four law enforcement officers engaged in concerted action to wrongfully arrest him])

Defendants have cited cases for the proposition that alleging a conspiracy does not eliminate any applicable immunities. Plaintiffs do not assert conspiracy as an attempt to "get around" any other immunities. Plaintiffs assert conspiracy to show a concerted action by the defendants and to hold the defendants' liable for each other's conduct in furtherance of the conspiracy. Defendants engaged in significant non-prosecutorial conduct that is not subject to absolute immunity.

**E.    California Law Immunities**

As to plaintiff's Seventh Claim for Relief - Negligent Hiring, Supervision, and Training, plaintiff makes claims under California law for defendants' negligent hiring, supervision, and training of its prosecutors and other employees. Defendants contend that California immunities against malicious prosecution claims (Govt Code §821.6.) prevents plaintiff's California causes of action. However, only conduct actually within the scope of the immunity provisions is immunized under section 821.6. (*See, County of L.A. v. Superior Court*, 78 Cal.App.4th 212, 231 (2000) [the prosecutor's conduct before the arraignment is not protected by §821.6])

In *Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131 (N.D.Cal. 2000), police promulgated a racially discriminatory program for training police officers that racial profiling in traffic stops. The Court held that the Complaint's allegations were broad enough to encompass conduct not within the scope of the immunity provisions, and that it was premature to resolve the immunity issue at the pleading stage. Here, the FAC alleges several categories of conduct not within immunity provisions, particularly, improper policies regarding detecting biases and/or conflicts of interest similar to the program in the Rodriguez case.

*Leon v. County of Riverside,* 14 Cal.5th 910 (2023), was decided on summary judgment. (*Leon, supra*, 14 Cal.5th 910 at 916) It is not appropriate to determine, on a Motion to Dismiss, that all of the conduct described in the Third Cause of Action will be subject to immunity under section 821.6.

Further, as to discretionary acts immunity under Govt. Code §820.2, this immunity does not apply to mere operational decisions. Courts distinguish between protected planning or policy decisions, and the operational decisions where the employee is merely implementing policy. (*Lopez v. Southern*

*Cal. Rapid Transit Dist*., 40 Cal.3d 780, 793 (1985)) "[T]here is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." (*Johnson v. State of California,* 69 Cal.2d 782, 796 (1968))

   Defendants case citations regarding Govt. Code §820.2 only cover direct allegations of prosecutorial conduct. Further, Defendants cite cases where discretionary acts immunity applied to defendants' employment and training. (Motion at 21:19-27) However, Defendants' case citations do not involve a Motion to Dismiss on a Federal section 1983 civil rights claim, and are not apposite to the Cha case.  (*See, e.g., Caldwell v. Montoya,* 10 Cal.4th 972, 981 (1995) [employment discrimination under CA law]; (*Ayala v. City of S. San Francisco,* 2007 U.S.Dist.LEXIS 54051 (N.D.Cal. July 13, 2007, No. C 06-02061 WHA) [summary judgment on civil rights claim]; (*Estate of Abdollahi v. County of Sacramento,* 405 F.Supp.2d 1194 (E.D.Cal. 2005) [summary judgment on civil rights claim]) These cases are inapposite here at the pleading stage, where there is insufficient evidence to distinguish the planning and operational aspects of the defendants' conduct. (*Rodriguez,* 89 F.Supp.2d 1131, 1138.)

## VI.    CONCLUSION

   Under most normal circumstances, prosecutors enjoy immunity for the decisions they make in the exercise of their duties. This case presents an extraordinary and shocking deviation from the most basic and important Constitutional protections for citizens against the most impactful intrusion on their life: the power to arrest and charge with crimes. Defendants chose to knowingly and intentionally violate Kenneth Cha's rights in order to charge him with crimes based on a fraudulent presentation to a grand jury and a judge. If he is unable to proceed with this matter, the Court would be extending immunity in a way that is inconsistent with the law and which would lead to intolerable results.

   For the foregoing reasons, defendants' Motion to Dismiss should be denied.

Dated: August 11, 2025                    Respectfully submitted,

                                         RAINS LUCIA STERN
                                         ST. PHALLE & SILVER, PC


                                         /s/ *Eustace de Saint Phalle*
                                         By: Eustace de Saint Phalle
                                         Attorneys for Plaintiff KENNETH CHA