EUSTACE DE SAINT PHALLE, SBN 179100
OLIVIA K. LEARY, SBN 329145
RAINS LUCIA STERN ST. PHALLE & SILVER, PC
2300 Contra Costa Blvd., Suite 500
Pleasant Hill, CA 94523
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: PersonalInjuryGroup@RLSlawyers.com

ATTORNEYS FOR PLAINTIFF
KENNETH CHA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| KENNETH CHA, | CASE NO. 24-CV-04700-PHK |
|---|---|
| Plaintiff, | **DECLARATION OF EUSTACE DE SAINT PHALLE IN SUPPORT OF PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE; CHESA BOUDIN; DANA DRUSINSKY; STEPHANIE LACAMBRA; LATEEF GRAY; REBECCA YOUNG; ANDREW KOLTUNIAK; and DOES 1-100, | Judge:  Peter H. Kang<br>Hearing Date: September 9, 2025<br>Place:   Courtroom F, 15th Fl.<br>Time:   1:30 p.m. |
| Defendants. | |

I, Eustace de Saint Phalle, declare as follows:

I am the lead counsel for Plaintiff Kenneth Cha in the above-captioned action. I am admitted to practice law in California and to appear before this Court. I am familiar with the procedural developments and filings at issue in this matter. I have personal knowledge of the facts of this declaration. If called to testify, I could and would competently testify to the statements and facts contained herein.

This Declaration is offered in support of plaintiff's Opposition to Defendants' Section 12(b)(6) Motion for Plaintiff's First Amended Complaint. Courts have held that the plaintiff enjoys more flexibility than a defendant in this regard and "may submit evidence to illustrate allegations without

turning that motion into a Rule 56(a) motion for summary judgment." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021); *see Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 480 n.2 (7th Cir. 2020).

**Attached Documentary Exhibits**

1. Attached to this Declaration are true and correct copies of the following documents:

Exhibit 1. Comparison Chart of unserved Search Warrant (October 28, 2020) to the Arrest Warrant Affidavit (October 29, 2021) submitted by DA Investigator Andrew Koltuniak & Search Warrant Draft.

Exhibit 2. Corrected Arrest Warrant Affidavit & Highlighted Areas of Issue on Initial Arrest Warrant (Filed Under Seal)

Exhibit 3. SFDA Charging Policy. (https://sfdistrictattorney.org/wpcontent/uploads/2023/05/05.09.23-SFDA-Charging-Policy.pdf).

Exhibit 4. *Moore v. City & Cty. of S.F.*, No. 18-cv-00634-SI, 2020 U.S. Dist. LEXIS 232585, at *13 (N.D. Cal. Dec. 10, 2020).

Exhibit 5. R. Hanzlick et al., "A Guide For Manner of Death Classification," National Association of Medical Examiners, February 2002, p. 3, 5-6.

**Procedural History**

1. Plaintiff filed their initial Complaint on March 1, 2024. Following this, Defendants filed a Motion to Dismiss on January 31, 2025. Plaintiffs served its Opposition to this motion on February 14, 2025, with Defendants filing their Reply on February 21, 2025. The hearing occurred on April 8, 2025 with Judge Peter Kang. During the hearing, many case issues were discussed, including the setting of various case deadlines and Plaintiff was given leave to amend the complaint. Judge Kang ordered that discovery be open on May 12, 2025. This was purposely scheduled prior to the due date to Defendant's Answer or Motion to Dismiss to Plaintiff's First Amended Complaint. On April 21, 2025 in an effort to "get the ball rolling" on receiving the records already identified by both sides as particularly pertinent to this case, plaintiff's co-counsel Olivia Leary sent defense counsel a letter requesting the Defendant produce certain documents.

2. Following this, Plaintiff served discovery requests, including detailed Requests for Production of Documents that included Requests for the complete Arrest Warrant without redactions

and with all exhibits. These requests were served on May 14, 2025. Following Defendant's request for additional time, Plaintiff granted further time to respond, until July 1, 2025.

3. Plaintiff filed the First Amended Complaint on May 23, 2025. Defendants filed the Motion to Dismiss Plaintiff's First Amended Complaint on June 30, 2025.

4. Defendant served responses to Plaintiff's Discovery Requests on July 1, 2025. However, no responsive production was served. After multiple pages of general objections in response to these Requests for Production, and somewhat buried in these objections it was stated by Defendant in their response: "Defendant objects that the scope of these requests make it unreasonable for Defendant to complete their production by June 30, 2025. Defendant will begin production of records after the Court rules on the immunity defenses in Defendant' June 30, 2025 motion to dismiss, and will produce records on a rolling basis."

5. On July 10, 2025 Plaintiff's co-counsel Olivia Leary emailed defense counsel inquiring about the production of documents. No response was received clarifying Defendants' position.

6. Following this, I sent a letter to defense counsel on July 28, 2025. Within this letter, I detailed plaintiff's attempts to receive requested production and the prejudice that this delay posed to plaintiff's ability to present an opposition to the upcoming motion to dismiss. In response, on August 7, 2025, Defendants served some of the documents requested, specifically an unredacted copies of the Arrest Warrant and Affidavit authored by Andrew Koltuniak, the Coroner's Report regarding Sean Moore, and the Temporary Restraining Order regarding Sean Moore and the Cha family.

**Description of First Amended Complaint and How It Meets the Court's Directives**

7. At the hearing on defendants' prior Motion to Dismiss, the Court directed plaintiffs to draft a First Amended Complaint, and to ensure the First Amended Complaint clarifies: 1) the legal claims for the different types of conduct (prosecutorial, investigative, and administrative); 2) the specific conduct by each individual defendant giving rise to constitutional injuries; and 3) whether each defendant is sued individually or in their official capacity as to each claim. In compliance with the Court's directives, the FAC sets forth separate claims for categories of conduct, and clarified the particular conduct by each defendant giving rise to plaintiff's claims against that defendant.

8. The First Claim for Relief alleges administrative conduct by the individual defendants in establishing and implementing improper administrative policies and procedures at the SFDA office, which caused a violation of plaintiff's Fourth Amendment rights. This Claim for Relief has four counts, alleging four categories of defendant's administrative conduct.

9. The Second Claim for Relief alleges investigative misconduct by the individual defendants, which caused a violation of plaintiff's Fourth Amendment rights. This Claim for Relief has three counts, alleging three categories of defendant's investigative conduct.

10. The Third Claim for Relief alleges that the individual defendants' improper conduct in seeking an arrest warrant against Kenneth Cha, without probable cause, constituted malicious prosecution in violation of plaintiff's Fourth Amendment rights.

11. The Fourth Claim for Relief alleges that the public entity defendants (City of San Francisco and the SFDA) created administrative policies that resulted in the deprivation of plaintiff's rights, pursuant to the *Monell* case.

12. The Fifth Claim for Relief alleges that certain individual defendants are liable in their supervisory capacities, for directing or tolerating conduct by SFDA employees that was likely to cause constitutional injury, pursuant to *Villarreal v. Cnty. of Monterey*, 254 F. Supp. 3d 1168, 1184. This Claim has two counts, one against Chesa Boudin, and one against Lateef Gray.

13. The Sixth Claim for Relief alleges that, in doing the conduct violating plaintiff's rights, the individual defendants agreed and acted in concert and with a common plan. This Claim for Relief has two counts, one for conduct related to the investigation, and one for conduct related to the arrest warrant.

14. The Seventh Claim for Relief makes a negligence claim under California law against the entity defendants (City of San Francisco and the SFDA) and certain managerial defendants (Chesa Boudin; Lateef Gray), related to the negligent hiring, supervision, and training of SFDA employees.

**Arrest Warrant Affidavit**

15. On October 29, 2021, Investigator Koltuniak submitted the Application for Arrest Warrant of Kenneth Cha and provided a sworn affidavit in support. (See Exhibit A to Declaration of Karun Tilak, filed June 30, 2025) Plaintiff alleges that the Koltuniak Affidavit contained multiple

misrepresentations and omissions from the evidence available, and it is believed that this was done with the intent to mislead the reviewing magistrate.

16. A review of Koltuniak's Affidavit demonstrates marked similarities between the statements attributed to Koltuniak and the prior search warrant drafted by ADA Drusinsky and ADA Lacambra for the cellular devices of Off. Cha and Patino. As Plaintiff alleges in his Complaint, and Plaintiff anticipates the evidence will show, this search warrant affidavit was improper and unethical, such that multiple DA Investigators objected to its use. Due to their objections to this affidavit, Investigator Hayashi was reassigned off the Moore investigation and her supervisor, Lt. Pailet was terminated. Plaintiff includes for ease of review for the court, the unfiled Search Warrant and a Chart that compares the many similar or identical passages from the Search Warrant Affidavit and Koltuniak's Affidavit. (See Exhibit 1)

17. Due to the myriad of issues Plaintiff asserts are present in the Koltuniak Affidavit, Plaintiff has drafted a proper warrant affidavit that complies with the legal and ethical requirements for an arrest warrant and sworn affidavit to serve as an example of the lack of probable cause for charges against Officer Cha. (See Exhibit 2) It is Plaintiff's belief, as is clear from the corrected Arrest Warrant Affidavit, when the evidence is accurately presented to demonstrate the totality of the circumstances, no probable cause for the charges against Kenneth Cha was appropriate.

18. In particular, it is plaintiff's belief that additional discovery, as well as the evidence currently available, reveals critical misrepresentations and omissions in the following sections of the affidavit:

- The applicable statutes and laws, particularly the omission of self defense and the rebuttable presumption that the killing was not criminal per Penal Code section 194.
- Misleading presentation of Koltuniak's own experience and omission of information regarding prior censure by judges, including making misrepresentations under oath in prior cases.
- Misrepresentation of the circumstances surrounding the shooting of Sean Moore, including downplaying Moore's violence and aggression to Off. Cha and Patino throughout the interaction, explaining away Moore's assault of the officers as merely "defending" himself,

and providing inaccurate summary of the footage captured on the body worn cameras, including Moore kicking and moving towards Off. Cha directly before Cha fired.

- Inaccurate portrayal of the findings of the Coroner related to Sean Moore's cause of death, contributory causes and the weight of the Coroner's finding that the death was homicide, including improperly assigning this determination a criminal finding.
- Suggestive and misrepresentative selection of stills from the body worn camera footage imbedded in the affidavit, purposely showing Moore in a neutral position, then ignoring assaults by Moore against the Officers and focusing on Cha's shooting.
- Omission of exculpatory information for Off. Cha, including acknowledgement of the body camera evidence, full explanation of Moore's history of violence and criminal history, the DA's Office's prior assessment that there was no probable cause for charges to be brought against Off. Cha, suggestive presentation of the exculpatory evidence and attempts to refute the importance of such evidence by Koltuniak.
- Inaccurate summaries of prior court decisions that Koltuniak attempted to expand to inappropriately apply to the actions of Off. Cha.
- Suggestion that Cha's version of events differed with the body worn camera footage, specifically that Moore was not physically aggressive at the time of the shooting, when the footage shows Moore punching Patino in the face, and then kicking out at Cha with his foot.
- Presentation of the sequence of events during the interaction between Moore, Cha and Patino, in particular the events immediate to the shooting of Moore as separate and independent. In reality, the actions of Moore, Patino and Cha were a part of simultaneous set of movements where Moore punched Patino, knocking him down the stairs, acted aggressively towards Cha and then leading up to the moment Cha discharged his firearm.
- Inaccurately suggesting that Off. Cha's actions to see Moore assault Patino, Patino fall, Moore turn his attention to Cha, move forward and kick, and Cha shooting Moore, was not possible to occur within the time frame allotted based on known perception and reaction times. Cha had more time than Koltuniak suggests in the Affidavit to perceive and respond

        to the threat of Moore.

- Failure to include information regarding conflicts of interest in the DA's Office in the Cha investigation, specifically with IIB Managing Attorney Lateef Gray.

- The Koltuniak Arrest Warrant packet failed to meet the Charging Policy of the SFDA's Office. The policy states, among other guidelines: "Charges should only be brought when there is a reasonable likelihood of conviction by an objective factfinder hearing the admissible evidence, which means an analysis that the matter can be proven to a unanimous jury beyond a reasonable doubt." (Exhibit 3, p. 2) Although the version included as Exhibit 3 is the current policy under the Administration of DA Brooke Jenkins, it is Plaintiff's belief that discovery will show a similar DA Office Charging Policy was in effect at the time of the submission of the Arrest Warrant Application for Kenneth Cha.

19. The Arrest Warrant packet contained the Affidavit (18 pages, single spaced), Exhibits (134 pages hard copy, and a flash drive containing Off. Patino's body camera footage (30 minutes), Off. Cha's body camera footage (40 minutes, 18 seconds), Off. Cha's Interview on January 7, 2017, The Coroner's Report (17 pages), and the Temporary Restraining Order (5 pages).

20. The date of submission and granting shown on the packet establishes that the Arrest Warrant packet was submitted on October 29, 2021 to Judge Harold Kahn, who signed the warrant on the exact same day.

21. Based on the sheer amount of information included, it is plaintiff's belief that it would be impossible for Judge Kahn to have performed a detailed or complete review of all the information submitted within one day. Therefore, Plaintiff believes that discovery will establish that Judge Kahn relied on the Affidavit submitted by Koltuniak was not able to review all the attached exhibits before granting the arrest warrant application. This resulted in Judge Kahn not reviewing the totality of the evidence and being misled by Koltuniak's inaccurate and biased affidavit that contained false statements and mischaracterizations of the evidence available.

22. Should Plaintiff's action be allowed to proceed, Plaintiff intends to conduct discovery on the issue of Judge Kahn's review and his ability to conduct a complete review within this timeframe.

**Conflicts of Interest in the SF DA's Office – The Continued Involvement of Lateef Gray**

23. Investigator Koltuniak cites to prior court decisions within the Arrest Warrant Affidavit, one of which is *Moore v. City & Cty. of S.F.*, No. 18-cv-00634-SI, 2020 U.S. Dist. LEXIS 232585, at *13 (N.D. Cal. Dec. 10, 2020). (Exhibit 4; Arrest Warrant Packet, Exhibit 7)

24. Based on the ruling available on Lexis Nexis, oral argument on this matter was heard on December 4, 2020 with the court issuing their holding on December 10, 2020. Per the holding, counsel for the Defendant Sean Moore is listed as "Lateef Hasani Gray, The Law Offices of John L. Burris, Airport, Corporate Center, Oakland, CA". (*Id.* at *1). Therefore, it appears that Lateef Gray was still acting actively as Sean Moore's attorney of record, including presenting oral argument on his behalf almost 1 year after being hired at the DA's Office and 6 months after assuming the role of Managing Attorney of IIB.

25. Further, based on the dates referenced in the court's ruling, this oral argument appears to have occurred months after Andrew Koltuniak was hired by the DA's Office after being specially selected to the IIB Unit by Boudin and Gray, and actively working on the Moore matter, as alleged by Plaintiff.

**Plaintiff's Objections to Evidence**

26. Defendants' Motion to Dismiss the First Amended Complaint requests judicial notice of a set of documents, as follows:

    Exhibit A - Felony Complaint and Arrest Warrant with Exhibits

    Exhibits B-E - Redacted Transcript of Grand Jury Testimony

27. Following the filing of their Motion to Dismiss, Defendants also attached the footage from Ofc. Cha's body worn camera during the subject incident.

28. Plaintiff objects to the use of extrinsic evidence in determining issues on a Motion to Dismiss. In ruling on a Motion to Dismiss under Rule 12(b)(6), the Court must accept as true all of the material factual allegations. (*Hamilton v. Brown*, 630 F.3d 889, 892-93 (9th Cir. 2011)), and primarily considers only the allegations set forth in the operative complaint. (*McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020)

29. Further, both the Grand Jury testimony and the videotaped evidence provided by defendants are voluminous and requires many hours of review. Defendants' submission of this evidence implies that a determination of factual issues is necessary to determine issues relevant to this Motion, such as whether Cha acted in self-defense; the existence of probable cause; the purpose of the grand jury; etc. Defendants' submission of extrinsic evidence highlights the need for further discovery on the issues, and the inappropriateness of deciding the issues in a Motion to Dismiss.

30. With respect to the addition of extrinsic evidence on a Motion to Dismiss, Courts have held that the plaintiff enjoys more flexibility than a defendant in this regard. The plaintiff "may submit evidence to illustrate allegations without turning that motion into a Rule 56(a) motion for summary judgment." (*Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021); *see, Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 480 n.2 (7th Cir. 2020)) Here, because of defendants' submission of evidence, and because the matters relevant to the Complaint and Motion are complex, plaintiff wants the Court to be provided an explanation of what evidence we believe exists from an evidentiary standpoint and what the evidence shows at this time, prior to any discovery or deposition testimony. For this limited purpose, plaintiff attached documentary exhibits as described in this Declaration.

**Further Intended Discovery**

31. In drafting the First Amended Complaint, as well as in opposing this Motion to Dismiss, plaintiff has attempted to provide a review of the most important evidence bearing on plaintiff's claims. Plaintiff believes that the stated facts are sufficient for cognizable claims for constitutional injury, as set forth in the First Amended Complaint. Plaintiff believes that, if the case continues, further evidence regarding the defendants' conduct will be developed in discovery.

32. Plaintiff intends to propound some discovery on relevant topics, including but not limited to: the timing of the arrest warrant; drafting of the arrest warrant; communications between the investigators and the attorneys related to probable cause analysis; the defendants' implementation of SFDA office policies as alleged in the FAC, and related communications between the defendants; defendants' hiring policies and the hiring of defendants Gray, Drusinsky, Lacambra, and Koltuniak; defendants' discussions of the draft declination letter related to the Cha case; the presentation of the arrest warrant by Koltuniak to the judge; and other issues.

33. This discovery will be necessary to assist Plaintiff in demonstrating the intent of the Defendants and what occurred in these events at issue, including what actions of Defendants were in fact administrative, investigatory, and prosecutorial, and whether there was sufficient evidence to determine that self-defense would be an appropriate defense for Off. Cha.

**Meaning of "Homicide" as a Neutral Term in Medical Examiner Reports**

34. Defendants' Motion cites the coroner's report and its reference to the cause of Moore's death as "homicide." This term of art is misleading in the context of evaluating Moore's death. Pursuant to "A Guide For Manner of Death Classification," by the National Association of Medical Examiners, homicide is a neutral term that does not imply criminal intent, nor does it imply the satisfaction of any of the criminal statutes related to murder or manslaughter:

> Homicide occurs when death results from a volitional act committed by another person to cause fear, harm, or death. Intent to cause death is a common element but is not required for classification as homicide (more below). It is to be emphasized that the classification of Homicide for the purposes of death certification is a "neutral" term and neither indicates nor implies criminal intent, which remains a determination within the province of legal processes.

(See Exhibit 5, R. Hanzlick et al., "A Guide For Manner of Death Classification," National Association of Medical Examiners, February 2002)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed this 11th day of August, 2025 in San Francisco, California.

*/s/ Eustace de Saint Phalle*
Eustace de Saint Phalle

10
DECLARATION OF EUSTACE DE SAINT PHALLE ISO PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT