# EXHIBIT 1b

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
# REQUEST AND ORDER

| | | |
|---|---|---|
| In the matter of **SEARCH WARRANT** for: | ) | **FOR SEALING SEARCH WARRANT, AFFIDAVIT** |
| ADDRESS: Cellco Partnership, dba Verizon | ) | **FOR SEARCH WARRANT, OR PORTION OF** |
| _____ | ) | **THE WARRANT PURSUANT TO PENAL CODE** |
| PERSON: _____ | ) | **§1541; EVIDENCE CODE §1040, 1041, 1042; and** |
| VEHICLE: _____ | ) | **CALIFORNIA RULES OF COURT 2.550(d)** |
| PHONE # + CARRIER: _____ | ) | **MUST CHECK ONE:** |
| INCIDENT REPORT #: _____ | ) | ☒  SEALED **ENTIRELY** |
| ARREST WARRANT #: _____ | ) | ☐  SEALED **PORTION** |
| | | ☒ Approved to Release SW Face Sheet per CalEPCA |

**Your Affiant**, **INSPECTOR MAGEN HAYASHI # 111**, from the San Francisco District Attorney's Office respectfully requests:

1) this **Search Warrant** sought pursuant to the **Search Warrant** Affidavit, Statement of Probable Cause and Return to **Search Warrant** and all documents relevant to this Search Warrant be ordered sealed;
2) this portion of the **Search Warrant** Affidavit and Statement of Probable Cause be ordered sealed;

by the Magistrate in order to implement the privilege under Evidence Code § 1040 to 1042 and to protect the identity of any confidential informant(s) and/or official information, pursuant to the Supreme Court decision in People v Hobbs (1994) 7 Cal.4th 948, and California Rules of Court 2.550(d). If any of the information within the requested sealed Search Warrant or portion of the Affidavit and Statement of Probable Cause is made public, it will reveal or tend to reveal the identity of any confidential informant(s) and/or impair further related investigations and/or endanger the life of the confidential informant(s).

I declare under penalty of perjury that the related foregoing is true and correct to the best of my knowledge.

_____ , _____day of _____ at ____ _____ A.M. / P.M.
  **(Signature of AFFIANT )**

# ORDER

Based upon a review of the **Search Warrant** Affidavit, this court finds that there exists an overriding interest that overcomes the right of public access to the record; the overriding interest supports sealing the record, a substantial probability exists that the overriding interest will be prejudiced if the record is not sealed, the proposed sealing is narrowly tailored, and no less restrictive means exist to achieve the overriding interest.

**THEREFORE, IT IS ORDERED** that the **Search Warrant** and/or portion of the **Search Warrant** Affidavit/Statement of Probable Cause be sealed and maintained in a secure location in the custody of the Clerk of the Court and not be made part of the public record until further order of this court or any competent court.

_____ day of _____ at _____A.M. / P.M.
  **(Signature of MAGISTRATE )**

Judge for the Superior Court of California, County of San Francisco:

_____
        **(Printed Name of MAGISTRATE)**

**SEARCH WARRANT ISSUED DATE:** _____ _____ **SEARCH WARRANT RETURN DATE:** _____

SW NO. _____

**STATE OF CALIFORNIA - COUNTY OF SAN FRANCISCO**
**SEARCH WARRANT AND AFFIDAVIT**
**(AFFIDAVIT)**

I, Inspector Magen Hayashi #111 swears under oath that the facts expressed in this Search Warrant and Affidavit and in the attached and incorporated statement of probable cause are true and that based thereon she has probable cause to believe and does believe that the property and/or person described below is/are lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

_____      HOBBS SEALING REQUESTED: ☐ YES ☐ NO
(Signature of Affiant)                       NIGHT SEARCH REQUESTED: ☐ YES ☐ NO

# (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE OFFICER IN THE COUNTY OF SAN FRANCISCO:** proof by affidavit having been made before me by **Inspector Magen Hayashi #111** that there is probable cause to believe that the property described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "x"(s) in that:

_____ it was stolen or embezzled

_____ it was used as the means of committing a felony

_____ it is possessed by a person with the intent to use it as a means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery,

___X____ it tends to show that a felony has been committed or that a particular person has committed a felony,

_____ it tends to show that sexual exploitation of a child in violation of Section 311.3, or depiction of sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring

_____ there is a warrant for the person's arrest;

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

==Cellco Partnership, dba Verizon Wireless==
==Custodian of Records==
==180 Washington Valley, Rd==
==Bedminister, NJ 07921==
==Fax (888) 667-0026==

**FOR THE FOLLOWING PROPERTY:**
    See ATTACHMENT A

**YOU ARE COMMANDED**, within five business days after receipt of this search warrant, to deliver by mail or otherwise, to the above named law enforcement officer, together with the declaration as set forth below, a true, durable and legible copy of the requested records listed in the Exhibits "A" (See California Pen. Code, § 1524.2)

**PROCEDURE**: The custodian shall complete and sign the "Declaration of Custodian" which accompanies this search warrant. The "Declaration of Custodian" shall be returned with a copy of the requested records. (See California Pen. Code, §§ 1546.1(d)(3), 1524.2 (b)(4).)

**Execution by custodian of records:** This warrant will be deemed executed if the custodian of records or other designated employee causes the listed records to be delivered to the affiant within ten days of service.

**Disposition of Records:** Pursuant to Penal Code Sections 1528(a) and 1536, all records seized pursuant to this search warrant shall be retained in the affiant's custody pending further court order.

ALL DATA SURRENDERED BY THE PROVIDER IS REQUESTED IN ELECTRONIC FORMAT IN A MANNER AGREED UPON BY THE PROVIDER AND THE PEACE OFFICER(S) EXECUTING THIS SEARCH WARRANT.

Non-Disclosure:  It is ordered that Cellco Partnership, dba Verizon shall delay notification of the existence of this search warrant and this order of the Court, or the existence of the investigation, to the listed subscriber(s) or to any other person, for a period of 90 days unless otherwise directed by the Court. It is further Ordered that notification by the government otherwise required under Penal Code Section 546.2(a) be delated for a period of 90 days.

**AND TO SEIZE IT/THEM IF FOUND** and return all records to:

   ATTN: Inspector Magen Hayashi
       San Francisco District Attorney's Office
       Independent Investigations Bureau
       350 Rhode Island Street, Suite 400N
       San Francisco, CA 94103

This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me this _____ **day of _____, 2020, at _____A.M./P.M.**  Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____    **HOBBS SEALING APPROVED:** ☐ YES  ☐ NO
(Signature of Magistrate)  **NIGHT SEARCH APPROVED:** ☐ YES  ☐ NO

Judge of the Superior Court, _____ County of San Francisco Judicial District

**SW & A1**

**EXHIBIT A**

**FOR THE FOLLOWING PROPERTY:**

All records associated with mobile number(s) **[TARGET NUMBERS]**, for the dates of ~~[DATE OR TIME FRAME FOR REQUEST]~~January 6, 2017 to present.

1. **Subscriber Records**: All information for the following mobile number(s) **[TARGET NUMBERS]** including:
    a. All Subscriber information to include name, tax identification number (social security number or employer identification number).
    b. Physical address, mailing addresses, residential addresses, business addresses, e-mail addresses and any other address information
    c. All Authorized users on the associated account.
    d. Make, model, and serial number associated with the above listed numbers including any and all equipment or sim card changes for the life of the account.

2. **Call/Text/Data Detail Records**: All records associated with the identified mobile number(s) **[TARGET NUMBERS]**, also to include All communications content, including email, text (SMS/MMS or app chats), notes, or voicemail. This data will also include attachments, source and destination addresses, and time and date information, and connection logs, images and any other records that constitute evidence related to the officer involved shooting for the dates above, including communications referring or relating to this investigation.

    a. Cell-site and sector, date, time, direction, duration, number called or text to and/or received from, information related to each call, text or data connection, all text message content, and voicemails.
    b. Call to Destination / Dialed Digits search for all numbers listed above. Please preserve all cell-site and sector information related to each call, text or data connection.
    c. All photographic/video/audio data and associated metadata.
    d. Al internet history for the dates above, including cookies, ~~bookwamrks~~bookmarks, web history, search terms.

3. **Stored Communication Records:** All stored communications associated with the identified mobile number(s) **[TARGET NUMBERS]** for the above listed Call/Text/Data Detail Records. Specifically to include all audio and text message content, voicemails, and any other stored communications.

4. **Electronically Stored Records:** All records associated with the identified mobile number(s) [TARGET NUMBERS], also to include all numbers that communicate with these listed numbers relating to all stored communication or files, including voice mail, text messages (including numbers text to and

received from and all related content), e-mail, digital images (i.e. pictures), buddy lists, video calling, and any other files including all cell site and sector information associated with each record and associated with cell number(s) identified as: **[TARGET NUMBERS].**

Any other records and other evidence relating to phone numbers **[TARGET NUMBERS].** Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced accounts, the content and connection logs associated with or relating to postings, communications and any other activities to or through the above referenced phone numbers, whether such records or other evidence are in electronic or other form.

As required by California Penal Code § 1546.1 (d); any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject further review, use, or disclosure absent an order from the Court.

If no evidence of criminal activity is discovered relating to the seized property and associated peripherals, the system will be returned promptly.

With respect to the above items listed, the provider is direct and not to disclose the existence of this Search warrant until further order of the court.

With respect to the above items listed and its subsections above, the executing law enforcement officers(s) and their designees is/are authorized to view, photograph, record, copy, forensic image and conduct forensic analysis of any and all data, programs and applications on the above-described cellular communication devices(s), as well as on any data storage devices and/or mediums attached to those cellular communication devices.

The executing law enforcement officer may enlist the aid of a law enforcement compute forensic laboratory in the search, viewing, photographic, recording, copying, forensic imaging and analysis of all of the information described in item list #1 and its subsections.

# AFFIDAVIT IN SUPPORT OF ~~ARREST~~ SEARCH WARRANT

**Commented [HM(1)]:** Typo on my part, should say Search, not arrest

## IDENTIFICATION AND EXPERTISE OF AFFIANT

I, Magen Hayashi, your affiant, have been employed as a District Attorney Inspector with the City and County of San Francisco District Attorney's Office ("SFDA") since September 2017. As a District Attorney Inspector, I am designated a peace officer and have a peace officer's authority as articulated in sections 830 and 830.1 of the California Penal Code. I am currently assigned to the Independent Investigations Bureau where I investigate law enforcement associated incidents including officer involved shootings, excessive use of force, and in-custody deaths.

On or about 2000 through 2006, I served as a sworn federal investigator in Michigan and Texas with the Federal District Courts under the United States Probation Department. As a Federal investigator, I conducted pre-sentence sex, narcotic and organized crime investigations wherein I worked with multiple state and federal agencies to develop cases for prosecution and sentencing. I also wrote federal arrest and search warrants for offenders in violation of presentence conditions. I attended numerous trainings on search warrants, interview techniques and legal writing. In 2014, I began my formal training as a California peace officer and graduated from an 880-hour Peace Officer Standards and Training (POST) Basic Police Academy hosted in Napa, California. At the academy, I was trained in basic crime scene management, interview techniques, and crimes against persons investigations. Later in 2014, I began working as a police officer with the Novato Police Department wherein I received advanced instruction and qualifications in: sexual assault investigations, fraud, interviews and interrogation, alcohol and narcotic detection, search and arrest warrants, domestic violence and canine training,

I hold a Master of Arts degree in Forensic Psychology from John Jay College of Criminal Justice and possess an Advanced Certificate from the California Commission on Peace Officer Standards and Training. I have completed the POST Approved District Attorney Investigator and Trial Preparation 80 Hour Course as well as the POST Officer Involved Shooting and Force Investigations 40 Hour Course. I am a current member of California District Attorney Inspector Association.

As a Forensic Psychologist, Federal Agent and California Peace Officer, I have conducted and participated in hundreds, if not a thousand, criminal investigations involving homicide, assault, sexual violence, domestic violence, crimes against children, and white-collar crimes. I have interviewed hundreds of victims, witnesses and suspects and gained knowledge and insight as to how these crimes are committed. I have executed search warrants wherein I seized evidence related to criminal investigations. I authored hundreds of official reports documenting criminal investigations and arrests and have testified in court for such investigations.

## STATEMENT OF PROBABLE CAUSE & OPINION

On [insert date], I was assigned as the IIB (Independent Investigation Bureau) Investigator for the San Francisco District Attorney's Office on the murder of Sean Moore by San Francisco Police Department Officer Kenneth Cha. Sean Moore died on January 20, 2020 as a result of injuries he suffered from Officer Cha's shooting on January 6, 2017. The cause of death was determined to be a homicide based on the findings of the Marin County Coroner's office, which found that Moore died from the bullet wounds inflicted by Officer Cha on January 6, 2017. Moore died from Acute Intestinal Obstruction due to severe abdominal adhesions due to sequalae of remote gunshot wounds to the abdomen.

[Comment HM(2): Need to discuss. IIB is assigned to OIS cases, not murder.]

\

On January 6, 2017, at approximately 03:51 AM, San Francisco Police Department (SFPD) Officers Kenneth Cha Star No. 1206 and Colin Patino Star No. 1310, responded to 515 Capitol Avenue, in San Francisco, California, to investigate a report by Christopher Choy that his neighbor, Sean Moore, had violated a temporary protective order. ~~were involved in an officer involved shooting (OIS) at 515 Capitol Avenue, the residence of an individual known as~~ This incident is being investigated by the San Francisco District Attorney's office because during the investigation, Officer Patino struck Moore multiple times with his baton and Officer Cha pepper-sprayed and shot Sean Moore. ~~This incident is currently being reviewed by the San Francisco District Attorney's office.~~

The incident began ~~at approximately 03:51 AM~~ when the reporting party, Christopher Choy, notified SFPD dispatch that his neighbor, Sean Moore, ~~was actively violating~~ violated a temporary protective order issued against him by Choy. The restraining order ~~specifically~~ prohibited Moore from noise harassment toward the Choy residence (521 Capital Avenue). Choy advised SFPD dispatch that Moore was actively hitting their adjoining walls and disturbing his family in violation of the restraining order.

Officers Cha and Patino responded and arrived at the residences of Mr. Choy and Moore at approximately 04:20 AM, and the following described actions are captured on the body worn camera (BWC) of both officers. Mr. Choy gave Officer Patino a copy of the restraining order and proof of service. Both officers then went to speak with Moore ~~who was audibly yelling inside his residence~~. The Moore residence was located on the second floor at the top of a narrow, double walled concrete stairway. The front door was located behind a gated security door.

Upon arrival, Officers rang the doorbell and Moore exited his residence but remained behind the gated security door. ~~Officer Cha stated he estimated Moore to be 6'4 inches tall and weighing 275lbs.~~ Moore repeatedly told the officers he did not want to speak to them and wanted them to leave, and they refused to comply. ~~was verbally assaultive toward the officers, both of whom were in full uniform.~~ Moore demanded the officers get off his stairs and denied any harassment toward Choy. Moore explained that he had taken his garbage out and swept his staircase and again ordered the officers to leave. Both ~~Officer~~ Cha and Patino ~~repeatedly~~ refused to leave despite the repeated orders from Moore to vacate his property. Moore attempted to end the encounter by going inside his home, but Patino called him back to the front door and began ~~tried to read~~reading the elements of the temporary protective order to Moore who yelled over him and ~~aggressively~~ demanded both officers vacate the staircase. When both officers still refused to leave, Moore took out his cell phone and told the officers he was going to call to have them removed. Patino then taunted Moore by jeering: "Who you gonna call?!" and exclaiming: "What is up with this freak?"

Moore retreated into his home to call the police and Cha and Patino retreated down the stairs joking among themselves. At the bottom of the stairs, Cha and Patino reviewed the court order while continuing to shine their flashlights into Moore's home via the windows and door. Moore re-emerged from his home and again demanded the officers leave using derogatory insults. In response, Patino charged back up the staircase to confront Moore, who was still behind his gate. Moore asked Patino for his star number and had his cell phone in his right hand. Moore repeated his demand that the officers leave his home. Cha and Patino verbally and physically refused to obey Moore's commands.

~~Moore continued to verbally berate the officers with obscenities and derogatory racial slurs while he denied any wrongdoing. Moore, who was behind his security gate, banged on the gate and widely gestured with his arms for both officers get back. He stated, "I am through talking to you bitch. Get off. Get off my stair."~~

~~At this point, the officers did not have a citizen's arrest form signed and had not seen Moore violate the restraining order in their presence. They therefore had no basis to arrest Moore. to arrest Moore.~~

When the officers still refused to leave, Moore ~~then~~ opened the security door and stood at the top of the staircase ~~waving his arms~~with his right arm extended and waving his right, outstretched palm in a "stop" hand motion while telling the officers to leave. Instead of heeding Moore's orders to leave his property, Officer Cha ~~verbally warned~~threatened Moore ~~he would be~~ with pepper spray~~ed~~ (Oleoresin Capsicum(OC)). Moore ~~continued~~ stood his ground and told Patino and Cha ~~to aggressively confront the officers~~tell the officers to get off his stairs. ~~and gestured with his arms.~~ ~~Officer~~ Cha and Patino continued to trespass on Moore's property and Cha ~~then~~ sprayed Moore in the face with OC, causing Moore to turn to retreat into his home. As Moore tried to retreat, Cha and Patino advanced upon Moore, who defensively kicked out to prevent them from entering the gate into his home. In the process, Cha managed to spray his partner Patino with OC, causing Patino to drop the restraining order papers on the staircase and ~~accidentally also spraying his partner Patino, causing and~~ both officers to retreat~~ed~~ a second time down ~~several stairs.~~the staircase.

~~Moore then turned back toward his residence and attempted to reenter his residence. Both officers moved up the narrow staircase to an effort to detain Moore before he could re-enter the residence and shut the security door. As they approached him, Moore kicked out toward the officers, kicking Officer Cha in the face. Both officers then retreated to the base of the staircase, and in the process, Officer Patino inadvertently dropped the restraining order documents.~~ Moore picked up the fallen ~~restraining order~~ papers and reentered his residence. Patino demanded Moore return the papers. Moore re-emerged from behind his gate with the papers in hand. Cha exchanged insults with Moore and encouraged Moore to fight by jeering: "What's up?! C'mon!" Moore responded by retreating back into his home.

~~Officer~~ Cha notified SFPD dispatch that he needed an ambulance for Officer Patino who ~~was suffering~~ had been hit in the face by Cha's use of ~~from secondary~~ OC spray ~~in his face~~. ~~Officer~~ Patino ordered Moore to exit the residence and return the paperwork and advised Moore he was under arrest. At this point, the officers did not have a citizen's arrest form signed and had not seen Moore violate the restraining order in their presence or commit any crime. The officers had no basis to arrest Moore. Moore exited his residence and threw the paperwork at the officers before again reentering his ~~residence~~ home.

After ~~several~~ failed attempts by Cha and Patino to ~~have him exit~~ coax Moore from his ~~the residence~~ home ~~and~~ by promising Moore medical care for the OC spray, the officers resort to threatening to kick in Moore's security gate. Moore relented, saying he could not see and exited ~~the residence~~ his home again ~~and stood~~ to stand behind the security ~~door~~ gate asking to "get this resolved". Cha continued to yell orders at Moore to "come out" of his home ~~When~~ while ~~Officer~~ Patino began to ~~partially~~ ascend the staircase and retrieve the thrown paperwork~~.~~, Responding to Cha's orders to come out, Moore ~~quickly~~ opened the security ~~door~~ gate and ~~aggressively moved toward Officer Patino~~ started screaming, "Fuck you… ~~Fuck you…. I'm gonna kick your ass punk.~~" as the officers continued to yell at him and goad him into combat by yelling "C'mon".

Officer Patino rapidly retreated backwards down the stairs~~-~~ and raised his billy club over his right shoulder, leaving some of the paperwork on the staircase. In response to Cha's repeated commands to come down, Moore ~~then~~ continued down the staircase. During his descent, Moore dropped a piece of his cell phone ~~-~~ and bent down to it pick up ~~a fallen object~~. ~~Officer~~ Cha and ~~Officer~~ Patino ~~now~~ tried to take advantage of the moment that Moore was bent over by ~~both moved~~ advancing up~~on the staircase to arrest Moore~~ him together with their weapons raised while commanding ~~him~~ Moore to lay down in the middle of a narrow staircase with steep steps. ~~Officer Cha also broadcast to SFPD dispatch that Moore had an unknown object in his hand.~~

Both officers ~~deployed their~~ had their batons drawn and ~~moved~~ charged up the staircase as Moore attempted to retreat into ~~the residence~~ his home again.  Because the staircase was so narrow, only one officer could move forward at a time, leading ~~Officer~~ Patino to approach Moore first with his baton.  Patino beat Moore at least twice with his baton, causing Moore~~, whom stood above the officers on the narrow staircase, attacked Patino with~~ to defend himself with ~~hand punches and~~ his foot, which ~~foot kicks about Officer Patino head and body,~~ result~~ed~~ing in ~~Officer~~ Patino falling down the stairs, dropping his baton and injuring his nose~~'s nose being broken~~.  ~~Officer Patino struck Moore at least twice with his baton before falling backward down the staircase against and past Officer Cha.~~  During this encounter, ~~both officers dropped their batons.~~

~~Moore then lunged at~~ Officer Cha panicked and ~~who~~ fired two rounds from his duty service weapon at Moore, ~~in what Cha stated was self-defense,~~ with the recoil causing ~~before~~ Cha to also ~~fell~~ fall backward down the staircase.  While lying on the ground outside, Officer Cha notified SFPD Dispatch that shots had been fired, both officers and Moore were injured, and Moore had now ~~barricaded~~ retreated ~~himself~~ inside his residence.

Numerous SF~~D~~PD officers responded and eventually, a specialist team successfully coaxed Moore to exit his residence wherein he was arrested and provide~~d~~ medical treatment for ~~a~~ gunshot wound~~s~~ to his abdomen and leg.  ~~Moore was charged with eight felony assault charges against both officers and two misdemeanor counts of resisting arrest and contempt of court.~~  Both officers were transported to the hospital and provided medical care for their injuries.

The District Attorney's office is aware that SFPD police officers are generally issued department issued cell phones to communicate with each other and investigate incidents in the course of their duty. The District Attorney's office is requesting the department issued: cell phone numbers, the actual cell phones and laptops utilized by the involved officers, and the cellular and network provider information to access all communication methods, photos, texts, ~~and~~ call logs, emails, and internet searches which might pertain to this OIS incident.  We are seeking this information because ~~to determine if the officers discussed any information~~ all communication by these officers pertaining to this OIS are necessary, relevant and material to our investigation of this incident. ~~about this incident which would in turn would provide evidence in our greater OIS investigation~~.

## COURT RECORD

At the preliminary hearing on [DATE] , ~~Moore's defense counsel argued~~ Moore presented evidence that the officers were not lawfully performing their duties once Moore ordered them to leave his property and acted with unreasonably excessive force to affect an unlawful arrest when they deployed pepper spray, struck Moore with their baton, and shot Moore.~~, threatened and assaulted them~~ Moore argued that any physical touching by him was the result of his lawful use of force to eject the officers from his property.  ~~The defense also argued Moore was unlawfully detained once the officers ordered him out of his house and used of pepper spray and a baton which were excessive use of force that entitled Moore to use reasonable force in resistance.~~

The Magistrate initially ruled the officers were engaged in the lawful performance of their jobs when they approached the residence to investigate a restraining order violation. But the magistrate further ruled that the officers did not have the right to affect a warrantless arrest of Moore for violating the restraining order and did not have probable cause to arrest Moore for resisting, obstructing or delaying arrest. Regarding the later part of the encounter, the magistrate ruled there was a factual dispute about whether the officers used unreasonable and excessive force to unlawfully arrest Moore and whether Moore was acting in self-defense; issues which should be submitted to a jury.

> **Formatted:** Indent: Left: 0", Tab stops: 0.54", Left + 0.54", Left

~~The magistrate further ruled that the officers did not have the right to effect a warrantless arrest of Moore for violating the restraining order and did not have probable cause to arrest Moore for resisting, obstructing or delaying arrest early in the encounter. Regarding the later part of the encounter, the Magistrate ruled there was substantial evidence that Officer Cha believed Moore was in the process of assaulting the officers when he first exited the gate, and therefore acted lawfully when he deployed to pepper spray to defend himself against what he perceived as Moore's pending assault. The Magistrate stated factual disputes about whether Moore assaulted the officers and whether the officers used reasonable force to arrest Moore for such an assault should be submitted to a jury.~~

On [DATE] ~~Moore's defense counsel appeared before the San Francisco Superior Court on a 995 motion.~~ The Superior Court found insufficient evidence the officers were lawfully performing their duties when they assaulted and shot Moore ~~committed his alleged crimes~~ and ~~they~~ set aside all 8 counts of felony assault charged against Moore.

The People appealed the Superior Court decision to the California Court of Appeals and ~~o~~n May 1, 2018, the California Appellate Court affirmed the Superior Court decision.  The Appellate Court ruled the officers were not lawfully engaged in the performance of their duties. The court stated the officers did not have the legal right to stay within the curtilage of the residence once Moore demanded they leave and any subsequent act by the officers was not in the performance of their duties.

~~On May 1, 2018, the California Appellate Court affirmed the Superior Court decision.  The Appellate Court ruled the officers were not lawfully engaged in the performance of their duties at the time the alleged crimes occurred, even though their subsequent actions in effecting the arrest were lawful.  They stated the officers did not have the legal right to stay within the curtilage of the residence once Moore demanded they leave. Moore did not however, have the right to assault them regardless if their initial encounter was unlawful. Moore was responsible for battery, but not battery of a peace officer engaged in the performance of his duties.~~

~~On January 20, 2020, while incarcerated for~~ an unrelated felony ~~offense at San Quinten State Prison, Moore fell ill and died.  An autopsy by the Marin County Coroner's office determined Moore died as a result of complications from a previous gunshot wound that occurred in this OIS and ruled the cause of death as Acute Intestinal Obstruction due to~~

~~severe abdominal adhesions due to sequalae of remote gunshot wound to the abdomen.  Other significant conditions listed were: hypertension, obesity, coronary atherosclerosis, diabetes, schizophrenia and drug abuse.~~

## EVIDENCE OF ~~CONCENSUAL~~ CONSENSUAL PHONE USE

~~The investigation to date, has uncovered no video or written evidence that report Officer Cha or Patino used a work cellular phone directly after or withing any determined time frame from which this incident occurred.  Furthermore, it is SFPD's policy that involved officers are immediately monitored by peers to prevent the discussion of the incident prior to a criminal and administrative interview.~~

~~However, B~~based on my training and experience as a law enforcement officer, officers use their department-issued devices, such as cell phones, laptops, and desktop computers to communicate regarding incidents that occur whilethey are on duty. I~~i~~t is reasonable to ~~conjecture~~ assume that Officers Cha and Patino would have communicated with SFPD administration, peers, family, friends and/or each other ~~at some point after this incident occurred~~regarding the shooting of Sean Moore on their digital devices, including department-issued and personal cell phones and laptops.  Officer involved shootings are stressful, traumatic events and after a shooting it is reasonable that law enforcement officers would use cellular phones and other digital devices to discuss events as a method to debrief.

[insert language re waiver of privacy for employment here]

Based on the reasonable knowledge that officers would have communicated with each other after an OIS it this affiant's opinion that Officer Cha and Patino's work issued cellular phone should be forensically examined for communication pertaining to this incident for the date ranges of _____.

## REQUEST FOR A SEALING ORDER

This remains an ongoing investigation into the police officer conduct.  Aside from Sean Moore, no arrests have been made, and no individuals have yet been charged.  I may conduct additional interviews with witnesses, identify and gather additional evidence, and seek additional warrants.  Because of the typically public nature of Search Warrants the discovery at this time, by anyone other than the extent of this investigation, and the official and/or confidential information detailed in this Statement of Probable Cause, would compromise the investigation and make it difficult to continue. I also believe in the privacy interests of the individuals for which accounts I am seeking to search, as well as the prosecutorial interests of the San Francisco Police Department and San Francisco District Attorney, requiring continuation of this investigation in a discrete and deliberate manner which is best served by keeping the Search Warrant documents out of the public eye at this time.  Additionally, the information contained within this Affidavit contains San Francisco police officer personal information which would serve no acceptable public purpose for disclosure other than

[Formatted: Highlight]
[Formatted: Highlight]

to gratify the salacious desire of some individuals and the media organizations. It could also potentially cause the officer and/or his family to be harassed or harmed.

Therefore, based on the sensitive and private nature of the officer's phone numbers, I am requesting this Statement of Probable Cause, the accompanying Search Warrant and the Return of the Warrant, when filed, be sealed on the basis they contain official and/or confidential information

_____

Magen Hayashi #111

Inspector

San Francisco District Attorney's Office

Independent Investigations Bureau

**SUBSCRIBED AND SWORN before me on this \_\_\_\_\_ day of _____, 2020**

_____

**Honorable Judge of the Superior Court of California**

**City and County of San Francisco**