# EXHIBIT 2

SUPERIOR COURT CITY AND COUNTY OF SAN FRANCISCO

REQUEST TO ISSUE ARREST WARRANT

THE PEOPLE OF CALIFORNIA

vs.

KENNETH CHA

**APPLICABLE LAW:**

**(1) Voluntary Manslaughter[1]:**

To prove that the defendant is guilty of voluntary manslaughter, the People must prove that:

    1. The defendant committed an act that caused the death of another person;

    2. When the defendant acted, he unlawfully intended to kill someone;
AND

    3. He killed without lawful excuse or justification.

Or the People must prove that:

    1. The defendant intentionally committed an act that caused the death of another person;

    2. The natural consequences of the act were dangerous to human life;

    3. At the time he acted, he knew the act was dangerous to human life;
AND

    4. He deliberately acted with conscious disregard for human life;
AND

    5. He killed without lawful excuse or justification.

An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

---

[1] CALCRIM 572

1

There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A *substantial factor* is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death.

**Self-Defense (Voluntary Manslaughter)**[2]

The defendant is not guilty of manslaughter if he was justified in killing or attempting to kill someone in self-defense or defense of another. The defendant acted in lawful self-defense or defense of another if:

> 1. The defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury;
>
> 2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger;

AND

> 3. The defendant used no more force than was reasonably necessary to defend against that danger.

**Justifiable Homicide by a Peace Officer**[3]

The defendant is not guilty of manslaughter if he attempted to kill or killed someone while acting as a public officer. Such a killing is justified, and therefore not unlawful, if:

> 1. The defendant was a public officer;
>
> 2. The killing or attempted killing was committed while arresting a person charged with a felony who was resisting arrest or fleeing from justice, overcoming actual resistance to some legal process or while performing any other legal duty;
>
> 3. The killing or attempted killing was necessary to accomplish one of those lawful purposes;

AND

> 4. The defendant had probable cause to believe that Sean Moore posed a threat of death or great bodily injury, either to the defendant or to others.

A person has probable cause to believe that someone poses a threat of death or great bodily injury when facts known to the person would persuade someone of reasonable caution that the other person is going to cause death or great bodily injury to another.

Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

The People have the burden of proving beyond a reasonable doubt that the killing or attempted killing was not justified. If the People have not met this burden, you must find the defendant not guilty of manslaughter.

---

[2] CAL CRIM 505
[3] CAL CRIM 507

2

**Presumption that Killing not Criminal**[4]

The law presumes that a killing is not criminal if the person killed dies more than three years and one day from the day of the incident that caused the death. The People must overcome this presumption by proving that the killing was criminal. If you have a reasonable doubt whether the killing was criminal, you must find the defendant not guilty.

**Assault with a Semiautomatic Firearm**[5]

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person;

2. The defendant did that act willfully;

3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

4. When the defendant acted, he had the present ability to apply force with a semiautomatic firearm to a person;

AND

5. The defendant did not act in self-defense or in defense of someone else.

**Self-Defense (Assault with a Semi-Automatic Firearm)**[6]

Self-defense is a defense to all of the alleged crimes. The following is the law of self-defense as it relates to the charge of Assault with a Semi-Automatic Firearm. A defendant is not guilty of Assault with a Semi-Automatic Firearm if he used force against the other person in lawful self-defense or defense of another. The defendant acted in lawful self-defense or defense of another if[7]:

1. The defendant reasonably believed that he or someone else was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully;

2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

AND

3. The defendant used no more force than was reasonably necessary to defend against that danger.

**Use of Force by a Peace Officer**[8]

A peace officer is justified in using deadly force upon another person when the officer

---

[4] CAL CRIM 512
[5] CALCRIM 875
[6] CALCRIM 3470
[7] CALCRIM 3470
[8] Penal Code Section 835a

3

reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person.

**Penal Code section 194 - Presumption that killing is not criminal is rebutted by the evidence**

Penal Code § 194 states that if a death occurs beyond the time of three years and a day, there shall be a rebuttable presumption that the killing was not criminal. The prosecution bears the burden of rebutting this presumption.

Cal. Crim. No. 512 provides the jury instructions to find that the presumption has been rebutted, which is required to be proven beyond a reasonable doubt.

Here, the death occurred on January 20, 2020, more than three years and a day from the January 6, 2017 incident. The Coroner's Report lists Moore's Cause of Death as Homicide, however this finding does not rebut the finding that the death was criminal. When a Coroner makes a finding that the cause of death was homicide, this merely indicates that the death was caused at the hands of another person, not that there is criminal culpability associated with the death. As is clear from the facts and evidence available, it is not beyond a reasonable doubt that the shooting of Moore by Cha was a criminal act. This is confirmed by multiple prior courts. Therefore, this presumption is not rebutted.

## AFFIDAVIT IN SUPPORT OF REQUEST TO ISSUE ARREST WARRANT

### AFFIANT'S BACKGROUND

I, Inspector Andrew Koltuniak, Star #113, your affiant, have been employed as an investigator with the City and County of San Francisco District Attorney's Office (SFDA) since October of 2020, although I did not become a sworn officer and able to serve as a DA Investigator until June 2021.

I am currently assigned to the Independent Investigations Bureau, where I investigate police officer involved shootings, police use of force, and in-custody deaths. As a District Attorney Inspector, I am a designated Peace Officer[9] and have peace officer authority as articulated in sections 830 and 830.1of the California Penal Code. The cases I have investigated since joining the SFDA and being sworn as a peach officer in June of 2021 include several officer involved shootings, possible excessive uses of force, and post-conviction reviews of homicides. I have also investigated allegations of public corruption.

My law enforcement career began in June 2021, when I graduated from a twenty-two-week POST-certified basic police officer training academy at the Napa Valley Criminal Justice Training Center in Napa, California. I was sworn in as a peace officer in June of 2021, and then was able to actually perform work as an investigator for the DA's Office. This is the first arrest warrant I have written.

I began my career as an investigator in 1997, when I became an assistant to a Private Investigator in San Francisco, California. In 2004 I was hired by the San Francisco Public Defender's Office and

---

[9] I was put through the police academy by Chesa Boudin following my hiring at the DA's Office so that I could swear to and present warrant affidavits such as this one.

4

worked in their Investigation Unit. In 2007 I became a licensed Private Investigator, #25582, and have remained licensed to the present date with no disciplinary actions or complaints[10]. During my tenure with the San Francisco Public Defender, I worked in several positions, including: the Domestic Violence Unit, the General Felony Unit, the General Misdemeanor Unit, and the Homicide Unit. My responsibilities included locating and interviewing witnesses, preparing investigative reports, and testifying in court.

In 2012, I went into private practice where I investigated more than 100 cases involving organized crime, distribution and sales of narcotics, human trafficking, and homicide. I have investigated criminal cases filed in state and federal courts nationwide. During my time in private practice, I had been retained to work with prosecutors and law enforcement. In 2018, I returned to the San Francisco Public Defender as an investigator in the Pre-Trial Release Unit and worked there until my departure in 2020.

For the 17 years that I previously worked as a private investigator or for the Public Defender's Office, I have investigated over 100 cases that involved homicides, and more than 500 felony crimes,[11] including trafficking, assault, rape, child molestation, fraud, larceny, and robbery. My investigations have been connected to exonerating over 20 defendants.

Further, I have experience working in an undercover capacity, conducting surveillance, reverse sting operations, and identifying witnesses and suspects. I have interviewed more than 1000 suspected felons, and developed informants who have provided reliable information and testimony.

A partial list of the law enforcement training I have received includes:

- Basic Police Academy, Napa Valley Criminal Justice Training Center – 896 hours – Spring to Summer 2021

- District Attorney Investigator Transition Course South Bay Regional Training Center – 40 hours – August 2021

## INTRODUCTION

After the prior District Attorney and his staff found that there was no ethical way to proceed on this case, and after two investigators refused to serve as an affiant on this matter due to a lack of probable cause for charges against Off. Cha, I was assigned to try to draft the arrest warrant for San Francisco Police Officer Kenneth Cha due to his shooting of Sean Moore twice in the abdomen on January 6, 2017. I familiarized myself with the facts of the case by reviewing the associated police-related documents, body worn camera recordings, the multiple declination reports authored by prior reviewing ADAs, and other evidence obtained during the investigation. The information below is given solely for the purpose of providing the Court with evidence to determine whether probable cause exists for the issuance of an Arrest Warrant; it does not represent all of the evidence the SFDA or I possess about the facts of the case. I am aware that there are compelled statements taken

---

[10] This depends on your definition of "complaint."  In a published opinion, Judge William Alsup of the United States District Court for the Northern District of California found that I misled him and then failed to comply with his orders in a case where I was the defense investigator (Brugnara 2015 U.S. Dist. LEXIS 138633).  More recently, an Alameda Superior Court judge found that I materially misled him in a case involving the prosecution of an Oakland homicide detective for, ironically, perjury.

[11] It is unclear whether this would include cases that have multiple felony charges, as is common, or if this would reference 500 felony cases

5

by SFPD internal affairs that are not available to me for review. In addition, I am aware that the case file is dense and a review of the attached exhibits is warranted by the reviewing magistrate prior to a determination of the existence of probable cause.

### STATEMENT OF PROBABLE CAUSE SUMMARY

Sean Moore was shot twice in the abdomen on the stairway to his home by San Francisco Police Officer Kenneth Cha on January 6, 2017 after an altercation where he punched Officer Colin Patino, breaking his nose and causing him to fall down the stairs, and then kicked Officer Cha, who fired at him. Sean Moore died over three years later on January 20, 2020. The medical examiner found that the death was a homicide, caused by an abdominal obstruction that would not have occurred but-for the gunshot wounds and the effects thereof, although acknowledged that Moore also had many other contributory conditions. The prior District Attorney thoroughly reviewed this case and determined that this was a lawful use of force and that they could not ethically proceed with charges, including preparing a declination report. It is our burden to prove that Officer Cha **did not** have a reasonable belief that he was in imminent danger of suffering great bodily injury (despite the fact that Moore just inflicted great bodily injury against Officer Patino and then turned his active assault to Officer Cha), and notwithstanding the fact that Moore was the aggressor.

### STATEMENT OF FACTS

Around 4am on January 6th, 2017, Christopher Choy called 911 to report that his neighbor, Sean Moore, was violating a Temporary Restraining Order ("TRO"). Choy had obtained the order because of a long history of aggressive, violent and harassing interactions with Moore to himself and his family. Moore had been restrained previously because Moore had assaulted Choy's son in 2011. Moore was charged in that incident, and was under a restraining order due to this from 2011 to 2014. In December 2016, based on continued harassing and threatening actions by Moore, Choy obtained a further temporary restraining order for himself and his family and sought the approval of a formal restraining order to prevent Moore from disturbing the family's peace and to stop Moore from engaging in further violence against them. A court hearing on the matter was scheduled for January 11, 2017.

San Francisco Police Department (SFPD) Officers Kenneth Cha (Star #1206) and Colin Patino (Star #1310) responded to the address, ▇▇▇▇▇▇▇ Avenue, to investigate.

▇▇▇▇▇▇▇ Avenue and ▇▇▇▇▇▇▇ Avenue are east facing, mid-century style single family homes located in a residential area of San Francisco. The two homes are joined together with no set back between the respective property lines. Both addresses are similar structures consisting of a street level garage with living quarters above that is accessed by its own separate concrete staircase that leads from the sidewalk to the upper front door landing area. The staircase is narrow in nature, allowing for the passage of one regularly sized person to ascend or descend the stairs at a time. The front stairs of ▇▇▇▇▇▇▇ Avenue are abutted by the southern exterior wall of ▇▇▇▇▇▇▇ Avenue. The entrance to the Moore residence was located on the second floor at the top of a 47-inch wide, concrete staircase. Where the top of the stairs meets the landing, there is a locked metal security gate. The front door and the majority of the landing was located behind the security gate.

### Body Worn Camera Footage

Based on review of the Body Worn Camera ("BWC") footage from Patino and Cha: Officers Cha and Patino responded and arrived at the neighboring residences of Choy and

6

Moore at approximately 04:20 AM. Initially, Cha contacted Moore at ▮▮▮▮▮ Avenue and Patino contacted Choy at ▮▮▮▮▮ Avenue.

Patino's BWC footage showed him talking with Choy for approximately 9 seconds before he went next door to join Cha in contacting Moore. Choy gave Officer Patino a copy of the restraining order and proof of service.

Upon arrival, Cha rang the doorbell and Moore opened his front door, but remained behind the metal security gate. After the officers identified themselves and why they were at his residence, Moore began shooting and cursing, and repeatedly told the officers that he did not want to speak to them and wanted them to leave. Moore demanded the officers get off his stairs and denied any harassment of Choy, however he was actively yelling, cursing, and acting in a threatening manner during this entire exchange. Patino tried confirm that Moore knew of the existence of the restraining order. As he did so, Moore screamed at him "do you know that you're a fucking liar nigga?" and "I don't give a fuck 'bout that shit I just put my fucking garbage out, get the fuck off my stair," while aggressively pointing at the officers through the gate. He continued to say: "yeah, you're getting off my stair." In response, one of the officers calmly asked "or else what?" and Moore stated "Or I'll remove your ass." One officer then asked "are you threatening us?" and Moore responded "I ain't threatening shit, get the fuck off my stair." The officers calmly told him that he had threatened them, and to relax. Moore again stated in a raised voice: "get off my stair, and I'm done talking to you, I'm through talking to you bitch, get off my stair, get the fuck off my stair, fuck your order, get off my stair, fuck your court, I didn't call you."

Moore continued to yell in response to the officers' questions, and eventually went inside his home. Following this, the officers descended the stairs to the sidewalk to discuss the terms of the restraining order at a safe distance. Cha and Patino reviewed the court order while shining their flashlights into Moore's second story home from their position on the street level.

Moore then stepped back onto the landing carrying what appeared to be a phone and stood behind the gate. He called the officers various homophobic and racial slurs. Cha said, "Why did you call me those slurs?" and ascended the stairs, followed by Patino. Moore yelled down to the officers "Get the fuck from round here. And I ain't gonna tell you no more, bitch." Moore said, "Get gotta tell you, get your faggot ass from round here punk." Ofc. Patino said he would not be leaving yet, and Moore asked for Patino's badge number, which Patino provided. While apparently dialing his phone, Moore continued to demand the officers get off his stairs and remained behind the gate. Patino attempted to read to Moore from the restraining order. Moore banged his hand loudly on the security gate and gestured with his hands and arms while stating: "I'm through talking to you, bitch! Get off! Get off my stair!"

Moore then very quickly opened the security gate and stood leaning over the landing with his right arm extended and waving his right, open hand in a horizontal motion from left to right while telling the officers to leave. Moore's left hand held a phone against his waist. The officers both moved back slightly as Moore opened the gate. Cha said, "Hey, do you want to get sprayed?", as Moore continued to advance, and one officer told Moore "you come any closer you're gonna get pepper sprayed!" In response, Moore said, "Fuck your spray," while continuing to wave his hand and insist they leave, leaning above the officers. Ofc. Cha then sprayed pepper spray in Moore's direction.

Moore turned when the pepper spray was deployed, and then stood sideways in the gateway. He appeared to hold onto the frame of the gate for leverage and proceeded to raise his left foot high into the air, then moved his leg downwards in a fast motion towards the officers who were moving

7

forward at this time. Ofc. Cha said in his interview that Moore then kicked him in the face at this point. Due to the close quarters of the stairway, pepper spray appeared to enter Patino's eyes at this point. Patino also dropped the restraining order papers and the officers retreated down the stairs.

Moore partially descended the stairs and picked up the restraining order papers. He then closed the security gate and re-entered his home. Moore reemerged within a few seconds, quickly exiting the door, opening the gate and descending the stairs at a fast pace, holding the paper in his right hand. Based on Moore's actions quickly descending the stairs, the officers descended to what appears to be the sidewalk, where Ofc. Cha told Moore "What's up? Come on!" Moore then said again "Get off my stair, fuck you." and Cha responded "Come here!" Moore then reentered his home. Cha radioed at this point regarding the interactions with Moore and requesting assistance due to the pepper spray exposure.

Ofc. Patino yelled to Moore "Hey, sir, you need to give those papers back, all right?" and Moore yelled back "Fine. Are you gonna go?" Patino responded "No, you need to give those papers back now, that is an order. I am ordering you to come outside, all right? And give yourself up because you are under arrest." Moore responded "I can't see, I need some medical attention." Patino called back "Neither can I, all right." Both officers asked Moore to come out of the house, to which Moore yelled: "you're gonna leave from here! Fuck your papers!" and repeated to yell inside his home.

Moore then opened the door and tossed the restraining order papers through the gate and onto the top of the stairs as the officers demanded he come out. He returned to his door, and one of the officers warned they would kick the gate open, to which Moore said "Fuck you." After a pause, Moore said "I can't see officers." Ofc. Cha said "well, then come out so I can get some medical help for you." Moore yelled "let's get this resolved" and Ofc. Cha again responded "come on out so I can get the ambulance for you." As Moore and Cha discussed medical treatment with Moore behind the gate, Patino walked up the stairs to retrieve the restraining order papers. As he bent down to pick up the papers, Moore very quickly ran across the landing, opened the gate, yelling, and rushed towards him. The officers again descended the stairs as Moore clenched his fists, banged his fists together and screamed very loudly at the top of the stairs "Fuck you! Fuck you! Fuck you! . . . . I'm a kick your ass, punk." Moore then remained on the landing, leaning towards the officers. Patino pulled out his baton at this point.

Moore dropped what appeared to be a plastic piece of the item in his hand, believed to be his phone, and took four steps down the stairs to retrieve it. Cha and Patino ran up the stairs a third time with their batons raised over their heads while ordering Moore to "Get on the ground."

Moore ran backwards up four steps toward his security gate, as Patino advanced and struck Moore with his baton, striking him at least twice on his legs and torso while telling more to get on the ground. Patino said during his interview that Moore then punched him in the face with a fist, breaking Patino's nose. This caused Patino to suddenly fall backwards on the stair, witnessed by Ofc. Cha who was directly behind Patino. As Cha paused when Patino fell passed him, Moore appeared to rush forward towards Cha who was located a few steps below. AS this occurred, Cha advanced to meet Moore. Moore reacted to Cha's advance by kicking towards Cha. Cha shot Moore twice in the abdomen. Approximately eight minutes elapsed from the time that officers Cha and Patino arrived on scene to the time that Officer Cha shot Moore.

Cha notified SFPD dispatch that shots had been fired, both officers and Moore had sustained injuries, and Moore had retreated into his residence.

8

### Response by SFPD

Numerous SFPD officers and Hostage Negotiations Team officers responded. SFPD Tactical and Specialist units made entry and took Moore into custody without incident at approximately 05:45 AM. Moore was arrested and brought to San Francisco General Hospital. Both bullets fired by Cha entered Moore's abdomen. These wounds lacerated Moore's liver and pierced his right colon, scarring his internal organs and resulting in severe abdominal adhesions. Officer Cha was transported to SFGH with complaints of pain to his face and his right calf. Officer Patino was transported to SFGH for treatment of a broken nose, exposure to pepper spray and abrasions to his left knee.

### Coroner's Report

Sean Moore was shot by Officer Kenneth Cha on January 6, 2017. Sean Moore died on January 20, 2020. The Coroner determined that Moore died from Acute Intestinal Obstruction as a result of severe abdominal adhesions from remote gunshot wounds to his abdomen, with contributing conditions of hypertensive cardiovascular disease, obesity, slight coronary atherosclerosis, diabetes mellitus, schizophrenia, and chronic substance abuse. The cause of death was determined to be a homicide by the Coroner.

With regard to cause of death, a Coroner selects from 4 general categories – homicide, suicide, accident, and undetermined. Homicide is assigned when the Coroner finds the death was caused by a conditional act committed by another person to cause fear, harm or death. Intent to cause death is a common element but is not required. The Coroner's determination is to be neutral, and does not indicate or imply criminal intent, which remains a determination within the province of the legal process.[12]

### DEFENDANT

At the time of the incident, Kenneth Cha was a police officer employed by and on duty for the San Francisco Police Department as defined in sections 830 and 830.1 of the California Penal Code. According to the California Department of Motor Vehicles, his date of birth is ▮▮▮▮▮▮ and his driver license number is ▮▮▮▮▮▮.

### EXHIBITS

The following exhibits are attached to this affidavit and incorporated herein for the court's consideration in order to present a complete review of the available relevant evidence in this matter:

1. Temporary Restraining Order dated 12-20-16
2. Kenneth Cha's Body Worn Camera (BWC) video from January 6, 2017
    a. Transcript of Cha's Body Worn Camera footage
3. Colin Patina's Body Worn Camera (BWC) footage
    a. Transcript of Colin Patina's BWC footage
4. Kenneth Cha's voluntary, videotaped statement to Homicide Investigators on

---

[12] Dec of ESP ISO of Opp, Ex. 5, Randy Hanzlick, MD, et al., A Guide for Manner of Death Classification, National Assoc. of Medical Examiners (1st Ed., Feb. 2022) p. 3, 5-6.

01-07-17
   a. Transcript of Kenneth Cha's voluntary, videotaped statement to Homicide Investigators on 01-07-17
5. Marin County Coroner's Autopsy Report & Determination in the Death of Sean Moore
6. *People v. Moore,* First Appellate District decision
   App. Ct. No A151276 (San Francisco City and County Super. Ct. No. SCN 227235) (Cal. Ct. App. May 1,2018)
7. United States District Court, Northern District of California order in *Sean Moore v. City and County of San Francisco et al.*
8. The Prior Declination Report authored the DA's Office, December 2019.

## OTHER EVIDENCE

### Dispatch and Radio Traffic Transcripts

According to dispatch recordings prepared by the San Francisco Department of Emergency Management, at approximately 03:51 hours on January 5th, 2017, SFPD Non-Emergency Dispatch received a call reporting a violation of a Temporary Restraining Order at 521 Capitol Avenue, San Francisco, California. The caller, Christopher Choy, identified the suspect as Sean Moore and provided a description and address for Moore. At the time, Moore lived at 515 Capitol Avenue. Choy stated that Moore was hitting the exterior wall of Choy's home, causing noise and disturbance in violation of the restraining order.

Transcripts of the radio traffic for this incident indicate SFPD officer's Cha and Patino responded to 521 Capitol at approximately 04:20 hours and contacted Sean Moore. At approximately 04:22 hours, Cha contacted dispatch to request medical response for treatment of Patino and Moore's exposure to pepper spray. At approximately 04:24 hours, Cha notified dispatch of Moore's description. At approximately 04:25 hours, Cha notified dispatch that shots had been fired.

### Defendant's and Witnesses' Statements

On January 7th, 2017, Cha gave a voluntary statement to Sergeant Kyra Delaney (Star #520) and Sergeant Gary Watts (Star #1594) of the San Francisco Police Department's Homicide Unit. York Tsuruta of the San Francisco District Attorney's Office was also present. The interview was audio and video recorded. Cha's attorney, Scott Burrell was present during the interview. I viewed the interview recording and transcript. A flash drive with a full copy of Cha's statement is attached to this affidavit and incorporated herein as Exhibit 2a.

After giving his initial statement, Cha provided his badge number (# 1206), length of time in his current assignment (3-4 months) and shift hours (21:00 - 07:00}. As permitted per SFPD policy, Cha and his attorney asked to view the body worn camera footage before proceeding with the rest of the interview. Sergeants Delaney and Watts allowed Cha and his lawyer to view the video evidence. When the interview resumed, Cha acknowledged having watched his body worn camera footage and agreed to provide further details of the incident.

10

## Evidence Collected from the Scene by SFPD

The SFPD Crime Scene Investigations Unit Scene Report for case # 170 014 484, prepared by Officer Shanahan (Star #1818) stated, among other findings:

- Two .40 Cal S&W casing cartridges, item #2 located on the sidewalk in front of 515 Capitol Avenue and item #8 located on the third step of the front exterior staircase.
- Clothing items, a hammer, and bloodstains from inside 515 Capitol Avenue.
- A bloodstain on the eleventh step of the front exterior staircase of 515 Capitol Avenue labeled item #9.
- A bloodstain on the first step of the front exterior staircase of 515 Capitol Avenue labeled item #7.
- Four blood stains in the street on the 500 block of Capitol Avenue labeled A, B, C, and D.
- A metal collapsible baton in the extended position located on the sidewalk in front of 515 Capitol Avenue labeled item #1.
- A metal collapsible baton in the extended position located in the driveway in front of the garage door of 515 Capitol Avenue labeled item #4.

## The Medical Examiner's Report

Sean Moore died on January 20th, 2020, while he was in the custody of the California Department of Corrections and Rehabilitation (CDCR) San Quentin. A flash drive with a full copy of the Coroner's Report is attached to this affidavit and incorporated herein as Exhibit 5.
According to the Marin County Coroner's Office autopsy report # CR20-017, Chief Forensic Pathologist Dr. Joseph Cohen performed an autopsy on Moore on January 23, 2020. Dr. Cohen concluded Moore died from Acute Intestinal Obstruction as a result of severe abdominal adhesions from remote gunshot wounds to the abdomen, with contributing conditions of hypertensive cardiovascular disease, obesity, slight coronary atherosclerosis, diabetes mellitus, schizophrenia, and chronic substance abuse.

## Potentially Exculpatory Information

I am informed and believe the following potentially exculpatory evidence exists:

1. The body camera footage shows Moore striking Off. Patino, causing him to break his nose and fall down the stairs. It then shows Moore moving forward towards Cha, kicking out at him and Cha then shooting Moore in response.
2. Sean Moore has a long history of violence and criminal convictions before this incident and following this incident. Moore's propensity for violence and extensive arrest and conviction history both before and after the incident will be introduced for Cha's anticipated self defense, regardless of whether Cha was aware of Moore's history prior to the shooting.[13]
    - Moore's Convictions:
        - 10/31/19 – PC 422/F - #19005740
            - Criminal threats – threatening to cause death or great bodily

---
[13] Evid. Code section 1103(a)(1).

11

            injury with the intent to instill fear in another person
        - 10/31/19 – PC 243(D)/F - #17011409
            - Aggravated battery or battery causing serious bodily injury
        - 05/08/13 – PC 245(A)/F - #13007967
            - Assault with a deadly weapon
        - 12/09/11 – PC 242/M - #11023374
            - Misdemeanor Battery - willful and unlawful use of force or violence upon the person of another
        - 03/30/11 – PC 242/M - #10036531
            - Misdemeanor Battery - willful and unlawful use of force or violence upon the person of another
        - 07/10/07 – PC 245(A)/F - #02289746
            - Assault with a deadly weapon
- Moore has the following arrests for violence:
    - 04/12/19 – PC 422/F - #19005740
        - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
    - 12/15/18 – PC 422/F - #18019558
        - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
    - 08/04/17 – PC 422/F - #17011428
        - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
    - 01/09/17 – PC 243/F, 245/F, 422/F, 69/F, 148/M - #17000423
        - Aggravated battery
        - Assault with a deadly weapon
        - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
        - Resisting an executive officer
        - Resisting, delaying or obstructing a peace officer in the performance of their duties
    - 04/04/14 – PC 242/M, 243/M, 422/M, 148/M - #14009473
        - Misdemeanor Battery - willful and unlawful use of force or violence upon the person of another
        - Misdemeanor Battery - Unlawful and offensive physical contact with another person
        - Criminal threats – a statement or action that threatens to cause death or great bodily injury

12

- Resisting, delaying or obstructing a peace officer in the performance of their duties
- 08/09/13 – PC 69/F, 243/F, 148/M - #13022280
    - Resisting an executive officer
    - Aggravated battery
    - Resisting, delaying or obstructing a peace officer in the performance of their duties
- 03/21/13 – PC 245/F - #13007967
    - Assault with a deadly weapon
- 02/18/13 – PC 242/M - #2472035
    - Misdemeanor Battery - willful and unlawful use of force or violence upon the person of another
- 08/31/11 – PC 243/M, 422/M - #11023374
    - Misdemeanor Battery - Unlawful and offensive physical contact with another person
    - Criminal threats – a statement or action that threatens to cause death or great bodily injury
- 01/25/11 – PC 243/M - #2457351
    - Misdemeanor Battery - Unlawful and offensive physical contact with another person
- 12/14/10 – PC 69/M, 241/M - #10036531
    - Resisting an executive officer
    - Assault
- 01/07/08 – PC 422/F - #2350039
    - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
- 10/30/06 – PC 245/F, 422/F, 69/F, 148/M - #2289746
    - Assault with a deadly weapon
    - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
    - Resisting an executive officer
    - Resisting, delaying or obstructing a peace officer in the performance of their duties
- 08/14/05 – PC 245/F - #2230310
    - Assault with a deadly weapon
- 01/07/02 – PC 241/M, 148/M - #2025136
    - Assault
    - Resisting, delaying or obstructing a peace officer in the

    performance of their duties

- 06/23/00 – PC 207/F, 422/F, 236/F - #1930241
    - Kidnapping
    - Criminal threats – threatening to cause death or great bodily injury with the intent to instill fear in another person
    - False imprisonment
- 05/22/98 – PC 212.5/F, 245/F, 664/F, 207/F – 1785163
    - First degree robbery
    - Assault with a deadly weapon
    - Attempted kidnapping
- 05/16/98 – PC 207/F, 236/F - #1784234
    - Kidnapping
    - False imprisonment

3. Sean Moore died 3 years and 14 days after Cha shot him, therefore Penal Code section 194 applies a rebuttable presumption that the killing was not criminal. This presumption must be overcome beyond a reasonable doubt.

4. The DA's Office has already evaluated whether it was appropriate to bring charges against officer Cha and multiple ADAs have already determined that the evidence established that Off. Cha acted in self-defense and there was not sufficient probable cause to do so.

5. The SFPD evaluated Cha's and did not find anything that would suggest any pattern of excessive use of force by Cha.

6. Upon arrival at the scene, Sgt. Anderson observed that Cha appeared shaken and needed help with holstering his weapon.

7. Officer Patino stated that he was attempting to arrest Moore for a violation of Penal Code section 69, resisting an executive officer.

8. Officer Cha has complimentary reports in his personnel file.

9. Moore was criminally charged with Penal Codes 243(C}, 245(A), 422, 69(A), 148(A), 166(A) as a result of Cha's shooting on January 6, 2017.  See below for discussion of the appellate decision regarding these charges.

10. The Appellate Court and U.S. District Court both acknowledged that Moore may have been acting unlawfully during these events and at the time that he was shot.

## **PRIOR COURT DECISIONS**

<u>The First Appellate District Court and U.S. District Court evaluated the facts of the incident and made certain rulings</u>

The First Appellate District Court was asked to hear argument whether Moore could be prosecuted on counts 1, 2 and 4-9, that required proof a peace officer was lawfully engaged in the performance of their duties when the criminal conduct by the defendant offended. The Appellate Court was not

14

asked to review the general lawfulness of Cha's actions in the shooting, nor whether he acted in self defense. (*People v. Moore (2018*) Cal. App. Unpub. LEXIS 2966, *1, 2018 WL 2016792, at p.8)

The First Appellate District Court found that following the first ascent up Moore's stairway to assess the misdemeanor violation of the restraining order and Moore's denial of any violation and request to leave, the officers were no longer lawfully performing their duties as police officers when they remained questioning Moore. Therefore, the counts that required lawful performance of a peace officers' duties could not proceed.

However: "Regarding the later part of the encounter, the Magistrate ruled that there was substantial evidence that Cha believed Moore was in the process of assaulting the officers when he first exited the gate, and Cha therefore acted lawfully when he deployed pepper spray to arrest Moore for assault" eventually leading to the battery on Patino and Cha shooting Moore. The Court explained that although there was substantial evidence of Cha's lawful activity with his use of force, "factual disputes about whether Moore assaulted the officers and whether the officers used reasonable force to arrest Moore for such an assault should be submitted to a jury." (*Id.* at p. 8)

Moore conceded this point in his argument during these hearings: "We first agree with the People – and Moore readily acknowledges – the officers' alleged constitutional violations do not immunize Moore from criminal liability for all subsequent conduct, including his alleged acts of physical violence. If Patino was not engaged in the performance of his law enforcement duties when Moore allegedly punched him, Moore was not immune from prosecution for battery…he simply cannot be convicted of battery of a peace officer engaged in the performance of his duties." (*Id.* at p. 14)

The United States District Court of Northern California evaluated similar claims, arising from Moore's civil action against the City and the cross-summary judgement motions related to qualified immunity, specifically the survivability of Moore's claims.

In its holding, declining to dismiss the majority of Moore's causes of action, the Court explained "Resolution of defendants' qualified immunity defense requires determination of numerous factual disputes… Use of excessive force is clearly unconstitutional; the question is whether this use of force was excessive. This cause of action, and the inferences to be drawn from the facts alleged by the opposing parties, is particularly well-suited for a jury's determination. (*Moore v. City & Cty. of S.F.*, No. 18-cv-00634-SI, 2020 U.S. Dist. LEXIS 232585, at *13 (N.D. Cal. Dec. 10, 2020))

With regard to Moore's motion, the court evaluated whether (1) the defendant officers were not in legal performance of their duties when they re-entered Moore's stairway after descending the first time and (2) the officers used excessive force when the officers pepper sprayed Moore. The court noted that "Moore does not challenge the officers' probable cause to arrest him for the aggravated assault. As he correctly notes, the issue before us is not the lawfulness of his arrest, and his guilt or innocence does not depend on the peace officer status of the victims." (*Id.* at *17-18)

With regard to the issue the Court was asked to determine, the court found that the officers could not "lawfully intrude into the curtilage of the home over Moore's vociferously expressed objection, and in the absence of probable cause, or other justification, at the time of the entry to do so. The officers were therefore not lawfully engaged in the performance of their duties at the time the alleged crimes occurred, even if their subsequent actions in effecting the arrest were lawful."(*Id.* at *18)

The court further acknowledged with regard to Moore's own culpability and later events during the

15

incident that the "officers' alleged constitutional violations do not immunize Moore from criminal liability for all subsequent conduct, including his alleged acts of physical violence. If Patino was not engaged in the performance of his law enforcement duties when Moore allegedly punched him, Moore was not immune from prosecution for battery…he simply cannot be convicted of battery of a peace officer engaged in the performance of his duties." (*Id.* at *16-17)

**Officer Cha's explanation for shooting Moore is consistent with the BWC footage of the event**

--" *I just see this guy just so enraged coming at me in a violent matter, throwing his hands and-and-and his feet towards me. And, uh, I just remember retreating down the stairs. I'm about to fall down, and I had nothing else to do but I was in fear for my, uh, for my life. {It was a knee- jerk], you know, [unintelligible]. I don't even know [what happened to call them]. And so I -- so I shot him."*

Cha's BWC depicts Moore kicking his foot out towards Cha as Cha watched Patino be struck, fall and began advancing up the final steps.

Police officers are trained to look for behavioral indicators that a person is preparing to fight, which include: assuming a bladed stance fighting position and raising their fists and shoulders. As Patino advanced up the stairs a third time, Moore was screaming and gesturing at the officers, then bent over to pick up the fallen restraining order paper. Neither Cha nor Patino's the body camera footage captures Moore's positioning when Patino strikes Moore. Patino struck Moore with his metal baton, striking him at least twice on his legs and torso and instructing him to get on the ground. Moore then punched Patino in the face, causing him to fall down the stairs.

Police Officer Standards and Training courses at the Police Academy instruct that it takes approximately ¾ of a second to perceive a threat and ¾ of a second to physically react to a threat. I reviewed Officer Cha's BWC frame by frame and pulled out still images to analyze Cha's reaction time. Thirty still images equal one second so the timing can be determined as each still image representing .033 seconds.

At 12:24:49, Moore punches Patino, who then falls passed Cha down the stairs. At 12:24:53, Cha fires the first shot. Cha, who already had his weapon drawn, processed what had just happened to his partner, refocused on Moore, who kicked out at him as Cha advanced toward him, and began firing at Moore. This took 4 seconds, within the normal reaction time to perceive a threat and to react to the threat.

## WEIGHING OF THE EVIDENCE

Whether or not there is probable cause to charge officer Cha requires an assessment by the reviewing magistrate whether or not Off. Cha acted reasonably in self-defense when he shot Moore.

Per Cal. Criminal Code section 505, the defendant is not guilty of manslaughter if he was justified in killing or attempting to kill someone in self-defense or defense of another. The defendant acted in lawful self-defense or defense of another if:

1. The defendant reasonably believed that he or someone else was in imminent danger of being killed or suffering great bodily injury;

2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger;

16

AND

3. The defendant used no more force than was reasonably necessary to defend against that danger.

The officers presented on scene due to the report of Moore's violation of a temporary restraining order prohibiting assaultive, violent and harassing behavior against his neighbor. Upon arrival, the officers had attempted to get Moore's compliance with his arrest by verbally ordering Moore to comply, the use of pepper spray and a baton, none of which resulted in Moore's compliance. At the time of the shooting, Moore had just punched Off. Patino, breaking his nose and causing him to fall down the stairs. Off. Cha, who was standing directly behind Patino and a few feet from Moore, faced Moore who was positioned above him. As Moore kicked out at Cha, Cha moved forward, firing two shots at Moore.

Cha has asserted that he fired his weapon after he reasonably believed that he and Off. Patino were in imminent danger of great bodily harm by Moore, particularly following Moore's assault on Patino and kicking towards Cha, deadly force was necessary based on the prior failed attempts, and he used no more force than necessary by shooting Moore twice and then retreating away. Later investigation revealed Moore's long and violent criminal history. Moore was later incarcerated on another matter and died over three years later. His cause of death was deemed related to the injuries he sustained during the shooting, in addition to multiple over contributing conditions.

The reviewing magistrate is asked to weigh this evidence in its entirety to determine whether probable cause is or is not present for charges to be appropriate against Off. Cha.

## **CONCLUSION**

If there is evidence of self-defense, then there is no probable cause for charges and this arrest warrant for Kenneth Cha should not be issued. If the reviewing magistrate determines probable cause exists, an arrest warrant for Kenneth Cha shall be issued.