# EXHIBIT 4



**User Name:** Olivia Leary

**Date and Time:** Sunday, August 10, 2025 9:32 PM PDT

**Job Number:** 259890320

## Document (1)

1. *Moore v. City & County of San Francisco, 2020 U.S. Dist. LEXIS 232585*

   **Client/Matter:** Cha

   **Search Terms:** Moore. City of San Francisco

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | Court: Federal > 9th Circuit,Federal > 1st Circuit1st Cir. - U.S. Dist. Cts.,Federal > 2nd Circuit2nd Cir. - U.S. Dist. Cts.,Federal > 3rd Circuit3rd Cir. - U.S. Dist. Cts.,Federal > 4th Circuit4th Cir. - U.S. Dist. Cts.,Federal > 5th Circuit5th Cir. - U.S. Dist. Cts.,Federal > 6th Circuit6th Cir. - U.S. Dist. Cts.,Federal > 7th Circuit7th Cir. - U.S. Dist. Cts.,Federal > 8th Circuit8th Cir. - U.S. Dist. Cts.,Federal > 10th Circuit10th Cir. - U.S. Dist. Cts.,Federal > 11th Circuit11th Cir. - U.S. Dist. Cts.,Federal > D.C. CircuitU.S. Dist. D.C |

Neutral

As of: August 11, 2025 4:32 AM Z

# Moore v. City & County of San Francisco

United States District Court for the Northern District of California

December 10, 2020, Decided; December 10, 2020, Filed

Case No. 18-cv-00634-SI

**Reporter**
2020 U.S. Dist. LEXIS 232585 *; 2020 WL 7260530

LOYCE AMOS **MOORE**, et al., Plaintiffs, v. **CITY** AND COUNTY OF **SAN FRANCISCO**, et al., Defendants.

**Subsequent History:** Later proceeding at *Moore v. City & Cty. of San Francisco*, 2021 U.S. App. LEXIS 2359 (9th Cir. Cal., Jan. 27, 2021)

**Prior History:** *Moore v. City & Cty. of San Francisco, 2019 U.S. Dist. LEXIS 31513, 2019 WL 955286 (N.D. Cal., Feb. 27, 2019)*

## Core Terms

stairs, arrest, metal, door, pepper spray, plaintiffs', gate, excessive force, defendants', footage, hit, qualified immunity, summary judgment, lawfully, baton, seal, ascended, disputes, summary judgment motion, light most favorable, restraining order, matter of law, peace officer, encounter, nonmoving, responded, retreated, motions, top

**Counsel:** [*1] For Sean **Moore**, Plaintiff: Lateef Hasani Gray, The Law Offices of John L. Burris, Airport Corporate Center, Oakland, CA; Adante Pointer, John L. Burris, The Law Offices of John L. Burris, Airport Corporate Centre, Oakland, CA.

For **City** and County of **San Francisco**, Kenneth Cha, Colin Patino, Defendants: Margaret W. Baumgartner, LEAD ATTORNEY, **City** Attorney's Office, **City** & County of **San Francisco**, **San Francisco**, CA.

**Judges:** SUSAN ILLSTON, United States District Judge.

**Opinion by:** SUSAN ILLSTON

## Opinion

**ORDER RE CROSS MOTIONS FOR SUMMARY**

**JUDGMENT**

On October 30, 2020, the parties filed cross motions for summary judgment. Dkt. Nos. 94 (Defs' Mtn.) and 99 (Pltfs' Mtn.). Defendants filed a motion for summary judgment on all nine[1] of plaintiffs' claims. Dkt. No. 94 at 11[2] (Defs Mtn). Plaintiffs[3] brought a partial motion for summary adjudication of two discrete issues: (1) that the defendant officers were not in legal performance of their duties when they re-entered Mr. **Moore**'s stairway after descending the first time and (2) the officers used excessive force as a matter of law when the officers

---

[1] The 9 causes of action are:

(1) *4th Amendment* Violation — Unlawful Search and Seizure (no probable cause to arrest)

(2) *4th Amendment* Violation — Excessive Force (pepper spray, baton, shooting)

(3) *§1983* — Violation of *First Amendment* (Questioning Police Action — Retaliation)

(4) *Monell* Violation

(5) Violation of *California Code §52.1*

(6) Negligence

(7) ADA Violation

(8) Assault

(9) Battery

[2] For ease of reference, page numbers refer to the ECF branded number in the upper righthand corner of the page.

[3] On January 20, 2020, the original plaintiff, Sean **Moore**, died while incarcerated in San Quentin State Prison. Dkt. No. 100-1 at 7 (Unredacted Pltfs' Mtn). Sean **Moore**'s parents, Loyce Amos **Moore** and Cleo **Moore**, were substituted in as plaintiffs in February 2020 as successors in interest. Dkt. No. 71 (February 2020 Order Granting Unopposed Motion to Substitute).

pepper sprayed Mr. **Moore**. Dkt. No. 99 (Pltfs Mtn.). On December 4, 2020, the Court held oral argument on the motions.[4] Dkt. No 114 (Minute [*2] Entry from 12/4/20 Hearing).

Based on the papers and accompanying evidence submitted, as well as arguments made during the hearing, the Court hereby GRANTS defendants' motion with respect to plaintiffs' fourth cause of action (*Monell* claim) but otherwise DENIES defendants' motion.

The Court GRANTS in part and DENIES in part plaintiffs' motion as discussed below.

**BACKGROUND**[5]

This case arises from a January 20, 2017 incident between Sean **Moore** and defendant Officers Cha and Patino. The officers were called out by Mr. **Moore**'s next-door neighbor, Christopher Choy, at approximately four in the morning. Dkt. No. 100-1 at 7 (Pltfs' Unredacted Mtn.). Mr. Choy held a temporary restraining order ("TRO") against Mr. **Moore** and told the officers Mr. **Moore** had been banging on their shared wall. *Id.* Mr. Choy did not ask the officers to effect a citizen's arrest nor did the officers witness Mr. **Moore** violating [*3] the restraining order. Dkt. No 100-1 at 7 (Pltfs' Unredacted Mtn.); Dkt. No. 94 at 13. Mr. **Moore**'s home had approximately ten steps leading up to a shallow porch. At the top of the porch is a metal gated door to which Mr. **Moore**'s front door was immediately to the left — perpendicular to the gated door.

**The First Ascent Up Stairs**. The officers ascended the stairs and stood outside the closed metal gated door. It is undisputed that the officers had the right to make this first approach and were in legal performance of their duties in doing so. Dkt. No. 100-1 at 17 (Pltfs' Unredacted Mtn.). The officers, standing at the top of the stairs, tried to speak with Mr. **Moore** about the alleged TRO violation, while Mr. **Moore** was behind the metal gate. Mr. **Moore** told the officers in no uncertain terms, in expletive laden language, to "get off his stair." The officers asked Mr. **Moore** if he had violated the restraining order; Mr. **Moore** vociferously denied doing so. Cha 2:43; Patino 1:59 ("Hell no"). After this initial exchange with the officers, Mr. **Moore** went into his house and the officers descended the stairs.

**Second Ascent Up Stairs**. After the officers descend the stairs for the first time, they [*4] conferred with one another briefly on the sidewalk, reviewing the TRO. Mr. **Moore** reappeared on the stoop at the top of the stairs, still behind the metal door, and demanded the officers leave, calling them gay slurs. (Cha 3:48; Patino 3:12 -- "You better get your faggot asses out of here. Get your gay asses off my stairs"). Officer Cha responded "What's that?" and the officers immediately ascended the stairs again. (Cha 3:49; Patino 3:12). Mr. **Moore** continued telling the officers to leave, swearing at them, and making clear he was aware of the TRO and upcoming TRO hearing. (Cha 4:38; Patino 4:23) ("IT'S THE GODDAMN COURT DATE ON THE ELEVENTH" and then yells "Get off my stair, I'm through talking to you." One of the officers responded sarcastically, saying "Obviously you're not [finished talking to us]. And no, we're not [going to leave]." (Cha 5:08).

Mr. **Moore** then suddenly opened the metal door, saying "Get the fuck off my stair." (Cha 5:15; Patino 4:41). While Mr. **Moore** forcefully opened the metal gate, he initially remained behind it and then just barely crossed the threshold saying "Get off my stair" over and over.[6] Seconds later the officers deployed pepper spray. (Cha 5:24; Patino [*5] 4:49). One of the officers said "Keep it open," seemingly speaking to his partner about keeping the metal door open. Mr. **Moore** kicked out, grabbed the dropped hard copy of the TRO, said "fuck you" to the officers, and retreated momentarily into the house. The officers went partway down the stairs. One of the officers responded "fuck you" and Officer Patino said "Hey! Give me the paper back!" (Cha 5:29; Patino 4:57). Mr. **Moore** walked back onto the stoop and said "Fuck your paper." One of the officers said "Motherfucker!

---

[4] The Court would like to note how well counsel for defendants and counsel for plaintiffs argued their respective motions during the December 4, 2020 hearing. In a particularly tough case, counsel for both sides advocated ardently, effectively, and respectfully. The hearing was very helpful for the Court.

[5] Unless otherwise noted, the facts in the background section are taken from the body worn camera videos of Officers Cha and Patino. See .Dkt. Nos 100-3 (Cha Body Cam) and 100-4 (Patino Body Cam) (Manually Filed Exhibits 3 and 4 to Patrick Buelna's Declaration in Support of Plfs' Mtn).

[6] Defendants argue Mr. **Moore** was coming towards the officers and behaving aggressively at the time the pepper spray was deployed. Dkt. No. 94 at 20 ("In the moments before Officer Cha used his pepper spray, **Moore** was approaching the officers and ignoring their commands.")... While the videos clearly show Mr. **Moore** opened the door, he did not seem to be moving towards the officers at the time the pepper spray was deployed. (Cha 5:20; Patino 4:48).

What's up? Come on? ... Come 'ere!" (Cha 5:37 — 5:42). Mr. *Moore* retreated into the house and the officers went to the bottom of the stairs. (Cha 5:44). Officer Patino was hit badly with pepper spray and said "I can't see, I can't see. I need some water, fuck." (Patino 5:28)

The officers stayed at the bottom of the stairs and Mr. *Moore* remained inside his house for approximately one minute. (Cha 5:43-6:45). Officer Patino was clearly distressed and in pain. Mr. *Moore* called out from inside the house saying what sounds like "Are you going to go?" (Cha 6:45). Officer Patino called out angrily in response, and still in pain, saying "Hey, sir, you need to give those papers [*6] back, alright?!" Mr. *Moore* kept asking if the officers were going to leave. Officer Patino, became increasingly animated, responding:

> Officer Patino: "No! You need to give those papers back, NOW. That is an order! I am ordering you to come outside and give yourself up because you are under arrest! Yes! Sir you are under arrest right now!"
>
> Mr. *Moore*: I can't see!
>
> Officer Patino: Neither can I.
>
> Mr. *Moore*: I need medical attention.

(Patino 6:12). The officers then told Mr. *Moore* to come out of the house multiple times and Mr. *Moore* did not do so. While the officers were still at the bottom of the stairs, Mr. *Moore* reappeared behind the metal door and Officer Cha began yelling, getting increasingly louder: "Come on out! Come on out! Come on OUT!" One of the officers said "come on out or I'm going to kick the gate open!" Mr. *Moore* threw the hard copy of the TRO through the closed metal door onto the stairs and then retreated back into his house. (Cha 7:30).

Officer Cha told Mr. *Moore* to come out so the officers can get him medical attention. (Cha 7:35). Mr. *Moore* said "Let's get this resolved. Let's get this resolved; I can't see!" (Patino 7:05). The officers continue yelling "COME OUT!"

**Third [*7] Ascent Up Stairs**: Mr. *Moore* then opened his metal gate and screamed very loudly "FUCK YOU" several times and then appeared to calm down. The officers drew their batons, still at the bottom of the stairs, and continued saying "Come out! Let's go!" Mr. *Moore* was standing at the top of the stairs and dropped something small, black, and plastic sounding (based on the sound it makes hitting the ground) that bounced halfway down the stairs. The officers screamed at Mr. *Moore* to "GET ON THE GROUND." (Cha 7:58). Officer Patino said "Get on the ground before you get batoned." (Patino 7:27). Mr. *Moore* responded he "isn't getting on shit." Mr. *Moore* slowly went down the stairs to pick up whatever it was he dropped. (Cha 8:14). The officers screamed "HEY! GET OVER HERE! GET ON THE GROUND," Mr. *Moore* quickly moved back up to his stoop, and the officers ascended the stairs, batons drawn. (Cha 8:14). Mr. *Moore* crossed the threshold behind the open metal door. The officers were screaming 'GET ON THE GROUND." (Cha 8:20). Officer Patino was in front of Officer Cha. Officer Patino hit Mr. *Moore* with his baton. Mr. *Moore* punched Officer Patino in the face and Officer Patino fell backwards down the stairs. **[*8]** (Cha 8:24). Mr. *Moore* was still on the top stoop. Officer Cha fired two shots, both hit Mr. *Moore* at point blank range. Mr. *Moore* retreated into his house.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

The court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. See *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)*. The evidence must be viewed in the light **[*9]** most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id. at 631*.

## DISCUSSION

### I. Defendants' Motion

While the incident is captured on the officers' body cameras, the parties hotly dispute how to interpret the video footage. Where a videotape captures the events in question, and there is no indication that the videotape has been doctored or altered in any way, a court should look to the videotape as direct evidence of the events. See *Scott, 550 U.S. at 378-80*. On a motion for summary judgment, the court should view the facts and draw reasonable inferences in the light most favorable to the non-moving party; but where a videotape of the events "blatantly contradicts" or "utterly discredit[s]" the account of a party such that "no reasonable jury could believe it," the court "should not adopt that version of the facts for purposes of ruling a motion for summary judgment." *Id.* Where video footage is "susceptible to more than one interpretation," summary judgment may not be appropriate. *Branscum v. San Ramon Police Dept., 606 Fed. App'x. 860, 862 (9th Cir. 2015)* (affirming denial of summary judgment where video footage of officers' use of force raised genuine disputes as to whether the plaintiff resisted arrest, **[*10]** and if so, to what extent).

Defendants argue the officers had probable cause and used reasonable force with respect to the pepper spray, baton hits, and shooting because of Mr. **Moore**'s combative, threatening, and uncooperative behavior. Dkt. No. 94 at 17-22. Plaintiffs argue Mr. **Moore** had no legal obligation to be cooperative and was retaliated against for so vociferously voicing his displeasure with the officers' presence. Dkt. No. 100-1 at 20-26. Plaintiffs also argue the officers provoked, taunted, and harassed Mr. **Moore** in direct contravention of their training. *Id.*

Here, factual disputes exist as to the reasonableness of parties' actions during the incident — that is, whether excessive force was used when deploying pepper spray, use of the baton, and the shooting. See *Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011)* ("[T]here are no per se rules in the *Fourth Amendment* excessive force context; rather, courts must still slosh their way through the factbound morass of 'reasonableness.'" (citing *Scott v. Harris, 550 U.S. 372, 383, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)))*; *Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)* ("Because such balancing [of the individual's liberty against the government's interest] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment **[*11]** or judgment as a matter of law in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on a jury's credibility determinations."). The body cam evidence is subject to varying interpretation and reasonable minds can differ about critical aspects of the approximately 12 minute encounter, including whether the officers had grounds to arrest Mr. **Moore** and whether/to what extent Mr. **Moore** was a threat to the officers.

Other disputes of fact include: Did the officers egg Mr. **Moore** on, looking for threats, and asking for a fight? Or, were the officers simply trying to effectuate an investigation? Did the officers know or should they have known Mr. **Moore** was mentally disabled based on his behavior? Defendants argue they were trying to "control" Mr. **Moore** when the pepper spray was deployed, but would a reasonable juror agree? Was Mr. **Moore** behaving in a, perhaps regrettable, but perfectly legal manner just before being hit with pepper spray? After the pepper spray was deployed, what was the basis for placing Mr. **Moore** under arrest? Were the officers enforcing the law or was Officer Patino angry and in pain after getting hit with pepper **[*12]** spray? When the officers ascended the stairs a third time, and Officer Patino hit Mr. **Moore** with his baton, was Mr. **Moore** advancing towards the officers (as defendants argue) or was he retreating into his home (as plaintiffs argue)? Was it reasonable given all the preceding events for Officer Cha to shoot Mr. **Moore**?[7] These are only a sampling of the questions in need of resolution. These disputed facts go to whether the officers had probable cause at each stage of the incident as well as whether the officers' force was reasonable.

Defendants also argue they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards, 566 U.S. 658, 132 S. Ct., 2088, 2093, 182 L. Ed. 2d 985 (2012)*. The application of qualified immunity depends upon: (1) whether the government actor's conduct violated a constitutional right; and (2) whether the unlawfulness of the conduct

---

[7] Defendants argue Mr. **Moore** was moving towards Officer Cha when Officer Cha fired but that is not clear from the video footage.

was apparent under existing law. *Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272, (2001)*. As to element (1), the court must take the facts in the light most favorable to the injured party and consider if "the facts alleged show the officer's conduct violated a constitutional **[*13]** right[.]" *Id.* As to element (2), the Supreme Court has instructed courts "not to define clearly established law at a high level of generality," stating that the dispositive question as to element (2) is "whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)*. The Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id. at 2083*.

Resolution of defendants' qualified immunity defense requires determination of numerous factual disputes. *See Saucier, 533 U.S. at 201* ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."). Use of excessive force is clearly unconstitutional; the question is whether this use of force was excessive. This cause of action, and the inferences to be drawn from the facts alleged by the opposing parties, is particularly well-suited for a jury's determination. *See, e.g., Ruiz v. Sawaya, No. 11-CV-03126-JST (PR), 2013 U.S. Dist. LEXIS 148388, 2013 WL 5665404, at \*4 (N.D. Cal. Oct. 15, 2013)* ("[E]valuation of plaintiff's excessive **[*14]** force claim depends principally on credibility determinations and the drawing of factual inferences from circumstantial evidence, both of which are the traditional functions of the jury . . . because questions of reasonableness are not well-suited to precise legal determination . . .; the jury should be allowed to assess whether the force used by the officers was excessive. Accordingly, the Court rejects Sawaya's assertion of qualified immunity." (citations omitted)). So here, the qualified immunity question cannot be resolved on the record at this time.

Therefore, defendants' motion is DENIED for all causes of action except the fourth[8] (*Monell* violation).

## II. Plaintiffs' Motion[9]

---

[8] Plaintiffs did not object to granting summary judgment with respect to their *Monell* claim, the fourth cause of action.

[9] Defendants argue plaintiffs cannot bring their motion for

Plaintiffs move for partial summary adjudication on two discrete issues: (1) that the defendant officers were not in legal performance of their duties when they re-entered Mr. *Moore*'s stairway after descending the first time and (2) the officers used excessive force as a matter of law when the officers pepper sprayed Mr. *Moore*.

With respect to the second point, though it is quite a close call, the Court DENIES plaintiffs' motion for the reasons stated above with respect to the disputed facts.

With respect to **[*15]** the first point, the Court GRANTS the motion, finding the officers were not in legal performance of their duties when they ascended the stairs the second time. This conclusion is in accordance with the California's First Appellate District decision in *People v. Moore, 2018 Cal. App. Unpub. LEXIS 2966, \*1, 2018 WL 2016792*. In that case, Mr. *Moore* was prosecuted by the state on various charges arising from this same incident at issue in the instant action, including assault and battery on a police officer. The charges were dismissed because the trial court found, and the appellate court affirmed, that the officers were not in legal performance of their duties for at least part of the encounter. Specifically the appellate court found:

> ...**Cha's initial approach to *Moore*'s residence was lawful**... The People argue Cha and Patino did not need to accept *Moore*'s denials of culpability at face value or accede to his efforts to cut off questioning, and they had the right to continue their investigation until satisfied with its results. We disagree...
>
> **Cha's and Patino's refusal to leave *Moore*'s home when he repeatedly demanded that they do so, and their insistence on continuing**

---

partial summary judgment for three main reasons: (1) they did not provide necessary documentation to act as Mr. *Moore*'s successors in interest, (2) they failed to join a necessary party, Mr. *Moore*'s brother, and (3) Loyce *Moore* cannot pursue any claims against defendants because he is sick and elderly. Dkt. No. 105-5 at (Unredacted Def. Opp to MSJ). However, defendants did not oppose the substitution of plaintiffs back in January 2020 (either by filing an opposition or by raising the issue during the February 14, 2020 CMC) and have not raised an issue with the substitution until November 2020. Dkt. No. 71 (Order Granting Unopposed Mtn to Substitute). Plaintiffs filed affidavits in conjunction with their reply brief in support of summary judgment affirming their ability to substitute in. Dkt. No. 110 (Pltfs' Affidavits). The Court is satisfied that plaintiffs are capable of litigating the matter and no other parties need be joined.

**questioning, transformed an attempt at a consensual encounter into an investigatory detention [*16]** ...

**Moore was not obligated to submit to further questioning within his home**, and the officers could not arrest *Moore* for a misdemeanor violation of a restraining order not committed in their presence. ... *Moore*'s offensive language and defiance of police authority also failed to justify the officers' continued presence in the curtilage of *Moore*'s home or *Moore*'s detention....

The People argue that even if Cha's and Patino's refusal to leave violated the *Fourth Amendment*, their subsequent actions were not automatically rendered unlawful, nor was *Moore* given immunity to thereafter break the law....Specifically, the People argue the officers had probable cause to arrest *Moore* for his allegedly assaultive behavior after he first stepped out from behind the gate, and therefore lawfully performed their duties thereafter.

We first agree with the People—and *Moore* readily acknowledges—the officers' alleged constitutional violations do not immunize *Moore* from criminal liability for all subsequent conduct, including his alleged acts of physical violence. If Patino was not engaged in the performance of his law enforcement duties when *Moore* allegedly punched him, *Moore* was not immune from prosecution for battery **[*17]** (*§ 243, subds. (a)*, *(d)*); he simply cannot be convicted of battery of a peace officer engaged in the performance of his duties (*§ 243, subds. (b)*, *(c)*).

We also agree with the People that an officer's unlawful performance of his or her duties at one moment does not dictate that all of the officer's subsequent conduct in the same encounter is likewise unlawful. They correctly observe that "convict[ion] of an offense against a peace officer '"engaged in . . . the performance of . . . [his or her] duties"'" depends on whether "the officer was acting lawfully at the time the offense against the officer was committed." (*In re Manuel G., supra, 16 Cal.4th at p. 815*, italics omitted & added.) Prior unlawful conduct by the officer does not prevent a conviction if the officer was lawfully performing his duties at the time of an alleged offense. The People argue that, even if the officers were no longer lawfully investigating the alleged restraining order violation when reascending the stairway following the initial encounter with *Moore*, the officers were nevertheless lawfully performing their duties when they attempted to apprehend *Moore* following *Moore*'s alleged assaultive behavior after he first emerged from behind the gate.

But *Moore* does not challenge the officers' probable **[*18]** cause to arrest him for the aggravated assault. As he correctly notes, the issue before us is not the lawfulness of his arrest, and his guilt or innocence does not depend on the peace officer status of the victims. **The question is simply whether the officers could lawfully intrude into the curtilage of the home over *Moore*'s vociferously expressed objection, and in the absence of probable cause, or other justification, at the time of the entry to do so. They could not. The officers were therefore not lawfully engaged in the performance of their duties at the time the alleged crimes occurred, even if their subsequent actions in effecting the arrest were lawful**.

*People v. Moore, 2018 Cal. App. Unpub. LEXIS 2966, *17-22, 2018 WL 2016792* (emphasis added).

### III. Motions to Seal

Defendants move to seal the body camera footage as well as various other materials related to the police investigation that took place subsequent to the incident. Dkt. Nos. 98, 100, 105, 107, 112. However, *Cal. Penal Code Section 832.7(b)* states

> ...the following peace officer or custodial officer personnel records ... shall not be confidential and shall be made available for public inspection ...(A) A record relating to the report, investigation, or findings of any of the following:
>
> (i) An incident involving the discharge of **[*19]** a firearm at a person by a peace officer or custodial officer.
> (ii) (ii) An incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury.

Without question this case falls within both (i) and (ii) above and therefore the materials marked "Confidential" by defendants and designated to be filed under seal in support of defendants' and plaintiffs' motions should be made public. During the December 4, 2020 hearing defendants' counsel made clear the only part of the

body cam footage they sought to keep under seal was footage at the beginning of the video in which Mr. Choy is identified and/or footage after Mr. **Moore** was shot. Pursuant to *California Penal Code 832.7(b)*, the relevant footage and other materials regarding the incident (interviews of the officers, summary report of the incident, etc.) must be made public. Indeed, these should have been made public well before now. As such, defendants shall re-file the exhibits currently filed under seal publicly on or before Monday December 14, 2020 at 5pm with any necessary redactions to protect third parties or other sensitive information (addresses, phone numbers, etc.).[10]

The motions to seal are DENIED. **[*20]**

**CONCLUSION**[11]

As discussed above, defendants' motion for summary judgment is DENIED except with respect to plaintiffs' fourth cause of action for which the motion is GRANTED.

Plaintiffs' motion is DENIED with respect to the use of pepper spray being excessive force as a matter of law. Plaintiffs' motion is GRANTED in so far as the officers were not in lawful performance of their duties when they ascended the stairs a second time.

The motions to seal are DENIED.

**IT IS SO ORDERED**.

Dated: December 10, 2020

/s/ Susan Illston

SUSAN ILLSTON

United States District Judge

**End of Document**

---

[10] Note — defendants must not only file the exhibits they lodged under seal publicly, but also those filed by plaintiffs.

[11] Defendants' request for judicial notice is granted. Dkt. No. 95.