1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                              SAN FRANCISCO DIVISION

7

8    KENNETH CHA,                          Case No.  24-cv-04700-PHK

9                    Plaintiff,            **ORDER GRANTING DEFENDANTS'
                                           MOTION TO DISMISS; ORDER**
10          v.                             **DENYING PLAINTIFF'S AND
                                           DEFENDANTS' REQUESTS FOR**
11   CITY AND COUNTY OF SAN                **JUDICIAL NOTICE**
     FRANCISCO, et al.,
12                                         Re: Dkts. 15, 16, 18, 42, 43, and 50
                    Defendants.
13

14                                 **INTRODUCTION**

15          This is a Section 1983 lawsuit which arises out of a police officer-involved shooting and,

16   more specifically, the aftermath of that incident.  Plaintiff Kenneth Cha was, at the relevant time, a

17   police officer with the San Francisco Police Department.  In 2017, Plaintiff Cha responded to a call

18   and encountered a person named Sean Moore at Mr. Moore's residence building.  That encounter

19   escalated, eventually resulting in Plaintiff Cha discharging his firearm at Mr. Moore, causing

20   multiple gunshot wounds and sever injury.  After that officer-involved shooting, the then-District

21   Attorney for San Francisco investigated the circumstances, and in 2017 concluded that there were

22   insufficient grounds to pursue criminal charges against Plaintiff Cha.

23          Circumstances changed after November 2019, when Defendant Chesa Boudin was elected

24   District Attorney for San Francisco.  In January 2020, Mr. Moore died, and the coroner eventually

25   ruled that death a homicide.  The San Francisco District Attorney's Office, at that time, reopened

26   the investigation into Plaintiff Cha's shooting of Mr. Moore.  The investigation included internal

27   reviews of the circumstances and a request for a search warrant for Plaintiff Cha.  Eventually, in

28   July 2021, an investigative Grand Jury was empaneled, and evidence was submitted to that Grand

United States District Court
Northern District of California

1  Jury.  In October 2021, an investigator for the San Francisco District Attorney's Office submitted

2  an application and affidavit to a California Superior Court Judge requesting issuance of an arrest

3  warrant for Plaintiff Cha.  In November 2021, Plaintiff Cha was charged with voluntary

4  manslaughter and assault with a semiautomatic firearm in connection with the shooting of Mr.

5  Moore.

6      Circumstances changed again in July 2022, when Defendant Boudin lost a recall election

7  and Brook Jenkins was appointed as Interim District Attorney for San Francisco.  Ms. Jenkins was

8  elected as District Attorney in November 2022.  In January 2023, Plaintiff, through his counsel,

9  contacted District Attorney ("DA") Jenkins regarding the alleged deficiencies in the criminal case

10  against Plaintiff Cha.  In June 2023, the San Francisco District Attorney's Office filed a Motion to

11  Dismiss the charges against Plaintiff and that motion was granted on July 18, 2023, thus, ending the

12  criminal prosecution against Plaintiff Cha for the shooting of Mr. Moore.

13      After filing an administrative claim (which was denied), Plaintiff Cha filed the Complaint in

14  this action in August 2024, asserting various alleged violations of his civil rights in connection with

15  the investigation and prosecution brought against him.  After the hearing on Defendants' Motion to

16  Dismiss the original Complaint, Plaintiff Cha voluntarily filed the instant First Amended Complaint.

17      Now before the Court is Defendants' collective Motion to Dismiss Plaintiff Officer Kenneth

18  Cha's First Amended Complaint.  [Dkt. 42].  In connection with that Motion to Dismiss, Defendants

19  have also filed a request for judicial notice, and Plaintiff Cha has also filed a request for judicial

20  notice.  [Dkt. 43 (Defendants' request for judicial notice), and 50 (Plaintiff Cha's request for judicial

21  notice)].  After carefully reviewing the motion, the requests for judicial notice related thereto, and

22  all accompanying submissions and materials, and after holding a hearing on these matters, the Court

23  **GRANTS** the Motion to Dismiss and **GRANTS** both requests for judicial notice.

24                          **RELEVANT BACKGROUND**

25      The following factual summary is based on the facts as alleged in Plaintiff Cha's First

26  Amended Complaint.  [Dkt. 34].

27      At the times relevant to this case, Plaintiff Cha "is and was a police officer employed by the

28  San Francisco Police Department."  *Id.* at ¶ 11.

The named Defendants are the City and County of San Francisco, the San Francisco District Attorney's Office ("SFDAO"), Chesa Boudin, Dana Drusinsky, Stephanie Lacambra, Lateef Gray, and Andrew Koltuniak (collectively "Defendants"). Defendant San Francisco is a public entity in the State of California. *Id.* at ¶ 12. Defendant SFDAO is a "regional government agency located in the City of San Francisco, California and tasked with prosecuting criminal offenders for the Defendant City and County of San Francisco[.]" *Id.* at ¶ 13. Defendant Chesa Boudin is a resident of the State of California and is the former San Francisco District Attorney in the SFDAO. *Id.* at ¶ 14. Defendant Boudin is being sued individually and in his official capacity as the former District Attorney. *Id.*

Defendant Lateef Gray is a resident of the State of California. *Id.* at ¶ 15. Defendant Gray is being sued individually and in his official capacity as the former Managing Attorney for the Independent Investigation Bureau of the SFDAO. *Id.*

Defendant Dana Drusinsky is a resident of the State of California. *Id.* at ¶ 16. Defendant Drusinsky is being sued individually and in her official capacity as a San Francisco Assistant District Attorney. *Id.*

Defendant Stephanie Lacambra is a resident of the State of California. *Id.* at ¶ 17. Defendant Lacambra is being sued individually and in her official capacity as a San Francisco Assistant District Attorney. *Id.*

Defendant Andrew Koltuniak is a resident of the State of California. *Id.* at ¶ 18. Defendant Koltuniak is being sued individually and in his official capacity as an Investigator with the Independent Investigation Bureau (IIB) of the SFDAO. *Id.*

On January 6, 2017, while Plaintiff was acting as a police officer for San Francisco, Plaintiff had an encounter with third party civilian Sean Moore. *Id.* at ¶¶ 21. During this encounter, Plaintiff discharged his firearm at and wounded Mr. Moore. *Id.* at ¶ 21. "After the incident, [Mr.] Moore was treated for two gunshot wounds, a liver laceration, and traumatic injury to the area of the right colon." *Id.* at ¶ 41.

Subsequent to the January 6, 2017, shooting, the SFDAO investigated the incident between Plaintiff, Mr. Moore, and another SF Police Officer who was present at the time, Officer Patino. *Id.*

at ¶ 45. After this investigation, the SFDAO found no cause for initiating a criminal case against Plaintiff or Officer Patino. *Id* at ¶ 48. In 2019, a declination report detailing a lack of viable methods to prosecute Plaintiff and Officer Patino was finalized. *Id*. at ¶ 51. However, the finalized report was never formally signed or published. *Id*.

On January 16, 2020, the Moore investigation was reopened and a memorandum was created. *Id.* at ¶ 64. On January 20, 2020, Mr. Moore died. *Id.* at ¶ 43. Pursuant to the medical reports, Mr. Moore "suffered numerous medical conditions." *Id.* Mr. Moore's death was ultimately listed as a homicide. *Id.* at ¶ 44.

In July 2021, an investigative Grand Jury was empaneled and received evidence concerning Mr. Moore's shooting by Plaintiff. *Id*. at ¶ 84. Defendants Drusinsky and Lacambra presented evidence about the January 6, 2017, shooting to the Grand Jury. *Id*.

On October 29, 2021, Defendant Koltuniak submitted a request for issuance of a warrant for the arrest of Plaintiff to San Francisco Superior Court Judge Harold Kahn, who granted the request later the same day. *Id*. at ¶ 103. On or about November 2, 2021, Plaintiff was arrested on charges of voluntary manslaughter and assault with a semiautomatic firearm in connection with the incident and shooting of Mr. Moore. *Id*. at ¶ 119.

On July 8, 2022, Defendant Boudin lost a recall election and left office. *Id*. at ¶ 122. On January 8, 2023, Brook Jenkins assumed the role of District Attorney for San Francisco. *Id*.

On January 11, 2023, Plaintiff's attorney, Scott Burrell, sent a letter to DA Jenkins outlining the deficiencies in the case against Plaintiff. *Id*. at ¶ 124. On June 30, 2023, ADA Darby Williams filed a Motion to Dismiss charges against Plaintiff. *Id*. at ¶ 125. On July 18, 2023, the Superior Court granted the Motion to Dismiss all charges against Plaintiff. *Id*.

On December 28, 2024, Plaintiff Cha "timely filed a claim against Defendants pursuant to Government Code section 910[.]" *Id.* at ¶ 131. On February 7, 2024, Defendant San Francisco sent a letter to Plaintiff Cha's counsel, advising that San Francisco "believed there was 'no indication of liability on the part of the City and County,'" and further advising that, "your claim is DENIED." *Id.* at ¶ 131.

On August 2, 2024, Plaintiff Cha filed a Complaint alleging: (1) "Malicious Prosecution –

4

1   Improper Investigation of Crime," pursuant to 42 U.S.C. § 1983, *et seq.*, against all Defendants; (2)

2   "Municipal Policy Resulting in Deprivation of Rights," pursuant to 42 U.S.C. § 1983, *et seq.*, against

3   Defendants the City and County of San Francisco, the San Francisco District Attorney's Office,

4   Chesa Boudin, Lateef Gray, and DOES 1–100; and (3) "Negligent Hiring, Supervision, and

5   Training" against Defendants the City and County of San Francisco, the San Francisco District

6   Attorney's Office, Chesa Boudin, Lateef Gray, and DOES 1–100.  [Dkt. 1 at ¶¶ 83–122].

7        On January 31, 2025, the Defendants filed a Motion to Dismiss and a request for judicial

8   notice.  [Dkts. 15 and 16].  On February 14, 2025, Plaintiff Cha filed his opposition to the Motion

9   to Dismiss.  [Dkt. 17].  On February 21, 2025, Defendants filed their reply to Plaintiff Cha's

10  opposition to the Motion to Dismiss.  [Dkt. 19].  On April 8, 2025, the Court held a lengthy hearing

11  regarding the Motion to Dismiss.  [Dkt. 26].  At the hearing, in response to the arguments and

12  comments from the Court, Plaintiff Cha agreed to file an amended complaint voluntarily without

13  the need for the Court to issue a formal ruling on the motion to dismiss.  *Id.*

14       On May 23, 2025, Plaintiff Cha filed his First Amended Complaint.  [Dkt. 34].  As discussed

15  in further detail herein, in ninety-five pages (not including exhibits attached thereto), the First

16  Amended Complaint asserts (in somewhat repetitive and convoluted pleading) several causes of

17  action: (1) Malicious Prosecution pursuant to 42 U.S.C. § 1983, *et seq.*, related to the "administrative

18  policies causing deprivation of rights" against "Defendants City and County of San Francisco; San

19  Francisco District Attorney's Office; Chesa Boudin; and Lateef Gray"; (2) Malicious Prosecution

20  asserted against all Defendants pursuant to 42 U.S.C. § 1983, *et seq.*, related to the investigation of

21  the crime allegedly committed by Plaintiff involving Mr. Moore; (3) Malicious Prosecution asserted

22  against all Defendants pursuant to 42 U.S.C. § 1983 related to the seeking of the warrant for the

23  arrest of Plaintiff Cha; (4) "Municipal Policy Resulting in Deprivation of Rights," pursuant to 42

24  U.S.C. § 1983, *et seq.*, against Defendants the City and County of San Francisco, the San Francisco

25  District Attorney's Office, and DOES 1–100; (5) Supervisor liability pursuant to, 42 U.S.C. § 1983,

26  *et seq.*; (6) Conspiracy to Violate Civil Rights pursuant to 42 U.S.C. §§ 1983, 1988 against Chesa

27  Boudin, Lateef Gray, Dana Drusinsky, Stephanie Lacambra, Andrew Koltuniak, and Does 1–100;

28  and (7) "Negligent Hiring, Supervision, and Training" against Defendants the City and County of

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    San Francisco, the San Francisco District Attorney's Office, Chesa Boudin, Lateef Gray, and DOES

2    1–100. *Id.*

3         On June 30, 2025, Defendants filed the instant Motion to Dismiss.    [Dkt. 42].

4    Contemporaneously, Defendants filed a request for judicial notice.  [Dkt. 43].  On August 11, 2025,

5    Plaintiff Cha filed his opposition to the Motion to Dismiss.  [Dkt. 48].  On August 21, 2025,

6    Defendants filed their reply to Plaintiff Cha's opposition to the Motion to Dismiss.  [Dkt. 51].

7    Plaintiff Cha did not file an opposition to Defendants' request for judicial notice.

8         On August 11, 2025, Plaintiff Cha filed a request for judicial notice which was predicated

9    on a previous request for judicial notice.  [Dkt. 50].  Defendants did not file an opposition to

10   Plaintiff's request.

11        On September 9, 2025, the Court heard oral argument on the Motion to Dismiss the First

12   Amended Complaint and the two requests for judicial notice.  [Dkt. 52].  This matter was submitted

13   by all Parties for decision at the close of the hearing.

## LEGAL STANDARD

15        The Rule 12(b)(6) standards on a motion to dismiss are well-known and not subject to

16   dispute for the instant motion.  "The Rule 12(b)(6) standard requires a complaint to 'contain

17   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

18   *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

19   678 (2000)).  Determining whether a complaint states a plausible claim is "a context-specific task

20   that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

21   U.S. at 679.

22        Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

23   cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell*

24   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] court considering a motion to dismiss can

25   choose to begin by identifying pleadings that, because they are no more than conclusions, are not

26   entitled to the assumption of truth. While legal conclusions can provide the framework of a

27   complaint, they must be supported by factual allegations." *Id.* at 679.  In analyzing a motion to

28   dismiss under Rule 12(b)(6), courts "do not accept any unreasonable inferences or assume the truth

of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). In other words, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555.

# DISCUSSION

## I.    NARROWING OF ISSUES AT ORAL ARGUMENT

The First Amended Complaint is drafted in a manner not entirely consistent with best practices under Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Amended Complaint styles itself as asserting six "Claims for Relief," but as subheadings under each such claim, the Amended Complaint further asserts multiple "Counts," each alleging different factual circumstances apparently supporting the corresponding Claim for Relief. Specifically, the Amended Complaint asserts:

(I) a "First Claim for Relief" for malicious prosecution under Section 1983, which asserts in turn four "Counts" each alleging a different set of factual circumstances relating to: (1) procedures for evaluating cases, (2) hiring, firing, and training employees, (3) management of conflicts of interest, and (4) the process for obtaining a search warrant for Plaintiff Cha;

(II) a "Second Claim for Relief" for malicious prosecution under Section 1983, which in turn asserts three "Counts" relating to: (1) the allegedly improper search warrant for Plaintiff Cha, (2) the grand jury proceedings, and (3) removal and reassignment of SFDAO personnel to investigate and charge Plaintiff Cha;

(III) a "Third Claim for Relief" for malicious prosecution under Section 1983, for alleged improper conduct in seeking the arrest warrant for Plaintiff Cha;

(IV) a "Fourth Claim for Relief" under Section 1983, asserting a claim against an alleged municipal policy of the SFDAO under *Monell*;

1    (V) a "Fifth Claim for Relief" under Section 1983, asserting "supervisor liability" which in

2    turn asserts two "Counts" relating to: (1) a supervisor liability claim against Defendant Boudin for

3    pursuing the prosecution of Plaintiff Cha allegedly without regard to whether or not the charges

4    were supported by probable cause, and (2) a supervisor liability claim against Defendant Gray for

5    allegedly causing the improper investigation and prosecution of Plaintiff Cha;

6    (VI) a "Sixth Claim for Relief" under Section 1983 for "Conspiracy to Violate Civil Rights,"

7    which in turn asserts two "Counts" relating to: (1) an alleged conspiracy by the individual defendants

8    to pursue a biased investigation into Plaintiff Cha and (2) an alleged conspiracy by the individual

9    defendants to present biased information to obtain the arrest warrant for Plaintiff Cha; and

10    (VII) a "Seventh Claim for Relief" under California law, asserting negligent hiring,

11    supervision, and training.

12    At the hearing, Plaintiff conceded several issues, which narrow and thus moot the disputes

13    as to certain challenged portions of the Amended Complaint.

14    First, the Amended Complaint appears in several places to allege that the mere investigation

15    by Defendants into Plaintiff's alleged criminal conduct, prior to the initiation of his criminal

16    prosecution, was somehow a violation of Plaintiff's civil rights. For example, the Amended

17    Complaint refers repeatedly to an alleged "improper and malicious investigation" into Plaintiff Cha.

18    *See* Dkt. 34 at ¶ 190. The Amended Complaint refers to alleged violations of Plaintiff's due process

19    rights "under the Fourth and Fourteenth Amendments of the U.S. Constitution" but does not plead

20    how the alleged improper or malicious investigation led to the alleged malicious prosecution; under

21    the theory of liability here, Plaintiff asserts that the then-District Attorney (and other leadership in

22    the SFDAO) were intent on prosecuting Plaintiff Cha for the shooting of Moore for political reasons,

23    regardless of the pre-prosecution investigation and without regard to whether or not there was

24    probable cause to support the charges. *See* Dkt. 34 at ¶¶ 283, 307. That is, if, as the Amended

25    Complaint alleges, the prosecutors were going to proceed with the alleged malicious prosecution

26    without regard to probable cause, then there is an absence of causal connection between the alleged

27    improper investigation and the ultimate prosecution Plaintiff challenges.

28    At oral argument, Plaintiff Cha conceded that the investigation alone does not, by itself,

United States District Court
Northern District of California

8

United States District Court
Northern District of California

independently give rise to cognizable constitutional harms in this case. At oral argument, Plaintiff clarified that the theory of liability here is that ultimately the prosecution of Plaintiff Cha constituted the harm here, but that the investigation was simply the precursor to and led to the prosecution and was thus part of the historical fact pattern leading to the alleged violation of Plaintiff's constitutional rights. Thus, Plaintiff admitted that the facts alleged as to the investigation in and of themselves (including the allegations regarding the alleged improperly obtained search warrant) do not create or form the basis of an independent cause of action under Section 1983. Indeed, at oral argument Plaintiff cited no legal authority and in briefing Plaintiff did not cite persuasive authority for the proposition that his Section 1983 claim can be asserted as a "malicious investigation" claim by itself and conceded that the mere existence of an investigation by law enforcement, prior to the initiation of any prosecution of filed criminal charges, is not the theory of liability here. Indeed, "[o]rdinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

Thus, to the extent the Amended Complaint appears to attempt (in its somewhat convoluted pleading) to assert causes of action based solely on the pre-prosecution investigation into Plaintiff Cha, per Plaintiff's concessions, any such causes of action or claims (or "counts") are dismissed. This applies, at a minimum, to "Count 1" and "Count 4" of the "First Claim for Relief," "Count 1" and "Count 3" of the "Second Claim for Relief," those portions of the "Fourth Claim for Relief" asserting "improper" or "malicious investigation," those portions of the "Fifth Claim for Relief" asserting supervisor liability with regard to an "improper" and "malicious investigation," and those portions of the "Seventh Claim for Relief" also asserting "improper" or "malicious investigation."

Second, the Amended Complaint appears in several places to allege that the mere empaneling of the investigative Grand Jury and the proceedings before that Grand Jury were somehow a violation of Plaintiff's civil rights. For example, "Count 2" of the "Second Claim for Relief" in the Amended Complaint alleges that Defendants "improperly impaneled" an investigative grand jury and refers repeatedly to allegedly biased or improper presentation of evidence to the

grand jury.  *See, e.g.*, Dkt 34 at ¶¶ 95, 218  However, the Amended Complaint admits that this was an "investigative grand jury" and that this grand jury did not issue indictments.  *See id.* at ¶¶ 84, 217, 219.  Further, the Amended Complaint states that this investigative grand jury failed to develop any further evidence against Plaintiff Cha.  *Id.* at ¶ 95.  The Amended Complaint therefore lacks any causal or factual connection between the Grand Jury proceedings and the later initiation of the prosecution against Plaintiff Cha (which was officially started by criminal complaint).  *See* Dkt. 34-2 (Felony Complaint and Arrest Warrant against Plaintiff Cha).  At oral argument, Plaintiff Cha conceded that the existence or conduct of proceedings before the Grand Jury alone does not, by itself, independently give rise to cognizable constitutional harms in this case, particularly here where no indictment was issued.  At oral argument, Plaintiff clarified that the theory of liability is that ultimately the prosecution of Plaintiff Cha constituted the constitutional harm here, but that the empaneling of the grand jury was part of the overall historical fact pattern leading to the alleged violation of Plaintiff's constitutional rights.  Thus, Plaintiff admitted that the facts alleged as to the Grand Jury in and of themselves do not create or form the basis of an independent cause of action under Section 1983 here.  Indeed, at oral argument Plaintiff cited no legal authority and in briefing Plaintiff did not cite persuasive authority for the proposition that a Section 1983 claim can be asserted as to an "improperly empaneled grand jury" or "biased presentation of evidence to a grand jury" where no indictment or other action adverse to a plaintiff arose from the grand jury proceedings.  Plaintiff conceded that the mere existence of the Grand Jury, prior to the initiation of any prosecution of filed criminal charges independent of that grand jury, is not the theory of liability here.

Thus, to the extent the Amended Complaint appears to attempt (in its somewhat convoluted pleading) to assert causes of action based solely on the empaneling of the investigative Grand Jury and the conduct of proceedings before the Grand Jury here, per Plaintiff's concessions, any such causes of action or claims (or "counts") are dismissed.  This applies, at a minimum, to the sole remaining "Count 2" of the "Second Claim for Relief," and those portions of the "Fifth Claim for Relief" asserting supervisor liability with regard to allegedly "biased presentation" to the grand jury.

Further, as discussed above, the Amended Complaint asserts, in the "Sixth Claim for Relief",

1    two "counts" alleging conspiracy to violate civil rights under Sections 1983 and 1988. First, Section

2    1988 is, in general, the statutory vehicle for an award of attorneys' fees for a prevailing party in a

3    civil rights suit and is not, by itself, the statutory basis for a separate cause of action. *See* 42 U.S.C.

4    § 1988. Further, there is no mention of "conspiracy" in Section 1988. At the hearing on this motion,

5    Plaintiff Cha all but conceded that there is no cause of action for "conspiracy" to violate civil rights

6    under Section 1988.

7         Further, at the hearing on this motion, Plaintiff Cha conceded that he lacked a legally

8    sufficient basis to allege a cause of action for a conspiracy to commit a Section 1983 violation. *Cf.*

9    *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992) (affirming motion to dismiss

10   Section 1983 complaint, but granting leave to amend "possibility" of pleading cause of action for

11   conspiracy to violate civil rights). Indeed, in briefing, Plaintiff cited no persuasive authority to

12   support the conclusory allegation that there was a cognizable cause of action based on a conspiracy

13   to violate his civil rights here. The Amended Complaint (particularly the Sixth Claim for Relief

14   alleging conspiracy) is conclusory in its pleading as to the alleged conspiracy because the pleading

15   simply realleges and reincorporates the preceding causes of action and alleges that the actions of the

16   individual defendants amount to a conspiracy. This is legally insufficient because there is no

17   pleading as to the required elements to plead the existence of a conspiracy. *Buckey*, 968 F.2d at 794

18   (granting motion to dismiss: "Mere negligence and self-aggrandizing motives are not actionable

19   under Section 1983. Nor does the complaint allege specific facts to support the existence of a

20   conspiracy among the defendants.") (citations omitted). Thus, based on Plaintiff's admission, to the

21   extent the Amended Complaint appears to attempt (in its somewhat convoluted pleading) to assert

22   causes of action based on a conspiracy to violate Plaintiff's civil rights in violation of Section 1983,

23   any such causes of action are **DISMISSED**. This ruling applies to the entire Sixth Claim for Relief

24   (including the first and second "counts" thereunder), as well as those portions of "Count 2" under

25   the "First Claim for Relief" alleging a "conspiracy," those portions of "Count 3" under the "Second

26   Claim for Relief" alleging a "conspiracy," and the portions of the "Fifth Claim for Relief" which

27   uses the term "conspiracy to violate civil rights" (which is only used in the heading and not

28   referenced any further in the body of the text of this claim and appears to be a potential typographical

United States District Court
Northern District of California

1   error).

2        Accordingly, the motion to dismiss is **GRANTED** as to the entire Second Claim for Relief,

3   the entire Sixth Claim for Relief, and, as discussed herein, those portions of the other causes of

4   action (including the First, Fourth, Fifth, and Seventh "Claims for Relief") based on either

5   "malicious" or "improper investigation," "improperly empaneled grand jury" or "biased

6   presentation of evidence" to the grand jury, or conclusory allegations of "conspiracy" to violate

7   Plaintiff's civil rights.

8   **II.     DEFENDANTS' MOTION TO DISMISS**

9        On the merits of the remaining causes of action, Defendants seek dismissal of Plaintiff Cha's

10  Amended Complaint in its entirety on several grounds.  [Dkt. 42].  As discussed above, in this 173-

11  page Amended Complaint, the causes of action contain the same factual basis and are statutorily

12  similar in the analysis.  Defendants categorize their arguments for dismissal based on (1) the fact

13  that probable cause existed for the arrest warrant and prosecution, (2) lack of *Monell* liability and

14  lack of liability by any of the governmental entities and supervisors, (3) prosecutorial immunity,

15  and (4) qualified immunity.  As discussed herein, the Court analyzes the issues raised by the motion

16  to dismiss by addressing the various causes of action (whether confusingly labeled as "Claims for

17  Relief" or separately as "Counts" by Plaintiff) in legally cognizable and relevant categories: (A) the

18  causes of action stemming from the arrest warrant leading to the alleged malicious prosecution, (B)

19  the causes of action under *Monell v. Department of Social Services of the City of New York*, and (C)

20  the cause of action under California state law for negligent hiring, supervision, and training.

21      **A.     Arrest Warrant and Malicious Prosecution**

22       A plaintiff may assert Section 1983 claims to redress violations of their "rights, privileges,

23  or immunities secured by the constitution" by a person or entity acting under the color of state law.

24  *Awabdy*, 368 F.3d at 1066 (citing 42 U.S.C. § 1983).  Here, the Amended Complaint alleges (under

25  various different headings for different "claims" or "counts") that Defendants are liable under

26  Section 1983 due to their alleged malicious prosecution of Plaintiff with regard to the Moore

27  shooting, focusing on the events leading up to the initiation of the actual criminal prosecution.  In

28  evaluating a malicious prosecution claim under Section 1983, courts must look to the state law

United States District Court
Northern District of California

underlying the claim. *Id.* ("We look to California law to determining the legal effect of the state court's action because we have incorporated the relevant elements of the common law tort of malicious prosecution into our analysis under § 1983.") (citations omitted).  To assert a Section 1983 malicious prosecution claim under California law, a plaintiff must adequately plead that the underlying litigation: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [plaintiff's] favor; (2) was brought without probable cause; and (3) was initiated with malice." *Estate of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F. 3d 1019, 1030 (9th Cir. 2008) (quoting *Zamos v. Stroud*, 32 Cal.4th 958, 965 (2004)) (emphases removed).

As noted, Plaintiff's Amended Complaint asserts overlapping and repetitive causes of action under Section 1983 which all ultimately relate to the malicious prosecution claim here.  [Dkt. 34]. The Amended Complaint relies on three categories of factual allegations to support the malicious prosecution causes of action: (1) the pre-investigation that occurred prior to the empaneling of the investigative grand jury; (2) the investigative grand jury proceedings themselves; and (3) the process of obtaining and receiving the arrest warrant for Plaintiff Cha. *Id.*  The Court has already discussed, as explained above, the reasons why the first two categories in and of themselves do not form the basis of an independent cause of action for malicious prosecution.

The remaining dispute then focuses on whether the factual allegations in the Amended Complaint regarding the arrest warrant give rise to a Section 1983 malicious prosecution claim.  For reasons discussed below, Plaintiff focuses on the arrest warrant process here because of the absolute immunity for prosecutors.  The gravamen of Plaintiff Cha's malicious prosecution cause of action thus hinges on the allegation that he was improperly arrested and thus prosecuted without probable cause because he acted in reasonable self-defense in shooting Mr. Moore.  To properly assert a Section 1983 cause of action for malicious prosecution, Plaintiff Cha must show an absence of probable cause.  *Awabdy*, 368 F.3d at 1066.  "Probable cause for the initiation of a criminal prosecution exists where 'it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011) (quoting *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006)).  Probable cause is assessed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case.  *See*

*Hartman v. Moore*, 547 U.S. 250, 258 (2006).  The existence of probable cause on the facts known to the defendant is a question of law. *Roberts*, 660 F.3d at 1164 (citing *Sheldon Appel Co. v. Albert Oliker*, 47 Cal.3d 863, 881 (1989)).  Malicious prosecution claims fail when a court finds that the prior action was supported by probable cause, even if it was filed with malicious intent.    *Moore v. City of Oakland*, 242 F. Supp. 3d 891, 905 (N.D. Cal. 2017) (quoting *Sheldon Appel*, 47 Cal.3d at 875); *see also Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citation omitted) ("[P]robable cause is an absolute defense to malicious prosecution.").  The California Court of Appeal has further explained:

> Probable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused person. It has reference to the common standard of human judgement and conduct. It exists if one person is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true . . . . Proof of the favorable termination of the criminal proceeding does not create a conflict on the issue of probable cause . . . . Proof that no crime was committed or that the accused is innocent does not negative the existence of probable cause.

*Centers v. Dollar Markets,* 99 Cal.App.2d 534, 540–41 (1950).  Thus, probable cause is a question of law under which the question is not whether the defendant thought the facts constitute probable cause, but whether the court thinks they did.  *Est. of Tucker ex rel. Tucker*, 515 F.3d at 1031.

In analyzing the Amended Complaint on this issue, the Court accepts as true all well-pled allegations of material fact and construes them in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire and Marine Ins. Co.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008).  The Court is not required to accept as true allegations that contradict matters properly subject to judicial notice. *Daniels Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing *Manzarek*, 519 F.3d at 1031).

In his opposition to the Motion to Dismiss, Plaintiff Cha clarifies the specific issues that he contends undermine the arrest warrant and the resulting probable cause determination by the Superior Court judge who issued the arrest warrant.  [Dkt. 48 at 12–14].  Plaintiff Cha attaches as an exhibit to the Amended Complaint the October 29, 2021, affidavit by Defendant Koltuniak that served as the basis for the application for the arrest warrant.  [Dkt. 34-1].  Because the Amended Complaint attaches the affidavit submitted by the investigator that was the basis for the application

14

United States District Court
Northern District of California

1   for the arrest warrant, the Court may properly consider that document while still construing its

2   contents in the light most favorable to Plaintiff Cha. *Manzarek*, 519 F.3d at 1031–32 (9th Cir. 2008).

3   In opposing dismissal, Plaintiff Cha argues at length about the contents of the affidavit that

4   accompanied the application for the arrest warrant.  The Court addresses each issue Plaintiff Cha

5   argues in turn.  As discussed further below, to the extent Plaintiff Cha challenges alleged

6   deficiencies in the affidavit for the arrest warrant application, Plaintiff Cha's arguments are either

7   contradicted by the face of the affidavit or its attachments, or the arguments raise purely legal issues

8   concerning whether the alleged omissions or misstatements are material to the probable cause

9   determination.

10          First, Plaintiff Cha contends that the affidavit contains "factual misstatements as well as

11   omissions of important information." [Dkt. 48 at 12–13].  Specifically, Plaintiff Cha argues that the

12   affidavit failed to "accurately describe the violent encounters preceding the shooting of Moore[.]"

13   [Dkt. 48 at 12].  For example, Plaintiff Cha argues that the affidavit failed to capture the violent

14   context of the events preceding the shooting of Mr. Moore.  *Id.*  According to Plaintiff Cha, body

15   camera video evidence and testimony show that Mr. Moore punched Plaintiff Cha's police partner

16   in the nose, breaking it, and then attempted to kick Plaintiff Cha.  *Id.*  Plaintiff further contends that

17   the affidavit minimized this violent conduct and instead characterized Plaintiff Cha as having acted

18   aggressively toward Mr. Moore.  *Id.*  In support, Plaintiff Cha compares the affidavit with body

19   camera footage and still images.  *Id.* at 13 (citing Dkt. 34-1).  According to Plaintiff Cha, the

20   affidavit inaccurately depicts the events of the shooting by minimizing Mr. Moore's violent conduct

21   while exaggerating Plaintiff Cha's role in escalating the encounter.

22          A straightforward review of the face of the affidavit undermines Plaintiff's arguments.  The

23   Superior Court judge had full access to the full body camera footage as an attachment or exhibit to

24   the affidavit and warrant application. [Dkt. 34-1].  To be clear, this is not a situation where the

25   investigator's description of the shooting was the only evidence submitted to the Superior Court

26   judge.  Rather, the Superior Court judge had the same materials (the body camera video and still

27   photos) that Plaintiff now relies upon as the basis for arguing that the investigator's affidavit was

28   somehow misleading or omitted important facts.  There is no basis to conclude, from the Amended

15

1    Complaint, that the Superior Court judge failed to exercise his independent review and judgment of

2    these same materials when deciding to issue the arrest warrant for Plaintiff Cha.  Alleged defects in

3    a warrant affidavit are immaterial where the reviewing judge independently evaluates the sources

4    and fulfills his judicial duty.  *See Franks v. Delaware*, 438 U.S. 154, 166 (1978) (noting judges are

5    "equipped to conduct a fairly vigorous inquiry into the accuracy" of affidavits); *Galen v. Cnty. of*

6    *Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007).  As a matter of law, the presence of this independent,

7    reliable source of information presented to the Superior Court judge defeats Plaintiff's arguments.

8    *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (citing *Ewing v. City of Stockton*, 588 F.3d 1218,

9    1218 (9th Cir. 2009)) (warrant application's two false statements about the plaintiff were not

10   material because an independent, reliable source of information was sufficient to establish probable

11   cause).

12          Here, the Superior Court judge had access to the body camera footage and was not required

13   to rely solely on Defendant Koltuniak's characterizations or descriptions of the encounter leading

14   to Mr. Moore's shooting.  [Dkt. 34-1].  Plaintiff Cha makes no allegation that the judge failed to

15   exercise independent judgment.  At oral argument, Plaintiff Cha argued that the fact that the warrant

16   issued the same day as the application somehow implies the Superior Court judge failed to review

17   the submission diligently.  However, to be clear: this theory is not supported by ***any*** pleading.

18   Additionally, the mere fact that a judge issues an arrest warrant within the same day as the

19   application does not plausibly suggest a failure to exercise independent judgment and review of the

20   evidence.  It is not unusual, in this Court's experience and in case law, for arrest warrants to be

21   issued within the same day on which they are applied.  Accordingly, even assuming the Amended

22   Complaint properly alleges that the affidavit contained mischaracterizations or omissions, the

23   Amended Complaint's exhibit demonstrates that the Superior Court judge had everything before

24   him to evaluate those alleged misdescriptions and fill in the alleged omissions.  Therefore, the fact

25   that Plaintiff Cha now identifies what he alleges are inaccuracies or omissions in the affidavit is

26   legally immaterial and do not undermine the Superior Court judge's independently reached probable

27   cause determination.  Plaintiff Cha does not allege any dereliction of duty by the Superior Court

28   judge, nor does he claim the affidavit relied on wholly fabricated or counterfeit evidence.  His

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    pleading amounts to a hindsight attempt to re-litigate the arrest warrant application as if the judge's

2    determination carried no weight.

3        Plaintiff Cha makes no reference or claim that the judge did not exercise his independent

4    judgment in the course of his official duties.  At oral argument, Plaintiff Cha's counsel resorted to

5    linguistic gymnastics to argue that the Superior Court judge was "tricked" into approving the arrest

6    warrant because the alleged misdescriptions of the encounter between Plaintiff Cha and Mr. Moore

7    amounted to "fabrications."  At oral argument, Plaintiff Cha's counsel admitted that he uses the term

8    "fabricated" to mean that the affidavit was "drafted" or "written" by Defendant Koltuniak, and that

9    Plaintiff contends that this affidavit was thus (in Plaintiff's view) a misleading "fabrication."  When

10   pressed, Plaintiff's counsel admitted that Plaintiff is not arguing that any forged or counterfeit

11   evidence was presented to the Superior Court judge, and thus it is clear that Plaintiff's use of the

12   term "fabricated evidence" is a mere label and is not referring to fraudulently acquired or submitted

13   material that is false and lacks any factual basis at all.  In other words, Plaintiff's arguments here

14   amount to a conclusory assertion that the affidavit somehow misled the Superior Court judge.  Thus,

15   Plaintiff Cha's arguments lack sufficient substantiation, are purely speculative, and are the type of

16   conclusory pleading that the law does not require the Court to credit.  Again, Plaintiff Cha's

17   reference to the Superior Court judge issuing the arrest warrant the same day as the application does

18   not provide a sufficiently pleaded basis to conclude that the judge failed to perform his legal duty.

19   [Dkt. 48 at 14].  Accordingly, Plaintiff Cha's challenge to the face of the affidavit's description of

20   the encounter does not undermine the validity of the probable cause determination.  *Galen*, 477 F.3d

21   at 663 ("a judicial officer's exercise of independent judgment in the course of his official duties is

22   a superseding cause that breaks the chain of causation") (appeal of summary judgment); *Erazo*

23   *Machado v. Boyd*, No. 4:24-CV-03525-KAW, 2025 WL 1359064, at *7 (N.D. Cal. May 9, 2025)

24   (same) (motion to dismiss).

25       Second, Plaintiff Cha argues that the investigator's affidavit did not explicitly refer to

26   Plaintiff Cha's assertions as to his right to self-defense.  Plaintiff Cha argues that Defendant

27   Koltuniak failed to include a description of a charge against Mr. Moore for felony battery with

28   serious bodily injury against Officer Patino, and that the court did not dismiss the charge following

17

the Section 995 motion. [Dkt. 48 at 14]. Plaintiff Cha further contends that the affidavit omitted the fact that, in August 2017, Mr. Moore was charged with (and later pleaded guilty to) assault and threat-based felony crimes in another matter. *Id.* Finally, Plaintiff Cha complains that the affidavit did not refer to other evidence or testimony supporting his claim of self-defense. *Id.*

Again, a straightforward review of the face of the affidavit undermines Plaintiff's arguments. The affidavit refers to the fact that Plaintiff Cha had the right to defend himself. [Dkt. 34-1 at 16]. Additionally, as a matter of law, an omission of the right of self-defense in an arrest warrant does not affect the probable cause analysis. The Supreme Court has made clear that probable cause does not require officers, or by extension a magistrate judge evaluating a warrant application, to eliminate all possible innocent explanations for the suspect's conduct. *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."); *Pallas v. Accornero*, No. 3:19-cv-01171-LB, 2019 WL 2359215, at *4–5 (N.D. Cal. June 3, 2019) (rejecting argument that the assertion of self-defense negated probable cause, and collecting authorities from within the Ninth Circuit) (motion to dismiss). "The Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Accordingly, the absence of an explicit reference to Plaintiff Cha's claimed right of self-defense in the affidavit does not undermine the validity of the probable cause determination.

Third, Plaintiff Cha argues that the investigator's affidavit did not sufficiently explain Mr. Moore's history of violent conduct and succession of restraining orders. Plaintiff Cha contends that Defendant Koltuniak misrepresented and omitted key aspects of prior court rulings in the criminal case against Mr. Moore. [Dkt. 48 at 13–14]. Specifically, Plaintiff Cha argues that Defendant Koltuniak incorrectly stated that the Appellate Court considered whether Plaintiff Cha and his partner Officer Patino were trespassing and whether Mr. Moore had the right to use force against them. *Id.* Plaintiff Cha argues that the Appellate Court did not address whether Plaintiff Cha's shooting of Mr. Moore was lawful or whether Plaintiff Cha acted in self-defense. *Id.* Plaintiff Cha also asserts that Defendant Koltuniak omitted the Appellate Court's statement that Mr. Moore could

still be held criminally liable despite alleged constitutional violations by Plaintiff Cha and Officer Patino. *Id.* In addition, Plaintiff Cha argues that Defendant Koltuniak falsely claimed the U.S. District Court affirmed the Appellate Court's ruling. *Id.* According to Plaintiff Cha, the District Court was addressing only the sufficiency of Mr. Moore's civil claims and expressly noted that the reasonableness of the officers' use of force was a factual issue for the jury, not an issue resolved as a matter of law. *Id.*

However, the face of the affidavit once again undermines Plaintiff's arguments. The affidavit submitted to the Superior Court judge contained direct citations to the specific cases whose rulings Plaintiff Cha now argues should have been discussed in more detail. [Dkt. 34-1]. Judges and magistrates are specifically trained to conduct vigorous inquiries into the accuracy of affidavits. *See Franks*, 438 U.S. at 166 (noting judges are "equipped to conduct a fairly vigorous inquiry into the accuracy" of affidavits); *Galen*, 477 F.3d at 663. The fact that the investigator's affidavit cited to the rulings in prior cases involving Mr. Moore and Plaintiff undermines Plaintiff Cha's assertion that the alleged misdescription of those rulings amounts to constitutional violations. The Superior Court judge had the citations to those cases and was fully equipped to review and evaluate those rulings himself. As with the arguments about other alleged omissions in the affidavit, here the Amended Complaint provides no pleading sufficient to conclude (or even infer) that the Superior Court judge failed to exercise independent judgment and failed to undertake diligent review of the warrant application pursuant to his legal duties.

Finally, Plaintiff Cha asserts a catchall argument that the affidavit contained misleading omissions of material facts, including Mr. Moore's violent actions during the encounter, his aggression toward the officers, his prior violent conduct that led to a temporary restraining order in another matter (and other prior court rulings), and other contributing causes of his death. [Dkt. 48 at 14]. Again, because the Superior Court judge had access to the body camera footage, he did not need to rely solely on Defendant Koltuniak's characterizations. [Dkt. 34-1]. Plaintiff Cha makes no allegation that the judge failed to exercise independent judgment, and the fact that the warrant was issued the same day does not plausibly suggest otherwise. Accordingly, any alleged mischaracterizations or omissions concerning prior rulings are immaterial and do not undermine the

probable cause determination.

Accordingly, the Court finds that the face of the affidavit (which is attached to and forms part of the Amended Complaint) defeats Plaintiff Cha's arguments regarding lack of probable cause to arrest him.  At oral argument, Plaintiff Cha conceded that, if the Court were to find that Plaintiff failed to sufficiently plead a lack of probable cause, the malicious prosecution causes of action would not survive.  For all these reasons, the Court **GRANTS** Defendants' Motion to Dismiss all the causes of action that assert malicious prosecution.  This ruling applies to the entire First Claim for Relief (including all four "counts" thereunder), the entire Second Claim for Relief (including all three "counts" thereunder), the Third Claim for Relief, the Fifth Claim for Relief (including both "counts" thereunder) asserting supervisor liability based on the alleged malicious prosecution (and malicious investigation), the Sixth Claim for Relief (and both "counts" thereunder) which asserts a conspiracy claim based on the alleged malicious prosecution/investigation, and the Seventh Claim for Relief which asserts negligence based in part on the alleged malicious prosecution/investigation.

Because of the failure of the Amended Complaint to adequately plead lack of probable cause, the Court addresses in short the issues of immunity raised in the briefs.  Because the Court finds that the Amended Complaint fails to properly allege lack of probable cause for the arrest warrant, the Court does not reach the issue of absolute or qualified immunity.

## B.    *Monell* liability

The Amended Complaint asserts a cause of action labeled as the "Fourth Claim for Relief" under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  As noted, the Amended Complaint also adopts an overlapping and repetitive pleading style which asserts other causes of action implicating allegedly unconstitutional governmental or administrative policies, such as the First Claim for Relief (styled in part as "Administrative Policies Causing Deprivation of Rights" and asserting four "counts" thereunder, each addressing a different set of policies or procedures) and "Count 1" under the "Fifth Claim for Relief" against Defendant Boudin (such as ¶ 284 of the Amended Complaint alleging "defendant Boudin promulgated administrative policies that permitted and encouraged constitutional deprivations").  Further, the City of San Francisco and the SFDAO are named as Defendants under all seven "Claims for Relief" in the Amended

1    Complaint, even though only the Fourth Claim for Relief expressly asserts a *Monell* cause of action.

2        Under *Monell* and its progeny, a plaintiff must allege and prove that a government's action

3    in relation to municipal policy "caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011)

4    (quoting *Monell*, 436 U.S. at 691 (1978)). Under *Monell*, there are in general three possible theories

5    of liability for a claim asserted against a government entity: policy, custom, and practice. *Mitchell*

6    *v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1028 (N.D. Cal. 2022).

7        A "government's policy or custom . . . [may be] made by its lawmakers or by those whose

8    edicts or acts may fairly be said to represent official policy[.]'" *Id.* at 1027 (citations omitted) (citing

9    *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) ("a jury could find a policy or custom

10   of using excessive force from the police chief's failure to discipline officers for such conduct")).

11   Under *Monell*, a claim against a government entity may be based on a policy, custom, or practice

12   by pleading governmental actions and practices such as a failure to train employees in a manner that

13   amounts to deliberate indifference to a constitutional right, or a failure to investigate and discipline

14   employees in the face of widespread constitutional violations. *Rodriguez v. Cnty. of Los Angeles*,

15   891 F.3d 776, 802–03  (9th Cir. 2018); *Chaidez v. Alameda Cnty.*, No. 21-CV-04240-RS, 2023 WL

16   6466385, at *7 (N.D. Cal. Oct. 3, 2023) (plaintiff demonstrated "at least nine instances resulting in

17   lawsuits (including his own) where pretrial detainees at Santa Rita Jail have not received adequate

18   medical care" and has "plausibly plead[] that Alameda County has failed to train personnel at Santa

19   Rita Jail to provide detainees with necessary medical treatment, and that this failure to train

20   constitutes deliberate indifference" under *Monell*). Under *Monell*, "[t]he plaintiff bears the burden

21   of showing "the injury would have been avoided" had proper policies been implemented. *Chaidez*,

22   2023 WL 6466385, at *6 (N.D. Cal. Oct. 3, 2023) (quoting *Gibson v. County of Washoe*, 290 F.3d

23   1175, 1196 (9th Cir. 2002)).

24       A government entity can only be held liable based on execution of a government policy or

25   custom under *Monell*. *See Monell*, 436 U.S. at 692. The government entity cannot be held liable

26   under a *respondeat superior* theory. *See id.* (concluding that in enacting Section 1983, Congress

27   "did not intend municipalities to be held liable unless action pursuant to official municipal policy of

28   some nature caused a constitutional tort"). Instead, plaintiffs must plead and ultimately prove that

United States District Court
Northern District of California

1    "the local government had a deliberate policy, custom, or practice that was the moving force behind

2    the constitutional violation [they] suffered." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631,

3    636 (9th Cir. 2012) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)). "In the past,

4    our cases have not required parties to provide much detail at the pleading stage regarding such a

5    policy or custom." *Id.* "In this circuit, a claim of municipal liability under § 1983 is sufficient to

6    withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that

7    the individual officers' conduct conformed to official policy, custom, or practice." *Id.* (quoting

8    *Whitaker*, 486 F.3d at 581).

9        With regard to the SFDAO (which is named as a co-defendant in the *Monell* cause of action

10   specifically), the Amended Complaint alleges that the SFDAO "implemented" alleged "policies,

11   procedures, customs, and practices" which "related to the improper prosecution of alleged police

12   officer misconduct. Under the SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE policy,

13   defendants sought the frequent and improper prosecution of allegations of police officer misconduct,

14   irrespective of the actual case facts and the existence or nonexistence of probable cause.

15   Defendants' policy was intended to put pressure on the SF Police Department and the City, to coerce

16   them into changing SFPD policies related to police officers' use of force. The police was also

17   intended to improve the standing of defendants BOUDIN and the SAN FRANCISCO DISTRICT

18   ATTORNEY'S OFFICE with certain political interests and communities." [Dkt. 34 at ¶ 264].

19       "States and state officials acting in their official capacities cannot be sued for damages under

20   Section 1983." *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013) (citing *Will v.*

21   *Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Defendants argue that a threshold question is

22   whether the SFDAO acted as an official of the City and County of San Francisco or as an official of

23   the State of California when deciding to prosecute Plaintiff Cha. [Dkt. 42 at 23–24]. "To hold a

24   local government liable for an official's conduct, a plaintiff must first establish that the official (1)

25   had final policymaking authority 'concerning the action alleged to have caused the particular

26   constitutional or statutory violation at issue' and (2) was the policymaker for the local governing

27   body for the purposes of the particular act." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th

28   Cir. 2000 (quoting *McMillian v. Monroe Cnty. Alabama*, 520 U.S. 781, 785 (1997)). In *Weiner*, the

United States District Court
Northern District of California

1    Ninth Circuit reached "the conclusion that under California law a county district attorney acts as a

2    state official when deciding whether to prosecute an individual" and thus "conclude[d] that a

3    California district attorney is a state officer when deciding whether to prosecute an individual."

4    *Weiner*, 210 F.3d at 1030–31 (affirming summary judgment granted in favor of San Diego district

5    attorney in Section 1983 case). Here, as quoted above, the Amended Complaint repeatedly alleges

6    that the SFDAO was responsible for the alleged unconstitutional policy at issue, which resulted in

7    the criminal investigation into and prosecution of Plaintiff Cha. *See, e.g.*, Dkt. 34 at ¶ 264. To the

8    extent the Amended Complaint relies on the underlying allegations as to malicious prosecution and

9    investigation, the *Monell* claims fail as a matter of law and are **DISMISSED** because the SFDAO

10   is a state actor (not a municipal actor) with regard to prosecutorial functions under *Weiner*.

11        With regard to the City and County of San Francisco, Plaintiff Cha's *Monell* claims rely on

12   three theories: (1) *respondeat superior*; (2) the harms allegedly flowing from Plaintiff Cha's arrest

13   warrant; and (3) a generalized conspiracy to implement a pattern or practice to prosecute police

14   officers for political motives. [Dkt. 34]. First, the theory premised on *respondeat superior* is

15   **DISMISSED** for failure to state a claim. *Id.* at 30 (arguing "Supervisory Liability" as to the City

16   of San Francisco and the SFDAO). The law does not permit holding a municipality liable under a

17   *respondeat superior* theory. *See Monell*, 436 U.S. at 692.

18        Second, the liability theory based on the arrest warrant for Plaintiff Cha is **DISMISSED**.

19   The SFDAO is a state actor with regard to that prosecutorial function, for the reasons discussed

20   above. Further, there must be some identified constitutional violation to support a *Monell* claim,

21   and, as discussed above, the Amended Complaint fails to adequately plead a constitutional violation

22   with regard to the process for obtaining Plaintiff Cha's arrest warrant.

23        Finally, Plaintiff Cha's conspiracy theory alleges that there was a pattern or custom of

24   Defendants seeking "frequent and improper prosecution of allegations of police officer misconduct,

25   irrespective of the actual case facts and the existence or nonexistence of probable cause." [Dkt. 34

26   at ¶ 264]. "Defendants' policy was intended to put pressure on the SF Police Department and the

27   City, to coerce them into changing SFPD policies related to police officers' use of force." *Id.*

28   Plaintiff Cha substantiates the claim with his own experience of being prosecuted. *See id.* However,

United States District Court
Northern District of California

for the same reasons discussed above, this theory of liability under *Monell* fails. The alleged practice or policy centers specifically on the SFDAO's alleged policy of prosecuting police officers, and with regard to the decision on whether or not to prosecute, the SFDAO is a state actor. Thus, there is no basis to assert that the SFDAO acts as the primary policymaker for the City and County of San Francisco when developing and implementing the complained-of policy or practice under *Weiner*.

The Amended Complaint in parts of the *Monell* cause of action attempts to sidestep *Weiner* by essentially repeating and expressly incorporating the allegations of the First Claim for Relief alleging that the SFDAO also implemented certain "administrative policies" that led to constitutional harm. [Dkt. 34 at ¶¶ 266–68]. In *Goldstein*, the Ninth Circuit held that a California district attorney does not act as a state official where "it is clear that the district attorney acts on behalf of the state when conducting prosecutions, but that the local administrative policies challenged by [plaintiff] Goldstein are distinct from the prosecutorial act." *Goldstein*, 715 F.3d at 759. In *Goldstein*, the plaintiff challenged an administrative policy "focuse[d] on the failure to create an index that includes information about benefits provided to jailhouse informants and other previous knowledge about the informants' reliability, and the failure to train prosecutors to use that index." *Id.* at 762. The Ninth Circuit held that "[t]he conduct at issue here does not involve prosecutorial strategy, but rather administrative oversight of systems used to help prosecutors comply with their constitutional duties." *Id.*

The flaw in Plaintiff's reliance on *Goldstein* is that the Amended Complaint ties each of the alleged "administrative policies" to the alleged malicious prosecution of Plaintiff Cha. The first alleged "administrative policy" is that the SFDA's office failed to "establish proper administrative policies or procedures . . . to decide whether to re-open officer-involved shooting (OIS) cases that had been declined, or recommended for declination, by the SFDA's office." [Dkt. 34 at ¶ 266(A)]. Plaintiff further alleges that "[w]hen cases have been deemed to be declined because of lack of probable cause, the SFDA ***should not proceed with a prosecution*** unless [it had] received some new evidence[.]" *Id.* (emphasis added). The Amended Complaint alleges that the harm suffered here is that "defendants re-opened the CHA matter for ***further investigation and prosecution***, despite no new evidence justifying ***any investigation or prosecution***." *Id.* (emphasis added). Thus,

by its own terms, the Amended Complaint here challenges a policy directed at prosecution strategy and thus *Goldstein* is inapplicable.  *Cf. Goldstein*, 715 F.3d at 760 ("Because we do not address the decision to prosecute an individual, the analysis in *Weiner* does not resolve the question before us today.").  Rather, the analysis in *Weiner* clearly applies to the challenged policy, rendering this challenged policy that of a state official, not a municipal or local official.  *Weiner*, 210 F.3d at 1030 ("All relevant California cases, including *Pitts,* have held that district attorneys are state officers for the purpose of investigating and proceeding with criminal prosecutions.").

The second "administrative policy" asserted by the Amended Complaint is the SFDA's "fail[ure] to institute any procedures at SFDA to determine the potential bias or prejudice of prospective employees."  [Dkt. 34 at ¶ 266(B)].  But again, the Amended Complaint makes clear that the challenged "administrative policy" is not the general policy of avoiding bias or prejudice, but is specifically tied to the decision on whether or not to investigate and prosecute certain cases.  Immediately after broadly framing the challenged policy as a failure to determine potential bias or prejudice in staffing and hiring decisions, the Amended Complaint expressly avers that "the SFDA hired personnel . . . who were biased and prejudiced against police officers, and ***had a tendency and/or willingness to prosecute officers*** whether or not probable cause existed. Further, defendants BOUDIN and LATEEF GRAY fired or reassigned certain personnel at the SFDA office who were likely to resist ***the prosecution of OIS cases*** without probable cause."  *Id.* (emphasis added).  That is, the alleged constitutional harm as alleged here is the prosecution of police officers by personnel who allegedly had a tendency or willingness to do so, and the firing or reassigning of personnel who would not prosecute such cases.  And, as with the alleged "administrative policy" discussed above, the Amended Complaint expressly states that the harm here to Plaintiff Cha is the decision, and the carrying out of that decision, to prosecute Plaintiff Cha:  "Particularly with the CHA matter, whenever an attorney or investigator found that there was no probable cause ***to prosecute*** CHA, BOUDIN and/or GRAY would fire that individual or ***take them off the CHA case***."  *Id.* (emphasis added).  Again, by its express terms, the Amended Complaint here challenges a policy directed at prosecution strategy, rendering this theory of liability flawed under *Weiner* and placing it outside the rubric of *Goldstein*.  *Cf. Goldstein*, 715 F.3d at 760 ("Because we do not address the decision to

1    prosecute an individual, the analysis in *Weiner* does not resolve the question before us today.");

2    *Weiner*, 210 F.3d at 1030 ("All relevant California cases, including *Pitts,* have held that district

3    attorneys are state officers for the purpose of investigating and proceeding with criminal

4    prosecutions.").

5        The third and fourth "administrative policies" challenged here both relate to policies

6    regarding alleged conflicts of interest by those prosecuting cases.  The challenged policies include

7    the alleged failure to "establish effective protocols and procedures to determine whether prospective

8    SFDA employees had any ethical conflicts **with current cases**, such as prior or current

9    representation of an opposing party."  [Dkt. 34 at ¶ 266(C) (emphasis added)].  And similarly, the

10   Amended Complaint alleges that a related challenged policy is the failure to "establish proper

11   procedures to ensure that all SFDA employees with potential conflicts of interest **with certain cases**

12   were prevented from having contact with or influence on **the investigation or prosecution of the**

13   **conflicted cases** (an 'ethical wall')."  *Id.* at ¶ 266(D) (emphasis added).   As highlighted, neither of

14   these alleged policies is a general policy failure to avoid conflicts of interest or a general failure to

15   implement conflicts checks.  Rather, the challenged policies are specific to "the investigation or

16   prosecution" of "current cases" which are currently being prosecuted.  As with the other policies

17   challenged, the Amended Complaint thus directly intertwines the prosecution of Plaintiff Cha into

18   these challenged policy failures: "[t]he lack of proper procedures at the SFDA office to maintain an

19   ethical wall around conflicted attorneys enabled GRAY, who was biased against CHA and other

20   officers in OIS cases, to exert a biased influence on **the investigation and prosecution of CHA**."

21   [Dkt. 34 at ¶ 266(D) (emphasis added); *see also id.* at ¶ 266(C) ("Due to the lack of proper conflicts

22   checks, . . . GRAY then managed a unit that was **investigating** the Sean Moore shooting, despite

23   GRAY's involvement with the concurrent Sean Moore civil case regarding the same incident. The

24   hiring of GRAY created a direct conflict of interest **with the CHA/Moore matter**.") (emphasis

25   added)].  Thus, the Amended Complaint again challenges SFDAO policies directed at prosecution

26   and investigation management, rendering this theory of liability under Section 1983 legally deficient

27   under *Weiner*.

28        The final "administrative policy" challenged by the *Monell* claim is the alleged failure to

United States District Court
Northern District of California

26

1  "establish proper policies and procedures for ensuring the independence of SFDA investigators who

2  were tasked with drafting declarations for search warrants and/or arrest warrants." [Dkt. 34 at

3  ¶ 266(E)]. The Amended Complaint does not attempt to plead facts that show how or why policies

4  relating to obtaining search warrants and arrest warrants fall outside the SFDAO's prosecutorial

5  strategy to investigate and pursue prosecutions under *Weiner*. As with the challenged policies

6  above, the Amended Complaint instead links the policy failure to Plaintiff Cha's arrest, which

7  occurred contemporaneously with the filing of the felony complaint. "[D]efendants did not establish

8  any policies or procedures to prevent attorneys at the SFDA office from applying inappropriate

9  coercion, threats, or other pressure on SFDA investigators who were tasked with drafting warrant

10 declarations[.]" *Id.* "The modified text of the search warrant application, created through the

11 improper influence of defendants DANA DRUSINSKY and STEPHANIE LACAMBRA, was later

12 repurposed to become the text of the arrest warrant application submitted on October 29, 2021,

13 which led to plaintiff CHA's arrest." *Id.* The Amended Complaint thus again challenges an alleged

14 SFDAO "administrative policy" which allegedly led directly to the alleged malicious prosecution

15 and investigation of Plaintiff Cha, rendering this theory of liability under Section 1983 legally

16 deficient under *Weiner*.

17       In addition to specifying these challenged policies, the Amended Complaint confusingly

18 refers to this Fourth Claim for Relief as if it were the "Second Cause of Action" and pleads

19 conclusorily that unidentified customs, practices, and policies of San Francisco and the SFDAO

20 amount to deliberate indifference to the rights of police officers in officer-involved shooting cases

21 such as Plaintiff Cha, who was prosecuted "even though" there was evidence to support a self-

22 defense affirmative defense to the manslaughter charges brought against him. [Dkt. 34 at ¶¶ 267,

23 273]. Such confusing and conclusory pleading fails to adequately plead a *Monell* cause of action,

24 because no policy or procedure is identified. Further, the broad allegation again ties the alleged

25 customs, practices, and policies to actual prosecutions and thus fails to state a *Monell* claim under

26 *Weiner* because the actions here are expressly prosecutorial and are thus the actions of a state

27 official, not a local official.

28       Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the *Monell* cause of action

(styled as the "Fourth Claim for Relief" in the Amended Complaint). As noted, because the Amended Complaint adopts a confusing, overlapping pleading style, to the extent any other causes of action name as defendants the City and County of San Francisco and the SFDAO, those other causes of action are also DISMISSED for failure to state a claim and for failure to comply with Rule 8. None of the other causes of action (whether labeled as "Claims for Relief" or "Counts") even attempt to plead how or why municipal liability attaches, where the specific pleadings are directed to specific individuals and, in most cases, seek to impose individual liability. In particular, this dismissal applies to the extent the Amended Complaint asserts other causes of action implicating allegedly unconstitutional governmental or administrative policies. These include the First Claim for Relief (styled in part as "Administrative Policies Causing Deprivation of Rights" and asserting four "counts" addressing different policies or procedures) and "Count 1" under the "Fifth Claim for Relief" against Defendant Boudin (e.g., ¶ 284 of the Amended Complaint, alleging that "defendant Boudin promulgated administrative policies that permitted and encouraged constitutional deprivations").

### C.   Claim for Relief No. 7: Negligent Hiring, Supervision, and Training

In the Seventh Claim for Relief, Plaintiff Cha asserts a California state law claim for negligence. The Amended Complaint alleges negligent hiring, supervision, and training against Defendants City and County of San Francisco, SFDA, Mr. Boudin, and Mr. Gray. Defendants seek dismissal for (1) lack of supplemental jurisdiction, (2) failure to state a claim, and (3) statutory immunity.

A court may decline to exercise supplemental jurisdiction over a state law claim if: "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). A federal court may or may not choose to exercise supplemental jurisdiction over state-law claims. *Carlsbad Tech. Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009). A district court has discretion to decide whether to exercise supplemental jurisdiction after dismissing all other claims over which the court had original

United States District Court
Northern District of California

jurisdiction. *Id.*; *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction . . . over pendent state-law claims.").  A district court need not provide explanation of exceptional circumstances or other circumstances for dismissal of state law claims under Sections 1367(c)(1)–(3), unlike a dismissal for exceptional circumstances under Section 1367(c)(4) which requires an articulation for why the circumstances of the case are exceptional.  *San Pedro Hotel Co. v. City of Los Angeles,* 159 F.3d 470, 478–79 (9th Cir. 1998).

As discussed in the preceding sections, the Court has concluded that all the other causes of action must be dismissed.  Accordingly, pursuant to Section 1367(c)(3), the Court exercises its discretion and will not exercise supplemental jurisdiction over the sole remaining state law claim.

## III.    LEAVE TO AMEND

The Parties did not extensively brief the issue of whether dismissal should be with prejudice or whether leave to amend should be granted.  Nor did the Parties present detailed arguments on this issue at the hearing on this motion.

The Court has noted serious legal defects in the causes of action, discussed above.  Further, Plaintiff has already had one chance to amend his Complaint in this case, after previously reviewing and receiving Defendants' arguments and the Court's views at oral argument on the original motion to dismiss the original Complaint.  The Court notes that instead of curing the substantial legal defects discussed at the first hearing on the motion to dismiss the original Complaint, Plaintiff appears to have chosen a deliberately confusing and overly lengthy style of pleading by presenting a 173-page Amended Complaint that repeats and overlaps the various causes of action (and confusing styles some of the causes of action as "Claims for Relief" and others as "Counts") in violation of the mandates of Fed. R. Civ. P. 8 which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

Several causes of action, as discussed above, are plainly (and in some cases admittedly) incapable of being cured by amendment. As to these, leave to amend is not appropriate.  First, based on Plaintiff's admissions as noted above, the Court **GRANTS** the Motion to Dismiss all causes of action which assert a theory of liability based solely on alleged "malicious" or "improper"

investigation alone, including "Count 1" and "Count 4" of the "First Claim for Relief," "Count 1" and "Count 3" of the "Second Claim for Relief," those portions of the "Fourth Claim for Relief" asserting "improper" or "malicious investigation," those portions of the "Fifth Claim for Relief" asserting supervisor liability with regard to an "improper" and "malicious investigation," and those portions of the "Seventh Claim for Relief" also asserting "improper" or "malicious investigation." These causes of action are **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED** as to these causes of action.

For similar reasons, based on Plaintiff's admissions, the Court **GRANTS** the Motion to Dismiss all causes of action which assert a theory of liability based solely on the empaneling of the investigative Grand Jury and the conduct of proceedings before the Grand Jury here, including "Count 2" of the "Second Claim for Relief," and those portions of the "Fifth Claim for Relief" asserting supervisor liability with regard to allegedly "biased presentation" to the grand jury. These causes of action are **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED** as to these causes of action.

Further, for the reasons discussed herein, the Court **GRANTS** the Motion to Dismiss all causes of action which assert a theory of liability for conspiracy to deprive Plaintiff of his civil rights pursuant to 18 U.S.C. Section 1988, including the Sixth Claim for Relief (including the first and second "counts" thereunder), as well as those portions of "Count 2" under the "First Claim for Relief" alleging a "conspiracy," those portions of "Count 3" under the "Second Claim for Relief" alleging a "conspiracy," and the portions of the "Fifth Claim for Relief" which uses the term "conspiracy to violate civil rights." These causes of action are **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED** as to any conspiracy causes of action asserted under Section 1988.

However, the Court **GRANTS** the Motion to Dismiss the causes of action asserting liability for conspiracy to deprive Plaintiff of his civil rights under Section 1983. This cause of action is **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED** as to this causes of action.

Further, for the reasons discussed herein, the Court **GRANTS** the Motion to Dismiss the *Monell* cause of action (styled as the "Fourth Claim for Relief") against the City and County of San Francisco and against the SFDAO. This cause of action is **DISMISSED WITHOUT PREJUDICE**

1    and leave to amend is **GRANTED**.

2        The Court **GRANTS** the Motion to Dismiss as to all other causes of action naming the City

3    and County of San Francisco and the SFDAO as Defendants.    These causes of action are

4    **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED** as to any causes of action

5    asserted against the City and County of San Francisco and the SFDAO, other than the *Monell* cause

6    of action.

7        To the extent not specifically discussed above, the Court **GRANTS-IN-PART** leave to

8    amend any other surviving causes of action which are dismissed without prejudice.  In the Ninth

9    Circuit leave to amend should be "freely given," and the policy is to be applied with "extreme

10    liberality."  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  Here,

11    Defendants have not established that further amendment would be futile.

12        While the Court reserves for now its concerns about Plaintiff's tactics in the previous

13    amendment, the Court will **GRANT-IN-PART** Plaintiff's leave to amend because of Defendants'

14    failure to persuade on this issue and out of regard for Rule 15(a)(2).  Plaintiff is admonished to

15    conform any further amendment to the spirit and letter of Rule 8, and to limit amendment to

16    appropriate attempts to cure the defects noted herein which can be cured by amendment.

17    **IV.    MOTION TO DISMISS ORIGINAL COMPLAINT**

18        As noted in the procedural history above, on January 31, 2025, the Defendants filed a Motion

19    to Dismiss [Dkt. 15] the original Complaint [Dkt. 1].  After receiving all briefing from the Parties,

20    on April 8, 2025, the Court held a lengthy hearing regarding the Motion to Dismiss.  [Dkt. 26].  At

21    the hearing, in response to the arguments and comments from the Court, Plaintiff Cha voluntarily

22    agreed to file an Amended Complaint without the need for the Court to issue a lengthy ruling on

23    that motion to dismiss.  *Id.*  Plaintiff did in fact file his Amended Complaint, which is the subject of

24    the instant motion to dismiss.   That Amended Complaint superseded the original Complaint.

25    Accordingly, the Defendants' original Motion to Dismiss is **DENIED AS MOOT**.  [Dkt. 15].

26    **V.    REQUESTS FOR JUDICIAL NOTICE**

27        The Parties have filed several additional requests for judicial notice in connection with this

28    motion to dismiss.  Dkts. 16 (Defendants' original request for judicial notice), 18 (Plaintiff Cha's

United States District Court
Northern District of California

31

1  request for judicial notice), 43 (Defendants' second request for judicial notice), and 50 (Plaintiff

2  Cha's renewed request for judicial notice).

3          As a general matter, a district court may not consider material beyond the pleadings in ruling

4  on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing

5  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). However, two exceptions exist to the

6  requirement that consideration of extrinsic evidence necessarily converts a Rule 12(b)(6) motion to

7  a summary judgement motion by operation of Rule 12(d). First, "a court may consider 'material

8  which is properly submitted as part of the complaint' on a motion to dismiss without converting the

9  motion to dismiss into a motion for summary judgement." *Lee*, 12 F.3d at 687 (citing *Branch*, 14

10 F.3d at 453). Documents not physically attached to the complaint may be considered if the

11 "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino*

12 *v. FHP, Inc.* 146 F.3d 699, 705–06 (9th Cir. 1998). Second, a court may take judicial notice of

13 "matters of public record" under Federal Rule of Evidence 201. *Mack v. South Bay Beer Distrib.*,

14 798 F.3d 1279, 1282 (9th Cir. 1986). Thus, taking judicial notice of "matters of public record" does

15 not convert a motion to dismiss into a motion for summary judgement. *MGIC Indem. Corp. v.*

16 *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, a court may not take judicial notice of a

17 fact that is "subject to reasonable dispute." Fed. R. Evid 201(b).

18         When a court takes judicial notice on another court's opinion, it may do so "not for the truth

19 of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable

20 dispute over its authenticity." *Lee*, 12 F.3d at 690 (citing *Southern Cross Overseas Agencies, Inc.*

21 *v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3rd Cir. 1999)). For example, a court

22 may take judicial notice of the *fact* of a hearing and the *fact* that a Waiver of Extradition was signed

23 by a plaintiff. *Id.* at 689–90. However, a court may not take notice of *disputed* facts stated *in* public

24 records. *Id.* at 690.

25         In their request for judicial notice, Defendants submitted public court records that are not

26 subject to reasonable dispute. [Dkt. 16]. Plaintiff's opposition did not challenge the authenticity of

27 these records. [Dkt. 17]. Further, these records are referenced extensively in Plaintiff's Amended

28 Complaint. [Dkt. 34]. These public court records are also discussed in the Parties' briefing on the

United States District Court
Northern District of California

1  instant motion to dismiss, without argument or challenge as to authenticity.  Accordingly, the Court

2  **GRANTS** Defendant's original request for judicial notice.  [Dkt. 16].  The Court takes judicial

3  notice of the existence of these public court records but, pursuant to legal principles discussed above,

4  the Court makes no determination as to the *truth* of the assertions contained therein.

5       Defendants' second request for judicial notice seeks judicial notice of the "Felony Complaint

6  and Arrest Warrant with Exhibits" and "Redacted Transcript of Grand Jury Testimony."  [Dkt. 43].

7  Here, the Amended Complaint expressly references these records and they are integral to some of

8  the pleadings in the Amended Complaint.  Indeed, the Felony Complaint and Arrest Warrant is itself

9  attached as Exhibit 2 to the Amended Complaint.  [Dkt. 34-2].  Plaintiff Cha does not contest the

10  authenticity or propriety of judicial notice with regard to these records. Further, these documents

11  are public records, the accuracy of which cannot reasonably be disputed.  *See* Fed. R. Evid. 201(b).

12  Courts routinely take notice of such records at the motion to dismiss stage, and doing so does not

13  convert the motion into a summary judgment motion as discussed above.  Accordingly, the Court

14  **GRANTS** Defendants' second request for judicial notice.  [Dkt. 43].

15       In portions of his requests for judicial notice, Plaintiff Cha requests that the Court take

16  judicial notice of the court records from the criminal case in California Superior Court against

17  Plaintiff Cha, *People v. Cha*, S.F. Superior Court No. CRI-21010958 (filed Nov. 4, 2021).  [Dkts.

18  18 and 50].  Defendants do not challenge the authenticity of these public records.  Accordingly, the

19  Court **GRANTS-IN-PART** Plaintiff Cha's request for judicial notice as to those documents which

20  are, on their face, public records constituting court documents from his criminal case referenced

21  above.  [Dkts. 18 and 50].  Again, while the Court takes judicial notice of the existence of these

22  public court records, pursuant to legal principles discussed above, the Court makes no determination

23  as to the *truth* of the assertions contained therein.

24       Plaintiff Cha's requests for judicial notice seek judicial notice of documents that are not

25  clearly and facially public records or court documents.  On their face, these documents' authenticity

26  is subject to dispute.  Therefore, as to those documents, the Court **DENIES** Plaintiff Cha's requests

27  for judicial notice.  [Dkts. 18 and 50].

28  //

United States District Court
Northern District of California

33

1

**CONCLUSION**

2    Accordingly, for all the reasons discussed herein, the Court **GRANTS** the Defendants'

3 Motion to Dismiss.  Based on Plaintiff's admissions as noted above, the Court **GRANTS** the Motion

4 to Dismiss all causes of action which assert a theory of liability based solely on alleged "malicious"

5 or "improper" investigation alone, including "Count 1" and "Count 4" of the "First Claim for

6 Relief," "Count 1" and "Count 3" of the "Second Claim for Relief," those portions of the "Fourth

7 Claim for Relief" asserting "improper" or "malicious investigation," those portions of the "Fifth

8 Claim for Relief" asserting supervisor liability with regard to an "improper" and "malicious

9 investigation," and those portions of the "Seventh Claim for Relief" also asserting "improper" or

10 "malicious investigation."  These causes of action are **DISMISSED WITH PREJUDICE** and leave

11 to amend is **DENIED.**

12    For similar reasons, based on Plaintiff's admissions, the Court **GRANTS** the Motion to

13 Dismiss all causes of action which assert a theory of liability based solely on the empaneling of the

14 investigative Grand Jury and the conduct of proceedings before the Grand Jury here, including

15 "Count 2" of the "Second Claim for Relief," and those portions of the "Fifth Claim for Relief"

16 asserting supervisor liability with regard to allegedly "biased presentation" to the grand jury.  These

17 causes of action are **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED.**

18    Further, for the reasons discussed herein, the Court **GRANTS** the Motion to Dismiss all

19 causes of action which assert a theory of liability for conspiracy to deprive Plaintiff of his civil rights

20 pursuant to Section 1988, including the Sixth Claim for Relief (including the first and second

21 "counts" thereunder), as well as those portions of "Count 2" under the "First Claim for Relief"

22 alleging a "conspiracy," those portions of "Count 3" under the "Second Claim for Relief" alleging

23 a "conspiracy," and the portions of the "Fifth Claim for Relief" which uses the term "conspiracy to

24 violate civil rights."  These causes of action are **DISMISSED WITH PREJUDICE** and leave to

25 amend is **DENIED.**

26    However, the Court leave to amend the causes of action asserting liability for conspiracy to

27 deprive Plaintiff of his civil rights under Section 1983.

28    Further, for the reasons discussed herein, the Court **GRANTS** the Motion to Dismiss the

United States District Court
Northern District of California

1    *Monell* cause of action (styled as the "Fourth Claim for Relief") against the City and County of San

2    Francisco and against the SFDAO.  This cause of action is **DISMISSED WITHOUT PREJUDICE**

3    and leave to amend is **GRANTED**.

4    The Court **GRANTS** the Motion to Dismiss as to all other causes of action naming the City

5    and County of San Francisco and the SFDAO as Defendants.   These causes of action are

6    **DISMISSED WITH PREJUDICE** and leave to amend is **DENIED** as to any causes of action

7    asserted against the City and County of San Francisco and the SFDAO, other than the *Monell* cause

8    of action.

9    As discussed above, the Court **GRANTS** Plaintiff Cha **thirty (30) days LEAVE** to file a

10   Second Amended Complaint which amends only to the extent causes of action are **DSIMISSED**

11   **WITHOUT PREJUDICE** and cures those defects noted herein which can be cured by proper

12   amendment under Rule 8.

13   As discussed above, the Court **DENIES AS MOOT** the original Motion to Dismiss the

14   original Complaint.  [Dkt. 15].

15   Finally, the Court **GRANTS-IN-PART** the Parties' requests for judicial notice as discussed

16   herein.

17   This **RESOLVES** Dkts. 15, 16, 18, 42, 43, and 50.

18

19   **IT IS SO ORDERED.**

20   Dated:  September 30, 2025

21

22   _____
     PETER H. KANG
     United States Magistrate Judge

23

24

25

26

27

28

United States District Court
Northern District of California