1   DAVID CHIU, SBN 189542
    City Attorney
2   YVONNE MERÉ, SBN 173594
    Chief Deputy City Attorney
3   JENNIFER CHOI, SBN 184058
    Chief Trial Deputy
4   KARUN A. TILAK, SBN 323939
    Deputy City Attorney
5   Fox Plaza
    1390 Market Street, 6th Fl.
6   San Francisco, California 94102-5408
    Telephone:    (415) 554-3308
7   Facsimile:    (415) 437-4644
    E-Mail:        Karun.Tilak@sfcityatty.org
8
    ERIN BERNSTEIN, SBN 231539
9   TAYLOR JASZEWSKI, SBN 345094
    PRIANKA MISRA, SBN 348165
10  BRADLEY BERNSTEIN SANDS LLP
    1212 Broadway, Suite 1100
11  Oakland, CA 94612
    Telephone:    (510) 380-5801
12  E-Mail:        ebernstein@bradleybernstein.com

13  *Attorneys for Defendants*
    CITY AND COUNTY OF SAN FRANCISCO,
14  SAN FRANCISCO DISTRICT ATTORNEY'S
    OFFICE, CHESA BOUDIN, DANA DRUSINSKY,
15  STEPHANIE LACAMBRA, LATEEF GRAY,
    REBECCA YOUNG, AND ANDREW KOLTUNIAK

16

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19  KENNETH CHA,                          | Case No. 24-CV-04700-PHK

20          Plaintiff,                    | **DEFENDANTS' MOTION TO DISMISS
                                          | SECOND AMENDED COMPLAINT**
21      vs.
                                          | Judge:         Peter H. Kang
22  CITY AND COUNTY OF SAN                | Hearing Date:  January 29, 2025
    FRANCISCO, SAN FRANCISCO              | Place:         Courtroom F, 15th Fl.
23  DISTRICT ATTORNEY'S OFFICE, CHESA     | Time:          1:30 p.m.
    BOUDIN, DANA DRUSINSKY,
24  STEPHANIE LACAMBRA, LATEEF            | Trial Date:
    GRAY, and ANDREW KOLTUNIAK, and
25  DOES 1-100,

26          Defendants.

27

28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 29, 2025 at 1:30 p.m., Defendants City and County of San Francisco ("City"), San Francisco District Attorney's Office ("SFDA") (together with the City, the "entity defendants"), and Chesa Boudin, Lateef Gray, Dana Drusinsky, Stephanie Lacambra, and Andrew Koltuniak (together "individual defendants") will and hereby do move this Court, located in Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, California, for an order dismissing Plaintiff Kenneth Cha's ("Cha") Second Amended Complaint ("SAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Cha's claims fail because 1) the entity defendants are immune from liability under *Monell*; 2) the SAC does not adequately allege a claim for municipal liability under *Monell*; and, (3) the individual defendants cannot be sued under *Monell*.

Defendants request that Plaintiff's Second Amended Complaint be dismissed in its entirety without leave to amend. The motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings in this action, and such other matters as may be considered by the Court at the hearing. Defendants intend for a less experienced attorney, Taylor Jaszewski of Bradley Bernstein Sands LLP, to argue the motion and request oral argument for that purpose pursuant to the standing order of this Court.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................2

ISSUES TO BE DECIDED ........................................................................................7

INTRODUCTION ....................................................................................................7

FACTUAL BACKGROUND .......................................................................................8

    I.    Cha Shoots Sean Moore on January 6, 2017 ........................................8

    II.    DA's Office Determination to Pursue Criminal Charges Against Cha........9

PROCEDURAL HISTORY .......................................................................................10

    I.    The Court's Order Granting Dismissal of the FAC.......................................10

    II.    The Second Amended Complaint .......................................................11

LEGAL STANDARD ..............................................................................................12

ARGUMENT .......................................................................................................13

    I.    Plaintiff's *Monell* Claims Against the SFDAO and City of San Francisco Fail. .........................................................................................................13

        A.    The SFDAO and the City are Immune from Monell Liability for Actions Taken in a Prosecutorial Capacity. ........................................14

        B.    The SAC Fails to Allege Constitutional Violations Not Already Dismissed by the Order. ........................................................................17

        C.    The SAC Does Not Adequately Allege Defendants' Policies Were the Moving Force Behind Cha's Arrest and Prosecution. ................19

    II.    Plaintiff Cannot Maintain a *Monell* Claim Against Individual Defendants. ........................................................................................20

    III.    The SAC Cannot Be Cured by Amendment and Should Be Dismissed with Prejudice ...................................................................................21

CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...............................................................................13

*Avenmarg v. Humboldt Cnty.*
    2020 WL 4464876 (N.D. Cal. Aug. 4, 2020) ...........................................19

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
    824 F.3d 1156 (9th Cir. 2016) ................................................................12

*Chaudhry v. Aragón*
    68 F.4th 1161 (9th Cir. 2023)..................................................................17

*City of Los Angeles v. Heller*
    475 U.S. 796 (1986)................................................................................17

*Cooley v. City of Walnut Creek*
    No. 18-CV-00719-YGR, 2018 WL 6330020  (N.D. Cal. Dec. 4, 2018) ...............15

*Del Campo v. Kennedy*
    517 F.3d 1070 (9th Cir. 2008) ................................................................14

*Dougherty v. City of Covina*
    654 F.3d 892 (9th Cir. 2011) ..................................................................13

*Ellins v. City of Sierra Madre*
    710 F.3d 1049 (9th Cir. 2013) ................................................................14

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011) ................................................................13

*Galen v. Cnty. of Los Angeles*
    477 F.3d 652 (9th Cir. 2007)..............................................................18, 19

*Goldstein v. City of Long Beach*
    715 F.3d 750 (9th Cir. 2013) ..................................................................15

*Gordon v. Perris Police Station*
    No. EDCV18315RGKAGR, 2019 WL 3021465 (C.D. Cal. June 14, 2019) ........................15

*Guillory v. Orange Cnty.*
    731 F.2d 1379 (9th Cir. 1984)................................................................20

*Hartman v. Moore*
    547 U.S. 250 (2006)................................................................................16

*Haynesworth v. Miller*
   820 F.2d 1245 (D.C. Cir. 1987)................................................................16

*Horton by Horton v. City of Santa Maria*
   915 F.3d 592 (9th Cir. 2019)................................................................13

*Imbler v. Pachtman*
   424 U.S. 409, 424 (1976)................................................................15, 16

*Kalina v. Fletcher*
   522 U.S. 118 (1997)................................................................15

*Kroessler v. CVS Health Corp.*
   977 F.3d 803 (9th Cir. 2020)................................................................21

*Monell v. Department of Social Services*
   436 U.S. 658 (1978)................................................................ *passim*

*Moore v. Kayport Package Exp., Inc.*
   885 F.2d 531 (9th Cir. 1989)................................................................21

*Morgan v. Cnty. of Los Angeles Dist. Attorney's Off.*
   No. 2:23-CV-10474-MRA-MAR, 2025 WL 1260451 (C.D. Cal. Mar. 6, 2025) .................15

*Navarro v. Block*
   250 F.3d 729 (9th Cir. 2001)................................................................13

*Phillips v. TLC Plumbing, Inc.*
   172 Cal.App.4th 1133 (2009) ................................................................17

*Pitts v. Cnty. of Kern*
   17 Cal.4th 340 (1998) ................................................................14, 15

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*
   130 F.3d 432 (9th Cir. 1997)................................................................13

*Rehberg v. Paulk*, 611 F.3d 828, 850 n.24 (11th Cir. 2010) ................................................................17

*Riese v. Cnty. of Del Norte*
   No. 12-CV-03723-WHO, 2013 WL 5568707 (N.D. Cal. Oct. 9, 2013) .........................15, 16

*Robicheaux v. Cnty. of Orange*
   750 F. Supp. 3d 1161 (C.D. Cal. 2024)................................................................15

*Roe v. City & Cnty. of San Francisco*
   109 F.3d 578 (9th Cir. 1997)................................................................16

*Rutman Wine Co. v. E. & J. Gallo Winery*
   829 F.2d 729 (9th Cir. 1987)................................................................12

*Sample v. City of Woodbury*
    836 F.3d 913 (8th Cir. 2016) ...................................................................................16

*Sanders v. City and Cnty. of San Francisco*
    226 F. App'x 687 (9th Cir. 2007) ...........................................................................17

*Tennison v. City & Cnty. of San Francisco*
    No. C 04-0574 CW, 2006 WL 733470 (N.D. Cal. Mar. 22, 2006) .........................17

*Valdez v. Naderi*
    No. 24-CV-01087-TSH, 2024 WL 4309276 (N.D. Cal. Sept. 25, 2024) ...............21

*Van de Kamp v. Goldstein*
    555 U.S. 335 (2009) ...........................................................................................15, 16

*Weiner v. San Diego Cnty.*
    210 F.3d 1025 (9th Cir. 2000) ........................................................................ *passim*

*Williams v. Garcia*
    2023 WL 2139655 (C.D. Cal. Feb. 17, 2023) .........................................................19

*Yousefian v. City of Glendale*
    779 F.3d 1010 (9th Cir. 2015) ...............................................................................19

**ISSUES TO BE DECIDED**

1. Whether the Second Amended Complaint fails to state a cause of action because Plaintiff alleges harms arose from action for which Defendants were state actors and therefore have Eleventh Amendment immunity.

2. Whether the Second Amended Complaint fails to state a cause of action because Plaintiff does not identify a constitutional harm or causation suitable to establish liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

3. Whether the Second Amended Complaint fails to state a cause of action against the individual Defendants because *Monell* liability cannot attach to the individual Defendants.

4. Whether the Second Amended Complaint should be dismissed with prejudice because Plaintiff has repeatedly failed to cure deficiencies in his pleading and any remaining amendment would be futile.

**INTRODUCTION**

In his third bite at the apple, Plaintiff Kenneth Cha ("Plaintiff" or "Cha") continues to rely on a theory of liability that is foreclosed both by this Court's prior Order dismissing his First Amended Complaint and by blackletter law on prosecutorial immunity and the nature of constitutional harms. Like its predecessors, the Second Amended Complaint's ("SAC") only allegation of harm is that Cha was "subjected to an investigation and prosecution" for his role in the killing of Sean Moore. SAC ¶¶ 137, 159. This Court's Order has already confirmed that those alleged harms cannot sustain a claim for Defendants' liability, whether considered under *Monell* or otherwise.

The SAC narrows the theory of liability to two ostensible policies of Defendants City and County of San Francisco and the San Francisco District Attorney's Office ("SFDAO") relating to its prosecution of previously declined cases and conflicts of interest among its staff. However, the SAC fails to articulate how either of those policies are outside of the conduct giving rise to prosecutorial immunity, how the purported policies harmed him, or how any of the alleged harms are constitutionally cognizable. Given those deficiencies and

Plaintiff's repeated failures to cure his pleading, the SAC should be dismissed with prejudice.

**FACTUAL BACKGROUND**

**I.    Cha Shoots Sean Moore on January 6, 2017**

On January 6, 2017, Cha and his partner, SFPD Officer Colin Patino, were called to Sean Moore's house in response to a complaint that Moore was violating a temporary restraining order obtained by his neighbor.  Dkt. 54, SAC ¶ 2.  Cha climbed the stairway of Moore's house and rang the doorbell.  *Id*. ¶ 31.  A metal gate separated the landing area in front of the door from the rest of the landing and the stairway.  *Id*.

Over the course of several minutes, Moore angrily yelled at the officers from behind the metal gate and demanded that they leave, at one point threatening to call and report the officers.  *Id*. ¶¶ 32-33.  Moore then opened and stepped through the metal gate and, while still on the landing, continued to demand that the officers leave.  *Id*. ¶¶ 33-34.  In response, Cha pepper sprayed Moore.  *Id*.  Moore raised his left foot, and Cha claimed in a subsequent interview that Moore kicked him.  *Id*.  The officers retreated down the stairs, and Moore picked up the restraining order documents and went into the house.  *Id*.  Patino ordered Moore to return the restraining order papers and come out of the house because he was under arrest.  *Id*. ¶ 35.  Moore tossed the restraining order papers through the metal gate and reentered his house.  *Id*. ¶ 34.

But the officers determined they had probable cause to arrest Moore and demanded he come out of the house. *Id*. ¶¶ 32, 37. While Patino was walking up the stairs to retrieve the papers, Moore, opened the gate, yelling at the officers and clenching his fists. *Id*. ¶ 35.  The officers retreated down the stairs and Patino pulled out his baton.  *Id*. ¶¶ 35-36.  Moore then reached to pick up an object that had fallen about halfway down the stairs.  *Id*. ¶ 36.  As he bent to pick the object up, Cha and Patino ordered him to get on the ground.  *Id* ¶ 37.  Moore instead retreated up the stairs.  *Id*.  The officers then advanced on him, and Patino swung at Moore twice with his baton.  *Id*.  Patino later claimed that Moore punched him in the face, resulting in Patino suffering a broken nose.  *Id*.  At this point, Cha drew his firearm.  *Id*. ¶ 38.

As Moore raised his leg, Cha shot him twice, in the abdomen and in the leg. *Id*.   In his voluntary statement after the shooting, Cha stated that he thought he was going to die and that he faced great bodily harm or death as Moore came towards him. *Id*. ¶ 39.

Moore was treated for serious injuries and later imprisoned based on a separate incident. *Id*. ¶¶ 40, 42.  He died three years later, on January 20, 2020. *Id*. ¶ 42.  While he suffered from numerous medical conditions, the coroner listed his death as a homicide because it was "primarily attributed to acute intestinal obstructions and severe abdominal adhesions from the gunshot [injury]." *Id*. ¶ 43.

## II.   DA's Office Determination to Pursue Criminal Charges Against Cha

After the January 6, 2017 shooting—but prior to Moore's death—the SFDAO under former DA George Gascón investigated Cha's conduct, pursuant to policies in effect at the time. *Id*. ¶ 45.  An unsigned report declining to file charges against Moore was prepared sometime in December 2019. *Id*. ¶¶ 48-49.  The draft report concluded that the SFDAO would be unable to prove beyond a reasonable doubt that Cha was guilty of criminal conduct. *Id*. ¶ 48.  Another assistant district attorney prepared a memorandum on January 16, 2020 (again, prior to Moore's death) also recommending against prosecution. *Id*. ¶¶ 72-73.  Though the SFDAO prepared a draft report, there was never a formal declination of charges because the report remained unsigned. *Id*. ¶ 49.

In January 2020, Defendant Boudin took office as the District Attorney.  Cha alleges that due to changes in SFDAO policies between the Gascon and Cha administrations, the DA's Office "re-opened" the investigation into Cha. *Id*. ¶¶ 52-55.[1]  As noted above, Moore also died in January 2020. *Id*. ¶ 42.

The SAC alleges various improprieties in connection with the decision to file criminal charges against Cha.  First, the SAC alleges that under District Attorney Boudin, the SFDAO failed to adopt procedures requiring new evidence to re-open declined cases. *Id*. ¶¶ 52-55.

---

[1] The SAC also alleges that the SFDAO reopened cases involving Ofc. Terrence Stangel and Ofc. Christopher Samoyoa, but does not offer any details on what those cases entailed. SAC ¶ 55.

Second, the SAC alleges that the SFDAO failed to assess or remediate conflicts of interest and employee bias, and that these policies should have prohibited defendants Lateef Gray and Andrew Koltuniak from participating in the prosecution of Cha. *Id*. ¶¶ 56-70; 87-93.

On October 29, 2021, the SFDAO submitted a request for an arrest warrant for Cha to San Francisco Superior Court Judge Harold Kahn. *Id*. ¶ 95. The warrant submitted charges of voluntary manslaughter (Cal. Pen. Code section 192) and assault with a semiautomatic firearm (Cal. Pen. Code section 245(a)(2)). *Id*. San Francisco Superior Court Judge Harold Kahn signed the arrest warrant for Cha's arrest. *Id*. On November 2, 2021, pursuant to the arrest warrant, Cha was arrested on charges of voluntary manslaughter and assault with a semiautomatic firearm. *Id*. ¶ 96.

Defendant Boudin was recalled from office on July 8, 2022, and the new District Attorney, Brooke Jenkins, took office on January 8, 2023. *Id*. ¶ 134. After her appointment, a different prosecutor was assigned to the case and moved to dismiss the charges against Cha. *Id*. ¶ 135. The charges against Cha were dismissed on July 18, 2023. *Id*.

**PROCEDURAL HISTORY**

Cha filed his original complaint on August 2, 2024. Dkt. 1. On May 23, 2025, Plaintiff filed the First Amended Complaint (FAC), which Defendants moved to dismiss in its entirety. Dkt. 34, 42. This Court, after a lengthy oral argument, granted the motion to dismiss without leave to amend as to all but the *Monell* claim on which it allowed Plaintiff leave to amend. Dkt. 53 (the "Order").

## I. The Court's Order Granting Dismissal of the FAC.

The Order dismissed all claims, as to all Defendants. Plaintiff's FAC alleged several theoretical constitutional harms stemming from an "improper" or "malicious" investigation, the empaneling of an investigative grand jury, a biased presentation of evidence, or a "conspiracy" to violate Plaintiff's civil rights. *Id*. at 10-12. But as the Court found, none of those theories constituted constitutional harm sufficient to support a § 1983 cause of action at the pleading stage. *Id*. at 12. Because the theories themselves were deficient and amendment

would be futile, Plaintiff's causes of action relating to those harms were all dismissed with prejudice.  *Id*. at 30-31.

The only claim for which Plaintiff was granted leave to amend related to *Monell* liability for the municipal entity defendants.[2]  In the Order, the Court dismissed *Monell* liability claims brought against the SFDAO and the City and County of San Francisco.  *Id*. at 30-31.  The claim against the SFDAO was premised on alleged "constitutional deprivations" caused by SFDAO's alleged policy of seeking frequent and improper prosecutions of police officer misconduct.  The Order dismissed the *Monell* claim against the SFDAO because (1) the harm itself was not pled sufficiently, and (2) Plaintiff's cause of action related to SFDAO's prosecutorial function and therefore its role as a state actor, who categorically cannot be sued for damages under Section 1983.  *Id*. at 22-23.

Regarding the *Monell* claims against the City and County of San Francisco, Plaintiff proffered three theories: "(1) *respondeat superior*; (2) the harms allegedly flowing from Plaintiff Cha's arrest warrant; and (3) a generalized conspiracy to implement a pattern or practice to prosecute police officers for political motives."  *Id*. at 23.  Plaintiff's respondeat superior theory failed as a matter of law because such a theory does not give rise to a *Monell* claim.  *Id*. at 21 (citing *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 692 (1978).  The second theory relating to Plaintiff's arrest warrant failed because, as with the rest of Plaintiff's claims, the arrest warrant itself is not a "constitutional violation [sufficient] to support a *Monell* claim."  *Id*. at 23.  Finally, the conspiracy claim failed because the SFDAO was a state actor and did not create policy for the City and County and San Francisco as a municipal entity.  *Id*. at 22.

## II.    The Second Amended Complaint

Plaintiff filed a Second Amended Complaint (SAC) alleging two *Monell* causes of action against all Defendants, including individuals.

---

[2] Cause of Action Four, Dkt. 34 ¶¶ 259-273.

The first cause of action is styled as:

> FIRST CLAIM FOR RELIEF – VIOLATION OF CIVIL RIGHTS (42
> U.S.C. §1983) – MALICIOUS PROSECUTION –
> ADMINISTRATIVE POLICIES CAUSING DEPRIVATION OF
> RIGHTS (*MONELL*) - INADEQUATE ADMINISTRATIVE
> POLICIES FOR THE RE-EVALUATION OF DECLINED CASES.[3]

This cause of action is alleged against the SFDAO, the City and County of San Francisco, as well as against individual defendants Chesa Boudin and Lateef Gray. The SAC pleads a second cause of action, also brought under *Monell*:

> SECOND CLAIM FOR RELIEF – VIOLATION OF CIVIL RIGHTS
> (42 U.S.C. §1983) -MUNICIPAL POLICY RESULTING IN
> DEPRIVATION OF RIGHTS (MONELL) - INADEQUATE
> ADMINISTRATIVE POLICIES FOR ASSESSING AND
> MANAGING ATTORNEYS' CONFLICTS OF INTEREST
> AND/OR IMPROPER BIAS[4]

The second cause of action is pled against the municipal defendants, as well as individual defendants Chesa Boudin, Lateef Gray, Dana Drusinsky, and Stephanie Lacambra. Each cause of action contends that lack of a policy—for reopening declined cases, and for managing conflicts of interest, respectively—led to Plaintiff's arrest, which in turn violated his constitutional rights.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of complaints." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court should dismiss for failure to state a claim if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). A court accepts as true the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, this tenet is

---

[3] SAC, Dkt. 54 at 24.

[4] *Id.* at 28.

inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, a court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (cleaned up).

ARGUMENT

## I.    Plaintiff's *Monell* Claims Against the SFDAO and City of San Francisco Fail.

The SAC fails to fix the infirmities with Plaintiff's *Monell* claims that led to this Court's dismissal of the FAC's *Monell* cause of action.  "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

The two areas where the SAC alleges that Defendants failed to adopt adequate policies—i.e., re-opening declined cases[5] and not vetting conflicts of interest—does not establish *Monell* liability against the municipal entity defendants for at least three reasons.  First, both policies relate solely to prosecutorial action for which the SFDAO and City and County of San Francisco are immune from liability.  Second, the SAC does not identify a constitutional harm that can support *Monell* liability.  Third, the connection between the

---

[5] Even taking the allegations of the SAC as true, no policy of "re-opening" declined cases was at play here.  The SAC acknowledges that the report and memo proposing declination of charges against Cha was never signed by District Attorney Gascon and therefore the prosecution was never formally declined. SAC ¶ 49.

identified policies and Cha's constitutional rights is so attenuated that the policies could not be the moving force behind the alleged constitutional violation.  Accordingly, the SAC should be dismissed with prejudice.

A.     *The SFDAO and the City are Immune from Monell Liability for Actions Taken in a Prosecutorial Capacity.*

The SAC's *Monell* claims fail for the same reasons articulated by the Court in dismissing the FAC: the alleged harms caused by the identified policies in the SAC all arose from the arrest warrant and other prosecutorial actions directed at Cha.  The Order was explicit—each of the administrative policies alleged in the FAC was "specifically tied to the decision on whether or not to investigate and prosecute certain cases." Order at 25. Plaintiff has not cured that defect via amendment.

Plaintiff cannot state claims against localities under *Monell* for actions taken when a district attorney's office: 1) decides whether to prosecute; 2) prepares to prosecute; 3) and is in the midst of prosecuting crimes.  This is because when executing those functions, the office acts on behalf of the *state*, not the locality.  *See, e.g., Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1031 (9th Cir. 2000).  Because state officials and local agencies acting on behalf of the state are subject to Eleventh Amendment immunity, no liability may attach to those agencies when executing state functions.  *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008) (California district attorneys "act as state officials, and so possess Eleventh Amendment immunity, when acting in [their] prosecutorial capacity").

When evaluating whether an action is a state function (and therefore cannot support *Monell* claims against the locality), federal courts look to state law.  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).  The California Supreme Court has addressed the distinctions between prosecutorial (state) functions and administrative (local) functions in *Pitts v. Cnty. of Kern*, 17 Cal.4th 340 (1998).  In *Pitts,* the California Supreme Court noted that because even the investigative functions of the district attorney are supervised directly by the California Attorney General—not the County—actions in the "investigative and

prosecutorial function of the district attorney of a county" are *state* and not local functions. *Pitts*, 17 Cal.4th at 361; *see also Riese v. Cnty. of Del Norte*, No. 12-CV-03723-WHO, 2013 WL 5568707, at *3 (N.D. Cal. Oct. 9, 2013) ("District Attorneys act as state officers, and not county officers, in their investigation and prosecution of criminal cases").

In California, the "district attorney is a state officer when deciding whether to prosecute an individual." *Weiner*, 210 F.3d at 1030; *see also Robicheaux v. Cnty. of Orange*, 750 F. Supp. 3d 1161, 1167 (C.D. Cal. 2024); *Cooley v. City of Walnut Creek*, No. 18-CV-00719-YGR, 2018 WL 6330020, at *9 (N.D. Cal. Dec. 4, 2018). District attorneys in California also act on behalf of the state in prosecutorial training and policy, as well as charging and staffing decisions. *Goldstein v. City of Long Beach*, 715 F.3d 750, 762 (9th Cir. 2013) (distinguishing purely "administrative procedures" and administrative systems within a DA's office from prosecutorial training, policy, and acts); *Weiner*, 210 F.3d at 1031; *Gordon v. Perris Police Station*, No. EDCV18315RGKAGR, 2019 WL 3021465, at *8 (C.D. Cal. June 14, 2019) (allegation that DA filed "baseless criminal charges" cannot be a basis for *Monell* claim). It is therefore well-established that "a prosecutor's preparation and filing of charging documents and pursuit of criminal prosecution, even if malicious and without probable cause, are protected by absolute prosecutorial immunity." *Morgan v. Cnty. of Los Angeles Dist. Attorney's Off.*, No. 2:23-CV-10474-MRA-MAR, 2025 WL 1260451, at *4 (C.D. Cal. Mar. 6, 2025) (citing *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976)); *Kalina v. Fletcher*, 522 U.S. 118, 128-129 (1997); *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

The immunity extends beyond the actual filing of charging documents, and includes both the re-opening of declined cases and conflict of interest policies as they relate to the conduct of prosecutorial investigations. In *Goldstein*, the Ninth Circuit explicitly called out prosecutorial training and office policy as areas where sovereign immunity displaces *Monell*. *Goldstein v. City of Long Beach*, 715 F.3d 750, 761 (9th Cir. 2013) ("[T]he district attorney represents the state, not the county, when preparing to prosecute and when prosecuting crimes, and *when establishing policy and training employees in these areas*.") (emphasis added). Similarly, a long line of cases find prosecutorial immunity for policies

leading to improper supervision and training of officers, including allegations of political bias or motive.   *Imbler*, 421 U.S. at 427; *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 584 (9th Cir. 1997); *Sample v. City of Woodbury*, 836 F.3d 913, 916–17 (8th Cir. 2016), *Van de Kamp v. Goldstein*, 555 U.S. 335, 340 (2009); *Haynesworth v. Miller*, 820 F.2d 1245, 1268–69 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). Courts have also rejected *Monell* liability for failure to screen District Attorneys off cases with potential conflicts as "squarely within *Weiner*" because conduct "during investigation" is a state prosecutorial function. *Riese*, 2013 WL 5568707, at *3 (N.D. Cal. Oct. 9, 2013).

Cha's allegations relating to the re-opening of declined cases concern the plainly prosecutorial conduct of deciding whether to prosecute an individual, namely Plaintiff Cha. *See, e.g.*, *Weiner*, 210 F.3d at 1031 ("[T]he San Diego County district attorney was acting as a state official in deciding to proceed with Weiner's criminal prosecution."). The law makes no distinction between the decision to prosecute a previously declined case or a newly opened one. Nor is there any logical basis to limit the discretion afforded to district attorneys in prosecuting crimes to not include previously declined cases.

Cha's allegations relating to a failure to assess and manage conflicts of interest and bias similarly relate only to prosecutorial action directed at Cha.  For example, the SAC heavily cites the SFDAO's motion to dismiss the charges against Cha for the prospect that a conflict of interest relating to Defendant Gray led to Gray taking certain actions in the Cha matter.  SAC ¶ 104.  However, those alleged actions such as "hiring and payment to expert witnesses, discussions around strategy, and the removal of the DA investigator who had investigated the Moore case from the beginning" are entirely within the scope of the SFDAO's prosecutorial function.  *Id.*  The entire basis of the claim as stated in the SAC's Second Cause of Action is that "[t]he SFDAO did not correct or discipline employees who committed ethical violations *related to the prosecution of police officers*."  SAC ¶ 158 (emphasis added).  Per the SAC, the alleged failure to enforce ethical and conflict of interest policies allowed for individuals to "exert a biased influence and direction on the *SFDAO's handling of the Cha matter.*"  *Id.* ¶ 159 (emphasis added).  Like the FAC, the SAC only challenges SFDAO

policies and procedures relating to the decision to prosecute Cha, for which the SFDAO enjoys prosecutorial immunity.

**B.**     ***The SAC Fails to Allege Constitutional Violations Not Already Dismissed by the Order.***

The SAC cannot state a claim for *Monell* liability against any Defendants because it does not identify a deprived constitutional right.  A plaintiff alleging a § 1983 claim must "show they were deprived of a right, privilege, or immunity secured by the Constitution and laws" and that defendants' conduct was the cause of the harm.  *See Chaudhry v. Aragón*, 68 F.4th 1161, 1170 (9th Cir. 2023); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (constitutional harm required for *Monell* claim); *Phillips v. TLC Plumbing, Inc.*, 172 Cal.App.4th 1133, 1139 (2009) (negligent hiring and training requires showing of causation and harm).

Like the FAC, the SAC's only allegations of a constitutional deprivation relate to Cha being "subjected to an investigation and prosecution."  SAC ¶ 137.  But the mere commencement of an investigation does not violate a constitutional right or form the basis of constitutional harm; there is no constitutional harm from the prosecutors' decision to draft a search warrant or empanel a grand jury.  *Rehberg v. Paulk*, 611 F.3d 828, 850 n.24 (11th Cir. 2010); *Sanders v. City and Cnty. of San Francisco*, 226 F. App'x 687, 689 (9th Cir. 2007) (unpublished) ("Appellants point to no case law that supports the proposition that probable cause must exist before an investigation can commence. That is not surprising, given that the impetus behind criminal investigations is to develop probable cause."); *Tennison v. City & Cnty.  of San Francisco*, No. C 04-0574 CW, 2006 WL 733470, at *24 (N.D. Cal. Mar. 22, 2006) ("There is no constitutional right to have witnesses interviewed in a particular manner or to have the investigation carried on in a particular way"). The Order confirmed that such harms cannot be the basis for § 1983 liability by dismissing all claims relating to those harms with prejudice.  Order at 29-30.

Once again, all the harms Cha alleges in the SAC flow from the SFDA seeking an arrest warrant against him.  The SAC's first cause of action alleges that the SFDA's policies led to the following harms:

> 138.    The customs, practices, and policies of defendant SFDAO described in this First Claim for Relief amounted to deliberate indifference to the rights of persons, such as the plaintiff, whose Fourth Amendment rights were violated by improper investigations, arrests, and prosecutions.
>
> 139.    As a result of the customs, practices, and policies of Defendants CCSF and/or the SFDAO, which constituted municipal policy, as aforesaid, Plaintiff Kenneth Cha was subjected to a violation of his right to be free from improper investigation and malicious prosecution, under the Fourth and Fourteenth Amendments to the United States Constitution.

Similarly, the SAC's second cause of action alleges that policies led to constitutional harms:

> 159.    As a result of the SFDAO's failure to implement and/or to enforce proper administrative policies and procedures for the assessment and management of its attorneys' conflicts of interest, a declination letter was not issued in the Cha/Moore matter, and Cha was subjected to an investigation and prosecution for voluntary manslaughter and assault with a deadly weapon.
>
> 160.    The customs, practices, and policies of Defendant SFDAO described in this Second Claim for Relief amounted to deliberate indifference to the rights of persons, such as the plaintiff, whose Fourth Amendment rights were violated by improper investigations, arrests, and prosecutions.

But these harms are not cognizable as constitutional harms in this action, both because the Order has already addressed them, Order at 25, and because the alleged harms arise from his arrest and prosecution—acts for which defendants are immune under the Eleventh Amendment.

Further, because a neutral judge determined that probable cause existed to proceed against Cha, both claims for relief in the SAC do not state a cognizable harm.  The magistrate's finding that probable cause existed for Cha's arrest broke the causal chain necessary for liability to attach. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) ("[A] judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement

personnel to the officer's decision."). This Court has already held that the probable cause determination made by the magistrate in the Cha case was proper and accordingly dismissed all "causes of action that assert malicious prosecution." Order at 20. While the SAC changes Cha's theory of liability to that offered by *Monell*, it nonetheless continues to rely entirely on a theorized harm of malicious prosecution. *See* SAC ¶ 139 (alleging that as a result of Defendants' policies, "Plaintiff Cha was subjected to a violation of his right to be free from improper investigation and malicious prosecution"). Cha cannot, as a matter of law, establish an underlying constitutional violation based on his arrest and prosecution—a *necessary* element of any *Monell* claim—where, as here, he cannot show that probable cause was lacking. *See* Order at 20; *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims.").

### C.    *The SAC Does Not Adequately Allege Defendants' Policies Were the Moving Force Behind Cha's Arrest and Prosecution.*

The SAC also fails to state a claim under *Monell* because Cha fails to show how Defendants' allegedly improper policies caused his harm. To allege a claim under *Monell*, Cha must show that the "policies at issue were the 'moving force' behind the violation of his constitutional rights." *Williams v. Garcia*, 2023 WL 2139655, at *6 (C.D. Cal. Feb. 17, 2023). For this prong of the *Monell* test, Plaintiff must show that "that the policy, custom, or practice was both the cause-in-fact and the legal or proximate cause of the constitutional violation." *Avenmarg v. Humboldt Cnty.*, 2020 WL 4464876, at *9 (N.D. Cal. Aug. 4, 2020).

The SAC fails to meet this exacting standard for two reasons. First, as discussed above, the issuance of an arrest warrant and finding of probable cause by a neutral magistrate is a superseding event that breaks the causal chain between Defendants' alleged policies and the unconstitutional harm defined by Plaintiff as being "subjected to an investigation and prosecution" related to the Moore matter. SAC ¶ 139; *Galen*, 477 F.3d at 663. The SAC makes no effort to explain how Defendants' alleged policy failures caused a neutral arbiter to erroneously find probable cause to support an arrest warrant to be issued

for Cha. Nor does it allege that the policies relating to declined cases or conflicts of interest somehow clouded the magistrate's judgment.

Second, the SAC does not show how Defendants' purported failure to enact a policy regarding declined cases or conflicts of interest caused the ultimate harm allegedly suffered by Cha. Regarding the declined cases issue, the SAC notes that the SFDAO failed to discipline or correct its employees where previously declined cases were re-opened despite the lack of new evidence, including in the Cha matter. SAC ¶¶ 130-133. But such an allegation of an after-the-fact failure inherently means that the Cha investigation could not have been *caused* by such a failure.[6]

The lack of a conflicts of interest policy, as alleged in the SAC, similarly cannot be considered the cause of Cha's alleged harm because the conflicts involved did not lead to the opening of an investigation or the prosecution of Cha. The SAC describes the conflicted individuals—Lateef Gray and Andrew Koltuniak—as being "involved with the Cha matter," SAC ¶ 152, and able to "exert a biased influence and direction on the SFDAO's handling of the Cha matter." SAC ¶ 157. But it does *not* allege that those individuals initiated the re-opening of the Cha case or that those individuals' involvement somehow led to the ultimate arrest warrant issued by a neutral magistrate. Simply put, the policy failures identified in the SAC do not prove either but-for or proximate causation of the decision to investigate and prosecute Cha, which is his only theorized constitutional harm.

**II.    Plaintiff Cannot Maintain a *Monell* Claim Against Individual Defendants.**

The SAC pleads both causes of action against the institutional defendants (SFDAO and City and County of San Francisco), but also as against various individual defendants. But *Monell* is not viable against individuals as a matter of law: "*Monell* does not concern liability of individuals acting under color of state law." *Guillory v. Orange Cnty.*, 731 F.2d 1379, 1382 (9th Cir. 1984). Instead, *Monell* is a means to bring Section 1983 claims against local

---

[6] Further, as noted above, this policy could not have caused Cha's harm because Plaintiff acknowledged that the charges against him were never formally declined by the prior District Attorney.

government bodies. *Valdez v. Naderi*, No. 24-CV-01087-TSH, 2024 WL 4309276, at *5 (N.D. Cal. Sept. 25, 2024).  Because a plaintiff cannot bring a *Monell* claim against an individual, the claims against the individual Defendants must be dismissed with prejudice.

### III.    The SAC Cannot Be Cured by Amendment and Should Be Dismissed with Prejudice

The issues above were all considered by the Court in dismissing the FAC.  Despite being given multiple efforts to correct his pleading deficiencies, Plaintiff has not advanced a viable theory of liability under *Monell* (or otherwise).  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (listing repeated failure to cure deficiencies by previous amendments as factor weighing against granting leave to amend).  Additionally, the issues facing the SAC are legal in nature, not factual, and would not easily be cured by amendment. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) ("If no amendment would allow the complaint to withstand dismissal as a matter of law, courts consider amendment futile.").  Accordingly, further amendment would be futile and the claims should be dismissed with prejudice.

1

## CONCLUSION

2          For the reasons stated above, the Court should dismiss Cha's Second Amended

3    Complaint in its entirety without leave to amend.

4

5    Dated: November 13, 2025                    Respectfully submitted,

6                                               DAVID CHIU
                                                City Attorney
7                                               YVONNE MERÉ
                                                Chief Deputy City Attorney
8                                               JENNIFER CHOI
                                                Chief Trial Deputy
9                                               KARUN A. TILAK
                                                Deputy City Attorney
10

11                                              ERIN BERNSTEIN
                                                TAYLOR JASZEWSKI
12                                              PRIANKA MISRA

13

14                                      By:    ___/s/ Erin Bernstein_____
                                                ERIN BERNSTEIN
15
                                                *Attorneys for Defendants*
16                                              CITY AND COUNTY OF SAN FRANCISCO,
                                                SAN FRANCISCO DISTRICT ATTORNEY'S
17                                              OFFICE, CHESA BOUDIN, DANA DRUSINSKY,
                                                STEPHANIE LACAMBRA, LATEEF GRAY, REBECCA
18                                              YOUNG, AND ANDREW KOLTUNIAK

19

20

21

22

23

24

25

26

27

28