1  EUSTACE DE SAINT PHALLE, SBN 179100
   OLIVIA K. LEARY, SBN 329145
2  RAINS LUCIA STERN ST. PHALLE & SILVER, PC
   2300 Contra Costa Blvd., Suite 500
3  Pleasant Hill, CA 94523
   Tel: (925) 609-1699
4  Fax: (925) 609-1690
   E-mail: PersonalInjuryGroup@RLSlawyers.com
5

6  ATTORNEYS FOR PLAINTIFF
   KENNETH CHA
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  KENNETH CHA,                          CASE NO. 3:24-cv-4700-PHK

12          Plaintiff,                    **PLAINTIFF KENNETH CHA'S RESPONSE
                                          TO DEFENDANTS' MOTION TO DISMISS
13     vs.                                SECOND AMENDED COMPLAINT**

14  CITY AND COUNTY OF SAN FRANCISCO;
    SAN FRANCISCO DISTRICT ATTORNEY'S
15  OFFICE; CHESA BOUDIN; DANA            Judge: Peter H. Kang
    DRUSINSKY; STEPHANIE LACAMBRA;        Hearing Date: February 12, 2026
16  LATEEF GRAY; REBECCA YOUNG;           Place: Courtroom F, 15th Fl.
    ANDREW KOLTUNIAK; and DOES 1-100,     Time: 1:30 p.m.
17

18          Defendants.

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.  SUMMARY OF OPPOSITION ................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.  Factual Background ................................................................. 3

    B.  Prior Complaints; Second Motion to Dismiss ........................... 4

    C.  Filing of SAC; Third Motion to Dismiss ................................... 5

III.  LEGAL STANDARD ON A MOTION TO DISMISS ................................... 5

IV.  LEGAL ANALYSIS .......................................................................... 6

    A.  The SAC Properly Alleges *Monell* Claims Based on the SFDAO's Improper Administrative Procedures ......................................... 6

    B.  The SAC Alleges Defendants' Administrative Conduct, Not Subject to Sovereign Immunity ............................................... 8

        1.  The SFDAO's Administrative Failure to Properly Assess Declined Cases Is Not "Prosecutorial" for 11th Amendment Purposes ................. 9

        2.  Defendants' Administrative Failure to Prevent Conflicts of Interest and Biased Employees Is Not "Prosecutorial" for 11th Amendment Purposes ............................................ 12

        3.  The Court's Order on the FAC's *Monell* Claims Should Not Determine the Ruling on Plaintiff's *Monell* Claims in the SAC ............ 15

    C.  The SFDAO's Improper Administrative Policies Caused Constitutional Harm ...................................................................... 16

    D.  The SFDAO's Policies Were the Moving Force Behind the Constitutional Harm ............................................................... 18

    E.  The Individual Defendants Are Sued in their Official Capacities, In Order to Identify SFDAO Employees Who Contributed to Setting SFDAO Policy ......... 20

V.  CONCLUSION ............................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*AE ex rel. Hernandez v. Cnty. of Tulare,* 666 F.3d 631 (9th Cir. 2012).....................................18, 19, 20

*Awabdy v. City of Adelanto,* 368 F.3d 1062 (9th Cir. 2004)............................................................18

*Bellamy v. City of New York,* 914 F.3d 727 (2d Cir. 2019) ............................................................11

*Briggs v. Montgomery,* 2019 U.S.Dist.LEXIS 101625 (D.Ariz. June 18, 2019, No. CV-18-02684-PHX-
    EJM)...........................................................................................................................11, 12, 15

*Buckey v. County of Los Angeles,* 968 F.2d 791 (9th Cir. 1992) .........................................................6

*City of Canton v. Harris,* 489 U.S. 378 (1989)...............................................................................13

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988)........................................................................7

*Dougherty v. City of Covina,* 654 F.3d 892 (9th Cir. 2011) .........................................................7, 13

*Gibson v. United States,* 781 F.2d 1334 (9th Cir. 1986)...............................................................6, 20

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246 (9th Cir. 1997) .............................................................6

*Goldstein v. City of Long Beach,* 715 F.3d 750 (9th Cir. 2013) ....................................................2, 8, 11

*Gordon v. Perris Police Station,* No. EDCV18315RGKAGR, 2019 WL 3021465 (C.D. Cal. June 14,
    2019) ...................................................................................................................................14

*Gravelet-Blondin v. Shelton,* 728 F.3d 1086 (9th Cir. 2013).............................................................18

*Gunn v. Cont'l Cas. Co.,* 968 F.3d 802 (7th Cir. 2020)......................................................................6

*Halebian v. Berv,* 644 F.3d 122 (2d Cir. 2011) ...............................................................................6

*Hartman v. Moore,* 547 U.S. 250 (2006).......................................................................................9

*Haynesworth v. Miller,* 820 F.2d 1245 (1987)...........................................................................passim

*Horton v. City of Santa Maria,* 915 F.3d 592 (9th Cir. 2019) ......................................................7, 13, 18

*Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir. 2012).........................................................2, 9, 10, 14

*Lobisch v. United States,* 2021 U.S.Dist.LEXIS 100002 (D.Haw. May 26, 2021, No. 20-00370 HG-
    KJM) ................................................................................................................................6, 18

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978) .......................................passim

*Mumford v. Basinski,* 105 F.3d 264 (6th Cir. 1997) ........................................................................21

*Puckett v. Cnty. of Sacramento,* 2024 U.S.Dist.LEXIS 56662 (E.D.Cal. 2024, No. 2:22-cv-0350 KJM DB) ............................................................................................................... 2, 8, 12, 14

*Riese v. Cnty. Of Del Norte,* No. 12-CV-03723-WHO, 2013 WL 5568707 (N.D. Cal. Oct. 9, 2013) ... 15

*Thacker v. City of Columbus,* 328 F.3d 244 (6th Cir. 2003) ..................................................... 6

*Wilson v. County of Umatilla,* 2013 U.S.Dist.LEXIS 168936 (D.Or. Aug. 9, 2013, No. 3:11-cv-01061-PK) ............................................................................................................................. 13

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir. 1987) ............................................. 6

**Other Authorities**

Cal. State Bar Rules of Prof. Conduct, Rule 1.7 .................................................................... 13

Cal. State Bar Rules of Prof. Conduct, Rule 1.9 .................................................................... 13

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

# I.    SUMMARY OF OPPOSITION

In the Second Amended Complaint, plaintiff Kenneth Cha makes claims against the San Francisco District Attorney's Office ("SFDAO") pursuant to *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). The Complaint alleges that, during the tenure of District Attorney Chesa Boudin, defendant enacted policies and procedures that showed a disregard for plaintiff's civil rights. These included a policy to re-open declined cases without any new evidence to support a change in status (First Claim for Relief), and a policy to permit attorneys with conflicts of interest to participate in the investigation and prosecution of conflicted cases (Second Claim for Relief).

These policies had the effect of depriving plaintiff Cha of his civil rights. Prior to Boudin's tenure, the SFDAO had investigated an officer-involved shooting case with Cha; concluding the case had no merit because of Cha's right to self-defense under the circumstances, the SFDAO had drafted a declination letter that would have terminated the investigation. However, due to defendant's improper policies, biased individuals were put in charge of his investigation. Particularly, the SFDAO's failure to manage conflicts of interest, specifically with respect to the IIB which investigated police officers, permitted a biased individual, Lateef Gray, to be in charge of officer-involved shooting ("OIS") investigations. Despite the SFDAO's prior determination, and despite subsequent investigation and Grand Jury proceedings that did not yield any new evidence to support charges, the SFDAO sought and obtained an arrest warrant against Cha. The SFDAO's improper and inadequate administrative procedures were causal factors that prevented the SFDAO from issuing a declination letter despite multiple opportunities, and directly led to the improper investigation, arrest, and prosecution of plaintiff Cha. The improper policies amounted to a deprivation of police officers' rights to equal protection under the law, with a direct effect on Kenneth Cha who faced an improper prosecution.

Plaintiff drafted the Second Amended Complaint in accordance with this Court's Order regarding the Motion to Dismiss the First Amended Complaint. This Order dismissed plaintiff's malicious prosecution and other claims against the individual defendants, but permitted plaintiff leave to amend and restate the *Monell* claims against the City and the SFDAO.

The Second Amended Complaint alleges the SFDAO's improper administrative conduct.

While prosecutors and district attorney's offices enjoy 11th Amendment immunity for "prosecutorial" conduct undertaken in their role as agents of the State, this immunity does not apply to administrative conduct. (*Goldstein v. City of Long Beach*, 715 F.3d 750, 761-762 (9th Cir. 2013)) Administrative conduct may include the district attorney's office's toleration of retaliatory prosecution. (*Haynesworth v. Miller* (1987) 820 F.2d 1245, 1273-1274.) Administrative conduct includes hiring practices involving the whole office, not directed at assignments to a particular prosecution. (*Lacey v. Maricopa County,* 693 F.3d 896, 930-931 (9th Cir. 2012)) The office's systemic failure to discipline prosecutors for violations is also an administrative issue, not subject to 11th Amendment immunity. (*Puckett v. Cnty. of Sacramento*, 2024 U.S.Dist.LEXIS 56662 (E.D.Cal. 2024, No. 2:22-cv-0350 KJM DB) Here, the *Monell* claims in the Second Amended Complaint comport with the case law permitting claims for administrative conduct against district attorney offices engaging in improper policies that harm the plaintiff's civil rights.

This Court's Order regarding the prior Complaint had criticized the *Monell* claims on the basis of 11th Amendment immunity for the conduct of State officers, holding that these claims implicated prosecutorial decisions. However, administrative conduct that ultimately results in prosecution is not necessarily "prosecutorial" for 11th Amend. purposes. (*Haynesworth v. Miller,* 820 F.2d 1245, 1273-1274 (1987) [11th Amend. immunity did not apply where the office permitted malicious prosecution]) In the Second Amended Complaint, the *Monell* claims are articulated to avoid alleging the prosecutorial intent of the involved individuals. This is a valid pleading of the prosecutor's administrative conduct under the relevant case law.

Defendants' Motion to Dismiss also argues that plaintiff's Monell claims are predicated on Cha's improper arrest, which defendants allege cannot be a constitutional injury because of the issuance of the arrest warrant. Plaintiff's claims are in fact based on the improper administrative processes that occurred before Cha's arrest and prosecution. At the time of Boudin's installment as District Attorney, the SFDAO had already drafted a declination letter as to Cha's OIS matter. The SFDAO's improper and deficient administrative procedures caused the SFDAO's failure to sign the declination letter, thus permitting Cha's improper investigation, arrest, and prosecution.

Plaintiff's Monell claims are properly pled as to administrative conduct, causation, and

constitutional injury. The Court should permit plaintiff's claims to advance and proceed to discovery to uncover relevant facts on the disputed issues.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Pursuant to the allegations in the Second Amended Complaint ("SAC"), Plaintiff Kenneth Cha, an SFPD officer, was involved in an OIS incident on January 6, 2017.  At that time, Ofc. Cha and his partner Ofc. Colin Patino were attempting to enforce a restraining order against Sean Moore based upon a complaint by Moore's neighbor. When these uniformed officers approached Moore on the staircase outside his unit, he screamed racial epithets at them, threatened them with bodily harm, and assaulted Cha and his partner. Cha and Patino tried to protect themselves by dousing Moore with pepper spray and striking him with a baton, to no avail. Moore punched Patino in the face, breaking his nose. As a last resort and after shouting warnings, Ofc. Cha shot Moore in the stomach and leg. Three years later, Moore died while in prison on unrelated felonies. (SAC ¶2)

Initial analysis under San Francisco District Attorney George Gascon determined that there was no probable cause to pursue a criminal case against Ofc. Cha. The San Francisco District Attorney's office ("SFDAO") found that Cha had been justified in using deadly force, based on the immediate threat of harm from Moore and Cha's right to self-defense. (SAC ¶¶45-47) The SFDAO wrote a declination letter, and was prepared to end the investigation of the Moore case without prosecution.  (SAC ¶6)

As is standard practice in district attorney offices, Gascon's administration had policies and procedures that prohibited declined cases from being re-opened unless new evidence provided sufficient evidence of a crime. (SAC ¶¶7; 50(a)) However, under new District Attorney Chesa Boudin, the SFDAO did not have or enforce procedures to ensure that, on a previously declined matter, the re-opening of an investigation had new evidence to justify an investigation or prosecution. (SAC ¶52)

Further, under Boudin, the SFDAO failed to adhere to established policies and procedures regarding biased or conflicted personnel, and permitted such personnel to work on cases where conflicts existed, in contravention of State Bar rules on conflicts. (SAC ¶¶57-58) The SFDAO

removed personnel that were inclined to affirm the declination letter, such as ADA Zisser and investigators Tsuruta, Hayashi, and Pailet, from the Cha investigation. (SAC ¶68) The SFDAO hired attorney Lateef Gray and assigned him to be Managing Attorney for the IIB. In that position, Gray would oversee all IIB investigations of police officer misconduct, including that of the Moore OIS case. (SAC ¶59) However, at the time of his assignment, Gray was counsel for Moore's family in a civil case related to the same shooting. (SAC ¶¶60-61) Due to the SFDAO's inadequate policies and procedures for conflicts, Gray was not properly walled off from the Moore OIS matter, and in fact gave directions to SFDAO staff related to the matter. (SAC ¶63-64, 66)

Plaintiff alleges that, as a result of the SFDAO's improper administrative policies regarding both the re-opening of declined cases and the avoidance of attorney conflicts of interest, the SFDAO repeatedly failed to issue any declination letter, and instead improperly re-opened the Cha OIS matter and pursued an investigation, ultimately resulting in criminal charges against Cha. (SAC ¶¶70, 96)

During the investigation, the SFDAO had multiple opportunities to re-evaluate the case, given the lack of any new evidence implicating Cha. Particularly, the SFDAO convened an Investigative Grand Jury, which concluded on July 27, 2021, without charges against Cha or any new evidence implicating Cha. The lack of criminal findings or new evidence at the Grand Jury should have been yet another event that caused the SFDAO to issue a declination letter. However, after the Grand Jury concluded, the SFDAO did not issue a declination letter regarding the Moore OIS matter. (SAC ¶86, 94) Ultimately, on October 29, 2021, the SFDAO sought an arrest warrant against Ofc. Cha on charges of voluntary manslaughter and assault with a semiautomatic firearm, which was granted by Judge Kahn the same day. Cha was arrested on November 2, 2021. (SAC ¶¶95, 96)

**B.    Prior Complaints; Second Motion to Dismiss**

Plaintiff Kenneth Cha filed the Complaint on August 2, 2024. Defendants moved to dismiss the Complaint. At the hearing on the first Motion to Dismiss, the Court granted leave to amend, requesting clarification as to the individual actors' conduct, and as to the specific claims made against each actor.

Plaintiff filed the First Amended Complaint ("FAC") on May 23, 2025. Defendants filed a second Motion to Dismiss regarding the First Amended Complaint.

On the second Motion to Dismiss, the Court's Order was entered on September 30, 2025. In this Order, the Court found that the claims related to the investigation of plaintiff Cha were not causally related to his ultimate arrest and prosecution, and were therefore barred. The Court also found that the arrest warrant against Cha, issued by Judge Kahn on October 29, 2021, found probable cause for arrest, and that this fact precluded any claims of malicious prosecution, since Cha's arrest was undertaken with probable cause based on the warrant. The Court also found that plaintiff's *Monell* claims against the City and the SFDAO were based on conduct that was closely related to defendants' prosecution of Cha, and therefore were precluded by 11th Amendment immunity. The Court's Order precluded all claims in the FAC without leave to amend, except for the *Monell* claims, where leave to amend was granted.

## C.    Filing of SAC; Third Motion to Dismiss

On October 30, 2025 Plaintiff filed the Second Amended Complaint ("SAC"). In compliance with the Court's Order, plaintiff filed *Monell* claims only. The SAC asserts claims for relief regarding two improper administrative policies or practices by the SFDAO:

1.  The SFDAO's policy or practice to allow the re-opening of declined cases, without any new evidence or legal theories to support prosecution (First Claim for Relief); and,

2.  The SFDAO's policy or practice to permit attorneys with conflicts of interest, and with improper bias, to participate in conflicted cases (Second Claim for Relief).

For each of these claims, plaintiff asserts that, after the SFDAO made a determination that Cha's conduct was self-defense, and had already drafted a declination letter, the SFDAO's improper and deficient administrative procedures caused the SFDAO's failure to sign the declination letter, permitting Cha's improper investigation, arrest, and prosecution. Thus, these administrative failures, prior to any prosecution, were causal factors (a "moving force") behind the deprivation of plaintiff's right to be free from improper arrest and prosecution.

On November 13, 2025, Defendant filed this third Motion to Dismiss.

## III.    LEGAL STANDARD ON A MOTION TO DISMISS

"The purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest

regarding its substantive merits.' " (*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)) The moving party bears the burden of showing that no adequate claim for relief has been presented. (*Gunn v. Cont'l Cas. Co*., 968 F.3d 802, 806 (7th Cir. 2020)) For a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. (*See, Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987)) Motions to dismiss generally are viewed with disfavor under this liberal standard. (*See, Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997))

It is understood that civil rights complainants are likely to lack full access to information about their claim; therefore, "civil rights complaints are to be liberally construed," and need only comply with F.R.Civ.P. 8(a). (*Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992)) In a civil rights complaint, "[P]laintiff is not expected to plead his evidence or specific factual details not ascertainable in advance of discovery." (*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986))

In a Motion to Dismiss, **the Court is not a factfinder**, and cannot decide and resolve disputes of material fact. Disputes of material fact are determined at trial. (*Lobisch v. United States* (D.Haw. May 26, 2021, No. 20-00370 HG-KJM] 2021 U.S.Dist.LEXIS 100002, at *8-9.) Particularly, **"The existence of probable cause is a jury question**, unless there is only one reasonable determination possible." (*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) [emphasis added]. **If there are any alternative possible ways for a jury to view the facts, then factual issues should be a jury question**, including inferences from circumstantial evidence.

## IV.    LEGAL ANALYSIS

### A.    The SAC Properly Alleges *Monell* Claims Based on the SFDAO's Improper Administrative Procedures

In the Second Amended Complaint, Plaintiff brings civil rights claims under section 1983 against the City of San Francisco and the SFDAO under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Plaintiff makes *Monell* claims against the SFDAO for the administrative conduct of its prosecutors, that deprived plaintiff of his right to be free from improper investigation, arrest, and prosecution.

The *Monell* case established that individuals may sue a local government for constitutional violations, when the violation stems from an official "policy or custom" of the municipality. To make a *Monell* claim against a public entity for 1983 violations, plaintiff must show "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." (*Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir. 2011))

*Monell* claims may be based on either the written policies of the entity, or on the custom and practice of the entity, that is, where there is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." (*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988)) *Monell* claims may be based on the collective conduct of multiple public employees, even where each individual's conduct may be immune or otherwise not liable. "[M]unicipal defendants may be liable under § 1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights. . . . 'the fact that individual officers are exonerated is immaterial to liability under § 1983." (*Horton v. City of Santa Maria,* 915 F.3d 592, 604-605 (9th Cir. 2019).)

In the First Claim for Relief regarding the SFDAO's improper policy for re-opening declined cases, plaintiff alleges that: 1) Appropriate and necessary policy in District Attorney's offices requires a procedure to re-evaluate declined cases, such that new evidence and/or legal theories are required to re-open cases, in order to avoid improper and frivolous prosecutions; 2) Under Boudin's tenure as District Attorney, the SFDAO failed to adhere to these requirements, allowing several cases to be re-opened without new evidence, thus showing indifference to plaintiff's rights; and, 3) This policy was a moving force behind the SFDAO's repeated failure to issue a declination letter in the Cha OIS matter; the policy permitted the improper investigation and prosecution of plaintiff Cha to proceed, thus violating his constitutional rights.

In the Second Claim for Relief regarding improper policy for conflicts of interest and bias, plaintiff alleges that: 1) Necessary policy in district attorney offices, in compliance with State Bar rules, requires procedures to detect the attorneys' potential conflicts of interest, and procedures to

screen attorneys from conflicted cases; 2) Under Boudin's tenure as district attorney, the SFDAO failed to adhere to these requirements, thus showing indifference to plaintiff's rights; and, 3) This policy or practice allowed Lateef Gray to be involved in Cha's investigation and prosecution despite Gray's conflict of interest, causing the SFDAO's repeated failure to issue a declination letter. Again, this policy permitted the improper investigation and prosecution of plaintiff Cha, and was a moving force behind the violation of Cha's rights.

The administrative violations were intended to prevent the declination letter from being issued in order to create the potential for prosecution. This amounts to an improper attempt to accuse a police officer of criminal conduct (despite the officer's fully valid defense acknowledged by the SFDAO), thus depriving the officer of equal protection under the law.

**B.    The SAC Alleges Defendants' Administrative Conduct, Not Subject to Sovereign Immunity**

Contrary to defendants' assertions in the Motion to Dismiss, plaintiff has made proper *Monell* claims against the City and the SFDAO, alleging administrative conduct that is not prosecutorial and not subject to 11th Amendment immunity. For purposes of the 11th Amendment, Courts distinguish between "prosecutorial" and "administrative" conduct, primarily based on whether the State or the municipality actually exercises control over the particular conduct. A district attorney's conduct that affects the prosecution of a particular case constitutes "prosecutorial conduct" under the State's overall control, and is immune under the 11th Amend. However, conduct that is related to the administrative support structures of the office is administrative conduct under municipal control, and is not immune under the 11th Amendment. (*Goldstein v. City of Long Beach*, 715 F.3d 750, 761-762 (9th Cir. 2013))

In *Goldstein*, the Ninth Circuit held that a district attorney acts as a local official, not protected by 11th Amend. immunity, when establishing policy and training related to the use of jailhouse informants. The Court held that these policies, even though they may strongly affect prosecutions, do "**not involve prosecutorial strategy, but rather administrative oversight** of systems used to help prosecutors comply with their constitutional duties." (*Goldstein*, *supra*, 715 F.3d 750, 762, emphasis added; *see*, *Puckett v. Cnty. of Sacramento*, 2024 U.S.Dist.LEXIS 56662

(E.D.Cal. 2024, No. 2:22-cv-0350 KJM DB) [the district attorney office's failure to discipline prosecutors who committed *Brady* violations, and the failure to have an index or tracking system to monitor *Brady* violations, was administrative])

Further, a district attorney office's policies or practices affecting multiple cases, and not just directed at a single prosecution, is considered administrative and not prosecutorial. "Decisions related to general conditions of employment—including decisions to hire, promote, transfer, and terminate—and which do not affect the prosecutor's role in any particular matter are generally not sufficiently related to the initiation and conduct of a prosecution . . . to qualify for absolute immunity." (*Lacey v. Maricopa County,* 693 F.3d 896, 930-931 (9th Cir. 2012))

Here, the SAC alleges the SFDAO's improper administrative procedures related to re-opening declined cases, and related to managing attorneys' conflicts of interest. These failures caused constitutional deprivation to plaintiff. Had these administrative failures not occurred, there would have been no further investigation of the Cha OIS matter, no attempt to obtain and arrest warrant, and no arrest and prosecution.

1.     **The SFDAO's Administrative Failure to Properly Assess Declined Cases Is Not "Prosecutorial" for 11th Amendment Purposes**

The SAC's First Claim for Relief alleges the SFDAO's policy and practice of re-opening cases without any new evidence or legal theories to support further investigation or prosecution. This describes an office-wide, administrative policy that affects multiple cases. Where there is an office-wide policy causing the improper prosecution of multiple cases, this will create an actionable *Monell* claim against the municipality, even where prosecutors themselves were protected by prosecutorial immunity. (*Haynesworth v. Miller* (1987) 820 F.2d 1245, 1273-1274 (*overruled on other grounds, Hartman v. Moore,* 547 U.S. 250, 255-256 (2006))

In *Haynesworth*, the plaintiffs alleged that they were prosecuted in retaliation for either lodging a citizen complaint or refusing to waive the right to challenge official misconduct in court. The plaintiff made a retaliatory prosecution claim against the prosecutor and the City. The District Court held that the plaintiff adequately pled a *Monell* claim against the City:

As noted, the question of municipal responsibility for unconstitutional

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

official actions is one of fact so long as the plaintiff sets forth a "plausible" basis for the assertion of liability. We find that Haynesworth's complaint sets forth adequate ground for attributing the challenged conduct to the District, and that he is entitled to an opportunity to prove the District's legal responsibility for harm caused by the retaliatory prosecution.

(*Haynesworth v. Miller* (1987) 820 F.2d 1245, 1273-1274.)

*Haynesworth* demonstrates that the analysis of absolute prosecutorial immunity is not the same as the analysis of prosecutorial conduct under 11th Amend. The District Court held that the prosecutor was protected by absolute immunity. (*Haynesworth, supra*, 820 F.2d 1245, 1269,) However, the Court denied the District 11th Amend. immunity, and permitted a *Monell* claim:

Miller enjoys absolute immunity for his actions as the prosecutor in Haynesworth's case and for his conduct as policymaker in the Corporation Counsel's office. Miller's alleged wrongdoing nevertheless provides a basis for proceeding against the District of Columbia since it appears that he may have possessed sufficient policymaking authority to act for the District in the establishment of prosecution policies.

(*Haynesworth v. Miller* (1987) 820 F.2d 1245, 1274-1275.)

Defendants argue that the SAC's allegations regarding the SFDAO's policies for the re-opening of declined cases "concern the plainly prosecutorial conduct of deciding whether to prosecute an individual, namely Plaintiff Cha." (Motion at 16:9-10) This is incorrect. The administrative failures do not have to do with the decision to prosecute, but rather with subverting the decision that had already been made not to prosecute. These failures created circumstances where the SFDAO could consider an improper prosecution of Cha. The conduct precedes the actual prosecution of Cha. Any interpretation to the contrary would cast the court as the trier of fact and would deny the jury the ability to assess these factual issues.

Further, the SAC does not make a limited allegation regarding Cha alone; rather, the SAC alleges that multiple individuals (Cha, Stangel, and Samoyoa) were improperly prosecuted as a result of the SFDAO's improper policy (see SAC at ¶¶ 55, 129, 131) Where a district attorney office's policy affects the whole office and multiple cases, rather than targeting a single case, the policy is considered to be administrative rather than prosecutorial. (*Lacey v. Maricopa County*, 693 F.3d 896, 930-931 (9th Cir. 2012); *see*, *Haynesworth, supra,* 820 F.2d 1245, 1274-1275 [affirming *Monell*

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

claim for retaliatory prosecution]; *Goldstein v. City of Long Beach* (9th Cir. 2013) 715 F.3d 750, 760 [immunity applies to "the decision to prosecute an individual.")

Defendants argue that a district attorney office policy regarding a process for re-opening declined cases, would be treated exactly the same as the original decision to prosecute a case, and is therefore immune. (Motion at 16:12-15) However, under the case law, not all district attorney office policies that "lead to prosecution" are in fact "prosecutorial" for 11th Amend. purposes. Where a district attorney office's general, office-wide policies affect the ultimate decision to prosecute, but do not directly authorize a specific prosecution, such policies are administrative and not immune under the 11th Amend.

In *Briggs v. Montgomery,* 2019 U.S.Dist.LEXIS 101625 (D.Ariz. June 18, 2019, No. CV-18-02684-PHX-EJM), the Maricopa County Attorney's Office operated a drug diversion program that allowed defendants to escape prosecution if they met certain requirements. Plaintiffs' 1983 suit claimed that the program's financial requirement (a fee of $950) and other requirements were discriminatory against poor participants, as they imposed additional burdens on non-paying participants. The defendants moved to dismiss on the grounds that the program was part of the prosecutor's decision-making process leading to prosecutions, and therefore protected as prosecutorial conduct under 11th Amend. immunity. Despite the fact that the drug diversion program constituted the district attorney's choice to not prosecute an individual criminal defendant, the Arizona District Court did not hold that the program inherently involved "prosecutorial" decisions: "[T]he issue in this suit is not the CA's decision whether to prosecute an individual for possession of marijuana or refer him or her to the MDPP, but his role in establishing and implementing the MDPP and its allegedly discriminatory policies." *(Briggs, supra,* No. CV-18-02684-PHX-EJM) 2019 U.S.Dist.LEXIS 101625 at *56; *see also: Bellamy v. City of New York,* 914 F.3d 727, 760- 762 (2d Cir. 2019) [where prosecutor failed to reveal the benefits provided to a witness in the witness protection program, violating the accused's *Brady* rights, a *Monell* claim was viable against the City for the deliberate information barrier imposed by the QCDA that purposefully kept prosecutors unaware of the full benefits received by witnesses]; *see also, Haynesworth v. Miller, supra*, 820 F.2d 1245, 1274-1275 [plaintiff properly alleged a *Monell* claim against the City for an overall policy of

retaliatory prosecutions])

Here in the First Claim for Relief, the issue is not the SFDAO's specific decision to prosecute Cha, as a direct prosecutorial act. Rather the First Claim alleges that the SFDAO established and implemented a policy regarding declined cases which had the ultimate effect of encouraging improper prosecutions, including the prosecution of Cha. As a policy instrument, this is administrative, not prosecutorial conduct. (*Briggs, supra,* 2019 U.S.Dist.LEXIS 101625 at *56) These improper procedures were done in order to reverse a decision the SFDAO had already made that Cha's conduct was in self-defense. This amounted to discriminatory policy that denied the police officer equal protection under the law.

A public entity's failure to discipline individual district attorneys regarding procedural breaches, even breaches in some way related to a prosecution, are considered "administrative" and not prosecutorial. In *Puckett v. Cnty. of Sacramento* (E.D.Cal. Mar. 8, 2023, No. 2:22-cv-00350-KJM-DB) 2023 U.S.Dist.LEXIS 39761, the plaintiff alleged he was incarcerated based on convictions for robbery and murder for roughly 20 years, despite being factually innocent, as a result of defendants' withholding or ignoring exonerating evidence. Plaintiff claimed *inter alia* that the district attorney office's failure to discipline prosecutors regarding *Brady* violations constituted an administrative failure. The Court agreed, holding: "Unlike the direct commission of a *Brady* violation, a failure to discipline is not tied directly to 'prosecutorial strategy' but is reflective of administrative policies and oversight of employees. Id. In failing to discipline, the District Attorney's Office acted as an arm of the county and is subject to *Monell* liability." (*Puckett, supra,* at *26)

Here, the SAC alleges that the "SFDAO failed to correct or discipline employees who instituted investigations of declined cases without new evidence or theories of liability." (SAC ¶132, 133) The SFDAO's failure in this regard is "reflective of administrative policies and oversight of employees," and does not constitute "prosecutorial conduct" for purposes of the 11th Amend. (*Puckett, supra,* 2023 U.S.Dist.LEXIS 39761, at *26)

### 2.    Defendants' Administrative Failure to Prevent Conflicts of Interest and Biased Employees Is Not "Prosecutorial" for 11th Amendment Purposes

The Second Claim for Relief alleges that the entity defendants failed to properly identify and

screen for their attorneys' conflicts of interest and/or improper bias, both as to past and current cases (SAC ¶50(b)) This improper policy led to the hiring of conflicted attorney Lateef Gray, his placement in charge of the Independent Investigations Bureau, and his improper management of a conflicted case (Cha). This Claim for Relief involves the SFDAO's failure to set up administrative procedures to enforce basic professional ethics, pursuant to the State Bar rules (Cal. State Bar Rules of Prof. Conduct, Rule 1.7, Conflict of Interest – Current Clients; and, Rule 1.9, Conflict of Interest – Duties to Former Clients)

Plaintiff will have a claim whether or not the SFDAO violation of conflict-of-interest rules was intentional. A *Monell* claim will lie where the collective inaction of employees of the public entity, due to lack of proper enforcement by the entity, shows a **deliberate indifference** to plaintiff's constitutional rights. (*Horton v. City of Santa Maria* (9th Cir. 2019) 915 F.3d 592, 604-605 [where inmate attempted suicide in custody, police dept.'s collective failure to enforce policy to remove belts from detainees constituted a collective failure, for which a *Monell* claim applied])

Further, the SFDAO's administrative failure to set up proper training and instruction to its employees regarding conflicts of interest is actionable in a *Monell* claim: "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." (*City of Canton v. Harris,* 489 U.S. 378, 390 (1989)) Similarly, the SFDAO's failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference" to plaintiff's rights. (*Dougherty v. City of Covina* (9th Cir. 2011) 654 F.3d 892, 900); *see also, Wilson v. County of Umatilla,* 2013 U.S.Dist.LEXIS 168936, at *16-17 (D.Or. Aug. 9, 2013, No. 3:11-cv-01061-PK) [in dealing with hiring, firing, and supervision of County staff employed in the District Attorney's office for that County, the district attorney acted as a County official and not a State official])

Here, the claims in the Second Claim for Relief relate to the SFDAO's administration of the employment and assignment of SFDAO attorneys, with regard to those attorneys' conflicts of interest. This is a locally-determined administrative policy rather than a policy imposed by the State Attorney General, and is therefore fairly attributed to the municipality, not the State.

Further, in *Monell* cases, issues regarding workplace hiring that are not directed at a particular

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

prosecution are considered administrative issues, not protected by sovereign immunity: "A prosecutor's error in a **specific criminal trial** constitutes an essential element of the plaintiff's claim. The obligations here are thus unlike administrative duties concerning, e.g., **workplace hiring**." (*Van de Kamp v. Goldstein* (2009) 555 U.S. 335, 336, emphasis added; *see, Lacey v. Maricopa County,* 693 F.3d 896, 930-931 (9th Cir. 2012) [decisions regarding general employment conditions, not affecting a particular case, are administrative])

Here, the Second Claim for Relief alleges that, under Boudin's tenure, there was a systemic failure by the SFDAO to properly manage its attorneys' conflicts of interest, in violation of State Bar rules. This failure particularly affected the IIB unit, where conflicted attorney Lateef Gray was assigned, having the effect of denying police officers equal protection under the law. As pled in the Complaint, this was an office-wide policy (or lack of enforcement of policy) regarding the hiring and assignment of attorneys, affecting multiple cases, which did not "affect the prosecutor's role in any particular matter." (*Lacey, supra,* 693 F.3d 896, 930-931 (9th Cir. 2012))

Further, as noted, the entity's failure to discipline its employees to conform to reasonable policies is "reflective of administrative policies and oversight of employees," and does not constitute "prosecutorial conduct" for purposes of the 11th Amend. (*Puckett, supra,* 2023 U.S.Dist.LEXIS 39761, at *26) Here, the Second Claim for Relief alleges the SFDAO's failure to discipline its attorneys regarding conflicts of interest. (SAC at ¶158) Therefore, under the case law, the SFDAO's failure to discipline its employees regarding basic violations of the State Bar ethics rules, constitutes administrative conduct that is not immune under the 11th Amend.

Defendants' case citations on this issue are not controlling. In *Gordon v. Perris Police Station,* No. EDCV18315RGKAGR, 2019 WL 3021465, at *8 (C.D. Cal. June 14, 2019), plaintiff was falsely accused of a carjacking, despite video footage showing the vehicle was voluntarily given to plaintiff. Plaintiff made *inter alia* a *Monell* claim that the City's policies permitted the district attorney to file charges. The District Court held that these policies were inherently prosecutorial. In *Gordon* there was only the broad accusation that the City had "permitted" an improper prosecution; no specific policy issues were articulated. Here, unlike in *Gordon*, plaintiff alleges specific policies in place at the SFDAO (particularly re conflicts of interest), that negligently allowed conflicted (and/or

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

biased) attorneys to be involved with conflicted cases

Defendants also cite *Riese v. Cnty. Of Del Norte*, No. 12-CV-03723-WHO, 2013 WL 5568707, at *3 (N.D. Cal. Oct. 9, 2013) In *Riese*, the conflicted prosecutor was directly assigned to the particular case at issue. Here, the conflicted prosecutor (Gray) was not directly assigned to the Cha case. Gray was designated as the head of the IIB department, which handled several OIS cases, including Cha where Gray had a direct conflict. The SAC alleges that the SFDAO's failure to enforce its conflict rules resulted in Gray's involvement with the Cha matter. This improper hiring practice, affecting the whole office, constitutes administrative conduct, per the *Lacey* case.

### 3.    The Court's Order on the FAC's *Monell* Claims Should Not Determine the Ruling on Plaintiff's *Monell* Claims in the SAC

In its Order on the First Amended Complaint, this Court issued rulings regarding plaintiff's *Monell* claims (FAC, 4th Claim for Relief). The Court held that the *Monell* claims, which implicated the SFDAO's administrative policies and procedures, were too closely related to the prosecution of Cha, and were therefore immune under the 11th Amend (see Order at pp. 24-27)

In the FAC, the *Monell* Cause of Action made claims that the administrative policies were designed and implemented with the intent to cause the improper prosecution of police officers such as Cha. (See FAC at ¶264) The SAC has changed the allegations, such that the prosecution of Cha was the result of negligent policies rather than intentional conduct. There are currently no allegations regarding the intent of the SFDAO's policies. (See SAC, First Claim for Relief, op. cit.)

Simply because a particular administrative process ultimately **results** in the improper prosecution of the plaintiff, does not make the conduct "prosecutorial" for 11th Amend. purposes. Case law supports a finding of administrative conduct even where the conduct causes or directly affects prosecutorial decisions. (*Haynesworth v. Miller, supra*, 820 F.2d 1245, 1274-1275 [plaintiff properly alleged a *Monell* claim against the City for an overall policy of retaliatory prosecutions]; *Briggs v. Montgomery, supra*, 2019 U.S.Dist.LEXIS 101625 at *56 [policy to defer prosecutions for drug crime defendants was not "prosecutorial" for 11th Amend. purposes])

As to the prior claim in the FAC related to improper policies and process for re-opening declined cases (FAC ¶266A), the Court ruled that this conduct was directly related to the decision to

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

prosecute Cha (Order at 24:19-25:7) As noted, simply because a policy has the ultimate effect of causing a prosecution, does not mean that the policy is "prosecutorial" implicating the 11th Amend. (*Haynesworth v. Miller, supra*, 820 F.2d 1245, 1274-1275) Further, the SAC alleges that this conduct affected multiple OIS cases at the office, including the Stangel and Samoyoa cases (SAC ¶¶55, 129, 131) This indicates an office-wide policy with the lack of any directed intent to prosecute Cha. However, this policy does show the SFDAO's intent to discriminate against police officers.

As to the prior claim in the FAC related to improper policies for conflicts of interest (FAC ¶266C), the Court's Order focused on the fact that the challenged policies related to conflicts with "current cases" to argue that this claim was directed at the prosecution of Cha. (Order at 26:13-16) For that reason the Court concluded this conduct was directed at Cha's prosecution, and therefore immune under the 11th Amendment. However, the SAC's Second Claim for Relief alleges that the problems with conflicts of interest included both current cases **and past cases.** (See SAC at 50B, 148, 149) This demonstrates that the improper policy, as alleged, was not intentionally directed towards Ofc. Cha or cases currently under consideration, but constituted the SFDAO's general failure to promulgate, administer, and/or discipline regarding conflict-of-interest issues, past and present. The policy does indicate the intent of the SFDAO to permit conflicted individuals at the IIB, which investigated OIS cases. Thus, the policy specifically affected police officers, depriving them of their right to equal protection under the law.

## C.     The SFDAO's Improper Administrative Policies Caused Constitutional Harm

To make a *Monell* claim against a public entity for civil rights violations under section 1983, the plaintiff must adequately plead that the public entity's conduct caused constitutional harm to plaintiff, that is, a violation of their rights that caused harm to plaintiff.

Here, the SAC properly alleges that the SFDAO's policies caused constitutional harm to plaintiff Cha. Plaintiff alleges that the SFDAO originally evaluated the Cha OIS matter, determined there was no probable cause, and prepared a declination letter (SAC ¶¶47-49) Issuing a declination letter would have terminated any further investigation or prosecution of Cha. However, under Boudin, the SFDAO introduced several administrative policies that had the effect of preventing the issuance of a declination letter, permitting the prosecution to proceed. (SAC at ¶¶74, 77, 83, 86, 94)

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

This improper effort at prosecution only occurred because of the SFDAO's administrative failures, that had the effect of denying police officers equal protection under the law, after the officer was determined to be acting in self-defense.

The First Claim for Relief alleges that the SFDAO's inadequate policies for re-opening declined cases prevented the issuance of the declination letter and permitted the Cha case to be re-opened despite the lack of any new evidence pointing to Cha's guilt or refuting his valid self-defense claim. This policy allowed the SFDAO to pursue an improper prosecution; without this policy, the SFDAO would have followed its prior evaluation and closed the case. Thus, this policy caused constitutional harm to plaintiff Cha, that is, the "violation of [plaintiff's] right to be free from improper investigation and malicious prosecution" (SAC ¶139), and "improper investigations, arrests, and prosecutions" against plaintiff Cha (SAC ¶140).

The Second Claim for Relief alleges that the SFDAO's inadequate conflict of interest policies allowed decision makers such as Lateef Gray, who was biased against Cha, to negatively affect the course of the Cha investigation, preventing the declination letter from ever being issued. (SAC ¶159) Again, this policy allowed the SFDAO to pursue an improper prosecution, causing constitutional harm to plaintiff Cha, "whose Fourth Amendment rights were violated by improper investigations, arrests, and prosecutions." (SAC ¶160).

In summary, without the administrative failures during the Boudin administration cited in the SAC, the SFDAO would have issued a declination letter as to the Cha OIS matter. Further investigation would have ceased, and any issue of probable cause for arrest would have been moot.

Defendants' Motion makes several arguments that the SAC does not properly allege constitutional harm. Defendant first argues that the conduct cited was subject to 11th Amendment immunity. (Motion at 18:19-22) However, as argued above, the conduct alleged in both Claims for Relief was administrative and not prosecutorial, and therefore was not immunized by the 11th Amendment.

Later, the Motion argues that, "because a neutral judge determined that probable cause existed to proceed against Cha, neither Claims for Relief state a cognizable harm." (Motion at 18:23-24) Defendant also notes that the Court's Order ruled that there was probable cause for Cha's arrest, and

for that reason dismissed the FAC's malicious prosecution claims against the individual prosecutors. (Order at 13:20-24, *citing Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir. 2004))

This argument misconstrues the nature of causation and constitutional injury in the context of *Monell* claims. The case law shows that municipalities may be held liable for civil rights violations, even where the individual prosecutors are not liable. (*Haynesworth v. Miller* (1987) 820 F.2d 1245, 1273-1274.) Unlike individuals, municipalities act collectively, and will be liable for civil rights violations due to their collective conduct that would not be viable as to individuals. (*Haynesworth, ibid.*; *see, Horton v. City of Santa Maria* (9th Cir. 2019) 915 F.3d 592, 604-605 [police dept.'s collective conduct caused constitutional injury])

Here, plaintiff argues that the SFDAO's faulty administrative procedures (related to declined cases and to conflicts of interest) prevented the SFDAO from issuing the already-drafted declination letter, which would have ended any investigation or prosecution of Cha. If the SFDAO had followed proper procedures, no further prosecution or arrest of Cha would have occurred. This would moot the issue of any finding of probable cause. These are reasonable inferences from the alleged facts. Disputes of material fact should be determined by the jury at trial. (*Lobisch v. United States* (D.Haw. May 26, 2021, No. 20-00370 HG-KJM) 2021 U.S.Dist.LEXIS 100002, at *8-9.)

**D.    The SFDAO's Policies Were the Moving Force Behind the Constitutional Harm**

The SAC logically and plausibly pleads that the SFDAO's policies were a primary cause or "moving force" behind the constitutional harm to plaintiff Cha. To show that the policy was a moving force behind the constitutional harm, the plaintiff must show both causation-in-fact and proximate causation. (*Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1096 (9th Cir. 2013).) The pleading standard for *Monell* claims does not require considerable detail in pleading other than the allegation that the officer's conduct conformed to official policy. "In the past, our cases have not required parties to provide much detail at the pleading stage regarding such a policy or custom." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (*quoting Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007))]. "In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." (*AE v. County of*

*Tulare*, *supra*, 666 F.3d 631, 636, 637-638 [holding that district court abused its discretion when it denied plaintiff the opportunity to allege additional facts supporting the claim that defendant officers' alleged constitutional violations were carried out pursuant to County policy or custom]; see, Court Order at 21:28-22:8 [citing *AE v. County of Tulare*])

Here, each of plaintiff's causes of action plausibly pleads causation, that is, that defendants' administrative policies caused a deprivation of plaintiff's rights. Generally, the SAC alleges that SFDAO's administrative failures – after having already determined that Cha acted in self-defense – caused the SFDAO to fail to issue a declination letter, thus creating the circumstances for Cha's improper prosecution.

The First Claim for Relief alleges that the SFDAO's inadequate policies for re-opening declined cases led to the SFDAO's repeated failure to issue a declination letter at multiple points (SAC at ¶130, 131, 136, 137; see also, ¶¶74, 77, 83, 86, 94), which ultimately led to Cha's arrest and prosecution (SAC ¶¶139, 140)).

As to the First Claim, Defendant makes a convoluted argument criticizing causation: "The SAC notes that the SFDAO failed to discipline or correct its employees where previously declined cases were re-opened despite the lack of new evidence, including in the Cha matter. SAC ¶¶ 130-133. But such an allegation of an after-the-fact failure inherently means that the Cha investigation could not have been caused by such a failure." (Motion at 20:5-9)

This is not a logical critique. The SAC alleges that the SFDAO had multiple opportunities to evaluate the existing evidence, after several failed attempts to generate new evidence to prosecute Cha, such as the Grand Jury proceedings. Despite this, due to its policy not to review the re-opening of cases, and with multiple opportunities, the SFDAO kept failing to issue a declination letter (SAC at ¶¶74, 77, 83, 86, 94), causing harm to plaintiff. These are proper, and quite plausible, allegations of proximate cause and cause in fact.

As to the timing of the SFDAO's failure to discipline or correct its employees, this is evidence of the entity's involvement with the improper conduct, by (at minimum) ratifying the improper conduct of the subordinates. There is no "causation" requirement that the entity's ratification of its subordinate's conduct occur at some point before any injury to the plaintiff.

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

The Second Claim for Relief alleges that the SFDAO's inadequate conflict of interest policies allowed biased individuals such as Lateef Gray to manage Cha's investigation. This led to the SFDAO's repeated failure to issue a declination letter, even after setting up an "investigative" Grand Jury that found no new evidence and that did not issue any indictment or findings (SAC at ¶159; see also, ¶¶74, 77, 83, 86, 94) The SFDAO's repeated failure to issue any declination letter ultimately led to Cha's arrest and prosecution (SAC ¶160).

Defendant criticizes causation in the Second Claim for Relief as follows: "The SAC describes the conflicted individuals—Lateef Gray and Andrew Koltuniak—as being "involved with the Cha matter," SAC ¶ 152, and able to "exert a biased influence and direction on the SFDAO's handling of the Cha matter." SAC ¶ 157. But it does not allege that those individuals initiated the re-opening of the Cha case or that those individuals' involvement somehow led to the ultimate arrest warrant issued by a neutral magistrate." (Motion at 20:12-17)

As noted, Plaintiff only has to allege a plausible line of causation. (*AE v. County of Tulare,* *supra,* 666 F.3d 631, 636, 637-638) Further, plaintiff is not privy to all communications between SFDAO employees, and is permitted to make allegations based on facts currently known to plaintiff. "[P]laintiff is not expected to plead his evidence or specific factual details not ascertainable in advance of discovery." (*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986))

Here, given that the SFDAO had the opportunity to abort the investigation at multiple points by issuing a declination letter, but failed to do so (see SAC at ¶¶74, 77, 83, 86, 94), plaintiff pleads the plausible idea that Gray's guidance to his subordinates on the Cha investigation, was a factor causing and continuing Cha's improper prosecution. The SAC alleges that Gray influenced the Cha case by "communicating with SFDAO personnel regarding the Cha matter, and directing the conduct of SFDAO employees Dana Drusinsky, Stephanie Lacambra and Andrew Koltuniak," the employees who investigated Cha and sought his arrest. (SAC ¶152) The SAC finally alleges that Gray's influence and direction prevented the issuance of a declination letter. (SAC ¶ 159) This is a logical inference from the alleged facts, and meets the standard for plausible pleading of causation in a civil rights case. Defendant's arguments to the contrary are unserious.

/ / /

**E.    The Individual Defendants Are Sued in their Official Capacities, In Order to Identify SFDAO Employees Who Contributed to Setting SFDAO Policy**

The SAC named Boudin, Gray, Drusinsky, and LaCambra as individual defendants. Defendants Motion argues that, in a *Monell* claim against the public entity for its policies, it is improper for plaintiffs to name individual defendants.

However, as legal personalities in the SAC, these defendants are sued, not in their individual capacities, but in their official capacities (See SAC at ¶¶ 21-25, 117, 143]) Suing an individual public officer in their official capacity, is the same as suing the public entity that employs the public officer. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ." (*Monell* v. *Dep't of Soc. Servs*. (1978) 436 U.S. 658, 690, fn. 55) "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." [citation] (*Mumford v. Basinski*, 105 F.3d 264, 270 n.8 (6th Cir. 1997)).

Here, plaintiff named the individual defendants in the SAC in their official capacities, in order to identify which actors were behind the entities' policies and practices, either by creating the policies, or by enforcing the policies (See e.g., SAC ¶125 ["Defendant Boudin, on becoming the DA, had the power to set administrative policy at the SFDAO."; ¶143 ["Defendant Chesa Boudin, as the District Attorney of San Francisco, exercised substantial independent authority and judgment in decision-making such that these defendants' decisions ultimately determined policy at the SFDAO.']

SFDAO employees at levels below the District Attorney may also set policy for purposes of *Monell* liability. "But an individual further down the municipal chain of command may as a practical matter possess final authority to exercise judgment in a particular area, and in such cases it may be feasible to attribute his actions to the municipality for liability purposes." (*Haynesworth v. Miller* (1987) 261 U.S.App.D.C. 66 [820 F.2d 1245, 1272-1273].)

Here, the SAC identified conduct by Gray, Drusinsky, and Lacambra, that had the effect of setting policy for the SFDAO. The form of pleading in the SAC, suing both the public entities and their employees in their individual capacity, was proper. (*Monell* v. Dep't of Soc. Servs. (1978) 436 U.S. 658, 690, fn. 55; *Mumford v. Basinski*, 105 F.3d 264, 270 n.8 (6th Cir. 1997)

## V.    CONCLUSION

Plaintiff has properly alleged Monell claims against the City and the SFDAO as to two categories of administrative conduct. While these improper policies ultimately led to the prosecution of Kenneth Cha, the policies were not specifically directed at Cha, and are properly considered administrative under the case law.

For the foregoing reasons, the Motion to Dismiss should be denied.

Dated: December 12, 2025                           Respectfully submitted,

                                                   RAINS LUCIA STERN
                                                   ST. PHALLE & SILVER, PC


                                                   /s/ Eustace de Saint Phalle
                                                   By: Eustace de Saint Phalle
                                                   Attorneys for Plaintiff KENNETH CHA

PLAINTIFF KENNETH CHA'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT